**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ESTADOS UNIDOS MEXICANOS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-CV-11269-FDS |
| | ) | |
| SMITH & WESSON BRANDS, INC., ET AL., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANT STURM, RUGER'S MEMORANDUM OF**
**LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL**
**RULE OF CIVIL PROCEDURE 12(b)(2)**

**INTRODUCTION**

The alleged relationship between Sturm, Ruger & Company, Inc.'s ("Ruger") contacts with Massachusetts and the Mexican Government's causes of action against Ruger is too attenuated and indirect to subject Ruger to specific personal jurisdiction in this case. The Mexican Government's allegations also demonstrate that exercise of jurisdiction over Ruger in this case would be unreasonable.  Accordingly, the Court should reject the Mexican Government's attempt at forum shopping and grant Ruger's motion to dismiss.

The Mexican Government claims that Ruger, a federally licensed firearms manufacturer, is subject to specific personal jurisdiction in Massachusetts based on Ruger's sales of firearms to Witmer Public Safety Group ("Witmer"), an independent federally licensed wholesale firearms

distributor of first responder and law enforcement products located in Massachusetts.[1]   In an attempt to manufacture specific personal jurisdiction where it otherwise is absent, the Mexican Government alleges that Ruger sold firearms to Witmer, which then sold those firearms to unspecified retail firearm dealers throughout the United States.  Those retail firearm dealers then allegedly sold some of those firearms to unidentified third parties, who allegedly engaged in criminal trafficking of the firearms into Mexico or provided the firearms to others who illegally transported the firearms across the border. (Compl. at ¶¶ 40-41).  This highly attenuated chain of events fails to establish the necessary link between Massachusetts and the Mexican Government's claims against Ruger.[2]

Ruger's contacts with Massachusetts are admittedly lawful, and the Mexican Government does not allege that Witmer's subsequent sales of Ruger manufactured firearms violated any of the myriad federal, state, and local laws governing firearm sales. Moreover, the Complaint does not include a single specific factual allegation involving a firearm sold by Ruger to Witmer in Massachusetts that was then trafficked into Mexico.  Instead, the Mexican Government relies on the vague, unsupported, and highly attenuated chain of events described above involving alleged multiple actors unrelated to Ruger—some of whom are alleged to have acted criminally—to connect Ruger's lawful activities in Massachusetts to criminal violence in Mexico. It is well

---

[1]     The Mexican Government disclaims that Ruger is subject to general personal jurisdiction in Massachusetts in this case. (Compl. at ¶ 44).

[2]     In addition to the Mexican Government's claim that Witmer sold Ruger firearms that were criminally trafficked into Mexico by unrelated criminal actors, it makes broad conclusory allegations against all manufacturer Defendants that do not have an alleged connection between the manufacturers' alleged sales of firearms to Witmer in Massachusetts and criminal violence in Mexico.  These claims include conclusory allegations that Defendants' marketing decisions generally made firearms "attractive to criminals" in Mexico. (Compl. at ¶¶ 341 – 352). Notably, the Mexican Government does not make a specific factual allegation that Ruger marketed its firearms in a manner was attractive to criminals. (*Id.*).

established in the First Circuit, however, that a court cannot assert specific personal jurisdiction over a defendant based on such conclusory, attenuated, and indirect allegations.

## LEGAL STANDARD

The Mexican Government bears the burden to demonstrate that the Massachusetts long-arm statute grants jurisdiction over Ruger and that the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment." *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007). The Massachusetts long-arm statute is sufficiently congruent with the limits permitted by the Constitution, and courts can "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002); *Kuan Chen v. United States Sports Academy, Inc*., 956 F.3d 45, 54 (1st Cir. 2020) ("Although the reach of the Massachusetts long arm statute may not be entirely congruent with the reach of the Due Process Clause … we need not parse any such distinctions here."). The "modest difference" between long arm statute and constitutional due process requirements is not material here, and the Court can proceed directly to the constitutional analysis. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc*. 825 F.3d 28, 34 n. 3 (1st Cir. 2016).

To establish the existence of specific personal jurisdiction over Ruger under the constitutional analysis, the Mexican Government has the burden to demonstrate: (1) the claims against Ruger "directly arise out of, or relates to" Ruger's activities in Massachusetts; (2) Ruger's contacts with Massachusetts represent its "purposeful availment of the privilege" of conducting business in Massachusetts; and (3) the exercise of jurisdiction over Ruger is "reasonable." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995); *Cossart v. United Excel Corp.*, 804 F. 3d 13, 18 (1st Cir. 2020). To meet this burden,  a plaintiff must "do more than simply surmise the existence of a favorable factual scenario; it must verify the facts alleged through

materials of evidentiary quality." *Killion v. Commonwealth Yachts,* 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001)).   An affirmative finding on each of these three constitutional factors—relatedness, purposeful availment, and reasonableness—is required before the Court can exercise specific personal jurisdiction over Ruger. *Phillips Exeter Academy v. Howard Phipps Fund*, 196 F.3d 284, 288 (1st Cir. 2005).

In ruling on Ruger's motion, the Court should apply a prima facie standard of review. *United States v. Swiss Am. Bank, Ltd*., 274 F.3d 610, 618 (1st Cir. 2001). Under this standard, the Mexican Government must demonstrate the existence of every fact required to meet its burden. *Id.* (citing *United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir. 1993)).   Although courts are to "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim," *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998), "conclusory allegations" and "farfetched inferences" are not to be credited. *Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

## ARGUMENT

I.   **Ruger's contacts with Massachusetts are unrelated to the Mexican Government's causes of action alleging that Ruger is legally responsible for criminal firearms trafficking and use by remote third parties in Mexico.**

The first requirement—relatedness—demands that Ruger's conduct in Massachusetts forms an "important, or [at least] material element of proof" in the Mexican Government's case. *United Elec., Radio and Mach. Workers of Am.*, 960 F.2d at 1089 (quoting *Marino v. Hyatt Corp.*, 793 F. 2d 427, 430 (1st Cir.1986)).  There must be a demonstrable connection between the plaintiff's cause of action and the defendant's contact with the forum state. *Id*. The First Circuit and courts sitting in this district "steadfastly reject" the exercise of specific personal jurisdiction

when the "connection between the cause of action and the defendant's forum in-state contacts seem attenuated and indirect." *Harlow*, 432 F.3d at 61; *see also Platten v. HG Bermuda Exempted Ltd.*, 437 F. 3d 118, 137 (1st Cir. 2006); *Carr-Laquidara v. Circus Trix Holdings, LLC*, 505 F. Supp. 3d 16, 19 (D. Mass. 2020).

Here, the connection between the Mexican Government's causes of action against Ruger and Ruger's contacts with Massachusetts is plainly attenuated and indirect. The causes of action against Ruger are based on the following alleged series of events which, with the exception of Ruger's initial lawful sale of firearms to Witmer, are unconnected to Ruger: (1) Ruger sold firearms to Witmer in Massachusetts; (2) Witmer then sold Ruger firearms to unidentified retail firearm dealers throughout the United States; (3) the retail firearm dealers then sold the firearms to persons, who allegedly acquired the firearms with the intent to criminally traffic them into Mexico or provide them to persons with such a criminal intent; (4) the persons acquiring the firearms then unlawfully transported the firearms into Mexico or provided them to others, who illegally transported them across the border; (5) the persons receiving the firearms in Mexico then used them to harm Mexican citizens; and (6) the harm to Mexican citizens resulted in derivative harm to the Mexican Government.  (Compl. at ¶ 41).   Based on this lengthy alleged series of events, Ruger was two steps removed from retail sales transactions by independent retail dealers, at least three steps removed from alleged criminal trafficking activity, and at least four steps removed from the alleged harm criminally inflicted on Mexican citizens and, derivatively, the Mexican Government.

Although the connection between the Mexican Government's cause of actions and Ruger's forum contacts with Massachusetts need not rise to the level of proximate cause, the absence of causation is an important factor in a relatedness analysis. *Nowak v. Tak How Invs., Ltd.,* 94 F.3d

708, 715 (1st Cir. 1996) ("[S]trict adherence to a proximate cause standard" may be "unnecessarily restrictive" in some cases). However, the relatedness requirement is not "an open door" and the "presence or absence" of proximate causation "is still important." *Harlow*, 432 F.3d at 61; *see also Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021) (although "a strict causal relationship between the defendant's in-state activity and the litigation" is not required, "the phrase 'relate to' incorporates real limits."). A broad "but for" argument is generally insufficient because "but for" events can be remote and have no "limiting principle." *Id*. (citing *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.,* 295 F. 3d 59, 63 (1st Cir. 2002)). The Mexican Government's allegations demonstrate that Ruger's contacts with Witmer in Massachusetts do not sufficiently "relate to" the Mexican Government's causes of action arising from criminal firearms violence in Mexico. Based on these allegations, this Court should find that the Mexican Government has not met its prima facie burden to affirmatively demonstrate that the Court should exercise specific personal jurisdiction over Ruger.

The Mexican Government's factually unsupported allegation that 10 unidentified retail firearm dealers located in Massachusetts "sold guns manufactured and distributed by some or all of the Defendants" that were "traced to crimes in Mexico" also falls substantially short of the mark. (Compl. at ¶ 43).[3] Notably, the Mexican Government does not allege how firearms sold by these

---

[3]      A "firearm trace is the means by which the ATF reconstructs the distribution history of a firearm" from the firearm's manufacturer to its first retail purchaser. *Hamilton v. Beretta USA Corp*., 750 N.E. 2d 1055, 1065 n. 7 (N.Y. App. 2001). The Mexican Government does not plead facts demonstrating that these 10 unnamed Massachusetts dealers sold the traced firearms unlawfully, or even sold them to persons who intended to deliver the firearms illegally into Mexico. Indeed, "the ATF emphasizes that the appearance of a [retail dealer] or a first unlicensed purchaser of record in association with a crime gun or multiple crime guns in no way suggests that either the [retail dealer] or the first purchaser has committed criminal acts." *Id*. n. 8.

unnamed 10 Massachusetts dealers ended up in Mexico, and does not attribute their presence in

Mexico to any act by their unidentified wholesale distributors or retail dealers.   Indeed, the

Mexican Government does not even specifically allege that *Ruger* firearms were among those sold

by the 10 dealers that were recovered in Mexico, instead vaguely referring to guns manufactured

by "some or all of the Defendants."  While a Court deciding a motion to dismiss for lack of personal

jurisdiction will "take specific facts affirmatively alleged by the plaintiff as true," the Court "will

'not credit conclusory allegations or draw farfetched inferences.'"  *Solta Med., Inc. v. Lumenis,*

*Inc.*, 454 F. Supp. 3d 107 (D. Mass. 2020) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d

201, 203 (1st Cir. 1994)).  The Mexican Government's allegations do not support an inference that

sales of unidentified Ruger firearms by unnamed retail dealers in Massachusetts to unidentified

Massachusetts residents under unidentified circumstances "facilitated" illegal firearm trafficking

into Mexico and subsequent criminal violence.

## II.     The exercise of personal jurisdiction over Ruger in this case would be unreasonable.

The Mexican Government also cannot demonstrate that subjecting Ruger to this Court's

jurisdiction would be reasonable. The reasonableness inquiry is based on a balancing of the

following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest

in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief,

(4) the judicial system's interest in obtaining the most effective resolution of the controversy, and

(5) the common interests of all sovereigns in promoting substantive social policies." *Cossaboon v.*

*Me. Med. Ctr.*, 600 F.3d 25, 33 n.3 (1st Cir. 2010) (quoting *Harlow,* 432 F.3d at 67). "The purpose

of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the

minimum contacts question is very close." *Nowak*, 94 F.3d at 717. Where the plaintiff's showing

on the relatedness prong is weak, "the less a defendant must show in terms on unreasonableness to defeat jurisdiction." *Harlow*, 432 F. 3d at 67 (citing *Ticketmaster*, 26 F.3d at 210).

The second Gestalt factor weighs heavily against subjecting Ruger to personal jurisdiction in this case.  The Mexican Government's allegations of harm in connection with Ruger's sale of firearms to Witmer, in addition to being conclusory, attenuated and indirect, do not involve any alleged harm to Massachusetts citizens. While Massachusetts may have a general interest in the criminal acquisition and use of firearms within its borders, it has no governmental interest or authority concerning these activities in Mexico. *See Sawtelle v. Farrell*, 70 F. 3d 1381, 1395 (1st Cir. 1995) ("Although it is true that a forum state has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, *see Ticketmaster,* 26 F.3d at 211, New Hampshire has a far less compelling interest in the prosecution of a legal malpractice suit stemming from an injury that occurred outside of its borders.").

The third Gestalt factor also weighs against exercising personal jurisdiction over Ruger. Generally, courts afford some deference to a plaintiff's choice of forum. However, a plaintiff is not entitled to such deference where the plaintiff is not a citizen of the forum state. *See Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 248-49 (2017) (motion to dismiss based on lack of personal jurisdiction granted based, in part, on third Gestalt factor and finding that plaintiffs were not citizens of Massachusetts).  The Mexican Government is not a citizen of Massachusetts, and it is difficult to "discern any specific reason why Massachusetts" would be a convenient forum to litigate its grievances. *Id.* Indeed, Massachusetts's connection to criminal firearms violence in Mexico by drug cartels and others is so attenuated and indirect from any contact Ruger had with

Massachusetts, it is fair to conclude the Mexican Government simply shopped for a forum, and concluded that Massachusetts might be a forum favorable to its claims.[4]

## CONCLUSION

The Mexican Government's claim that the Court should exercise specific personal jurisdiction over Ruger fails for multiple reasons, each of which standing alone is a sufficient basis on which to grant Ruger's motion to dismiss. Most significantly, the connection between Ruger's contacts with Witmer in Massachusetts and the Mexican Government's causes of action arising from criminal firearms violence in Mexico are attenuated and indirect, and cannot serve as a basis to exercise specific personal jurisdiction over Ruger. The Mexican Government does not allege that Ruger's sales firearms to Witmer were unlawful, and the alleged criminal misuse of those firearms in Mexico has no relationship to Ruger's alleged activities in Massachusetts or elsewhere. Accordingly, the Court should grant this motion and dismiss with prejudice all claims against Ruger for lack of specific personal jurisdiction.

---

[4]     That other defendants in this case may be subject to jurisdiction in Massachusetts is not a factor in the analysis of whether Ruger is subject to personal jurisdiction in this case. *Katz,* at 249; *see also Newman v. European Aeronautic Defence and Space Co. EADS N.V.*, 2011 WL 2413792 at *11 (D. Mass. June 16, 2011) (claim that defendant should be subject to personal jurisdiction in Massachusetts because other defendants are subject to suit in Massachusetts is "unavailing").

Respectfully submitted,

STURM, RUGER & CO., INC.,

By its attorneys,

_____/s/ Jonathan I. Handler_____
Jonathan I. Handler (BBO #561475)
Keith H. Bensten (BBO#568780)
jihandler@daypitney.com
kbensten@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
T: (617) 345-4600
F: (617) 345-4745

and

James Vogts (admitted *Pro Hac Vice*)
jvogts@smbtrials.com
SWANSON MARTIN & BELL LLP
330 North Wabash, Suite 330
Chicago, IL 60611
T: (312) 222-8517
F: (312) 321-0990

Dated:  November 22, 2021

## CERTIFICATE OF SERVICE

I, Jonathan I. Handler, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic (NEF) and paper copies will be sent to those indicated as non-registered participants on November 22, 2021.

_____/s/ Jonathan I. Handler_____
Jonathan I. Handler