THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS, <br><br> Plaintiff, <br><br> v. <br><br> SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS MANUFACTURING, INC.; BERETTA U.S.A. CORP.; BERETTA HOLDING S.P.A.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S MANUFACTURING COMPANY LLC; GLOCK, INC.; GLOCK GES.M.B.H.; STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC. D/B/A INTERSTATE ARMS, <br><br> Defendants. | C.A. NO: 1:21-CV-11269-FDS |

**DEFENDANT BARRET FIREARMS MANUFACTURING, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

The Defendant, Barrett Firearms Manufacturing, Inc. ("Barrett"), moves pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2) for entry of an order dismissing all Counts asserted against it because this Court lacks both subject matter jurisdiction and personal jurisdiction over Barrett. Barrett also moves pursuant to Fed. R. Civ. 12(b)(6) for an order dismissing Counts Two, Four, Six, and Nine of the Complaint for failing to state claims entitling the Plaintiff to relief. As explained below, the Plaintiff's Public Nuisance (Count Two) claim must be dismissed because Barrett had no control over the instrumentality of the alleged nuisance. The Plaintiff's Negligence Per Se (Count Four) claim must be dismissed because Massachusetts does not recognize a separate cause of action for negligence per se. The Plaintiff's Unjust Enrichment (Count Six) claim fails in the absence of any allegation that it conferred a benefit on Barrett for which it did not receive

compensation. Finally, the Plaintiff's Punitive Damages (Count Nine) claim must be dismissed in the absence of any statutory authority permitting the recovery of punitive damages from Barrett in this case.[1]

## I. STATEMENT OF FACTS

The Plaintiff's Complaint is over 130 pages long and includes more than 560 paragraphs. Yet in all of that verbiage, the Complaint provides no factual assertions plausibly demonstrating an entitlement of the Plaintiff to any relief against Barrett. All claims found in the Complaint arise from the actions of criminals who illegally purchase firearms, who illegally smuggle those firearms across the Mexican-American border, who illegally deliver those firearms to other criminals comprising drug cartels, and who then criminally misuse those firearms in Mexico, allegedly resulting in the Plaintiff's damages. In an inapposite and broken analogy, the Complaint tries to equate the legal and lawful transfer of Barrett's firearms within the United States to "dump[ing] toxic waste or other pollutants to poison Mexicans across the border." Doc. 1, ¶ 24. Were Barrett to have done such a thing, or even were the Complaint to have alleged Barrett did such a thing, it could certainly be subject to civil and/or criminal liability. The Complaint does not, though, and nothing in it plausibly supports a claim against Barrett that would allow it to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).

To be sure, the Complaint does <u>not</u> allege that Barrett manufactures or produces an illegal firearm. The Complaint does <u>not</u> allege that Barrett failed to comply with a law, rule, or regulation which resulted in harm to the Plaintiff. Rather, all harmful conduct as alleged in the Complaint is solely attributable to the non-specific criminal activity of unidentified people, thereby precluding

---

[1] In addition to the arguments in favor of dismissal asserted herein, Barrett joins with all other Defendants in moving to have the Complaint dismissed in its entirety pursuant to the Plaintiff's lack of standing to bring the claims and pursuant to the Protection of Lawful Commerce in Arms Act. 15 U.S.C. § 7902, *et seq.* A joint brief of all Defendants either has been or will be filed contemporaneously herewith.

a finding of civil liability on the part of Barrett. Again, the Complaint repeatedly alleges that unknown and unidentified individuals or entities illegally purchase an otherwise legal product, illegally smuggle that legal product across the Mexican American border, then illegally deliver that product to other criminals inhabiting Mexico, who then criminally misuse that product that then results in the alleged injuries suffered by the Plaintiff. This is no fault of Barrett, and the Complaint should be dismissed on this ground alone. However, the Complaint is also due to be dismissed for the Court's want of either subject matter or personal jurisdiction over Barrett, and due to its failure, in several instances, to state a claim for relief pursuant to Massachusetts law.

## II. ARGUMENT

### A. THE COURT LACKS SUBJECT MATTER JURISDICTION

#### 1. Legal Standard

"In order for a court to have jurisdiction to hear the merits of a case, the plaintiff must have standing to bring the matter." Ahmed v. Hosting.com, 28 F. Supp. 3d 82, 86-87 (D. Mass. 2014); see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990); United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992). Standing cannot be inferred from declarations in the pleadings but must instead be affirmatively established. FW/PBS, Inc., 493 U.S. at 231. In order to establish standing, the plaintiff must satisfy the court that he or she has suffered a "personal injury fairly traceable to the defendant's allegedly unlawful conduct." Hein v. Freedom From Religion Found., 551 U.S. 587, 598 (2007)(quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). The Supreme Court has firmly established that:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant,

3

and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

### 2. This Court Does Not Have Subject Matter Jurisdiction Over Barrett

The Complaint does not offer a single factual allegation challenging the action(s) of Barrett that supposedly caused the harm incurred by the Plaintiff. In stark contrast, however, it repeatedly mentions the injurious conduct of "third part[ies] not before the court," *i.e.* the independent traffickers and smugglers who illegally bring firearms across the border into Mexico.[2] Because the Complaint nowhere identifies the actions of Barrett that caused the Plaintiff's claimed injuries, the Plaintiff cannot demonstrate Article III standing to bring this suit, thereby depriving the Court of subject matter jurisdiction. Furthering this point, the sale or transfer of firearms manufactured by Barrett is legal, so long as those sales or transfers are made to a federal firearms licensee. *See* 18 U.S.C. § 922(a). The Complaint contains no allegations that Barrett violated a federal or state law at any point in time when transferring one of its firearms – let alone when transferring one in Massachusetts. Somewhat speciously, the Complaint provides a list of various laws and regulations with which Barrett must comply [*See* Doc. 1, ¶¶ 54-76], but *never* alleges Barrett actually failed to do so. The fact of the matter is that Barrett's firearms legally and lawfully entered the stream of commerce, and any harm claimed by the Plaintiff because of those firearms being trafficked and smuggled across the Mexican/American border was caused – not by Barrett – but by several independent, intervening and illegal acts. Thus, because the Plaintiff cannot show that its harm was traceable to any actions of Barrett, there is no case or controversy, and the Court

---

[2] The Complaint discusses multiple instances in which firearms were, or were attempted to be, illegally brought across the border, but it does not accuse Barrett of any involvement in those attempts. To illustrate, the Complaint includes the word "smuggle" 13 times and includes some variation of the word "traffic" on no less than ***300 occasions***, but never with a reference to Barrett.

4

is without subject matter jurisdiction. *See, e.g., Turaani v. Wray*, 988 F.3d 313, 318 (6th Cir. 2021)(affirming dismissal of complaint for lack of standing where plaintiff's claimed injuries were too attenuated to create liability against named defendant).

### B. THE COURT LACKS PERSONAL JURISDICTION OVER BARRETT

#### 1. Legal Standard

When the exercise of personal jurisdiction is challenged, the plaintiff bears the burden of establishing that the Court's exercise of personal jurisdiction is proper. <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 50 (1st Cir. 2002). Under the "prima facie" approach for evaluating personal jurisdiction, *i.e.* when a hearing is unnecessary, courts consider whether the plaintiff has "proffered evidence, which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." <u>A Corp. v. All Am. Plumbing, Inc.</u>, 812 F.3d 54, 58 (1st Cir. 2016). Thus, a Plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."[3] <u>United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993). The Plaintiff may not rely on unsupported allegations in its pleadings, but must put forth specific facts to demonstrate that jurisdiction exits. <u>A Corp.</u>, 812 F.3d at 58. Facts offered by the defendant are considered only to the extent that they are not contradicted. <u>Astro-Med, Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 8 (1st Cir. 2009).

For the Court to exercise personal jurisdiction over Barrett, the Plaintiff must prove general or specific jurisdiction. Specific jurisdiction examines the "relationship between the defendant,

---

[3] "Section 3(a) of the Long Arm Statute," Mass. Gen. L ch. 223A, § 3, "asserts specific jurisdiction 'over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business' in Massachusetts." <u>Noonan v. Winston Co.</u>, 902 F. Supp. 298, 302 (D. Mass. 1995). As will be explained further, *infra*, the Fourteenth Amendment's "relatedness" requirement for specific jurisdiction mirrors "the 'arising from' requirement" found in Massachusetts' long arm statute. <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 144 n. 3 (1st Cir. 1995). This brief will therefore primarily address the Fourteenth Amendment's relatedness component necessary for demonstrating personal jurisdiction.

5

the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). As the name implies, general jurisdiction is broader than specific jurisdiction and refers to a State's right to hear "any and all claims" against a defendant, even where the claims are not related to the defendant's affiliations with the forum. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). To exercise specific jurisdiction over a defendant, "the suit must arise out of or relate to the defendant's contacts with the forum." Bristol-Myers Squibb v. Superior Court, 137 S. Ct. 1733, 1780 (2017) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)).

### 2. This Court Does Not Have General Jurisdiction Over Barrett

The United States Supreme Court's decisions in BNSF and Daimler make clear that Barrett is not amenable to general jurisdiction in Massachusetts. General personal jurisdiction may only be exercised over a corporate defendant if the corporate defendant's contacts "are so 'continuous and systematic' that it is essentially 'at home' in the forum state." BNSF, 137 S. Ct. at 1558 (quoting Daimler, 571 U.S. at 136-37 and Goodyear, 564 U.S. at 919). If a court finds that it has general jurisdiction over a defendant, that defendant will be subject to suit in that state for all claims, including claims that do not implicate the defendant's activities there. 571 U.S. at 126-27. As a result, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction." Id. at 137.

To find a corporation "at home"—such that the exercise of general jurisdiction satisfies due process—(1) the corporation may be incorporated in the forum state; (2) the corporation may maintain its principal place of business in the forum state; or (3) there may be some exceptional circumstance that would allow a court to determine the corporation is virtually at home in the forum state. BNSF, 137 S. Ct. at 1558–59 (reaffirming Goodyear and Daimler and explaining that

6

"in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in" the forum). A corporation's state of incorporation and principal place of business are the "paradigm" forums for general jurisdiction over a corporate defendant. BNSF, 137 S. Ct. at 1558 (citing Daimler, 571 U.S. at 126-27 and Goodyear, 564 U.S. at 924). General jurisdiction will not attach outside of these paradigm forums simply because the corporation does business within the forum, even if that business is "substantial, continuous, and systematic." Daimler, 571 U.S. at 137–38 (quotations omitted). Rather, the corporation's presence within the forum must be so substantial—relative to its "nationwide and worldwide" activities, id. at 139 n. 20—as to render the forum the equivalent of the corporation's domicile; a place "in which the corporation is fairly regarded as at home." Goodyear, 564 U.S. at 924; see also Bristol-Myers Squibb, 137 S. Ct. at 1780; Daimler, 571 U.S. at 137 (explaining that for a corporation, the "paradig[m] . . . bases for jurisdiction" are "the place of incorporation and principal place of business," because they are "unique," "easily ascertainable," and "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.").

These cases dictate that this Court lacks general personal jurisdiction over Barrett. Plaintiff admits that Barrett is a Tennessee corporation with its principal place of business in Tennessee. Compl. ¶ 32. Therefore, neither "paradigm" forum is present in this case. This is consistent with other opinions and decisions from state and federal courts throughout the country, which have recognized that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or the principal place of business." Monkton Ins. Services, Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014) (citing Daimler, 571 U.S. at 137 and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411-12 (1984)). Certainly, Barrett has done limited

7

business in Massachusetts. But that is the most that can be said of Barrett's contacts with Massachusetts, and it is well-established that "in-state business … does not suffice to permit the assertion of general jurisdiction." BNSF, 137 S. Ct. at 1559.

### 3. This Court Does Not Have Specific Jurisdiction Over Barrett

The Due Process Clause of the Fourteenth Amendment limits a state court's power to exercise jurisdiction over a defendant and requires that the defendant have sufficient contacts with the forum state such that the "maintenance of the suit is reasonable and does not offend traditional notions of fair play and substantial justice." See Ford Motor Co. v. Montana Eighth Judicial District Court, et al., 141 S. Ct. 1017, 1019 (2021) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)). Specific personal jurisdiction—that is, jurisdiction to hear the matter at issue—may be exercised over a foreign defendant only when the litigation "arise[s] out of or relate[s] to" conduct that the defendant "purposefully directed" at the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotations omitted); see Walden, 571 U.S. at 283–84; Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP, 89 Mass. App. Ct. 718, 722-23 (2016) ("due process provides that in order for a State to exercise specific jurisdiction, it is the defendant's suit-related contacts that must create a substantial connection with the forum."); Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth, 457 Mass. 210, 219 (2010). The obvious corollary being that specific jurisdiction cannot exist where the alleged tortious conduct occurred entirely outside the forum and there is no "connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co., 137 S. Ct. at 1781-82 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").[4]

---

[4] *See also e.g., Walden*, 571 U.S. at 289 (holding that there was no specific jurisdiction where "none of [the defendant's] challenged conduct had anything to do with [the forum] itself."); *Levine v. MacNeil*, 428 F. Supp. 675,

A defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum and must be analyzed regarding the defendant's contacts with the forum itself, not with persons residing there." Walden, 571 U.S. at 283–84 (emphasis in original, citation omitted). "Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294 (1980).

The Plaintiff's Complaint attempts to manufacture specific personal jurisdiction by explicitly claiming – albeit in overtly conclusory fashion – that the "Court has specific personal jurisdiction over Barrett." [Doc. 1, ₱ 45]. In its attempts to have this Court obtain specific personal jurisdiction over Barrett, the Complaint provides only unsupported, conclusory allegations. For example, it claims that Barrett Firearms "regularly mak[es] substantial sales [in Massachusetts]," and that "Barrett's unlawful conduct … resulted in guns that it sold to distributors and dealers being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complaints."[5] Id. The Complaint goes on to state that:

> Barrett's unlawful conduct as alleged throughout this Complaint – including the sales, marketing, advertising and distribution policies and practices that occurred in Middlesex County – resulted in guns that its dealers sold being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains. The Government's claims arise out of Barrett's contacts with Massachusetts; the Government's claims relate to those contacts; and those

---

676 (D. Mass. 1977)(dismissing suit against defendant, for want of personal jurisdiction, where purchase of a car occurred in Massachusetts, but wrongful conduct transpired in New York and the plaintiff's alleged injuries were suffered in Michigan).

[5] The Plaintiff, of course, does not identify this allegedly "unlawful conduct," claiming instead that it is alleged somewhere else in the Complaint's 139 pages and 560 paragraphs.

> contacts give rise to the Government's claims. This Court has specific personal jurisdiction over Barrett.

[Id., ¶ 45]. Noticeably absent from the Complaint: any factual assertions that even a single gun manufactured by Barrett Firearms was sold or transferred in the Commonwealth of Massachusetts and thereafter smuggled into Mexico, which, even if alleged, would not support a cognizable claim for relief against Barrett. Rather, the Complaint discusses sales of Barrett guns in Arizona, Texas, Illinois and Ohio – where conspirators supposedly planned to smuggle those guns into Mexico [See id., ¶¶ 150, 171, 198, 199] – but fails to reference even a single gun sold in Massachusetts that was later recovered at a crime scene or elsewhere in Mexico.

Without such an offering, the Plaintiff has failed to meet its burden of demonstrating the Court's personal jurisdiction over Barrett. Courts throughout the country have "regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contacts with the forum state." Doe v. Del. State Police, 939 F. Supp. 2d 313, 332 (S.D.N.Y 2013) (emphasis original). A plaintiff "cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." GTE New Media Servs., Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998). Courts should not "credit conclusory allegations or draw farfetched inferences" in determining whether they have personal jurisdiction over a defendant. Ticketmaster N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). Given the Complaint's absence of any specific allegations that Barrett's actions inside the Commonwealth of Massachusetts resulted in harm in Mexico, the Plaintiff cannot show that the Court has personal jurisdiction over Barrett. Moreover, and even were the Complaint's allegations supported by non-conclusory factual assertions, those allegations of wrongful conduct would still be far too attenuated to achieve personal jurisdiction over Barrett in Massachusetts. The Complaint should therefore be dismissed in its entirety due to the Court's lack of jurisdiction.

**4. COUNTS TWO, FOUR, SIX, AND NINE MUST BE DISMISSED AS THE PLAINTIFF HAS FAILED TO STATE A CLAIM ENTITLING IT TO RELIEF.**

1. **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." In Re JPMorgan Chase Mortg. Modification Litig., 880 F. Supp. 2d 220, 229 (D. Mass. 2012) citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559. "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted); see also Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007).

2. **Count Two (Public Nuisance) Must Be Dismissed Because Barrett Was Not In Control Of The Instrumentality Of The Nuisance.**

A nuisance is public when it unreasonably interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury." Connerty v. Metro. Dist. Comm'n, 398 Mass. 140, 148 (1986); Leary v. Boston, 20 Mass. App. Ct. 605, 609 (1985). To be found liable for a public nuisance, the defendant must have control over the instrumentality of the nuisance. See Town of Westport v. Monsanto Co., 2015 U.S. Dist. LEXIS 36846, *5-8 (D. Mass. 2015). In this case, there is no allegation that Barrett illegally sold firearms, but rather that its firearms ended up in the illegal market post-sale. Barrett did not have control of the instrumentality of the nuisance after its initial sale and cannot be held liable for public nuisance.

The Plaintiff will likely rely on City of Boston v. Smith & Wesson Corp., 2000 Mass. Super. LEXIS 352 (2000) in which the Court refused to dismiss a public nuisance claim against a gun manufacturer that "intentionally and negligently created and maintained an illegal and

secondary firearms market 'which constituted the necessary instrumentality over the nuisance to maintain liability." Id.at *63. The Court acknowledged that this represented a "unique legal theory in the Commonwealth" and it remains unexamined by Massachusetts higher courts. Id.at *63.

Barrett urges the Court to reject the expansion of public nuisance law to encompass the legal sale of firearms. As the Third Circuit has expressed, "[i]f the public nuisance law were permitted to encompass product liability, nuisance law would become a monster that would devour in one gulp the entire law of tort." Camden County Bd. of Chosen Freeholders v. Beretta, 273 F.3d 536, 540 (3rd Cir. 2001). The Third Circuit explained:

> To connect the manufacture of handguns with municipal crime-fighting costs requires, as noted above, a chain of seven links. This causal chain is simply too attenuated to attribute sufficient control to the manufacturers to make out a public nuisance claim. In the initial steps, the manufacturers produce lawful handguns and make lawful sales to federally licensed gun distributors, who in turn lawfully sell those handguns to federally licensed dealers. Further down the chain, independent third parties, over whom the manufacturers have no control, divert handguns to unauthorized owners and criminal use. The manufacturers may not be held responsible "without a more tangible showing that the defendants were a direct link the causal chain that resulted in the plaintiffs' injuries, and that the defendants were realistically in a position to prevent the wrongs." Hamilton v. Beretta U.S.A. Corp. et al., 96 N.Y.2d 222, 234, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) (finding no duty because gun manufacturers did not control criminals with guns, and injuries were too remote).
>
> A public-nuisance defendant can bring its own conduct or activities at a particular physical site under control. But the limited ability of a defendant to exercise control beyond its sphere of immediate activity may explain why public nuisance law has traditionally been confined to real property and violations of public rights. In the negligence context, this Court recently held that a defendant has no duty to control the misconduct of third parties. See Port Auth. v. Arcadian Corp., 189 F.3d 305, 312-17 (3d. Cir. 1999). We agree with the District Court that this logic is equally compelling when applied in the public nuisance context. See Camden County v. Beretta, 123 F. Supp. 2d at 266. If independent third parties cause the nuisance, parties that have not controlled or created the nuisance

12

> are not liable. See New Jersey Dept. of Envt'l Prot. v. Exxon Corp.,
> 376 A.2d 1339, 1349 (N.J. Super. Ct. 1977).

Id. at p. 541.

This Court should adopt the rationale of the Third Circuit as well as Massachusetts courts that have not extended liability to manufacturers who had ceded control of the instrumentality. See Westport, 2015 U.S. Dist. LEXIS 36846, *5-10.

   3. **Count Four (Negligence Per Se) Must Be Dismissed Because Negligence Per Se Is Not A Cause Of Action Under Massachusetts Law.**

The Plaintiff contends in Count Four of the Complaint that Barrett violated unspecified statutory duties and that the violations proximately caused its injuries. "It has long been the rule in this Commonwealth that violation of a statute does not by itself establish a breach of duty, for it does not constitute negligence per se. Rather, violation of a statute…is only some evidence of the defendant's negligence as to all consequences the statute was intended to prevent." Bennett v. Eagle Brook Country Store, Inc., 408 Mass. 355, 358-59 (1990). The SJC has repeatedly reaffirmed the principle that negligence per se does not exist as a cause of action independent from a general negligence action because violation of the statute can only be some evidence of the defendant's negligence. Lev. v. Beverly Enterprises Massachusetts, Inc., 457 Mass. 234, 245 (2010); Deutsche Lufthansa AG v. Mass Port, 2018 U.S. Dist. LEXIS 119580, *4-5 (2018). Count Four, therefore, must be dismissed for failure to state a claim. Deutsche Lufthansa AG, 2018 U.S. Dist. LEXIS 119580, *4-5.

   4. **Count Six (Unjust Enrichment) Must Be Dismissed Because The Plaintiff Fails To Allege Any Benefit Conferred Upon By The Plaintiff.**

In Massachusetts, a claim for unjust enrichment is quasi-contractual in nature. Klevisha v. Provident Funding Assocs. L.P., 167 F. Supp. 3d. 250, 257 (D. Mass. 2016). It does not require consideration, but there must be "unjust enrichment of one party and unjust detriment to another

party." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, 552 F.3d 47, 57 (1st Cir. 2009) citing Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, 412 F.3d 215, 234 n.7 (1st Cir. 2005) (internal quotation marks and citations omitted); see also 26 Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:5 (4th ed. 1993) (establishing that unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value); Stevens v. Thacker, 550 F. Supp.2d 161, 165 (D. Mass. 2008). Massachusetts courts emphasize the primacy of equitable concerns in a finding of unjust enrichment or quasi-contract: "[C]onsidertions of equity and morality play a large part in constructing a quasi contract." Salamon v. Terra, 394 Mass. 857 (Mass. 1985). In addition, as unjust enrichment is an equitable remedy, it is not available to parties with an adequate remedy at law. Sazerac Co. v. Smith, 2015 U.S. Dist. LEXIS 191555, *14-15 (D. Mass. 2015).

The Complaint fails to allege that the Plaintiff conferred any benefit upon Barrett for which it did not receive compensation. Rather, it contends that Barrett was aware that its firearms were illegally trafficked into Mexico *without* the consent of the Mexican government. There can be no finding of a quasi-contract or unjust enrichment absent any benefit conferred by the Plaintiff. Moreover, the Plaintiff's negligence and product defect claims would provide an adequate remedy at law if it is successful in proving its claims. Fernandes v. Havken, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (finding the plaintiff's negligence claim provided a remedy at law precluding a claim for unjust enrichment). As such, the unjust enrichment count should be dismissed.

Any effort by the plaintiff to rely on the Superior Court decision in City of Boston v. Smith & Wesson Corp., 2000 Mass. Super. LEXIS 352 is unavailing. In that case, unlike here, the

plaintiff expressly alleged benefits it conferred on the defendant.  Id. at *78-79.  In addition, it does not appear that the Court in City of Boston considered the alternative remedies available to the plaintiff at law that would preclude the unjust enrichment claim.

5. **Count Nine (Punitive Damages) Must Be Dismissed Because Punitive Damages Are Not Recoverable Under Massachusetts Law.**

Punitive damages are not recoverable in Massachusetts absent statutory authority. International Fid. Ins. Co. v. Wilson, 443 N.E.2d 1308 (1983).  The plaintiff fails to cite a statutory basis for its punitive damages claim in the Complaint, nor is there any Massachusetts statute that would permit recovery of punitive damages in this case.  As such, Count Nine must be dismissed.

REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Barrett hereby requests oral argument because it is likely to assist the Court in resolving the Motion.

Respectfully Submitted,

*Attorneys for Barrett Firearms*:

s/ James W. Porter, II
James W. Porter, II (Admitted PHV)
jwporterii@pphlaw.net
Richard Warren Kinney (Admitted PHV)
wkinney@pphlaw.net
**Porter, Porter & Hassinger, P.C.**
880 Montclair Road, Ste. 175
Birmingham, AL 35213

s/ James M. Campbell
James M. Campbell (BBO No. 541882)
jmcampbell@Campbell-trial-lawyers.com
Trevor J. Keenan (BBO No. 652508)
keenan@Campbell-trial-lawyers.com
**CAMPBELL CONROY & O'NEIL, P.C.**
1 Constitution Wharf, Suite 310
Boston, MA 02129

## LOCAL RULE 7.1 (A)(2) CERTIFICATION

THIS IS TO CERTIFY that the undersigned counsel conferred in good faith with counsel for the Plaintiff, Jonathan Lowy, on November 18, 2021 via email before filing this Motion, and Mr. Lowy advised that the Plaintiff will not assent to this motion.

s/ R. Warren Kinney
R. Warren Kinney (Admitted PHV)

## CERTIFICATE OF SERVICE

On November 22, 2021, I, James W. Porter, II, filed electronically and served by mail on anyone unable to accept electronic filing the foregoing document. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

s/ James W. Porter, II
James W. Porter, II (Admitted PHV)