UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ESTADOS UNIDOS MEXICANOS,
            Plaintiff,

vs.

SMITH & WESSON BRANDS, INC.;                     Civ. No.  1:21-cv-11269-FDS
BARRETT FIREARMS MANUFACTURING,
INC.; BERETTA U.S.A. CORP.; BERETTA
HOLDING S.P.A.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC;
GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.;
WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,
            Defendants

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
DEFENDANT GLOCK, INC. TO DISMISS THE COMPLAINT
PURSUANT TO FRCP 12(b)(2)**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................................................................... 1

**FACTS AS ALLEGED IN THE COMPLAINT** ........................................................... 2

I.   Plaintiff's Jurisdictional Allegations ........................................................................ 2

II.  Specific References to Glock Pistols Allegedly Trafficked into Mexico .............. 4

**LEGAL STANDARD** ........................................................................................................ 5

**ARGUMENT** ........................................................................................................................ 6

I.   General Jurisdiction ................................................................................................... 6

II.  Specific Personal Jurisdiction .................................................................................. 7

     A.   Glock's Contacts with the State of Massachusetts are Attenuated and Indirect ........... 9

     B.   It is Unreasonable for this Court to Exercise Personal Jurisdiction Over Glock ........ 12

**CONCLUSION** ................................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

Cases                                                                                    Page(s)

*A Corp. v. All Am. Plumbing, Inc.*,
   812 F.3d 54 (1st Cir. 2016)........................................................................................... 6

*Abramski v. United States*,
   573 U.S. 169 (2014) ................................................................................................. 11

*Adelson v. Hananel*,
   510 F.3d 43 (1st Cir. 2007)........................................................................................ 8

*Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp.*,
   361 Mass. 441, 280 N.E.2d 423 (1972)..................................................................... 7

*Bristol-Myers-Squibb Co. v. Super. Ct. of Calif.*,
   137 S. Ct. 1773 (2017)........................................................................................ 8, 10

*Brown v. Dash*,
   2020 WL 6806433 (D. Mass. Nov. 18, 2020) ....................................................... 7, 8

*Chaturvedi v. Siddharth*,
   2021 WL 664129 (D. Mass. Feb. 19, 2021) ............................................................ 5

*D.S. Brown Co. v. White-Schiavone, JV*,
   2021 WL 1670264 (D. Mass. Apr. 28, 2021)......................................................... 11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2015) ............................................................................................. 6, 7

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
   290 F.3d 42 (1st Cir. 2002)................................................................................... 5, 7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017, (2021)......................................................................................... 10

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*,
   46 F.3d 138 (1st Cir. 1995)................................................................................... 5, 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ......................................................................................... 6, 7, 8

*Grice v. VIM Holdings Grp., LLC*,
   280 F. Supp. 3d 258 (D. Mass. 2017)................................................................... 6, 8

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st Cir. 2005) ............................................................................... 9, 11

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945) ............................................................................................ 7

*Katz v. Spiniello Companies*,
  244 F. Supp. 3d 237 (D. Mass. 2017) ........................................................... 10, 13

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
  2021 WL 2982866 (D. Mass. July 15, 2021) ..................................................... 12

*Lawson v. Law Office of Shawn Whittaker, PC*,
  2010 WL 4455823 (D.R.I. 2010) ....................................................................... 12

*Mateo v. Univ. Sys. of New Hampshire*,
  2019 WL 199890 (D. Mass. Jan. 14, 2019) .......................................................... 9

*Mueller Sys., LLC v. Robert Teti & Itet Corp.*,
  199 F. Supp. 3d 270 (D. Mass. 2016) ................................................................ 12

*Nowak v. Tak How Inv., Ltd.*,
  94 F.3d 708 (1st Cir. 1996) ............................................................................... 12

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.*,
  196 F.3d 284 (1st Cir. 1999) ............................................................................... 9

*Saeed v. Omex Sys., Inc.*,
  2017 WL 4225037 (D. Mass. Sept. 22, 2017) .................................................... 12

*Sawtelle v. Farrell*,
  70 F.3d 1381 (1st Cir. 1995) ............................................................................. 13

*Solta Med.*, Inc.,
  454 F. Supp. 3d (D. Mass. 2020) ...................................................................... 12

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009) ......................................................................... 12

*Ticketmaster–New York, Inc. v. Alioto*,
  26 F.3d 201 (1st Cir.1994) ....................................................................................

*United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*,
  960 F.2d 1080 (1st Cir. 1992) ............................................................................. 9

*United States v. Swiss, Am. Bank, Ltd.*,
  274 F.3d 610 (1st Cir. 2001) ........................................................................... 5, 6

Rules

Federal Rule of Civil Procedure 12(b)(2) ................................................................................. 5, 13

## **INTRODUCTION**

Plaintiff Estados Unidos Mexicanos ("Plaintiff") brings this action seeking relief from Defendant Glock, Inc. ("Glock") and other defendants on the grounds that they are in some way responsible for the illegal trafficking of firearms into Mexico and, by extension, the violence and crime committed by Mexican drug cartels and criminals in that country. More specifically, Plaintiff alleges that the vast majority of illegal firearms used by Mexican cartels are illegally trafficked from the U.S., and defendants are the manufacturers of the firearms that are most often recovered at crime scenes. Despite the allegations that the illegal flow of firearms comes from across the borders with Texas, Arizona and California, Plaintiff alleges this Court has personal jurisdiction over Glock based solely on legal firearms sales by Glock to Defendant Witmer Public Safety Group, Inc., previously Interstate Arms Corp. ("Witmer"), without specifically identifying any such firearms that were recovered in Mexico.

The Complaint's implausible allegations not only fail to identify any cognizable theory of recovery,[1] they also fail to establish any connection between Plaintiff's claims and Glock's contacts with the forum state of Massachusetts. Plaintiff devotes over one hundred pages of the Complaint to baseless allegations that defendants, including Glock, "design, market, distribute, and sell guns in ways they know routinely arm the drug cartels" and that defendants are "deliberate and willing participants" in the "killing and maiming" of Mexican citizens. Comp. ¶¶ 3, 15, 16.  However, a thorough review of the allegations reveals that Plaintiff's jurisdictional allegations are too attenuated and do not adequately support jurisdiction over Glock.

---

[1] Arguments regarding the substance of Plaintiff's claims are addressed in a separately filed Joint Memorandum of Law in Support of Glock's Motion to Dismiss.

Glock is not "at home" in the Commonwealth. There is no general personal jurisdiction over Glock in this Court. Further, despite its inordinate length, the Complaint fails to set forth any colorable allegation explaining how Plaintiff's injuries, occurring in Mexico, "relate to or arise from" Glock's contacts with Massachusetts. Limited contacts without a nexus to the claimed injury will not suffice. To establish specific jurisdiction over Glock, Plaintiff must establish the following: 1) the claim must directly arise out of, or relate to, the defendant's forum-state activities; 2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state; and 3) the exercise of jurisdiction must be reasonable. As set forth below, Plaintiff cannot meet its burden and there is no specific personal jurisdiction over Glock. Plaintiff's Complaint should be dismissed as against Glock for lack of personal jurisdiction.

## FACTS AS ALLEGED IN THE COMPLAINT

### I.     Plaintiff's Jurisdictional Allegations

The Mexican Government has brought this action before this District Court, located over 2,000 miles away, for "actionable" harm that it admits occurred entirely within its own borders. *See* Comp. ¶ 27. While acknowledging that illegally trafficked firearms found in Mexico were originally manufactured and sold in other states, Plaintiff makes the unsubstantiated claim that Massachusetts is the "source" of the "flow of guns into Mexico." *See* Comp. ¶ 28. Plaintiff generally states that Glock sold firearms to Witmer that were then trafficked into Mexico and used in criminal activities. *See* Comp. ¶¶ 32-39.

Plaintiff correctly notes that Glock is incorporated in Georgia and has a principal place of business in Smyrna, Georgia. *See* Comp. ¶ 37. Plaintiff then alleges that Glock "regularly conducts business in this District, including by regularly making substantial sales to Defendant Interstate

Arms…" *Id*. Plaintiff claims that Glock's alleged "unlawful conduct <u>as alleged below</u>" resulted in the illegal trafficking of firearms that Glock had originally sold to Witmer and other unspecified "distributors and dealers" *Id*. (emphasis added). However, Plaintiff never specifically details any "unlawful conduct" by Glock in the 523 paragraphs that follow, other than sweeping, generalized and unsupported claims related to machineguns, aiding and abetting the criminal actions of unscrupulous dealers, and even violations of Mexican based laws that have nothing to do with Glock's sales to Witmer. See Comp. ¶¶ 309-313, 208, 250 and 55-64.

In an attempt to establish personal jurisdiction against all of the out-of-state defendants, Plaintiff alleges that each such defendant,

> "purposefully availed itself of the privilege of conducting activities within Massachusetts, including by systematically serving the gun market here; regularly marketing and advertising its products here; regularly making substantial sales to Defendant Interstate Arms in Middlesex County; and imposing the policies and practices by which it sells guns to Interstate Arms in Middlesex County and by which Interstate Arms must sell those guns to dealers throughout the U.S."

Comp. ¶ 42. Plaintiff further alleges that the defendants' "unlawful conduct… resulted in guns that each of them sold to Defendant Interstate Arms in Middlesex County being trafficked into Mexico and used in criminal activities there…" No further specification is given regarding this "unlawful conduct." Plaintiff also claims that ten other unidentified Massachusetts firearm dealers sold firearms that were subsequently traced to crimes in Mexico. *See* Comp. ¶ 43. Those dealers allegedly sold firearms that were "manufactured" by "some or all of the Defendants." *Id*. Plaintiff concludes that its claims "arise out of Defendants' contacts with Massachusetts; [its] claims relate to those contacts; and those contacts give rise to [its] claims," and therefore, this Court has specific personal jurisdiction over each defendant. Comp. ¶ 44.

II.     **Specific References to Glock Pistols Allegedly Trafficked into Mexico**

Plaintiff provides graphically detailed narratives of violent encounters between the cartels, the government, and Mexican civilians during which illegally trafficked firearms were allegedly involved. *See* Comp. Sections V(C) and (D). The Complaint references only four specific instances where Glock pistols were allegedly recovered from the cartels or found at crime scenes in Mexico. *See* Comp. ¶¶ 159, 165, 169, 223. In particular, Plaintiff alleges that:

- One "prolific straw purchaser" purchased Glock pistols and AK-47s from dealers in New Mexico which were then sold to Cartel members and two of those Glock pistols were later seized from the Cartel. *See* Comp. ¶ 159.

- In 2015 a California trafficking ring was broken up that had sold Glock pistols and other rifles to the Sinaloan cartel. *See* Comp. ¶ 165.

- From 2017 to 2018 a straw purchaser purchased five Glock pistols and over one hundred other rifles and pistols from big box stores located in Arizona which were then sold to criminals in Mexico. *See* Comp. ¶ 169

- That during the arrest of Ovidio Guzman Lopez, Cartel members used a variety of firearms, including Glock pistols, against the Mexican National Guard, the Mexican Army, and police officers. Plaintiff does not state where those particular Glock pistols were originally purchased. *See* Comp. ¶¶ 222 and 223.

Of note, these claimed examples of straw purchases and trafficking activity involving Glock pistols occurred in border states, and were perpetrated by individuals with no relationship to Glock or Witmer, or any connection to the Commonwealth of Massachusetts. Plaintiff concedes that from 2014 to 2018, 75% of all U.S.-origin guns recovered in Mexico were traced to Texas, California, or Arizona. *See* Comp. ¶ 194. Plaintiff fails to provide any examples where a Glock pistol sold to

4

Witmer, or any other Massachusetts dealer or distributor, was subsequently recovered from a crime

scene in Mexico. Instead, Plaintiff vaguely claims that Witmer "has had significant numbers of its

guns traced to Mexico" and "at least 10 other Boston-area dealers had such traces." There is no

allegation that Glock pistols were among those traced firearms. [2]

## **LEGAL STANDARD**

The plaintiff bears the burden of establishing that this Court has personal jurisdiction over

the defendants and it must demonstrate each jurisdictional requirement. *See Chaturvedi v.*

*Siddharth*, No. CV 20-11880-FDS, 2021 WL 664129, at *4 (D. Mass. Feb. 19, 2021), citing

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002);

*United States v. Swiss, Am. Bank, Ltd*., 274 F.3d 610, 618 (1st Cir. 2001). Federal Rule of Civil

Procedure 12(b)(2) provides for dismissal of an action for lack of personal jurisdiction. In

considering this motion to dismiss, the Court may choose among several standards to assess

whether plaintiff has carried its burden: the "prima facie" standard; the "preponderance-of-the-

evidence" standard; or the "likelihood" standard. *See id.*; *Foster-Miller, Inc. v. Babcock & Wilcox*

*Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995).

---

[2] "Firearms tracing begins when ATF or another law enforcement agency discovers a firearm at a crime scene and wants to learn where it came from. [ATF] receives the trace request and uses the gun's serial number to identify its original manufacture or importer. From their records, [ATF] is able track the firearm through the wholesale and resale distribution chain to its first retail purchaser."  *See* https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-tracing-center. "

"Firearm traces are designed to assist law enforcement authorities in conducting investigations by tracking the sale and possession of specific firearms. Law enforcement agencies may request firearms traces for any reason, and those reasons are not necessarily reported to the Federal Government. **Not all firearms used in crime are traced and not all firearms traced are used in crime.**" *See ATF-Central America Tracing Statistics (2016) (emphasis added),* https://www.atf.gov/file/118236/download.

"A crime gun trace alone does not mean that an FFL or firearm purchaser has committed an unlawful act. Crime gun trace information is used in combination with other investigative facts in regulatory and criminal enforcement." *See Youth Crime Gun Interdiction Initiative Report 1999, Introduction, p. 4*,  https://www.atf.gov/resource-center/docs/ycgii-report-1999-introductionpdf-0/download

The prima facie standard is relevant and applicable here since this Court is being requested to make an assessment without first holding an evidentiary hearing. *See Chaturvedi, 2021 WL 664129, at *4; United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, this Court will accept the plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim." *Id., quoting A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). However, "a plaintiff may not rely on unsupported allegations in [its] pleadings." *Id.* "Conclusory allegations or farfetched inferences in the pleading will not be sufficient to make a prima facie showing of personal jurisdiction." *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 269 (D. Mass. 2017), quoting *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir.1994). "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.*, quoting *Foster-Miller*, 46 F.3d at 145.

## ARGUMENT

## I.   General Jurisdiction

"[A] court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  It is not enough for a company to engage in regular and systematic sales within a state to subject it to general jurisdiction within that state. Those sales most be so great and so continuous, that the forum state is essentially the company's "home."  As such, courts have held that the place of incorporation and its principal place of business are essentially the only jurisdictions where a corporation can be sued using a general jurisdiction analysis. *See Daimler AG v. Bauman*, 571 U.S. 117 (2015).

As is set forth in the Complaint, Glock is incorporated in Georgia and has a principal place of business in Smyrna, Georgia. *See* Comp. ¶ 37. It does not maintain a physical presence in Massachusetts and Plaintiff has not asserted that this Court has general personal jurisdiction over Glock. *See* Comp. ¶ 44. Accordingly, the Court's sole inquiry on personal jurisdiction as to Glock is the issue of specific personal jurisdiction.

## II.    <u>Specific Personal Jurisdiction</u>

When deciding whether to exercise specific personal jurisdiction, the Court must first look to the granting provisions of a state's long-arm statute. The Supreme Judicial Court of Massachusetts has found the state's long-arm statute confers "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972). As such, this Court may "sidestep the statutory inquiry" and proceed directly to the Due Process analysis. *Brown v. Dash*, No. CV 20-10980-FDS, 2020 WL 6806433, at *7 (D. Mass. Nov. 18, 2020), quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002).

A court may exercise personal jurisdiction under the Due Process Clause when "the defendant has maintained certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "Since *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced roll.'" *Daimler*, 571 U.S. at 128 (quoting *Goodyear*, 564 U.S. at 925 (internal citation omitted)). Specific jurisdiction has centered on a "court's ability to hear claims against out-of-state defendants when the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum." *Id.* "In other words, there

must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"   *Bristol-Myers-Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773, 1780 (2017). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."   *Id.* at 1781; *see also Goodyear*, 564 U.S. at 930 n. 6 ("Even regularly occurring sales of a product in a State do not justify the exercise of personal jurisdiction over a claim unrelated to those sales."). Thus, even if Glock made "regular" sales to Witmer, or other distributors or retailers within the Commonwealth, those sales alone would not "justify the exercise of personal jurisdiction" over Glock for harm caused that is unrelated to those sales. *Id*.

The First Circuit adopts a three-part inquiry to determine whether a Court is authorized to assert specific personal jurisdiction over an out-of-state defendant. *See Grice*, 280 F. Supp. 3d at 269.

> *First*, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. *Second*, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. *Third*, the exercise of jurisdiction must, in light of the "Gestalt" factors, be reasonable.

*Brown*, 2020 WL 6806433, at *8, quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (*emphasis added*). Plaintiff has failed to present any factually supported allegations demonstrating that its claims "arise out of" or "relate to" Glock's contacts or activity within the forum state. Further, an analysis of the relevant Gestalt factors weighs against subjecting Glock to personal jurisdiction in this matter.

### A.  Glock's Contacts with the State of Massachusetts are Attenuated and Indirect

"Questions of specific jurisdiction are always tied to the particular claims asserted." *Mateo v. Univ. Sys. of New Hampshire*, No. CV 18-11953-FDS, 2019 WL 199890, at *5 (D. Mass. Jan. 14, 2019), quoting *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999); *see United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) ("[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case."). "The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection." *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005). Personal jurisdiction should not be exercised "whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." *Id*.

The causes of action against Glock are based on the following alleged series of events:  (1) Glock legally sold firearms to Witmer in Massachusetts; (2) Witmer then legally sold Glock firearms to unidentified federally licensed retail firearm dealers throughout the United States; (3) those retail firearm dealers then transferred the Glock firearms to non-licensed and unidentified persons; (4) a percentage of the persons acquiring the Glock firearms from the retail dealers did so unlawfully with the intent to smuggle those firearms into Mexico or transfer the firearms to others who planned to do so; (5) once in Mexico, the firearms were then illegally transferred to still other third parties; and finally, (6) the persons ultimately acquiring the firearms in Mexico then used them in criminal activity to harm Mexican citizens. (Comp. at ¶ 41.)

Plaintiff's improbable claim that cartel-related firearm violence in Mexico is the direct result of Glock's lawful sales of pistols has no relation to Glock's contacts with Massachusetts. As alleged in the Complaint, the entirety of Plaintiff's harm occurs outside this District and is the

result of intervening criminal activity that is also occurring outside the District. There are no allegations that Glock or its distributors have any relationship with these criminal third-party traffickers, straw purchasers or cartel members, nor is there any allegation that Glock is somehow implicated in illegal firearms transactions occurring in the District. Bare allegations that Glock legally sold certain firearms to a Massachusetts based distributor, and then after multiple legal sales and transfers by independent entities unaffiliated with Glock, as well as illegal ones by straw purchasers and smugglers, those same firearms eventually made their way into the hands of criminals in Mexico, clearly describe an "attenuated" and "indirect" chain of events which fall far short of "establishing a causal relationship between Plaintiffs' claim and Defendants' forum-related conduct." *Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 244 (D. Mass. 2017). Improper inferences and conclusory allegations sprinkled throughout the Complaint cannot form the basis for personal jurisdiction. The United States Supreme Court has condemned similar forum-shopping attempts by plaintiffs in search of preferential treatment. S*ee Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1024, (2021), citing *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.,* 137 S.Ct. at 1779.

  As noted above, the Complaint also lacks factual support for claims that Glock's "unlawful conduct" resulted in the illegal trafficking of firearms that Glock had originally sold to Witmer and other "distributors and dealers." *See* Comp. ¶ 37. First, there are no specific details or facts demonstrating that some, or any, of the Glock pistols sold to Witmer were subsequently trafficked to criminals in Mexico. Second, Plaintiff's casual references to "other distributors and dealers" that Glock did business with fails to identify who these distributors and dealers are and, more importantly, where they are located. Glock's sales to dealers and distributors in other states would have nothing to do with Glock's contacts with Massachusetts or Witmer.

Similarly, Plaintiff's claim that Witmer "has had significant numbers of its guns traced to Mexico" and "at least 10 other Boston-area dealers had such traces" does not establish that Glock pistols were among those traced firearms. Again, Plaintiff does not identify these Boston-area dealers, nor does it allege that Glock had any contacts with those dealers. Even if the Massachusetts based distributor sold Glock pistols to some of the unnamed dealers, there is no allegation that any Glock firearms recovered in Mexico were traced back to those dealers. These types of allegations do not implicate Glock's nexus with Massachusetts and should have no bearing on the Court's "relatedness" inquiry.

Of the limited factual examples in the Complaint involving Glock pistols, none include allegations that the recovered pistols were sold in or distributed through Massachusetts. *See* Comp. ¶¶ 159, 165, 169, and 223. In particular, Plaintiff references straw purchasers[3] who bought Glock pistols in New Mexico and Arizona, a California trafficking ring that sold Glock pistols, and a gunfight in Mexico where Glock pistols of unknown origin were recovered. *Id*. Even if the four examples cited by Plaintiff provided grounds for a viable claim against Glock - which they do not - at most the claims would relate to Glock's contacts with those other states. *see D.S. Brown Co. v. White-Schiavone, JV*, No. CV 19-30095-NMG, 2021 WL 1670264, at *5 (D. Mass. Apr. 28, 2021) (Defendant's manufacture and sale of purportedly defective concrete implicated Texas, where it was manufactured, and Ohio, where it was sold, but not Massachusetts). Given the total absence of a material connection between Plaintiff's claims and Glock's forum-based activity, this Court should find that Plaintiff has completely failed to meet its prima facie burden and dismiss this matter against Glock for lack of personal jurisdiction. *See Harlow*, 432 F.3d at 61.

---

[3] The U.S. Supreme Court has explained that a "straw purchase" occurs when someone "buys a gun on someone else's behalf while falsely claiming that it is for himself." *Abramski v. United States*, 573 U.S. 169, 171-72 (2014).

**B.  It is Unreasonable for this Court to Exercise Personal Jurisdiction Over Glock**

The "reasonableness" inquiry is based on a balancing of the following Gestalt factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Solta Med*., Inc., 454 F. Supp. 3d at 116–17 (D. Mass. 2020), quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009). "The purpose of the Gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." *Nowak v. Tak How Inv., Ltd*., 94 F.3d 708, 717 (1st Cir. 1996). "'[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 2982866, at *11 (D. Mass. July 15, 2021), quoting *Ticketmaster*, 26 F.3d at 210.

Gestalt factors (1), (4) and (5) are either irrelevant to the analysis or do not favor either side. With respect to the second factor, Massachusetts should have no interest in adjudicating a matter where the alleged conduct <u>and</u> harm occurred entirely outside of its borders. *See Saeed v. Omex Sys., Inc.,* No. 16-CV-11715-ADB, 2017 WL 4225037, at *7 (D. Mass. Sept. 22, 2017); *Lawson v. Law Office of Shawn Whittaker, PC*, 2010 WL 4455823, at *4 (D.R.I. 2010) (holding that forum state's interest in adjudicating matter was "diminished to some extent by the fact that all of the alleged conduct occurred out of state"); *see also Mueller Sys., LLC v. Robert Teti & Itet Corp*., 199 F. Supp. 3d 270, 279 (D. Mass. 2016) ("While Massachusetts has an interest in affording justice when an injury has occurred within its borders, the state's interest is less clear

when the dispute involves a Canadian citizen, an Ontario corporation and a Delaware corporation."). To be sure, the concern over illegal trafficking of firearms into Mexico is shared nationally. It is not unique to Massachusetts. However, there are no allegations that any Massachusetts citizens suffered harm related to the alleged conduct in the Complaint. Moreover, the Complaint contains no allegations of illegal sales by Glock or Witmer in Massachusetts. Massachusetts lacks any real interest in adjudicating these claims.

The third factor also weighs against Plaintiff notwithstanding that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). While deference is given to the plaintiff's choice of forum, the third Gestalt factor weighs in favor of the defendant where plaintiff is not a citizen of Massachusetts. *See Katz*, 244 F. Supp. 3d at 248–49 (D. Mass. 2017). Furthermore, Smith & Wesson Brands, Inc. and Witmer's presence in the Commonwealth are non-issues, since "the fact that other defendants may be subject to jurisdiction in Massachusetts does not tip the scales in favor of the Plaintiff under this prong." *Id.*

Since the second and third factors weigh against exercising jurisdiction over Glock and the remaining factors are irrelevant or do not tip the balance to any perceptible degree, it is unreasonable for Plaintiff to hale Glock into the jurisdiction of this Court.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Glock, Inc. respectfully requests that the Court grant its Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Dated: White Plains, New York
        November 22, 2021

Respectfully submitted,

*/s/ Peter M. Durney*
Peter M. Durney, BBO No. 139260
pdurney@cornellgollub.com
Patricia A. Hartnett, BBO No. 568206
phartnett@cornellgollub.com
CORNELL & GOLLUB
88 Broad Street, Sixth Floor
Boston, MA 02110
T: (617) 482-8100
F : (617) 482-3917

*/s/ Jeffrey Malsch*
John F. Renzulli (phv)
jrenzulli@renzullilaw.com
Christopher Renzulli (phv)
crenzulli@renzullilaw.com
Jeffrey Malsch (phv)
jmalsch@renzullilaw.com
RENZULLI LAW FIRM LLP
One North Broadway, Suite 1005
White Plains, NY 10601
T: (914) 285-0700
F. (914) 285-1213

## CERTIFICATE OF SERVICE

I, Jeffrey Malsch, hereby certify that on this 22nd day of November, 2021, I caused copies of the foregoing to be served via the Court's electronic filing system upon all counsel of record and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jeffrey Malsch*
Jeffrey Malsch
jmalsch@renzullilaw.com

14