UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO: 1:21-CV-11269-FDS

ESTADOS UNIDOS MEXICANOS
     Plaintiff,

v.

SMITH & WESSON BRANDS, INC.;
BARRETT FIREARMS MANUFACTURING,
INC.; BERETTA U.S.A. CORP.; BERETTA
HOLDING S.P.A.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC;
GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.;
WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,
     Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
COLT'S MANUFACTURING COMPANY LLC'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    **I.**    THE COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT TO
WARRANT THE EXERCISE OF PERSONAL JURISDICTION OVER
COLT. ........................................................................................................... 4

        **A.**    Colt's Alleged Contacts with Massachusetts Are Not Directly Related to
Mexico's Claims Based on Criminal Use of Firearms by Third Parties in
Mexico. ................................................................................................. 5

        **B.**    The Exercise of Personal Jurisdiction over Colt based on Mexico's
Claims Would Be Unreasonable. ......................................................... 8

    **II.**    MEXICO'S CLAIM AGAINST COLT FOR VIOLATION OF CUTPA
MUST BE DISMISSED FOR LACK OF STANDING AND FAILURE TO
STATE A CLAIM. ........................................................................................ 10

        **A.**    Mexico Lacks Standing to Assert Its CUTPA Claim Against Colt. ................. 10

        **B.**    The Remote Nature of Mexico's Claims Preclude a Finding of
Proximate Cause for Its CUTPA Claims as a Matter of Law. ........................ 11

        **C.**    Mexico's CUTPA Claim Is Precluded by the PLCAA. .................................... 14

        **D.**    The CUTPA Claim Is Prohibited by the First Amendment. ............................ 16

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

Page

## Cases

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016) .................................................. 3, 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Barrett v. Lombardi*, 239 F.3d 23 (1st Cir. 2001) ........................................................................ 3

*Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) (en banc) ................................. 18

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................................ 18, 19

*Brown v. Aero Glob. Logistics, LLC*, No. 19-CV-12153-DJC,
     2020 WL 2527799 (D. Mass. May 18, 2020) ........................................................................ 5

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ................................................................... 18

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*,
     295 F.3d 59 (1st Cir. 2002) ..................................................................................................... 5

*Carey v. Population Servs., Int'l*, 431 U.S. 678 (1977) .............................................................. 18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
     447 U.S. 557 (1980) ............................................................................................................... 17

*Chen v. U.S. Acad., Inc.*, 956 F.3d 45 (1st Cir. 2020) ................................................................. 3

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) ............................... 14, 15

*Connick v. Myers*, 461 U.S. 138 (1983) ..................................................................................... 17

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1 (1st Cir. 2016) ...................................... 5

*Cossart v. United Excel Corp.*, 804 F.3d 13 (1st Cir. 2015) ........................................................ 3

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
     958 F.3d 38 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2624 (2021) ................................... 10, 11

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ....................................... 6

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995) ........................... 3

*Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 780 A.2d 98 (2001) .......................... 11, 12, 13

*Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1 (1st Cir. 2018) ....................................................... 4

*Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005) ........................................................ 5, 8

*Hess v. Indiana*, 414 U.S. 105 (1973) ......................................................................................... 19

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ............................................................ 14, 15, 16

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ......................................................... 19

*Jones v. Bock*, 549 U.S. 199 (2007) ....................................................................................... 16, 17

*Katz v. Spiniello Cos.*, 244 F. Supp. 3d 237 (D. Mass. 2017) ...................................................... 9

*Killion v. Commonwealth Yachts,* 421 F. Supp. 2d 246 (D. Mass. 2006) ...................................... 3

*Kingston v. AngioDynamics, Inc.*, No. 21-CV-10234-DJC,
   2021 WL 3022320 (D. Mass. July 16, 2021) ................................................................ 4

*Lorillard Tobacco Co.* v. *Reilly*, 533 U.S. 525 (2001) ........................................... 17, 18

*McCoy v. Stewart*, 282 F.3d 626 (9th Cir. 2002) ........................................................ 19

*Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87 (D. Mass. 2018) ................................. 8

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ................................... 17

*Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19 (1st Cir. 2007) ...................... 5

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................... 17

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) ..................................... 6, 9

*Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91 (1990) ..... 17

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284 (1st Cir. 1999) ..... 3

*Phillips v. Prairie Eye Ctr.*, 530 F.3d 22 (1st Cir. 2008) ........................................ 4, 5

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376 (1973) ...... 17

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ........................................................ 8

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) ......................................... 10, 11

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................... 17

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ....................................................... 17

*Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53,
   202 A.3d 262, *cert. denied*, 140 S. Ct. 513 (2019) ...................................... 13, 15, 16

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002) ............................................ 17

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) ...................... 5, 8, 9

*Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645 (2017) ................................... 11

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
   960 F.2d 1080 (1st Cir. 1992) ................................................................................ 5, 8

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001) ...................... 3, 6

*Vacco v. Microsoft Corp.*, 260 Conn. 59, 793 A.2d 1048 (2002) ............................... 11

<u>Constitution and Statutes</u>

U.S. Const. amend. I ....................................................................................... 10, 16, 19

15 U.S.C. § 7902(a) .................................................................................................. 14

15 U.S.C. § 7903(5)(A) ............................................................................................. 14

Conn. Gen. Stat. §§ 42-110a, *et seq* ................................................................... passim

## INTRODUCTION

Defendant Colt's Manufacturing Company LLC ("Colt") moves to dismiss the Complaint against it pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). The claims asserted by Plaintiff Estados Unidos Mexicanos ("Mexico") are not sufficiently related to Colt's alleged contacts with Massachusetts to support specific jurisdiction, and exercising personal jurisdiction over Colt would not be reasonable under the circumstances. Moreover, in addition to the grounds stated in the Defendants' Joint Memorandum of Law in Support of Defendants' Motions to Dismiss ("Joint Memorandum"), Mexico's claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* ("CUTPA") asserted against Colt must be dismissed for lack of standing and because, as a matter of law, Plaintiff cannot allege proximate cause. The CUTPA claim is also barred by a proper application of the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901, *et seq*. ("PLCAA"). And finally, even if Mexico had asserted a valid claim under CUTPA, that claim would be precluded by the First Amendment, which protects commercial speech like Colt's advertising challenged by Mexico.

## BACKGROUND

Mexico asserts that the Court has specific personal jurisdiction over Colt because of its alleged contacts with Massachusetts resulting from its sales of firearms to Interstate Arms, whose assets were acquired by Witmer Public Safety Group in 2018 ("Witmer"). (Comp. ¶¶ 36, 40-42, 44.) Mexico makes only conclusory allegations that Colt sold firearms to Witmer that were later recovered in Mexico. (*Id.* ¶ 42.) Even under those general allegations, the Complaint alleges only that Colt sold firearms to Witmer as the first step in a lengthy chain of events that resulted in some of the firearms being recovered in Mexico. From Witmer, the firearms were allegedly sold to unidentified federally-licensed retail dealers throughout the United States, some of which

1

then allegedly sold the firearms to initial buyers, some unidentified number of which then either sold or otherwise transferred the firearms to other unidentified third parties, some of which in turn either through others or themselves illegally trafficked those firearms into Mexico, where they were either sold or otherwise transferred to an unknown number of third parties before coming into the possession of cartel members or other criminals, who later used those firearms to commit crimes in Mexico.  (Comp. at ¶¶ 40-41, 119-22, 136-207, 269, 447-64.)  This highly attenuated chain of events cannot establish the necessary connection between Massachusetts and Mexico's claims against Colt.

Indeed, while the Complaint contains references to specific Colt firearms that have been recovered in Mexico, at no point does the Complaint allege that any such specifically identified firearm has any connection to Witmer, much less to Massachusetts.  Nor does the Complaint assert that a single sale of a firearm by Colt to Witmer violated any federal, state, or local firearm law or regulation, or that any subsequent sale by Witmer was contrary to such laws.

For its purported claim under CUTPA, Mexico alleges that Colt's advertising—generated from Connecticut—emphasized similarities between Colt firearms sold to the retail market and Colt firearms sold to the military, although the Complaint does not contend that such comparisons are false or misleading.  (Comp. ¶¶ 325, 348-351.)  In particular, the Complaint alleges that Colt violated CUTPA by marketing "products like its semi-automatic assault rifles to the civilian market in ways that highlighted their efficacy" in combat scenarios and by labeling its products with militaristic sounding names like "Trooper" and "Patrol."  *Id.* ¶¶ 350-51.  The Complaint contains two examples of Colt's allegedly improper marketing to the general public for the M4 Trooper and M4 Carbine, noting the reference to "shar[ing] many features of its combat-proven brother."  *Id.* ¶ 325.  The Complaint does not allege that any criminal misusing a

Colt firearm in Mexico ever saw a Colt advertisement.  Moreover, as with its other claims, Mexico's alleged injuries from the purported CUTPA violations are the costs it incurred in responding to criminal activity by third parties in Mexico.

## LEGAL STANDARD

### Rule 12(b)(2) Motion to Dismiss

Mexico bears the burden to establish that specific jurisdiction exists over Colt.  *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016).  Plaintiff "must meet the requirements of both the Massachusetts long-arm statute and the due process clause of the Fourteenth Amendment."  *Id*.  While "the reach of the Massachusetts long-arm statute may not be entirely congruent with the reach of the Due Process Clause," *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020), the specific jurisdiction analysis in this case comes down to the requirement that Mexico's claims "directly arise out of, or relate to" Colt's alleged business activities in Massachusetts and whether it would be "reasonable" to exercise jurisdiction over Colt in these circumstances.  *See Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995); *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015).  To meet this burden, a plaintiff must "do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality."  *Killion v. Commonwealth Yachts,* 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001)).  "An affirmative finding on each of the three elements of the test"—relatedness, purposeful availment, and reasonableness—is required before the Court can exercise specific personal jurisdiction over Colt.  *See Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999).

The application of the prima facie standard of review for Colt's Rule 12(b)(2) motion is appropriate here.  *See United States v. Swiss Am. Bank, Ltd*., 274 F.3d 610, 618 (1st Cir. 2001).

Under this standard, "the inquiry is whether [Plaintiff] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *A Corp.*, 812 F.3d at 58 (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). While the court construes Plaintiff's supported allegations "in the light most congenial to the plaintiff's jurisdictional claim, … [i]n doing so, the Court will not credit conclusory allegations or draw farfetched inferences…." *Kingston v. AngioDynamics, Inc.*, No. 21-CV-10234-DJC, 2021 WL 3022320, at *1 (D. Mass. July 16, 2021) (internal quotations and citations omitted).

**Rule 12(b)(1) and 12(b)(6) Motion to Dismiss**

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the alleged facts as true but need not accept "conclusory statements" unsupported by any concrete factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's allegations must show that the defendants' liability is actually "plausible," not merely "conceivable." *Id*. at 679-80. If the facts alleged are "merely consistent with" liability, then the case must be dismissed. *Id*. at 678. For the motion to dismiss for lack of standing, courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)." *Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1, 7 (1st Cir. 2018).

## **ARGUMENT**

**I.   THE COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT TO WARRANT THE EXERCISE OF PERSONAL JURISDICTION OVER COLT.**

In this Circuit, a three-part test is utilized to determine whether specific jurisdiction exists over a defendant:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary

> presence before the state's courts foreseeable.   Third, the exercise of
> jurisdiction must ... be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips*, 530

F.3d at 27).   In this case, while Colt's sales to Witmer could constitute purposeful availment in a

proper claim, Mexico's claims cannot be said to arise out of Colt's contacts with Massachusetts,

and exercising jurisdiction over Colt would not be reasonable.

### A.    Colt's Alleged Contacts with Massachusetts Are Not Directly Related to Mexico's Claims Based on Criminal Use of Firearms by Third Parties in Mexico.

"In the relatedness inquiry, 'causation is central.'"   *Negron-Torres v. Verizon Commc'ns,*

*Inc.*, 478 F.3d 19, 25 (1st Cir. 2007) (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 62 (1st

Cir. 2005)).   "The relatedness requirement is not an open door; it is closely read, and it requires a

showing of a material connection."   *Harlow*, 432 F.3d at 61.   Indeed, the First Circuit

"steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the

cause of action and the defendant's forum-state contacts seems attenuated and indirect."   *United*

*Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir.

1992); *see also Harlow*, 432 F.3d at 61; *Negron-Torres*, 479 F.3d at 25 (same, quoting *Harlow*);

*Brown v. Aero Glob. Logistics, LLC*, No. 19-CV-12153-DJC, 2020 WL 2527799, at *4 (D.

Mass. May 18, 2020) (same, quoting *Harlow*).

The relatedness requirement "ensures that the element of causation remains in the

forefront of the due process investigation."   *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201,

207 (1st Cir. 1994).   Indeed, in showing relatedness, "[a] broad 'but-for' argument is generally

insufficient.   Because '"but for" events can be very remote, ... due process demands something

like a "proximate cause" nexus.'"   *Harlow*, 432 F.3d at 61 (quoting *Cambridge Literary Props.,*

*Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 65 (1st Cir. 2002)).   While

"strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive," a general "[a]dherence to a proximate cause standard is likely to enable defendants better to anticipate which conduct might subject them to a state's jurisdiction than a more tenuous link in the chain of causation." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (Although "a strict causal relationship between the defendant's in-state activity and the litigation" is not required, "the phrase 'relate to' incorporates real limits…."). "When the nexus between the forum contacts and the cause of action is too attenuated, it violates fundamental fairness to force a defendant with non-continuous or non-systematic contacts to defend himself in that forum." *Swiss Am. Bank*, 274 F.3d at 623.

Mexico's allegations show that the connection between its causes of action and Colt's contacts with Massachusetts is plainly attenuated and indirect such that the exercise of specific jurisdiction is inappropriate. The causes of action against Colt are based on the following alleged series of events which, with the exception of Colt's initial lawful sale of firearms to Witmer, involve actions by third parties independent of Colt: (1) Colt sold firearms to Witmer in Massachusetts; (2) Witmer then sold Colt firearms to unidentified retail firearm dealers throughout the United States; (3) those retail firearm dealers then sold the Colt firearms to other unidentified persons; (4) some unidentified subset of the persons acquiring the firearms from the retail dealers did so unlawfully with the intent to transfer the firearms to others; (5) that subset of unlawful acquirors then either unlawfully transported the firearms into Mexico or transferred them to still other third parties who intended to transport the firearms into Mexico and subsequently did so; (6) once in Mexico, the firearms were then illegally transferred to still other third parties; (7) the persons ultimately acquiring the firearms in Mexico then used them in

pcriminal activity to harm Mexican citizens; and (8) the harm inflicted by criminals in Mexico on Mexican citizens resulted in indirect and derivative harm to Mexico.  (Comp. at ¶¶ 40-41, 119-22, 136-207, 269, 447-64.)   Based on this chain, multiple independent actions separate Colt's sale of firearms to Witmer in Massachusetts from Mexico's alleged harm even before any such firearms were ever trafficked into Mexico; Colt is further separated by multiple additional criminal actions illegally moving the firearms into Mexico and into the hands of those who criminally misused those firearms in Mexico.  All of this conduct by independent third parties was a necessary predicate to the indirect financial harm those criminals allegedly caused to Mexico.

The Complaint's conclusory allegation that firearms manufactured by "some or all of the Defendants" were sold by ten unidentified retail firearm dealers located in Massachusetts and then "traced to crimes in Mexico" does not fill the gap in Mexico's allegations.  (Comp. at ¶ 43.) The Complaint does not even try to link Colt's activities in Massachusetts to the retail sales of any of these unidentified dealers.  As a result, this conclusory allegation is also insufficient to form a basis for specific jurisdiction over Colt.

Finally, with respect to Mexico's attempt to assert a claim against Colt under CUTPA, Plaintiff does not link that claim to any conduct in Massachusetts.  To the contrary, the Complaint alleges that Colt "primarily" markets its products "from a base of operations in Connecticut."  (Comp. ¶ 349.)  As a result, because Plaintiff's CUTPA claim is not alleged to arise from or relate to Colt's activities in Massachusetts, it does not provide the basis for the exercise of specific jurisdiction over Colt.

**B.      The Exercise of Personal Jurisdiction over Colt based on Mexico's Claims Would Be Unreasonable.**

Applying the "Gestalt factors" identified by the First Circuit as governing the determination of reasonableness, it is clear that exercising specific jurisdiction over Colt in this case would be unreasonable.  The reasonableness inquiry requires the Court to balance:  "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  *Harlow,* 432 F.3d at 67 (quoting *Pleasant St. Corp.*, 960 F.2d at 1088).  Where the plaintiff's showing on the relatedness prong is weak, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York*, 26 F.3d at 210.

In this case under the second factor, the fact that Mexico seeks a forum to litigate injuries that it allegedly suffered in Mexico long after any firearms had lost their connection to Massachusetts favors not exercising personal jurisdiction over Colt for these remote claims. Indeed, the Complaint does not seek redress for any injury that purportedly occurred in Massachusetts, sliding the scale of reasonableness even further against the exercise of jurisdiction.  *See Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995) (recognizing that forum "interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders" is "far less compelling" where injury occurs outside the forum); *see also Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87, 98 (D. Mass. 2018) (recognizing that the forum's "interest is lessened when the injury occurs outside of the forum," but "forum has an interest in keeping its citizens safe" where injured party was a resident of Massachusetts recruited from within Massachusetts and injured outside the forum).  Here, not only has the alleged injury occurred outside the forum,

but no particular interest of Massachusetts' citizens is affected by or would be protected by litigation of Mexico's claims.  Indeed, the Complaint contains no allegations of illegal sales by Colt to Witmer in Massachusetts, or illegal sales by Witmer from Massachusetts to licensed retail dealers in the United States.  Thus, Massachusetts lacks any real interest in adjudicating these claims.

Under the third factor, Mexico has no valid argument for centering its claims against Colt in Massachusetts.  While courts will generally give some deference to a plaintiff's choice of forum, this is not true when the plaintiff is not a citizen of the forum state. *See Katz v. Spiniello Cos.*, 244 F. Supp. 3d 237, 248-49 (D. Mass. 2017) (granting motion to dismiss based, in part, on third factor where plaintiffs were not citizens of Massachusetts).  In this case, it is difficult to "discern any specific reason why Massachusetts" would be a convenient forum to litigate Mexico's claims related to criminal violence in Mexico, *id.* at 248, and instead "the plaintiff's *actual* convenience seems to be at best a makeweight in this situation," *Ticketmaster-New York*, 26 F.3d at 211 (emphasis in original).  Nor can Mexico claim convenience based on the existence of personal jurisdiction over other defendants; jurisdiction over others does not make the exercise of personal jurisdiction over Colt reasonable.  *See Katz*, 244 F.3d at 249.

The remaining factors either do not favor the exercise of jurisdiction or do so only to a limited degree.  The burden on Colt may not generally be substantial for claims arising out of its contacts with Massachusetts, but that burden is more significant when compelled by the power of the Court to appear to defend against claims by Mexico for remote, indirect injuries that occurred in Mexico.  As to obtaining the most effective resolution, "[u]sually this factor is a wash." *Nowak*, 94 F.3d at 718.  As for the interest in the respective sovereigns in promoting social

policies, the Complaint acknowledges that Mexico is pursuing different social policies than those reflected in the Constitution and laws of the United States.  (Comp. ¶¶ 19-20.)

For the foregoing reasons, Mexico cannot meet its burden to justify the exercise of specific personal jurisdiction over Colt, and the Complaint should be dismissed with prejudice as to Colt.

II.   **MEXICO'S CLAIM AGAINST COLT FOR VIOLATION OF CUTPA MUST BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM.**

Defendants' Joint Memorandum demonstrates multiple grounds for the dismissal of all of Mexico's claims against Defendants.  In this brief, Colt addresses particular reasons why Mexico's CUTPA claim stated against only Colt (Count Seven) must be dismissed.  *First*, Mexico lacks standing for the CUTPA claim because that claim is even more removed from Mexico's alleged injuries than the other claims addressed in the Joint Memorandum.  *Second*, binding precedent addressing nearly identical advertising claims against firearm manufacturers under CUTPA compels a finding that Mexico's alleged injuries are too remote and indirect to establish proximate cause.  *Third*, Mexico's CUTPA claim is barred by the PLCAA.  *Finally*, Mexico's attack on Colt's commercial speech is precluded by the First Amendment.

A.   **Mexico Lacks Standing to Assert Its CUTPA Claim Against Colt.**

Mexico's CUTPA claim fails for lack of Article III standing.  In the Joint Memorandum, Defendants explain why Mexico lacks standing to assert *any* of its claims, because its alleged harms stem from the independent acts of third-party Mexican drug cartels.  *See* Joint Memo. at 6-10 (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976) and *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2624 (2021)).  These principles also apply to Mexico's CUTPA claim, as to which Mexico

must separately establish standing.  *See Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017).

The lack of standing is particularly acute with respect to Mexico's CUTPA claim, which addresses Colt's advertising.  Given the nature of its claim, to have standing, Mexico must show that the challenged advertising somehow caused Mexico's alleged harms.  *See* Joint Memo. at 7; *Simon*, 426 U.S. at 41–42; *Dantzler*, 958 F.3d at 48-49.  But the Complaint does not make any effort to link Colt's advertising to the cartel violence in Mexico.  It does not allege that any member of a Mexican drug cartel or other criminal in Mexico ever saw a Colt advertisement or took any action as the result of such an advertisement.  Certainly there are no allegations that Colt's advertising caused the cartels to engage in the "decades long" conflict with the Mexican police.  (Comp. ¶¶ 8, 331.)  Indeed, nothing about the two Colt advertisements Mexico cites, distributed to the "general public," implies that those advertisements were aimed at, or for that matter accessible to, criminals in Mexico, or that they in any way influenced or caused the criminals' actions in Mexico.  (Comp. ¶ 325.)

### B.     The Remote Nature of Mexico's Claims Preclude a Finding of Proximate Cause for Its CUTPA Claims as a Matter of Law.

Closely aligned with the requirements for standing, Mexico's claims fail because there is no proximate cause for its remote CUTPA claims.  "[N]otwithstanding the broad language and remedial purpose of CUTPA, [Connecticut courts] have applied traditional common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA."  *Vacco v. Microsoft Corp.*, 260 Conn. 59, 88, 793 A.2d 1048, 1065 (2002).  The Connecticut Supreme Court's decision in *Vacco* built on *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 372, 780 A.2d 98, 133-34 (2001), in which the City of Bridgeport and its Mayor asserted multiple theories of recovery against firearm manufacturers, including

product liability, public nuisance, negligence, conspiracy, unjust enrichment and CUTPA claims. The City's CUTPA claim alleged that manufacturers' advertisements regarding the effects of handguns on home safety. *Id.*, 258 Conn. at 327, 780 A.2d at 108-09. Like Mexico has alleged in this action, the City of Bridgeport alleged that the business practices of the defendants resulted in the City having to pay costs associated with firearms violence inflicted on its citizens and on its police force and other emergency service providers. *Id.*, 258 Conn. at 326-27, 339, 780 A.2d at 108-09, 115.

The Court in *Ganim* analyzed the remoteness of the City's claims under the rubric of its standing jurisprudence, which "consistently has embodied the notion that there must be a colorable claim of a direct injury to the plaintiff, in an individual or representative capacity." *Id.*, 258 Conn. at 346, 780 A.2d at 119. In other words, "if the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so." *Id.*, 258 Conn. at 347, 780 A.2d at 119-20. The Court also recognized that federal courts "have considered the questions of proximate cause … and standing as part and parcel of the same inquiry." *Id.*, 258 Conn. at 349-50, 780 A.2d at 121.

The Court described the City's claims as involving multiple links, including lawful sales from licensed manufacturers to licensed wholesalers, lawful sales from licensed wholesalers to licensed retailers, retail sales to buyers, the transfer of some of those firearms into the "illegal market" for firearms, some of which end up in the hands of unauthorized users, who then use those firearms to commit crimes, to which the City must respond, incurring expenses, and ultimately the harms alleged in the complaint. *Id.*, 258 Conn. at 354, 780 A.2d at 123. The Court recognized that "there are numerous steps between the conduct of the various defendants

and the harms suffered by the plaintiffs. That fact alone is strongly suggestive of remoteness." *Id*., 258 Conn. at 355, 780 A.2d at 124.  The Court's "conclusion that the plaintiffs lack standing because the harms they claim are too remote from the defendants' misconduct, and are too derivative of the injuries of others, cuts across and applies to all of the plaintiffs' substantive claims …." *Id*., 258 Conn. at 365, 780 A.2d at 130.

These principles were recently reaffirmed by the Connecticut Supreme Court in *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 202 A.3d 262, *cert. denied*, 140 S. Ct. 513 (2019).  In that case, the Connecticut Supreme Court addressed a claim brought by victims of the Sandy Hook shooting against firearms companies under CUTPA.  *Id.*, 331 Conn. at 70-75, 98, 202 A.3d at 275-78, 290.  The court declined to dismiss the CUTPA claims in that case because, unlike *Ganim*, the plaintiffs were the "direct victims of gun violence" such that "no private party [was] better situated than the plaintiffs to bring the action."  *Id.*, 331 Conn. at 98-99, 202 A.3d at 291.  At the same time, *Soto* again made clear that a governmental plaintiff asserting this type of claim would *not* be able to establish proximate cause, because its injury would be too "indirect, remote, and derivative."  *Id*., 331 Conn. at 97, 202 A.3d at 290 (quotation omitted).  The court recognized that, under *Ganim*, governmental entities asserting derivative harms from gun violence cannot establish proximate cause, even if the direct victims can.  *Id.*

Thus, under controlling Connecticut Supreme Court precedent applying CUTPA to claims against a firearms manufacturer, Mexico's CUTPA claim against Colt must be dismissed. Mexico is not a direct victim of gun violence but a governmental entity asserting derivative harms. *See* Joint Memo. at 31-38.  In addition, unlike in *Soto*, the motivations of the myriad criminal actors who have caused the harm of which Mexico complains could never be probed for any link to Colt's advertising, as the Court concluded could occur in that case.  *Cf. Soto*, 331

Conn. at 98, 202 A.3d at 290.  There are no facts alleged in the Complaint that would make it possible to validate the highly implausible claim that any of the criminal in Mexico were motivated to commit shootings in Mexico because of advertising.

### C.    Mexico's CUTPA Claim Is Precluded by the PLCAA.

The Protection of Lawful Commerce in Arms Act ("PLCAA"), bars any person, including governmental entities, from bringing an "qualified civil liability action" in any court in the United States asserting a claim against a firearm manufacturer based on alleged injuries "resulting from the criminal or unlawful misuse of a [firearm] by … a third party."  15 U.S.C. §§ 7902(a), 7903(5)(A).  The PLCAA's immunity is subject to a few narrow exceptions, including the so-called "predicate exception" that permits a manufacturer of a firearm to be sued to the extent it "knowingly violated a State or Federal statute applicable to the sale or marketing of the [firearm], and the violation was a proximate cause of the harm for which relief is sought."  *Id.* § 7903(5)(A)(iii).

In their Joint Memorandum, Defendants demonstrated that a proper reading of the PLCAA's predicate exception, 15 U.S.C. § 7903(5)(A)(iii), is limited to statutes specifically addressing firearm regulation.  *See* Joint Memo. at 13-17; 21-22.   Under that analytical framework applied by multiple federal courts interpreting the PLCAA, CUTPA is not a statute that specifically regulates firearms, and Mexico's CUTPA claim does not qualify for the exception.  Thus, like Mexico's other claims addressed in the Joint Memorandum, the CUTPA claim comes within the PLCAA's definition of a qualified civil liability action and must be dismissed.  *See City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384, 404 (2d Cir. 2008) (predicate exception encompasses only those statutes that "expressly regulate firearms" or "that clearly can be said to implicate the purchase and sale of firearms"); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136 (9th Cir. 2009) ("Congress had in mind only ... statutes that regulate manufacturing,

importing, selling, marketing, and using firearms or that regulate the firearms industry – rather than general tort theories that happened to have been codified by a given jurisdiction.").

In *Soto*, the Connecticut Supreme Court interpreted the federal statute differently. 331 Conn. at 116-58, 202 A.3d at 300-25. The court, in a 4-3 decision, found that the scope of the predicate exception "necessarily hinges" on "the meaning … of the statutory term 'applicable.'" *Id*., 331 Conn. at 117, 202 A.3d at 301. Contrary to the holdings of the federal courts in *City of New York* and *Ileto*, the court concluded that it would use one dictionary definition of "applicable" as "capable of being applied" to interpret the predicate exception, *id*., 331 Conn. at 119-20, 202 A.3d at 302-03, and, therefore, also concluded that an alleged CUTPA violation could avoid PLCAA immunity under the predicate exception. *Id*., 331 Conn. at 157-58, 202 A.3d at 324-25.

The majority in *Soto* viewed the absence of federal statutes that "specifically regulated the marketing or advertising of firearms" as significant in contrast to federal statutes regulating the sale of firearms, *id*., 331 Conn. at 121-22, 202 A.3d at 304, reasoning that it "made little sense for the drafters of the legislation to carve out an exception for violations of laws applicable to the marketing of firearms if no such laws existed." *Id*., 331 Conn. at 122, 202 A.3d at 304. In the majority's view, the absence of federal laws regulating firearms marketing necessarily meant that "the only logical reading of the statute is that Congress had some other type of law in mind," including state unfair trade practices laws like CUTPA. *Id*., 331 Conn. at 123, 202 A.3d at 304.

The *Soto* majority's conclusion cannot be reconciled with its own review of the regulatory framework applicable to firearms. As it had to do, the majority acknowledged that some states had enacted statutes expressly addressing firearms marketing, including California, New Jersey and Rhode Island. *Id*., 331 Conn. at 122 n.43, 202 A.3d at 304 n.43. Even if there

was support for interpreting the PLCAA based on whether laws regarding marketing existed prior to the PLCAA's adoption, nothing in the PLCAA supports the *Soto* majority's distinction between federal and state statutes. Indeed, knowing violations of the state statutes cited by the *Soto* court are precisely the types of statutes Congress addressed in the predicate exception.

The flaws in the reasoning of the *Soto* majority were aptly identified by the three dissenting justices, who concluded that the predicate exception "encompasses only those statutes that govern the sale and marketing of firearms and ammunition specifically as opposed to generalized unfair trade practices statutes that … govern a broad array of commercial activities." *Id.*, 331 Conn. at 162, 202 A.3d at 327-28; *see also id.*, 331 Conn. at 196, 202 A.3d at 346-47. Just as the Ninth Circuit had concluded in *Ileto*, the dissenting justices endorsed the "commonsense" conclusion that legislative exceptions to general statutory principles are not meant "to be so broad as to leave nothing of the general principle." *Id.*, 331 Conn. at 176, 202 A.3d at 335 (internal quotation omitted).  The *Soto* majority was not troubled by this rule of construction because, inexplicably, it determined that its ruling was limited one particular advertising by one specific group of sellers for one kind of product, *id.*, 331 Conn. at 135, 202 A.3d at 312, yet Mexico now attempts to bring the same claim. As demonstrated in Defendants' Joint Memorandum and above, the *Soto* dissent got it right, and CUTPA does not qualify for the predicate exception.

### D.   The CUTPA Claim Is Prohibited by the First Amendment.

Finally, Mexico's CUTPA claim is precluded by the First Amendment.  "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. … Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Jones v. Bock*, 549 U.S.

199, 215 (2007).  Whether speech is protected by the First Amendment is a question of law to be decided by the Court rather than a jury.  *See Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 108 (1990) (holding that "[w]hether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law"); *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact.").

The First Amendment provides strong protection for the advertising of lawful products. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 377 (2002); *Lorillard Tobacco Co.* v. *Reilly*, 533 U.S. 525, 571 (2001).  In addition to direct regulation, the First Amendment precludes the imposition of civil liability for speech that is protected.  *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (stating that "[t]he Free Speech Clause of the First Amendment" can "serve as a defense in state tort suits"); *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916 n.51 (1982) (stating that "the application of state rules of law" in a manner that "restrict[s] First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment").  Courts cannot apply a state rule of law in a civil action between private parties that "impose[s] invalid restrictions on their constitutional freedoms of speech."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964).

The protections afforded by the First Amendment are subject to a limited exception for the advocacy of unlawful conduct, such as ads "proposing a sale of narcotics or soliciting prostitutes."  *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 388 (1973); *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980).  The Complaint contains no allegations that Colt's advertisements proposed specific illegal conduct.  Otherwise, commercial speech does not lose First Amendment

protection unless it amounts to "incitement."  *See Carey v. Population Servs., Int'l*, 431 U.S. 678, 701 (1977); *see also Lorillard Tobacco*, 533 U.S. at 579 (Thomas, J., concurring in part). The incitement exception, which is exceedingly narrow, requires a plaintiff to show that (1) that the speaker advocated "the use of violence or lawless action," (2) that "the speaker intends that his speech will result in the use of violence or lawless action," and (3) that "the *imminent* use of violence or lawless action is the likely result of his speech."  *Bible Believers v. Wayne County*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 477 (1969)) (emphasis added).

The allegations of the Complaint do not plausibly constitute incitement. First, the referenced Colt advertising does not advocate violence or unlawful conduct.  (Comp. ¶ 325.) Even ads depicting the use of firearms cannot be censored on the theory that they implicitly encourage violence, and the Colt ads in the Complaint do not even show the firearms being used. *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011) (striking down a restriction on selling violent video games).

Second, the Complaint is entirely devoid of any allegations plausibly showing that Colt intended to incite violence through its ads.  At most, the Complaint speculates that the company "knew" its advertising would "attract persons and organizations that intended to use Colt's products to battle against the military and police" and "knew" that "its marketing of those products[] created an unreasonable risk of physical injury to persons in Mexico."  (Comp. ¶¶ 545-46.)  But knowledge that some users will misuse your product does not equate to an intention that anyone misuses the products, whether those products are firearms, alcohol or automobiles.

Third, incitement is limited to the advocacy of "imminent lawless action." *Brandenburg*, 395 U.S. at 449 (advocating "moral necessity for a resort to force and violence" was not incitement); *see also Hess v. Indiana*, 414 U.S. 105, 109 (1973) (finding no incitement where a protester yelled "[w]e'll take the f[***]ing street later" because not likely to produce "imminent disorder"). Even the express advocacy of unlawful conduct without some immediacy to the promotion does not suffice for incitement. *See McCoy v. Stewart*, 282 F.3d 626, 631 (9th Cir. 2002) ("speech must incite imminent lawless action to be constitutionally proscribable"). Rather, in order for the First Amendment exception to apply, there must exist a tight "temporal imminence" between the speech at issue and the resulting unlawful activity. *See James v. Meow Media, Inc*., 300 F.3d 683, 698 (6th Cir. 2002). Here, there is nothing about Colt's advertising or Plaintiff's allegations that imply any such "temporal imminence."

Thus, as a matter of law, the Complaint establishes that Colt's commercial speech through its advertisements is protected by the First Amendment.

<u>**CONCLUSION**</u>

For the foregoing reasons, Colt should be dismissed from this action for lack of personal jurisdiction. Alternatively, as addressed in this brief, the CUTPA claim asserted against Colt should be dismissed with prejudice for lack of standing and failure to state a claim. Likewise, for the reasons stated in Defendants' Joint Memorandum, the remaining claims against Colt should be dismissed with prejudice for lack of standing and failure to state a claim.

Dated: November 22, 2021                    Respectfully submitted,


                                            Defendant,
                                            Colt's Manufacturing Company LLC,
                                            By its attorneys,


                                            _____*/s/ Michael Rice*_____
                                            Michael Rice (admitted PHV)
                                            mikerice@hlawllc.com
                                            Harrison Law LLC
                                            141 West Jackson Boulevard
                                            Suite 2055
                                            Chicago, IL 60604
                                            T: (312) 638-8776

                                            and

                                            */s/ John G. O'Neill*_____
                                            John G. O'Neill (BBO # 630272)
                                            oneill@sugarmanrogers.com
                                            Sugarman, Rogers, Barshak & Cohen, P.C.
                                            101 Merrimac Street, 9th Floor
                                            Boston, MA 02114
                                            Tel: (617) 227-3030

## <u>CERTIFICATE OF SERVICE</u>

I, John G. O'Neill, attorney for the defendant, Colt's Manufacturing Company LLC, hereby certify that on the 22nd day of November, 2021, a true copy of the foregoing was filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be served by first-class mail, postage prepaid, upon anyone indicated as a non-registered participant.

/s/ John G. O'Neill
John G. O'Neill