UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ESTADOS UNIDOS MEXICANOS
      Plaintiff,

v.

SMITH & WESSON BRANDS, INC.;
BARRETT FIREARMS MANUFACTURING,           C.A. NO: 1:21-CV-11269-FDS
INC.; BERETTA U.S.A. CORP.; BERETTA
HOLDING S.P.A.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC;
GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.;
WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,
      Defendants.

## INDIVIDUAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SMITH & WESSON BRANDS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 4

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ...................................................................................................................... 5

I.     Mexico's Lack of Standing is Especially Clear for the Chapter 93A Claim ........................ 5

II.    The Lack of Proximate Cause is Especially Clear for the Chapter 93A Claim ................... 7

III.   Mexico Cannot Seek Relief Under § 11 of Chapter 93A .................................................. 9

IV.    Chapter 93A Does Not Impose Liability for Injuries to the Mexican Government
       Inflicted by Mexican Criminals in Mexico .................................................................. 10

V.     Smith & Wesson's Advertising Does Not Violate Chapter 93A Because it is
       Not False or Deceptive, Nor Does it Constitute an Unfair Business Practice ................. 12

       A.     The advertising is not false or misleading ............................................................ 12

       B.     The advertising does not advocate unlawful conduct ............................................. 14

VI.    Construing Chapter 93A to Prohibit Truthful Advertising Would Violate the
       First Amendment ..................................................................................................... 16

       A.     The complaint does not satisfy the First Amendment exception for false
              and misleading commercial speech ...................................................................... 16

       B.     The complaint does not satisfy the First Amendment exception for speech
              advocating unlawful conduct .............................................................................. 18

CONCLUSION ................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996) ............................................................................................16, 17

*Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*,
   986 F.2d 605 (1st Cir. 1993) ...........................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................5

*Aspinall v. Philip Morris Cos.*,
   813 N.E.2d 476 (Mass. 2004) .........................................................................................12

*Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*,
   13 F.4th 531 (6th Cir. 2021) .............................................................................................6

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
   17 N.E.3d 1066 (Mass. 2014) ..........................................................................................9

*Bible Believers v. Wayne Cnty.*,
   805 F.3d 228 (6th Cir. 2015) (en banc) .........................................................................19

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996) ...........................................................................................................1

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969) .........................................................................................................19

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) .........................................................................................................19

*Bubalo v. Navegar, Inc.*,
   No. 96 C 3664, 1997 WL 337218 (N.D. Ill. June 13, 1997) ...................................9

*Bushkin Assocs., Inc. v. Raytheon Co.*,
   473 N.E.2d 662 (Mass. 1985) .........................................................................................11

*Carey v. Population Servs. Int'l*,
   431 U.S. 678 (1977) ...................................................................................................17, 18

*Casillas v. Auto-Ordnance Corp.*,
   No. C 95-3601, 1996 WL 276830 (N.D. Cal. May 17, 1996) .................................9

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
   762 N.E.2d 303 (Mass. 2002) .........................................................................................10

*Clinton Hosp. Ass'n v. Corson Grp., Inc.*,
   907 F.2d 1260 (1st Cir. 1990) .........................................................................................10

*Dantzler, Inc. v. Empresas Berríos Inventory & Ops.*,
   958 F.3d 38 (1st Cir. 2020) ...............................................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*District of Columbia v. Heller,*
   554 U.S. 570 (2008).................................................................................................15

*Edenfield v. Fane,*
   507 U.S. 761 (1993).................................................................................................17

*Estados Unidos Mexicanos v. DeCoster,*
   229 F.3d 332 (1st Cir. 2000)......................................................................................1

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ...................................................................................15

*Ganim v. Smith & Wesson Corp.,*
   780 A.2d 98 (Conn. 2001) .........................................................................................8

*Gill v. Gulfstream Park Racing Ass'n,*
   399 F.3d 391 (1st Cir. 2005).....................................................................................14

*Greater New Orleans Broad. Ass'n v. United States,*
   527 U.S. 173 (1999).................................................................................................16

*Hess v. Indiana,*
   414 U.S. 105 (1973).................................................................................................19

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.,*
   512 U.S. 136 (1994).................................................................................................16

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   230 F.R.D. 61 (D. Mass. 2005).................................................................................11

*In re R. M. J.,*
   455 U.S. 191 (1982).................................................................................................17

*James v. Meow Media, Inc.,*
   300 F.3d 683 (6th Cir. 2002) ...................................................................................19

*Jane Doe No. 1 v. Backpage.com, LLC,*
   817 F.3d 12 (1st Cir. 2016)........................................................................................8

*Linmark Assocs., Inc. v. Twp. of Willingboro,*
   431 U.S. 85 (1977)...................................................................................................17

*Lorillard Tobacco Co. v. Reilly,*
   533 U.S. 525 (2001)...........................................................................................16, 18

*Lyon v. Caterpillar, Inc.,*
   194 F.R.D. 206 (E.D. Pa. 2000)...............................................................................10

*McCarthy v. Olin Corp.,*
   119 F.3d 148 (2d Cir. 1997).......................................................................................9

**TABLE OF AUTHORITIES**
(continued)

<b>Page(s)</b>

*McCarthy v. Sturm, Ruger & Co.*,
  916 F. Supp. 366 (S.D.N.Y. 1996)..................................................................9, 15

*McCoy v. Stewart*,
  282 F.3d 626 (9th Cir. 2002) ...........................................................................20

*Merrill v. Navegar, Inc.*,
  28 P.3d 116 (Cal. 2001) .................................................................................9, 15

*Oracle USA, Inc. v. Comm'r*,
  168 N.E.3d 349 (Mass. 2021) ..........................................................................20

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*,
  413 U.S. 376 (1973).........................................................................................18

*S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*,
  775 F.3d 82 (1st Cir. 2014)..............................................................................11

*S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
  241 F.R.D. 85 (D. Mass. 2007).........................................................................11

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)..............................................................................................5

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011)..........................................................................................16

*Soto v. Bushmaster Firearms Int'l, LLC*,
  202 A.3d 262 (Conn. 2019) .......................................................................7, 8, 14

*State of Sao Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*,
  919 A.2d 1116 (Del. 2007) .................................................................................1

*Szalla v. Locke*,
  657 N.E.2d 1267 (Mass. 1995) ...........................................................................9

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002).........................................................................................16

*Tomasella v. Nestlé USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020)..............................................................................12

*Town of Chester v. Laroe Ests., Inc.*,
  137 S. Ct. 1645 (2017)........................................................................................5

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976).........................................................................................16

*Walsh v. TelTech Sys., Inc.*,
  821 F.3d 155 (1st Cir. 2016)........................................................................7, 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
    471 U.S. 626 (1985) ...................................................................................................16

**STATUTES**

Mass. Gen. Laws ch. 93A, § 2 .......................................................................................12

Mass. Gen. Laws ch. 93A, § 11 .......................................................................3, 4, 9, 10

## <u>INTRODUCTION</u>

Smith & Wesson has been manufacturing firearms in the United States for 169 years. It has earned that longevity by consistently producing quality products while navigating complex and evolving federal, state, and local laws governing production and distribution of firearms. Smith & Wesson is a responsible corporate citizen, and is proud that over the years its firearms have been carried by the U.S. military, federal agents, any number of state and local police departments, as well as millions of American citizens for sport and self-defense.

The Government of Mexico, facing an epidemic of gun violence driven by drug cartels and other organized gangs, has decided that Smith & Wesson and other U.S. gun manufacturers (and one distributor) are really the ones responsible for Mexicans killing other Mexicans in Mexico. In its complaint, however, it does not allege that any defendant directly supplied any firearm to anyone in Mexico. Instead it alleges that, even though the defendants have complied with relevant U.S. laws and regulations, defendants' guns nonetheless wound up in Mexico, where they were illegally sold to, and used by, Mexican criminals.

In short, Mexico's suit is not so much against U.S. gun manufacturers as it is against U.S. gun control policy, as expressed through legislation and regulation, and the Second Amendment. It is a bid to drastically alter long-standing U.S. policy via litigation, instead of by diplomacy or by supporting federal legislation.[1] As addressed at length in the defendants' accompanying joint motion to dismiss, the complaint bears all the scars of this distortion, demanding redress in the

---

[1] *See, e.g., Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 342-43 (1st Cir. 2000) (denying Mexico *parens patriae* standing on behalf of its citizens, noting that it could "raise [such concerns] with the United States through diplomatic channels," and that the courts "are not the appropriate forum for the litigation of Mexico's quasi-sovereign interests" in protecting its citizenry); *State of Sao Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1126 (Del. 2007) (finding that allowing foreign governments to sue tobacco companies for private sales in foreign country would present "complex and intricate" concerns affecting the "national economy," concerns "better addressed by the legislature(s), not by courts applying common law principles"); *cf. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 573 n.17 (1996) (noting that "[s]tate power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute").

1

billions of dollars even though Mexico cannot show any causal linkage between the defendants and Mexico's alleged harms beyond the facts that (a) guns are made here, and (b) people have been hurt with guns there.

Mexico does assert one claim solely against Smith & Wesson: Count Eight, under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"). But this claim shares the same causal defects hobbling the rest of Mexico's complaint, and others as well:

*First*, Mexico's lack of standing is especially clear on this claim, which targets Smith & Wesson's advertising practices. To establish standing, Mexico must allege facts plausibly showing that Smith & Wesson's advertising *caused* harm to Mexico. But the complaint cannot do that; the complaint does not even contend that any cartel member *ever saw* Smith & Wesson's advertising, much less acquired Smith & Wesson's firearms *because of* that advertising, much less that Smith & Wesson's advertising caused the cartels to inflict any harm on the Mexican government that the cartels otherwise would not have. As a result, Mexico's alleged injuries are not "fairly traceable" to Smith & Wesson's advertising.

*Second*, similarly, Mexico cannot show that Smith & Wesson's ads were the proximate cause of harms Mexico allegedly suffered. As defendants explain in their joint brief, the intervening acts of multiple third parties, committing multiple different criminal acts, break the chain of proximate causation between defendants' activities and Mexico's alleged injuries. This is especially so concerning Count Eight since, in addition, Mexico must allege that Mexican cartel members actually saw Smith & Wesson's advertising, that it caused the cartel members to acquire Smith & Wesson firearms and, as a result, cartel members shot people in Mexico. But Mexico has alleged nothing to support this implausible theory.

2

*Third*, as explained in the Defendants' join brief, the Chapter 93A claim is barred by the Protection of Lawful Commerce in Arms Act ("PLCAA"), but even if it somehow were viable despite the PLCAA, it does not provide a cause of action to Mexico on the facts alleged here. Section 11 of Chapter 93A applies only to claims arising out of a commercial transaction between the parties. Here, however, Mexico does not claim that it engaged in any commercial transactions with Smith & Wesson.

*Fourth*, and more fundamentally, even apart from § 11, Chapter 93A simply does not apply to Mexico's alleged injuries. Chapter 93A is aimed at deterring advertising in Massachusetts that harms Massachusetts consumers; it does not protect Mexico for ads allegedly viewed in Mexico that, in turn, harms the Mexican government. Mexico cites no basis for that unprecedented expansion of Massachusetts consumer-protection law.

*Fifth*, Mexico's Chapter 93A claim fails because the complaint does not allege any facts showing a violation of it. Chapter 93A prohibits false and misleading advertising. The complaint, however, does not identify anything in Smith & Wesson's advertising that is false or misleading. It does allege that Smith & Wesson's advertising implies that some of its firearms are suitable for military or law-enforcement use, but Mexico's overall theory is that any such assertions are, in fact, true. Mexico also seems to suggest that, even if truthful, Smith & Wesson's advertising violates Chapter 93A because it somehow encourages or promotes unlawful conduct. Massachusetts courts have never recognized that type of claim under Chapter 93A and, regardless, Mexico does not allege facts plausibly supporting it.

*Finally*, if Chapter 93A were construed to prohibit truthful advertising, the law would violate the First Amendment. The First Amendment provides robust protection for truthful and non-misleading advertisements of lawful products. The advertising here falls squarely within that

category. And even if Mexico had plausibly alleged that Smith & Wesson's advertising advocated unlawful conduct, it certainly has not alleged the type of clear, unambiguous incitement of *imminent* unlawful action that is necessary to override First Amendment protections.

## BACKGROUND

Chapter 93A allows a "person who engages in the conduct of any trade or commerce" to sue for injuries caused by the defendant's "unfair or deceptive act or practice." Mass. Gen. Laws ch. 93A, § 11; *see also* Compl. ¶¶ 75, 342-47, 549-56. Mexico claims that Smith & Wesson violated this provision in two ways. First, it faults the company's ads for featuring images of people "in what appear to be military or law enforcement uniforms," displaying text that "resembles oaths taken by military or law enforcement personnel," and for including "American flags." Compl. ¶ 322. According to Mexico, these images "falsely and misleadingly" associate Smith & Wesson products with U.S. military and law enforcement in order to achieve a "halo effect," by which "police and military associations" can "enhance the credibility and thus the sales of its guns to the civilian market." *Id.* ¶ 323-24.

Second, Mexico claims that Smith & Wesson used "marketing that emphasized the ability of civilians to use Smith & Wesson assault rifles in unlawful, military-style attacks." *Id.* ¶ 550; *see id.* ¶ 345. In particular, the complaint alleges that Smith & Wesson encourages unlawful attacks when it markets "products like its semi-automatic assault rifles to the civilian market" so as to "highlight[] their efficacy" in combat scenarios by emphasizing their supposed rapid-fire capabilities. *Id.* ¶ 551. According to the complaint, truthfully advertising the capabilities of semi-automatic firearms is tantamount to "encourag[ing] and promot[ing]" "unlawful military-style combat missions." *Id*. ¶ 344.

To support these claims, Mexico offers three specific illustrations of allegedly-objectionable advertising. The complaint describes these firearms as "military-style." *Id.* ¶ 554. The complaint does not specify when, where, or how these advertisements were disseminated. Without elaboration, Mexico asserts that Smith & Wesson's ads violated Chapter 93A and caused the drug cartels to injure the Mexican government by causing "loss of money or property, including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, and other services, as well as other extensive economic losses." *Id.* ¶ 556.

## STANDARD OF REVIEW

On a motion to dismiss, the court must accept the alleged facts as true but need not accept "conclusory statements" unsupported by any concrete factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To "unlock the doors of discovery," the allegations must show that the defendant's liability is actually "plausible," not merely "conceivable." *Id.* at 679-80. If the facts alleged are "merely consistent with" liability, then the case must be dismissed. *Id.* at 678.

## ARGUMENT

**I.   Mexico's Lack of Standing is Especially Clear for the Chapter 93A Claim.**

Mexico's Chapter 93A claim fails at the threshold for lack of Article III standing. "[S]tanding is not dispensed in gross." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017). Mexico must separately show that it has Article III standing to assert each of its claims. *Id.* In the joint brief, defendants explained why Mexico lacks standing to assert *any* of its claims, because all of its alleged harms stem from the independent acts of third-party Mexican drug cartels. But the lack of standing is especially clear for the Chapter 93A claim, which is uniquely targeted at Smith & Wesson's *advertising*: Mexico must specifically show that Smith & Wesson's advertising somehow caused its alleged harms. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426

U.S. 26, 41–42 (1976); *Dantzler, Inc. v. Empresas Berríos Inventory & Ops.*, 958 F.3d 38 (1st Cir. 2020).

The complaint simply does not do that. It does not even allege that any member of a Mexican drug cartel saw a Smith & Wesson advertisement, much less that such an advertisement caused the cartels to commit crimes with Smith & Wesson firearms. Nor could it plausibly do so, particularly in light of what the complaint does allege. The two print advertisements were allegedly "market[ed] to the general public," but Mexico does not allege that these English-language advertisements were marketed to or even distributed in Mexico (surely, if that were the goal, Smith & Wesson would have published a Spanish version as well). Compl. ¶ 324. Similarly, as to Smith & Wesson's English-language YouTube advertisement, the complaint does not allege any facts showing that any members of the cartels ever saw that recording, much less engaged in violent criminal attacks *because of* it.

Moreover, the complaint itself also highlights the utter implausibility of Mexico's theory. As the complaint acknowledges, cartels are sophisticated, "ruthless transnational criminal organizations," *id.* ¶ 8, engaged in a decades-long "battle with the military and police in Mexico," *id.* ¶ 331. They have extensive experience handling firearms, *id.* ¶ 338, with ready access to "more than 13.5 million" illegal weapons, *id.* ¶ 439. The notion that it is *advertisements* that caused these sophisticated criminal enterprises to use Smith & Weapons firearms, to commit crimes that they otherwise would not have, is absurd. At the very least, it is Mexico's burden to allege, at the pleading stage, facts necessary to support this theory. *See Dantzler*, 958 F.3d at 49 (dismissing for lack of standing based on the pleadings); *see also Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (collecting cases doing same). But the complaint is devoid of any such allegations.

6

II.     **The Lack of Proximate Cause is Especially Clear for the Chapter 93A Claim.**

Chapter 93A requires "both factual causation and proximate causation." *Walsh v. TelTech Sys., Inc*., 821 F.3d 155, 160 (1st Cir. 2016). There is no proximate cause under Chapter 93A when the "misuse of [the] defendant's product [is] 'the sole cause' of plaintiff's injuries." *Id*. at 164. In the context of advertising, proximate cause is lacking even when those materials include "references to both illegitimate and legitimate uses" of the product, because it is *the user's independent decision to misuse the product*—not the advertising—that is the proximate cause of resulting harm. *Id*. at 163-64. Moreover, the First Circuit has emphasized that a "federal court sitting in diversity" should not entertain "novel" theories of proximate cause under Chapter 93A that have "no state law authority to support" them. *Id*. at 164.

Here, the complaint cannot plausibly allege a proximate causal link between Smith & Wesson's advertising and gun violence committed by drug cartels in Mexico. As defendants have explained, and as the complaint admits, all of Mexico's harms are caused by the independent criminal acts of multiple third parties, and that alone breaks the chain of proximate cause. Moreover, as above, Mexico must also show that the cartels actually saw Smith & Wesson ads, and that those ads are why the cartels chose Smith & Wesson firearms rather than others. Mexico must then show that the advertisements caused the cartels to *use* Smith & Wesson's firearms to cause injuries they otherwise would not have caused using any of the millions of other firearms available to them. But the complaint lacks any such allegations.

Even courts that have allowed consumer-protection claims under the PLCAA have recognized that proximate cause fails in this type of case. For example, in *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262 (Conn. 2019), the Connecticut Supreme Court addressed a claim brought by victims of the Sandy Hook shooting under the Connecticut Unfair Trade Practices Act, alleging that the gun companies' advertising caused the shooter to choose "a

more efficiently deadly weapon for his attack." *Id.* at 275-78, 290. The court declined to dismiss the claim because the case involved a single shooter whose motivations could be probed, and because the plaintiffs were the "direct victims of gun violence" such that "no private party [was] better situated than the plaintiffs to bring the action." *Id.* at 291.

But by contrast, *Soto* made clear that a governmental plaintiff asserting this type of claim would *not* be able to establish proximate cause, because its injury would be too "indirect, remote[,] and derivative." *Id*. The court even distinguished one of its previous cases on exactly that ground, explaining that governmental entities asserting derivative harms from gun violence cannot establish proximate cause, even if the direct victims can. *Id*. (distinguishing *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 118 (Conn. 2001), which dismissed claims by a governmental plaintiff).

Here, *Soto* and *Ganim* confirm that Mexico's Chapter 93A claim fails. This case is a claim by a governmental entity, which *Soto* and *Ganim* hold is not viable under analogous Connecticut law. In addition, unlike in *Soto*, here there is not a single shooter who committed a single crime, and whose motivations could be probed through the litigation process to see whether his acts were influenced by some particular bit of allegedly unlawful advertising. Instead, the harms here are indirect and diffuse, attributed to thousands of unknown criminals in Mexico, and there are no facts alleged that would make it possible to validate the highly implausible claim that any of them shot people in Mexico because of a Smith & Wesson advertisement.

Finally, the First Circuit has likewise recognized the potential difficulties in proving causation under Chapter 93A in these circumstances, observing that when such a claim "fails plausibly to allege a causal chain sufficient to ground an entitlement to relief, that claim is susceptible to dismissal under Rule 12(b)(6)." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d

12, 24 (1st Cir. 2016). In keeping with this, courts have routinely rejected claims against firearm manufacturers based on the supposedly "inflammatory aspects" of their ads. *Merrill v. Navegar, Inc.*, 28 P.3d 116, 132 (Cal. 2001) (shooter never "saw the promotional materials").[2] Mexico's Chapter 93A claim fails for the same reasons here.

## III.  <u>Mexico Cannot Seek Relief Under § 11 of Chapter 93A.</u>

Mexico pleads a claim solely under § 11 of Chapter 93A, Compl. ¶ 555, but that section does not apply because Mexico does not allege that it suffered injury in any commercial transaction with Smith & Wesson. Section 11 of Chapter 93A authorizes suit only by those who are injured by "an unfair or deceptive act" while "engage[d] in the conduct of any trade or commerce." Mass. Gen. Laws 93A, § 11. Simply put, § 11 "govern[s] actions between *businesses*." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co*., 17 N.E.3d 1066, 1076 (Mass. 2014) (emphasis added). Thus, a claim under §11 must arise out of a "commercial transaction between a person engaged in trade or commerce [and] another person engaged in trade or commerce." *Szalla v. Locke*, 657 N.E.2d 1267, 1269 (Mass. 1995). For example, in *Locke*, the court held that there was no valid claim under § 11 because there had been no "commercial transaction" between the parties. *Id*. at 1270. Even though the parties had associated with each other for the purpose of "forming a business venture," that was "not the kind of commercial transaction regulated by the statute" because there was no "exchange of goods or services between the parties, either actual or contemplated." *Id*.

Here, likewise, Mexico cannot assert a claim under § 11 because its claim does not arise out of any commercial transaction involving the exchange of goods or services with Smith &

---

[2] *See also, e.g*.,; *McCarthy v. Sturm, Ruger & Co*., 916 F. Supp. 366, 369 (S.D.N.Y. 1996), *aff'd sub nom. McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997) (no liability for ads "highlight[ing] [bullets'] destructive capabilities" and making them "attractive to criminals"); *Bubalo v. Navegar, Inc.*, No. 96 C 3664, 1997 WL 337218, at *9 (N.D. Ill. June 13, 1997), on reconsideration, No. 96 C 3664, 1998 WL 142359 (N.D. Ill. Mar. 20, 1998) ("marketing" was not "'a factor' in [the shooter's] use of [a specific weapon]"); *Casillas v. Auto-Ordnance Corp*., No. C 95-3601, 1996 WL 276830, at *3 (N.D. Cal. May 17, 1996) (ads were not "seen by" the shooter much less "somehow the cause of [the shooter's] violent behavior.").

Wesson. Mexico does not claim, for instance, that Smith & Wesson deceived it into purchasing products or gouged it in a sale. Instead, Mexico seeks to recover for harms inflicted by violent criminals, with no connection to any "commercial transaction" between the Mexican government and Smith & Wesson. The complaint offers only the boilerplate assertion that "[t]he government engages in trade or commerce." Compl. ¶ 555. But that is not enough, and Mexico's entire theory runs contrary to alleging the necessary commercial transaction: The complaint seeks relief predicated on criminals in Mexico illegally acquiring guns, from others in Mexico, that were illegally sourced from dealers in the United States. Mexico's claim under § 11 accordingly must be dismissed.

## IV.    Chapter 93A Does Not Impose Liability for Injuries to the Mexican Government Inflicted by Mexican Criminals in Mexico.

Even apart from § 11, Chapter 93A does not provide a remedy for injuries to the Mexican government by Mexican criminals who committed crimes in Mexico. "[S]tate consumer protection acts are designed to protect the residents of the states in which the statutes are promulgated." *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 216 (E.D. Pa. 2000). Chapter 93A is a perfect example: It contains a "clear statement" of the legislature's intent to "protect *Massachusetts consumers*." *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 314 (Mass. 2002) (emphasis added). In particular, it authorizes claims only where "the unfair or deceptive act or practice *occurred primarily and substantially within*" Massachusetts. Mass. Gen. Laws ch. 93A, § 11 (emphasis added).

In applying this provision, Massachusetts courts consider three factors: (1) "where the defendant committed the deceptive or unfair acts," (2) "where the plaintiff received and acted upon the deceptive or unfair statements," and (3) "the situs of plaintiff's losses." *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1265-66 (1st Cir. 1990). In practice, however, the second and

10

third factors predominate. For example, in *Bushkin Associates, Inc. v. Raytheon Co*., 473 N.E.2d 662 (Mass. 1985), a New York corporation received deceptive telephone calls from an officer of a corporation in Massachusetts, *id.* at 672. The New York corporation brought a Chapter 93A claim, alleging that those phone calls wrongfully induced it to divulge sensitive business information. *Id.* The Massachusetts Supreme Court, however, held Chapter 93A inapplicable: Although the statements were "made in Massachusetts," they were "received and acted on in New York," and "[a]ny loss was incurred in New York." *Id.*; *see also, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) (Saris, J.) (under Chapter 93A, "the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant"); *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007) (Gorton, J.) (Chapter 93A applies only when Massachusetts is the state where consumers "took action in reliance on [the] defendant's representations").

Here, Mexico's Chapter 93A claim fails for the same reasons. It alleges no harm to any Massachusetts consumer, nor any adverse impact inside Massachusetts at all. Instead, it complains only about injuries in Mexico, sustained by the Mexican government. The complaint does not even allege that Mexican criminals saw Smith & Wesson advertising originating in Massachusetts, much less that they viewed the ads in Massachusetts. As far as Smith & Wesson can tell, Massachusetts courts have *never* applied Chapter 93A to a fact pattern like this. And having "chosen a federal forum to seek relief that depends at least in part on the meaning of state law," Mexico cannot "expect [the] federal court to steer state law into [this] unprecedented configuration[]." *S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 91 (1st Cir. 2014).

11

V.    **Smith & Wesson's Advertising Does Not Violate Chapter 93A Because it is Not False or Deceptive, Nor Does it Constitute an Unfair Business Practice.**

Even if the Mexican government could assert a claim under Chapter 93A, the claim would still fail as a matter of law. Chapter 93A prohibits "unfair or deceptive acts or practices" in the conduct of trade or commerce. Mass. Gen. Laws ch. 93A, § 2. The complaint advances two theories as to why Smith & Wesson's advertising is "unfair or deceptive": First, it suggests that the company disseminated "deceptive" advertising. Second, it suggests that the company's advertising is "unfair" because it allegedly encourages unlawful violence.

A.    **The advertising is not false or misleading.**

Chapter 93A permits claims against companies that disseminate false and misleading ads. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 74 (1st Cir. 2020). But the prohibition applies only to statements that are actually false or misleading, *i.e.*, that have the real "capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004). A plaintiff cannot sue based on vague claims that advertising contains "false" opinions or characterizations. *See, e.g.*, *Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*, 986 F.2d 605, 606 (1st Cir. 1993) (Breyer J.) (rejecting claim against pasta manufacturer for calling its pasta "fresh").

Here, Mexico does not identify anything false or misleading in Smith & Wesson's advertising. It does not identify anything untrue in either the still-image advertisements or the YouTube video describing the capabilities of Smith & Wesson's firearms. The ads depict Smith & Wesson firearms as they appear in real life with text accurately describing the firearms' features. The complaint does vaguely assert that Smith & Wesson "falsely and misleadingly associates its 'civilian' products with U.S. military and law enforcement" by "emphasiz[ing] its weapons' ability

to function in combat-like scenarios." Compl. ¶ 324. But the advertisements themselves make clear that this is incorrect:



These two ads, on their face, are directed at recreational target shooters (the "Kick Brass" advertisement) and law-enforcement officers ("The Chosen One"). The former promotes the purchase of an M&P 15-22 rifle by highlighting the fact that it fires small, inexpensive .22-caliber rounds frequently used for informal target shooting, for "some serious fun" that "costs less to feed." The latter includes an image of a law-enforcement officer, patches from several police departments, and text referring to the product as a "duty rifle" and noting that it is "winning department testing and evaluations across the country."

Moreover, and more to the legal point, it doesn't matter what "associations" these advertisements might be alleged to make, because the complaint identifies nothing about them that is false or misleading. Saying Smith & Wesson's ads violate Chapter 93A because of alleged "associations" with law enforcement or the military is like saying car advertisements violate Chapter 93A because they feature street-legal sports cars on race tracks.

In sum, because the complaint cannot allege facts showing any false or misleading statement in any of Smith & Wesson's ads, the Chapter 93A claim cannot survive.

13

**B.      The advertising does not advocate unlawful conduct.**

Chapter 93A also prohibits "unfair" business practices, and some courts interpreting analogous statutes have read this type of prohibition to cover advertising advocating unlawful conduct. *See Soto*, 202 A.3d at 308. But no Massachusetts court has ever applied Chapter 93A to prohibit advertising advocating or encouraging unlawful conduct—a step that would entangle Chapter 93A with First Amendment protections.

Moreover, since the First Circuit has instructed federal courts not to recognize "novel" state-law theories that no state court has ever authorized, that should be the end of this claim. *See Walsh*, 821 F.3d at 164. "A federal court sitting in diversity cannot be expected to create new doctrines expanding state law." *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005).

In any event, even if Chapter 93A could be construed to prohibit advertising that advocates unlawful conduct, the complaint does not allege any facts showing that Smith & Wesson's advertisements did so. The ads reproduced in the complaint contain no such language, nor do they depict—much less glorify—criminals or criminal acts. To the contrary, one ad promotes a rifle that fires small-caliber ammunition frequently used for recreational target shooting, and the other shows the image of a law-enforcement officer and depicts law-enforcement agencies that have evaluated the S&W M&P 15 rifle.

Mexico claims that the ads somehow encourage unlawful conduct by emphasizing lawful features of Smith & Wesson's semi-automatic firearms. According to the complaint, the advertising "highlights the ability of [the firearms] to rapidly dispatch large numbers of opponents in armed combat," which appeals to criminals who "want[] to carry out unlawful military-style combat missions." *Id.* ¶ 551. Yet the advertisements do not emphasize, or even mention, "rapid-

14

fire capabilities" or "dispatching" enemies. Rather, as noted above the point of the ad featuring the M&P 15-22 is that it is "serious fun" for target shooting at a range—a user can "burn through" ammunition because the firearm "costs less to feed." The complaint itself supports this point, as it alleges that Smith & Wesson's advertising also refers to competitive *target shooting*, Compl. ¶ 346, which is a popular recreational activity that is also a protected right under the Second Amendment. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 617-18 (2008); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Indeed, the fact that Smith & Wesson's YouTube advertisement features a "professional shooter," Compl. ¶ 346, reinforces the point that Smith & Wesson's advertising is directed toward responsible competitive shooters, not criminals.

Even if Smith & Wesson did advertise its products for reasons beyond sport shooting, *e.g.*, personal or home defense, that would be entirely lawful. And, as the complaint concedes, the ads reference symbols of law and order. *See, e.g.*, *id.* ¶ 322. Specific to Smith & Wesson, it produces an "M&P" line of firearms ("Military and Police"). *Id.* ¶ 347. These references point to *upholding* law and order, not resisting it. The advertisements, in short, do not imply that any consumer should engage in *unlawful* violence.

The courts agree with this point, having long rejected the contention that manufacturers should face liability for "highlight[ing] their [weapons'] destructive capabilities," even where doing so could make weapons "attractive to criminals." *McCarthy*, 916 F. Supp. at 369. Courts have even declined to impose liability for advertisements highlighting gun features that could appeal *primarily* to criminals, such as "excellent resistance to fingerprints." *Merrill*, 28 P.3d at 132. Smith & Wesson's advertisements do not even arguably approach that line. Consequently, Smith & Wesson's advertising of the ordinary features of its firearms, for perfectly lawful purposes, is not even remotely an "unfair" business practice. A contrary interpretation would open

up all sorts of manufacturers to similar claims: car makers for advertising that "encourages" speeding, or beer companies for ads that "promote" public intoxication. Chapter 93A has never been extended to such claims.

## VI.   Construing Chapter 93A to Prohibit Truthful Advertising Would Violate the First Amendment.

Finally, if Chapter 93A were interpreted to prohibit the truthful and non-misleading advertising of Smith & Wesson's lawful products, it would violate the First Amendment. The Supreme Court has long held that the First Amendment protects the advertising of lawful products, including dangerous ones. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 377 (2002); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 194 (1999).

That holds true even where the advertisements highlight product features that make them dangerous. *See, e.g.*, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 492 (1996) (protecting advertisements emphasizing "bargain prices for liquor," which could be read to encourage binge drinking). Here, the Mexican government implies that the usual First Amendment protections should not apply based on two exceptions—one for false advertising, and one for advocating unlawful conduct. But neither exception applies here.

### A.   The complaint does not satisfy the First Amendment exception for false and misleading commercial speech.

Governments may "prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 638 (1985). But courts tightly police this exception, and do not allow plaintiffs to rely on the "rote invocation of the words 'potentially misleading.'" *Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136, 146 (1994); *see also Va. State Bd. of Pharmacy v. Va. Citizens*

*Consumer Council, Inc.*, 425 U.S. 748, 765 (1976). To pass First Amendment muster, plaintiffs must identify *specific features* of an advertisement that are "inherently misleading" to consumers or "ha[ve] proved to be misleading in practice." *In re R. M. J.*, 455 U.S. 191, 207 (1982); *accord Edenfield v. Fane*, 507 U.S. 761, 774 (1993). Mexico cannot do so here.

First, as noted above, the complaint does not identify anything false or misleading about Smith & Wesson's advertisements. Nor is there anything in the complaint suggesting that anyone who saw Smith & Wesson's advertisements would be misled about the features of the products in question. Similarly, the complaint doesn't allege that the advertisements are "inherently misleading," which is what the First Amendment demands.

Second, the exception for false or misleading commercial speech does not apply when the alleged falsity does not concern a "commercial aspect" of the advertising, but rather targets advertising based on its underlying *viewpoint*. *See Linmark Assocs., Inc. v. Twp. of Willingboro*, 431 U.S. 85, 96 (1977). That is, advertising cannot be censored based on the "ideas conveyed [or the] form of expression." *Carey v. Population Servs. Int'l*, 431 U.S. 678, 701 n.28 (1977). For example, while a seller of contraceptives could face suit for falsely advertising the price or efficacy of its products, it could *not* face suit for distributing advertisements containing supposedly false statements about the morality or social utility of contraception. *Id.* Whereas the former implicates empirical facts about the product, the latter touches on matters of social and political concern that fall in the heartland of First Amendment protection.

Here, the complaint takes no issue with the commercial aspects of Smith & Wesson's advertising. It does not claim that the company deceived its customers about the prices or features of its products, nor does it claim that the ads sow disinformation inhibiting a "fair bargaining process." *44 Liquormart, Inc.*, 517 U.S. at 501. Rather, Mexico takes issue with the *expressive*

*content* of Smith & Wesson's speech, by attacking the alleged underlying message that civilians should own semi-automatic rifles for recreation or self-defense. But that is not the type of message that the First Amendment allows to be deemed "true" or "false" (and so sanctionable) under state law.

The bottom line is that the Mexican government would prefer a U.S. society in which guns were not readily available. But whether such products *should* be owned or used by private citizens is a matter of opinion—in fact, a hotly contested political and philosophical issue—that cannot be dictated by the state. And where an advertisement merely states "the availability of products" that are "not only entirely legal … but constitutionally protected," it cannot be subject to censorship based on the state's view that the products in question should not be purchased or used. *Carey*, 431 U.S. at 701 & n.28.

### B.     The complaint does not satisfy the First Amendment exception for speech advocating unlawful conduct.

The complaint also fails to allege any facts showing that Smith & Wesson's advertising falls within the First Amendment exception for the advocacy of unlawful conduct. The First Amendment allows the state to prohibit certain commercial speech if it actively proposes unlawful transactions. For instance, the government can prohibit newspapers ads "proposing a sale of narcotics or soliciting prostitutes." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 388 (1973).

But, outside of that context, commercial speech is protected by the First Amendment unless it amounts to "incitement." *See Carey*, 431 U.S. at 701; *see also Reilly*, 533 U.S. at 579 (Thomas, J., concurring in part and concurring in judgment). And that exception is exceedingly narrow. The plaintiff must show that (1) the speaker advocated "lawless action," (2) "the speaker intends that his speech will result in … lawless action," and (3) "the *imminent* use of … lawless action is the

likely result." *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc) (emphasis added) (citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969)).

Here, the allegations fall well short of incitement. First, as noted above, none of Smith & Wesson's advertising says a single word supporting unlawful conduct. As to accompanying visuals, the U.S. Supreme Court has squarely rejected the view that merely depicting the use of firearms can be censored because it *implicitly* encourages violence in the abstract. *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011) (striking down a restriction on selling violent video games).

Second, the complaint does not (and cannot) allege facts plausibly showing that Smith & Wesson *intended* for its advertising to incite violence. At best, it offers rank speculation that the company "knew" its advertising would "attract persons and organizations that intended to use Smith & Wesson's products to battle against the military and police" and "knew" that "its marketing of those products[] created an unreasonable risk of physical injury to persons in Mexico." Compl. ¶¶ 552-53. But, in just the same way, breweries, distilleries, and car makers know that, even though they do not intend their products to be used illegally, some customers will do so. Nevertheless, those companies are not liable for truthfully advertising their products, including showing people drinking and cars on race tracks.

Third, incitement is limited to the advocacy of "imminent lawless action." *Brandenburg*, 395 U.S. at 448-49 (finding no incitement where a Klansman advocated the "moral necessity for a resort to force and violence"); *Hess v. Indiana*, 414 U.S. 105, 107, 109 (1973) (finding no incitement where a protester yelling "[w]e'll take the f[***]ing street later"). For the First Amendment exception to apply, there must be "temporal imminence" between the speech at issue and the resulting unlawful activity. *See James v. Meow Media, Inc.*, 300 F.3d 683, 698 (6th Cir.

2002). Thus, even express advocacy of unlawful conduct does not amount to incitement if it calls for such conduct at some "indefinite future time." *McCoy v. Stewart*, 282 F.3d 626, 631 (9th Cir. 2002).

Here, Smith & Wesson's advertising falls well short of that mark. The complaint nowhere alleges that Smith & Wesson advertising created any threat of imminent violence by Mexican drug cartels. Instead, it offers only an incredibly attenuated theory of liability involving multiple intervening criminal acts by multiple independent third parties, eventually resulting in a Smith & Wesson firearm being in the hands of a Mexican criminal who then chooses to use it in crime. That does not pass constitutional muster.

For all these reasons, applying Chapter 93A to penalize truthful and non-misleading advertising would violate the First Amendment. At the very least, the court should construe Chapter 93A to avoid that outcome. As the Massachusetts courts themselves have recognized, if "statutory language is susceptible of multiple interpretations, a court should avoid a construction that raises constitutional doubts and instead should adopt a construction that avoids potential constitutional infirmity." *Oracle USA, Inc. v. Comm'r*, 168 N.E.3d 349, 356 (Mass. 2021). That is doubly true here, where construing Chapter 93A in Mexico's favor would also render the law unconstitutional as applied to Smith & Wesson's advertisements.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Brief, Mexico's Chapter 93A claim against Smith & Wesson should be dismissed with prejudice.

Dated: November 22, 2021                    Respectfully submitted,


                                            _____*/s/ Andrew E. Lelling*_____
                                            Andrew E. Lelling (BBO No. 631859)
                                            alelling@jonesday.com
                                            100 High Street
                                            JONES DAY
                                            Boston, MA  02110-1781
                                            Phone: (617) 449-6856
                                            Fax: (617) 449-6999

                                            and

                                            Noel J. Francisco (admitted PHV)
                                            njfrancisco@jonesday.com
                                            Anthony J. Dick (admitted PHV)
                                            ajdick@jonesday.com
                                            JONES DAY
                                            51 Louisiana Avenue, N.W.
                                            Washington, D.C. 20001
                                            Phone: (202) 879-3939
                                            Fax: (202) 626-1700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 22, 2021, the foregoing document was served upon all counsel of record through this Court's electronic filing system as identified in the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

_____/s/ Andrew E. Lelling_____
Andrew E. Lelling (BBO No. 631859)
alelling@jonesday.com
100 High Street
JONES DAY
Boston, MA  02110-1781
Phone: (617) 449-6856
Fax: (617) 449-6999

22