**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ESTADOS UNIDOS MEXICANOS,
                    *Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
                    *Defendants.*

Civil Action No. 1:21-CV-11269-FDS

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT SMITH & WESSON'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ................................................................................1

ARGUMENT ........................................................................................................................5

I.     THE COMPLAINT PLAUSIBLY ALLEGES THAT SMITH &
WESSON'S MARKETING VIOLATES CHAPTER 93A. ...............................................5

II.    THE GOVERNMENT HAS ARTICLE III STANDING TO PURSUE ITS
93A CLAIM. .....................................................................................................................7

III.   THE COMPLAINT ADEQUATELY ALLEGES PROXIMATE CAUSE. .......................9

IV.   THE COMPLAINT STATES A CLAIM UNDER SECTION 11 OR
SECTION 9. .......................................................................................................................12

V.    CHAPTER  93A APPLIES TO INJURIES INFLICTED OUTSIDE OF
MASSACHUSETTS .........................................................................................................15

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Akar v. Fed. Nat. Mortg. Ass'n*, 845 F. Supp. 2d 381 (D. Mass. 2012)........................................ 14

*Am. Shooting Sports Council, Inc. v. Attorney General*, 711 N.E.2d 899 (Mass. 1999).............. 6

*Bennett v. Spear*, 520 U.S. 154 (1997) .............................................................................. 7, 8

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011).................................................................. 7

*Bubalo v. Navegar, Inc.*, No. 96 3664, 1997 WL 337218 (N.D. Ill. Jun. 11, 1997).................... 12

*Casillas v. Auto-Ordnance Corp.*, No. C 95-3601, 1996 WL 276830 (N.D. Cal. May 15, 1996) 12

*Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303 (Mass. 2002)....................................... 14

*City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *15 n.65 (Mass. Sup. Ct. July 13, 2000) ......................................................................................................... 9

*Controlled Kinetmatics, Inc. v. Novanta Corp.*, No. 17-cv-11029-ADB, 2017 WL 5892200 (D. Mass. Nov. 29, 2017)........................................................................................................... 15

*Datacomm Interface, Inc. v. Computerworld, Inc.,* 489 N.E.2d 185 (Mass. 1986)................... 5, 6

*Davis v. United States,* 670 F. 3d 48 (1st Cir. 2012) ................................................................... 9

*Doe v. Shibinette*, 16 F. 4th 894 (1st Cir. 2021) ....................................................................... 13

*Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972)....................................... 5

*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001) ............................................... 10, 11

*Geis v. Nestle Water N. Am., Inc.*, 321 F. Supp. 3d 230 (D. Mass. 2018) ................................... 15

*Gidwani v. Wasserman*, 365 N.E.2d 827 (Mass. 1977)............................................................... 9

*Gillette Co. v. Provost*, 1584CV00149BLS2, 2017 WL 2292748 (Mass. Super. Apr. 19, 2017) 14

*Grand Pacific Finance Corp. v. Brauer*, 783 N.E. 2d 849 (Mass. App. Ct. 2003) ...................... 14

*Hernández-Gotay v. United States*, 985 F.3d 71 (1st Cir. 2021) ................................................... 7

*In re Neurontin Marketing and Sales Prac. Litig.*, 712 F.3d 21 (1st Cir. 2013)............................ 8

*In re Pharm. Industry Ave. Wholesale Price Litig.*, 582 F.3d 156 (1st Cir. 2009) ...................... 14

*In re Ranbaxy Generic Drug Application Litig.*, No. 19-md-02878-NMG, 2021 WL 5493675 (D. Mass. Nov. 22, 2021) ............................................................................... 8

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)............................................ 9

*Kattar v. Demoulas*, 739 N.E. 2d 246 (Mass. 2000)................................................................... 13

*Kisich v. U.S.*, 275 F. Supp. 2d 48 (D. Mass 2003) ................................................................... 13

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E. 2d 787 (Mass. 2003) ............. 15

*Lord v. Com. Union Ins. Co.*, 801 N.E. 2d 303 (Mass. App. Ct. 2004)....................................... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 7

*Massachusetts v. U.S. Dep't of Health and Human Services*, 923 F. 3d 209 (1st Cir. 2019)......... 7

*McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366 (S.D.N.Y. 1996) ...................................... 12

*Merrill v. Navegar, Inc.*, 28 P.3d 116 (Cal. 2001)........................................................ 11

*Murphy v. United States*, 45 F.3d 520 (1st Cir. 1995) .................................................. 13

*Parker v. Bank of America, NA*, No. 11-1838, 2011 WL 6413615
   (Mass. Superior Ct. Dec. 16, 2011) ....................................................................... 14

*Republic of Turkey v. OKS Partners*, 797 F. Supp. 64 (D. Mass. 1992) ..................................... 12

*Soto v. Bushmaster Firearms Int'l, LLC,* 202 A. 3d 262 (Conn. 2019)................................. passim

*State v. Guinn*, 537 N.E.2d 656 (Ohio 1989)................................................................ 6

*Szalla v. Locke*, 657 N.E. 2d 1267 (Mass. 1995) .......................................................... 14

*Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E.2d 975 (Mass. App. Ct. 1999) ........................... 14

*Walsh v. TelTech Sys., Inc.*, 821 F.3d 155 (1st Cir. 2016)............................................... 10

*Waner-Lambert Co. v. Execuquest Corp.*, 691 N.E. 2d 545 (Mass. 1998)................................... 4

*Weaver's Cove Energy, LLC v. R.I. Coastal Resources Manag. Council*, 589 F. 3d 458 (1st Cir.
   2009) ........................................................................................................... 8

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102 (D. Mass. 2003) 15, 16

**Statutes**

Cal. Civ. Code § 1714.4........................................................................................... 11

Conn. Gen. Stat. §§ 42-110 *et seq.* ......................................................................... 5

Mass. G. L. c. 93A, § 1 ......................................................................................... 12

Mass. G. L. c. 93A, § 11 ............................................................................... 4, 12, 15

Mass. G. L. c. 93A, § 9 ......................................................................................... 13

Mass. Gen. Law c. 93A, § 2..................................................................................... 5

**Other Authorities**

29 Fed. Reg. 8355 (1964) ........................................................................................ 5

Dan B. Dobbs, *The Law of Torts* § 190 (2000).............................................................. 9

Michael C. Gilleran, *Law of Chapter 93A*, 52 Mass Prac. § 8.5.......................................... 14

Restatement (Second) of Torts § 448............................................................................ 9

# INTRODUCTION AND BACKGROUND

Plaintiff, Estados Unidos Mexicanos ("the Government" or "Plaintiff"), submits this memorandum in opposition to Defendant Smith & Wesson Brands, Inc.'s ("Smith & Wesson") motion to dismiss the Government's Chapter 93A claim and to respond to Smith & Wesson's individual memorandum of law ("S&W Mem.") directed to that claim.[1]

The general facts regarding the claims against Smith & Wesson are set forth in the Government's Opposition to Defendants' Joint Memorandum of Law ("Op. Jt. Mem."). Smith & Wesson is one of the largest gun manufacturers in America, with its principal place of business and manufacturing hub in Massachusetts. Compl. ¶ 31. Its weapons comprise about 10% of all crime guns recovered in Mexico. *Id.* ¶ 434.

With regard to the Government's 93A claim, the Complaint alleges that the manufacturing defendants, including Smith & Wesson, have "refused to heed law enforcement's warnings of the heightened dangers of assault weapons," and "instead increased production of military-style weapons, advertised their usefulness in battling the police and military, sold them unrestrictedly to the general public, and implemented no measures to prevent trafficking to drug cartels and other criminals in Mexico." Compl. ¶ 319. It alleges that the marketing materials of the manufacturing defendants, including Smith & Wesson, "routinely show their assault weapons being used by military personnel or positioned near individuals wearing what appear to be military or law enforcement uniforms or gear. *Id.* ¶ 322. "The accompanying text often resembles oaths taken by military or law enforcement personnel, implying that Defendants'

---

[1] The Government contends that Mexican law should apply to its claims. *See* Op. Jt. Mem. 5-7. The Chapter 93A claim is pled in the alternative.

products are selected or chosen by these groups; Defendants reinforce this association with pictures of American flags." *Id.*

The Complaint alleges that "Smith & Wesson's then-CEO candidly discussed in an investor call the importance of capitalizing on this "halo effect," by which the company attempts to leverage police and military associations to enhance the credibility and thus the sales of its guns to the civilian market." Compl. ¶ 323. It alleges that "Smith & Wesson's marketing campaign falsely and misleadingly associates its "civilian" products with the U.S. military and law enforcement." *Id.* ¶ 324.

The Complaint alleges that Defendants, including Smith & Wesson "know that these marketing techniques are disproportionately likely to motivate and attract dangerous individuals who harbor militaristic ambitions or want to attack large numbers of people," and that "it is the perfect message for drug cartels and other criminals who want to do battle with the military and police in Mexico." Compl. ¶ 331. It alleges that Defendants, including Smith & Wesson, "are well aware that assault rifles and sniper rifles are the weapons of choice for violent cartels in Mexico," *id.* ¶ 333, "even though they are not lawfully sold anywhere in Mexico," *id.* ¶ 334.

The Complaint alleges that Smith & Wesson, "through marketing that emphasized the ability of civilians to misuse Smith & Wesson assault rifles in unlawful, military-style attacks and encouraged such misuse." Compl. ¶ 342. "Smith & Wesson primarily manufactures, markets, and distributes AR-15-style assault rifles like the Smith & Wesson M&P 15 from a base of operations in Massachusetts." *Id.* ¶ 343. It alleges that Smith & Wesson "market[ed] products including AR-15 style rifles, like the Smith & Wesson M&P 15, to the civilian market in way that highlighted their efficacy for civilians wanting to carry out unlawful military-style combat missions and that encouraged and promoted the misuse." *Id.* ¶ 344. And it alleges that "Smith &

Wesson did so knowing that its marketing would motivate and attract criminal users—including the cartels—to select and misuse its products in unlawful acts of violence. Smith & Wesson intentionally emphasized the ability of its products to rapidly dispatch large numbers of opponents in armed combat, appealing especially to criminals like the cartels who want to outgun and defeat law enforcement or military forces." *Id.* ¶345.

The Complaint gives the example that "Smith & Wesson uploaded onto its YouTube channel a video endorsement of its M&P 15 T model rifle from a professional shooter who described using the weapon to establish a 'world record' in speed shooting involving ten shots fired into four different targets in 1.59 seconds." Compl. ¶ 346. Another example is that "Smith & Wesson published [an] advertisement . . . for an M&P 15 rifle and emphasized that it lets you '[k]ick [b]rass' by '[b]urn[ing] through all the ammunition you want.'" *Id.* ¶ 347. More generally, the Complaint alleges that "Smith & Wesson repeatedly emphasized through branding, including the 'M&P' or 'Military and Police' designation, that its products are capable of being deployed in combat-like scenarios." *Id.* ¶ 347.

The Complaint alleges that "Smith & Wesson knew that its marketing and advertising would attract persons and organizations that intended to use Smith & Wesson's products to battle against the military and police, including the military and police in Mexico." Compl. ¶ 552. And it alleges that "Smith & Wesson further knew that its products would be trafficked into Mexico for use by the drug cartels there." *Id.* ¶ 553. It alleges that "Smith & Wesson knew that its products, and its marketing of those products, created an unreasonable risk of physical injury to persons in Mexico." *Id.*

Ultimately, the Complaint alleges that "Smith & Wesson's conduct in producing and marketing its military-style assault weapons is a knowing violation of Chapter 93A, and those

violations were a substantial factor in causing the injuries that the Government has sustained." Compl. ¶ 554. In addition to damages, the Government seeks injunctive relief to stop Smith & Wesson from continuing its unlawful inflammatory marketing, *id.* at 134 (Demand for Judgment), consistent with its prior agreement with the United States to do so.[2] Massachusetts law entitles Mexico to such injunctive relief independent of whether damages resulting from this marketing can be established.[3]

      Smith & Wesson's motion to dismiss should be denied. The Complaint plausibly pleads that Smith & Wesson's inflammatory marketing emphasizing the use of its guns for military use is unfair conduct under Chapter 93A and not protected by the First Amendment. The Complaint plausibly pleads that the marketing contributes to the Government's injuries and threatens to continue to do so, therefore the Government has Art. III standing. There is no proximate cause issue given the foreseeability of the harm. The Complaint properly states a claim under section 11, but if not, leave to amend should be granted to amend expressly to assert a claim under section 9.

---

[2] *See* Compl. ¶¶ 94, 369(l) (agreeing to "[n]ot market any gun in a way that would make the gun particularly appealing to criminals").

[3] *See* Mass. G. L. c. 93A, § 11 ("person, if he has not suffered any loss of money or property, may obtain . . . an injunction if it can be shown that the . . . unfair . . . act or practice may have the effect of causing such loss of money or property"); *Waner-Lambert Co. v. Execuquest Corp.*, 691 N.E. 2d 545, 547 (Mass. 1998) (plaintiff "need not already have suffered loss of money or property" to obtain injunctive relief).

## ARGUMENT

### I.  THE COMPLAINT PLAUSIBLY ALLEGES THAT SMITH & WESSON'S MARKETING VIOLATES CHAPTER 93A.

In *Soto v. Bushmaster*, the Supreme Court of Connecticut, invoking the Federal Trade Commission's so-called "cigarette rule,"[4] squarely held that the Connecticut Unfair Trade Practices Act ("CUTPA")[5] bars inflammatory marketing designed to target and motivate criminals to illegally use firearms.[6]  Chapter 93A, like CUTPA, incorporates the FTC's "cigarette rule."[7]  Accordingly, Smith & Wesson's advertising intended to target and motivate criminals to illegally acquire and misuse its products is "immoral, unethical, oppressive, or unscrupulous" and thus unlawful under Chapter 93A. This is hardly a "novel" theory.  On the contrary, *Soto* itself pointed out that the "FTC Act and its various state analogues have been applied in numerous instances to the wrongful marketing of other potentially dangerous consumer products, especially with respect to advertisements that promote unsafe or illegal conduct,"[8] and that "regulation of firearms advertising in our sister states [including Massachusetts] frequently has been accomplished under the auspices of state consumer

---

[4] The "cigarette rule" prohibits practices as unfair if they are 'immoral, unethical, oppressive or unscrupulous.'" *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (citing 29 Fed. Reg. 8355 (1964)) (internal quotation marks omitted).

[5] Conn. Gen. Stat. §§ 42-110 *et seq.*

[6] *Soto v. Bushmaster Firearms Int'l, LLC,* 202 A. 3d 262, 291 (Conn. 2019) (allowing "wrongful advertising claim . . . that an advertisement models or encourages illegal or unsafe behavior" where plaintiffs claimed that "defendants promoted the use of their civilian assault rifles for offensive, military style attack missions"), *cert denied sub nom. Remington Arms Co., LLC v. Soto,* 140 S. Ct. 513 (2019).

[7] *See Datacomm Interface, Inc. v. Computerworld, Inc.,* 489 N.E.2d 185, 196 (Mass. 1986) ("whether [a business practice is] immoral, unethical, oppressive, or unscrupulous" factors into a determination of whether it is unfair and prohibited under Chapter 93A); *cf.* Mass. Gen. Law c. 93A, § 2(b) (in interpreting what constitutes prohibited trade practices, courts are to be guided by FTC interpretations).

[8] *Soto*, 202 A.3d at 307 (internal quotation marks omitted).

protection and unfair trade practices laws."[9] Indeed, in *Am. Shooting Sports Counsel*, the

Supreme Judicial Court signaled that unfair practices prohibited under Chapter 93A may include

the sale of firearms especially likely to be attractive to and misused by criminals, such as those

lacking a "tamper resistant serial number."[10]

Smith & Wesson claims that there are no allegations that show that its advertising is

false. S&W Mem. 12-13. But the primary focus of the Government's claim is the one accepted

in *Soto* and paralleled in *Datacomm*—which is that marketing is prohibited if it encourages

unlawful use of dangerous products. Smith & Wesson advertises and sells its assault weapons

*into the civilian market*, encouraging their unlawful use *to battle the police and military*. *See,*

*e.g.*, Compl. ¶¶ 319-352, 552-553. Unfortunately, the evidence in discovery to support these

allegations will be all too easy to come by.

Nothing in the First Amendment or the case law entitles firearms manufacturers to avoid

liability under laws like CUTPA or Chapter 93A for directing their marketing to criminal actors.

The *Brandenburg* "incitement" test on which Smith & Wesson relies (S&W Mem. 16-20) is not

the test for imposing civil liability on *commercial* speech.[11] Courts have specifically rejected

Defendants' argument that inflammatory marketing of firearms designed to attract criminals

enjoys First Amendment protection from civil liability.[12]

---

[9] *Id.* at 307 & n. 50 (citing, among other cases, *Am. Shooting Sports Council, Inc. v. Attorney General*, 711 N.E. 2d 899 (Mass. 1999)).

[10] 711 N.E.2d at 901. It further underscored that it is proper to extend Ch. 93A to restrict business practices involving the sale of goods in violation of the law. *See id.* at 901-03, 905 n.14 (noting that legislature had addressed serial number issue).

[11] *See, e.g.*, *State v. Guinn*, 537 N.E.2d 656, 660 (Ohio 1989).

[12] *See, e.g., Soto*, 202 A.3d at 311 n. 56 ("[I]t is . . . well settled that commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the [F]irst [A]mendment."); Shadowen Decl. Ex. 58, *Goldstein*, No. 37-

## II.     THE GOVERNMENT HAS ARTICLE III STANDING TO PURSUE ITS 93A CLAIM.

Smith & Wesson contends that the Government has failed to sufficiently allege causation for purposes of Article III standing but its challenge is premised on its erroneous, overly strict standards for causation and plausibility.  As set forth in the Government's Opposition to the Joint Motion,[13] "even an identifiable trifle . . . is enough to confer standing,"[14] and it is sufficient that Smith & Wesson's violation of Chapter 93A "contributes to [the Government's] injuries," even if there are other contributing factors.[15] Moreover, "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'"[16]

The Complaint plausibly pleads causation. It alleges that Smith & Wesson recklessly markets its gun as military-style assault weapons knowing that these are the cartels' weapons of choice. Compl. ¶¶ 319-352; 549-556.  "Its advertisements repeatedly emphasize its weapons'

---

2020-00016638-CU-PO-CTL at 7 (same, collecting cases).  Smith & Wesson (Mem. 19) cites *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011), which struck down a California statute that totally banned the sale of violent video games to minors. A complete *statutory prohibition* on the sale of video games that are not, in and of themselves, instruments of violence and that have substantial expressive and artistic elements, is categorically different from imposing civil liability on reckless and inflammatory firearms marketing targeting the criminal firearms market.

[13] *See* Opp. Jt. Mem. 30-33.

[14] *Massachusetts v. U.S. Dep't of Health and Human Services*, 923 F. 3d 209, 222 (1st Cir. 2019) (cleaned up).

[15] *Massachusetts v. E.P.A.*, 549 U.S. 497, 523 (2007).  Further, it is sufficient that Smith & Wesson's violation "threatens" the Government with injury. *See Hernández-Gotay v. United States*, 985 F.3d 71, 77 (1st Cir. 2021) (plaintiff must allege it "has suffered an actual *or* threatened injury in fact, which is . . . fairly traceable to the statute") (internal quotation marks omitted) (emphasis added).

[16] *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

ability to function in combat-like scenarios and quickly dispatch a large number of perceived enemies with a torrent of fire." *Id.* ¶ 324. Smith & Wesson has known for decades that these are the types of weapons coveted by the cartel and trafficked into Mexico. *Id.* ¶¶ 335, 337-40. The illegal trafficking of these weapons and the subsequent harm to the Government are foreseeable consequences of Smith & Wesson's reckless advertising. *Id.* ¶¶ 319-352, 549-556. "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, the burden shifts to the defendant to rebut this causal inference."[17]

Smith & Wesson asserts, without authority, that the Government's allegations are insufficient because they do not claim that "any member of a Mexican drug cartel saw a Smith & Wesson advertisement, much less that such an advertisement caused the cartels to commit crimes with Smith & Wesson firearms."[18] But the Government "need not show that [Smith & Wesson's] actions are the very last step in the chain of causation' for the injury,"[19] or that the defendant's conduct is the sole cause of the injury.[20] The Complaint alleges that the cartels in effect go shopping for Smith & Wesson guns in the U.S., searching for the very military attributes that

---

[17] *In re Neurontin Marketing and Sales Prac. Litig.*, 712 F.3d 21, 45 (1st Cir. 2013) (internal quotation omitted); *see In re Ranbaxy Generic Drug Application Litig.*, No. 19-md-02878-NMG, 2021 WL 5493675, at *4 (D. Mass. Nov. 22, 2021) (same, on summary judgment).

[18] S&W Mem. 6. Contrary to Smith & Wesson's argument (*see id.* at 14-16), the Government is also not limited, in proving its marketing claims, to the illustrative examples of advertising in the Complaint.

[19] *Weaver's Cove Energy, LLC v. R.I. Coastal Resources Manag. Council*, 589 F. 3d 458, 467 (1st Cir. 2009) (quoting *Bennett*, 520 U.S. at 169).

[20] *See* Opp. Jt. Mtn 32.

Smith & Wesson advertises.[21] This easily alleges that Smith & Wesson's advertising and marketing strategies contributed to the unlawful and dangerous misuse of its products by the cartels and threatens to continue to do so in the future.

## III. THE COMPLAINT ADEQUATELY ALLEGES PROXIMATE CAUSE.

Smith & Wesson claims there is no proximate cause because of the "independent criminal acts" of third parties using its firearms in Mexico. S&W Mem. 7. However, what makes the marketing unfair is precisely that it *encourages* misuse of the product. Moreover, criminal conduct is *not* a superseding cause where, as here, it is foreseeable. The First Circuit case cited by Defendants so holds.[22] Under Massachusetts law, "liability will be imposed where the actor realized, or should have realized, the likelihood that . . . a situation [providing another with an opportunity to commit a crime] might be created and that a third person might avail himself of the opportunity to commit a crime."[23] Foreseeability is also the test under Chapter 93A, and is not a matter to be decided on a motion to dismiss.[24]

---

[21] *See, e.g.,* Compl. ¶ 552 ("Smith & Wesson knew that its marketing and advertising would attract persons and organizations that intended to use Smith & Wesson's products to battle against the military and police, including the military and police in Mexico.").

[22] *See Davis v. United States,* 670 F. 3d 48, 56 (1st Cir. 2012) (upholding negligence liability of FBI agents for harm resulting from murders committed by informant where defendants' reckless conduct made the outcome "eminently predictable"); *see also* Opp. Jt. Mem. 36-37.

[23] *Gidwani v. Wasserman*, 365 N.E.2d 827, 830 (Mass. 1977); *see also City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *15 n.65 (Mass. Sup. Ct. July 13, 2000) (superseding-cause argument "fails in Massachusetts if the third person's acts could have been foreseen"); Restatement (Second) of Torts § 448; Dan B. Dobbs, *The Law of Torts* § 190, at 472 (2000) ("Today's courts usually recognize that foreseeability, in the nature of things, is fact-specific, so they now often permit juries to find that a criminal act was foreseeable and not a superseding cause.").

[24] *Jane Doe No. 1 v. Backpage.com, LLC,* 817 F.3d 12, 24 (1st Cir. 2016), cited by Smith & Wesson, confirms that foreseeability is the standard and dismissed a complaint not on proximate cause grounds but because it was totally lacking in plausible allegations of *actual* causation.

Smith & Wesson cites *Walsh v. TelTech Sys., Inc.*[25] to claim that advertising capable of encouraging both lawful and unlawful uses can never be found to proximately cause unlawful use under Chapter 93A. *Walsh* made no such categorical holding; it upheld only the dismissal of a claim against a "spoofing" service whose advertisements *discouraged* improper use of its product.[26] And *Walsh* addressed the sufficiency of the evidence at summary judgment.

Nor do *Soto* or *Ganim*[27] preclude a finding of proximate cause under CUTPA or Chapter 93A. As a general matter, *Ganim*'s limited view of gun company liability is at odds with *City of Boston*, the Supreme Courts of Indiana and Ohio, and other courts.[28] And although in *Ganim* there were some allegations that relevant advertising irresponsibly "targeted" and "encouraged" a class of dangerous criminals, the primary theory of why the relevant advertising violated CUTPA was because it deceptively hid the risks of handgun ownership (such as accidental shootings) from firearms purchasers.[29] *Ganim* did not seriously engage with or evaluate the theory that advertising *promoting unlawful misuse* of firearms could be foreseeably linked to municipal harms stemming from gun crimes. In fact, *Ganim*'s summary of the allegations in the complaint *failed even to mention* allegations that advertising violated CUTPA because it aimed to induce unlawful uses of firearms.[30] As *Soto* correctly observed, "[a] claim that a defendant's advertisements unethically promote illegal conduct is fundamentally different from one alleging

---

[25] 821 F.3d 155 (1st Cir. 2016) (cited in S&W Mem. at 7).

[26] *Id*. at 162-64.

[27] *Ganim v. Smith & Wesson Corp*., 780 A.2d 98 (Conn. 2001).

[28] *See* Opp. Jt. Mem. 33.

[29] 780 A. 2d. at 113; *see id.* at 108-112.

[30] *See id*. at 108-112 (but describing, in depth, the deception theory).

false or misleading advertising."[31] While *Soto* distinguished *Ganim* because, unlike in *Ganim*, the plaintiffs were "direct victims" of the violence caused by unlawful advertising,[32] it did not, as Smith & Wesson seems to claim, categorically hold that a municipal plaintiff could never establish harm proximately caused by a CUTPA violation where the relevant advertising was unlawful because it actively induced unlawful firearms violence. Indeed, the Government *is* a direct victim of the violence promoted by Smith & Wesson's marketing insofar as it suffered physical damage to its property and its personnel.[33]

Smith & Wesson's reliance on *Merrill v. Navegar, Inc.*,[34] is also misplaced. *Merrill* dismissed, at *summary judgment*, a claim for negligent advertising because the discovery record revealed that the shooter had not been exposed to relevant marketing.[35] The court underscored that "we express no opinion as to whether a 'negligent advertising' theory would otherwise be legally viable on a different evidentiary record."[36] The Government's theory here is not that a single shooter was motivated by an advertisement, as was the case in *Merrill*. Its theory is, and a developed discovery record will prove, that Smith & Wesson and the other Defendants have

---

[31] 202 A.3d at 291.

[32] *Id.* at 290-91.

[33] Compl. ¶¶ 458-464. *Cf. Ganim*, 780 A.2d at 117-18 (alleged harms "do not involve injuries such as physical damage to municipal personal or real property" but instead only "general harms to the municipal polity"). Smith & Wesson also suggests that *Soto* supports its position because that case involved a single individual "whose motivations could be probed through the litigation process" more easily than the motivations of numerous unnamed Mexican criminals who used Smith & Wesson products in crimes in Mexico. S&W Mem. 7-8. This argument overlooks that the shooter in the *Soto* litigation was *dead*. Proving causation may well be easier in this case as it involves the impact on a whole class of violent actors and may be assessed through economic techniques.

[34] 28 P.3d 116 (Cal. 2001).

[35] *See id.* at 131-33.

[36] *Id*. at 133 n. 9. *Merrill* also relied, in part, on a now repealed firearms liability shield statute. *Id.* at 119 (citing then-applicable Cal. Civ. Code § 1714.4).

massively and systematically marketed their weapons as exactly what the cartels want—military-style weapons capable of killing police and military.[37]

## IV.  THE COMPLAINT STATES A CLAIM UNDER SECTION 11 OR SECTION 9.

Smith & Wesson does not and cannot dispute that the Government is "a person" that can bring a claim under Chapter 93A.[38] Rather, Smith & Wesson argues that the Government brought its claim under the wrong section of Chapter 93A. The Complaint asserts a claim under section 11, which provides that "[a]ny person who engages in the conduct of *any* trade or commerce and who suffers any loss of money or property . . . as a result of the use or employment by another person who engages in trade or commerce of an unfair . . . act or practice declared unlawful by section two . . . may . . . bring an action . . . ."[39]  Notwithstanding that the Complaint alleges that "[t]he Government engages in trade or commerce," Compl. ¶ 555, and that it suffered injuries acting in its commercial capacity, *see id.* ¶ 448 (l), Smith & Wesson

---

[37] Smith & Wesson's other cases, all out-of-state, are also inapposite.  S&W Mem. at 9 n.2. *Casillas v. Auto-Ordnance Corp*., No. C 95-3601, 1996 WL 276830 (N.D. Cal. May 15, 1996), was an individual-shooter case in which the court granted *summary judgment* in the face of plaintiffs' failure to "present evidence that the advertisements were targeted to criminals generally *or* to [the shooter] specifically [or] were seen by [the shooter]." *Id.* at *3.  In *Bubalo v. Navegar, Inc.*, No. 96 3664, 1997 WL 337218 (N.D. Ill. Jun. 11, 1997), plaintiffs failed to even present any "any allegations" that the marketing contributed to the misuse of the firearm. *Id.* at *9.   And *McCarthy v. Sturm, Ruger & Co*., 916 F. Supp. 366 (S.D.N.Y. 1996), involved the sale of *ammunition* rather than a firearm.  Further, to *McCarthy*'s suggestion that advertising highlighting the dangerous features of a product which make it an especially useful tool for unlawful acts of violence in order to target and motivate a class of especially dangerous users is insufficient to establish liability conflicts with the better reasoned opinion of the Supreme Court of Connecticut in *Soto*.

[38] Mass. G. L. c. 93A, § 1(a).  *See Republic of Turkey v. OKS Partners*, 797 F. Supp. 64, 68 (D. Mass. 1992) ("since its amendment in 1987, c. 93A has protected "persons" which include legal entities such as governments").

[39] Mass. G.L. c. 93A, § 11 (emphasis added).  *See also supra* n. 3 (as to injunctive relief)

contends that it "does not allege that it suffered injury in any commercial transaction with Smith & Wesson," and therefore section 11 does not apply.  S&W Mem. 9.

As an initial matter, section 9—which provides a cause of action to "[a]ny person, other than a person entitled to bring action under section eleven"[40]—would be applicable even if Smith & Wesson were it correct about section 11.  And the Complaint, which broadly alleges a violation of the entire chapter, can fairly be read to assert such a claim in the alternative.[41] Shortly after the Complaint was filed, the Government sent a demand letter as required under section 9, and Smith & Wesson does not seek to dismiss on this ground.[42]

In any event, Smith & Wesson is wrong about section 11. It is well settled that "[p]arties need not be in privity for their actions to come within the reach of c. 93A."[43]  And this is true for

---

[40] Mass. G. L. c. 93A, § 9(1).

[41] On a motion to dismiss, a complaint is to be read liberally and as allowing for recovery under any cognizable cause of action. *Doe v. Shibinette*, 16 F. 4th 894, 901 (1st Cir. 2021) ("At this stage of the litigation we must construe the operative complaint 'liberally and treat all well-pleaded facts as true, according to the plaintiff the benefit of all reasonable inferences.'") (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995); *see also Kisich v. U.S.*, 275 F. Supp. 2d 48, 49 (D. Mass 2003) (in the context of a motion to dismiss, "the court must accept as true the facts alleged in the complaint, construe all reasonable inferences in favor of the Plaintiff, and determine whether the Plaintiff can recover under any cognizable legal theory").

[42] *See Lord v. Com. Union Ins. Co.*, 801 N.E. 2d 303, 310 (Mass. App. Ct. 2004) (defendant waived argument about supposedly deficient demand letter by not asserting it in its responsive pleading).

[43] *Kattar v. Demoula*s, 739 N.E. 2d 246, 258 (Mass. 2000).

claims under section 11[44] as well under section 9.[45]  Smith & Wesson cites *Szalla v. Locke*,[46] but that case involved the principle that inter-enterprise disputes are generally not actionable.[47] Moreover, Massachusetts courts recognize that, regardless of any business relationship, a section 11 claim may lie when the defendant's actions "interfered with 'trade or commerce in some other way,'"[48] which Smith & Wesson's unlawful marketing obviously does.

Alternatively, if the Court were inclined to dismiss this claim, the Government requests permission, pursuant to Fed. R. Civ. P. 15(a)(2), to amend the Complaint to assert expressly a claim under section 9.[49]

---

[44] *See id.* (claim under § 11); *see also* Michael C. Gilleran, *Law of Chapter 93A*, 52 Mass Prac. § 8.5 ("The general test applied by courts to determine whether a 93A plaintiff is engaged in trade or commerce and thus required to bring suit under § 11, is whether the defendant's conduct giving rise to the 93A violation occurred in connection with a plaintiff business acting in a business context, or a plaintiff individual acting in a business context."); *cf. Soto*, 202 A.3d at 285 (party injured by unscrupulous or illegal advertising has standing to bring CUTPA action even in the absence of a business relationship).

[45] *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 309-10 (Mass. 2002) (no privity required for claim under § 9).

[46] 657 N.E. 2d 1267 (Mass. 1995) (cited in S&W Mem. at 9).

[47] *See Grand Pacific Finance Corp. v. Brauer*, 783 N.E. 2d 849, 860 n.7 (Mass. App. Ct. 2003) (distinguishing *Szalla* as involving dispute in a single entity); *In re Pharm. Industry Ave. Wholesale Price Litig.*, 582 F.3d 156, 193 n.30 (1st Cir. 2009) (same).

[48] *Gillette Co. v. Provost*, 1584CV00149BLS2, 2017 WL 2292748, at *9 (Mass. Super. Apr. 19, 2017).

[49] Massachusetts courts routinely have "allowed plaintiffs to amend their complaint to add a claim under Chapter 93A, despite not having delivered the demand letter to the defendant prior to filing the initial suit." *Akar v. Fed. Nat. Mortg. Ass'n*, 845 F. Supp. 2d 381, 404 (D. Mass. 2012); *e.g.*, *Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E.2d 975, 983 (Mass. App. Ct. 1999) (no error in allowing leave to amend where demand requirement was not previously met); *Parker v. Bank of America, NA*, No. 11-1838, 2011 WL 6413615, at *11 (Mass. Superior Ct. Dec. 16, 2011) (dismissing 93A claim "without prejudice to a motion to amend should it later appear that the demand requirement has been satisfied").

## V.     CHAPTER 93A APPLIES TO INJURIES INFLICTED OUTSIDE OF MASSACHUSETTS

Smith & Wesson's argument (Mem. at 10-11) that the Complaint should be dismissed because the "actions and transactions constituting the alleged . . . unfair or deceptive act or practice" did not occur "primarily and substantially within the commonwealth"[50] is meritless on numerous grounds. As an initial matter, Smith & Wesson is simply wrong insofar as it suggests that Chapter 93A protects only Massachusetts residents.[51] Second, the "primarily and substantially" test is a *defense* as to which the burden of proof is on Smith & Wesson.[52]  Third. the court "should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."[53] Because a court does not make findings of fact on a motion to dismiss, "a motion to dismiss is generally not 'an appropriate vehicle for raising the issue.'"[54]

## CONCLUSION

For the reasons stated above, the Court should deny Smith & Wesson's motion to dismiss the Chapter 93A claim.

---

[50] Mass. G. L. c. 93A, § 11.  This requirement does not apply to actions under § 9.

[51] *See Geis v. Nestle Water N. Am., Inc.*, 321 F. Supp. 3d 230, 240-42 (D. Mass. 2018) ("chapter 93A does not require that a plaintiff reside in Massachusetts to bring a claim," and "courts in this District and the Commonwealth have allowed chapter 93A suits by out-of-state plaintiffs").

[52] Mass. G. L. c. 93A, § 11 ("the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth").

[53] *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E. 2d 787, 799 (Mass. 2003).

[54] *Controlled Kinetmatics, Inc. v. Novanta Corp.*, No. 17-cv-11029-ADB, 2017 WL 5892200, at *4 (D. Mass. Nov. 29, 2017) (quoting *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 118 (D. Mass. 2003)).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.

Dated: January 31, 2022

Respectfully submitted,

/s/ *Steve D. Shadowen*
Steve D. Shadowen (pro hac vice)
Richard M. Brunell (BBO# 544236)
Nicholas W. Shadowen (pro hac vice)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ *Jonathan E. Lowy*
Jonathan E. Lowy (pro hac vice)
BRADY
840 First Street, N.E. Suite 400
Washington, DC 20002
Phone: 202-370-8104
jlowy@bradyunited.org

## CERTIFICATE OF SERVICE

I, Steven Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: January 31, 2022                    Respectfully Submitted,

                                           /s/ Steve D. Shadowen_____
                                           Steve D. Shadowen