# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ESTADOS UNIDOS MEXICANOS,
*Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
*Defendants.*

Civil Action No. 1:21-CV-11269-FDS

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BARRETT FIREARMS MANUFACTURING INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 4

I. THE COURT HAS SUBJECT MATTER JURISDICTION OVER
   BARRETT ......................................................................................................... 4

II. THE EXERCISE OF PERSONAL JURISDICTION OVER BARRETT
    ADHERES TO DUE PROCESS. ...................................................................... 7

III. THE COMPLAINT SUFFICIENTLY ALLEGES CLAIMS AGAINST
     BARRETT. ..................................................................................................... 11

    A.    The Complaint Adequately Alleges a Claim of Public Nuisance
            Against Barrett (Count Two). ............................................................... 13

    B.    The Complaint Adequately Alleges a Claim of Negligence Per Se
            Against Barrett (Court Four)................................................................. 14

    C.    The Complaint Adequately Alleges a Claim of Unjust Enrichment
            Against Barrett (Count Six). ................................................................. 15

    D.    The Complaint Adequately Alleges a Claim for Recovery of
            Punitive Damages Against Barrett (Count Nine).................................. 17

CONCLUSION........................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Gissell*, No. 20-11366-PBS, CV 2021 WL 2786277 (D. Mass. May 24, 2021) ............. 8

Adelson v. Hananel, 510 F.3d 43 (1st Cir. 2007) .......................................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 12

*Baker v. Equity Residential Mgmt., L.L.C.*, 390 F. Supp. 3d 246 (D. Mass. 2019) ..................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 12

*Bennett v. Spear*, 520 U.S. 154 (1997) ........................................................................................ 5

*Big Bob's Flooring Outlet of Am., Inc. v. Elyachar,* No. CV 20-11379-TSH, 2021 WL 4477438
   (D. Mass. Sept. 30, 2021) ...................................................................................................... 12

*Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986) .......................................................................... 6

*Bobzien v. Philip Morris USA Inc.*, 2021 WL 4147011 (N.D. Fla. June 16, 2021) .................... 11

*Branch Metal Processing, Inc. v. Bos. Edison Co.*, 952 F. Supp. 893 (D. R. I. 1996) ................ 11

*Camden County Bd. of Chosen Freeholders v. Beretta*, 273 F. 3d 536 (3d Cir. 2011) ............... 13

*Cent. Anesthesia Assoc. v. Worthy*, 325 S.E.2d 819 (Ga. App. 1984) ........................................ 14

*Chao v. Ballista*, 806 F. Supp.2d 358, 378 (D. Mass. July 28, 2011) ........................................ 11

*Chouinard v. Marigot Beach Club and Dive Resort*, No. CV 20-10863-MPK, 2021 WL 2256318
   (D. Mass. June 3, 2021) .......................................................................................................... 7

*City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020)
   ............................................................................................................................................... 13

*City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568 (Mass. Sup. Ct.
   July 13, 2000) .............................................................................................................. 13, 15, 16

*City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002) ........................... 13, 15

*City of Gary v. Smith & Wesson*, 801 N.E.2d 1222 (Ind. 2003) ................................................ 13

*City of L.A. v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047 (C.D. Cal. 2014) ................................ 16

*Dantzler, Inc. v. Empresas Berrior Inventory and Operations, Inc.*, 958 F.3d 38 (1st Cir. 2020). 4

*Dept. of Com. v. New York*, 139 S. Ct. 2551 (2019) ..................................................................... 6

*Diviacci v. Affinion Group*, Inc., No. 14–10283–IT, 2015 WL 3631605 (D. Mass. Mar. 11, 2015)
   ............................................................................................................................................... 17

*Ecklebarger v. Frank*, 732 So. 2d 433 (Fla. Dist. Ct. App. 1999) ............................................. 14

*Figueroa v. Cactus Mexican Grill LLC*, No. CV 21-10445-FDS, 2021 WL 5868277 (D. Mass.
   Dec. 10, 2021) ....................................................................................................................... 12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ............................. 7, 8

*Greenwald v. Chase Manhattan Mortg. Corp.*, 241 F.3d 76, 78 (1st Cir. 2001).......................... 16

*Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940 (S.D. Ohio 2015) 16

*In re Pharm. Indus. Average Wholesale Price Litig.*, No. CIV A 01-12257-PBS, 2007 WL 1051642 (D. Mass. Apr. 2, 2007) ............................................................................................ 17

*Knox v. Metal Forming, Inc.*, 914 F.3d 685 (1st Cir. 2019) ............................................................ 7

*Little Rhode Island v. Lead Indus. Ass'n, Inc.*, No. 99-5226, 2001 WL 345830 (R.I. Super. April 2, 2001) ................................................................................................................................... 16

*Lorenzen v. Toshiba Am. Info. Sys., Inc.*, No. CV 20-186-JJM-PAS, 2021 WL 5051175 (D.R.I. 2021) .......................................................................................................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 5

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47 (1st Cir. 2009) .......... 15

*Massachusetts v. Mylan Lab'ys*, 357 F. Supp. 2d 314 (D. Mass. 2005).......................................... 16

*O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441  (D. Mass. 2018) ......................... 15

*Pelletier v. Sordoni/Skanska Constr. Co.*, 945 A.2d 388 (Conn. 2008) ....................................... 14

*Rhodes v. Ocwen Loan Servicing, LLC*, 44 F.Supp.3d 137 (D. Mass. 2014) .............................. 12

*Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1 (1st Cir. 2007) ......................................... 12

*Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26 (1976) ....................................................... 6

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446 (D. Mass. 2018) ................... 17

*Smith v. Owen*, 841 S.W.2d 828 (Tenn. Ct App.1992)....................................................... 3, 13, 14

*Sorenson v. H & R Block, Inc.*, 2002 WL 31194868 (D. Mass. Aug. 27, 2002) .......................... 14

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................. 4

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669(1973) ....... 6

*White v. Smith & Wesson*, 97 F. Supp. 2d 816 (N.D. Ohio 2000) ......................................... 13, 16

**Other Authorities**

41 C.J.S. Implied Contracts § 9 .................................................................................................... 15

9 Mass. Jurisprudence § 2:5 (1993) .............................................................................................. 15

Dan B. Dobbs, *The Law of Torts* § 174 (2000)............................................................................. 11

Gov't Accountability Office, Criminal Activity Associated with .50 Caliber Semiautomatic Rifles (1999) ..................................................................................................................................... 10

Restatement (Third) of Restitution and Unjust Enrichment § 4 (2011)........................................ 17

Restatement of Restitution § 1 ...................................................................................................... 15

## INTRODUCTION

Plaintiff Estados Unidos Mexicanos ("the Government") submits this opposition to the separate motion to dismiss filed by Barrett Firearms Manufacturing, Inc. ("Barrett"). For background facts, we refer to the Government's opposition to the joint motion to dismiss.[1] Here we address Barrett's arguments on jurisdiction and whether the Government sufficiently pleaded certain claims against Barrett.

Barrett contends that the trafficking of weapons to Mexico is "no fault of Barrett,"[2] but the Government's Complaint sufficiently pleads otherwise. Barrett markets, distributes, and sells guns in ways it knows routinely arm the drug cartels in Mexico.[3] Its policy is to sell to any dealer that has a United States federal license, regardless of red flags indicating that the buyer flouts the law and helps move Defendants' guns into Mexico.[4] Barrett refuses to monitor or discipline its distribution systems *in any way* to prevent this rampant gun trafficking.[5]

Barrett also designs military-style assault weapons and markets them to attract and arm the cartels.[6] It sells *to the civilian market* .50 caliber sniper rifles that can shoot down helicopters

---

[1] *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Joint Motion to Dismiss ("Opp. to Jnt. Mem."). Barrett's assertion in its "Statement of Facts" that "[t]he Complaint does not allege that Barrett failed to comply with a law, rule, or regulation which resulted in harm to the Plaintiff," *see* Barrett's Memorandum of Law in Support of Its Motion to Dismiss ("Barrett Mem.") 2, is blatantly wrong. The Complaint alleges in detail the various U.S. statutes that Barrett violates directly or as an accomplice: straw purchases, unlicensed sales, export laws, Mexican import laws. *See e.g.*, Compl. ¶¶ 9, 26-29, 55-59, 63-65, 67, 69, 229-230, 234-236, 248-250, 335-338, 376, 384.

[2] Barrett Mem. 3.

[3] Complaint, ECF No. 1 ("Compl.") ¶¶ 3, 45.

[4] *Id*. ¶ 7-9, 227-236.

[5] *Id*. ¶¶ 227-236, 253-257.

[6] *Id*. ¶¶ 278-332.

and penetrate lightly armored vehicles and bullet-proof glass.[7] Barrett designs its purportedly "civilian" semi-automatic rifles for the battlefield rather than for sport, making them easily convertible into fully automatic machineguns.[8] Barrett knows that its distributors and dealers sell these military weapons in bulk, with no restrictions—clearly intended for the traffickers.[9] The cartels use these weapons of war to cause devastating injuries to the Government and its citizens.[10]

Barrett's motion to dismiss the Complaint seeks impunity for this conduct. It argues that the Government does not have Article III standing because there purportedly is no harm traceable to any actions by Barrett. But Barrett disregards the Complaint's plausible allegations. It alleges in detail that Barrett foresees that its guns are trafficked into Mexico;[11] it undeniably *could* stem the unlawful tide by implementing reasonable controls, but refuses to do so;[12] and it systematically and repeatedly causes massive injuries to the Government, including the murder of its citizens, employees, judges, police, and soldiers.[13] The "irreducible constitutional minimum" of standing is satisfied here, and this Court has subject matter jurisdiction.

Barrett also contends that its "lawful" distribution policies in Massachusetts are insufficient contacts with the forum to establish personal jurisdiction.[14] The policies are not lawful, and they are easily sufficient to satisfy due process.

---

[7] *Id*. ¶¶ 292-299.

[8] *Id*. ¶¶ 300-313.

[9] *Id*. ¶¶ 253-257.

[10] *Id*. ¶ 336.

[11] *Id*. ¶¶ 281, 286-87, 290-291, 297-98, 335-340.

[12] *See, e.g*., Compl. ¶¶ 116, 115–226, 227, 247, 447-474.

[13] *Id*. ¶¶ 446-505.

[14] Barrett Mem. 4.

Massachusetts is the King of Guns[15] and is referred to as "Gun Valley."[16] It has been steeped in firearms manufacturing since 1777, when George Washington selected Springfield as the site for the nation's first arsenal.[17] Recent estimates show that Massachusetts accounts for one-quarter of all weapons manufactured in the United States, more than any other state.[18] Massachusetts is home to Defendant Smith & Wesson[19] and two large, national gun wholesalers, Defendant Interstate Arms[20] and Camfour, Inc.[21]

Barrett is a national firearms manufacturer that does business throughout the United States, including very substantial business in Massachusetts.[22] Barrett intentionally directed its commercial activities to this forum by regularly advertising and selling its guns here.[23] Barrett imposes its unlawful distribution policies—the policies about which the Government complains—on gun dealers in Massachusetts.[24]

Specifically, the Complaint alleges that Barrett's policies for Massachusetts dealers resulted in guns that Barrett sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[25] The

---

[15] Declaration of Nicholas W. Shadowen ("Shadowen Decl.") ¶ 20(c)(i).

[16] Shadowen Decl. ¶ 20(b).

[17] *Id.*

[18] *Id.* ¶ 20(c)(ii). In 2016, Massachusetts was ranked among the top 10 states for total economic output for arms and ammunition in the U.S. *Id.* ¶ 20(a)(iii).

[19] *Id.* ¶ 20(e); *id.* ¶ 20(f).

[20] *Id.* ¶ 18(a).

[21] *Id.* ¶ 19(a)(i).

[22] *See id.* ¶ 3

[23] *See id.*

[24] Compl. ¶ 45.

[25] *Id.*

Government's expert report on this issue establishes that in the last ten years approximately 500 to 1,800 of Barrett's guns were trafficked from Massachusetts into Mexico.[26]

These numbers—modest in relation to those of the other Defendants—do not reflect the impact that Barrett's Massachusetts-sourced guns have in Mexico.[27] There is no question that the allegations against Barrett are sufficiently related to its in-forum contacts to satisfy due process.

Barrett further asserts that the Complaint does not plead valid claims under Massachusetts law. But Massachusetts's choice-of-law rule selects the substantive law of Mexico to apply here. Barrett offers no analysis to the contrary. Even so, as set out below, dismissal would not be warranted under Massachusetts law.

Barrett's motion should be denied.

## ARGUMENT

### I.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER BARRETT

Article III standing "is a prerequisite to a federal court's subject matter jurisdiction,"[28] but there is no basis for dismissal here because the Government has "clearly … allege[d] facts demonstrating" each of the three required elements, including that the Government has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[29]

---

[26] *See infra* Section II.

[27] *See id*.

[28] *Dantzler, Inc. v. Empresas Berrior Inventory and Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020).

[29] *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Initially, the Government sufficiently pleaded injuries that are likely to be redressed by a favorable judicial decision.[30] The Complaint alleges that "[t]he Government has been forced to expend massive amounts of resources to address the foreseeable and widespread epidemic of gun violence flowing from Defendants' unlawful misconduct," and enumerates, with specificity, its many injuries.[31] And the damages and injunctive relief that the Government seeks would stem the flow of illegally trafficked weapons into Mexico and compensate the Government for the significant losses Barrett and the other Defendants inflict on it.[32]

The Complaint also adequately pleads the traceability element. Barrett's assertion that "[t]he Complaint does not offer a single factual allegation challenging the actions(s) of Barrett that supposedly cause the harm incurred by Plaintiff"[33] is patently wrong. The Complaint clearly alleges that "Barrett's unlawful conduct as alleged throughout this Complaint—including the sales, marketing, advertising, and distribution policies and practices that occurred in Middlesex County—resulted in guns that its dealers sold being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[34]And contrary to

---

[30] Notably, the plaintiff's burden is "relatively modest at this stage of the litigation." *Bennett v. Spear*, 520 U.S. 154, 170-71 (1997). "'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 168 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)) (other internal quote marks omitted; cleaned up).

[31] Compl. ¶ 448-49.

[32] *See id.* at 134 ("Demand for Judgment").

[33] Barrett Mem. 4.

[34] Compl. ¶ 45.

Barrett's assertion,[35] the Complaint also alleges that Barrett's sales and distribution practices violate the applicable law of Mexico and the United States.[36]

Barrett's argument is based on the erroneous premise that a plaintiff lacks standing when a defendant's conduct harms the plaintiff through the reaction of third parties. There is no such rule of law. Indeed, such an argument "is impossible to maintain."[37] The Supreme Court has held that "indirectness of injury [is] not necessarily fatal to standing."[38] It has expressly rejected the argument that harm is not fairly traceable where "such harm depends on the independent action of third parties."[39] Indeed, traceability may exist when the harm depends on third parties "choosing to violate their legal duty."[40] All that is necessary is that "third parties will likely react in predictable ways . . . even if they do so unlawfully."[41] It is certainly predictable that the cartels would use Defendants' guns to inflict the harm alleged.[42]

---

[35] Barrett Mem. 4.

[36] *See, e.g.*, Compl. ¶¶ 78, 114, 208, 235, 247, 310, 313, 524 (alleging that Barrett violated the Mexico and U.S. tort law and federal export and gun laws).

[37] *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.) (explaining that "[i]f that principle were true, it is difficult to see how libel actions or suits for inducing breach of contract could be brought in federal court").

[38] *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 44 (1976); *see also id.* at 62 (noting that "[i]n *SCRAP*, although the injury was indirect and 'the Court was asked to follow (an) attenuated line of causation,' the complaint nevertheless 'alleged specific and perceptible harm' flowing from the agency action") (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688, 689 (1973)).

[39] *Dept. of Com. v. New York*, 139 S. Ct. 2551, 2565 (2019).

[40] *Id.*

[41] *Id.* at 2566 (explaining that "'Article III requires no more than *de facto* causality'" (quoting *Block*, 793 F.2d at 1309)).

[42] Compl. ¶¶ 281, 286-87, 290-291, 297-98, 335-340.

Barrett argues that its guns "legally and lawfully entered the stream of commerce."[43] But the Complaint alleges that Barrett *unlawfully* manufactures, markets, sells, and distributes its guns, actively and knowingly facilitating the trafficking of these weapons into Mexico.[44]

That Barrett chooses to ignore the consequences of its active indifference and characterize its conduct as "lawful" is expected, but insufficient to defend against jurisdiction in this case. The "irreducible constitutional minimum" of standing is satisfied here, and this Court has subject matter jurisdiction.

## II.   THE EXERCISE OF PERSONAL JURISDICTION OVER BARRETT ADHERES TO DUE PROCESS.

"[T]he constitutional analysis … has three components: relatedness, purposeful availment, and reasonableness."[45] Barrett addresses only the second element. As set out below, the exercise of specific jurisdiction over Barrett comports with this requirement.[46]

"The relatedness standard is a 'flexible, relaxed standard,' . . . which focuses on the 'nexus between the defendant[s'] contacts and the plaintiff's cause of action.'"[47] The Supreme Court recently "emphasized that the classic formulation of the constitutional relatedness inquiry—'arise out of *or relate to*'—is disjunctive" and rejected the notion that a 'strict causal relationship' is necessary."[48] As explained in *Ford*, "[t]he first half of that standard asks about

---

[43] Barrett Mem. 4.

[44] *See* nn 3-5, *supra*.

[45] *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019).

[46] Barrett also does not address any additional or different elements of Massachusetts's long-arm statute. *See* Barrett Mem. 5 n.3.

[47] *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (citations omitted).

[48] *Chouinard v. Marigot Beach Club and Dive Resort*, No. CV 20-10863-MPK, 2021 WL 2256318, at *8 (D. Mass. June 3, 2021) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)) (emphasis original); *see also Lorenzen v. Toshiba Am. Info. Sys.,*

causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[49] The Court further observed that, while "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum, . . . we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."[50]

Ignoring the Supreme Court's *Ford* decision, Barrett contends that proof of causation is required.[51] But post-*Ford* the law is that "[a]bsent causation, specific jurisdiction exists if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[52]

That affiliation is clearly present here. Despite Barrett's deflections,[53] the Complaint plausibly alleges that Barrett recklessly and unlawfully distributes and sells guns into

---

*Inc.*, No. CV 20-186-JJM-PAS, 2021 WL 5051175, at *1 (D.R.I. 2021) ("The *Ford Motor* case expanded the constitutional reach of personal jurisdiction … .").

[49] *Ford*, 141 S. Ct. at 1026.

[50] *Id*.

[51] *See* Barrett Mem. 10 (arguing that the Government's claims do not arise from Barrett's forum contacts because the complaint does not contain "any factual assertions that even a single gun manufactured by Barrett Firearms was sold or transferred into the Commonwealth of Massachusetts and thereafter smuggled into Mexico"). Barrett also points to the fact that the complaint "fails to reference even a single gun sold in Massachusetts that was later recovered at a crime scene or elsewhere in Mexico." To be clear, the issue here is not whether Barrett's weapons were recovered from a crime scene but whether they were trafficked into Mexico.

[52] *Adams v. Gissell*, No. 20-11366-PBS, CV 2021 WL 2786277, at *9 n. 13 (D. Mass. May 24, 2021) (quoting *Ford*, 141 S. Ct. at 1025).

[53] Barrett Mem. 9-10.

Massachusetts, choosing not to put any monitoring and disciplining checks in place.[54] And the Complaint specifically alleges that the unlawful policies that Barrett imposed on Massachusetts dealers resulted in guns that Barrett sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[55] The foundation of Barrett's argument against personal jurisdiction is a factual denial of that allegation.[56]

The Government therefore offers the Expert Report of Lucy P. Allen, an economist at the international consulting firm NERA Economic Consulting and a former member of the Council of Economic Advisers for Presidents George H.W. Bush and Bill Clinton.[57] Among other qualifications, she has been "qualified as an expert and testified in court on various economic and statistical issues relating to firearms, including the flow of firearms into the criminal market and analyses of data on firearm traces from the ATF."[58]

The ATF traces crime guns from the last purchaser back up through the chain of distribution to the dealer and the distributor.[59] The last set of that data that is publicly available shows the percentage of Barrett's crime guns recovered in Mexico that were traced to Massachusetts.[60] Ms. Allen applies that percentage to estimates of the total number of guns

---

[54] Compl. ¶¶ 7, 227-236, 253-257.

[55] Compl. ¶ 45.

[56] Barrett Mem. 9-10.

[57] Shadowen Decl., Ex. 1, Expert Report of Lucy P. Allen ("Allen Report").

[58] Allen Report ¶ 5.

[59] Compl. ¶ 92.

[60] Allen Report ¶ 15.

trafficked into Mexico in the period 2011– 2020, yielding an estimate of the number of Barrett guns trafficked from Massachusetts to Mexico.[61]

The total number of guns annually trafficked from the United States to Mexico will be the subject of fact and expert discovery later in this litigation. Assuming that the total number is 200,000 annually, Ms. Allen estimates that the number of Barrett guns trafficked from Massachusetts to Mexico from 2011 to 2020 is nearly 500.[62] Assuming the total number is 730,000 instead of 200,000, she estimates that the number of Barrett's guns trafficked from Massachusetts to Mexico in that period is in excess of 1,800.[63] And the number of Massachusetts-sourced Barrett guns trafficked to Mexico is substantially increasing in more recent years.[64]

The number of Barrett guns trafficked into Mexico is particularly significant given the extreme lethality of its .50-caliber sniper rifle. Barrett's .50 caliber sniper rifle is a weapon of war. In 1999, the U.S. Government Accountability Office reported that Barrett's .50 caliber rifles were linked to criminal misuse "with a nexus to terrorism, outlaw motorcycle gangs, international and domestic drug trafficking, and violent crime."[65] Defendant Barrett's .50 caliber sniper rifle shoots rounds that are 5 to 10 times larger than those fired by semi-automatic models, including the AR-15 and AK-47. Given the range and power of a .50 caliber Browning Machine Gun round, a rifle chambered to fire this round can be used to take down slow- or low-flying

---

[61] Her number is conservative because the percentage of U.S. retail guns sales made in Massachusetts has increased substantially in recent years. *Id*. ¶ 18.

[62] *Id*. ¶ 19, Chart, Column 3.

[63] *Id*. ¶ 19, Chart, Column 4.

[64] *Id*. ¶ 20.

[65] Compl. ¶ 293 (citing Gov't Accountability Office, Criminal Activity Associated with .50 Caliber Semiautomatic Rifles 2 (1999)).

aircraft, punch holes in pressurized chemical tanks, or penetrate lightly armored vehicles—such as those used by law enforcement and protective limousine services.[66] The Complaint sets out examples of the devastation this weapon has wreaked in Mexico.[67]

Moreover, the relatedness requirement would be met even without this dispositive allegation and compelling proof. Barrett imposed its policies and practices on distributors and dealers nationwide. Its active indifference to the illegal distribution of its weapons in other U.S. states combines with its negligence in Massachusetts to inflict an indivisible injury[68] on the Government. This ongoing, in-forum contribution to Barrett's longstanding head-in-the-sand approach sufficiently relates to the Government's claims.[69]

## III.   THE COMPLAINT SUFFICIENTLY ALLEGES CLAIMS AGAINST BARRETT.

The Complaint alleges that the Government's claims are governed by "the substantive law of Mexico, including its tort law."[70] And the Government has submitted an expert report

---

[66] Compl. ¶ 296.

[67] Compl. ¶¶ 212-214, 223, 299.

[68] *Cf. Chao v. Ballista*, 806 F. Supp.2d 358, 378 n.6 (D. Mass. July 28, 2011) ("Where . . . injury is indivisible, the defendants are joint and severally liable for the harm—even where they did not act in concert"); Dan B. Dobbs, *The Law of Torts* § 174, at 423 (2000) ("When the plaintiff presents evidence that she suffered a single indivisible injury at the hands of two or more tortfeasors, the burden is shifted to the tortfeasors to show that the plaintiff suffered separable injuries and that they can be apportioned and attributed separately to the different tortfeasors.").

[69] *See Branch Metal Processing, Inc. v. Bos. Edison Co.*, 952 F. Supp. 893, 910 (D. R. I. 1996) ("[defendant's] election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment"); *see also Bobzien v. Philip Morris USA Inc.*, 2021 WL 4147011, at *2 (N.D. Fla. June 16, 2021) ("On a claim of personal injury to a single plaintiff resulting from long exposure to tobacco smoke . . . [i]f the defendant provided some of the tobacco in the forum, and that tobacco contributed to the plaintiff's indivisible injuries, the court has personal jurisdiction over the defendant for the whole claim").

[70] Compl. ECF 1, at ¶ 21; *see also id*. at ¶¶ 22, 29, 60-62.

confirming that its claims are valid under Mexican law.[71] Barrett has not provided any choice-of-law analysis to the contrary and has not addressed the validity of the claims under Mexican law. Rather, Barrett moves to dismiss several of the Government's claims under Massachusetts law. To the extent the Court decides to reach those claims in the absence of a choice of law analysis that selects Massachusetts law, these claims are adequately pleaded under Massachusetts law, and dismissal would not be warranted.

"To survive a motion to dismiss, a complaint must state a claim that is plausible on its face."[72] "A claim is facially plausible if the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[73] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."[74] At this stage in the litigation, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."[75]

---

[71] Shadowen Decl., Ex. 2, Plaintiff's First Expert Report on Tort Law of Mexico ("First Tort Law Report").

[72] *Figueroa v. Cactus Mexican Grill LLC*, No. CV 21-10445-FDS, 2021 WL 5868277, at *2 (D. Mass. Dec. 10, 2021) (Saylor, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[73] *Big Bob's Flooring Outlet of Am., Inc. v. Elyachar,* No. CV 20-11379-TSH, 2021 WL 4477438, at *2 (D. Mass. Sept. 30, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009)).

[74] *Twombly*, 550 U.S. at 555.

[75] *Rhodes v. Ocwen Loan Servicing, LLC*, 44 F.Supp.3d 137, 139 (D. Mass. 2014) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)).

A.      **The Complaint Adequately Alleges a Claim of Public Nuisance Against
        Barrett (Count Two).**

Notably, only Barrett contends that the Government fails to state a claim for nuisance

under Massachusetts law. Even if Massachusetts, rather than Mexican law, applied, the

Government has adequately pleaded a claim of nuisance.

The law of public-nuisance applies to Barrett's negligent manufacturing, marketing, and

sale of its weapons. *City of Boston* found that "alleg[ations] that Defendants intentionally and

negligently created and maintained an illegal, secondary firearms market" (along with supporting

allegations) were "sufficient . . . to state a claim for public nuisance."[76] These allegations mirror

those in the Complaint.[77]

Far from being the outlier claimed by Barrett,[78] *City of Boston* is in line with other well-

reasoned authorities.[79] For example, the Supreme Court of Ohio in *City of Cincinnati* allowed a

public-nuisance claim, explicitly rejecting an argument almost identical to the one that

Defendants make here.[80] The Court rejected the argument that "what the law sanctions [in terms

of the distribution and sale of firearms in general] cannot be held to be a public nuisance"

---

[76] Shadowen Decl. Ex. 58 (*City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL
1473568, at *14 (Mass. Sup. Ct. July 13, 2000) ("*City of Boston*").

[77] *See, e.g.,* Compl. at ¶¶ 109-114, 118-124, 208-209, 227-277, 377-384, 434-505, 551-554.

[78] Barrett Mem. 11-12.

[79] Barrett relies on *Camden County Bd. of Chosen Freeholders v. Beretta*, 273 F. 3d 536, 540 (3d
Cir. 2011), but as set out here, that analysis there has been rejected by other courts.

[80] *See City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1141-44 (Ohio 2002).

because the law did not apply to the unlawful and reckless distribution of firearms to an illicit secondary market.[81] The Supreme Court of Indiana held similarly,[82] as have other courts.[83]

### B. The Complaint Adequately Alleges a Claim of Negligence Per Se Against Barrett (Court Four).

Notably, only Barrett and Interstate Arms seek dismissal of this claim under Massachusetts law; the other Defendants do not. As with its other claims, the Government's negligence per se claim is viable under Mexican law.[84] Barrett provides no choice-of-law analysis pointing to Massachusetts law. Many states, including Barrett's home state of Tennessee, recognize negligence per se as a separate tort.[85]

If Massachusetts law did apply, the Government concedes it would have no separate claim for negligence per se against Barrett. However, while Massachusetts does not expressly recognize it as a separate tort, it provides that violation of a statute is "some evidence of the defendant's negligence as to all consequences the statute was intended to prevent."[86]

---

[81] See *id.*

[82] *City of Gary v. Smith & Wesson*, 801 N.E.2d 1222, 1234-35 (Ind. 2003).

[83] *White v. Smith & Wesson*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000) (permitting public nuisance claims again gun manufacturer) ("*City of Cleveland*"); *cf. City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 683 (N.D. Cal. 2020) (permitting public nuisance claim against pharmaceutical companies for reckless market and sale of opioids).

[84] First Tort Law Report ¶ 31.

[85] *See Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct App.1992). Negligence per se is also a recognized claim in: Connecticut, where Defendants Colt's Manufacturing, Inc. and Sturm, Ruger & Co., Inc. are "at home," *see Pelletier v. Sordoni/Skanska Constr. Co.*, 945 A.2d 388, 407 (Conn. 2008), in Georgia where Glock, Inc. is headquartered, *see Cent. Anesthesia Assoc. v. Worthy*, 325 S.E.2d 819, 823 (Ga. App. 1984), *aff'd*, 333 S.E.2d 829 (Ga. 1985); and Florida, where Defendant Century is "at home," *see Ecklebarger v. Frank*, 732 So. 2d 433, 435-36 (Fla. Dist. Ct. App. 1999).

[86] *Sorenson v. H & R Block, Inc.*, 2002 WL 31194868, at *10 (D. Mass. Aug. 27, 2002), *aff'd*, 107 F. App'x 227 (1st Cir. 2004) (internal citation omitted).

### C. The Complaint Adequately Alleges a Claim of Unjust Enrichment Against Barrett (Count Six).

As with its other claims, the Government's claim for unjust enrichment is viable under Mexican law.[87] Barrett provided no choice-of-law analysis to counter the Complaint's assertion that the law of Mexico applies.

Regardless, the Complaint alleges facts sufficient to state a claim against Barrett for unjust enrichment under Massachusetts law.[88] "The equitable doctrine of unjust enrichment entitles a plaintiff to restitution for any benefit knowingly retained by the defendant at his expense when it would be inequitable for the defendant to retain that benefit without paying the plaintiff."[89] Plaintiff need allege only "unjust enrichment of one party and unjust detriment to another party."[90] The Government has plainly done so here, alleging wrongful conduct by Barrett,[91] resultant harm to the Government,[92] and consequent unjust enrichment of Barrett.[93]

A defendant receives a benefit by not bearing an expense that it causes.[94] Barrett receives such a benefit here when the Government "pa[ys] for what may be called the Defendants'

---

[87] First Tort Law Report ¶¶ 80-84.

[88] Notably, only Barrett and Interstate Arms seek dismissal of this claim under Massachusetts law; the other Defendants do not.

[89] *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466 (D. Mass. 2018), *on reconsideration*, 370 F. Supp. 3d 204 (D. Mass. 2019).

[90] *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

[91] *See, e.g.*, Compl. ¶¶ 3, 5, 7, 8, 15, *passim*.

[92] *See, e.g.*, Compl. ¶¶ 535, 536, 538, 540, 541.

[93] *See, e.g.*, ¶¶ 534, 537, 539.

[94] *See, e.g.*, *Massachusetts Eye and Ear Infirmary*, 552 F.3d at 66 (citing 41 C.J.S. Implied Contracts § 9 for proposition that 'benefit' for purposes of an unjust enrichment claim is any form of advantage that has a measurable value, including the advantage of being saved from an expense or loss."); 9 Mass. Jurisprudence § 2:5 (1993) ("A person confers a benefit upon another if he in any way adds to the other's security or advantage.") (citing Restatement of Restitution § 1, cmt b).

externalities – the costs of the harm caused by Defendants' failure to incorporate safety devices into their handguns and negligent marketing practices."[95] For example, *City of Boston* upheld an unjust-enrichment claim where "Plaintiffs allege[d] that they have conferred a benefit upon Defendants by paying for the costs of the harm caused by Defendants' conduct ("externalities"). . . . Plaintiffs further allege that Defendants undertook the alleged wrongful conduct for the purpose of increasing their profits. Thus, Plaintiffs state a claim for unjust enrichment."[96]

Entire sections of the Complaint here are devoted to alleging these elements in detail. Barrett intentionally participates in the unlawful design, distribution, and marketing practices in order to increase its profits,[97] all of which causes the Government to incur enormous uncompensated expense.[98]

Barrett apparently contends that the Government's incurring the costs of its externalities does not confer an "uncompensated benefit" on Barrett.[99] To the extent Barrett is arguing that unjust enrichment requires something approaching privity between the parties, or that plaintiff directly transfer a "benefit" to the defendant, they are wrong. An unjust-enrichment claim "does not require any contractual or fiduciary relationship between the parties"[100] and "does not require that a defendant receive direct payments from a plaintiff."[101] Instead, courts applying

---

[95] *City of Cincinnati*, 97 F. Supp. 2d 81 at 829.

[96] *City of Boston*, 2000 WL 1473568, at *18.

[97] *See, e.g.*, Compl. ¶¶ 377-395.

[98] *See, e.g., id.* ¶¶ 434-505.

[99] Barrett Mem. 14.

[100] *Greenwald v. Chase Manhattan Mortg. Corp.*, 241 F.3d 76, 78 n.1 (1st Cir. 2001).

[101] *Massachusetts v. Mylan Lab'ys,* 357 F. Supp. 2d 314, 323 (D. Mass. 2005).

Massachusetts, as well as other U.S. state law, hold that a defendant is unjustly enriched when a third party bears the costs of correcting harm that the defendant caused.[102]

Finally, Barrett argues that unjust enrichment "is not available to parties with an adequate remedy at law."[103] But "there is no requirement that a claimant who seeks [equitable remedies] . . . must first demonstrate the inadequacy of a remedy at law."[104] Regardless, it is clear in this Circuit and elsewhere that plaintiffs may plead unjust enrichment in the alternative.[105]

### D. The Complaint Adequately Alleges a Claim for Recovery of Punitive Damages Against Barrett (Count Nine).

As with its other claims, the Government's claim for punitive damages is viable under Mexican law.[106] If Barrett had provided a choice-of-law analysis, and the Court had concluded that Massachusetts law applies, the Government would concede it would have no separate claim for punitive damages against Barrett under the common law counts.

### CONCLUSION

For the reasons stated above, the Court should deny Defendant Barrett's motion to dismiss in its entirety.

---

[102] *See, e.g.*, *City of Boston*, 2000 WL 1473568, at *18; *Hocking Water Ass'n v. E.I. du Pont de Nemours & Co*., 91 F. Supp. 3d 940, 986 (S.D. Ohio 2015); *City of L.A. v. Wells Fargo & Co*., 22 F. Supp. 3d 1047, 1061 (C.D. Cal. 2014); *City of Cleveland*, 97 F. Supp. 2d at 829; *Little Rhode Island v. Lead Indus. Ass'n, Inc.,* No. 99-5226, 2001 WL 345830, at *15 (R.I. Super. April 2, 2001).

[103] Barrett Mem. 14.

[104] Restatement (Third) of Restitution and Unjust Enrichment § 4 (2011).

[105] *See, e.g*, *Baker v. Equity Residential Mgmt., L.L.C.*, 390 F. Supp. 3d 246, 256 (D. Mass. 2019); *SiOnyx, LLC v. Hamamatsu Photonics K.K.,* 332 F. Supp. 3d 446, 473 (D. Mass. 2018); *Diviacci v. Affinion Group*, Inc., No. 14–10283–IT, 2015 WL 3631605, at *17 (D. Mass. Mar. 11, 2015); *In re Pharm. Indus. Average Wholesale Price Litig.,* No. CIV A 01-12257-PBS, 2007 WL 1051642, at *9 (D. Mass. Apr. 2, 2007).

[106] First Tort Law Report ¶¶ 49-56.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.


Dated: January 31, 2022                              Respectfully submitted,


/s/ *Steve D. Shadowen*
Steve D. Shadowen (pro hac vice)
Richard M. Brunell (BBO# 544236)
Nicholas W. Shadowen (pro hac vice)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ *Jonathan E. Lowy*
Jonathan E. Lowy (pro hac vice)
BRADY
840 First Street, N.E. Suite 400
Washington, DC 20002
Phone: 202-370-8104
jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: January 31, 2022                           Respectfully Submitted,

                                                  /s/ *Steve D. Shadowen*
                                                  Steve D. Shadowen