# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

ESTADOS UNIDOS MEXICANOS,
              *Plaintiff,*

*vs.*                                          Civil Action No. 1:21-CV-11269-FDS

SMITH & WESSON BRANDS, INC., et al.,
              *Defendants.*

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT BERETTA'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ...................................................................................................... 8

I.      THE COURT HAS PERSONAL JURISDICTION OVER BERETTA ........................... 8

     A.      Beretta Is Subject to Personal Jurisdiction Under the Massachusetts
         Long-Arm Statute. ................................................................................. 8

         1.      Beretta Transacts Business in Massachusetts. ........................... 8

         2.      The Government's Claims Arise From Beretta's
             Massachusetts Contacts. ........................................................... 9

II.     THE COURT'S EXERCISE OF JURISDICTION COMPORTS WITH
     DUE PROCESS .......................................................................................... 12

     A.      Defendant Beretta purposefully availed itself of the privileges of
         doing business in Massachusetts. ......................................................... 13

     B.      The Government's claims arise out of and relate to Beretta's forum
         contacts. ............................................................................................. 13

     C.      The Court's Exercise of Jurisdiction Over Beretta Is Reasonable. ...................... 15

         1.      Defendant's burden of appearing in Massachusetts ................................ 16

         2.      Forum state's adjudicatory interest ...................................................... 17

         3.      The Government's interest in obtaining convenient relief ...................... 19

         4.      Administration of justice ...................................................................... 21

         5.      Pertinent policy arguments .................................................................. 22

     D.      In the Alternative, the Government Requests Jurisdictional
         Discovery ........................................................................................... 23

CONCLUSION ................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016) .................................................. 12

*Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017) ............................ 8

*Adams v. New England Scaffolding, Inc.*, 2016 WL 6514090 (D. Mass. Oct. 28, 2016)............. 16

*Adelson v. Hananel*, 510 F.3d 43 (1st Cir. 2007)................................................................. 4, 5, 13

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28 (1st Cir. 2016) ............ 5

*Bobzien v. Philip Morris USA Inc.*, 2021 WL 4147011 (N.D. Fla. June 16, 2021)..................... 14

*Bos. Post Partners II*, *LLP v. Paskett,* No. 15-13804-FDS, 2016 WL 3746474 (D. Mass. July 8, 2016) .................................................................................................................................... 11

*Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F. Supp. 893 (D. R. I. 1996)............. 14

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) ...................................................................................................................................3, 6, 7, 14

*Brown v. Aero Glob. Logistics, LLC,* No. 19-CV-12153-DJC, 2020 WL 2527799 (D. Mass. May 18, 2020) ...................................................................................................................................... 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................................. 15

*Chao v. Ballista*, 806 F. Supp.2d 358, 378 n. 6 (D. Mass. July 28, 2011) ................................. 14

*Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318 (D. Mass. June 3, 2021) .............................................................................................................................................. 13

*Cioffi v. Gilbert Enterprises, Inc.*, 971 F. Supp. 2d 129 (D. Mass. 2012) ..................................... 4

*Collision Communications, Inc. v. Nokia Solutions and Networks Oy,* 485 F. Supp. 3d 282 (D. Mass 2020) ............................................................................................................................... 6, 8

*Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61 (D. Mass. 2013).. 15, 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................... 7

*Daynard v. Ness, Motley, Loadholt,Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002).... 4, 6

*Doe v. JetBlueAirways Corp.*, No. 20-cv-11623, 2021 WL 3375107 (D. Mass. Aug. 3, 2021)... 11

*Doull v. Foster*, 163 N.E. 3d 976 (Mass. 2021) ........................................................................... 11

*Fidrych v. Marriot International, Inc.*, 952 F.3d 124 (4th Cir. 2020).......................................... 6

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) 3, 7, 13

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995).................... 5, 18

*Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir.1995) ......................... 16

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) ................................... 6

*Hernandez-Denizac v. Kia Motors Corp.*, 257 F.Supp. 3d 216 (D. P. R. 2017).......................... 5

*Hilsinger Co. v. FBW Investments*, 109 F. Supp. 3d 409 (D. Mass. 2015) ................................ 16

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................ 6

*Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228 (D. Mass. 2010)................................... 20

*JLB LLC v. Egger*, 462 F. Supp. 3d 68 (D. Mass. 2020)..................................................... 8

*Katz v. Spiniello Companies*, 244 F. Supp. 3d 237 (D. Mass. 2017) ..................................... 18

*King v. Prodea Systems, Inc.*, 433 F. Supp. 3d 7 (D. Mass 2019) ...................................... 1, 6

*Knox v. MetalForming, Inc.*, 914 F.3d 685 (1st Cir. 2019) ............................................. 12

*Lorenzen v. Toshiba American Information System, Inc.*, WL 5051175 (D.R.I. 2021) ............... 13

*Luxottica Group, S.p.A. v Lee*, No. 4:21-cv-10934-TSH, 2021 WL 3116171 (D. Mass. 2021)... 22

*Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111 (1st Cir. 1997) ................................... 3

*Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998) ................... 5

*Mateo v. University System of New Hampshire*, 2019 WL 199890 (D. Mass. Jan. 14, 2019) 15, 16

*Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87 (D. Mass. 2018)......................................... 17, 20

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) ............................................. 17, 20

*Packs v. Bartle*, No. 18-CV-11496-ADB, 2019 WL 1060972 (D. Mass. Mar. 6, 2019)............... 5

*Perras v. Trane U.S., Inc.*, 463 F. Supp. 3d. 38 (D. Mass 2020) ......................................... 6

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978) ............................................... 17

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994) ................................................... 19, 20

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ................................................... passim

*Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17 (1st Cir. 2018)..................... 12

*SCVNGR, Inc. v. Punchh, Inc.*, 485 N.E.3d 50 (Mass. 2017)............................................. 6

*SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50 (Mass. 2017)............................................. 6

*Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182 (D. Mass 2012)........ 22

*Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962 (1st Cir.1997).......................................... 22

*Tatro v. Manor Care, Inc.*, 625 N.E.2d 549 (Mass. 1994) ............................................. 6, 8, 11

*Ticketmaster-New York., Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) ................................... 15, 18

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080 (1st Cir. 1992) ................................................... 12

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001)..................................... 4, 22

*Waldman v. Palestine Liberation Organization*, 835 F.3d 317 (2d Cir. 2016)........................... 6

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102 (D. Mass. 2003) ........ 8

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..................................... 21

**Statutes**

28 U.S.C. § 1332 ................................................................................................................ 17

**Other Authorities**

Dan B. Dobbs, *The Law of Torts* § 174 (2000) ........................................................................ 14

*How to get FFL License in Massachusetts (MS)?*, FFL123.com, available at
    https://www.ffl123.com/how-to-get-ffl-in-
    massachusetts/#:~:text=As%20of%20June%202021%2C%20the,)%20being%20rabidly%20a
    nti%2Dgun ........................................................................................................................ 2

Restatement (Third) of Torts § 27 .......................................................................................... 11

**INTRODUCTION**

Plaintiff Estados Unidos Mexicanos ("the Government") submits this opposition to the separate motion to dismiss filed by Defendant Beretta U.S.A. Corp ("Beretta") based on an asserted lack of personal jurisdiction. For background facts, we refer to the Government's opposition to the joint motion to dismiss. Here, we address Beretta's personal jurisdiction argument.

Massachusetts is the King of Guns[1] and is referred to as "Gun Valley."[2] It has been steeped in firearms manufacturing since 1777, when George Washington selected Springfield as the site for the nation's first arsenal.[3] Recent estimates show that Massachusetts accounts for one-quarter of all weapons manufactured in the United States, more than any other state.[4]

Massachusetts is home to Defendant Smith & Wesson[5] and two large, national gun wholesalers, Defendant Interstate Arms and Camfour, Inc. Interstate Arms, based in Billerica, is a "40+ year-old wholesaler distributor supplying licensed firearm dealers nationwide with firearms and related products."[6] The company describes itself as a seller of, among other things, "military-style weapons."[7] Camfour, Inc. ("Camfour") is another national distributor. Founded in

---

[1] Declaration of Nicholas W. Shadowen ("Shadowen Decl."), ¶ 20(c)(i).

[2] Shadowen Decl. ¶ 20(b).

[3] *Id.* ¶ 20(b)(i).

[4] *Id.* ¶ 20(c)(ii). In 2016, Massachusetts was ranked among the top 10 states for total economic output for arms and ammunition in the U.S.; *id.* ¶ 20(a)(iii).

[5] Compl. ¶ 31.

[6] Shadowen Decl. ¶ 20(b)(i).

[7] *Id.* ¶ 18(b).

Springfield, Massachusetts in 1952,[8] it touts that it "revolutionized" the gun industry with the development of its online order software that "enabled independent shooting sports retailers to have instant access to a wealth of information, inventory and the ability to order 24 hours a day, 7 days a week."[9] The company is "consistently … ranked as one of the top 10 distributors in the industry."[10] In addition to these major distributors, there are also nearly 4,000 licensed gun dealers in Massachusetts.[11]

Beretta is a national firearms manufacturer that does business throughout the United States, including very substantial business in Massachusetts.[12] Beretta intentionally directed its commercial activities to this forum by regularly advertising and selling its guns here.[13] Beretta imposes its unlawful distribution policies—the policies about which the Government complains—on gun distributors (wholesalers) and dealers in Massachusetts.[14] These include distributor Interstate Arms and more than a dozen authorized Beretta dealers.[15]

Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturers' authorized dealers.[16] Beretta's large Massachusetts distributor Interstate Arms sells Beretta's guns to Beretta's authorized dealers

---

[8] *Id.* ¶ 19(a)(i).

[9] *Id.* ¶ 19(a)(iii).

[10] *Id.* ¶ 19(a)(vi).

[11] *See* Shadowen Decl. ¶ 20(d).

[12] *See infra* Section I(A)(1), (2).

[13] *See id.*

[14] Compl. ¶ 42.

[15] *See infra* Section I(A)(1).

[16] *See infra* Section I(A)(2).

across the country.[17] Consequently, the unlawful distribution policies that Beretta imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

Specifically, the Complaint alleges that Beretta's policies for Massachusetts distributors and dealers resulted in guns that Beretta sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[18] The Government's expert report on this issue establishes that in the last ten years approximately 5,000 to 17,000 of Beretta's guns were trafficked from Massachusetts into Mexico.[19]

Beretta's assertion that it is not subject to the personal jurisdiction of this Court is wrong. The Court has specific jurisdiction over Beretta because it is within reach of Massachusetts's long-arm statute and due process dictates are satisfied.

Beretta unquestionably transacted business in Massachusetts and "deliberately reached out beyond its home" to "exploit[ ] a market in the forum State" and "enter[ ] a contractual relationship centered there."[20] And the Government's claims arise out of and relate to Beretta's

---

[17] *See id.*

[18] Compl. ¶ 42. This paragraph of the Complaint specifically discusses sales from Beretta to Interstate Arms, but others refer to distributors and dealers generally (e.g., *id.* ¶¶ 43, 193-195), and the Complaint alleges that the "claims arise out of Defendants' contacts with Massachusetts [and] the Government's claims relate to those contacts" (*id.* ¶ 44).

[19] *See infra* Section I(A)(2).

[20] *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (internal quotations and citation omitted).

forum activities.[21] Beretta's conduct in this forum is clearly a "first step in a train of events that result[ed] in the [relevant] injury,"[22] and is a locus of the Government's negligence claims.

Beyond Beretta's sufficient contacts here, this Court's exercise of jurisdiction over Beretta is entirely fair and reasonable. Massachusetts has a strong interest in assuring that Beretta and other gun manufacturers properly monitor and discipline their Massachusetts distributors and dealers. Moreover, litigating here provides the Government the convenience of a single forum without imposing any constitutionally significant burden on Beretta. Avoiding piecemeal litigation also serves judicial economy, ensuring both an efficient and consistent resolution of the Government's claims. Lastly, the Government and the United States share an interest in curtailing the unlawful gun trafficking. The Government's ability to seek redress for injuries caused by Defendants' negligence in a single forum is an important policy consideration that further weighs in favor of the Court exercising jurisdiction. Given the centrality of Massachusetts in the gun industry, this is a sensible place for this litigation.

Beretta's attempt to avoid appearing in Massachusetts fails, and its motion should be denied. If, however, the Court were to harbor any doubt as to whether personal jurisdiction exists, the Government respectfully requests discovery on the issue.

## LEGAL STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "a district court 'may choose from among several methods for determining whether the plaintiff has met [its]

---

[21] *Id*. ("The plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum.") (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)).

[22] *See Lyle Richards Int'l, Ltd. v. Ashworth, Inc*., 132 F.3d 111, 114 (1st Cir. 1997).

burden.'"[23] "Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the *prima facie* standard governs its determination."[24]

The prima facie standard "requires no differential factfinding; rather . . . only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."[25] That is, this Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."[26]

And "'[f]or the purpose of examining the merits of such a jurisdictional proffer,' the court considers 'the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts.'"[27] Properly documented facts proffered by Plaintiff must be accepted as true, "whether or not disputed" and must be "[construed] in the light most congenial to the plaintiff's

---

[23] *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (quoting *Daynard v. Ness, Motley, Loadholt,Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002)).

[24] *Cioffi v. Gilbert Enterprises, Inc.*, 971 F. Supp. 2d 129, 133-34 (D. Mass. 2012) (Saylor, J.) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)).

[25] *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016); *see also Adelson*, 510 F.3d at 48; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

[26] *Adelson,* 510 F.3d at 48.

[27] *Hernandez-Denizac v. Kia Motors Corp.*, 257 F.Supp. 3d 216, 220 (D.P.R.2017) (quoting *Baskin-Robbins*, 825 F.3d at 34).

jurisdictional claim."[28] Here the Government has submitted the expert report of economist Lucy Allen in support of the Complaint's jurisdictional allegations.[29]

To make a prima facie showing of personal jurisdiction here, the Government need only show that the exercise of personal jurisdiction is "1) permitted by the Massachusetts long-arm statute, M.G.L. c. 223A § 3, and 2) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution by showing that each defendant has 'minimum contacts' with Massachusetts."[30]

"Massachusetts's long-arm statute, [Mass. Gen. Laws ch.] 223A, § 3, provides that '[a] court may exercise personal jurisdiction over a person . . .  as to a cause of action in law or equity arising from the person's one or more specific acts or omissions, as enumerated in the statute."[31] To establish jurisdiction under § 3(a) "transacting any business in this commonwealth," a

---

[28] *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998); *see also Packs v. Bartle*, No. 18-CV-11496-ADB, 2019 WL 1060972, at *3 (D. Mass. Mar. 6, 2019) ("The Court takes as true whatever properly documented facts plaintiffs proffer, construes those facts in the light most favorable to the plaintiffs, and considers facts put forward by defendants to the extent they are uncontradicted.").

[29] To the extent the Government's proffer is deemed insufficient, it requests permission to conduct jurisdictional discovery as set forth below. *See infra* Section II(D).

[30] *King v. Prodea Systems, Inc*., 433 F. Supp. 3d 7, 12 (D. Mass 2019) (citing *Daynard*, 290 F.3d at 52); *see also Collision Communications, Inc. v. Nokia Solutions and Networks Oy,* 485 F. Supp. 3d 282, 290 (D. Mass 2020) ("Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process ... a determination under the long-arm statute is to precede consideration of the constitutional question.") (quoting *SCVNGR, Inc. v. Punchh, Inc*., 485 N.E.3d 50, 52 (Mass. 2017)).

[31] *SCVNGR, Inc. v. Punchh, Inc*., 85 N.E.3d 50, 54-55 (Mass. 2017).

plaintiff must show that "1) the defendant attempted to participate in the Commonwealth's economic life and 2) the transaction of business was a 'but for' cause of the alleged harm."[32]

Due process requirements are satisfied when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[33] Personal jurisdiction may be general or specific.[34] The nature and quantity of forum-state contacts needed to satisfy due process differ depending on which of these is asserted over the defendant.[35] The Government contends that this Court has specific jurisdiction over Beretta.

For a court to exercise specific jurisdiction, the suit "must arise out of or relate to the defendant's contacts" with the forum.[36] "Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[37]

---

[32] *Perras v. Trane U.S., Inc.*, 463 F. Supp. 3d. 38, 42 (D. Mass 2020) (citing *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 552-53 (Mass. 1994)).

[33] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quotations omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[34] *Bristol-Myers*, 137 S. Ct. at 779-80.

[35] *Fidrych v. Marriot International, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020); *Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016).

[36] *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

[37] *Ford,* 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct., at 1780 (other quotations and citation omitted).

## ARGUMENT

## I.     THE COURT HAS PERSONAL JURISDICTION OVER BERETTA

### A. Beretta Is Subject to Personal Jurisdiction Under the Massachusetts Long-Arm Statute.

The Government has plainly met the statutory requirements for personal jurisdiction. As required by §3(a), Beretta transacted business in Massachusetts, and the Government's claims arise from those business transactions.

### 1.   Beretta Transacts Business in Massachusetts.

Beretta does not contest that it regularly conducts business in the Commonwealth. Nor could it. Beretta regularly advertises, markets, and sells its guns here,[38] and enters into distributorship and sales agreements with Defendant Interstate Arms and more than a dozen authorized Beretta dealers in Massachusetts.[39] Its advertising here includes the type of inflammatory promotion of its guns as military weapons[40] about which the Government complains.[41] And Beretta uses the Commonwealth's courts, including as a plaintiff.[42]

---

[38] Shadowen Decl. ¶ 4.

[39] *Id*. ¶ 4(a); *see also* Compl. ¶ 42 (Beretta "purposefully availed itself of the privilege of conducting activities within Massachusetts, including by systematically serving the gun market here; regularly marketing and advertising its products here; regularly making substantial sales to Defendant Interstate Arms in Middlesex County; and imposing the policies and practices by which it sells its guns to Interstate Arms in Middlesex County and by which Interstate Arms must sell those guns to dealers throughout the U.S.").

[40] *Id*. ¶ 4(e), 4(d), 4(f).

[41] Compl. ¶ 104.

[42] Shadowen Decl. ¶ 5.

**2. The Government's Claims Arise From Beretta's Massachusetts Contacts.**

The requirement that the Government's claims "aris[e] from" Beretta's forum contacts is "generously construed in favor of asserting personal jurisdiction."[43] It is readily met here. Courts apply "a 'but for' causation test" that asks only whether "the defendant's contacts with the Commonwealth constitute[d] the first step in a train of events that result[ed] in the . . . injury."[44] Particularly, "[a] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State."[45]

Beretta imposes its unlawful distribution policies on its dozen gun dealers, and its large national distributor Interstate Arms, in Massachusetts.[46] Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[47] Beretta's large Massachusetts distributor sells Beretta's guns to Beretta's authorized dealers across the country.[48] Consequently, the unlawful distribution policies that Beretta imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

---

[43] *Collision Communications, Inc.*, 485 F.3d at 292 (citing *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 112 (D. Mass. 2003)).

[44] *Id.* (quoting *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 291 (D. Mass. 2017)).

[45] *JLB LLC v. Egger*, 462 F. Supp. 3d 68, 78 (D. Mass. 2020) (quoting *Tatro,* 625 N.E. 2d at 553).

[46] Compl. ¶ 42.

[47] For example, Defendant Ruger's public filings state that it makes 90% of its sales to wholesalers. Shadowen Decl. ¶ 15(b)(ii).

[48] *Id.* ¶ 4(c).

Despite these facts, Beretta founds its motion on the repeated assertions that the Government "does not allege that the criminals in Mexico used, received, or purchased the firearms that Beretta sold in Massachusetts."[49] That assertion is false.

The Complaint alleges that the policies that Beretta imposed on Massachusetts distributors and dealers resulted in guns that Beretta sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[50]

Beretta denies the truth of that well-pled allegation. So the Government offers the Expert Report of Lucy P. Allen, an economist at the international consulting firm NERA Economic Consulting and a former member of the Council of Economic Advisers for Presidents George H.W. Bush and Bill Clinton.[51] Among other qualifications, she has been "qualified as an expert and testified in court on various economic and statistical issues relating to firearms, including the flow of firearms into the criminal market and analyses of data on firearm traces from the ATF."[52]

The ATF traces crime guns from the last purchaser back up through the chain of distribution to the dealer and the distributor.[53] The last set of that data that is publicly available shows the percentage of Beretta's crime guns recovered in Mexico that were traced to

---

[49] Beretta Mem. 2; *see also id*. at 4 ("Mexico has not alleged that its claims arise from Beretta transacting any business or contracting to supply products in Massachusetts."); *id*. at 5 ("Plaintiff does not allege that the guns used in Mexico were sold, received, or purchased in Massachusetts.").

[50] Compl. ¶ 42.

[51] Shadowen Decl., Ex. 1, Expert Report of Lucy Allen ("Allen Report"), at ¶ 6.

[52] Allen Report ¶ 5.

[53] Compl. ¶ 92.

Massachusetts.[54] Ms. Allen applies that percentage to estimates of the total number of guns trafficked into Mexico in the period 2011 – 2020, yielding an estimate of the number of Beretta's guns trafficked from Massachusetts to Mexico.[55]

The total number of guns annually trafficked from the United States to Mexico will be the subject of fact and expert discovery later in this litigation. Assuming that the total number is 200,000 annually, Ms. Allen estimates that the number of Beretta guns trafficked from Massachusetts to Mexico from 2011 to 2020 is in excess of 4,800.[56] Assuming the total number is 730,000 instead of 200,000, she estimates that the number of Beretta guns trafficked from Massachusetts to Mexico in that period is in excess of 17,000.[57]

Thus, the Government's injuries undoubtedly "lie in the wake of" Beretta's Massachusetts contacts. Beretta's negligent and otherwise unlawful conduct—perpetrated in Massachusetts with reverberations nationwide—resulted in substantial numbers of its weapons being trafficked to Mexico. Its forum contacts are, therefore, the "first step[s] in a train of events" that resulted in the Government's injuries.

Beretta tries to dodge these facts by asserting that the Government complains of "failures to enact policies" and that any such "purported omissions or failures to act" occurred outside Massachusetts.[58] But the Government instead alleges that the distribution system that Beretta *has implemented* in Massachusetts *actively facilitates* the unlawful trafficking of Massachusetts-

---

[54] Allen Report ¶ 15.

[55] Her number is conservative because the percentage of U.S. retail guns sales made in Massachusetts has increased substantially in recent years. *Id*. ¶ 18.

[56] *Id*. ¶ 19, Chart, Column 3.

[57] *Id*. ¶ 19, Chart, Column 4.

[58] Beretta Mem. 6.

origin firearms—sold from Beretta's Massachusetts distributor and dealers—into Mexico.[59] The

Government's allegations and facts render Defendant's cases inapt.[60]

Equally unavailing is Beretta's plea that it is not single-handedly responsible for *all* the

guns trafficked into Mexico.[61] But the law under the long-arm statute is well settled and does not

require that Beretta be the sole cause of the Government's injuries.[62] Beretta does not—and

cannot—point to any contrary authority.[63]

## II.   THE COURT'S EXERCISE OF JURISDICTION COMPORTS WITH DUE PROCESS

The First Circuit has synthesized the requirements for establishing specific jurisdiction

consistent with due process as follows:

---

[59] *See, e.g.*, Compl. ¶¶ 42, 43.

[60] *See* Beretta Mem. 7, citing *Bos. Post Partners II, LLP v. Paskett,* No. 15-13804-FDS, 2016 WL 3746474, at *7 (D. Mass. July 8, 2016) (claims arose "solely" out of defendants' out-of-forum side dealings and "not out of any business [defendants] may have transacted in Massachusetts"); *Brown v. Aero Glob. Logistics, LLC,* No. 19-CV-12153-DJC, 2020 WL 2527799, at *3 (D. Mass. May 18, 2020) ("Plaintiffs have alleged no connection between any business transactions between Papa's Dodge and the Parts Depot and the injury suffered by Brown.").

[61] *See* Beretta Mem. 5-6.

[62] *See Doull v. Foster*, 163 N.E. 3d 976, 986 (Mass. 2021) ("But there is no requirement that a defendant must be the sole factual cause of a harm."). In *Doull*, the Supreme Judicial Court of Massachusetts recently recognized that in the rare situation—like the present one—where the harm was produced by multiple sufficient causes the "but-for standard [for factual causation] does not work and has been altered to avoid unjust and illogical results." *Id.* at 984. "A defendant whose tortious act was fully capable of causing the plaintiff's harm should not escape liability merely because of the fortuity of another sufficient cause." *Id.* (citing Restatement (Third) of Torts § 27 cmt. c). To avoid similar "unjust and illogical results" the strict application of the "but-for" test Beretta calls for should not be applied here. It is sufficient that Beretta's conduct is the "first step in a train of events that resulted in the Plaintiff's injury." *See Tatro, supra*.

[63] Beretta Mem. 6 cites *Doe v. JetBlueAirways Corp.*, but the district court's application of the "but for" test there does not address whether the defendants were the sole cause of the plaintiffs' injuries. No. 20-cv-11623, 2021 WL 3375107, at *6 (D. Mass. Aug. 3, 2021).

Plaintiffs seeking to establish that a court has specific personal jurisdiction over a defendant must show that: (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. [ ] Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction. [ ][64]

Stated differently, "the constitutional analysis … has three components: relatedness, purposeful availment, and reasonableness."[65] This inquiry is "highly fact-specific."[66] And "the test is 'not susceptible of mechanical application; rather, the facts of each case must be weighed.'"[67] As set out below, the exercise of specific jurisdiction over Beretta here comports with each of these requirements.

## A. Defendant Beretta purposefully availed itself of the privileges of doing business in Massachusetts.

Like the "transacting business" element under the long-arm statute, Beretta concedes the "purposeful availment" element under the due process analysis.

## B. The Government's claims arise out of and relate to Beretta's forum contacts.

"The relatedness standard is a 'flexible, relaxed standard,'… which focuses on the 'nexus between the defendant[s'] contacts and the plaintiff's cause of action.'"[68] The Supreme Court

---

[64] *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)).

[65] *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019).

[66] *Knox*, 914 F.3d at 690.

[67] *Id*. (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)).

[68] *Adelson*, 510 F.3d at 49 (citations omitted).

recently "emphasized that the classic formulation of the constitutional relatedness inquiry—'arise out of *or relate to*'—is disjunctive" and "rejected the notion that a 'strict causal relationship' is necessary."[69] As explained in *Ford*, "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[70] The Court further observed that, while "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum, . . . we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."[71]

As in its principal argument under the long-arm statute, the foundation of Beretta's argument on "relates to" is its denial of the Complaint's allegations and the facts. Beretta insists that "the Complaint lacks any allegations connecting the firearms used in Mexico to the sale of guns in Massachusetts."[72] The Complaint alleges that the policies that Beretta imposed on Massachusetts distributors and dealers resulted in guns that Beretta sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[73] Those allegations are now backed up by the Allen expert report

---

[69] *Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318, at *8 (D. Mass. June 3, 2021) (citing *Ford*, 141 S. Ct. at 1026) (emphasis original); *see also Lorenzen v. Toshiba American Information System, Inc.*, WL 5051175, at * 1 (D.R.I. 2021) ("The *Ford Motor* case expanded the constitutional reach of personal jurisdiction … .").

[70] *Ford*, 141 S. Ct. at 1026.

[71] *Id.*

[72] Beretta Mem. 12.

[73] Compl. ¶ 42.

and its conclusion that substantial numbers of Beretta guns were trafficked from Massachusetts into Mexico.[74]

Moreover, the relatedness requirement would be met even without this dispositive allegation and compelling proof. Beretta imposed its policies and practices on distributors nationwide. Its active indifference to the illegal distribution of its weapons in other U.S. states combines with its negligence in Massachusetts to inflict an indivisible injury[75] on the Government. This ongoing, in-forum contribution to Beretta's longstanding head-in-the-sand approach sufficiently relates to the Government's claims.[76]

### C. The Court's Exercise of Jurisdiction Over Beretta Is Reasonable.

"[The] concepts of reasonableness must illuminate the minimum contacts analysis."[77] To

---

[74] This makes Beretta's reference to *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), beside the point. There the nonresident plaintiffs did not allege that they obtained the product through a California source, so there was no "adequate link between the State and the nonresidents' claims." *Id.* at 1781. Nor was it "alleged that BMS engaged in relevant acts together with [its distributor] in California." *Id.* at 1777.

[75] *Cf. Chao v. Ballista*, 806 F. Supp.2d 358, 378 n. 6 (D. Mass. July 28, 2011) ("Where . . . injury is indivisible, the defendants are joint and severally liable for the harm—even where they did not act in concert"); Dan B. Dobbs, *The Law of Torts* § 174, at 423 (2000) (When the plaintiff presents evidence that she suffered a single indivisible injury at the hands of two or more tortfeasors, the burden is shifted to the tortfeasors to show that the plaintiff suffered separable injuries and that they can be apportioned and attributed separately to the different tortfeasors.").

[76] *See Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F. Supp. 893, 910 (D. R. I. 1996) ("[defendant's] election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment"); *see also Bobzien v. Philip Morris USA Inc.*, 2021 WL 4147011, at *2 (N.D. Fla. June 16, 2021) ("On a claim of personal injury to a single plaintiff resulting from long exposure to tobacco smoke . . . [i]f the defendant provided some of the tobacco in the forum, and that tobacco contributed to the plaintiff's indivisible injuries, the court has personal jurisdiction over the defendant for the whole claim").

[77] *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995).

guide the reasonableness inquiry and determine whether the exercise of jurisdiction "comport[s] with fair play and substantial justice," the Court considers the five "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.[78]

Notably, "[t]hese factors are 'not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice.'"[79] And, where the plaintiff—as is the case here—has established "relatedness" and "purposeful availment," a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[80] Beretta has not done so.[81] On the contrary, these factors demonstrate that compelling Beretta to appear in Massachusetts is fair and reasonable.

### 1.   Defendant's burden of appearing in Massachusetts

"For this particular factor to have any significance, 'the defendant must demonstrate that [the] exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other

---

[78] *Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61, 73 (D. Mass. 2013) (Saylor, J.) (citing *Sawtelle*, 70 F.3d at 1394).

[79] *Mateo v. University System of New Hampshire*, 2019 WL 199890, at *6 (D. Mass. Jan. 14, 2019) (Saylor, J.) (quoting *Ticketmaster-New York., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994)).

[80] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Ticketmaster*, 26 F.3d at 210 ("the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness.").

[81]  Indeed, Beretta does not challenge this Court's jurisdiction based on reasonableness.

constitutionally significant way.'"[82] Beretta is a large multinational corporation with its principal place of business in Maryland that would not incur a constitutionally significant burden appearing before this Court.[83] Indeed, Beretta has made no attempt to suggest otherwise. This factor therefore favors a finding of reasonableness.[84]

### 2. Forum state's adjudicatory interest

"[T]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest."[85] Here, Massachusetts has a strong interest in assuring that in-state wholesalers and dealers are properly monitored and disciplined in their sale and distribution of firearms, particularly insofar as the failure to do so circumvents this state's strong gun laws.

Beretta argues that Massachusetts has no interest in adjudicating an out-of-state dispute between two non-resident parties where the injury occurred elsewhere, "particularly … given that the Complaint lacks any allegations connecting the firearms used in Mexico to the sale of guns in Massachusetts."[86] That argument falls short for multiple reasons.

---

[82] *Hilsinger Co. v. FBW Investments*, 109 F. Supp. 3d 409, 429 (D. Mass. 2015) (Saylor, J.) (quoting *Nowak*, 94 F.3d at 718; *Mateo*, 2019 WL 199890, at *6.

[83] *See Adams v. New England Scaffolding, Inc.*, 2016 WL 6514090, at *4 (D. Mass. Oct. 28, 2016) (Saylor, J.) ("[Defendant] does not—nor could it—contend that the burden of appearing in Massachusetts is significantly more onerous than the burden of appearing in Connecticut … ."). Certainly, this forum is more convenient to Beretta who is at home in Maryland, than appearing in California, Arizona, or Texas, from where its weapons were directly trafficked to Mexico.

[84] *See Mateo*, 2019 WL 199890, at *6 (absence of constitutionally significant burden "favors a finding of reasonableness"); *Adams*, 2016 WL 6514090, at * 4 (same).

[85] *Sawtelle*, 70 F.3d. at 1395 (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 151 (1st Cir.1995)) (emphasis original).

[86] Beretta Mem. 12.

Initially, a plaintiff's non-residency status does not necessarily weigh against reasonableness, especially here. True, the caselaw cited by Beretta[87] recognizes Massachusetts' interest in providing its citizens a convenient forum to assert their claims. But that does not proscribe the sufficiency of other forum interests, like requiring out-of-state manufacturers to monitor and discipline their in-state distributors and dealers.

Here the plaintiff is a foreign sovereign and thus a citizen of no U.S. forum. Conditioning forum interest in a suit brought by a foreign nation on residency in the forum-state would make no sense and would contravene law permitting a foreign state to "prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do."[88]

That the injury occurred elsewhere also does not preclude forum interest. Even while recognizing that a forum state's interest is diminished where the injury occurs elsewhere, courts have nevertheless found interest by the forum sufficient to favor the exercise of jurisdiction. In *Nowak*, the First Circuit held that "[w]hile it is true that the injury in this case occurred [in another country], it is equally true (unlike *Sawtelle*) that significant events took place in Massachusetts giving it an interest in this litigation."[89]

---

[87] Beretta Mem. 12.

[88] *See Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318-19 (1978) (citing 28 U.S.C. § 1332(a)(4) (1976 ed.)).

[89] *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996); *see also Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87, 98 (D. Mass. 2018) ("Although the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute.").

Here, as in *Nowak*, "[Defendant] solicited business in the state."[90] But more than that, Beretta "impos[ed] the policies and practices by which it sells its guns to Interstate Arms in [Massachusetts] and by which Interstate Arms must sell those guns to dealers through the U.S."[91] These policies—imposed by Beretta in Massachusetts—are at the heart of the Government's allegations regarding Beretta's illegal conduct.[92] Massachusetts most assuredly has a strong interest in precluding out-of-state gun manufacturers from implementing policies and practices within its border that flout its guns laws and facilitate the illegal trafficking of firearms into Mexico. This interest favors the adjudication of these claims in Massachusetts.

### 3. The Government's interest in obtaining convenient relief

Regarding the Plaintiff's interest in obtaining convenient and effective relief, the First Circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."[93] Plaintiff is entitled to this deference regardless of whether it is a citizen of Massachusetts.[94] "[J]udicial second guessing" of a plaintiff's choice of forum is improper for courts considering jurisdictional issues unless "the

---

[90] *Id.*

[91] Compl. ¶ 42.

[92] Beretta falsely claims that "the Complaint lacks any allegations connecting the firearms used in Mexico to the sale of guns in Massachusetts." *See* Beretta Mem. 12. The Complaint expressly alleges "[Beretta's] unlawful conduct as alleged throughout this Complaint— including the sales, marketing, advertising, and distribution policies and practices that occurred in Middlesex County—resulted in guns that [Beretta] sold to Defendant Interstate Arms in Middlesex County being trafficked into Mexico and used in criminal activities there, causing the harm about which the [Plaintiff] complains." Compl. ¶ 42; *see also* "Defendant Interstate has had significant numbers of its guns traced to Mexico. At least 10 other Boston-area dealers had such traces." *Id.* ¶ 195.

[93] *Sawtelle*, 70 F.3d at 1395.

[94] *See Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 251 (D. Mass. 2017) (affording deference to non-resident plaintiff's choice of forum).

plaintiff's supposed convenience 'seems to be . . . a makeweight,' contrived purely for strategic advantage."[95]

The Government chose to litigate at the center of the gun-manufacturing industry and in the home of one of the principal gun manufacturers and two significant gun distributors. This Court can grant the injunctive relief that is necessary to stop the flood of Defendants' crime guns into Mexico.

The Government also sued Beretta here so that the Government can pursue its claims against the defendants in one jurisdiction, instead of filing parallel litigation in multiple forums. "[P]laintiff's best option for convenient and efficient resolution of this matter is to have all [eight] defendants present in the same forum."[96] Indeed, the Court has previously recognized that this factor favors reasonableness where dismissal would result in "the plaintiff [ ] hav[ing] to commence parallel litigation in another forum."[97]

Beretta contends that Texas is presumably "a more convenient forum for Plaintiff" because it is "far closer to Mexico" and where "Plaintiff directly alleges that guns are smuggled through the southern border,"[98] but it does not get to decide this. Plaintiff's choice of forum with respect to the issue of its own convenience is given due deference.[99] Even so, a closer forum—

---

[95] *Foster-Miller,* 46 F.3d at 151 (quoting *Ticketmaster*, 26 F.3d at 211).

[96] *See Composite*, 988 F. Supp. 2d at 73.

[97] *Id.*; *see also Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994) (noting under this factor "the enormous inconvenience that might result from forcing Pritzker to sue elsewhere— theoretically, in every jurisdiction in which a financier is located—despite ongoing litigation in a forum-based court").

[98] Beretta Mem. 12-13.

[99] *Sawtelle*, 70 F.3d at 1395, *supra*.

especially given the ease of travel and increasingly electronic and telephonic nature of litigation, including discovery—does not outweigh the convenience of avoiding piecemeal litigation.

### 4. Administration of justice

The judicial system's interest in obtaining the most effect resolution of the controversy is "[u]sually . . . a wash,"[100] but "the administration of justice counsels against furcation of the dispute among several different jurisdictions."[101] "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."[102] Courts have thus consistently found the fourth gestalt factor weighs in favor of exercising jurisdiction when doing so will avoid piecemeal litigation.[103] Massachusetts is therefore the most efficient and effective forum for Plaintiff to litigate its claims.

Beretta's claim that this factor weighs against Plaintiff because "the majority of all witnesses and documents are outside of the Commonwealth" is unavailing.[104] "[I]t is too early to determine where the majority of the witnesses will be located and, given that most of the relevant

---

[100] *Nowak*, 94 F.3d at 718.

[101] *Moura v. New Prime, Inc.* 337 F. Supp. 3d 87, 99 (D. Mass. 2018) (quoting *Pritzker*, 42 F.3d at 64); *see also Bartow v. Extec. Screen and Crushers, Ltd.*, 53 F. Supp. 2d 518, 528 (D. Mass. 1999) ("Generally this factor is a wash, unless the Court perceives the threat of piecemeal litigation").

[102] *Id.* (quoting *Pritzker*, 42 F.3d at 64).

[103] *See e.g.*, *id.* (because of the possibility that piecemeal litigation would result if the court did not assert jurisdiction, "the most efficient resolution of this litigation is likely in the Commonwealth); *Composite,* 988 F. Supp. 2d at 73 (the justice system has an interest in having "all three defendants present in the same forum" because "[i]f defendants [ ] are dismissed, plaintiff will have to commence parallel litigation in another forum"); *Lewis v. Dimeo Const. Co.*, 2015 WL 3407605, at *6 (D. Mass. May 27, 2015) ("insofar as this factor favors either party, it supports hearing this case in Massachusetts so as to avoid the possibility of piecemeal litigation").

[104] *See* Beretta Mem. 13, n. 4.

documents are electronic, the physical location of such documents is inconsequential."[105] Even

so, a substantial number of witnesses from the Massachusetts manufacturers and distributors will

likely be in Massachusetts, and likely more so than in Texas where Beretta claims it should be

sued. At most, location of witnesses and documents favors neither party, leaving the interest in a

single forum to tip the scales in favor of exercising jurisdiction.

### 5.   Pertinent policy arguments

For the final "gestalt" factor, the Court "consider[s] the common interests of all

sovereigns in promoting substantive social policies."[106] Certainly, both the U.S. and Mexico

share an interest in ensuring that firearms manufactured and distributed by companies in the U.S.

are not trafficked into Mexico. The Government's ability, as a foreign sovereign, to seek redress

for devastating injuries caused by the negligence of gun companies in a convenient forum is an

important policy consideration that weighs in favor of jurisdiction, especially where litigating in

that forum does not burden Beretta.[107]

Beretta's assertion that this factor cannot favor jurisdiction because Plaintiff is not a

resident of the forum lacks support. Although the First Circuit case that it points to for support

does indeed note that the policy implicated *in that case* "is the ability of a state to provide a

convenient forum for its residents in assessing this factor,"[108] it does not follow that this is the

---

[105] *See Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 234 (D. Mass. 2010).

[106] *Sawtelle*, 70 F. 3d at 1395.

[107] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 308-12 (1980) (Brennan, J., dissenting) (suggesting that the concept of long-arm jurisdiction must adjust as technological advances blur boundaries between states, and litigation in a "foreign" state no longer inconveniences a defendant as it did "long ago when communication and travel over long distances were slow and unpredictable and when notions of state sovereignty were impractical and exaggerated.").

[108] *See* Beretta Mem. 13, n. 4 (relying on *Sawtelle*, 70 F.3d at 1395).

*only* policy consideration relevant to this gestalt factor. Again, Beretta's suggestion that jurisdiction is only reasonable here if Plaintiff is a citizen of Massachusetts contravenes Congress's explicit grant of diversity jurisdiction to foreign states as Plaintiffs who, as foreign sovereigns, are clearly not citizens of any forum state in the U.S.

### D.  In the Alternative, the Government Requests Jurisdictional Discovery

The Government has satisfied its burden of establishing a prima facie case of personal jurisdiction over Beretta. But should the Court require more, the Government respectfully requests the opportunity to conduct jurisdictional discovery. "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."[109] In determining whether the Government has "diligently made out a 'colorable case' of personal jurisdiction, the Court must determine if [it] ha[s] 'presented facts to the court which show why jurisdiction would be found if discovery were permitted.'"[110]

Discovery from Beretta, the other Defendants, and major distributors would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to distributors, those distributors' sales to dealers throughout the nation, and similar information.

---

[109] *Luxottica Group, S.p.A. v Lee*, 2021 WL 3116171, at *3 (D. Mass. 2021) (quoting *Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962, 964 (1st Cir. 1997)).

[110] *Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182, 192 (D. Mass 2012) (Saylor, J.) (quoting *Swiss Am. Bank*, 274 F.3d at 626).

cre<br>

## CONCLUSION

To defeat Beretta's motion challenging personal jurisdiction, the Government need only establish a prima facie case that jurisdiction exists. It has done so. Beretta's motion should, therefore, be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.

Dated: January 31, 2022                      Respectfully submitted,

                                        /s/ *Steve D. Shadowen*
                                         Steve D. Shadowen (pro hac vice)
                                         Richard M. Brunell (BBO# 544236)
                                         Nicholas W. Shadowen (pro hac vice)
                                         SHADOWEN PLLC
                                         1135 W. 6th Street, Suite 125
                                         Austin, TX 78703
                                         Phone: 855-344-3298
                                         sshadowen@shadowenpllc.com
                                         rbrunell@shadowenpllc.com
                                         nshadowen@shadowenpllc.com

                                         /s/ *Jonathan E. Lowy*
                                         Jonathan E. Lowy (pro hac vice)
                                         BRADY
                                         840 First Street, N.E. Suite 400
                                         Washington, DC 20002
                                         Phone: 202-370-8104
                                         jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: January 31, 2022                                    Respectfully Submitted,

                                                           /s/ *Steve D. Shadowen*
                                                           Steve D. Shadowen