# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

ESTADOS UNIDOS MEXICANOS,
*Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
*Defendants.*

Civil Action No. 1:21-CV-11269-FDS

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CENTURY INTERNATIONAL ARMS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ............................................................................................................ 7

I.    THE EXERCISE OF PERSONAL JURISDICTION OVER CENTURY
      ADHERES TO DUE PROCESS. ................................................................... 7

      A.    Century purposefully availed itself of the privileges of doing
            business in Massachusetts. ................................................................. 8

      B.    The Government's claims arise out of or relate to Century's forum
            contacts. ............................................................................................ 10

      C.    This Court's exercise of jurisdiction over Century is reasonable. ...... 14

            1.    Defendant's burden of appearing in Massachusetts .............. 15

            2.    Forum state's adjudicatory interest ........................................ 15

            3.    The Government's interest in obtaining convenient relief ...... 17

            4.    Administration of justice ........................................................ 19

            5.    Pertinent policy arguments .................................................... 19

II.   IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS
      JURISDICTIONAL DISCOVERY ............................................................. 21

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016) ....................................................7

*Adams v. Gissell*, NO. 20-cv-11366-PBS, 2021 WL 2786277 (D. Mass. May 24, 2021) ..... 10, 15

*Adelson v. Hananel*, 510 F.3d 43 (1st Cir. 2007)............................................................. 4, 5, 8, 9

*Ameral v. Intrepid Travel Part, Ltd.*, 128 F.Supp.3d 382 (D. Mass. 2015)....................................8

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987)......................................8, 9

*Bartow v. Extec Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518 (D. Mass. 1999)................ 9, 18

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28 (1st Cir. 2016) .............5

*Bobzien v. Philip Morris USA Inc.*, 2021 WL 4147011 (N.D. Fla. June 16, 2021).....................13

*Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F.Supp. 893 (D. R. I. 1996)..............13

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) .........................................................................................................................................3, 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...............................................................14

*Chao v. Ballista*, 806 F. Supp.2d 358 (D. Mass. July 28, 2011)...................................................13

*Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318 (D. Mass. June 3, 2021) ...........................................................................................................................................10

*Cioffi v. Gilbert Enterprises, Inc.*, 971 F.Supp. 2d 129 (D. Mass. 2012) .....................................4

*Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp.2d 61 (D. Mass. 2013). 13, 18, 19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .............................................................................6

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002)... 4, 7

*Fidrych v. Marriot International, Inc.*, 952 F.3d 124 (4th Cir. 2020)...........................................6

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) ......... 3, 6, 10

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995)....................5, 17

*Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995) .......................15

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) ...................................6

*Hernandez-Denizac v. Kia Motors Corp.*, 257 F.Supp. 3d 216 (D.P.R. 2017) ...........................5

*Hilsinger Co. v. FBW Investments, LLC*, 109 F.Supp.3d 409 (D. Mass. 2015).................... 14, 15

*Keeton v. Hustler Magazine*, 465 U.S. 770 (1984) ......................................................................9

*Knox v. MetalForming, Inc.*, 914 F.3d 685 (1st Cir. 2019) .........................................................7

*Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45 (1st Cir. 2020)..........................7

*Lewis v. Dimeo Const. Co.*, 2015 WL 3407605 (D. Mass. May 27, 2015) .................................. 19

*Lorenzen v. Toshiba American Information Systems, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175 (D.R.I. 2021) ......................................................................................................... 10

*Luxottica Group, S.p.A. v Lee*, 2021 WL 3116171 (D. Mass. 2021) .......................................... 20

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998) ............... 5

*Mateo v. University System of New Hampshire*, No. 18-cv-11953-FDS, 2019 WL 199890 (D. Mass. Jan. 14, 2019) ............................................................................................... 14, 15

*Momenta Pharmaceuticals, Inc v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514 (D. Mass 2012) ................................................................................................................... 8

*Nandjou v. Marriott International, Inc.*, 2019 WL 2918043 (D. Mass. July 8, 2019) .................. 9

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) ........................................... 8, 16, 18

*Packs v. Bartle*, 2019 WL 1060972 (D. Mass. Mar. 6, 2019) ...................................................... 5

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978) ........................................................... 16

*PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11 (1st Cir. 2019).................................... 7

*Prep Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11  (1st Cir. 2019) ......................... 15

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994) ........................................................................ 14, 18

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) .............................................................. passim

*Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17 (1st Cir. 2018) ...................... 7

*Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182 (D. Mass 2012) ........ 20

*Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962 (1st Cir. 1997) ........................................... 20

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 2019 WL 1767394 (D. Mass. Apr. 22, 2019) ....... 17

*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) .......................................... 14, 17

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080  (1st Cir. 1992) ....................................................................................................................... 7

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001)..................................... 4, 20

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................ 19

**Statutes**

28 U.S.C. § 1332(a)(4) (1976 ed.) .............................................................................................. 16

M.G.L. c. 223A § 3 ....................................................................................................................... 6

*Moura v. New Prime, Inc.*, 337 F.Supp.3d 87 (D. Mass. 2018) .......................................... 16, 18

**Other Authorities**

Dan B. Dobbs, *The Law of Torts* § 174 (2000) ........................................................................ 13

## INTRODUCTION

Plaintiff Estados Unidos Mexicanos ("the Government") submits this opposition to the separate motion to dismiss filed by Defendant Century International Arms, Inc. ("Century") based on an asserted lack of personal jurisdiction. For background facts, we refer to the Government's opposition to the joint motion to dismiss. Here, we address Century's personal jurisdiction argument.

Massachusetts is the King of Guns[1] and is referred to as "Gun Valley."[2] It has been steeped in firearms manufacturing since 1777, when George Washington selected Springfield as the site for the nation's first arsenal.[3] Recent estimates show that Massachusetts accounts for one-quarter of all weapons manufactured in the United States, more than any other state.[4]

Massachusetts is home to Defendant Smith & Wesson[5] and two large, national gun wholesalers, Defendant Interstate Arms and Camfour, Inc. Interstate Arms, based in Billerica, is a "40+ year-old wholesaler distributor supplying licensed firearm dealers nationwide with firearms and related products."[6] The company describes itself as a seller of, among other things, "military-style weapons."[7] Camfour, Inc. ("Camfour") is another national distributor. Founded in

---

[1] Declaration of Nicholas W. Shadowen ("Shadowen Decl."), ¶ 20(c)(i).

[2] Shadowen Decl. ¶ 20(b).

[3] *Id.* ¶ 20(b)(i).

[4] *Id.* ¶ 20(c)(ii). In 2016, Massachusetts was ranked among the top 10 states for total economic output for arms and ammunition in the U.S.; *id.* ¶ 20(a)(iii).

[5] Compl. ¶ 31.

[6] Shadowen Decl. ¶ 20(b)(i).

[7] *Id.* ¶ 18(b).

Springfield, Massachusetts in 1952,[8] it touts that it "revolutionized" the gun industry with the development of its online order software that "enabled independent shooting sports retailers to have instant access to a wealth of information, inventory and the ability to order 24 hours a day, 7 days a week."[9] The company is "consistently … ranked as one of the top 10 distributors in the industry."[10] Complementing its operations in Massachusetts is another Camfour distribution center outside Austin, Texas.[11] In addition to these major distributors, there are also nearly 4,000 licensed gun dealers in Massachusetts.[12]

Century is a national firearms manufacturer that does business throughout the United States, including very substantial business in Massachusetts.[13] Century intentionally directed its commercial activities to this forum by regularly advertising and selling its guns here.[14] Century imposes its unlawful distribution policies—the policies about which the Government complains—on gun distributors (wholesalers) and dealers in Massachusetts.[15] These include distributors Interstate Arms and Camfour, plus authorized Century dealers.[16]

---

[8] *Id.* ¶ 19(a)(i).

[9] *Id.* ¶ 19(a)(iii).

[10] *Id.*

[11] *Id.* ¶ 19(a)(iv)-(v).

[12] Shadowen Decl. Ex. 52, *How to get FFL License in Massachusetts (MS)?*, FFL123.com, available at https://www.ffl123.com/how-to-get-ffl-in-massachusetts/#:~:text=As%20of%20June%202021%2C%20the,)%20being%20rabidly%20anti%2Dgun.

[13] *See infra* Section I(A).

[14] *Id*.

[15] Compl. ¶ 42.

[16] *See infra* Section I(A).

Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[17] Century's large Massachusetts distributors Interstate Arms and Camfour sell Century's guns to Century's authorized dealers throughout the nation.[18] Consequently, the unlawful distribution policies that Century imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

Specifically, the Complaint alleges that Century's policies for Massachusetts distributors and dealers resulted in guns that Century sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[19] The Government's expert report on this issue establishes that in the last ten years approximately 4,500 to 17,000 of Century's guns were trafficked from Massachusetts into Mexico.[20]

Century's assertion that it is not subject to the personal jurisdiction of this Court is wrong. The Court has specific jurisdiction over Century because due process dictates are satisfied.

---

[17] *See infra* Section I(B).

[18] *Id*.

[19] Compl. ¶ 42. This paragraph of the Complaint specifically discusses sales from Century to Interstate Arms, but others refer to distributors and dealers generally (e.g., *id*. ¶¶ 82, 121), and the Complaint alleges that the "claims arise out of Defendants' contacts with Massachusetts [and] the Government's claims relate to those contacts" (*id*. ¶ 44).

[20] *See infra* Section I(B).

Century unquestionably "deliberately reached out beyond its home" to "exploit[ ] a market in the forum State" and "enter[ ] a contractual relationship centered there."[21] And the Government's claims clearly relate to and arise out of Century's forum activities.[22]

Beyond Century's sufficient contacts here, this Court's exercise of jurisdiction over Century is entirely fair and reasonable. Massachusetts has a strong interest in assuring that Century and other gun manufacturers properly monitor and discipline their Massachusetts distributors and dealers. Moreover, litigating here provides the Government the convenience of a single forum without imposing any constitutionally significant burden on Century. Avoiding piecemeal litigation also serves judicial economy, ensuring both an efficient and consistent resolution of the Government's claims. Lastly, the Government and the United States share an interest in curtailing the unlawful gun trafficking. The Government's ability to seek redress for injuries caused by Defendants' negligence in a single forum is an important policy consideration that further weighs in favor of the Court exercising jurisdiction. Given the centrality of Massachusetts in the gun industry, this is a sensible place for this litigation.

Century's attempt to avoid appearing in Massachusetts fails, and its motion should be denied. If, however, the Court were to harbor any doubt as to whether personal jurisdiction exists, the Government respectfully requests discovery on the issue.

---

[21] *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (internal quotations and citation omitted).

[22] *Id*. ("The plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum.") (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)).

## LEGAL STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'"[23] "Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the *prima facie* standard governs its determination."[24]

The prima facie standard "requires no differential factfinding; rather . . . only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."[25] That is, this Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."[26]

And "'[f]or the purpose of examining the merits of such a jurisdictional proffer,' the court considers 'the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts.'"[27] Properly documented facts proffered by Plaintiff must be accepted as true, "irrespective of whether the defendant disputes them" and must be "[construed] in the light

---

[23] *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002)).

[24] *Cioffi v. Gilbert Enterprises, Inc.*, 971 F.Supp. 2d 129, 133-34 (D. Mass. 2012) (Saylor, J.) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)).

[25] *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016); *see also Adelson*, 510 F.3d at 48; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

[26] *Adelson,* 510 F.3d at 48.

[27] *Hernandez-Denizac v. Kia Motors Corp.*, 257 F.Supp. 3d 216, 220 (D.P.R. 2017) (quoting *Baskin-Robbins*, 825 F.3d at 34).

5

most congenial to the plaintiff's jurisdictional claim."[28] Here, the Government has submitted the expert report of economist Lucy Allen in support of the Complaint's jurisdictional allegations.[29]

Due process requirements are satisfied when the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[30] Personal jurisdiction may be general or specific.[31] The nature and quantity of forum-state contacts needed to satisfy due process differs depending on which of these is asserted over the defendant.[32] The Government contends that this Court has specific jurisdiction over Century.

For a court to exercise specific jurisdiction, "'the suit' must 'aris[e] out of *or* relat[e] to the defendant's contacts with the forum."[33] "Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an

---

[28] *Adelson,* 510 F.3d at 48 (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998)); *see also Packs v. Bartle*, 2019 WL 1060972, at *3 (D. Mass. Mar. 6, 2019) ("The Court takes as true whatever properly documented facts plaintiffs proffer, construes those facts in the light most favorable to the plaintiffs, and considers facts put forward by defendants to the extent they are uncontradicted.").

[29] To the extent the Government's proffer is deemed insufficient, it requests permission to conduct jurisdictional discovery as set forth below.

[30] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quotations omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Century does not advance any independent argument that the Government fails to meet the requirement of the Massachusetts long-arm statute, M.G.L. c. 223A § 3, resting entirely on the purported absence of contacts sufficient to meet the requirements of due process. *See* Century Mem. 4 n.5.

[31] *Bristol-Myers*, 137 S.Ct. at 1779-80.

[32] *Fidrych v. Marriot International, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020); *Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016).

[33] *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)) (emphasis added).

occurrence that takes place in the forum State and is therefore subject to the State's

regulation.'"[34]

## ARGUMENT

## I. THE EXERCISE OF PERSONAL JURISDICTION OVER CENTURY ADHERES TO DUE PROCESS.

The First Circuit has synthesized the requirements for establishing specific jurisdiction

consistent with due process as follows:

> [P]laintiffs seeking to establish that a court has specific personal jurisdiction over a defendant must show that: (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. [ ] Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction. [ ][35]

Stated differently, "the constitutional analysis … has three components: relatedness,

purposeful availment, and reasonableness."[36] This inquiry is "highly fact-specific."[37] And "the

test is 'not susceptible of mechanical application; rather, the facts of each case must be

weighed.'"[38] As set out below, the exercise of specific jurisdiction over Century in this case

comports with each of these requirements.

---

[34] *Ford* 141 S, Ct. at 1025 (quoting *Bristol-Myers*, 137 S.Ct., at 1780 (other quotations and citation omitted).

[35] *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)).

[36] *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019).

[37] *Id.*

[38] *Id.* (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)).

### A. Century purposefully availed itself of the privileges of doing business in Massachusetts.

"[T]he defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."[39] "[T]he two cornerstones of purposeful availment are 'voluntariness' and 'foreseeability.'"[40] That is, "[t]he contacts must be voluntary and not based on the unilateral actions of another party," and "the defendant's contacts must be such that he could reasonably anticipate being haled into court there."[41] Both requirements are easily met here.

Century purposefully availed itself of the privilege of conducting activities in Massachusetts by entering into distributorship arrangements with in-forum distributors including Defendant Interstate Arms[42] and Camfour, Inc.[43] Century also has authorized firearm dealers within Massachusetts.[44] By regularly selling its weapons directly to in-state wholesalers and dealers, Century clearly targeted the Massachusetts firearms market.[45]

---

[39] *Daynard*, 290 F.3d at 61(citation omitted).

[40] *Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 59 (1st Cir. 2020) (quoting *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 19-20 (1st Cir. 2019)).

[41] *Adelson*, 510 F.3d at 50 (internal citations and quotations omitted).

[42] Shadowen Decl. ¶ 7.

[43] Shadowen Decl. ¶ 6(d).

[44] Shadowen Decl. ¶ 6(a), (b).

[45] *See e.g.*, *Momenta Pharmaceuticals, Inc v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514, 520-21 (D. Mass 2012) (defendants purposefully direct activities at the residents of Massachusetts by offering products for sale in Massachusetts).

Century further availed itself of this market by directing its advertising and marketing efforts here.[46] These advertisements include those about which the Government complains, promoting the unlawful use of Century's guns with inflammatory messages such as a photo of one of its guns with the caption "Eat more ammo!" and another photo of one of its guns captioned "Onwards towards victory!"[47]

Century's contacts with Massachusetts are sufficient that Century should reasonably anticipate litigation here.[48] Century argues only that it could not foresee that it would have to defend itself "against a lawsuit by the Mexican government" here.[49] But "[t]he function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."[50] The inquiry then is not whether Century could foresee *this particular* lawsuit, but whether, based on its

---

[46] *See* Compl. ¶ 42; *see Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (advertising in the forum states "indicate[s] an intent or purpose to serve the market in the forum State."); *see also Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996) (foreign hotel's direct targeting of residents and advertising in a forum state constituted purposeful availment); *Ameral v. Intrepid Travel Part, Ltd.*, 128 F.Supp.3d 382, 393 (D. Mass. 2015) (foreign tour company's advertising to and interaction with Massachusetts residents through its website satisfied the purposeful availment test).

[47] Shadowen Decl. ¶ 6(e), 6(f).

[48] *See Bartow v. Extec Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518, 527 (D. Mass. 1999) ("[B]ecause [defendant] not only knew that its machines ended up in Massachusetts, but also specifically targeted and facilitated sales to and through Massachusetts, [defendant] anticipated suit in Massachusetts"); *see also Nandjou v. Marriott International, Inc.*, 2019 WL 2918043, at *6 (D. Mass. July 8, 2019), *aff'd* 985 F.3d 135, 152-53 (9th Cir. 2021) (advertisements that were part of defendant's on-going effort to attract customers to its branded hotel made it foreseeable that defendants would be haled into court in that forum).

[49] Century Mem. 10.

[50] *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984)).

substantial contacts in Massachusetts, it could anticipate having to litigate in this forum.[51]
Century advertised, marketed, and sold its weapons in Massachusetts. Nothing further is required
to show "an intent or purpose to serve the market in the forum State"[52] such that being an
involuntary litigant here was foreseeable.

> **B.    The Government's claims arise out of or relate to Century's forum contacts.**

"The relatedness standard is a 'flexible, relaxed standard,' which focuses on the 'nexus
between the defendant[s'] contacts and the plaintiff's cause of action.'"[53] The Supreme Court
recently "emphasized that the classic formulation of the constitutional relatedness inquiry—
'arise out of *or relate to*'—is disjunctive" and "rejected the notion that a 'strict causal
relationship' is necessary."[54] As explained in *Ford*, "[t]he first half of that standard asks about
causation; but the back half, after the 'or,' contemplates that some relationships will support
jurisdiction without a causal showing."[55] The Court further observed that, while "the phrase
'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum,
. . . we have never framed the specific jurisdiction inquiry as always requiring proof of

---

[51] See *Adelson*, 510 F.3d at 50, supra.

[52] *Asahi*, 480 U.S. at 112.

[53] *Adelson*, 510 F.3d at 49 (citations omitted).

[54] *Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318, at *8 (D. Mass.
June 3, 2021) (citing *Ford*, 141 S.Ct. at 1026) (emphasis original); *see also Lorenzen v.
Toshiba American Information Systems, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175,
at *1 (D.R.I. 2021) ("The *Ford Motor* case expanded the constitutional reach of personal
jurisdiction ….").

[55] *Ford*, 141 S.Ct. at 1026.

causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."[56]

Yet Century contends that proof of causation is required, ignoring the Supreme Court's *Ford* decision in favor of circuit precedent pre-dating *Ford* that emphasized the importance of a causal link to establishing specific jurisdiction.[57] After *Ford*, the law is that "[a]bsent causation, specific jurisdiction exists if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[58]

The Government readily meets these requirements. Century imposes its unlawful distribution policies on its gun dealers and on its large national distributors Interstate Arms and Camfour, in Massachusetts.[59] Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[60] Century's large Massachusetts distributors sell Century's guns to Century's authorized dealers across the country.[61] Consequently, the unlawful distribution policies that Century imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

---

[56] *Id.*

[57] Century Mem. 7.

[58] *Adams v. Gissell*, NO. 20-cv-11366-PBS, 2021 WL 2786277, at *9 n.13 (D. Mass. May 24, 2021) (quoting *Ford*, 141 S.Ct. at 1025).

[59] Compl. ¶ 42.

[60] For example, Defendant Ruger's public filings state that it makes 90% of its sales to wholesalers. Shadowen Decl. ¶ 15(b)(ii).

[61] Shadowen Decl. ¶ 6(c).

Specifically, the Complaint alleges that the policies that Century imposes on Massachusetts distributors and dealers result in guns that Century sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[62] Century denies the truth of that well-pled allegation, insisting that "there is no connection or link between any forum related activity by Century and Mexico's causes of action."[63]

So the Government offers the Expert Report of Lucy P. Allen, an economist at the international consulting firm NERA Economic Consulting and a former member of the Council of Economic Advisers for Presidents George H.W. Bush and Bill Clinton.[64] Among other qualifications, she has been "qualified as an expert and testified in court on various economic and statistical issues relating to firearms, including the flow of firearms into the criminal market and analyses of data on firearm traces from the ATF."[65]

The ATF traces crime guns from the last purchaser back up through the chain of distribution to the dealer and the distributor.[66] The last set of that data that is publicly available shows the percentage of Century's crime guns recovered in Mexico that were traced to Massachusetts.[67] Ms. Allen applies that percentage to estimates of the total number of guns

---

[62] Compl. ¶ 42.

[63] Century Mem. 9.

[64] Shadowen Decl., Ex. 1, Expert Report of Lucy P. Allen ("Allen Report"), ¶¶ 4, 6.

[65] *Id*. ¶ 5.

[66] Compl. ¶ 92.

[67] Allen Report ¶ 16.

trafficked into Mexico in the period 2011 – 2020, yielding an estimate of the number of Century's guns trafficked from Massachusetts to Mexico.[68]

The total number of guns annually trafficked from the United States to Mexico will be the subject of fact and expert discovery later in this litigation. Assuming that the total number is 200,000 annually, Ms. Allen estimates that the number of Century's guns trafficked from Massachusetts to Mexico from 2011 to 2020 is in excess of 4,500.[69] Assuming the total number is 730,000 instead of 200,000, she estimates that the number of Century's guns trafficked from Massachusetts to Mexico in that period is in excess of 17,000.[70]

Moreover, the relatedness requirement would be met even without this dispositive allegation and compelling proof. Century imposed its policies and practices on distributors nationwide. Its active indifference to the illegal distribution of its weapons in other U.S. states combines with its negligence in Massachusetts to inflict an indivisible injury[71] on the Government. This ongoing, in-forum contribution to Century's longstanding head-in-the-sand approach sufficiently relates to the Government's claims.[72]

---

[68] Her number is conservative because the percentage of U.S. retail guns sales made in Massachusetts has increased substantially in recent years. *Id.* ¶ 18.

[69] *Id.* ¶ 19, Chart, Column 3.

[70] *Id.* ¶ 19, Chart, Column 4.

[71] *Cf. Chao v. Ballista*, 806 F. Supp.2d 358, 378 n.6 (D. Mass. July 28, 2011) ("Where . . . injury is indivisible, the defendants are joint and severally liable for the harm—even where they did not act in concert"); Dan B. Dobbs, *The Law of Torts* § 174, at 423 (2000) ("When the plaintiff presents evidence that she suffered a single indivisible injury at the hands of two or more tortfeasors, the burden is shifted to the tortfeasors to show that the plaintiff suffered separable injuries and that they can be apportioned and attributed separately to the different tortfeasors.").

[72] *See Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F.Supp. 893, 910 (D. R. I. 1996) ("[defendant's] election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment"); *see also Bobzien v. Philip Morris USA Inc.*, 2021 WL 4147011, at *2 (N.D. Fla. June 16, 2021) ("On a claim of personal injury to a single plaintiff resulting from long exposure

**C.     This Court's exercise of jurisdiction over Century is reasonable.**

The "concepts of reasonableness must illuminate the minimum contacts analysis."[73] To

guide the reasonableness inquiry and determine whether the exercise of jurisdiction "comport[s]

with fair play and substantial justice," the Court considers the five "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's interest in
> adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and
> effective relief; (4) the judicial system's interest in obtaining the most effective
> resolution of the controversy; and (5) the common interests of all sovereigns in
> promoting substantive social policies.[74]

Notably, "[t]hese factors are 'not ends in themselves, but they are, collectively, a means

of assisting courts in achieving substantial justice.'"[75] And where the plaintiff—as is the case

here—has established "relatedness" and "purposeful availment," a defendant "must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable."[76] Century has not done so. Instead, these factors demonstrate that compelling

Century to appear in Massachusetts is fair and reasonable.

---

to tobacco smoke . . . [i]f the defendant provided some of the tobacco in the forum, and that
tobacco contributed to the plaintiff's indivisible injuries, the court has personal jurisdiction over
the defendant for the whole claim").

[73] *Sawtelle*, 70 F.3d at 1394.

[74] *Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61, 73 (D. Mass.
2013) (Saylor, J.) (citing *Sawtelle*, 70 F.3d at 1394).

[75] *Mateo v. University System of New Hampshire*, No. 18-cv-11953-FDS, 2019 WL 199890,
at *6 (D. Mass. Jan. 14, 2019) (Saylor, J.) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d
201, 209 (1st Cir. 1994)).

[76] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Ticketmaster*, 26
F.3d at 210 ("the reasonableness prong of the due process inquiry evokes a sliding scale: the
weaker the plaintiff's showing on the first two prongs (relatedness and purposeful
availment), the less a defendant need show in terms of unreasonableness to defeat
jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may
serve to fortify a borderline showing of relatedness and purposefulness").

### 1.     Defendant's burden of appearing in Massachusetts

"For this particular factor to have any significance, 'the defendant must demonstrate that exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other constitutionally significant way.'"[77] Century is a large national corporation with its principal place of business in Florida that would not incur a constitutionally significant burden appearing before this Court.[78] Indeed, Century has made no attempt to suggest otherwise. This factor therefore favors a finding of reasonableness.[79]

### 2.     Forum state's adjudicatory interest

"[T]he purpose of [this] inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest."[80] Here, Massachusetts has a strong interest in assuring that gun manufacturers properly monitor and discipline in-state wholesalers and dealers.

---

[77] *Hilsinger Co. v. FBW Investments, LLC*, 109 F.Supp.3d 409, 429 (D. Mass. 2015) (Saylor, J.) (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)); *Mateo*, 2019 WL 199890, at *6.

[78] *See Prep Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11, 37 (1st Cir. 2019) ("Absent a special or unusual burden, defendants cannot assert distance as a barrier.") (internal quotations and citation omitted); *see also Hilsinger*, 109 F.Supp.3d at 429 (not a constitutionally significant burden for Arizona corporation with no operations outside of Arizona to litigate in Massachusetts). Certainly, this forum is not less convenient to Century, who is at home in Vermont and Florida, than appearing in California, Arizona, or Texas, from where its weapons were directly trafficked.

[79] *See Mateo*, 2019 WL 199890, at *6 (absence of constitutionally significant burden "favors a finding of reasonableness"); *Adams*, 2016 WL 6514090, at *4 (same).

[80] *Sawtelle*, 70 F.3d. at 1395 (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995) (emphasis original).

Century argues that Massachusetts lacks any interest in adjudicating the Government's claims because neither party is a citizen and the injury and illegal conduct (according to Century) occurred elsewhere.[81] That argument falls short for multiple reasons.

Initially, a plaintiff's non-residency does not necessarily weigh against reasonableness, especially here. True, the caselaw that Century cites[82] recognizes Massachusetts' interest in providing its citizens a convenient forum to assert their claims. But that does not proscribe the sufficiency of other forum interests, like requiring out-of-state manufacturers to monitor and discipline their in-state distributors and dealers.

Here the plaintiff is a foreign sovereign and thus a citizen of no U.S. forum. Conditioning forum interest in a suit brought by a foreign nation on residency in the forum-state would make no sense and would contravene law permitting a foreign state to "prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do."[83]

That the injury occurred elsewhere also does not preclude forum interest. Even while recognizing that a forum state's interest is diminished in these circumstances, courts have nevertheless found the forum sufficient to favor the exercise of jurisdiction. In *Nowak*, the First Circuit held that "[w]hile it is true that the injury in this case occurred [in another country], it is

---

[81] Century Mem. 11.

[82] *Id*. at 11-12.

[83] *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318-19 (1978); *see also id*. at 319 n.19 (citing 28 U.S.C. § 1332(a)(4) (1976 ed.)).

equally true (unlike *Sawtelle*) that significant events took place in Massachusetts giving it an interest in this litigation."[84]

Here, as in *Nowak*, "[Century] solicited business in the state."[85] But more than that, Century "impos[ed] the policies and practices by which it sells its guns to Interstate Arms in [Massachusetts] and by which Interstate Arms must sell those guns to dealers throughout the U.S."[86] These policies—imposed by Century in Massachusetts—are at the heart of the Government's allegations regarding Century's illegal conduct.[87] Massachusetts most assuredly has a strong interest in precluding out-of-state gun manufacturers from implementing policies and practices within its border that flout its guns law and facilitate the illegal trafficking of firearms into Mexico. This interest favors the adjudication of these claims in Massachusetts.

### 3.    The Government's interest in obtaining convenient relief

Regarding the Plaintiff's interest in obtaining convenient and effective relief, the First Circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of

---

[84] 94 F.3d at 718; *see also Moura v. New Prime, Inc.*, 337 F.Supp.3d 87, 98 (D. Mass. 2018) ("[A]lthough the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute.").

[85] *Id.*

[86] Compl. ¶ 42.

[87] Century erroneously claims that "the Complaint does not even allege any illegal conduct within the Commonwealth of Massachusetts." Century Mem. 11. The Complaint alleges "[Century's] unlawful conduct as alleged throughout this Complaint—including the sales, marketing, advertising, and distribution policies and practices that occurred in Middlesex County—resulted in guns that [Century] sold to Defendant Interstate Arms in Middlesex County being trafficked into Mexico and used in criminal activities there, causing the harm about which the [Plaintiff] complains." Compl. ¶ 42. This conduct—selling, advertising, marketing, implementation of distribution policies and practices—all occurred, negligently, in Massachusetts.

deference with respect to the issue of its own convenience."[88] Plaintiff is entitled to this deference regardless of whether it is a citizen of Massachusetts.[89] "[J]udicial second guessing" of a plaintiff's choice of forum is improper for courts considering jurisdictional issues unless "the plaintiff's supposed convenience 'seems to be . . . a makeweight,' contrived purely for strategic advantage."[90]

The Government chose to litigate at the center of the gun-manufacturing industry and in the home of one of the principal gun manufacturers and two significant gun distributors. This Court can grant the injunctive relief that is necessary to stop the flood of Defendants' crime guns into Mexico.

The Government also sued Century here so that the Government can pursue its claims against all Defendants in one jurisdiction, instead of filing parallel litigation in multiple forums. "[P]laintiff's best option for convenient and efficient resolution of this matter is to have all [eight] defendants present in the same forum."[91] Indeed, the Court has previously recognized that

---

[88] *Sawtelle*, 70 F.3d at 1395.

[89] Century's reliance on *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 2019 WL 1767394, at *5 (D. Mass. Apr. 22, 2019), and *Hyewoong Yoon v. Seyeon Lee*, 433 F.Supp.3d 18, 26 (D. Mass. 2019), to support its assertion that Plaintiff's choice of venue is not entitled to deference is entirely misplaced. These cases address venue in the context of *forum non-conveniens*, and the First Circuit has admonished against the "mistaken blending of the theories of personal jurisdiction and *forum non conveniens* in the course of ascertaining [whether] the [ ] gestalt factors militate[ ] against the exercise of jurisdiction." *Foster-Miller,* 46 F.3d at 150-51.

[90] *Foster-Miller,* 46 F.3d at 151 (quoting *Ticketmaster*, 26 F.3d at 211).

[91] *Composite*, 988 F.Supp.2d at 73.

this factor favors reasonableness where dismissal would result in "the plaintiff [ ] hav[ing] to commence parallel litigation in another forum."[92]

### 4.    Administration of justice

The judicial system's interest in obtaining the most effect resolution of the controversy is "[u]sually . . . a wash,"[93] but "the administration of justice counsels against furcation of the dispute among several different jurisdictions."[94] "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."[95] Courts have thus consistently found the fourth gestalt factor weighs in favor of exercising jurisdiction when doing so will avoid piecemeal litigation.[96] Massachusetts is therefore the most efficient and effective forum for the Government to litigate its claims.[97]

### 5.    Pertinent policy arguments

---

[92] *Id.*; *see also Pritzker*, 42 F.3d at 64 (noting under this factor "the enormous inconvenience that might result from forcing Pritzker to sue elsewhere—theoretically, in every jurisdiction in which a financier is located—despite ongoing litigation in a forum-based court.").

[93] *Nowak*, 94 F.3d at 718.

[94] *Moura*, 337 F.Supp.3d at 99 (quoting *Pritzker*, 42 F.3d at 64); *see also Bartow*, 53 F. Supp. 2d at 528 ("Generally this factor is a wash, unless the Court perceives the threat of piecemeal litigation").

[95] *Id.* (quoting *Pritzker*, 42 F.3d at 64).

[96] *See e.g. id.* (because of the possibility that piecemeal litigation would result if the court did not assert jurisdiction, "the most efficient resolution of this litigation is likely in the Commonwealth"); *Composite,* 988 F.Supp.2d at 73 (the justice system has an interest in having "all three defendants present in the same forum" because "[i]f defendants [ ] are dismissed, plaintiff will have to commence parallel litigation in another forum"); *Lewis v. Dimeo Const. Co.*, 2015 WL 3407605, at *6 (D. Mass. May 27, 2015) ("insofar as this factor favors either party, it supports hearing this case in Massachusetts so as to avoid the possibility of piecemeal litigation").

[97] Notably, Century does not challenge the Court's jurisdiction based on this factor.

For the final "gestalt" factor, the Court "consider[s] the common interests of all sovereigns in promoting substantive social policies."[98] Certainly, both the United States and Mexico share an interest in ensuring that firearms manufactured and distributed by the Defendants are not trafficked into Mexico. The Government's ability, as a foreign sovereign, to seek redress for devastating injuries caused by the negligence of gun companies in a convenient forum is an important policy consideration that weighs in favor of jurisdiction, especially where litigating in that forum does not burden Century.[99]

Century argues that this factor "appears to weigh strongly in favor of [Century]" because "through this lawsuit, Mexico – a foreign nation – is seeking to hold Defendants liable for the lawful manufacturing and sale of firearms in the United States" and is thus, "seeking to not only infringe upon the policies, laws, and Constitution of the United States but entirely displace the established policies of the United States."[100] The Government is suing Century for its *unlawful* negligence in the manufacturing, marketing, sale, and distribution of its guns that actively and knowingly facilitates the trafficking of these weapons into Mexico. That Century chooses to ignore the consequences of its active indifference and characterize its conduct as "lawful" is expected, but insufficient to defend against jurisdiction in this case.

---

[98] *Sawtelle*, 70 F.3d at 1395.

[99] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 308-12 (1980) (Brennan, J., dissenting) (suggesting that the concept of long-arm jurisdiction must adjust as technological advances blur boundaries between states, and litigation in a "foreign" state no longer inconveniences a defendant as it did "long ago when communication and travel over long distances were slow and unpredictable and when notions of state sovereignty were impractical and exaggerated.").

[100] Century Mem. 12.

**II.     IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS JURISDICTIONAL DISCOVERY**

The Government has satisfied its burden of establishing a prima facie case of personal jurisdiction over Century. But should the Court require more, the Government respectfully requests the opportunity to conduct jurisdictional discovery. "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."[101] In determining whether the Government has "diligently made out a 'colorable case' of personal jurisdiction, the Court must determine if [it] ha[s] 'presented facts to the court which show why jurisdiction would be found if discovery were permitted.'"[102]

Discovery from Century, the other Defendants, and major distributors would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to distributors, those distributors' sales to dealers throughout the nation, and similar information.

**CONCLUSION**

To defeat Century's motion challenging personal jurisdiction, the Government need only establish a prima facie case that jurisdiction exists. It has done so. Century's motion should, therefore, be denied.

---

[101] *Luxottica Group, S.p.A. v Lee*, 2021 WL 3116171, at *3 (D. Mass. 2021) (quoting *Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962, 964 (1st Cir. 1997)).

[102] *Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182, 192 (D. Mass 2012) (Saylor, J.) (quoting *Swiss Am. Bank*, 274 F.3d at 626).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.

Dated: January 31, 2022                          Respectfully submitted,

/s/ *Steve D. Shadowen*
Steve D. Shadowen (pro hac vice)
Richard M. Brunell (BBO# 544236)
Nicholas W. Shadowen (pro hac vice)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ *Jonathan E. Lowy*
Jonathan E. Lowy (pro hac vice)
BRADY
840 First Street, N.E. Suite 400
Washington, DC 20002
Phone: 202-370-8104
jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: January 31, 2022                    Respectfully Submitted,

                                           /s/ *Steve D. Shadowen*_____
                                           Steve D. Shadowen

23