**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS,<br>　　　　　　*Plaintiff,*<br><br>*vs.*<br><br>SMITH & WESSON BRANDS, INC., et al.,<br>　　　　　　*Defendants.* | Civil Action No. 1:21-CV-11269-FDS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT COLT'S MANUFACTURING COMPANY LLC'S**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   THE EXERCISE OF PERSONAL JURISDICTION OVER COLT
     ADHERES TO DUE PROCESS. .......................................................................3

     A.   Colt purposefully availed itself of the privileges of doing business
          in Massachusetts. ...............................................................................4

     B.   The Government's claims arise out of or relate to Colt's forum
          contacts. ..............................................................................................4

     C.   This Court's exercise of jurisdiction over Colt is reasonable. ...............8

          1.   Defendant's burden of appearing in Massachusetts ...................9

          2.   Forum state's adjudicatory interest ..........................................10

          3.   The Government's interest in obtaining convenient relief .......12

          4.   Administration of justice ..........................................................14

          5.   Pertinent policy arguments ......................................................15

     D.   In the Alternative, the Government Requests Jurisdictional
          Discovery ............................................................................................15

II.  THE GOVERNMENT HAS STANDING TO ASSERT A CUTPA
     CLAIM AGAINST COLT AND HAS SUFFICIENTLY STATED A
     CLAIM. ..........................................................................................................16

     A.   The Government Has Standing to Assert Its CUTPA Claim
          Against Colt .........................................................................................16

     B.   Proximate Cause Is Not Precluded. ......................................................18

     C.   PLCAA Does Not Preclude the Government's CUTPA Claim. ............19

     D.   The First Amendment Does Not Preclude the Government's
          CUTPA Claim ......................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016) .....................................................3

*Adams v. Gissell*, 2021 WL 2786277 (D. Mass. May 24, 2021).........................................6, 9, 10

*Adelson v. Hananel*, 510 F.3d 43 (1st Cir. 2007) ............................................................................4

*Bartow v. Extec. Screen and Crushers, Ltd.*, 53 F. Supp. 2d 518 (D. Mass. 1999) .....................14

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................................16, 17

*Bobzien v. Philip Morris USA Inc.*, No. 5:20-cv-328-RH-MJF, 2021 WL 4147011(N.D. Fla. June 16, 2021)........................................................................................................................................8

*Branch Metal Processing, Inc. v. Boston Edison Co.*, 952, F. Supp. 893 (D. R. I. 1996)..............8

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011) .................................................................21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................................9

*Chao v. Ballista*, 806 F. Supp.2d 358 (D. Mass. July 28, 2011) ....................................................8

*Chouinard v. Marigot Beach Club and Dive Resort*, No. 20-10863-MPK,2021 WL 2256318 (D. Mass. June 3, 2021) ......................................................................................................................5

*City of Gary v. Smith & Wesson Corp.*, 126 N.E. 3d 813 (Ind. Ct. App. 2019)...........................20

*City of New York v. Beretta U.S.A. Corp.*, 524 U.S. 384 (2d Cir. 2008).......................................20

*Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61 (D. Mass. 2013) ...8, 13, 14

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002)........4

*Deemac Services, LLC v. Republic Steel*, 2021 WL 2018716 (W.D. Pa. May 20, 2021)...............5

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021)............2, 5, 6

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995) ..........................12

*Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir.1995)...........................10

*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001)................................................18, 19

*Hernández-Gotay v. United States*, 985 F.3d 71 (1st Cir. 2021)...................................................16

*Hilsinger Co. v. FBW Investments*, 109 F. Supp. 3d 409 (D. Mass. 2015) ....................................9

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) .....................................................................20

*In re Neurontin Marketing and Sales Prac. Litig.*, 712 F.3d 21 (1st Cir. 2013) ..........................17

*In re Ranbaxy Generic Drug Application Litig.*, No. 19-md-02878-NMG, 2021 WL 5493675 (D. Mass. Nov. 22, 2021)....................................................................................................................17

*Katz v. Spiniello Companies*, 244 F. Supp. 3d 237 (D. Mass. 2017) ......................................12, 13

*Knox v. MetalForming, Inc.*, 914 F.3d 685 (1st Cir. 2019)............................................................3

*Lewis v. Dimeo Const. Co.*, No. 14-cv-10492-IT, 2015 WL 3407605
(D. Mass. May 27, 2017)................................................................................14

*Lorenzen v. Toshiba American Information System, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL
5051175 (D.R.I. 2021).....................................................................................5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................16

*Luxottica Group, S.p.A. v Lee*, 2021 WL 3116171 (D. Mass. 2021) ...........................15

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) .............................................................16

*Massachusetts v. U.S. Dep't of Health and Human Services*, 923 F.3d 209 (1st Cir. 2019) ........16

*Mateo v. University System of New Hampshire*, No. 18-11953-FDS,
2019 WL 199890 (D. Mass. Jan. 14, 2019)...........................................................9, 10

*Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87 (D. Mass. 2018)...........................................11, 14

*Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996)..................................9, 11, 14

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978)............................................11

*Prescott v. Slide Fire Solutions LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019) ...............................20

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994).............................................................13, 14

*Rickman v. BMW of North America LLC*, 538 F. Supp. 3d 429 (D.N.J. 2021)...........................5

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995)................................................passim

*Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17 (1st Cir. 2018) ......................3

*Smith & Wesson Corp. v. City of Gary*, 875 N.E. 2d 422 (Ind. Ct. App. 2007)...........................20

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019)...................................passim

*State v. Guinn*, 537 N.E.2d 656 (Ohio 1989) .............................................................21

*Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182 (D. Mass 2012) ........15

*Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962 (1st Cir.1997)............................................15

*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)..................................9, 12

*U.S. v. Swiss Am. Bank, Ltd.*, 274 F. 3d 610 (1st Cir. 2001) ..........................................15

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992)..........................................................................3

*Weaver's Cove Energy, LLC v. R.I. Coastal Resources Manag. Council*, 589 F.3d 458 (1st Cir.
2009).....................................................................................................17

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...........................................15

**Statutes**

15 U.S.C. § 7903 .........................................................................................21

28 U.S.C. § 1332(a)(4) (1976 ed.) ........................................................................11

Conn. Gen. Stat. §§ 42-110 et seq. ......................................................................1

**Other Authorities**

Dan B. Dobbs, *The Law of Torts* § 174 (2000) .............................................................................8

**INTRODUCTION**

Plaintiff Estados Unidos Mexicanos ("the Government") submits this opposition to the separate motion to dismiss filed by Colt's Manufacturing Company LLC ("Colt") based on an asserted lack of personal jurisdiction and lack of standing and failure to state a claim under the Connecticut Unfair Trade Practices Act ("CUTPA").[1] For background facts, we refer to the Government's opposition to the joint motion to dismiss.

Colt's motion to dismiss on personal jurisdiction grounds is founded on a misreading of the Complaint and the law. It concedes the "purposeful availment" requirement, as it must. Colt is a national firearms manufacturer based in Connecticut that does business throughout the United States, including very substantial business in Massachusetts. Colt intentionally directed its commercial activities to this forum by regularly advertising and selling its guns here. Colt contends that its sales into Massachusetts are "lawful," but this directly contradicts the Complaint's allegation that Colt imposes its unlawful distribution policies on gun distributors (wholesalers) and dealers in Massachusetts.[2] These include Defendant Interstate Arms, a distributor, and 35 authorized dealers.

Colt disputes the "arises from or relates to" due-process requirement primarily by again denying the Complaint's allegations, specifically that Colt's policies for Massachusetts distributors and dealers resulted in guns that Colt sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government

---

[1] Conn. Gen. Stat. §§ 42-110 et seq.

[2] Compl. ¶ 42.

complains."[3] The denial is improper on a motion to dismiss, but in any event is refuted by the accompanying expert report showing that tens of thousands of Colt's guns have been trafficked from Massachusetts into Mexico. Colt also seeks to apply a strict causation or proximate-cause requirement that is inconsistent with the Supreme Court's recent decision in *Ford*, which made clear that 'arise out of *or relate to*'—is disjunctive" and rejected the notion that a strict causal relationship is necessary.[4]

Colt also challenges two of the "gestalt factors," but ignores that Massachusetts has a strong interest in assuring that Colt and other gun manufacturers properly monitor and discipline their Massachusetts distributors and dealers. Moreover, litigating here provides the Government the convenience of a single forum without imposing any constitutionally significant burden on Colt. Avoiding piecemeal litigation also serves judicial economy, ensuring both an efficient and consistent resolution of the Government's claims. Lastly, the Government and the United States share an interest in curtailing the unlawful gun trafficking. The Government's ability to seek redress for injuries caused by Defendants' negligence in a single forum is an important policy consideration that further weighs in favor of the Court exercising jurisdiction. Given the centrality of Massachusetts in the gun industry, this is a sensible place for this litigation.

Colt's motion to dismiss the CUTPA claim, which is based on Colt's inflammatory marketing of its weapons for military-style use, is inconsistent with the Connecticut Supreme

---

[3] *Id.* This paragraph of the Complaint specifically discusses sales from Colt to Interstate Arms, but others refer to distributors and dealers generally (e.g., *id.* ¶¶ 43, 193-95), and the Complaint alleges that the "claims arise out of Defendants' contacts with Massachusetts [and] the Government's claims relate to those contacts" (*id.* ¶ 44).

[4] *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021).

Court's decision in *Soto v. Bushmaster Firearms Int'l, LLC*,[5]  which recognized that such claims are actionable and not inconsistent with PLCAA or the First Amendment. Colt's Article III causation argument fails largely for the same reasons as the Defendants' argument in their joint motion. And Colt's proximate cause argument is based on a misreading of *Soto*.

Accordingly, as set forth in detail below, Colt's motion to dismiss is meritless and should be denied.

## ARGUMENT

### I.   THE EXERCISE OF PERSONAL JURISDICTION OVER COLT ADHERES TO DUE PROCESS.

The First Circuit has synthesized the requirements for establishing specific jurisdiction consistent with due process as follows:

> [P]laintiffs seeking to establish that a court has specific personal jurisdiction over a defendant must show that: (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction.[6]

Stated differently, "the constitutional analysis … has three components: relatedness, purposeful availment, and reasonableness."[7] This inquiry is "highly fact specific."[8] And "the test is 'not susceptible of mechanical application; rather, the facts of each case must be weighed.'"[9]

---

[5] 202 A.3d 262 (Conn. 2019), *cert denied sub nom. Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019).

[6] *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)).

[7] *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019).

[8] *Id*.

[9] *Id*. (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)).

As set out below, the exercise of specific jurisdiction over Colt comports with each of these requirements.

### A.  Colt purposefully availed itself of the privileges of doing business in Massachusetts.

There is no doubt that Colt purposefully avails itself of the privilege of doing business in Massachusetts.[10] It regularly advertises and sells its guns here.[11] It has 35 authorized dealers here,[12] and it distributes guns through wholesaler Interstate Arms, based in Billerica.[13] Its advertising here includes the type of inflammatory promotion that encourages unlawful use of its guns,[14] for example marketing its Colt M4 Carbine as "shar[ing] many features of its combat-proven brother, the Colt M4"[15] and labelling its civilian assault rifle "Trooper."[16] Consequently, Colt does not contest this part of the due-process analysis.

### B.  The Government's claims arise out of or relate to Colt's forum contacts.

"The relatedness standard is a 'flexible, relaxed standard,'… which focuses on the 'nexus between the defendant[s'] contacts and the plaintiff's cause of action.'"[17] The Supreme Court recently "emphasized that the classic formulation of the constitutional relatedness inquiry—

---

[10] *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 61 (1st Cir. 2002) (citation omitted).

[11] Declaration of Nicholas W. Shadowen ("Shadowen Decl."), ¶ 9.

[12] *Id.* ¶ 9(a).

[13] *Id.* ¶ 10. Interstate Arms describes itself as a seller of, among other things, "military-style weapons." *Id.* ¶ 18(b).

[14]  *Id.* ¶ 9(c)-(f); *see* Compl. ¶ 104, 348-352, 542-548.

[15] Shadowen Decl. ¶ 9(f).

[16] *Id.* ¶ 9(e).

[17] *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (citations omitted).

'arise out of *or relate to*'—is disjunctive" and rejected the notion that a "'strict causal relationship' is necessary." [18] As explained in *Ford*, "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[19] The Court further observed that, while "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum, . . . we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."[20]

Colt pays lip service to *Ford*, acknowledging that "a strict causal relationship" is not required, but still founds it argument on a causation analysis.[21] Indeed, Colt seeks to apply a proximate-cause requirement, which is especially untenable after *Ford*.[22] Post-*Ford*, the law is that "[a]bsent causation, specific jurisdiction exists if there is 'an affiliation between the forum

---

[18] *Chouinard v. Marigot Beach Club and Dive Resort*, No. 20-10863-MPK, 2021 WL 2256318, at *8 (D. Mass. June 3, 2021) (quoting *Ford*, 141 S. Ct. at 1026) (emphasis original); *see also Lorenzen v. Toshiba American Information System, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175, at *1 (D.R.I. 2021) ("The *Ford Motor* case expanded the constitutional reach of personal jurisdiction … .").

[19] *Ford*, 141 S. Ct. at 1026.

[20] *Id*.

[21] Colt Mem. 6.

[22] *E.g.*, *Deemac Services, LLC v. Republic Steel*, 2021 WL 2018716, *8 (W.D. Pa. May 20, 2021) (direct causal connection not required after *Ford*); *Rickman v. BMW of North America LLC*, 538 F. Supp. 3d 429, 441-42 (D.N.J. 2021) (collecting cases in which district courts have held that *Ford* voided their Circuit's causation requirement). Moreover, Colt cannot hide behind its distribution chain to avoid jurisdiction—arguing the connection between its forum contacts and Plaintiff's claims is too attenuated and indirect —when it controls, supplies, and directs that chain.

and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[23]

Colt imposes its unlawful distribution policies on its 35 gun dealers, and its large national distributor Interstate Arms, in Massachusetts.[24] Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[25] Colt's large Massachusetts distributor sells Colt's guns to Colt's authorized dealers across the country.[26] Consequently, the unlawful distribution policies that Colt imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

More specifically, the Complaint alleges that the policies that Colt imposes on Massachusetts distributors and dealers resulted in guns that Colt sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[27] The foundation of Colt's motion to dismiss is based on a purported lack of personal jurisdiction and is a factual denial of that allegation.[28]

The Government therefore offers the Expert Report of Lucy P. Allen, an economist at the international consulting firm NERA Economic Consulting and a former member of the Council

---

[23] *Adams v. Gissell*, 2021 WL 2786277, at * 9 n.13 (D. Mass. May 24, 2021) (quoting *Ford*, 141 S. Ct. at 1025).

[24] Shadowen Decl. ¶ 9(a); Compl. ¶ 42.

[25] For example, Defendant Ruger's public filings state that it makes 90% of its sales to wholesalers. Shadowen Decl. ¶ 15(b)(ii).

[26] *Id*. ¶ 18(a).

[27] Compl. ¶ 42.

[28] Colt Mem. 2 ("Indeed, while the Complaint contains references to specific Colt firearms that have been recovered in Mexico, at no point does the Complaint allege that any such specifically identified firearm has any connection to Witmer, much less to Massachusetts.").

of Economic Advisers for Presidents George H.W. Bush and Bill Clinton.[29] Among other qualifications, she has been "qualified as an expert and testified in court on various economic and statistical issues relating to firearms, including the flow of firearms into the criminal market and analyses of data on firearm traces from the ATF."[30]

The ATF traces crime guns from the last purchaser back up through the chain of distribution to the dealer and the distributor.[31] The last set of that data that is publicly available shows the percentage of Colt crime guns recovered in Mexico that were traced to Massachusetts.[32] Ms. Allen applies that percentage to estimates of the total number of guns trafficked into Mexico in the period 2011 – 2020, yielding an estimate of the number of Colt guns trafficked from Massachusetts to Mexico.[33]

The total number of guns annually trafficked from the United States to Mexico will be the subject of fact and expert discovery later in this litigation. Assuming that the total number is 200,000 annually, Ms. Allen estimates that the number of Colt guns trafficked from Massachusetts to Mexico from 2011 to 2020 is in excess of 16,400.[34] Assuming the total number is 730,000 instead of 200,000, she estimates that the number of Colt guns trafficked from Massachusetts to Mexico in that period is 59,900.[35]

---

[29] Shadowen Decl., Ex. 1, Expert Report of Lucy Allen ("Allen Report"), at ¶ 6.

[30] Allen Report ¶ 5.

[31] Compl. ¶ 92.

[32] Allen Report ¶ 15.

[33] Her number is conservative because the percentage of U.S. retail guns sales made in Massachusetts has increased substantially in recent years. *Id*. ¶ 18.

[34] *Id*. ¶ 19, Chart, Column 3.

[35] *Id*. ¶ 19, Chart, Column 4.

Moreover, the relatedness requirement would be met even without this dispositive allegation and compelling proof. Colt imposed its policies and practices on distributors nationwide. Its active indifference to the illegal distribution of its weapons in other U.S. states combines with its negligence in Massachusetts to inflict an indivisible injury[36] on the Government. This ongoing, in-forum contribution to Colt's longstanding head-in-the-sand approach sufficiently relates to the Government's claims.[37]

### C.  This Court's exercise of jurisdiction over Colt is reasonable.

"[The] concepts of reasonableness must illuminate the minimum contacts analysis."[38] To guide the reasonableness inquiry and determine whether the exercise of jurisdiction "comport[s] with fair play and substantial justice," the Court considers the five "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.[39]

---

[36] *Cf. Chao v. Ballista*, 806 F. Supp.2d 358, 378 n.6 (D. Mass. July 28, 2011) ("Where . . . injury is indivisible, the defendants are joint and severally liable for the harm—even where they did not act in concert"); Dan B. Dobbs, *The Law of Torts* § 174, at 423 (2000) ("When the plaintiff presents evidence that she suffered a single indivisible injury at the hands of two or more tortfeasors, the burden is shifted to the tortfeasors to show that the plaintiff suffered separable injuries and that they can be apportioned and attributed separately to the different tortfeasors.").

[37] *See Branch Metal Processing, Inc. v. Boston Edison Co.*, 952, F. Supp. 893, 910 (D. R. I. 1996) ("[defendant's] election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment"); *see also Bobzien v. Philip Morris USA Inc.*, No. 5:20-cv-328-RH-MJF, 2021 WL 4147011, at *2 (N.D. Fla. June 16, 2021) ("On a claim of personal injury to a single plaintiff resulting from long exposure to tobacco smoke . . . [i]f the defendant provided some of the tobacco in the forum, and that tobacco contributed to the plaintiff's indivisible injuries, the court has personal jurisdiction over the defendant for the whole claim").

[38] *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995).

[39] *Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61, 73 (D. Mass. 2013) (Saylor, J.) (citing *Sawtelle*, 70 F.3d at 1394).

Notably, "[t]hese factors are 'not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice.'"[40] And where the plaintiff—as is the case here—has established "relatedness" and "purposeful availment," a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[41] Colt has not done so. Instead, these factors demonstrate that compelling Colt to appear in Massachusetts is fair and reasonable.

### 1.     Defendant's burden of appearing in Massachusetts

"For this particular factor to have any significance, 'the defendant must demonstrate that [the] exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'"[42] Colt is a large national corporation with its principal place of business in Connecticut and it would not incur a constitutionally significant burden appearing before this Court.[43] Indeed, Colt has made no attempt to suggest otherwise. It merely

---

[40] *Mateo v. University System of New Hampshire*, No. 18-11953-FDS, 2019 WL 199890, at *6 (D. Mass. Jan. 14, 2019) (Saylor, J.); *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994).

[41] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Ticketmaster*, 26 F.3d at 210 ("the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness").

[42] *Hilsinger Co. v. FBW Investments*, 109 F. Supp. 3d 409, 429 (D. Mass. 2015) (Saylor, J.) (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996)); *Mateo*, 2019 WL 199890, at *6.

[43] *See Adams v. New England Scaffolding, Inc.*, 2016 WL 6514090, at *4 (D. Mass. Oct. 28, 2016) (Saylor, J.) ("[Defendant] does not—nor could it—contend that the burden of appearing in Massachusetts is significantly more onerous than the burden of appearing in Connecticut"). Certainly, this forum is more convenient to Colt who is at home in Connecticut, than appearing in California, Arizona, or Texas, from where its weapons were directly trafficked to Mexico.

gestures at an argument that the absence of burden is excused because the injuries here occurred in Mexico,[44] but that is a non-sequitur. This factor therefore favors a finding of reasonableness.[45]

### 2.      Forum state's adjudicatory interest

"[T]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest."[46] Here Massachusetts has a strong interest in assuring that gun manufacturers properly monitor and discipline in-state wholesalers and dealers.

Colt argues that Massachusetts has no interest in adjudicating the Government's claims because the Complaint purportedly does not allege any "illegal" sales by Colt into, or by Interstate Arms out of, Massachusetts,[47] and because the injury occurred outside the forum.

Colt's argument fails at the outset because, as noted in detail above, the Complaint alleges, and the facts show, that Colt's unlawful distribution policies resulted in its guns being trafficked from Massachusetts to Mexico.

Moreover, a plaintiff's non-residency does not necessarily weigh against reasonableness, especially here. True, the caselaw that Colt cites[48] recognizes Massachusetts' interest in providing its citizens a convenient forum to assert their claims. But that does not proscribe the sufficiency of other forum interests, like requiring out-of-state manufacturers to monitor and discipline their in-state distributors and dealers.

---

[44] Colt Mem. 9.

[45]  *See Mateo*, 2019 WL 199890, at *6 (absence of constitutionally significant burden "favors a finding of reasonableness"); *Adams*, 2016 WL 6514090, at *4 (same).

[46] *Sawtelle*, 70 F.3d. at 1395 (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 151 (1st Cir.1995)) (emphasis original).

[47] Colt Mem. 8-9.

[48] Colt Mem. 8.

Here the plaintiff is a foreign sovereign and thus a citizen of no U.S. forum. Conditioning forum interest in a suit brought by a foreign nation on residency in the forum state would make no sense and would contravene law permitting a foreign state to "prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do."[49]

That the injury occurred elsewhere also does not preclude forum interest. Even while recognizing that a forum state's interest is diminished in these circumstances, courts have nevertheless found sufficient forum sufficient to favor the exercise of jurisdiction. In *Nowak*, the First Circuit held that "[w]hile it is true that the injury in this case occurred [in another country], it is equally true (unlike *Sawtelle*) that significant events took place in Massachusetts giving it an interest in this litigation."[50]

Here, as in *Nowak*, "[Colt] solicited business in the state."[51] But more than that, Colt "impos[ed] policies and practices by which it sells its guns to Interstate Arms in [Massachusetts] and by which Interstate Arms must sell those guns to dealers through the U.S."[52] These policies—imposed by Colt in Massachusetts—are at the heart of the Government's allegations regarding Colt's illegal conduct. Massachusetts most assuredly has a strong interest in precluding out-of-state gun manufacturers from implementing policies and practices within its border that

---

[49] *See Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318-19 (1978) (citing 28 U.S.C. § 1332(a)(4) (1976 ed.)).

[50] 94 F. 3d at 718; *see also Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87, 98 (D. Mass. 2018) ("Although the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute.").

[51] *Id*.

[52] Compl. ¶ 42.

facilitate the illegal trafficking of firearms into Mexico. This interest favors the adjudication of these claims in Massachusetts.

### 3.    The Government's interest in obtaining convenient relief

Regarding the plaintiff's interest in obtaining convenient and effective relief, the First Circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."[53] Plaintiff is entitled to this deference regardless of whether it is a citizen of Massachusetts.[54] "[J]udicial second guessing" of a plaintiff's choice of forum is improper for courts considering jurisdictional issues unless "the plaintiff's supposed convenience 'seems to be . . . a makeweight,' contrived purely for strategic advantage."[55]

The Government chose to litigate at the center of the gun-manufacturing industry and in the home of one of the principal gun manufacturers and two significant gun distributors. This

---

[53] *Sawtelle*, 70 F.3d at 1395.

[54] Colt argues that "[w]hile courts will generally give some deference to a plaintiff's choice of forum, this is not true when the plaintiff is not a citizen of the forum state." Colt Mem. 9 (citing *Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 248 (D. Mass. 2017)). This is not what *Katz* held. The district court in that case afforded deference to the plaintiff's choice of forum, regardless of the fact that the plaintiff was not a citizen of Massachusetts. *Id.* at 248, 251. Plaintiff's lack of citizenship weighed against reasonableness with respect to one of the defendants because in addition to not being a resident, none of the alleged wrongful conduct occurred in Massachusetts, nor did it cause injury to any of its citizens. *Id.* at 248. Indeed, the Court had already determined that Plaintiff failed to meet both the "relatedness" and "purposeful availment" prongs for establishing specific jurisdiction for that defendant. *Id.* at 245-248. But, where this was not the case concerning another defendant, the court held, "the [non-resident] plaintiffs' choice of forum must be accorded a degree of deference, and so the plaintiffs' interest in obtaining convenient and effective relief also supports the Court exercising jurisdiction." *Id.* at 251 (internal quotations and citations omitted).

[55] *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995) (quoting *Ticketmaster*, 26 F.3d at 211).

Court can grant the injunctive relief that is necessary to stop the flood of Defendants' crime guns into Mexico.

The Government also sued Colt here so that the Government can pursue its claims against all Defendants in one jurisdiction, instead of filing parallel litigation in multiple forums. "[P]laintiff's best option for convenient and efficient resolution of this matter is to have all [eight] defendants present in the same forum."[56] Indeed, the Court has previously recognized that this factor favors reasonableness where dismissal would result in "the plaintiff . . . hav[ing] to commence parallel litigation in another forum."[57]

Despite clear precedent to the contrary, Colt nevertheless argues that the existence of personal jurisdiction over other defendants in the forum should not influence this Court's analysis of the third gestalt factor.[58] Once again, Colt misreads *Katz*. The district court there did not, as Colt suggests, bar taking into account the plaintiff's convenience in avoiding piecemeal litigation.[59] It simply held that, in light of the other compelling reasons for questioning the convenience of plaintiff's choice of forum, the ability to sue all defendants in a single forum did not "tip the scales in favor of the Plaintiffs under this prong."[87] Here, in stark contrast, substantial connections exist among Colt, other Defendants, the Government's claims, the

---

[56] *See Composite*, 988 F. Supp. 2d at 73.

[57] *Id*.; *see also Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994) (noting under this factor "the enormous inconvenience that might result from forcing Pritzker to sue elsewhere—theoretically, in every jurisdiction in which a financier is located—despite ongoing litigation in a forum-based court.").

[58] Colt Mem. 9 (citing *Katz*, 244 F. Supp. 3d at 249).

[59] Indeed, the *Katz* court later expressly acknowledged First Circuit precedent "recogniz[ing] that the interest of judicial economy 'counsels against furcation of a dispute among several different jurisdictions.'" *Katz*, 244 F. Supp. 3d at 251 (quoting *Pritzker*, 42 F. 3d at 64).

Government's injuries, and this forum. The Government's interest in litigating in a single forum "tips the scales" decisively in its favor on this prong.

### 4.      Administration of justice

The judicial system's interest in obtaining the most effect resolution of the controversy is "[u]sually . . .  a wash,"[60] but the administration of justice "counsels against furcation of the dispute among several different jurisdictions."[61] "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."[62] Courts have thus consistently found the fourth gestalt factor weighs in favor of exercising jurisdiction when doing so will avoid piecemeal litigation.[63] Massachusetts is therefore the most efficient and effective forum for Plaintiff to litigate its claims.[64]

---

[60] *Nowak*, 94 F.3d at 718.

[61] *Moura v. New Prime, Inc.,* 337 F. Supp. 3d 87, 99 (D. Mass. 2018) (quoting *Pritzker*, 42 F.3d at 64); *see also Bartow v. Extec. Screen and Crushers, Ltd.*, 53 F. Supp. 2d 518, 528 (D. Mass. 1999) ("Generally, this factor is a wash, unless the Court perceives the threat of piecemeal litigation").

[62] *Id*. (quoting *Pritzker*, 42 F.3d at 64).

[63] *See, e.g., id*. (because of the possibility that piecemeal litigation would result if the court did not assert jurisdiction, "the most efficient resolution of this litigation is likely in the Commonwealth"); *Composite,* 988 F. Supp. 2d at 73 (the justice system has an interest in having "all three defendants present in the same forum" because "[i]f defendants . . . are dismissed, plaintiff will have to commence parallel litigation in another forum"); *Lewis v. Dimeo Const. Co.*, No. 14-cv-10492-IT, 2015 WL 3407605, at *6 (D. Mass. May 27, 2017) ("insofar as this factor favors either party, it supports hearing this case in Massachusetts so as to avoid the possibility of piecemeal litigation").

[64] Notably, other than a cursory reference precedent recognizing that "[u]sually this factor is a wash," Colt does not address this factor and certainly makes no attempt to argue that this factor counsels against the exercise of jurisdiction. Colt Mem. 9 (citing *Nowak*, 94 F.3d at 718).

### 5.    Pertinent policy arguments

For the final "gestalt" factor, the Court "consider[s] the common interests of all sovereigns in promoting substantial social policies."[65] The United States and Mexico share an interest in ensuring that firearms manufactured and distributed in the United States are not trafficked into Mexico. The Government's ability to seek efficient and effective redress in a convenient forum weighs in favor of jurisdiction, especially where litigating here does not burden Colt.[66]

### D.  In the Alternative, the Government Requests Jurisdictional Discovery.

The Government has satisfied its burden of establishing a prima facie case of personal jurisdiction over Colt. But should the Court require more, the Government respectfully requests the opportunity to conduct jurisdictional discovery. "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."[67] In determining whether the Government has "diligently made out a 'colorable case' of personal jurisdiction, the Court must determine if [it] ha[s]

---

[65] *Sawtelle*, 70 F. 3d at 1395.

[66] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 308-312 (1980) (Brennan, J., dissenting) (suggesting that the concept of long-arm jurisdiction must adjust as technological advances blur boundaries between states, and litigation in a "foreign" state no longer inconveniences a defendant as it did "long ago when communication and travel over long distances were slow and unpredictable and when notions of state sovereignty were impractical and exaggerated").

[67] *Luxottica Group, S.p.A. v Lee*, 2021 WL 3116171, at *3 (D. Mass. 2021) (quoting *Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962, 964 (1st Cir.1997)).

presented facts to the court which show why jurisdiction would be found if discovery were permitted."[68]

Discovery from Colt, the other Defendants, and major distributors would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to distributors, those distributors' sales to dealers throughout the nation, and similar information.

## II.   THE GOVERNMENT HAS STANDING TO ASSERT A CUTPA CLAIM AGAINST COLT AND HAS SUFFICIENTLY STATED A CLAIM.

### A.  The Government Has Standing to Assert Its CUTPA Claim Against Colt.

Colt contends that the Government has failed to sufficiently allege causation for purposes of Article III standing, but its challenge is premised on its erroneous, overly strict standards for causation and plausibility. As set forth in the Government's Opposition to the Joint Motion,[69] "even an identifiable trifle . . . is enough to confer standing,"[70] and it is sufficient that Colt's violation of CUTPA "contributes to [the Government's] injuries,"[71] even if there are other contributing factors.[72] Moreover, "'[a]t the pleading stage, general factual allegations of injury

---

[68] *Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182, 192 (D. Mass 2012) (Saylor, J.) (quoting *U.S. v. Swiss Am. Bank, Ltd.*, 274 F. 3d 610, 626 (1st Cir. 2001)).

[69] *See* Opp. Jt. Mem. 30-33.

[70] *Massachusetts v. U.S. Dep't of Health and Human Services*, 923 F.3d 209, 222 (1st Cir. 2019) (cleaned up).

[71] *Massachusetts v. E.P.A.*, 549 U.S. 497, 523 (2007).

[72] *Id.* Further, it is sufficient that Colt's violation "threatens" the Government with injury. *See Hernández-Gotay v. United States*, 985 F.3d 71, 77 (1st Cir. 2021) (plaintiff must allege it "has suffered an actual *or* threatened injury in fact, which is . . . fairly traceable to the statute") (internal quotation marks omitted)(emphasis added).

resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'"[73]

The Complaint plausibly pleads causation. It alleges that Colt recklessly markets its guns as military-style assault weapons knowing that these are the cartels' weapons of choice.[74] It markets a 'civilian' assault rifle as the 'Trooper' and touts that another 'shares many features of its combat-proven brother' and enables the consumer to 'accomplish any mission.'"[75] Colt has known for decades that these are precisely the types of weapons coveted by the cartels and trafficked into Mexico.[76] The illegal trafficking of these weapons and the subsequent harm to the Government are foreseeable consequences of Colt's reckless advertising. "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, the burden shifts to the defendant to rebut this causal inference."[77]

Colt asserts, without authority, that the Government's allegations are insufficient because they do not claim that any criminals in Mexico "ever saw a Colt advertisement or took any action as [a] result."[78] But the Government "need not show that 'the defendant's actions are the very

---

[73] *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (other internal quote marks omitted).

[74] Compl. ¶¶ 319-322; 333-340.

[75] *Id*. ¶ 325; Shadowen Decl. ¶¶ (9)(e)-(f)

[76] Compl. ¶¶ 335, 337-40.

[77] *In re Neurontin Marketing and Sales Prac. Litig.*, 712 F.3d 21, 45 (1st Cir. 2013) (internal quotation omitted); *see In re Ranbaxy Generic Drug Application Litig.*, No. 19-md-02878-NMG, 2021 WL 5493675, at *4 (D. Mass. Nov. 22, 2021) (same, on summary judgment).

[78] Colt Mem. 11. Contrary to Colt's suggestion, the Government is also not limited, in proving its marketing claims, to the illustrative examples of advertising in the Complaint.

last step in the chain of causation' for the injury,"[79] or that the defendant's conduct is the sole cause of the injury.[80] The Complaint alleges that the cartels in effect go shopping for Colt guns in the United States, searching for the very military attributes that Colt advertises.[81] Colt even sells a specially-designed Emiliano Zapata handgun that was used to kill a Mexican journalist.[82] This easily alleges that Colt's advertising and marketing strategies contributed to the unlawful and dangerous misuse of its products by the cartels and threatens to continue to do so in the future.

### B. Proximate Cause Is Not Precluded.

Colt argues that *Ganim v. Smith & Wesson Corp.*[83] automatically precludes a finding of proximate cause under CUTPA for governmental plaintiffs.[84] But that reading of *Ganim* is far too broad. *Ganim* did find that municipal harms were too indirectly linked to advertising to allow a CUTPA claim.[85] However, although there were some allegations that relevant advertising irresponsibly "targeted" and "encouraged" a class of dangerous criminals, the plaintiff's primary theory was that the advertising deceptively hid the risks of handgun ownership, such as accidental shootings.[86] *Ganim* did not seriously engage with or evaluate the theory that *promoting unlawful misuse* of firearms could be foreseeably linked to municipal harms stemming

---

[79] *Weaver's Cove Energy, LLC v. R.I. Coastal Resources Manag. Council*, 589 F.3d 458, 467 (1st Cir. 2009) (quoting *Bennett*, 520 U.S. at 169).

[80] *See* Opp. Jt. Mtn 32.

[81] *See, e.g.,* Compl. ¶ 545 ("Colt knew that its marketing and advertising would attract persons and organizations that intended to use Colt's products to battle against the military and police, including the military and police in Mexico."); *id.* ¶¶ 546-547.

[82] Compl. ¶ 215-217.

[83] 780 A.2d 98 (Conn. 2001).

[84] Colt Mem. 11-14.

[85] 780 A.2d at 134.

[86] *Id.* at 113; *see id.* at 108-112.

from gun crimes. In fact, the *Ganim* court's general summary of the allegations in the complaint *did not even mention* allegations that the advertising aimed to induce unlawful uses of firearms.[87] As *Soto* correctly observed, "[a] claim that a defendant's advertisements unethically promote illegal conduct is fundamentally different from one alleging false or misleading advertising."[88] While *Soto* distinguished *Ganim* because, unlike in *Ganim*, the plaintiffs were "direct victims" of the violence caused by advertising,[89] it did not, as Colt seems to assert, categorically hold that a municipal plaintiff could never establish harm proximately caused by a CUTPA violation where the advertising actively induced unlawful firearms violence. Indeed, the Government here *is* a direct victim of the violence promoted by Colt's marketing insofar as it suffered physical damage to its property and its personnel.[90]

### C.  PLCAA Does Not Preclude the Government's CUTPA Claim.

PLCAA's predicate exception removes protection for knowing violations of all laws "applicable to the sale or marketing of firearms," not just those that specifically address guns. These "applicable" statutes include CUTPA.

*Soto* expressly rejected Colt's narrow construction, holding that "[i]f Congress had intended to limit the scope of the predicate exception to violations of statutes that are *directly,*

---

[87] *See id*. at 108-112 (but describing, in depth, the deception theory).

[88] 202 A.3d at 291.

[89] *Id.* at 290-91.

[90] Compl. ¶¶ 458-464. *Cf. Ganim*, 780 A.2d at 117-18 (alleged harms "do not involve injuries such as physical damage to municipal personal or real property" but instead only "general harms to the municipal polity"). Colt also suggests that *Soto* supports its position because in that case the motivation of a single individual could be probed more easily than the motivations of myriad criminal actors who used Colt products in crimes in Mexico. Colt Mem. 13. This argument overlooks that the shooter in the *Soto* litigation was *dead*. Proving causation may well be easier in this case as it involves the impact on a whole class of violent actors and may be assessed through economic techniques.

*expressly*, or *exclusively* applicable to firearms . . . it easily could have used such language, as it has on other occasions."[91] PLCAA contains no such limitation. The Court of Appeals of Indiana similarly held—twice—that violating a state public nuisance law is a predicate violation, even though the law is not firearms-specific.[92]

Even Colt's primary authorities refute its position. The Second Circuit in *City of New York v. Beretta U.S.A. Corp.*[93] "agree[d] with the [lower court's] rejection of the . . . argument that the predicate exception is necessarily limited to statutes that expressly regulate the firearms industry."[94] *Ileto v. Glock, Inc.*[95] concurred, noting that the exception encompasses "statutory violations concerning firearm regulations *or sales and marketing regulations*."[96] Unlike the statutes that *City of New York* and *Ileto* found insufficient to invoke the exception, CUTPA is specifically directed to "sales and marketing" activities and, thereby, falls within the predicate exception under Colt's own authorities. Other courts have held that state unfair trade practice laws like CUTPA satisfy the predicate exception.[97] And Colt has not cited—and the Government

---

[91] 202 A.3d at 302 (emphasis in original).

[92] *Smith & Wesson Corp. v. City of Gary*, 875 N.E. 2d 422, 434 (Ind. Ct. App. 2007); *City of Gary v. Smith & Wesson Corp.*, 126 N.E. 3d 813, 833-34 (Ind. Ct. App. 2019).

[93] 524 F.3d 384 (2d Cir. 2008), cited in Colt Mem. 14.

[94] 524 F.3d at 400.

[95] 565 F.3d 1126 (9th Cir. 2009), cited in Colt Mem. 14.

[96] *Id*. at 1137 (emphasis added).

[97] *Prescott v. Slide Fire Solutions LP*, 410 F. Supp. 3d 1123, 1138 (D. Nev. 2019) (Nevada deceptive trade practices law "specifically regulates the sale and marketing of goods"); *cf*. Shadowen Decl. Ex. 60, *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, 4-5 (Cal. Super. Ct. Jul. 2, 2021) (violating California unfair trade practices law is a predicate violation). Colt argues that *Soto* had no logical basis for limiting the predicate exception to only some generally applicable statutes, but not others. Colt Mem. 16. In fact, *Soto* identifies such a basis— that state statutes governing "sales and marketing" are within § 7903(5)(A)(iii)'s exception for statutes "applicable to the sale or marketing of" firearms. *See Soto*, A.3d at 311 n.57.

is not aware of—any case that has found that a similar statute that addresses sales and marketing is outside PLCAA's predicate exception.

That Congress included examples of statutes as possible foundations for a predicate violation[98] does not constrict the broad exception for statutes "applicable to the sales and marketing of" firearms. The non-limiting word "including" that precedes the examples makes clear that they are illustrative rather than exhaustive or restrictive. Nor does giving effect to the plain text render PLCAA's negligence per se exception surplusage. The two exceptions have different elements; for example, the predicate exception requires a "knowing" *mens rea,* whereas the negligence per se exception does not.

### D.  The First Amendment Does Not Preclude the Government's CUTPA Claim

Nothing in the First Amendment or the case law entitles firearms manufacturers to avoid liability under laws like CUTPA for directing their marketing to criminal actors. As *Soto* explained, "it is . . . well settled that commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the [F]irst [A]mendment."[99] The *Brandenburg* "incitement" test on which Colt relies[100] is not the test for imposing *civil liability* on c*ommercial* speech.[101]

---

[98] 15 U.S.C. § 7903(5)(A)(iii)(I-II).

[99] 202 A.3d at 311 n.56; *see also* Shadowen Decl. Ex. 60, *Goldstein*, No. 37-2020-00016638-CU-PO-CTL at 7 (same, collecting cases).

[100] Colt Mem. 19.

[101] *See, e.g., State v. Guinn*, 537 N.E.2d 656, 660 (Ohio 1989). Colt (Mem. 18) cites *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011), which struck down a California statute that totally banned the sale of violent video games to minors. A complete *statutory prohibition* on the sale of video games that are not, in and of themselves, instruments of violence and that have substantial expressive and artistic elements, is categorically different from imposing civil liability on reckless and inflammatory firearms marketing targeting the criminal firearms market.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant Colt's motion to dismiss in its entirety.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.

Dated:  January 31, 2022                    Respectfully submitted,

/s/ *Steve D. Shadowen*
Steve D. Shadowen (pro hac vice)
Richard M. Brunell (BBO# 544236)
Nicholas W. Shadowen (pro hac vice)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ *Jonathan E. Lowy*
Jonathan E. Lowy (pro hac vice)
BRADY
840 First Street, N.E. Suite 400
Washington, DC 20002
Phone: 202-370-8104
jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: January 31, 2022                      Respectfully Submitted,

                                             /s/ Steve D. Shadowen_____
                                             Steve D. Shadowen