**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

ESTADOS UNIDOS MEXICANOS,
    *Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
    *Defendants.*

Civil Action No. 1:21-CV-11269-FDS

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT GLOCK, INC.'s MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 4

ARGUMENT .............................................................................................................................. 7

I.  THE EXERCISE OF PERSONAL JURISDICTION OVER GLOCK
    ADHERES TO DUE PROCESS. ................................................................................... 7

    A.  Glock purposefully availed itself of the privileges of doing
        business in Massachusetts. ...................................................................................... 8

    B.  The Government's claims arise out of or relate to Glock's forum
        contacts. ................................................................................................................... 8

    C.  This Court's exercise of jurisdiction over Glock is reasonable. .......................... 12

        1.  Defendant's burden of appearing in Massachusetts ................................ 13

        2.  Forum state's adjudicatory interest ......................................................... 14

        3.  The Government's interest in obtaining convenient relief ..................... 16

        4.  Administration of justice .......................................................................... 18

        5.  Pertinent policy arguments ...................................................................... 19

II. IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS
    JURISDICTIONAL DISCOVERY ............................................................................. 20

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016) ................................................... 7

*Adams v. Gissell*, No. 20-cv-11366-PBS, 2021 WL 2786277 (D. Mass. May 24, 2021) ........ 8, 13

*Adelson v. Hananel*, 510 F.3d 43  (1st Cir. 2007) ............................................................... 4, 5, 7

*Bartow v. Extec. Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518 (D. Mass. 1999) ................... 17

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28 (1st Cir. 2016) ............ 5

*Bobzien v. Philip Morris USA, Inc.*, No. 5:20-cv-328-RH-MJF, 2021 WL 4147011 (N.D. Fla. June 16, 2021) .............................................................................................................. 11

*Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F. Supp. 893 (D.R.I. 1996) ............... 11

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) ....................................................................................................................... 3, 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................. 12

*Chao v. Ballista*, 806 F. Supp. 2d 358 (D. Mass. July 28, 2011) ............................................... 11

*Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318 (D. Mass. June 3, 2021) 8

*Cioffi v. Gilbert Enterprises, Inc.*, 971 F. Supp. 2d 129 (D. Mass. 2012) .................................... 4

*Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61 (D. Mass. 2013). 12, 16, 18

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .............................................................................. 6

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002) ....... 4

*Fidrych v. Marriot International, Inc.*, 952 F.3d 124 (4th Cir. 2020) .......................................... 6

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) ........... 3, 6, 8

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995) .................... 5, 16

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) ................................... 6

*Hernandez-Denizac v. Kia Motors Corp.*, 257 F.Supp. 3d 216 (D.P.R. 2017) ........................... 5

*Hilsinger Co. v. FBW Investments, LLC*, 109 F. Supp. 3d 409  (D. Mass. 2015) ....................... 13

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................................................... 6

*Katz v. Spiniello Companies*, 244 F. Supp. 3d 237 (D. Mass. 2017) .................................... 15, 17

*Knox v. MetalForming, Inc.*, 914 F.3d 685 (1st Cir. 2019) ........................................................ 7

*Lewis v. Dimeo Const. Co.*, No. 14-cv-10492-IT, 2015 WL 3407605, at *6 (D. Mass. May 27, 2015) ...................................................................................................................... 18

*Lorenzen v. Toshiba American Information Systems, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175 (D.R.I. 2021) ...................................................................................... 8

*Luxottica Group, S.p.A. v Lee*, No. 4:21-cv-10934-TSH, 2021 WL 3116171 (D. Mass. 2021)... 19

*Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998) ................... 5

*Mateo v. University System of New Hampshire*, 2019 WL 199890 (D. Mass. Jan. 14, 2019) 12, 13

*Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87 (D. Mass. 2018) ......................................... 14, 17

*Packs v. Bartle*, No. 18-cv-11496-ADB, 2019 WL 1060972 (D. Mass. Mar. 6, 2019) ................ 5

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978) ........................................................ 14

*Prep Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11 (1st Cir. 2019) .......................... 13

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994) ........................................................... 13, 16, 17

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) .............................................................. passim

*Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17 (1st Cir. 2018) ..................... 7

*Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182 (D. Mass 2012) ....... 19

*Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962 (1st Cir.1997) ........................................... 19

*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) .......................................... 12, 16

*U.S. v. Swiss Am. Bank, Ltd.*, 274 F. 3d 610 (1st Cir. 2001) ..................................................... 19

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080 (1st Cir. 1992) ............................................................................................................................... 7

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ........................................... 18

**Statutes**

28 U.S.C. § 1332(a)(4) (1976 ed.) ............................................................................................ 14

**Other Authorities**

Dan B. Dobbs, *The Law of Torts* § 174 (2000) ........................................................................ 11

*How to get FFL License in Massachusetts (MS)?*, FFL123.com, available at https://www.ffl123.com/how-to-get-ffl-in-massachusetts/#:~:text=As%20of%20June%202021%2C%20the,)%20being%20rabidly%20anti%2Dgun .................................................................................................................................. 2

**INTRODUCTION**

Plaintiff Estados Unidos Mexicanos ("the Government") submits this opposition to the separate motion to dismiss filed by Defendant Glock, Inc. ("Glock") based on an asserted lack of personal jurisdiction. For background facts, we refer to the Government's opposition to the joint motion to dismiss. Here, we address Glock's personal jurisdiction argument.

Massachusetts is the King of Guns[1] and is referred to as "Gun Valley."[2] It has been steeped in firearms manufacturing since 1777, when George Washington selected Springfield as the site for the nation's first arsenal.[3] Recent estimates show that Massachusetts accounts for one-quarter of all weapons manufactured in the United States, more than any other state.[4]

Massachusetts is home to Defendant Smith & Wesson[5] and two large, national gun wholesalers, Defendant Interstate Arms and Camfour, Inc. Interstate Arms, based in Billerica, is a "40+ year-old wholesaler distributor supplying licensed firearm dealers nationwide with firearms and related products."[6] The company describes itself as a seller of, among other things, "military-style weapons."[7] Camfour, Inc. ("Camfour") is another national distributor. Founded in Springfield, Massachusetts in 1952,[8] it touts that it "revolutionized" the gun industry with the

---

[1] Declaration of Nicholas W. Shadowen ("Shadowen Decl."), ¶ 20(c)(i).

[2] Shadowen Decl. ¶ 20(b).

[3] *Id.* ¶ 20(b)(i).

[4] *Id.* ¶ 20(c)(ii). In 2016, Massachusetts was ranked among the top 10 states for total economic output for arms and ammunition in the U.S.; *id.* ¶ 20(a)(iii).

[5] Compl. ¶ 31.

[6] Shadowen Decl. ¶ 20(b)(i).

[7] *Id.* ¶ 18(b).

[8] *Id.* ¶ 19(a)(i).

1

development of its online order software that "enabled independent shooting sports retailers to have instant access to a wealth of information, inventory and the ability to order 24 hours a day, 7 days a week."[9] The company is "consistently … ranked as one of the top 10 distributors in the industry."[10] Complementing its operations in Massachusetts is another Camfour distribution center outside Austin, Texas.[11]

There are also nearly 4,000 licensed gun dealers in Massachusetts.[12]

Glock is a national firearms manufacturer that does business throughout the United States, including very substantial business in Massachusetts.[13] Glock intentionally directed its commercial activities to this forum by regularly advertising and selling its guns here.[14] Glock imposes its unlawful distribution policies—the policies about which the Government complains—on gun distributors (wholesalers) and dealers in Massachusetts.[15] These include distributors Interstate Arms and Camfour, plus more than a dozen authorized Glock dealers.[16]

Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[17] Glock's large

---

[9] *Id.* ¶ 19(a)(iii).

[10] *Id.*

[11] *Id.* ¶ 19(a)(iv)-(v).

[12] Shadowen Decl. Ex. 52, *How to get FFL License in Massachusetts (MS)?*, FFL123.com, available at https://www.ffl123.com/how-to-get-ffl-in-massachusetts/#:~:text=As%20of%20June%202021%2C%20the,)%20being%20rabidly%20anti%2Dgun.

[13] *See infra* Section I(A).

[14] *See infra* Section I(B).

[15] Compl. ¶ 42.

[16] *See infra* Section I(B).

[17] *See id.*

Massachusetts distributors Interstate Arms and Camfour sell Glock's guns to Glock's authorized dealers throughout the nation.[18] Consequently, the unlawful distribution policies that Glock imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

Specifically, the Complaint alleges that Glock's policies for Massachusetts distributors and dealers resulted in guns that Glock sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[19] The Government's expert report on this issue establishes that in the last ten years approximately 2,200 to 8,200 of Glock's guns were trafficked from Massachusetts into Mexico.[20]

Glock's assertion that it is not subject to the personal jurisdiction of this Court is wrong. The Court has specific jurisdiction over Glock because due process dictates are satisfied. Glock unquestionably "deliberately reached out beyond its home" to "exploit[ ] a market in the forum State" and "enter[ ] a contractual relationship centered there."[21] And the Government's claims relate to and arise out of Glock's forum activities.[22]

---

[18] *See id.*

[19] Compl. ¶ 42. This paragraph of the Complaint specifically discusses sales from Glock to Interstate Arms, but others refer to distributors and dealers generally (e.g., *id.* ¶¶ 82, 121), and the Complaint alleges that the "claims arise out of Defendants' contacts with Massachusetts [and] the Government's claims relate to those contacts" (*id.* ¶ 44).

[20] *See infra* Section I(B).

[21] *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (internal quotations and citation omitted).

[22] *Id.* ("The plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum.") (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

Beyond Glock's sufficient contacts here, this Court's exercise of jurisdiction over Glock is entirely fair and reasonable. Massachusetts has a strong interest in assuring that Glock and other gun manufacturers properly monitor and discipline their Massachusetts distributors and dealers. Moreover, litigating here provides the Government the convenience of a single forum without imposing any constitutionally significant burden on Glock. Avoiding piecemeal litigation also serves judicial economy, ensuring both an efficient and consistent resolution of the Government's claims. Lastly, the Government and the United States share an interest in curtailing the unlawful gun trafficking. The Government's ability to seek redress for injuries caused by Defendants' negligence in a single forum is an important policy consideration that further weighs in favor of the Court exercising jurisdiction. Given the centrality of Massachusetts in the gun industry, this is a sensible place for this litigation.

Glock's attempt to avoid appearing in Massachusetts fails, and its motion should be denied. If, however, the Court were to harbor any doubt as to whether personal jurisdiction exists, the Government respectfully requests discovery on the issue.

## LEGAL STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'"[23] "Where, as here, a district court considers a motion to dismiss for lack of

---

[23] *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002)).

personal jurisdiction without first holding an evidentiary hearing, the *prima facie* standard governs its determination."[24]

The prima facie standard "requires no differential factfinding; rather . . . only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."[25] That is, this Court "must accept the plaintiffs (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."[26]

And "'[f]or the purpose of examining the merits of such a jurisdictional proffer,' the court considers 'the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts.'"[27] Properly documented facts proffered by Plaintiff must be accepted as true, "irrespective of whether the defendant disputes them" and must be "[construed] in the light most congenial to the plaintiff's jurisdictional claim."[28] Here, the Government has submitted

---

[24] *Cioffi v. Gilbert Enterprises, Inc.*, 971 F. Supp. 2d 129, 133-34 (D. Mass. 2012) (Saylor, J.) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)).

[25] *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016); *see also Adelson*, 510 F.3d at 48; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

[26] *Adelson,* 510 F.3d at 48.

[27] *Hernandez-Denizac v. Kia Motors Corp.*, 257 F.Supp. 3d 216, 220 (D.P.R. 2017) (quoting *Baskin-Robbins*, 825 F.3d at 34).

[28] *Adelson,* 510 F.3d at 48 (quoting *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998); *see also Packs v. Bartle*, No. 18-cv-11496-ADB, 2019 WL 1060972, at *3 (D. Mass. Mar. 6, 2019) ("The Court takes as true whatever properly documented facts plaintiffs proffer, construes those facts in the light most favorable to the plaintiffs, and considers facts put forward by defendants to the extent they are uncontradicted.").

the expert report of economist Lucy Allen in support of the Complaint's jurisdictional allegations.[29]

Due process requirements are satisfied when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[30] Personal jurisdiction may be general or specific.[31] The nature and quantity of forum-state contacts needed to satisfy due process differs depending on which of these is asserted over the defendant.[32] The Government contends that this Court has specific jurisdiction over Glock.

For a court to exercise specific jurisdiction, "'the suit' must 'aris[e] out of *or* relat[e] to the defendant's contacts with the forum."[33] "Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[34]

---

[29] To the extent the Government's proffer is deemed insufficient, it requests permission to conduct jurisdictional discovery as set forth below. *See infra* Section II.

[30] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quotations omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Glock does not assert a lack of personal jurisdiction under Massachusetts's long-arm statute. *See* Glock Mem. 7.

[31] *Bristol-Myers*, 137 S.Ct. at 1779-80.

[32] *Fidrych v. Marriot International, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020); *Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016).

[33] *Bristol-Myers Squibb*, 137 S.Ct. at 1780 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)) (emphasis added).

[34] *Ford* 141 S.Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct., at 1780) (other quotations and citation omitted).

## ARGUMENT

### I.   THE EXERCISE OF PERSONAL JURISDICTION OVER GLOCK ADHERES TO DUE PROCESS.

The First Circuit has synthesized the requirements for establishing specific jurisdiction consistent with due process as follows:

> [P]laintiffs seeking to establish that a court has specific personal jurisdiction over a defendant must show that: (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. [ ] Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction. [ ][35]

Stated differently, "the constitutional analysis … has three components: relatedness, purposeful availment, and reasonableness."[36] This inquiry is "highly fact-specific."[37] And, "the test is 'not susceptible of mechanical application; rather, the facts of each case must be weighed.'"[38] As set out below, the exercise of specific jurisdiction over Glock in this case comports with each of these requirements.

---

[35] *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)).

[36] *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019).

[37] *Id.*

[38] *Id.* (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)).

**A.     Glock purposefully availed itself of the privileges of doing business in Massachusetts.**

Glock does not deny that it has purposefully availed itself of the privilege of doing business in the Commonwealth. Indeed, the Complaint's allegations[39] and the facts[40] make clear that it did so.

**B.     The Government's claims arise out of or relate to Glock's forum contacts.**

"The relatedness standard is a 'flexible, relaxed standard,' which focuses on the 'nexus between the defendant[s'] contacts and the plaintiff's cause of action.'"[41] The Supreme Court recently "emphasized that the classic formulation of the constitutional relatedness inquiry— 'arise out of *or relate to*'—is disjunctive" and "rejected the notion that a 'strict causal relationship' is necessary."[42] As explained in *Ford*, "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[43] The Court further observed that, while "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum, . . .  we have never framed the specific jurisdiction inquiry as always requiring proof of

---

[39] Compl. ¶ 42.

[40] Shadowen Decl. ¶¶ 12(a), 12(c), 12(d), 12(h), 12(i), 13.

[41] *Adelson*, 510 F.3d at 49 (citations omitted).

[42] *Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318, at *8 (D. Mass. June 3, 2021) (citing *Ford*, 141 S. Ct. at 1026) (emphasis original); *see also Lorenzen v. Toshiba American Information Systems, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175, at *1 (D.R.I. 2021) ("The *Ford Motor* case expanded the constitutional reach of personal jurisdiction … .").

[43] *Ford*, 141 S. Ct. at 1026.

causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."[44]

Yet Glock contends that proof of causation is required, ignoring the Supreme Court's *Ford* decision in favor of circuit precedent pre-dating *Ford* that emphasizes the importance of a causal link to establishing specific jurisdiction.[45] But post-*Ford* the law is that "[a]bsent causation, specific jurisdiction exists if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[46]

Contrary to Glock's contention,[47] its connections to Massachusetts are not too attenuated or indirect to support personal jurisdiction. Glock is negligent *in Massachusetts* where it chooses to serve the substantial gun market, recklessly and unlawfully supplying it with firearms and profiting from those sales, while also choosing to refrain from putting any distribution checks in place to prevent, limit, or mitigate the unlawful trafficking of its firearms. Glock cannot hide behind its distribution chain to avoid jurisdiction—arguing the connection between its forum contacts and the Government's claims is too attenuated and indirect[48]—*when it controls, supplies, and directs that chain*.

---

[44] *Id.*

[45] Glock Mem. 10.

[46] *Adams v. Gissell*, No. 20-cv-11366-PBS, 2021 WL 2786277, at *9 n.13 (D. Mass. May 24, 2021) (quoting *Ford*, 141 S. Ct. at 1025).

[47] Glock Mem. 10.

[48] *Id.*

Glock imposes its unlawful distribution policies on its dozen gun dealers, and its two large national distributors Interstate Arms and Camfour, in Massachusetts.[49] Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[50] Glock's large Massachusetts distributors sell Glock's guns to Glock's authorized dealers across the country.[51] Consequently, the unlawful distribution policies that Glock imposes on distributors and dealers in Massachusetts control gun sales— including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

The Complaint alleges that the policies that Glock imposed on Massachusetts distributors and dealers resulted in guns that Glock sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[52] The foundation of Glock's motion to dismiss is based on a purported lack of personal jurisdiction and is a factual denial of that allegation.[53]

So the Government offers the Expert Report of Lucy P. Allen, an economist at the international consulting firm NERA Economic Consulting and a former member of the Council of Economic Advisers for Presidents George H.W. Bush and Bill Clinton.[54] Among other qualifications, she has been "qualified as an expert and testified in court on various economic

---

[49] Compl. ¶ 42.

[50] For example, Defendant Ruger's public filings state that it makes 90% of its sales to wholesalers. Shadowen Decl. ¶ 15(b)(ii).

[51] *Id*. ¶ 12(b).

[52] Compl. ¶ 42.

[53] Glock Mem. 1, 4-5, 9.

[54] Shadowen Decl., Ex. 1, Expert Report of Lucy P. Allen ("Allen Report"), ¶¶ 4, 6.

and statistical issues relating to firearms, including the flow of firearms into the criminal market and analyses of data on firearm traces from the ATF."[55]

The ATF traces crime guns from the last purchaser back up through the chain of distribution to the dealer and the distributor.[56] The last set of that data that is publicly available shows the percentage of Glock's crime guns recovered in Mexico that were traced to Massachusetts.[57] Ms. Allen applies that percentage to estimates of the total number of guns trafficked into Mexico in the period 2011 – 2020, yielding an estimate of the number of Glock guns trafficked from Massachusetts to Mexico.[58]

The total number of guns annually trafficked from the United States to Mexico will be the subject of fact and expert discovery later in this litigation. Assuming that the total number is 200,000 annually, Ms. Allen estimates that the number of Glock guns trafficked from Massachusetts to Mexico from 2011 to 2020 is in excess of 2,200.[59] Assuming the total number is 730,000 instead of 200,000, she estimates that the number of Glock guns trafficked from Massachusetts to Mexico in that period is in excess of 8,200.[60] The rate at which Massachusetts-sourced guns are being trafficked to Mexico is substantially increasing in more recent years.[61]

---

[55] Allen Report ¶ 5.

[56] Compl. ¶ 92.

[57] Allen Report ¶ 16.

[58] Her number is conservative because the percentage of U.S. retail guns sales made in Massachusetts has increased substantially in recent years. *Id*. ¶ 18.

[59] *Id*. ¶ 19, Chart, Column 3.

[60] *Id*. ¶ 19, Chart, Column 4.

[61] *Id*. ¶ 20.

Moreover, the relatedness requirement would be met even without this dispositive allegation and compelling proof. Glock imposed its policies and practices on distributors nationwide. Its active indifference to the illegal distribution of its weapons in other U.S. states combines with its negligence in Massachusetts to inflict an indivisible injury[62] on the Government. This ongoing, in-forum contribution to Glock's longstanding head-in-the-sand approach sufficiently relates to the Government's claims.[63]

### C.    This Court's exercise of jurisdiction over Glock is reasonable.

The "concepts of reasonableness must illuminate the minimum contacts analysis."[64] To guide the reasonableness inquiry and determine whether the exercise of jurisdiction "comport[s] with fair play and substantial justice," the Court considers the five "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.[65]

---

[62] *Cf. Chao v. Ballista*, 806 F. Supp. 2d 358, 378 n.6 (D. Mass. July 28, 2011) ("Where . . . injury is indivisible, the defendants are joint and severally liable for the harm—even where they did not act in concert"); Dan B. Dobbs, *The Law of Torts* § 174, at 423 (2000) ("When the plaintiff presents evidence that she suffered a single indivisible injury at the hands of two or more tortfeasors, the burden is shifted to the tortfeasors to show that the plaintiff suffered separable injuries and that they can be apportioned and attributed separately to the different tortfeasors.").

[63] *See Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F. Supp. 893, 910 (D.R.I. 1996) ("[defendant's] election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment"); *see also Bobzien v. Philip Morris USA, Inc.*, No. 5:20-cv-328-RH-MJF, 2021 WL 4147011, at *2 (N.D. Fla. June 16, 2021) ("On a claim of personal injury to a single plaintiff resulting from long exposure to tobacco smoke . . . [i]f the defendant provided some of the tobacco in the forum, and that tobacco contributed to the plaintiff's indivisible injuries, the court has personal jurisdiction over the defendant for the whole claim").

[64] *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995).

[65] *Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61, 73 (D. Mass. 2013) (Saylor, J.) (citing *Sawtelle*, 70 F.3d at 1394).

Notably, "[t]hese factors are 'not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice.'"[66] And where the plaintiff—as is the case here—has established "relatedness" and "purposeful availment," a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[67] Glock has not done so. Instead, these factors demonstrate that compelling Glock to appear in Massachusetts is fair and reasonable.

### 1.    Defendant's burden of appearing in Massachusetts

"For this particular factor to have any significance, 'the defendant must demonstrate that exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other constitutionally significant way.'"[68] Glock is a large multinational corporation with its principal place of business in Georgia that would not incur a constitutionally significant burden appearing

---

[66] *Mateo v. University System of New Hampshire*, 2019 WL 199890, at *6 (D. Mass. Jan. 14, 2019) (Saylor, J.) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994)).

[67] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Ticketmaster*, 26 F.3d at 210 ("the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness").

[68] *Hilsinger Co. v. FBW Investments, LLC*, 109 F.Supp.3d 409, 429 (D. Mass. 2015) (Saylor, J.) (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)); *Mateo*, 2019 WL 199890, at *6.

before this Court.[69] Indeed, Glock has made no attempt to suggest otherwise. This factor

therefore favors a finding of reasonableness.[70]

### 2.    Forum state's adjudicatory interest

"[T]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some

other jurisdiction, but to determine the extent to which the forum *has* an interest."[71] Thus,

Glock's contention that the problem of trafficking of firearms into Mexico "is not unique to

Massachusetts"[72] is beside the point. The question is whether Massachusetts has an interest, and

it plainly does. Massachusetts has a strong interest in assuring that gun manufacturers properly

monitor and discipline their in-state wholesalers and dealers.

Glock's argument that Massachusetts has no interest in adjudicating the Plaintiff's claims

where the conduct and harm occurred outside its borders,[73] falls short for multiple reasons.

Initially, a plaintiff's non-residency does not necessarily weigh against reasonableness,

especially here. True, the caselaw that Glock cites[74] recognizes Massachusetts' interest in

providing its citizens a convenient forum to assert their claims. But that does not negate the

---

[69] *See Prep Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11, 37 (1st Cir. 2019)
("Absent a special or unusual burden, defendants cannot assert distance as a barrier.")
(internal quotations and citation omitted); *see also Hilsinger*, 109 F.Supp.3d at 429 (not a
constitutionally significant burden for Arizona corporation with no operations outside of
Arizona to litigate in Massachusetts). Certainly, this forum is not less convenient to Glock,
who is at home in Georgia, than appearing in California, Arizona, or Texas, from where its
weapons were directly trafficked.

[70] *See Mateo*, 2019 WL 199890, at *6 (absence of constitutionally significant burden
"favors a finding of reasonableness"); *Adams*, 2016 WL 6514090, at *4 (same).

[71] *Sawtelle*, 70 F.3d. at 1395 (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46
F.3d 138, 151 (1st Cir.1995) (emphasis original).

[72] Glock Mem. 13.

[73] *Id*. at 12-13.

[74] *Id*.

sufficiency of other forum interests, like requiring out-of-state manufacturers to monitor and discipline their in-state distributors and dealers.

Here the plaintiff is a foreign sovereign and thus a citizen of no U.S. forum. Conditioning forum interest in a suit brought by a foreign nation on residency in the forum-state makes no sense and contravenes law permitting a foreign state to "prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do."[75]

That the injury occurred elsewhere also does not preclude forum interest. Even while recognizing that a forum state's interest is diminished where the injury occurs elsewhere, courts have nevertheless found interest by the forum sufficient to favor the exercise of jurisdiction. In *Nowak*, the First Circuit held that "[w]hile it is true that the injury in this case occurred [in another country], it is equally true (unlike *Sawtelle*) that significant events took place in Massachusetts giving it an interest in this litigation."[76]

Here, as in *Nowak*, "Glock solicited business in the state."[77] But more than that, Glock "impos[ed] the policies and practices by which it sells its guns to Interstate Arms in [Massachusetts] and by which Interstate Arms must sell those guns to dealers throughout the U.S."[78] These policies—imposed by Glock in Massachusetts—are at the heart of the

---

[75] *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318-19 (1978); *see also id.* at 319 n.19 (citing 28 U.S.C. § 1332(a)(4) (1976 ed.)).

[76] 94 F.3d at 718; *see also Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87, 98 (D. Mass. 2018) ("[A]lthough the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute.").

[77] *Id.*

[78] Compl. ¶ 42.

Government's allegations regarding Glock's illegal conduct.[79] Massachusetts most assuredly has

a strong interest in precluding out-of-state gun manufacturers from implementing policies and

practices within its border that facilitate the illegal trafficking of firearms into Mexico. This

interest favors the adjudication of these claims in Massachusetts.

### 3.    The Government's interest in obtaining convenient relief

Regarding the Plaintiff's interest in obtaining convenient and effective relief, the First

Circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of

deference with respect to the issue of its own convenience."[80] Plaintiff is entitled to this

deference "regardless of whether it is a citizen of Massachusetts.[81] "[J]udicial second guessing" of

---

[79] Glock's assertion that the forum has no interest in adjudicating Plaintiffs claims because "the Complaint contains no allegations of illegal sales by Glock or Witmer in Massachusetts," Glock Mem. 13, misses the point entirely. The Government's claims are grounded in Glock's negligence in failing to adequately monitor and discipline the sale of firearms to Insterstate Arms in order to preclude the illegal sale and trafficking of these weapons. And as the Complaint makes clear, this negligence occurred in Massachusetts: Glock's "unlawful conduct as alleged throughout this Complaint—including the sales, marketing, advertising, and distribution policies and practices that occurred in Middlesex County—resulted in guns that [Glock] sold to Defendant Interstate Arms in Middlesex County being trafficked into Mexico and used in criminal activities there, causing the harm about which the [Plaintiff] complains." Compl. ¶42.

[80] *Sawtelle*, 70 F.3d at 1395.

[81] Glock argues that "[w]hile deference is given to the plaintiff's choice of forum, the third Gestalt factors weighs in favor of the defendant where plaintiffs is not a citizen of Massachusetts." Glock Mem. 13 (citing *Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 248-49 (D. Mass. 2017). This is not what *Katz* held. The district court in that case afforded deference to the plaintiff's choice of forum, even though that plaintiff was not a citizen of Massachusetts. *Id*. at 248, 251. That plaintiff's lack of citizenship weighed against reasonableness with respect to one of the defendants because in addition to not being a resident, none of the alleged wrongful conduct occurred in Massachusetts, nor did it cause injury to any of its citizens. *Id*. at 248. Indeed, the Court had already determined that the plaintiff failed to meet both the "relatedness" and "purposeful availment" prongs for establishing specific jurisdiction for that defendant. *Id*. at 245-248. But where that was not true concerning another defendant, the court held, "the [non-resident] plaintiffs' choice of forum must be accorded a degree of deference, and so the plaintiffs' interest in obtaining

a plaintiff's choice of forum is improper for courts considering jurisdictional issues unless "the plaintiff's supposed convenience 'seems to be . . . a makeweight,' contrived purely for strategic advantage."[82]

The Government chose to litigate at the center of the gun-manufacturing industry and in the home of one of the principal gun manufacturers and two significant gun distributors. This Court can grant the injunctive relief that is necessary to stop the flood of Defendants' crime guns into Mexico.

The Government also sued Glock here so that it could pursue its claims against all Defendants in one jurisdiction, instead of filing parallel litigation in multiple forums. "[P]laintiff's best option for convenient and efficient resolution of this matter is to have all [eight] defendants present in the same forum."[83] Indeed, the Court has previously recognized that this factor favors reasonableness where dismissal would result in "the plaintiff [ ] hav[ing] to commence parallel litigation in another forum."[84]

Despite clear precedent to the contrary, Glock nevertheless argues that the existence of personal jurisdiction over other defendants in the forum should not influence this Court's analysis of the third gestalt factor.[85] Glock misreads *Katz*. The district court there did not, as

---

convenient and effective relief also supports the Court exercising jurisdiction." *Id.* at 251 (internal quotations and citations omitted).

[82] *Foster-Miller,* 46 F.3d at 151 (quoting *Ticketmaster*, 26 F.3d at 211).

[83] *Composite*, 988 F.Supp.2d at 73.

[84] *Id.*; *see also Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994) (noting under this factor "the enormous inconvenience that might result from forcing Pritzker to sue elsewhere— theoretically, in every jurisdiction in which a financier is located—despite ongoing litigation in a forum-based court").

[85] Glock Mem. 13 (citing *Katz*, 244 F.Supp.3d at 249).

Glock suggests, bar taking into account the convenience of plaintiffs avoiding piecemeal litigation.[86] It simply held that, in light of the other compelling reasons for questioning the convenience of plaintiff's choice of forum, the ability to sue all defendants in a single forum did not "tip the scales in favor of the Plaintiffs under this prong."[87] Here, in stark contrast, substantial connection exists among Glock, other Defendants, the Government's claims, the Government's injuries, and this forum. The Government's interest in litigating in a single forum "tips the scales" decisively in its favor on this prong.

### 4.    Administration of justice

The judicial system's interest in obtaining the most effect resolution of the controversy is "[u]sually . . .  a wash,"[88] but "the administration of justice counsels against furcation of the dispute among several different jurisdictions."[89] "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."[90] Courts have thus consistently found the fourth gestalt factor weighs in favor of exercising jurisdiction when doing

---

[86] Indeed, the court later expressly acknowledged First Circuit precedent "recogniz[ing] that the interest of judicial economy 'counsels against furcation of a dispute among several different jurisdictions.'" *Id.* at 251 (quoting *Pritzker*, 42 F.3d at 64).

[87] *Id.* at 249.

[88] *Nowak*, 94 F.3d at 718.

[89] *Moura*, 337 F.Supp.3d at 99 (quoting *Pritzker*, 42 F.3d at 64); *see also Bartow v. Extec. Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518, 528 (D. Mass. 1999) ("Generally, this factor is a wash, unless the Court perceives the threat of piecemeal litigation.").

[90] *Id.* (quoting *Pritzker*, 42 F.3d at 64).

so will avoid piecemeal litigation.[91] Massachusetts is therefore the most efficient and effective
forum for Plaintiff to litigate its claims.[92]

### 5.      Pertinent policy arguments

For the final "gestalt" factor, the Court "consider[s] the common interests of all
sovereigns in promoting substantive social policies.[93] The United States and Mexico share an
interest in ensuring that firearms manufactured and distributed in the United States are not
trafficked into Mexico. The Government's ability to seek efficient and effective redress in a
convenient forum weighs in favor of jurisdiction, especially where litigating here does not
burden Glock.[94]

Glock offers no argument related to this factor, thus conceding that it does not weigh
against the exercise of jurisdiction.[95]

---

[91] *See e.g. id.* (because of the possibility that piecemeal litigation would result if the court
did not assert jurisdiction, "the most efficient resolution of this litigation is likely in the
Commonwealth"); *Composite,* 988 F.Supp.2d at 73 (the justice system has an interest in
having "all three defendants present in the same forum" because "[i]f defendants [ ] are
dismissed, plaintiff will have to commence parallel litigation in another forum"); *Lewis v.
Dimeo Const. Co.*, No. 14-cv-10492-IT, 2015 WL 3407605, at *6 (D. Mass. May 27, 2015)
("insofar as this factor favors either party, it supports hearing this case in Massachusetts so
as to avoid the possibility of piecemeal litigation").

[92] Notably, Glock does not challenge the Court's jurisdiction based on this factor.

[93] *Sawtelle*, 70 F. 3d at 1395.

[94] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 308-12 (1980) (Brennan,
J., dissenting) (suggesting that the concept of long-arm jurisdiction must adjust as
technological advances blur boundaries between states, and litigation in a "foreign" state no
longer inconveniences a defendant as it did "long ago when communication and travel over
long distances were slow and unpredictable and when notions of state sovereignty were
impractical and exaggerated.").

[95] *See* Glock Mem. 13 ("the remaining factors are irrelevant or do not tip the balance to any
perceptible degree").

## II.    IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS JURISDICTIONAL DISCOVERY

The Government has satisfied its burden of establishing a prima facie case of personal jurisdiction over Glock. But should the Court require more, the Government respectfully requests the opportunity to conduct jurisdictional discovery. "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."[96] In determining whether the Government has "diligently made out a 'colorable case' of personal jurisdiction, the Court must determine if [it] ha[s] 'presented facts to the court which show why jurisdiction would be found if discovery were permitted.'"[97]

Discovery from Glock, the other Defendants, and major distributors would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to distributors, those distributors' sales to dealers throughout the nation, and similar information.

### CONCLUSION

To defeat Glock's motion challenging personal jurisdiction, the Government need only establish a prima facie case that jurisdiction exists. It has done so. Glock's motion should therefore be denied.

---

[96] *Luxottica Group, S.p.A. v Lee*, No. 4:21-cv-10934-TSH, 2021 WL 3116171, at *3 (D. Mass. 2021) (quoting *Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962, 964 (1st Cir.1997)).

[97] *Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182, 192 (D. Mass 2012) (Saylor, J.) (quoting *U.S. v. Swiss Am. Bank, Ltd.*, 274 F. 3d 610, 626 (1st Cir. 2001)).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.


Dated January 31, 2022                          Respectfully submitted,

                                                /s/ *Steve D. Shadowen*
                                                Steve D. Shadowen (pro hac vice)
                                                Richard M. Brunell (BBO# 544236)
                                                Nicholas W. Shadowen (pro hac vice)
                                                SHADOWEN PLLC
                                                1135 W. 6th Street, Suite 125
                                                Austin, TX 78703
                                                Phone: 855-344-3298
                                                sshadowen@shadowenpllc.com
                                                rbrunell@shadowenpllc.com
                                                nshadowen@shadowenpllc.com

                                                /s/ *Jonathan E. Lowy*
                                                Jonathan E. Lowy (pro hac vice)
                                                BRADY
                                                840 First Street, N.E. Suite 400
                                                Washington, DC 20002
                                                Phone: 202-370-8104
                                                jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: January 31, 2022                    Respectfully Submitted,


                                           /s/ *Steve D. Shadowen*
                                           Steve D. Shadowen

22