**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ESTADOS UNIDOS MEXICANOS, <br> *Plaintiff,* <br><br> *vs.* <br><br> SMITH & WESSON BRANDS, INC., et al., <br> *Defendants.* | Civil Action No. 1:21-CV-11269-FDS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT STURM, RUGER & CO.'s MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 5

ARGUMENT .............................................................................................................. 7

I.      THE EXERCISE OF PERSONAL JURISDICTION OVER RUGER
        ADHERES TO DUE PROCESS. ................................................................. 7

        A.      Ruger purposefully availed itself of the privileges of doing
                business in Massachusetts. ............................................................... 8

        B.      The Government's claims arise out of or relate to Ruger's forum
                contacts. ............................................................................................ 9

        C.      This Court's exercise of jurisdiction over Ruger is reasonable. .......... 13

                1.      Defendant's burden of appearing in Massachusetts ................. 14

                2.      Forum state's adjudicatory interest ........................................ 14

                3.      The Government's interest in obtaining convenient relief ....... 16

                4.      Administration of justice ....................................................... 18

                5.      Pertinent policy arguments .................................................... 19

II.     IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS
        JURISDICTIONAL DISCOVERY .............................................................. 20

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016) .................................................... 7

*Adams v. Gissell*, NO. 20-cv-11366-PBS, 2021 WL 2786277 (D. Mass. May 24, 2021) ..... 10, 14

*Adelson v. Hananel*, 510 F.3d 43 (1st Cir. 2007)............................................................ 5, 6, 8, 9

*Ameral v. Intrepid Travel Part, Ltd.*, 128 F. Supp. 3d 382 (D. Mass. 2015)................................ 9

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987)........................................... 9

*Bartow v. Extec Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518 (D. Mass. 1999)................. 9, 18

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28 (1st Cir. 2016) ............ 5

*Bobzien v. Philip Morris USA, Inc.*, No. 5:20-cv-328-RH-MJF, 2021 WL 4147011 (N.D. Fla. June 16, 2021) ........................................................................................................................ 12

*Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F. Supp. 893 (D.R.I. 1996).............. 12

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017) ............................................................................................................................................ 4, 6, 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................................................... 13

*Chao v. Ballista*, 806 F. Supp. 2d 358 (D. Mass. July 28, 2011)................................................ 12

*Chouinard v. Marigot Beach Club and Dive Resort*, No. 20-10863-MPK, 2021 WL 2256318 (D. Mass. June 3, 2021) ................................................................................................................. 9

*Cioffi v. Gilbert Enterprises, Inc.*, 971 F. Supp. 2d 129 (D. Mass. 2012) ................................... 5

*Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61 (D. Mass. 2013). 13, 17, 18

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .............................................................................. 6

*Daynard v. Ness, Motley, Loadholt,Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002).... 5, 8

*Doucet v. FCA US LLC*, No. 19-cv-10514-ADB, 2020 WL 128655 (D. Mass. Jan. 10, 2020) ..... 8

*Duarte v. Koki Holdings Am., Ltd.*, No. 18-11995-RGS, 2018 WL 6179511 (D. Mass. Nov. 27, 2018) ......................................................................................................................................... 8

*Fidrych v. Marriot International, Inc.*, 952 F.3d 124 (4th Cir. 2020)........................................... 6

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) ......4, 7, 9, 10

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d  138 (1st Cir. 1995).................... 5, 17

*Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995) ........................ 14

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) ................................... 6

*Hilsinger Co. v. FBW Investments, LLC*, 109 F. Supp. 3d 409 (D. Mass. 2017)........................ 14

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................................... 6

*Katz v. Spiniello Companies*, 244 F. Supp. 3d 237 (D. Mass. 2017) .................................... 16, 17

*Knox v. MetalForming, Inc.*, 914 F.3d 685 (1st Cir. 2019) ........................................................7

*Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45 (1st Cir. 2020)...........................8

*Lewis v. Dimeo Const. Co.*, 2015 WL 3407605 (D. Mass. May 27, 2015) ................................. 18

*Lorenzen v. Toshiba American Information Systems, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175 (D.R.I. 2021).................................................................................................................9

*Luxottica Group, S.p.A. v Lee*, No. 4:21-cv-10934-TSH, 2021 WL 3116171 (D. Mass. 2021)... 19

*Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998)....................6

*Mateo v. University System of New Hampshire*, No. 18-cv-11953-FDS, 2019 WL 199890 (D. Mass. Jan. 14, 2019) ......................................................................................................... 13, 14

*Momenta Pharmaceuticals, Inc v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514 (D. Mass 2012) ...............................................................................................................................8

*Moura v. New Prime, Inc.*, 337 F. Supp. 3d 87 (D. Mass. 2018)......................................... 15, 18

*Nandjou v. Marriott International, Inc.*, No. 18-cv-12230-ADB, 2019 WL 2918043 (D. Mass. July 8, 2019) .............................................................................................................................9

*Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708 (1st Cir. 1996) ........................................... 9, 15, 18

*Packs v. Bartle*, 2019 WL 1060972 (D. Mass. Mar. 6, 2019) .....................................................6

*Pfizer, Inc. v. Government of India*, 434 U.S. 308 (1978)......................................................... 15

*PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11 (1st Cir. 2019).................................8

*Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994) ........................................................................14, 17, 18

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ............................................................. passim

*Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17 (1st Cir. 2018)......................7

*Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182 (D. Mass 2012)........ 20

*Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962 (1st Cir. 1997).......................................... 19

*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994)........................................... 13, 17

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080 (1st Cir. 1992) .........................................................................................................................................7

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001)....................................5, 20

*Waldman v. Palestine Liberation Organization*, 835 F.3d 317 (2d Cir. 2016)............................6

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ........................................... 19

**Statutes**

28 U.S.C. § 1332(a)(4) (1976 ed.)............................................................................................. 15

**Other Authorities**

Dan B. Dobbs, *The Law of Torts* § 174 (2000)........................................................................ 12

*How to get FFL License in Massachusetts (MS)?*, FFL123.com, available at
https://www.ffl123.com/how-to-get-ffl-in-
massachusetts/#:~:text=As%20of%20June%202021%2C%20the,)%20being%20rabidly%20a
nti%2Dgun ................................................................................................................................ 2

## INTRODUCTION

Plaintiff Estados Unidos Mexicanos ("the Government") submits this opposition to the separate motion to dismiss filed by Defendant Sturm, Ruger & Co. ("Ruger") based on an asserted lack of personal jurisdiction. For background facts, we refer to the Government's opposition to the joint motion to dismiss. Here, we address Ruger's personal jurisdiction argument.

Massachusetts is the King of Guns[1] and is referred to as "Gun Valley."[2] It has been steeped in firearms manufacturing since 1777, when George Washington selected Springfield as the site for the nation's first arsenal.[3] Recent estimates show that Massachusetts accounts for one-quarter of all weapons manufactured in the United States, more than any other state.[4]

Massachusetts is home to Defendant Smith & Wesson[5] and two large, national gun wholesalers, Defendant Interstate Arms and Camfour, Inc. Interstate Arms, based in Billerica, is a "40+ year-old wholesaler distributor supplying licensed firearm dealers nationwide with firearms and related products."[6] The company describes itself as a seller of, among other things, "military-style weapons."[7] Camfour, Inc. ("Camfour") is another national distributor. Founded in

---

[1] Declaration of Nicholas W. Shadowen ("Shadowen Decl."), ¶ 20(c)(i).

[2] Shadowen Decl. ¶ 20(b).

[3] *Id.* ¶ 20(b)(i).

[4] *Id.* ¶ 20(c)(ii). In 2016, Massachusetts was ranked among the top 10 states for total economic output for arms and ammunition in the U.S.; *id.* ¶ 20(a)(iii).

[5] Compl. ¶31.

[6] Shadowen Decl. ¶ 20(b)(i).

[7] *Id.* ¶ 18(b).

Springfield, Massachusetts in 1952,[8] it touts that it "revolutionized" the gun industry with the development of its online order software that "enabled independent shooting sports retailers to have instant access to a wealth of information, inventory and the ability to order 24 hours a day, 7 days a week."[9] The company is "consistently … ranked as one of the top 10 distributors in the industry."[10] Complementing its operations in Massachusetts is another Camfour distribution center outside Austin, Texas.[11] In addition to these major distributors, there are also nearly 4,000 licensed gun dealers in Massachusetts.[12]

Ruger is a national firearms manufacturer that does business throughout the United States, including very substantial business in Massachusetts.[13] Ruger intentionally directed its commercial activities to this forum by regularly advertising and selling its guns here.[14] It imposes its unlawful distribution policies—the policies about which the Government complains—on gun distributors (wholesalers) and dealers in Massachusetts.[15] These include distributors Interstate Arms and Camfour, plus more than 40 authorized dealers.[16]

---

[8] *Id.* ¶ 19(a)(i).

[9] *Id.* ¶ 19(a)(iii).

[10] *Id.* ¶ 19(a)(vi).

[11] *Id.* ¶ 19(a)(iv)-(v).

[12] Shadowen Decl. Ex. 52, *How to get FFL License in Massachusetts (MS)?*, FFL123.com, available at https://www.ffl123.com/how-to-get-ffl-in-massachusetts/#:~:text=As%20of%20June%202021%2C%20the,)%20being%20rabidly%20anti%2Dgun.

[13] *See infra* Section I(A).

[14] *Id*.

[15] Compl. ¶ 42.

[16] *See infra* Section I(B).

Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[17] Ruger, for example, sells about 90% of its guns to distributors.[18] Ruger's large Massachusetts distributors Interstate Arms and Camfour sell Ruger's guns to Ruger's authorized dealers throughout the nation.[19] Consequently, the unlawful distribution policies that Ruger imposes on distributors and dealers in Massachusetts control gun sales—including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

Ruger's motion is premised on the untenable contention that its "contacts with Massachusetts are admittedly lawful."[20] The Complaint alleges otherwise. Ruger's distribution policies for its distributors in Massachusetts foreseeably and knowingly facilitate the unlawful trafficking of its guns to Mexico.[21]

Specifically, the Complaint alleges that Ruger's policies for Massachusetts distributors and dealers resulted in guns that Ruger sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[22] The Government's expert report on this issue establishes that in the last ten years

---

[17] *Id*.

[18] Shadowen Decl. Ex. ¶ 15(b)(ii).

[19] *See infra* Section I(B).

[20] Ruger Mem. 2.

[21] Compl. ¶ 42.

[22] *Id*. This paragraph of the Complaint specifically discusses sales from Ruger to Interstate Arms, but others refer to distributors and dealers generally (e.g., *id*. ¶¶ 43, 193-195), and the Complaint alleges that the "claims arise out of Defendants' contacts with Massachusetts [and] the Government's claims relate to those contacts" (*id*. ¶ 44).

approximately 4,500 to 16,500 of Ruger's guns were trafficked from Massachusetts into Mexico.[23]

Ruger's assertion that it is not subject to the personal jurisdiction of this Court is wrong. The Court has specific jurisdiction over Ruger because process dictates are satisfied. Ruger unquestionably "deliberately reached out beyond its home" to "exploit[ ] a market in the forum State" and "enter[ ] a contractual relationship centered there."[24] And the Government's claims relate to and arise out of Ruger's forum activities.[25]

Beyond Ruger's sufficient contacts here, this Court's exercise of jurisdiction over Ruger is entirely fair and reasonable. Massachusetts has a strong interest in assuring that Ruger and other gun manufacturers properly monitor and discipline their Massachusetts distributors and dealers. Moreover, litigating here provides the Government the convenience of a single forum without imposing any constitutionally significant burden on Ruger. Avoiding piecemeal litigation also serves judicial economy, ensuring both an efficient and consistent resolution of the Government's claims. Lastly, the Government and the United States share an interest in curtailing the unlawful gun trafficking. The Government's ability to seek redress for injuries caused by Defendants' negligence in a single forum is an important policy consideration that further weighs in favor of the Court exercising jurisdiction. Given the centrality of Massachusetts in the gun industry, this is a sensible place for this litigation.

---

[23] *See infra* Section I(B).

[24] *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (internal quotations and citation omitted).

[25] *Id*. ("The plaintiff's claims … 'must arise out of or relate to the defendant's contacts' with the forum.") (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)).

Ruger's attempt to avoid appearing in Massachusetts fails, and its motion should be denied. If, however, the Court were to harbor any doubt as to whether personal jurisdiction exists, the Government respectfully requests discovery on the issue.

## LEGAL STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'"[26] "Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the *prima facie* standard governs its determination."[27]

The prima facie standard "requires no differential factfinding; rather . . . only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."[28] That is, this Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."[29]

And "'[f]or the purpose of examining the merits of such a jurisdictional proffer,' the court considers 'the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely

---

[26] *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (quoting *Daynard v. Ness, Motley, Loadholt,Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002)).

[27] *Cioffi v. Gilbert Enterprises, Inc.*, 971 F. Supp. 2d 129, 133-34 (D. Mass. 2012) (Saylor, J.) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)).

[28] *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016); *see also Adelson*, 510 F.3d at 48; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995).

[29] *Adelson,* 510 F.3d at 48.

contested facts.'"[30] Properly documented facts proffered by Plaintiff must be accepted as true, "irrespective of whether the defendant disputes them" and must be "[construed] in the light most congenial to the plaintiff's jurisdictional claim."[31] Here the Government has submitted the expert report of economist Lucy Allen in support of the Complaint's jurisdictional allegations.[32]

Ruger argues that the Massachusetts long-arm statute is sufficiently congruent with the limits permitted by the Constitution that personal jurisdiction may be assessed solely under a due process analysis. The Government agrees.

Due process requirements are satisfied when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[33] Personal jurisdiction may be general or specific.[34] The nature and quantity of forum-state contacts needed to satisfy due process differs depending on which of these is asserted over the defendant.[35] The Government contends that this Court has specific jurisdiction over Ruger.

---

[30] *Hernandez-Denizac v. Kia Motors Corp.*, 257 F. Supp. 3d 216, 220 (D.P.R. 2017) (quoting *Baskin-Robbins*, 825 F.3d at 34).

[31] *Adelson,* 510 F.3d at 48 (quoting *Mass. Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998); *see also Packs v. Bartle*, 2019 WL 1060972, at *3 (D. Mass. Mar. 6, 2019) ("The Court takes as true whatever properly documented facts plaintiffs proffer, construes those facts in the light most favorable to the plaintiffs, and considers facts put forward by defendants to the extent they are uncontradicted.").

[32] To the extent the Government's proffer is deemed insufficient, it requests permission to conduct jurisdictional discovery as set forth below. *See infra* Section II.

[33] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quotations omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[34] *Bristol-Myers*, 137 S. Ct. at 1779-80.

[35] *Fidrych v. Marriot International, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020); *Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016).

For a court to exercise specific jurisdiction, "'the suit' must 'aris[e] out of *or* relat[e] to the defendant's contacts with the forum."[36] "Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[37]

**ARGUMENT**

**I.    THE EXERCISE OF PERSONAL JURISDICTION OVER RUGER ADHERES TO DUE PROCESS.**

The First Circuit has synthesized the requirements for establishing specific jurisdiction consistent with due process as follows:

> [P]laintiffs seeking to establish that a court has specific personal jurisdiction over a defendant must show that: (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. [ ] Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction. [ ][38]

Stated differently, "the constitutional analysis … has three components: relatedness, purposeful availment, and reasonableness."[39] This inquiry is "highly fact-specific."[40] And "the test is 'not susceptible of mechanical application; rather, the facts of each case must be

---

[36] *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)) (emphasis added).

[37] *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct., at 1780) (other quotations and citation omitted).

[38] *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)).

[39] *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019).

[40] *Id.*

weighed.'"[41] As set out below, the exercise of specific jurisdiction over Ruger in this case comports with each of these requirements.

### A.     Ruger purposefully availed itself of the privileges of doing business in Massachusetts.

"[T]he defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."[42] "[T]he two cornerstones of purposeful availment are 'voluntariness' and 'foreseeability.'"[43] That is, "[t]he contacts must be voluntary and not based on the unilateral actions of another party," and "the defendant's contacts must be such that he could reasonably anticipate being haled into court there."[44] Both requirements are easily met here.

Ruger purposefully availed itself of the privilege of conducting activities in Massachusetts by partnering with in-forum distributors, Interstate Arms and Camfour, which sell Ruger's firearms and conduct their own businesses in Massachusetts.[45] By regularly selling its weapons directly to in-state wholesalers, Ruger clearly targeted the Massachusetts firearms

---

[41] *Id.* (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)).

[42] *Daynard*, 290 F.3d at 61(citation omitted).

[43] *Kuan Chen v. United States Sports Academy, Inc.*, 956 F.3d 45, 59 (1st Cir. 2020) (quoting *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 19-20 (1st Cir. 2019)).

[44] *Adelson*, 510 F.3d at 50 (internal citations and quotations omitted).

[45] *See* Compl. ¶ 41. "A manufacturer that directs that its products be sold in Massachusetts, directly or through distributors, may demonstrate its intent to serve that forum, and therefore purposefully avail itself of the privilege of conducting business there." *Doucet v. FCA US LLC*, No. 19-cv-10514-ADB, 2020 WL 128655, at *6 (D. Mass. Jan. 10, 2020); *Duarte v. Koki Holdings Am., Ltd.*, No. 18-11995-RGS, 2018 WL 6179511, at *3 (D. Mass. Nov. 27, 2018) ("Here, [defendant] did more than simply launch its products into the stream of commerce: it purposefully set them on a sure course to retailers in Massachusetts.").

market.[46] Ruger further availed itself of this market by directing its advertising and marketing efforts at Massachusetts.[47] These contacts were such that Ruger should reasonably anticipate litigation in the state.[48] Indeed, Ruger does not bother challenging this prong in its brief.

**B.      The Government's claims arise out of or relate to Ruger's forum contacts.**

"The relatedness standard is a 'flexible, relaxed standard,' which focuses on the 'nexus between the defendant[s'] contacts and the plaintiff's cause of action.'"[49] The Supreme Court recently "emphasized that the classic formulation of the constitutional relatedness inquiry—'arise out of *or relate to*'—is disjunctive" and "rejected the notion that a 'strict causal relationship' is necessary."[50] As explained in *Ford*, "[t]he first half of that standard asks about

---

[46] *See e.g.*, *Momenta Pharmaceuticals, Inc v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514, 520-21 (D. Mass 2012) (defendants purposefully direct activities at the residents of Massachusetts by offering products for sale in Massachusetts).

[47] *See* Compl. ¶ 42. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (advertising in the forum states "indicate[s] an intent or purpose to serve the market in the forum State."); *see also Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 717 (1st Cir. 1996) (foreign hotel's direct targeting of residents and advertising in a forum state constituted purposeful availment); *Ameral v. Intrepid Travel Part, Ltd.*, 128 F. Supp. 3d 382, 393 (D. Mass. 2015) (foreign tour company's advertising to and interaction with Massachusetts residents through its website satisfied the purposeful availment test).

[48] *See Bartow v. Extec Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518, 527 (D. Mass. 1999) ("[B]ecause [defendant] not only knew that its machines ended up in Massachusetts, but also specifically targeted and facilitated sales to and through Massachusetts, [defendant] anticipated suit in Massachusetts"); *see also Nandjou v. Marriott International, Inc.*, No. 18-cv-12230-ADB, 2019 WL 2918043, at *6 (D. Mass. July 8, 2019), *aff'd* 985 F.3d 135, 152-53 (9th Cir. 2021)(advertisements that were part of defendant's on-going effort to attract customers to its branded hotel made it foreseeable that defendants would be haled into court in that forum).

[49] *Adelson*, 510 F.3d at 49 (citations omitted).

[50] *Chouinard v. Marigot Beach Club and Dive Resort*, No. 20-10863-MPK, 2021 WL 2256318, at *8 (D. Mass. June 3, 2021) (citing *Ford*, 141 S. Ct. at 1026) (emphasis original); *see also Lorenzen v. Toshiba American Information Systems, Inc.*, No. 20-cv-186-JJM-PAS, 2021 WL 5051175, at *1 (D.R.I. 2021) ("The *Ford Motor* case expanded the constitutional reach of personal jurisdiction … .").

causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[51] The Court further observed that, while "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum, . . . we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."[52]

Ruger pays lip service to *Ford*, acknowledging that "a strict causal relationship" is not required, yet contends that even but-for causation may be insufficient.[53] After *Ford*, the law is that "[a]bsent causation, specific jurisdiction exists if there is 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[54]

Ruger imposes its unlawful distribution policies on its gun dealers and on its large national distributors Interstate Arms and Camfour, in Massachusetts.[55] Gun manufacturers typically make the vast majority of their sales through distributors, which then transfer the guns to the manufacturer's authorized dealers.[56] Ruger's large Massachusetts distributors sell Ruger's guns to Ruger's authorized dealers across the country.[57] Consequently, the unlawful distribution policies that Ruger imposes on distributors and dealers in Massachusetts control gun sales—

---

[51] *Ford*, 141 S.Ct. at 1026.

[52] *Id.*

[53] Ruger Mem. 6.

[54] *Adams v. Gissell*, NO. 20-cv-11366-PBS, 2021 WL 2786277, at *9 n.13 (D. Mass. May 24, 2021) (quoting *Ford*, 141 S.Ct. at 1025).

[55] Compl. ¶ 42.

[56] For example, Ruger's public filings state that it makes 90% of its sales to wholesalers. Shadowen Decl. ¶ 15(b)(ii).

[57] Shadowen Decl. ¶ 15(b)(i).

including to straw purchasers and other traffickers—not only in Massachusetts but throughout the nation.

Specifically, the Complaint alleges that the policies that Ruger imposes on Massachusetts distributors and dealers result in guns that Ruger sold into Massachusetts "being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains."[58] The foundation of Ruger's motion to dismiss is based on a purported lack of personal jurisdiction and is a factual denial of that allegation.[59]

The Government therefore offers the Expert Report of Lucy P. Allen, an economist at the international consulting firm NERA Economic Consulting and a former member of the Council of Economic Advisers for Presidents George H.W. Bush and Bill Clinton.[60] Among other qualifications, she has been "qualified as an expert and testified in court on various economic and statistical issues relating to firearms, including the flow of firearms into the criminal market and analyses of data on firearm traces from the ATF."[61]

The ATF traces crime guns from the last purchaser back up through the chain of distribution to the dealer and the distributor.[62] The last set of that data that is publicly available shows the percentage of Ruger's crime guns recovered in Mexico that were traced to Massachusetts.[63] Ms. Allen applies that percentage to estimates of the total number of guns

---

[58] Compl. ¶ 42.

[59] Ruger Mem. 2, 5.

[60] Shadowen Decl., Ex. 1, Expert Report of Lucy P. Allen ("Allen Report"), ¶¶ 4, 6.

[61] *Id*. ¶ 5.

[62] Compl. ¶ 92.

[63] Allen Report ¶ 16.

trafficked into Mexico in the period 2011 – 2020, yielding an estimate of the number of Ruger guns trafficked from Massachusetts to Mexico.[64]

The total number of guns annually trafficked from the United States to Mexico will be the subject of fact and expert discovery later in this litigation. Assuming that the total number is 200,000 annually, Ms. Allen estimates that the number of Ruger guns trafficked from Massachusetts to Mexico from 2011 to 2020 is in excess of 4,500.[65] Assuming the total number is 730,000 instead of 200,000, she estimates that the number of Ruger guns trafficked from Massachusetts to Mexico in that period is 16,600.[66]

Moreover, the relatedness requirement would be met even without this dispositive allegation and compelling proof. Ruger imposed its policies and practices on distributors nationwide. Its active indifference to the illegal distribution of its weapons in other forums combines with its conduct in Massachusetts to inflict an indivisible injury[67] on the Government. As a result, this ongoing, in-forum contribution to Ruger's longstanding head-in-the-sand approach sufficiently relates to the Government's claims raised here.[68]

---

[64] Her number is conservative because the percentage of U.S. retail guns sales made in Massachusetts has increased substantially in recent years. *Id.* ¶ 18.

[65] *Id.* ¶ 19, Chart, Column 3.

[66] *Id.* ¶ 19, Chart, Column 4.

[67] *Cf. Chao v. Ballista*, 806 F. Supp. 2d 358, 378 n.6 (D. Mass. July 28, 2011) ("Where . . . injury is indivisible, the defendants are joint and severally liable for the harm—even where they did not act in concert"); Dan B. Dobbs, *The Law of Torts* § 174, at 423 (2000) ("When the plaintiff presents evidence that she suffered a single indivisible injury at the hands of two or more tortfeasors, the burden is shifted to the tortfeasors to show that the plaintiff suffered separable injuries and that they can be apportioned and attributed separately to the different tortfeasors.").

[68] *See Branch Metal Processing, Inc. v. Boston Edison Co.*, 952 F. Supp. 893, 910 (D.R.I. 1996) ("Ruger's election to place no restriction on the method or place of disposal is tantamount to an affirmative choice to submit to jurisdiction wherever these waste products fouled the environment"); *see also Bobzien v. Philip Morris USA, Inc.*, No. 5:20-cv-328-RH-MJF, 2021 WL 4147011, at *2 (N.D. Fla. June 16, 2021) ("On a claim of personal injury to a single plaintiff

**C.    This Court's exercise of jurisdiction over Ruger is reasonable.**

The "concepts of reasonableness must illuminate the minimum contacts analysis."[69] To

guide the reasonableness inquiry and determine whether the exercise of jurisdiction "comport[s]

with fair play and substantial justice," the Court considers the five "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's interest in
> adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and
> effective relief; (4) the judicial system's interest in obtaining the most effective
> resolution of the controversy; and (5) the common interests of all sovereigns in
> promoting substantive social policies.[70]

Notably, "[t]hese factors are 'not ends in themselves, but they are, collectively, a means

of assisting courts in achieving substantial justice.'"[71] And where the plaintiff—as is the case

here—has established "relatedness" and "purposeful availment," a defendant "must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable."[72] Ruger has not done so. Instead, these factors demonstrate that compelling

---

resulting from long exposure to tobacco smoke . . . [i]f the defendant provided some of the
tobacco in the forum, and that tobacco contributed to the plaintiff's indivisible injuries, the court
has personal jurisdiction over the defendant for the whole claim").

[69] *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995).

[70] *Composite Co. Inc., v. American Intern. Group, Inc.*, 988 F. Supp. 2d 61, 73 (D. Mass. 2013)
(Saylor, J.) (citing *Sawtelle*, 70 F.3d at 1394).

[71] *Mateo v. University System of New Hampshire*, No. 18-cv-11953-FDS, 2019 WL 199890, at
*6 (D. Mass. Jan. 14, 2019) (Saylor, J.) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201,
209 (1st Cir. 1994)).

[72] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Ticketmaster*, 26 F.3d at
210 ("the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the
plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a
defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally
true: an especially strong showing of reasonableness may serve to fortify a borderline showing of
relatedness and purposefulness").

Ruger to appear in Massachusetts is fair and reasonable. Ruger addresses only the second and third Gestalt factors, but each militates in favor of jurisdiction here.

### 1.    Defendant's burden of appearing in Massachusetts

"For this particular factor to have any significance, 'the defendant must demonstrate that exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other constitutionally significant way.'"[73] Ruger is a large national corporation with its principal place of business in Connecticut and would not incur a constitutionally significant burden appearing before this Court.[74] Indeed, Ruger has made no attempt to suggest otherwise. This factor therefore favors a finding of reasonableness.[75]

### 2.    Forum state's adjudicatory interest

"[T]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest."[76] Here Massachusetts has a strong interest in assuring that in-state wholesalers and dealers are properly

---

[73] *Hilsinger Co. v. FBW Investments, LLC*, 109 F. Supp. 3d 409, 429 (D. Mass. 2017) (Saylor, J.) (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)); *Mateo*, 2019 WL 199890, at *6.

[74] *See Adams v. New England Scaffolding, Inc.*, 2016 WL 6514090, at *4 (D. Mass. Oct. 28, 2016) (Saylor, J.) ("[Defendant] does not—nor could it—contend that the burden of appearing in Massachusetts is significantly more onerous than the burden of appearing in Connecticut … ."). Certainly, this forum is more convenient to Ruger, who is at home in Connecticut, than appearing in California, Arizona, or Texas, from where its weapons were directly trafficked to Mexico.

[75] *See Mateo*, 2019 WL 199890, at *6 (absence of constitutionally significant burden "favors a finding of reasonableness"); *Adams*, 2016 WL 6514090, at *4 (same).

[76] *Sawtelle*, 70 F.3d. at 1395 (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 151 (1st Cir. 1995) (emphasis original).

monitored and disciplined in their sale and distribution of firearms, particularly insofar as the failure to do so circumvents this state's strong gun laws.

Ruger argues that Massachusetts has no interest in adjudicating the Government's claim because the allegations of harm do not involve any alleged harm to Massachusetts citizens.[77] That argument falls short for multiple reasons.

Initially, a plaintiff's non-residency does not necessarily weigh against reasonableness, especially here. True, the caselaw that Ruger cites[78] recognizes Massachusetts' interest in providing its citizens a convenient forum to assert their claims. But that does not proscribe the sufficiency of other forum interests, like requiring out-of-state manufacturers to monitor and discipline their in-state distributors and dealers.

Here the plaintiff is a foreign sovereign and thus a citizen of no U.S. forum. Conditioning forum interest in a suit brought by a foreign nation on residency in the forum-state would make no sense and would contravene law permitting a foreign state to "prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do."[79]

That the injury occurred elsewhere also does not preclude forum interest. Even while recognizing that a forum state's interest is diminished where the injury occurs elsewhere, courts have nevertheless found interest by the forum sufficient to favor the exercise of jurisdiction. In *Nowak*, the First Circuit held that "[w]hile it is true that the injury in this case occurred [in

---

[77] Ruger Mem. 8.

[78] Ruger Mem. 8.

[79] *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318-19 (1978); *see also id.* at 319 n.19 (citing 28 U.S.C. § 1332(a)(4) (1976 ed.)).

another country], it is equally true (unlike *Sawtelle*) that significant events took place in Massachusetts giving it an interest in this litigation."[80]

Here, as in *Nowak*, "[Ruger] solicited business in the state."[81] But more than that, Ruger "impos[ed] the policies and practices by which it sells its guns to Interstate Arms in [Massachusetts] and by which Interstate Arms must sell those guns to dealers throughout the U.S."[82] These policies—imposed by Ruger in Massachusetts—are at the heart of the Government's allegations regarding Ruger's illegal conduct. Massachusetts most assuredly has a strong interest in precluding out-of-state gun manufacturers from implementing policies and practices within its border that flout its gun laws and facilitate the illegal trafficking of firearms into Mexico. This interest favors the adjudication of these claims in Massachusetts.

### 3.     The Government's interest in obtaining convenient relief

Regarding the Plaintiff's interest in obtaining convenient and effective relief, the First Circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."[83] Plaintiff is entitled to this deference regardless of whether it is a citizen of Massachusetts.[84] "[J]udicial second guessing" of

---

[80] 94 F.3d at 718; *see also Moura v. New Prime, Inc.*, 337 F. Supp. 87, 98 (D. Mass. 2018) ("[A]lthough the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute.").

[81] *Id.*

[82] Compl. ¶ 42.

[83] *Sawtelle*, 70 F.3d at 1395.

[84] Ruger argues that, "[g]enerally, courts afford some deference to a plaintiff's choice of forum. However, a plaintiff is not entitled to such deference where the plaintiff is not a citizen of the forum state. Ruger Mem. 8 (citing *Katz v. Spiniello Companies*, 244 F. Supp. 237, 248-49 (D. Mass. 2017)). This is not what *Katz* held. The district court in that case afforded deference to the plaintiffs' choice of forum, regardless of the fact that the plaintiffs were not a citizen of

a plaintiff's choice of forum is improper for courts considering jurisdictional issues unless "the plaintiff's supposed convenience 'seems to be . . .  a makeweight,' contrived purely for strategic advantage."[85]

The Government chose to litigate at the center of the gun-manufacturing industry and in the home of one of the principal gun manufacturers and two significant gun distributors. This Court can grant the injunctive relief that is necessary to stop the flood of Defendants' crime guns into Mexico.

The Government also sued Ruger here so that the Government can pursue its claims against all Defendants in one jurisdiction, instead of filing parallel litigation in multiple forums. "[P]laintiff's best option for convenient and efficient resolution of this matter is to have all [eight] defendants present in the same forum."[86] Indeed, the Court has previously recognized that this factor favors reasonableness where dismissal would result in "the plaintiff [ ] hav[ing] to commence parallel litigation in another forum."[87]

---

Massachusetts. *Id.* at 248, 251. Plaintiffs' lack of citizenship weighed against reasonableness with respect to one of the defendants because in addition to not being a resident, none of the alleged wrongful conduct occurred in Massachusetts, nor did it cause injury to any of its citizens. *Id.* at 248. Indeed, the Court had already determined that plaintiffs failed to meet both the "relatedness" and "purposeful availment" prongs for establishing specific jurisdiction for that defendant. *Id.* at 245-248.  But, where this was not the case concerning another defendant, the court held, "the [non-resident] plaintiffs' choice of forum must be accorded a degree of deference, and so the plaintiffs' interest in obtaining convenient and effective relief also supports the Court exercising jurisdiction." *Id.* at 251 (internal quotations and citations omitted).

[85] *Foster-Miller,* 46 F.3d at 151 (quoting *Ticketmaster*, 26 F.3d at 211).

[86] *Composite*, 988 F.Supp. 2d at 73.

[87] *Id.*; *see also Pritzker*, 42 F.3d at 64 (noting under this factor "the enormous inconvenience that might result from forcing Pritzker to sue elsewhere—theoretically, in every jurisdiction in which a financier is located—despite ongoing litigation in a forum-based court").

Despite clear precedent to the contrary, Ruger nevertheless argues that the existence of personal jurisdiction over other defendants in the forum should not influence this Court's analysis of the third gestalt factor.[88] Once again, Ruger misreads *Katz*. The district court there did not, as Ruger suggests, bar taking into account the plaintiff's convenience in avoiding piecemeal litigation.[89] It simply held that, in light of the other compelling reasons for questioning the convenience of plaintiff's choice of forum, the ability to sue all defendants in a single forum did not "tip the scales in favor of the Plaintiffs under this prong."[87] Here, in stark contrast, substantial connections exist among Ruger, other Defendants, the Government's claims, the Government's injuries, and this forum. The Government's interest in litigating in a single forum "tips the scales" decisively in its favor on this prong.

### 4.    Administration of justice

The judicial system's interest in obtaining the most effect resolution of the controversy is "[u]sually . . . a wash,"[90] but "the administration of justice counsels against furcation of the dispute among several different jurisdictions."[91] "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."[92] Courts have thus consistently found the fourth gestalt factor weighs in favor of exercising jurisdiction when doing

---

[88] Ruger Mem. 9, n. 4 (citing *Katz*, 244 F. Supp. 3d at 249).

[89] Indeed, the court later expressly acknowledged First Circuit precedent "recogniz[ing] that the interest of judicial economy 'counsels against furcation of a dispute among several different jurisdictions.'" *Id*. at 251 (quoting *Pritzker*, 42 F. 3d at 64).

[90] *Nowak*, 94 F.3d at 718.

[91] *Moura*, 337 F. Supp. 3d at 99 (quoting *Pritzker*, 42 F.3d at 64); *see also Bartow*, 53 F. Supp. 2d at 528 ("Generally, this factor is a wash, unless the Court perceives the threat of piecemeal litigation").

[92] *Id*. (quoting *Pritzker*, 42 F.3d at 64).

so will avoid piecemeal litigation.[93] Massachusetts is therefore the most efficient and effective forum for the Government to litigate its claims.[94]

### 5.      Pertinent policy arguments

For the final "gestalt" factor, the Court "consider[s] the common interests of all sovereigns in promoting substantive social policies."[95] The United States and Mexico share an interest in ensuring that firearms manufactured and distributed in the United States are not trafficked into Mexico. The Government's ability to seek efficient and effective redress in a convenient forum weighs in favor of jurisdiction, especially where litigating here does not burden Ruger.[96] Ruger offers no argument related to this factor, thus conceding that it does not weigh against the exercise of jurisdiction.

---

[93] *See e.g. id.* (because of the possibility that piecemeal litigation would result if the court did not assert jurisdiction, "the most efficient resolution of this litigation is likely in the Commonwealth"); *Composite,* 988 F. Supp. 2d at 73 (the justice system has an interest in having "all three defendants present in the same forum" because "[i]f defendants [ ] are dismissed, plaintiff will have to commence parallel litigation in another forum"); *Lewis v. Dimeo Const. Co.*, 2015 WL 3407605, at *6 (D. Mass. May 27, 2015) ("insofar as this factor favors either party, it supports hearing this case in Massachusetts so as to avoid the possibility of piecemeal litigation").

[94] Notably, Ruger does not challenge the Court's jurisdiction based on this factor.

[95] *Sawtelle*, 70 F. 3d at 1395.

[96] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 308-312 (1980) (Brennan, J., dissenting) (suggesting that the concept of long-arm jurisdiction must adjust as technological advances blur boundaries between states, and litigation in a "foreign" state no longer inconveniences a defendant as it did "long ago when communication and travel over long distances were slow and unpredictable and when notions of state sovereignty were impractical and exaggerated.").

## II.     IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS JURISDICTIONAL DISCOVERY

The Government has satisfied its burden of establishing a prima facie case of personal jurisdiction over Ruger. But should the Court harbor doubt, the Government respectfully requests the opportunity to conduct jurisdictional discovery. "[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense."[97] In determining whether the Government has "diligently made out a 'colorable case' of personal jurisdiction, the Court must determine if [it] ha[s] 'presented facts to the court which show why jurisdiction would be found if discovery were permitted.'"[98]

Discovery from Ruger, the other Defendants, and major distributors would provide additional and updated evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to distributors, those distributors' sales to dealers throughout the nation, and similar information.

## CONCLUSION

To defeat Ruger's motion challenging personal jurisdiction, the Government need only establish a prima facie case that jurisdiction exists. It has done so. Ruger's motion should therefore be denied.

---

[97] *Luxottica Group, S.p.A. v Lee*, No. 4:21-cv-10934-TSH, 2021 WL 3116171, at *3 (D. Mass. 2021) (quoting *Sunview Condo. Ass'n v. Flexel Int'l*, 116 F.3d 962, 964 (1st Cir. 1997)).

[98] *Sun Life Assur. Co. of Canada v. Sun Bancorp. Inc.*, 946 F. Supp. 2d 182, 192 (D. Mass 2012) (Saylor, J.) (quoting *U.S. v. Swiss Am. Bank, Ltd.*, 274 F. 3d 610, 626 (1st Cir. 2001)).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.


Dated: January 31, 2022                          Respectfully submitted,

                                                 /s/ *Steve D. Shadowen*
                                                 Steve D. Shadowen (pro hac vice)
                                                 Richard M. Brunell (BBO# 544236)
                                                 Nicholas W. Shadowen (pro hac vice)
                                                 SHADOWEN PLLC
                                                 1135 W. 6th Street, Suite 125
                                                 Austin, TX 78703
                                                 Phone: 855-344-3298
                                                 sshadowen@shadowenpllc.com
                                                 rbrunell@shadowenpllc.com
                                                 nshadowen@shadowenpllc.com

                                                 /s/ *Jonathan E. Lowy*
                                                 Jonathan E. Lowy (pro hac vice)
                                                 BRADY
                                                 840 First Street, N.E. Suite 400
                                                 Washington, DC 20002
                                                 Phone: 202-370-8104
                                                 jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: January 31, 2022                    Respectfully Submitted,


                                           /s/ *Steve D. Shadowen*
                                           Steve D. Shadowen