Exhibit 2

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS,<br><br>      Plaintiff,<br><br>vs.<br><br>SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS MANUFACTURING, INC.; BERETTA U.S.A. CORP.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S MANUFACTURING COMPANY LLC; GLOCK, INC.; STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC. D/B/A INTERSTATE ARMS,<br><br>      Defendants. | Case No.: 1:21-cv-11269-FDS |

# PLAINTIFF'S FIRST EXPERT REPORT ON
# THE TORT LAW OF MEXICO

# January 31, 2022

1

## I.   SCOPE OF ASSIGNMENT

1.      We, José Ramón Cossío-Díaz, Juan Carlos Marín G. and Roberto Fernández del Valle M., being over 18 years of age, declare as follows under penalty of perjury.

2.      We have been asked by counsel for Plaintiff Estados Unidos Mexicanos to provide our initial views on the broad outlines of, and some specific topics within, the law in Mexico involving the negligence of one party causing harm to another, the subject known in the United States as tort law. We understand that this case is in its early phases, and the issues are likely to be refined as the case proceeds. We reserve the right to provide further or more particuar opinions and analyses as the matters warrant.

## II.   QUALIFICATIONS AND REMUNERATION

3.      I, José Ramón Cossío-Díaz, was a Judge of the Supreme Court of Justice of Mexico from December 1, 2003 to November 30, 2018. From that position I had the opportunity to analyze and resolve a wide variety of cases, given the broad powers of the Mexican Supreme Court. Thus, for example, matters of human rights, criminal and civil law, civil liability, contracts, administrative responsibilities or corruption, among many others. Between 1995 and 2003 I served as a Dean of the Law School at the Instituto Tecnológico Autónomo de México. I belong to several academic, scientific and professional associations both in Mexico and abroad. I hold a law degree from the Universidad de Colima, Masters degrees from the Center of Constitutional Studies of Madrid and from the Universidad Nacional Autónoma de Mexico as well as a JSD from the Univesidad Complutense of Madrid.

4.      As Exhibit A, I attach an updated version of my curriculum vitae and list of notable representations and the matters in which I have recently testified.

5.      I, Roberto Fernández del Valle M, am a lawyer, with more than 20 years of experience representing clients during trials on compliance with different types of contracts, class actions, conflicts between shareholders, civil liability, real estate matters, recovery of past due portfolios, as well as pain and suffering matters, mediation and arbitration processes, among others. As a professor, I teach civil obligations at the Universidad Iberoamericana. I am licensed to practice Law in Mexico.

2

6.      As Exhibit B, I attach an updated version of my curriculum vitae and list of notable representations and the matters in which I have recently testified.

7.      I, Juan Carlos Marín G., am currently a Law Professor and published author. Since 2002 I teach Civil Law and Civil Liability at the *Instituto Tecnológico Autónomo de México* (, 2002-2017) and *Tecnologico de Monterrey* (TEC, 2018- to date). I have participated in projects regarding civil liability for damages to free competition, environmental damages and others, involving Government, International Organizations and the private sector. I am the author of books regarding patrimonial liability of the State (2004), injunctive relief in civil proceeding (2004) and Tort liability in the United States (2013). I hold a law degree from *Universidad de Chile* and a J.D. from *Universidad Carlos III de Madrid*.

8.      As Exhibit C, I attach an updated version of my curriculum vitae and list of notable representations and the matters in which I have recently testified.

9.      We are each being compensated at the rate of $200 per hour for time spent. Our fees are not in any way contingent on the outcome of this litigation.

## III.   MATERIALS CONSIDERED

10.      In preparing this report, we considered the Plaintiff's Complaint dated August 4, 2021, and we considered and relied on the legal materials that we cite in this report.

## IV.   ANALYSIS

### Introduction

11.      Mexico, like the rest of the Latin American countries, began building its own legal framework once emancipation from Spain was achieved. As was common to these countries, the first laws passed in the first half of the 19th century were related to the form of government that the new nation would adopt. The codification of substantive laws -civil, criminal, and commercial- as well as procedural laws -civil and criminal- was reserved for the second half of the century.

12.     Regarding civil codification, despite some attempts developed in certain states of the Mexican nation, the first Code that the country had was the Civil Code of the Federal District and Territory of Baja California of 1870, reformed in 1884. This legislation had as its direct antecedent, as it could not be otherwise, the old peninsular law that had governed the Viceroyalty of New Spain for almost three hundred years, the French civil law contained in the Code of 1804 and the draft Civil Code of García Goyena.

13.     In the twentieth century, as a result of the revolutionary changes that the country underwent at the beginning of that century, a new Civil Code was enacted in 1928 and became effective in 1932. This Code was originally called the Civil Code for the Federal District in common matters and for the entire Republic in federal matters.

14.     In 1999, however, with the amendments made to the constitutional text, the Legislative Assembly of the then Federal District was given the power to legislate on civil matters. As a result, in 2000, the Civil Code of 1928 was renamed as the Civil Code for the Federal District. In this same year, by Congress decree, at the federal level, the Civil Code of 1928 was renamed as the Federal Civil Code (FCC).

15.     What was a single Code from 1928 to 1999, became two different Codes as of 2000. In this report we will refer to the last of the aforementioned Codes.

**Tort Liability**

16.     This report analyzes aspects of the tort liability system in force in Mexico.

17.     Traditionally, it has been understood that a person is liable when they are subject to the obligation of repairing the damage suffered by another one.[1] In civil law, this obligation is fulfilled through the compensation of damages for the harm and injury suffered. The object of the civil liability action consists in the monetary reparation of those damages and injuries, so that their economic consequences are ultimately borne by the person who causes them.

18.     The models of attribution of liability that have traditionally coexisted in this matter are two: (i) liability for negligence -called in Mexico subjective liability- which makes the party that causes the damage liable on condition that the latter has acted with fault or fraud; and

---

[1] Fausto Rico A.; Patricio Garza V.; and Mischel Cohen C. Tratado teórico práctico de derecho de obligaciones. Porrúa. Mexico. 2015, p.691. What the authors understand as civil liability in the strict sense.

(ii) strict or objective liability, which establishes the obligation to repair any damage that occurs in the exercise of a certain risky activity, regardless of the diligence used.[2]

19.     Both models of attribution have been included in Mexican civil legislation. Indeed, the FCC −which regulates this matter in Chapter V (Obligations arising from unlawful acts), Title One (Sources of Obligations), Articles 1910 to 1934 bis− regulates both the so-called subjective or fault-based liability system and the objective or risk-based liability system.

20.     The first is provided for in Article 1910: "Whoever, acting unlawfully or against good customs, causes damage to another, is obliged to repair it, unless he proves that the damage was caused as a consequence of fault or inexcusable negligence of the victim."

21.     The second is provided for in article 1913: "When a person makes use of mechanisms, instruments, devices or substances dangerous by themselves, by the speed they develop, by their explosive or inflammable nature, by the energy of the electric current they conduct or by other analogous causes, they are obliged to respond for the damage they cause, even if they do not act unlawfully, unless they prove that such damage was caused by the fault or inexcusable negligence of the victim."

22.     The former relies on the idea of fault (wrongfulness) as the basis of tort liability, while the latter is based on the idea of risk associated with the use of mechanisms, instruments, devices, or substances that are dangerous in themselves.

---

[2] The Supreme Court has stated: "Civil liability entails the obligation to compensate for damages caused by a breach of the obligations assumed (contractual source) or by virtue of a wrongful act or risk created (non-contractual source); hence, if possible, the repair of the damage should consist of the establishment of the situation prior to it, and when this is impossible, in the payment of damages. Now, tort liability may be of a nature: 1) objective, derived from the use of dangerous objects that create a state of risk for others, regardless of the fact that the agent's conduct was not negligent, and that he did not act unlawfully, which is based on an element outside the conduct; or 2) subjective, which derives from the commission of an unlawful act that, for its configuration requires an unlawful, negligent and harmful conduct." Amparo directo 16/2012. July 11, 2012. Five votes of the ministers Jorge Mario Pardo Rebolledo, José Ramón Cossío Díaz, Guillermo I. Ortiz Mayagoitia, Olga Sánchez Cordero de García Villegas, and Arturo Zaldívar Lelo de Larrea; Justices José Ramón Cossío Díaz, Olga Sánchez Cordero de García Villegas and Arturo Zaldívar Lelo de Larrea reserved their right to cast a concurring vote. Speaker: Jorge Mario Pardo Rebolledo. Secretary: Rosa María Rojas Vértiz Contreras. Digital Record: 2005542. Instance: First Chamber. Tenth Epoch. Subject Matter(s): Civil. Thesis: 1a. LII/2014 (10th.). Source: Gazette of the Judicial Weekly of the Federation. Book 3, February 2014, Volume I, page 683. Type: Isolated.

23.     In this report we will focus on the system of subjective liability.[3]

## Elements of Subjective Civil Liability

24.     Subjective liability is the most widespread model of attribution of liability in modern law. In Mexican law it constitutes the general rule, so that it is applicable to all cases that are not governed by a different special rule and that do not fall within the scope of strict civil liability. It should be noted that the tort liability system in Mexico followed the tradition of French law by establishing a general liability clause for negligent acts by the tortfeasor. Unlike in U.S. law, there are no different categories of torts in the Mexican legal system.

25.     The elements that make up this civil liability system are the following: (i) that there is an action or omission committed with fault (in a broad sense that includes negligence and willful misconduct); (ii) that it produces damage; and (iii) that there is a causal relationship between that action or omission and the damage produced.

26.     These elements must be proven, as a general rule, by the person claiming damages in the respective civil liability suit[4].

---

[3] Therefore, neither the strict civil liability (art. 1913), nor the subjective liability for the acts of others (vicarious liability) provided for in articles 1919 to 1928 of the FCC, nor the subjective liability for the acts of things regulated in articles 1929 to 1933 of the FCC will be the object of this report.

[4] This has also been pointed out by the courts in Mexico: "The damage can be pecuniary or moral, although both types can concur when produced by the same event, for example, in the case of physical injuries, and its accreditation requires, in the case of medical civil liability, the proof that the injuries were produced and it was the injurious behavior of the medical professional that caused the violation of physical integrity, that is to say, the existence of a causal link between one and the other. Thus, the general rule that governs in this matter is applied, enunciated by the doctrine and the first part of article 1910 of the Civil Code for the Federal District, whose text shows the behavior, when referring to the wrongful act, the damage, and the causal relationship, when pointing to the person responsible for the damage and the conduct of the latter as the cause of that injury. If these three elements are not met, the claim for civil liability, whether contractual or non- contractual, for damage arising from the exercise of the medical activity can in no way be successful. The demonstration of these elements does not escape the general rules of evidence provided for in Articles 281 and 282 of the Code of Civil Procedures for the Federal District. Thus, the plaintiff who claims that the damage was caused by the doctor must prove the harm and the fault of the professional, as well as the causal link between the two [...]". FOURTH COLLEGIATE COURT IN CIVIL MATTERS OF THE FIRST CIRCUIT. Amparo directo 812/2010. Alfredo Soto Rodríguez. February 11, 2011. Unanimous vote. Speaker: Francisco J. Sandoval López. Secretary: Raúl Alfaro Telpalo. Digital record: 160354. Instance: Collegiate Circuit Courts. Tenth Epoch. Subject Matter(s): Civil. Thesis: I.4o.C.329 C (9th.). Source: Semanario Judicial de la Federación: Judicial Weekly of the Federation and its Gazette. Book III. January 2012, Volume 5, page 4605. Type: Isolated.

**Action or Omission Committed with Fault**

27.     The reason for attributing liability to a third party in a fault-based system lies in the fact that the damage has been caused by its faulty action or omission (unlawful in the terms of Art. 1910), i.e., it has been the result of an action or omission that breaches a standard of care.

28.     The FCC does not define the concept of fault. The doctrine has had no problem in establishing that the standard of care, i.e., the level of care expected of a person, is based on the figure of the "reasonable man"; the "good father of a family" −inspired by the figure of the *pater familias* in Roman law− or the "diligent person."

29.     In this case, the conduct of the person who caused the damage is compared with that which could be expected of the "diligent person," to establish whether his action was negligent or not.

30.     The standard of care may be established by Congress through the codification of rules of conduct aimed at avoiding accidents (as occurs with the Traffic Regulations of Mexico City), or it may be the result of a non-legislated rule, defined by the judges resorting to good customs or the general principles of law (art. 19 and 1910 FCC).

31.     If the action of the party causing the damage infringes a general rule (Law or Regulation), the fault is considered proven by the mere violation of the general rule. This is known in doctrine as fault per se.

32.     Fault in tort liability in Mexico is generally not graded, except when it refers to the fault of the victim, as an element that serves to exonerate the defendant from paying damages. This is a qualified fault. The Congress speaks of inexcusable fault of the victim (art. 1910 FCC).

33.     Although, as we have stated, as a general rule, fault is not graded in tort liability in Mexico, Congress takes into account the actions of the person causing the damage to eventually increase the amount of the compensation for moral damages in accordance with the provisions of article 1916, fourth paragraph.[5]

---

[5] "The amount of the compensation shall be determined by the judge taking into account the injured rights, the degree of responsibility, the economic situation of the responsible party, and that of the victim, as well as the other circumstances of the case". (Emphasis added).

## Damage: concept, principles, and types of damage.

34.    <u>Concept.</u> Damage may be understood as any detriment or impairment to the estate of a person, whether in his possessions, his person, or his feelings. Damage is a *sine qua non* requirement of civil liability. This is translated into the following principle: without damage there is no possible compensation. In the tort law of Mexico, any person or legal entity that has suffered damage may bring a viable tort claim. This includes governmental entities.

35.    The fundamental principle governing damages −particularly the so-called pecuniary damage− is that of full reparation. This principle is even enshrined in the country's Constitution.[6]

36.    The aforementioned principle has been applied by the Supreme Court to declare unconstitutional certain restrictions that Congress had established in the area of compensation for damages.[7]

---

[6] Article 20. "The criminal process shall be accusatory and oral. It shall be governed by the principles of publicity, contradiction, concentration, continuity, and immediacy. [...]. C. Rights of the victim or injured party: [...]. IV. That the damage be repaired. In appropriate cases, the Public Prosecutor's Office shall be obliged to request reparation for the damage, without prejudice to the possibility that the victim or injured party may request it directly, and the judge may not absolve the convicted person from such reparation if he has issued a conviction." To this effect, it has been ruled: "The right to full compensation is a substantive right, whose extension must be protected in favor of the governed, and which should not be restricted unnecessarily. Therefore, a compensation limited to ceilings or rates by Congress is not fair, because it is the judge who must quantify it based on criteria of reasonableness, since he is the one who knows the particularities of the case and, therefore, can determine it with justice and equity. Consequently, the integral reparation of the damage, in the cases of compensation, must contain the qualifiers of sufficient and fair, so that the affected party can meet all his needs, in a way that allows him to lead a dignified life." (Emphasis added). THIRD COLLEGIATE COURT OF THE TWENTY-SEVENTH CIRCUIT. Amparo directo 171/2017. Roberto Carlos Ramírez Pérez and another. November 15, 2017. Majority of votes. Dissenting: Selina Haidé Avante Juárez. Speaker: Jorge Mercado Mejía. Secretary: Dulce Guadalupe Canto Quintal. Digital record: 2017315. Instance: Collegiate Circuit Courts. Tenth Epoch. Subject Matter(s): Constitutional, Civil. Thesis: XXVII.3o.66 C (10a.). Source: Gaceta del Semanario Judicial: Gazette of the Judicial Weekly of the Federation. Book 55. June 2018, Volume IV, page 3189. Type: Isolated.

[7] This was the case, for example, with the cap on lost profits due to the death of the victim in the Civil Code of the State of Querétaro. Amparo directo en revisión 5826/2015. June 8, 2016. Unanimity of four votes of justices Arturo Zaldívar Lelo de Larrea, Jorge Mario Pardo Rebolledo, Norma Lucía Piña Hernández, who reserved her right to formulate a concurring vote, and Alfredo Gutiérrez Ortiz Mena. Absent: José Ramón Cossío Díaz. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Arturo Guerrero Zazueta. Digital Record: 2018641. Instance: First Chamber. Tenth Epoch. Subject Matter(s): Constitutional. Thesis: 1a. CXCVI/2018 (10th.). Source: Gazette of the Judicial Weekly of the Federation. Book 61. December 2018, Volume I, page 288. Type: Isolated.

37.     The classification of damages is divided into two main categories: (i) material or patrimonial damages, on the one hand; and (ii): moral or extra-patrimonial damages, on the other.[8]

**Material or Pecuniary Damage.**

38.     Material damage is further subdivided into: a) consequential damage, on the one hand; and loss of profits −lucrum cessans− on the other.

39.     a) Emerging damage: emerging damage −or simply damage in Mexican law− is defined in Art. 2108 of the FCC: "Damage is understood as the loss or impairment suffered in the estate due to the failure to comply with an obligation." It is the effective loss suffered by the estate of a person.

40.     For example, if someone negligently damages a vehicle or injures a person's arm, the cost of repairing the vehicle and the injuries sustained constitute consequential damages.

41.     b) Loss of profits −lucrum cessans− known as loss in Mexican civil law. It is the benefit that the estate of a person ceased to receive as a consequence of the unlawful activity carried out by the other party. It is provided for in Art. 2109: "The deprivation of any lawful gain, which should have been obtained with the fulfillment of the obligation, is considered a loss."

42.     In the above examples, assume that the damaged vehicle was a cab, and the injured person was a street vendor. Both were unable to work for two weeks. This time without income for the cab driver and for the peddler constitutes the loss of earnings or loss that should be compensated.

---

[8] For example: Amparo directo en revisión 5490/2016. March 7, 2018. Five votes by Ministers Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, who reserved his right to formulate clarifying vote, Jorge Mario Pardo Rebolledo, Alfredo Gutiérrez Ortiz Mena, and Norma Lucía Piña Hernández, who voted with the sense, but with a caveat in the considerations. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Digital record: 2018606. Instance: First Chamber. Tenth Epoch. Subject Matter(s): Civil. Thesis: 1a. CCXXI/2018 (10th.). Source: Gazette of the Judicial Weekly of the Federation. Book 61. December 2018, Volume I, page 281. Type: Isolated.

43.     Both categories must be compensated in accordance with the principle of full reparation referred to above.[9]

**Moral or Non-Pecuniary Damages.**

44.     Art. 1916 FCC defines moral damages as follows: "Moral damage is understood as the affectation that a person suffers in his feelings, affections, beliefs, decorum, honor, reputation, private life, physical configuration and appearance, or in the consideration that others have of himself. Moral damage shall be presumed to have occurred when the freedom or physical or psychological integrity of persons is unlawfully violated or impaired."

45.     It is a category that has had an enormous development in recent years in the country. Since 2013, the jurisprudence has recognized the figure of punitive damages that we will analyze below.

46.     In the absence of a market that allows us to have certainty as to how this damage is valued, the legal systems have developed various criteria for its compensation. The most widely accepted is the one that states that moral damages must be compensated according to the principle of equity. The judge in each case is in charge of assessing this damage in accordance with the aforementioned principle.

47.     In the case of Mexican law, as we have already mentioned, Congress established in the fourth paragraph of Article 1916 FCC the criteria according to which the compensation

---

[9] Thus: "The Inter-American Court of Human Rights established that integral reparation of the damage implies the reestablishment of the previous situation and the elimination of the effects produced by the violation, as well as compensation for the damage caused. In this sense, it pointed out that "material damage" implies the loss or detriment of the victim's income, the expenses incurred due to the facts and the consequences of pecuniary nature that have a causal link with the consequent facts, which includes, on the one hand, the loss of earnings, which refers to the loss of income of the direct or indirect victim and, on the other hand, the consequential damage, which includes the payments and expenses incurred by the victim or his family members. Therefore, to quantify the amount of the compensation for material damages derived from the patrimonial responsibility of the State, which corresponds, for example, to a person who had a limb amputated because of the irregular administrative activity of the State, the loss of earnings and the consequential damages must be taken into consideration." FOURTH COLLEGIATE COURT IN ADMINISTRATIVE MATTERS OF THE FIRST CIRCUIT. Amparo directo 418/2017. Inés Georgina Lledias Velasco and another. 28 June 2018. Unanimous vote. Speaker: Jean Claude Tron Petit. Secretary: Aideé Pineda Núñez. Digital record: 2018207. Instance: Collegiate Circuit Courts. Tenth Epoch. Subject Matter(s): Administrative. Thesis: I.4o.A.136 A (10a.). Source: Gaceta del Semanario Judicial: Gazette of the Judicial Weekly of the Federation. Book 59. October 2018, Volume III, page 2484. Type: Isolated.

must be quantified. This quantification is monetary, as indicated in the second paragraph of the same provision.[10]

48.     The courts in Mexico have applied international law criteria when making reparations for moral damages.[11]

**Punitive Damages.**

49.     As indicated above, the figure of punitive damages is of recent reception in Mexican law. Its consecration is the result of the action of the Supreme Court based on art. 1916 of the Civil Code (CC) of Mexico City,[12] similar in this part to the FCC.

---

[10] Art. 1916: "[...] When an unlawful act or omission produces moral damage, the person responsible shall have the obligation to repair it by means of a monetary indemnity, regardless of whether material damage has been caused, both in contractual and non-contractual liability. The same obligation to repair the moral damage will have the person incurring in strict liability according to articles 1913, as well as the State and its public servants, according to articles 1927 and 1928, all of them of the present Code."

[11] It has been ruled in this aspect: "The jurisprudence of the Inter-American Court of Human Rights has specified that the payment of compensation for moral damages must include the loss or impairment suffered in the patrimony, feelings, affections, private life or other elements that make up the moral aspect of the economic dependents or beneficiaries of the victim, as well as the funeral expenses incurred, the expenditures made to try to restore health conditions and others, which only the circumstances of the case can determine and which are a direct and immediate consequence of the commission of the event. In other words, the human right to compensation for moral damages in case of loss of human life must imply an integral restitution in favor of the dependent family members, because in terms of Article 63, numeral 1, of the American Convention on Human Rights, if there is the violation of a human right, it arises the guarantee of compensation; however, in the case of the right to life, *restitutio in integrum* is not possible so that it is necessary to seek alternative forms of reparation in favor of the victims' family members and dependents, such as monetary compensation. Consequently, this compensation refers firstly to the damages suffered and these include both material and moral damages, and in order to reach an adequate amount for the damages suffered by the victims, the following parameters must be taken as a starting point: a) Correspond to each one of the families of the victims; b) Consider the age of the victims at the time of their death and the years they lacked to complete their life expectancy and the income they obtained based on their real salary; and, c) In the absence of real salary, or of the respective information, on the minimum monthly salary in force in the country, but estimating the real economic and social situation for the calculation of the compensation." THIRD COLLEGIATE COURT OF THE TWENTY-SEVENTH CIRCUIT. Amparo directo 171/2017. November 15, 2017. Majority of votes. Dissenting: Selina Haidé Avante Juárez. Speaker: Jorge Mercado Mejía. Secretary: Dulce Guadalupe Canto Quintal. Digital record: 2017736. Instance: Collegiate Circuit Courts. Tenth Epoch. Subject Matter(s): Civil. Thesis: XXVII.3o.68 C (10a.). Source: Gaceta del Semanario Judicial: Gazette of the Judicial Weekly of the Federation. Book 57. August 2018, Volume III, page 2651. Type: Isolated.

[12] It ruled: "The punitive nature of the reparation of the damage is derived from a literal and teleological interpretation of Article 1916 of the Civil Code for the Federal District. Said article provides that in the determination of the "compensation," the injured rights, the degree of liability and the economic situation of the responsible party, among other circumstances, must be evaluated. Thus, the judge must not only consider in his sentence those aspects necessary to erase, as far as possible, the damage suffered by the victim, but there are also aggravating factors that must be considered in the amount of the compensation. As can be seen,

50.     In comparative law, the development of tort liability, in several countries, has been the responsibility of judges rather than of the Congress.

51.     The clearest example in this respect is that of the Court of Cassation in France which, based on only five articles of the Civil Code (art. 1382 to 1386, original), which created one of the most relevant sources of obligations in France, together with contractual liability, to which the French Civil Code devoted many more provisions.

52.     Something similar has happened in Mexico. For a long time, tort liability was of lesser importance than contractual liability as a source of obligations. In the last twenty years, however, it has undergone a vertiginous development. This development has been the responsibility of the courts, particularly the Supreme Court.

53.     The figure of punitive damages is framed, precisely, in the aforementioned development.

54.     The First Chamber of the Supreme Court of Justice of the Nation has conceptualized the figure of punitive damages as part of the right to fair compensation in civil law cases, which requires that the respective amount includes a component to compensate the victim's need for justice and punishes the responsible party according to its degree of fault, and another that sets a precedent that discourages similar conduct in future cases.[13]

---

this concept does not only seek to repair the damage to the victim's feelings, but also allows the degree of responsibility of the person who caused the damage to be assessed. Such conclusion is also derived from the legislative background that gave rise to the reform published in the Official Gazette of the Federation on December 31, 1982." Amparo directo 30/2013. J. Ángel García Tello et al. February 26, 2014. Five votes by Ministers Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, who cast a concurring vote, Alfredo Gutiérrez Ortiz Mena, Olga Sánchez Cordero de García Villegas and Jorge Mario Pardo Rebolledo, who cast a concurring vote. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Amparo directo 31/2013. Admivac, S.A. de C.V. February 26, 2014. Four-vote majority of justices Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, Alfredo Gutiérrez Ortiz Mena and Olga Sánchez Cordero de García Villegas. Dissenting: Jorge Mario Pardo Rebolledo, who formulated a dissenting opinion. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Epoch: Tenth Epoch. Record: 2006959. Instance: First Chamber. Type of Thesis: Isolated. Source: Gaceta del Semanario Judicial: Gazette of the Judicial Weekly of the Federation. Book 8. July 2014, Volume I. Subject Matter(s): Civil. Thesis: 1a. CCLXXI/2014 (10th.). Page: 143.

[13] He stated: "Compensation for damages achieves fundamental objectives in terms of social retribution. In the first place, by imposing on the responsible party the obligation to pay compensation, the victim obtains the satisfaction of seeing his or her desire for justice fulfilled. Thus, through compensation, the victim can see that the damage caused to him/her also has adverse consequences for the tortfeasor. On the other hand, compensation has a deterrent effect on harmful conduct, which will prevent future unlawful conduct. Thus, such a measure

55.     The Supreme Court has also stated that punitive damages do not constitute an unjust enrichment for the recipient.[14]

56.     It cannot be ignored that this figure of punitive damages is not native to Civil Law countries, such as Mexico, and that it has been the object of important criticism in these countries. In the case of Mexico, it is desirable that Congress regulates it thoroughly to consolidate a figure that, in certain cases, can be of enormous help to the victim of a wrongful act. In accordance with the current recognition doctrine of punitive damages in Mexico, it is possible to argue that the Government may sue for this type of damages if the requirements set by the Supreme Court are met, specifically, to get the person who has committed the wrongful act to take all the necessary measures to avoid the repetition of the damages that his wrongful conduct caused (as a deterrent effect of this type of damages).

## Causation.

57.     The requirement of causation refers to the relationship between the event for which liability is incurred and the damage caused.

---

fulfills a double function, since individuals will avoid causing harm to avoid having to pay compensation and, on the other hand, it will be economically convenient to bear all the expenses necessary to avoid causing harm to others. This aspect of tort law is known as "punitive damages" and is part of the right to "just compensation." Amparo directo 30/2013. J. Ángel García Tello et al. February 26, 2014. Five votes by Ministers Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, who cast a concurring vote, Alfredo Gutiérrez Ortiz Mena, Olga Sánchez Cordero de García Villegas and Jorge Mario Pardo Rebolledo, who cast a concurring vote. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Amparo directo 31/2013. Admivac, S.A. de C.V. February 26, 2014. Four-vote majority of justices Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, Alfredo Gutiérrez Ortiz Mena and Olga Sánchez Cordero de García Villegas. Dissenting: Jorge Mario Pardo Rebolledo, who formulated a dissenting opinion. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Epoch: Tenth Epoch. Record: 2006958. Instance: First Chamber. Type of Thesis: Isolated. Source: Gaceta del Semanario Judicial: Gazette of the Judicial Weekly of the Federation. Book 8. July 2014, Volume I. Subject Matter(s): Civil. Thesis: 1a. CCLXXII/2014 (10th.). Page: 142.

[14] He pointed out: "A compensation that considers not only the damage suffered, but also the degree of responsibility of the tortfeasor, does not unjustly enrich the victim. In fact, unjust enrichment presupposes that there is no legitimate cause for enrichment, and in this case the compensation is fully justified by the right to fair compensation. Such right orders that all persons who suffer damages be fully compensated, therefore, if by considering the degree of responsibility of the tortfeasor, the victim is fully compensated, such compensation will be fully justified." Amparo directo 30/2013. J. Ángel García Tello and another. February 26, 2014. Five votes by Ministers Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, who reserved his right to formulate a concurring vote, Alfredo Gutiérrez Ortiz Mena, Olga Sánchez Cordero de García Villegas, and Jorge Mario Pardo Rebolledo, who reserved his right to formulate a concurring vote. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Digital Record: 2006805. Instance: First Chamber. Tenth Epoch. Subject Matter(s): Civil. Thesis: 1a. CCXLIV/2014 (10th.). Source: Gazette of the Judicial Weekly of the Federation. Book 7. June 2014, Volume I, page 453. Type: Isolated.

58.     The rules of the FCC relating to subjective civil liability do not contain an express reference to this element, although they imply it. Thus, Art. 1910 addresses cases where a person who, acting unlawfully or against good customs, causes damage to someone else. This provision assumes that there is a necessary causal link between the wrongful act and the damage.[15]

59.     In the context of rules addressing the general effects of obligations, Art. 2110 provides that: "Damages must be the immediate and direct consequence of the non-performance of the obligation, whether they have been caused or must necessarily be caused."

60.     Although the rule reflects the perspective of contract law, doctrine and jurisprudence have concurred that it also applies to tort liability.[16]

61.     There are several theories that attempt to explain this third requirement of civil liability. The two most important are: (i) the doctrine of equivalence of conditions, or *conditio sine qua non*; and (ii) the doctrine of adequate cause.

---

[15] In this regard, the Supreme Court has said: "In cases of domestic violence it must be shown that the psychological damages that the victim suffered or will suffer and the economic costs that she assumed or will assume in the future, derive precisely from the domestic violence committed by the aggressor. Thus, to prove subjective civil liability, it must be proven that the pecuniary and non-pecuniary damages are a consequence of the unlawful act that is being sued." Amparo directo en revisión 5490/2016. March 7, 2018. Five votes by Ministers Arturo Zaldívar Lelo de Larrea, José Ramón Cossío Díaz, who reserved his right to formulate clarifying vote, Jorge Mario Pardo Rebolledo, Alfredo Gutiérrez Ortiz Mena, and Norma Lucía Piña Hernández, who voted with the sense, but with caveat in the considerations. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Digital record: 2018872. Instance: First Chamber. Tenth Epoch. Subject Matter(s): Constitutional, Civil. Thesis: 1a. CCXXIV/2018 (10th.). Source: Gazette of the Judicial Weekly of the Federation. Book 61. December 2018, Volume I, page 474. Type: Isolated.

The Supreme Court has also stated: "In order to establish civil liability for bullying suffered by a minor, the following must be corroborated: (1) the existence of bullying; (2) the physical or psychological damage; and (3) the causal link between the bullying and the damage. When the school is sued, it must also be proven (4) the negligence of the school. Now, to prove the causal link between the defendant's conduct and the damage caused to the plaintiff, it is necessary that the damage experienced is a consequence of the agent's conduct. Otherwise, liability would be imposed on a person who has nothing to do with the damage caused. In this sense, if liability is claimed for bullying by students or teachers, the causal link between the bullying and the physical or mental harm to the victim must be proven. On the other hand, liability for negligence will be proven when it is shown that compliance with their duties of care would have prevented the infringement of the rights of the minor." Amparo directo 35/2014. May 15, 2015. Unanimity of four votes of Ministers Arturo Zaldívar Lelo de Larrea, Jorge Mario Pardo Rebolledo, who cast a concurring vote, Olga Sánchez Cordero de García Villegas, and Alfredo Gutiérrez Ortiz Mena, who cast a concurring vote. Absent: José Ramón Cossío Díaz. Speaker: Arturo Zaldívar Lelo de Larrea. Secretary: Ana María Ibarra Olguín. Digital Record: 2010339. Instance: First Chamber. Tenth Epoch. Subject Matter(s): Constitutional, Civil. Thesis: 1st. CCCXXXV/2015 (10th.). Source: Gazette of the Judicial Weekly of the Federation. Book 24. November 2015, Volume I., page 955. Type: Isolated.

[16] See Fausto Rico A., Patricio Garza V. and Mischel Cohen C. Tratado teórico práctico de derecho de obligaciones. Porrúa. Mexico. 2015, p.703.

62.     The first is a theory that embodies the general requirement that the act for which liability is sought is a necessary condition of the damage. This is crystallized in Art. 1910 when it refers to the person who wrongfully *causes* damage to another.

63.     But just because a condition is *necessary* for a harm to occur does not entail that it is also *sufficient*, i.e., that it can cause harm without the intervention of other causes.

64.     Usually, several causes are involved in the materialization of a tort. According to this first doctrine all the conditions of the wrongful act are considered as equivalent in producing the damage because individually they are all necessary for its materialization.

65.     Although the doctrine of equivalence of conditions has been criticized because it does not distinguish between the different causes that may produce damage, it expresses well the most elementary fact of linking the negligent conduct with the damage. Without this necessary link there is no reason to attribute any responsibility to the party who is charged with civil liability to provide reparations.

66.     As abovementioned, the fact that a condition is necessary to produce damages does not mean that it is a sufficient condition of the damage. In general, whoever produces a damage is not liable for the remote consequences of it (art. 2110). For this reason, the theory of equivalence of conditions must be complemented by means of a normative judgment that makes it possible to *legally* attribute the damage to the faulty act. This is the scope of the doctrine of adequate cause.

67.     The doctrine of adequate cause seeks to establish whether under an expected course of events the faulty act is likely to produce the damage. Therefore, this doctrine excludes liability if the events that are triggered follow an abnormal or extraordinary course to that imposed by the negligent act. The underlying idea of this theory is pre-visibility. This theory discards causes that are not foreseeable or probable to cause the damage (foresight test).[17]

---

[17] Comparative doctrine has pointed out that: "The defendant's conduct is the cause of the harm suffered by the victim if, ex ante, the causation of the harm was foreseeable - not very improbable -. But jurists have never agreed which is an adequate degree of probability under the law -between 0 and 1-; and they have always disagreed as to whether the judgment on probability should consist on a purely subjective prognosis -similar to that carried out in the analysis of malice and fault-, in other words, an analysis that evaluates if an outcome was avoidable or, in the contrary, if the prognosis should be objectively done by an specialized agent that would determine the probability of having certain outcome. Often, these two points of view combine and the

68.     The courts in Mexico have embraced the theory of adequate causation.[18]

69.     For example, the courts in Mexico have concluded that adequate cause "has to do with the reasonable foreseeability and the causally relevant factors. Through probability or reasonable foreseeability, it is possible to objectively impute the damage to the conduct of the person to whom liability is attribute."[19] In the same case, the court concluded that the evidentiary burden is first on the claimant to prove a causal link between the negligent act and the injurious effect. Then the tortfeasor must "prove the force majeure or the fortuitous event"—that some

---

interrogation becomes now "What should we expect from a person given their role in society." Pablo Salvador y Antonio Fernandez. "Causalidad y responsabilidad". 3a ed. Indret. Barcelona. 2006, p.8.

[18] "When a passenger on board a public transportation vehicle suffers a fall that causes him an injury, it can be attributed to the conduct of the driver, to an act of a third party or to the victim himself. Due to this plurality of causes, the legal operator must look for the one that is adequate, efficient or decisive, according to the theory of adequate causation, which is based not on the necessary consequence, but on the probable consequence, the statistically probable result of a certain causal antecedent, or that this is, by itself, sufficient to produce that result; as well as the criterion of the objective imputation that, according to the rule of the degree of proximity of the cause of the damage, has to do with the reasonable foreseeability and the causally relevant factors. Through probability or reasonable foreseeability, it is possible to objectively impute the damage to the conduct of the person to whom liability is attributed, which is compatible with the case of a person who suffers a fall in a bus providing public passenger transportation service and maintains that the conduct of the operator was the cause of the harmful event. This is so, due to the existence of a legal presumption *iuris tantum*, which serves as support of the adequate cause and the objective imputation to the driver, in the case of damages to passengers, established in article 2647 of the Civil Code for the Federal District, which refers to the damage caused to persons by the defective conduct in the handling of the drivers, and for which the carrier must respond, who can only prove against such presumption by demonstrating force majeure or fortuitous event. The legal presumption will lead to infer that, upon proof of the damage suffered by a passenger, it is attributable to the driver the defective conduct in the handling of the vehicle and to this as an adequate cause of the damage, unless proof of any of the exclusions mentioned. From the above, a distribution of evidentiary burdens is derived, in which it corresponds to the passenger, to prove the conduct, the damage and the causal link between both, but it is enough to prove the affectation to have presumably proven the conduct and the causal relationship; and, to the carrier, to prove the force majeure or the fortuitous event, among which other possible causes of the damage different to the estimated adequate or efficient one can be located, based on the observation of the experience and the legal provision. It is also feasible for the latter to prove the inexcusable fault of the victim, since, unlike the contractual duty of the employer, the driver incurs in tort liability in terms of article 1913 of the Civil Code, since he is not part of the contractual relationship of transportation, so that if this possibility exempts the driver from liability, it may also do so with respect to the person obliged to respond for the acts of others, that is, the carrier". FOURTH COLLEGIATE COURT IN CIVIL MATTERS OF THE FIRST CIRCUIT. Amparo directo 332/2012. Rubén Darío Morales Reyes. May 31, 2012. Unanimous vote. Speaker: Francisco J. Sandoval López. Secretary: Raúl Alfaro Telpalo. Amparo directo 333/2012. Grupo Nacional Provincial, S.A. Bursátil. May 31, 2012. Unanimous vote. Speaker: Francisco J. Sandoval López. Secretary: Raúl Alfaro Telpalo. Digital record: 2001748. Instance: Collegiate Circuit Courts. Tenth Epoch. Subject Matter(s): Civil. Thesis: I.4o.C.9 C (10a.). Source: Semanario Judicial de la Federación: Judicial Weekly of the Federation and its Gazette. Book XII. September 2012, Volume 3, page 1966. Type: Isolated. (Emphasis added).

[19] Idem.

unforeseeable event intervened to cause the injury.[20] Like all cases of causation, the determination of adequate cause depends on the particular facts of the case.

70.    Also important is the relationship between the magnitude of the harm caused and the cost to the tortfeasor of taking care not contribute to the harm. "As in every adequate cause case, we must take into account the objective probability and the costs that the tortfeasor would have had to calculate such probability: only those risks that are very expensive to anticipate and foresee should be excluded from responsibility."[21]

71.    Mexican doctrine has also accepted this conception of adequate cause. Bejarano Sánchez, referring to this issue, points out that "situations do not occur in life with the simplicity that is conceptually presented; the concatenation of facts, the weaving or combination of conducts or events that precede an injurious effect, are usually complex."[22]

72.    As it can be seen from a natural perspective, the theory of equivalence of conditions is the only one that explains the scope of Art. 1910 when it refers *to causing damage to another*. From a normative perspective, however, it is the theory of adequate cause that best explains the meaning of the Art. 2110 reference to "immediate and direct consequence" of the non-performance of an obligation. The issue must be assessed in each specific case, according to which the act or conduct was sufficiently foreseeable in order to consider that the harmful effect was caused by it.

73.    There is no rule in Mexican positive law (statute or precedent) that prevents a finding of adequate cause when a third party committed a criminal act. If the tortfeasor could foresee that such a criminal act might occur, then his negligence may still be the adequate cause. Depending on the circumstances of the particular case, failing to guard against a third party's criminal act may be what makes the tortfeasor's conduct negligent. For example, the court

---

[20] Causality being determined according to the facts of each case, is nothing more than the necessary assessment performed by judges in every civil liability trial being adjudicated according to the facts proven by the parties.

[21] Pablo Salvador y Antonio Fernández. "Causalidad y responsabilidad." 3ª ed. Indret. Barcelona. 2006, p. 10.

[22] Manuel Bejarano Sánchez. Obligaciones civiles. 6ª ed. Oxford. México. 2010, p. 256.

concluded that a bus company may be liable for a shooting that occurred inside a bus where the bus company failed to check whether passengers were boarding the bus with guns.[23]

74.     Similarly, there is no rule in Mexican positive law (statute or precedent) that prevents a finding of adequate cause based on the number of steps or links in the chain of causation. The issue is one of fact based on the circumstances of the particular case. Neither is there any rule that prevents a claimant from claiming that he was also injured by conduct that first, or more immediately, injured another person.

**Several Defendants Causing Damage.**

75.     In the Mexican civil liability system, when several persons concur with their action or omission in the materialization of a damage, there is a rule of solidarity among them with respect to the victim of the tort.

76.     Article 2117 of the FCC establishes to this effect: "Persons who have jointly caused damage are jointly liable to the victim for the reparation to which they are obliged in accordance with the provisions of this Chapter."

77.     What is called a "passive joint liability" is regulated in art. art. 1987. "In addition to joint liability, there will be active joint liability when two or more creditors have the right to demand, each one on its own, the total performance of the obligation; and passive joint liability

---

[23] Article 127 of the Ley de Vías Generales de Comunicación establishes, as applicable, that the permit holders of the public transportation service have the duty to protect the passengers and their belongings from the risks that they may suffer due to the rendering of the service, from the moment they board until they disembark from the vehicle. This provision does not specify what should be understood by risks passengers may suffer due to the service it does not indicate whether such risks may derive from mechanical failures of the vehicle, or from the lack of care or negligence of the driver or of the passenger transportation company only. Therefore, if the precept does not limit the term "to protect the passengers from the risks that they may suffer due to the rendering of the service", the judge cannot do so. Therefore, if the bus company does not demonstrate that it has checked the passengers at the moment of boarding, it is responsible for the risks and damages caused by the shooting of a firearm inside the bus, due to its negligence and lack of care that result in the lack of security to the passengers; especially since in the case of federal public passenger service, it is a practice and custom to check the users of the service at the moment of boarding, as robberies and other crimes have increased in the buses, ". EIGHTH COLLEGIATE COURT IN CIVIL MATTERS OF THE FIRST CIRCUIT. Amparo directo 677/2014. January 21, 2015. Majority of votes. Dissenting: Abraham S. Marcos Valdés. Speaker: Ma. del Refugio González Tamayo. Secretary: José Antonio Franco Vera. Digital record: 2009530. Instance: Collegiate Circuit Courts. Tenth Epoch. Subject Matter(s): Civil. Thesis: I.8o.C.25 C (10a.). Source: Gaceta del Semanario Judicial: Gazette of the Judicial Weekly of the Federation. Book 19. June 2015, Volume III, page 2411. Type: Isolated. (Emphasis added).

when two or more debtors have the obligation to, each one on its own, in its entirety, the due performance."

78.     In passive solidarity, each debtor is obligated for the total, *as if he were the only debtor*. Therefore, the payment made by one of them releases all other debtors.

79.     In these cases, comparative doctrine indicates that the debt must be distributed among all the co-perpetrators according to the degree of their fault and their causal contribution to the materialization of the damage.

**Illegitimate Enrichment.**

80.     In Mexican civil law, one of the sources of obligations is illegitimate enrichment.

81.     The FCC regulates this matter in Chapter III (Illegitimate Enrichment), Title One (Sources of Obligations), articles 1882 to 1895.

82.     Article 1882 provides: "They who without cause enrich themselves to the detriment of another is obliged to compensate them for their impoverishment to the extent that they have enriched themselves."

83.     Mexican doctrine states: "All enrichment experienced at the expense of another person must have a cause or legal reason that justifies or explains it, since no one is impoverished without reason for the benefit of another; and when this occurs, it is inferred that the injured party has not had the purpose of benefiting another to his detriment and it would not be equitable to inflict such loss on him. For this reason, the law imposes on the beneficiary the obligation to restitute the amount of their enrichment up to the amount of the impoverishment of another."[24]

84.     This source of obligation has three elements: (i) the impoverishment of the claimant; (ii) the transit of benefits from the claimant to another; and (iii) the lack of legal cause justifying the displacement of assets.[25]

---

[24] Manuel Bejarano Sánchez. Obligaciones civiles. 6th ed. Oxford. Mexico. 2010, p. 200.

[25] In this regard, the courts have stated the following: "The Supreme Court has established that the conditions for the existence of an action for unjust enrichment are:1st. That one person has enriched himself, obtaining something that did not belong to him, that it was not in his estate; 2nd.That another person has suffered

**Public Nuisance.**

85.      The concept of public order is recognized in Mexican civil law, including the doctrine, diverse legislations and in its jurisprudence. It is an indeterminate concept whose primary purpose is to defend the social interest over the particular interest and its interpretation has varied over time, taking into account historical, social, cultural and other factors rooted in the social fabric.

86.      Public order is a set of principles, rules and provisions of a legal nature on which the legal system is based to preserve the goods and values of general interest of society, acting as a limitation to the autonomy of the will of the parties so that such interests prevail over private interests.[26]

87.      In Civil Law, an act contrary to "public order" laws must be considered unlawful[27] and, as a consequence, such act may give rise to a claim for damages through the exercise of an action of contractual and/or non-contractual civil liability.

---

impoverishment, that he has ceased to have something that was in his patrimony or to receive something that belonged to him by right; 3rd. That there is a causal link between both elements, that is to say that the employer's displacement is from the impoverished party to the enriched party; and 4th. That the enrichment is not justified by any legal cause and that the impoverished person has no other legal means to obtain compensation. Amparo directo 7233/58. Arturo Gómez Núñez. April 3, 1961. Unanimity of four votes. Speaker: Alberto R: Vela. Epoch: Sixth Epoch. Record: 803268. Instance: Third Chamber. Type of Thesis: Isolated. Source: Semanario Judicial de la Federación: Judicial Weekly of the Federation. Volume XLVI, Fourth Part. Subject Matter(s): Civil. Thesis. Page: 81.

It has also stated: "Article 1882 of the Civil Code of the Federal District defines illegitimate enrichment in the following terms: 'He who without cause enriches himself to the detriment of another, is obligated to indemnify him for his impoverishment, to the extent that he has enriched himself.' According to the law, illegitimate enrichment and enrichment without cause are synonymous, which means that an enrichment without cause is illegitimate and that not being legitimate, it is without cause. Therefore, there are three elements of this legal figure: first, enrichment, second, to the detriment of another and third, without cause; elements from which the obligation to compensate the impoverished is born, from his impoverishment to the extent of the enrichment". Amparo civil direct 6552/39. Santibanez Felipe. March 12, 1943. Unanimity of four votes. Justice Felipe de Jesús Tena Ramírez did not intervene in the vote on this matter for the reasons stated in the minutes of the day. The publication does not mention the name of the speaker. Epoch: Fifth Epoch. Record: 351446. Instance: Third Chamber. Type of Thesis: Isolated. Source: Semanario Judicial de la Federación: Judicial Weekly of the Federation. Volume LXXV. Subject(s): Civil. Thesis. Page: 6504.

[26] *Cfr*. Domínguez Martínez, Jorge Alfredo, "*Public Order and Free Will*" at Sánchez Barroso, José Antonio (coord.) *A Hundred Years of Civil Law in Mexico 1910-2010. Conferences in honor of Universidad Nacional Autónoma de México on its centenary*, UNAM, Mexico. 2011, p.83.

[27] *Cfr* Article 1830: "Any act against public order laws or good customs is illicit". FCC.

88.     Thus, conduct that violates any provision in force in any type of legal system or the principles they protect enables individuals to initiate a legal action.

89.     The figure gives right to the action *in rem verso* which in Mexican law is provided for in Article 26 of the Code of Civil Procedures for the Federal District: "The enrichment without cause, of one party to the detriment of another, gives merit to the injured party to exercise the action for reparation to the extent that the former was enriched."

90.     This action allows the person who suffered the decrease of his estate to sue and recover what his estate decreased, and which is the cause of the increase of the defendant's estate.

## Product Liability or Defective Products.

91.     Product liability is understood at first as the right of the consumer of a defective product to claim, either from the manufacturer or the distributor, the payment of damages caused by such defect. However, anyone who has been in contact with the defective product or has been affected by its defect may also have a valid claim.

92.     For example, if a company that commercializes steel products, purchases for its facilities certain air filters to prevent particles from being emitted into the environment, and after a few months such filters are shown not to fulfill their purpose. In this case, it is not only the company that purchased the air filters who could file a claim against the filter manufacturer for damages, but also, the workers, neighbors and in general, any person who has been affected.

93.     Thus, product liability can be translated into the obligation of the producer, manufacturer, distributor or importer to compensate for the damages caused by a defective product.

94.     This type of liability can be claimed in Mexico, since the company that markets certain products is liable for having manufactured or marketed a defective product or, as the case may be, if it violates certain principles of law or legal provisions of public order that may give rise to unlawful acts, such company may be attributed subjective civil liability in accordance with the provisions of article 1910 of the FCC.

21

95.     Likewise, the Federal Consumer Protection Act (LFPC for its acronym in Spanish) enshrines as one of its basic principles in consumer relations, that of adequate and clear information on the different products and services,[28] with correct specification of quantity, characteristics, composition, quality and price, as well as on the risks they represent, the failure to provide this type of information may be claimed as an unlawful act and, consequently, giving rise to a right to claim reparation of damages and injuries.

96.     On the other hand, the aforementioned statute provides that in cases where, according to the applicable law, products or services are considered potentially dangerous for the consumer or harmful to the environment or when their dangerousness is foreseeable, the supplier must include directions warning about their harmful characteristics and clearly explain the recommended use or destination and the possible effects of their use, application or destination outside the recommended directions. The supplier shall be liable for the damages caused to the consumer for the violation of this provision.

97.     In addition, the LFPC seeks to protect Mexican consumers, binding all suppliers to inform and respect prices, rates, guarantees, quantities, qualities, measures, interests, charges, terms, restrictions, deadlines, dates, modalities, reservations and other conditions applicable in the commercialization of goods, products or services.[29]

98.     In the case of defective products, the LFPC allows the individual to choose between restitution of the good or service, the termination of the contract or the reduction of the price, and in any case, the return of the payment or compensation when the thing or object of the contract has defects or hidden defects that make it unsuitable for the uses to which it is intended, that diminish its quality or the possibility of its use, or if it does not offer the safety that given its nature is normally expected from it and its reasonable use.[30]

99.     Also, for example, if a company at the time of marketing a product violates not only regulations but also a duty of care or vigilance, it may be held jointly liable with the other party who contributed to the damage. This type of damage is usually claimed as a violation of provisions of public order or good customs, invoking as a wrongful act the infringement of any

---

[28] *Cfr*. Article 82, LFPC.

[29] *Cfr*. Article 7, *Ibidem*.

[30] *Cfr*. Article 41, *Ibidem*.

type of rule or a legal duty of vigilance or care, or having chosen the person who caused the damage.

100.    Another hypothetical case that could illustrate the above would be if, for instance, a company engaged in the manufacture of brakes for automobiles that omitted to comply with certain quality control or makes some error in its design and its omission causes a series of vehicles to have accidents, having participated in the production chain of the vehicle and not having observed the quality controls that by law or in attention to a duty of care it should have observed. Whoever has suffered the damage may hold such company liable for having allowed the commercialization of a defective product in the market, involving the brand that owns the vehicle, the car dealer that sold it, and in general all those who in some way have been involved in the commercial chain.

**Abbreviations**

FCC: Federal Civil Code

LFPC: Federal Consumer Protection Act (for its acronym in Spanish).

_____
José Ramón Cossío-Díaz

_____
Juan Carlos Marín G.

_____
Roberto Fernández del Valle M.

# EXHIBIT A

# José Ramón Cossío Díaz

## Curriculum Vitae

I was born in Mexico City in 1960. I studied law at the University of Colima. Subsequently, I obtained a Master's Degree in Constitutional Law and Political Science at the *Centro de Estudios Constitucionales de Madrid* and a Ph.D. from the Faculty of Law of the *Universidad Complutense de Madrid* with *summa cum laude*. Subsequently, I coursed a Master's degree from the Law School of the Universidad Nacional Autónoma de México.

Throughout my undergraduate studies, I worked as a legal intern in a renowned law firm in the city of Colima. In 1983, I began my career as a professor teaching at various academic institutions, especially at the *Instituto Tecnológico Autónomo de México* (ITAM), where I also held the position of Head of the Law Department from 1995 to 2003.

My professional training has been divided between teaching, research and public service. My main area of research is constitutional law, although I have also conducted research in other branches of law. I have directed undergraduate, master's and doctoral theses of students from various Mexican and foreign universities. I have given several lectures, courses, seminars, presentations and speeches at various universities in Mexico and abroad.

I have coordinated 13 books, compiled 8 and written 31. I have been awarded several prizes and recognitions, including the following: the National Research Award 1998, in the area of Social Sciences; the National Award of Sciences and Arts 2009, in the field of History, Social Sciences and Philosophy; the National Communication Award *José Pagés Llergo* in 2010 and 2017; the "*Nacional Malinalli 2011*" for the Promotion of the Arts, Human Rights and Cultural Diversity; and the National Jurisprudence Award 2019, as well as 9 honorary doctorates.

I am a member of several academic, scientific and professional institutions, including: the National System of Researchers as a National Researcher Level III; the Mexican Academy of Sciences; the American Law Institute; the Mexican Bar Association; the Advisory Council of Sciences; the Board of Trustees of the National Institute of Genomic Medicine; the Advisory Council of the Center for U.S. and Mexican Law of Houston University; the Mexican Academy of International Law; the National Academy of Medicine; *El Colegio Nacional*; the Mexican Society of Public Health; the Academic Council of the Chair of Ibero-American Legal Studies; of the *Universidad Carlos III de Madrid*; of *Tirant lo Blanch*; of the Advisory Council of the *Universidad Autónoma Metropolitana*; of the Mexican Institute of Mediation and of the Mexican Academy of History.

I was a minister of the Mexican Supreme Court from December 1, 2003 to November 30, 2018. In that position, I had the opportunity to analyze and resolve a wide diversity of cases, given the broad competencies of the Mexican Supreme Court. Thus, for example, in matters of human rights, crimes, contracts, administrative responsibilities or corruption.

I am currently an associate professor-researcher at *El Colegio de México*, I direct the *Instituto para el Fortalecimiento del Estado de Derecho, A.C.* (IFED) and I chair the *Instituto para el Fortalecimiento del Estado de Derecho, A.C.* (IFED). (IFED) and chair the Mexican Mediation Institute (IMM), an association that brings together the most important law firms in Mexico.

The cases in which I served as an expert witness in the last four years are:

1) Zimmer Biomet Holdings vs Instituto Mexicano del Seguro Social

2) Fresenius Medical Care A.G & Co KGaA and Fresenius Medical Care Holdings vs Instituto Mexicano del Seguro Social

3) The Brewers of Europe vs el Consejo Regulador del Tequila

4) Electricidad Águila de Tuxpan S. de R.L. de C.V vs Comisión Federal de Electricidad (coárbitro)

5) Servicios Digitales Lusad S.de R.L. de C.V. vs  Secretaría de Movilidad (SEMOVI)

6)Econ Soluciones Energéticas Integrales, S.A.P.I. de C.V y Banco Interamericano de Desarrollo

# EXHIBIT B

Santamarina
+ Steta



**Roberto Fernández del Valle M.**
Partner
Mexico City Office
+52 55 5279 5490
rfernandez@s-s.mx

Roberto has more than 20 years of experience representing clients during trials on real estate matters, recovery of past due portfolios, compliance with different types of contracts, class actions, conflicts between shareholders, civil liability, as well as pain and suffering matters, mediation and arbitration processes, among others.

His outstanding work has strengthened his position in Mexico as an expert in litigation, commercial arbitration and insolvency proceedings.

**Education**
JD
2003, Universidad Iberoamericana de la Ciudad de México, Mexico

Legal Specialization in Civil Law
2011, Escuela Libre de Derecho, Mexico

Diploma in the New Constitutional Regulation of Human Rights and Protection
2012, Escuela Libre de Derecho, Mexico

LL.M in Constitutional Law and Human Rights
2015, Universidad Panamericana, Mexico

Diploma in Anti-Corruption
2017, ICC Mexico-Universidad Panamericana, Mexico

LL.M in International Dispute Resolution and Arbitration
2020-2022 Queen Mary University of London, United Kingdom *Candidate*.

**Languages**
Spanish, English

**Associations and Affiliations**

+ Asociación Nacional de Abogados de Empresa, Colegio de Abogados, A.C. (ANADE)
+ International Chamber of Commerce México (ICC Mexico)

Santamarina
+ Steta

+ International Bar Association (IBA)
+ Mexican Mediation Institute (IMM)
+ Spanish Arbitration Club (CEA)
+ Latin American Arbitration Association (ALARB)

**Educational Experience**

Professor of Obligations II at the Universidad Iberoamericana, Mexico.

**Publications**

+ "Civil Responsibility Regarding Diffuse Rights and Interests Protected by Class Actions", Legal Encyclopedia to commemorate the centenary of the Escuela Libre de Derecho, Obligations Volume, Editorial Porrúa, 2012.
+ "The Role of the Judge in the Summoning of Third Parties Bound by the Federal Law of Environmental Liability", Derecho Ambiental y Ecología, magazine, December 2013- January 2014.
+ Co-author of the "Dispute Resolution: Mexico Chapter", in "Getting the Deal Through", published by Law Business Research, August 2016, 2017 and 2018, "International Arbitration 2019", published by Chambers and Partners.
+ Co-author of "International Arbitration 2019", published by Chambers and Partners.
+ Co-author of "Litigation Financing: A tool for companies in dispute resolution?", Pauta Magazine, ICC Mexico, July 2020.
+ Co-author of "Commercial Arbitration and Mediation: efficient and effective alternatives for dispute resolution in times of pandemic", Pauta Magazine, ICC Mexico, March 2021.

**Acknowledgements**




# EXHIBIT C

# CURRICULUM VITAE

Juan Carlos Marín González

Av. Revolución 756, Nonoalco, Benito Juárez, 03700 Mexico City, CDMX

Mexico

Phone: +52 55 5591778192

Email: jcmaring@tec.mx

## II. ACADEMIC DEGREE

-JD. Universidad de Chile (1989)

-Ph.D in Law. Universidad Carlos III de Madrid, Spain (2001)

## III. PROFESSIONAL DEGREE

-Attorney (1994)

## IV. WORK EXPERIENCE

-2018 - Full time professor at Tecnologico de Monterrey (TEC)

-2002 -2017. Full time professor at ITAM (Mexico)

## V. RESEARCH

Eighteen years' experience as a researcher in the law of Torts and Civil Procedure.

Projects:

- OECD - Ministry of Economy project, 2017-2018, in the field of civil liability for damages to free competition in Mexico. Project leader - Pedro Caro de Suosa (pedrocarodesuosa@oecd.org).https://www.oecd.org/daf/competition/individual-and-collective-private-enforcement-of-competition-law-insights-for-mexico-2018.htm

- Project contracted by the Safety, Energy, and Environment Agency (ASEA México) and EnergeA to draw up new multisector hydrocarbons regulations. Part relating to civil liability damages to the environment derived from hydrocarbons spillage. Years 2016-2017. Project leader: Roberto Ortega Lomelín (EnergeA). (http://structura.com.mx/energea/).

- Project contracted by ADIGAS: "Analysis of provisions establishing obligatory insertion of the brand as means of identification of transportable recipients in liquid gas distribution market". Year: 2015. Project leader: Víctor Figueroa Aeyón (adigas@hotmail.com).

 - Project undertaken by the Federal Commission for Economic de Competition (CFCE): "Normative Design of Federal Commission for Economic de Competition Regulations and Bylaws". Year: 2014. Project leader: Josefina Cortés Campos (cortescampos.j@gmail.com). In COFECE, Alejandra Palacios Prieto.

- Project to draft the new Chilean Civil Procedural Code, 2005 - 2009. Project contracted by the Chilean Ministry of Justice with the Faculty of Law of Universidad de Chile. Project sent to the National Congress by President Michelle Bachelet on 18 May, 2009, through Message 398-357.

- Project contracted by the State of Sonora and ITAM to draw up the State Patrimonial Liability Law. Year 2003.

Project leader: Dr. José Ramón Cossío Díaz.

- Draft legislation

- State of Sonora Patrimonial Liability Bill of Law, México (2004).

- Draft bill for Chilean Civil Procedural Code (Agreement between Ministry of Justice and Universidad de Chile). 2005-2006.

- Member of the Civil Procedural Reform Forum, Ministry of Justice (Chile), 2006-2008.

- Bill of law modifying Chilean judicial officers' qualification system. (January 2008. Co-author with Jorge Vial Álamos).

- *International expert*

- Expert in civil procedural law before ICC International Court of Arbitration. Case ICC16000/JRF. Hearing held in Santiago de Chile on 14 and 15 November 2010 -

- Expert in procedural law before the Inter-American Human Rights Court at the 92nd Period of Regular Sessions, Case 12.592, Karen Atala and daughters, held in Santa Fe de Bogotá, Colombia between 22 August and 2 September, 2011.

- *Report on Mexico for the Global Class Actions Project*, Stanford University (http://globalclassactions.stanford.edu/). (Co-author with Rolando García Mirón).

## VI. PUBLISHED WORKS

Law Reviews and book chapters.

- "Strict liability and medical liability", in Revista de la Comisión Nacional de Arbitraje Médico (Conamed), vol. 9, N° 2, April-June (2004), pp. 8-13.

- "Pain and suffering damages in the regulation of civil Mexican Law: some relevant aspects". Estudios juridicos en homenaje a Federico Garcia Zamano. ITAM-Porrua. 2010. 295-320.

- "Problems faced by digital proof in the United States", Revista de Estudios de la Justicia (REJ), N° 21, July, (2014), pp. 75-91. (Co-author with Guillermo García Sánchez).

- "Average duration and certain statistics of non-contractual civil liability suits in Mexico City". Revista de Derecho. Universidad Austral de Chile. June. 2018, pp. 273-301.

- "Cases of accident or force majeure, inability, and creditor remedies. *La harmonizacion del derecho de contratos en Latinoamerica*.

Books

- *Injunction and Contract*. Editorial Jurídica de Chile. Santiago. 1996.

- *Provisional Measures in Chilean Law*. Editorial Jurídica de Chile. 2004.

- *State civil liability*. Porrúa. México. 2004.

- *Provisional remedies in Mexico Law*. Porrúa. México. 2004.

- *Torts Law in USA*. Instituto de Investigaciones Jurídicas (UNAM). México. 2013. (Co-author with Juan Javier del Granado).

- *Treatise on provisional measures in Chilean Law*. Editorial Jurídica. Chile. 2016.

- *State Liability in Mexico*. Avances y retos. Josefina Cortés C. Juan Carlos Marín G. José Roldán X. (Coordinators). Tirant lo Blanch. México. 2020.

## VII. SCHOLARSHIPS

- 1995 - 1998.  Instituto de Cooperacion Iberoamericano (Spain) , to study a Ph.D in Law at Universidad Carlos III de Madrid (Spain).

- 1995 - 1998. Ministerio de Planificación y Cooperación (Chile), to study Ph.D. in Law at Universidad Carlos III de Madrid (Spain).

- 2002.  Fundación Andes (Chile) to develop a draft of the New Code of Civil Procedure (Chile).