# Exhibit 29

33 Mass.L.Rptr. 661
Superior Court of Massachusetts,
Suffolk County.

IN RE CIVIL INVESTIGATIVE
DEMAND NO. 2016–CPD–50, Issued
by the Office of the Attorney General

SUCV20162098BLS1
|
October 28, 2016

*ORDER ON MOTION OF GLOCK, INC. TO SET ASIDE OR MODIFY THE CIVIL INVESTIGATIVE DEMAND OR ISSUE A PROTECTIVE ORDER*

Edward P. Leibensperger, Justice of the Superior Court

**\*1** Glock, Inc., a manufacturer of pistols, commenced this action to set aside a Civil Investigative Demand ("CID") issued by the Attorney General to Glock on May 26, 2016. In the alternative to a complete quashing of the CID, Glock requests that a protective order issue limiting the information that must be produced pursuant to the CID. As described below, Glock's motion to set aside the CID is denied. Action on the motion for a protective order is deferred, as the parties are ordered to meet and confer regarding the scope of discovery guided by the general principles governing CID discovery, discussed herein.

BACKGROUND

The CID was issued to Glock pursuant to G.L.c. 93A, § 6. The CID recites that it is issued as "part of a pending investigation by the Office of the Attorney General into compliance with G.L.c. 93A, as well as related Massachusetts laws, regulations and common law requirements that impact gun safety and product warranties." The CID requires production of documents from Glock pursuant to G.L.c. 93A, § 6(1). The requests for documents are detailed in twelve separate paragraphs. The general nature of the documents requested include customer complaints about safety, the company's responses, product recalls, warranties, testing, specifications, authorized dealers and legal actions and settlements. There is no geographic limitation to the scope of documents that must be produced. The relevant time period for documents that must be produced is four years prior to the date of the CID.

Upon receipt of the CID, Glock, through counsel, began communications with the Office of the Attorney General. According to Glock's complaint (styled as a "petition"), the Attorney General agreed to an extension of the twenty-one-day period allowed by statute for a recipient of a CID to move or object to the CID, to July 1, 2016. On July 1, 2016, having failed to reach an agreement with the Attorney General regarding the validity and scope of the CID, Glock filed its complaint along with an emergency motion to set aside or modify the CID. The emergency motion was denied, without prejudice to re-filing pursuant to Rule 9A of the Superior Court. On August 11, 2016, Glock served its renewed motion to set aside or modify the CID on the Attorney General. On September 15, 2016, the parties' Rule 9A package was filed in this action. Oral argument was heard on October 19, 2016.[1]

In its motion, Glock asserts that it does not sell its pistols directly to consumers in Massachusetts as that term is used in 940 Code of Massachusetts Regulations ("CMR") §§ 16.00 et seq. Glock says it made the determination to forgo the consumer market in Massachusetts after October 1998, when the Attorney General promulgated regulations stating it to be an unfair and deceptive practice for a "handgun-purveyor" to "transfer" a handgun to a consumer that, among other things, is non-compliant with the Attorney General's regulations (940 CMR § 16.05(3)) requiring a "load indicator" or a "magazine disconnect" as a safety feature. Glock's handguns, to this date, do not comply with the regulations requiring a "load indicator" or a "magazine disconnect."

**\*2** Glock does, nevertheless, sell its pistols to Massachusetts law enforcement agencies and military personnel. Such sales are outside the definition of "handgun-purveyor" that invokes the requirements of § 16.05. Glock also sells its pistols to business entities in Massachusetts that are primarily firearm wholesalers, so long as any sale, by its terms, prohibits the purchaser from reselling to a handgun retailer or consumer in Massachusetts. Such sales are allowed under the definition of "transfer" in 940 CMR § 16.01.

The Attorney General submits an affidavit of one of its investigators who has reviewed and analyzed data for all gun sales transactions in the Commonwealth. By law, a database is maintained of all firearm sales by gun dealers as well as private transfers. The analysis indicated that

there were approximately 10,800 Glock handgun sales in Massachusetts between January 1, 2014 and August 13, 2015. Approximately 8,000 of those transactions were sales to individuals with an occupation other than law enforcement, or to persons who had no occupation listed. The investigator also described his knowledge of safety issues reported regarding Glock handguns including the risk of accidental discharge as a result of a short trigger pull, lack of a load indicator and lack of an external safety.

ANALYSIS

General Laws c. 93A, § 6(1) authorizes the Attorney General to obtain and examine documents "whenever he believes a person has engaged in or is engaging in any method, act or practice declared to be unlawful by this chapter." Among the things declared to be unlawful by c. 93A are unfair and deceptive acts or practices in the conduct of any trade or commerce. G.L.c. 93A, § 2(a). It is well established that putting a product into the stream of commerce to ultimately reach a user may be an unfair and deceptive act under c. 93A if the product is defective, unsafe or not as warranted. *Vassallo v. Baxter Healthcare Corporation*, 428 Mass. 1, 23 (1998); *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 397 (2004). Specifically with respect to firearms, the Supreme Judicial Court has held that the Attorney General has authority under c. 93A "to prevent the deceptive or unfair sale or transfer of defective products which do not perform as warranted." *American Shooting Sports Council, Inc. v. Attorney General*, 429 Mass. 871, 875 (1999).

As a result, the Attorney General may issue a CID in connection with an investigation of the safety of a product that is purchased in Massachusetts. Section 6 of c. 93A grants the Attorney General broad investigatory powers. "There is no requirement that the Attorney General have probable cause to believe that a violation of G.L.c. 93A has occurred. He need only have a belief that a person has engaged or is engaging in conduct declared to be unlawful by G.L.c. 93A." *CUNA Mutual Insurance Society v. Attorney General*, 380 Mass. 539, 542 n.5 (1980). There is no requirement to disclose the name of the person being investigated and the CID may be issued to a person who is not the target of the investigation. *Id.* at 542–43. The statute, § 6(1) of c. 93A, "should be construed liberally in favor of the government." *In the Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, 372 Mass. 353, 364 (1977).

Glock, as the party moving to set aside the CID, bears a heavy burden to show good cause why it should not be compelled to respond. G.L.C. 93A, § 6(7); *CUNA Mutual*, 380 Mass. at 544. "[T]he recipient who challenges the CID bears the burden of showing that the Attorney General acted arbitrarily or capriciously in issuing the demand." *Attorney General v. Bodimetric Profiles*, 404 Mass. 152, 157 (1989).

Glock's Motion to Set Aside the CID

*3 Glock contends that the Attorney General has no authority to issue the CID because Glock does not sell its pistols directly to consumers in Massachusetts. Even Glock recognizes, however, that its contention is overstated. Glock concedes that the Attorney General has the authority to investigate whether there have been improper sales by Glock, or others, of Glock pistols directly to consumers in the Commonwealth, in violation of 940 C.M.R. § 16.05.[2]

Glock's contention is even more fundamentally flawed. Glock does not dispute that there were eight to ten thousand sales of its pistols in Massachusetts in a twenty-month period ending in August 2015. It may be concluded that there are thousands of Glock pistols throughout the Commonwealth, some of which are owned by law enforcement and many of which are owned by civilian consumers. Regardless of who owns the pistols, if the pistols are unsafe, defective, or breach a warranty of merchantability, there may be a c. 93A violation by Glock, the manufacturer who put the product into the stream of commerce.[3] Because the Attorney General has authority to investigate such potential violations of c. 93A, the CID is authorized.

Finally, I address Glock's allegations throughout its papers that the Attorney General is acting based on political motives or animus towards guns, so that the court should find that the CID is invalid for being arbitrary and capricious. Glock wholly fails to satisfy its burden in this regard. As described above, the Attorney General has good and sufficient grounds to issue the CID based on safety and other concerns about Glock pistols owned throughout the Commonwealth. There is no evidence that Glock is being singled out for persecution or harassment.

Glock's motion to set aside the CID is denied.

Glock's Motion to Modify the CID

Glock's motion to modify the CID attacks each and every one of the twelve requests as being "unreasonable or improper" under G.L.c. 93A, § 6(5). That section states that a CID shall not contain any requirement to produce that would be unreasonable or improper if contained in a subpoena duces tecum issued by a court or would require the disclosure of documents that are protected by a recognized privilege. In response, the Attorney General argues that it is premature to delve into relevancy, burdensomeness and privilege objections because the parties have not had a meaningful opportunity (as a result of Glock's position that the CID should be set aside in toto) to "meet and confer" regarding the scope of the requests. The Attorney General expresses a willingness to listen and consider Glock's concerns.

The following are general principles regarding the scope of discovery. General Laws c. 93A, § 6(1)(b) establishes a relevance test to define the documents the Attorney General may examine pursuant to a valid investigation. *Matter of Yankee Milk*, 372 Mass. at 357. As in all discovery matters, a broad area of discretion resides in the court to determine relevance. *Id.* at 356. "[E]ffective investigation requires broad access to sources of information ..." *Id.* at 364. In *Matter of Yankee Milk*, the Court reversed a restriction of a CID to only Massachusetts–connected documents, holding that documents located and pertaining to other states were within the scope of relevance. *Id.* at 356–57. With respect to documents that a company has agreed to keep confidential, such as settlement papers and files, the analysis must start with the holding in *Attorney General v. Bodimetric Profiles*, 404 Mass. 152 (1989). The Court held that "Bodimetric may have agreed with others to keep certain information confidential but that agreement does not bind the Attorney General." *Id.* at 158. Finally, in order to raise a successful argument that the burden of complying with a CID outweighs the Attorney General's need for the documents, Glock must show that producing the requested documents would "seriously interfere with the functioning of the investigated party by placing excessive burdens on manpower or requiring removal of critical records." *Id.* at 159, quoting *Matter of Yankee Milk*, 372 Mass. at 361 n.8.

**\*4** I have read and considered Glock's objections to the numbered paragraphs of the CID. I find that Glock's objections based upon relevancy and lack of specificity are baseless. Whether there should be some limitations put on the scope of documents requested based upon geography, burdensomeness or confidentiality should be discussed between the parties in the type of good faith "meet and confer" communication as required by Superior Court Rule 9C for the settlement of discovery disputes. To allow time for such a resolution, I defer action on Glock's motion for a protective order. The parties shall be required to submit a written joint status report to the court by November 21, 2016.

CONCLUSION

Glock's motion to set aside the CID is DENIED. Action on Glock's motion for a protective order as to each paragraph of the CID is deferred until after the parties meet and confer to discuss possible agreement on the scope of discovery. The parties are ORDERED to submit a joint status report to the court by no later than November 21, 2016.

**All Citations**

Not Reported in N.E. Rptr., 33 Mass.L.Rptr. 661, 2016 WL 7742940

Footnotes

1    The Attorney General in her opposition to Glock's motion does not dispute the agreement to extend the time to July 1, 2016, for Glock to move in opposition to the CID. The Attorney General makes no argument that Glock failed to comply with the requirements of G.L.c. 93A, § 6(7) for asserting a timely motion to quash or modify the CID. Accordingly, the timing issue is waived.

2    Glock also argues that the CID fails to meet the specificity requirements of G.L.c. 93A, § 6(4). A review of the CID shows otherwise. Glock's argument is rejected.

3    At oral argument, counsel for Glock conceded that the company could be sued in Massachusetts by a gun owner asserting a product liability claim.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

**In re Civil Investigative Demand No. 2016–CPD–50, Not Reported in N.E. Rptr. (2016)**
33 Mass.L.Rptr. 661, 2016 WL 7742940

**WESTLAW** © 2022 Thomson Reuters. No claim to original U.S. Government Works. 4