# Exhibit 58

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
CENTRAL**

**MINUTE ORDER**

DATE: 07/02/2021  TIME: 04:48:00 PM  DEPT: C-66
JUDICIAL OFFICER PRESIDING: Kenneth J Medel
CLERK: Bernice Orihuela
REPORTER/ERM:
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2020-00016638-CU-PO-CTL** CASE INIT.DATE: 05/26/2020
CASE TITLE: **Goldstein vs Earnest [EFILE]**
CASE CATEGORY: Civil - Unlimited   CASE TYPE: PI/PD/WD - Other

**APPEARANCES**

The Court, having taken the above-entitled matter under submission on 6/8/2021 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**Background:**
This case stems from a shooting at the Chabad of Poway synagogue on the last day of Passover in April, 2019. Using a firearm, the shooter shot and killed one person and injured others.
Plaintiffs allege that Smith & Wesson marketed, manufactured, distributed, and ultimately sold (through a retailer, San Diego Guns, LLC) a Rifle that was made to be easily modified into a military-style assault rifle prohibited under California law and which constituted an automatic-fire "machinegun" prohibited under federal law. The gun was marketed to a 19-year-old Shooter who did not have a valid hunting license that would have allowed him to buy the gun. See First Amended Complaint at ¶¶31–33.
As to San Diego Guns, plaintiffs allege San Diego Guns violated its duty as "a principal agent of federal law enforcement" in "restricting criminals' access to firearms. The First Amended Complaint specifically alleges that San Diego Guns violated this duty by (1) choosing to sell the weapon that was used to the Shooter, despite having actual or constructive knowledge that the hunting license the Shooter presented was not valid for the purchase of any firearms in April 2019, months before the license going into effect in July 2020. (Id. at ¶ 130-132); and (2) by transferring a firearm and ammunition to an individual under the age of 21 who had not presented and did not possess a valid hunting license, San Diego Guns knowingly and directly violated Cal. Pen. Code § 27510. (Id. at ¶ 124-125,137)
Also, San Diego Guns, as the seller and distributor engaged in sales of firearms in State of California, knew or should have known that Smith & Wesson included design features in its M&P 15 series of AR-15 style guns that enabled them to be easily modified, including to fire automatically and to constitute a prohibited assault weapon under California law. San Diego Guns, could have and should refused to distribute or sell weapons susceptible to such modifications (as other companies have chosen to do). (Id. at ¶ 52-53).
**Notice of Withdrawal of Certain Allegations**
On or about June 4, 2021, the Court received from Attorneys for Plaintiff a "Notice of Withdrawal of Certain Allegations from the First Amended Complaint." Attached to the Notice is a letter addressed to the Judge indicating that plaintiffs are no longer making allegations that the Rifle was modified in

violation of California's prohibition on assault weapons. Specifically, plaintiffs state the following allegation in the FAC are being withdrawn: p.9, paragraph 50, p. 10, paragraph 54, p.23, paragraph 106. Based upon this notice and statements made at oral argument, the Court STRIKES these allegations from the First Amended Complaint.

**Demurrers and Motions to Strike by LISA C. EARNEST and JOHN A. EARNEST and the State of California, Dept. of Fish and Wildlife**

At the hearing, Lisa and John Earnest took their Demurrer and Motion to Strike OFF CALENDAR. Prior to the hearing, Plaintiffs dismissed the State of California, Dept. of Fish and Wildlife. The State of California, Dept. of Fish and Wildlife took their Demurrer and Motion to Strike OFF CALENDAR.

**Demurrer by Smith & Wesson Brands, Inc. [S&W]**

The following causes of action have been alleged against S&W: (1) Products Liability – Defective Design; (2) UCL; (3) Common Law Negligence; (4) Public Nuisance

S&W first argues it is immune under the federal Protection of Lawful Commerce in Arms Act [PLCAA], which provides manufacturers and sellers with immunity against "civil action[s] ... for damages ... injunctive relief ... or other relief, resulting from the criminal or unlawful misuse" of firearms. 15 U.S.C. § 7903(5)(A).

**Federal Preemption**

Federal preemption is a question of Congressional intent. The PLCAA, both in its operative provisions and statements of purpose, clearly reveals congressional intent to prohibit state common law causes of action that meet the definition of a qualified civil liability action. Ileto v. Glock, Inc., 421 F. Supp. 2d 1274 (C.D. Cal. 2006) ("[C]ongressional intent to [preempt state tort claims] is clear from the text and purpose of the [PLCAA].")

**Is this case a "qualified civil liability action"?**

Under the PLCAA, a cause of action that meets the definition of a "qualified civil liability action" shall not be brought in any federal or state court. 15 U.S.C. § 7902(a).

Congress defined a "qualified civil liability action" as follows:

...a civil action...brought by any person against a manufacturer or seller of a qualified product...for damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, *resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.* 15 U.S.C. § 7903(5)(A).

Plaintiffs argue this case does not fall within the scope of the general definition of "qualified civil liability action" within § 7903(5)(A), particularly when the section is read in conjunction with the preamble to the statute that indicates the Act's purpose is to prohibit actions for harm "solely caused" by the misuse or criminal use of guns. Plaintiffs argue that the First Amended Complaint alleges independent liability on behalf of the manufacturer and seller and thus, the action is not "resulting from" the [solely caused] criminal or unlawful use of the shooter.

First, as a matter of statutory construction, language stating the purpose for which a statute is enacted cannot be used to limit the clear terms used in the statute's operative provisions. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245. Here, the plain language of Section 7903(5)(A) requires the action to be "resulting from" the criminal or misuse. There is no requirement that it be "solely caused".

Based on the facts alleged in the FAC, the alleged liability here "results from" the criminal use.

The First Amended Complaint alleges the following:

1. On April 27, 2019, worshippers were gathered at the Chabad of Poway synagogue to attend services on the last day of the Jewish holiday, Passover, which commemorates the survival and liberation of the Jewish people.

2. Outside the synagogue was a teenager...who was bent on waging war on the worshippers and exterminating the Jewish people. His hateful views could not, on their own, cause a fraction of the

physical and emotional harm he would soon render on the Chabad community of worshippers.

3. As a result of Defendants' actions and/or inaction, the Shooter used a SMITH & WESSON M&P 15, AR-15 style rifle to engage in a mass shooting on April 27, 2019-a military-style assault on the worshippers at the Chabad of Poway synagogue (the "Incident").

There is no dispute that rifle used here is a "qualified product". Paragraph 3 alleges this action results from the misuse of that product. As alleged, this action is a "qualified civil action" within the purview of the PLCAA.

Exceptions

The immunity for firearm manufacturers and sellers is subject to certain exceptions set forth in 15 U.S.C. §§ 7903(5)(A)(i)-(vi). A viable state law action that fits within one of six enumerated exceptions is not prohibited. The following exceptions are relevant to this case.

...

(ii) an action brought against a seller for negligent entrustment or negligence per se;

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including-

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make an appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted or conspired with any person in making any false entry or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any person to sell or otherwise dispose of a qualified product, knowing or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm under subsection (g) or (n) of section 922 of title 18;

...

(v) an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage.

...

15 U.S.C. §§ 7903(5)(A)(i) - (vi).

"Predicate exception" [15 U.S.C. §§ 7903(5)(A)(iii)]

The "predicate exception" permits "[a]ctions where a manufacturer or seller knowingly violated a State or Federal Statute applicable to the sale or marketing of the product, *where violation proximately caused the harm sued upon*[.]" 15 U.S.C. § 7903(5)(A)(iii) [emphasis added].

After the "Notice of Withdrawal" (discussed above), the First Amended Complaint alleges that that Smith & Wesson knowingly violated, either directly or as an accomplice/conspirator: (1) the federal law's prohibition on the sale of automatic fire "machinegun[s]" to the general public (18 U.S.C. 922(b)(4)) and (2) California's prohibition on "deceptive, untrue or misleading advertising" under the Unlawful Competition Law.

(1) Federal Statute prohibiting sale of automatic fire machine guns.

Paragraph 56 of the First Amended Complaint alleges: "The NFA defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The definition also includes "the frame or receiver of any such weapon," as well as "any part" or "combination of parts designed and intended, for use in converting a weapon into a machinegun," and "any combination off parts from which a machinegun can be assembled" as long as those "parts are in the

possession of under the control of a person." Id.

Paragraph 57 alleges: "18 U.S.C. § 922(b)(4) prohibits the sale of "machinegun[s]" to members of the general public who have not undergone the required registration process."

Paragraph 58 alleges: "In 1982, the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) underscored that the NFA definition of "machinegun[s]" includes "those weapons which have not previously functioned as machineguns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts."

Paragraph 64 alleges: "SMITH & WESSON chose to design the Rifle in a manner that made it able to be easily modified or degraded to fire automatically." Paragraph 65 alleges that methods for easy modification of the Rifle at issue.

Based on these paragraphs, plaintiffs have alleged a federal statute applicable to the sale or marketing of the product: 18 U.S.C. § 922(b)(4)).

S&M argues that "predicate exception" is still not applicable because in order to qualify for the "predicate exception", the violation must have "proximately caused the harm sued upon." 15 U.S.C. § 7903(5)(A)(iii). According to S&M, plaintiffs have not pleaded, nor do they now argue, that the rifle used in the shooting had actually been so modified to fire fully automatic as allegedly proscribed by the federal law. Thus, any violation of federal law did not "proximately cause" the harm sued upon.

Proximate cause is "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred..." (State of California v. Superior Court (1984) 150 Cal.App.3d 848, 857)

Paragraph 111 alleges: "Upon information and belief, the Shooter would not have acquired the Rifle or used it in the Incident but for his exposure to the reckless, deceptive and illegal marketing campaign disseminated by SMITH & WESSON and SMITH & WESSON's associated design decisions." Plaintiffs have alleged causation – the Shooter would not have acquired the Rifle or used it but for S&M's design decisions, which were allegedly in violation of federal law. Thus, for purposes of pleading, the First Amended Complaint alleges causation.

(2) California's prohibition on "deceptive, untrue or misleading advertising" under the Unlawful Competition Law

The question is whether the UCL is a "State or Federal statute applicable to the sale or marketing" of a firearm.

According to S&W, "Congress had in mind only ... statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry – rather than general tort theories that happened to have been codified by a given jurisdiction." Ileto v. Glock, Inc., 565 F.3d 1126, 1135-36 (2009), cert denied 560 U.S. 924 (2010).

Plaintiffs argue that because Congress chose not to limit the predicate exception to firearms-specific laws, but intended to exempt actions alleging a violation of any law that is capable of being applied to the sale and marketing of firearms, "then there is little doubt that state consumer protection statutes ...would qualify as predicate statutes." See Soto v. Bushmaster Firearms International, LLC, 331 Conn. 53, 119 (2019).

Accordingly, California's UCL-which forbids "unlawful, unfair or fraudulent" conduct with virtually any type of business activity-is clearly capable of being applied to the sale and marketing of firearms and qualifies as a "predicate." Cal. Bus. & Prof. Code §§ 17200 et seq.

There is a split of authority on the broad issue of whether consumer protection statutes such as California's UCL fall within statutes "applicable to the sale or marketing" of a firearm.

In statutory interpretation, the Court is to begin with plain language. See, e.g., Maslenjak v. United States, ─── U.S. ───, 137 S.Ct. 1918, 1924, 198 L.Ed.2d 460 (2017). As stated by the Soto court, "applicable" means "capable of being applied." Under this understanding, the UCL is applicable to sale and marketing of a firearm. See Smith & Wesson Corp. v. Gary, 875 N.E.2d 422, 431, 434–35 and n.12 (Ind. App. 2007) (predicate exception unambiguously applies to any state law capable of being applied

to sale or marketing of firearms), transfer denied, 915 N.E.2d 978 (Ind. 2009). The UCL would also, by its terms, be a statute involving sale or marketing of any product, including firearms.

Nothing in the statute indicates that that the predicate statutes have to exclusively apply to firearms. The Soto Court also insightfully found that "if Congress had intended to limit the scope of the predicate exception to violations of statutes that are directly, expressly, or exclusively applicable to firearms, however, it easily could have used such language, as it has on other occasions." Soto, supra, 331 Conn. at 119–20, 202 A.3d at 302–03.

The Court in Soto also recognized a significant point implying intent: at the time PLCAA was enacted, no federal statutes directly or specifically regulated the marketing or advertising of firearms. In addition, only a handful of states have enacted firearm specific laws that address in any way the marketing function, and none of those purports to comprehensively regulate the advertising of firearms. "It would have made little sense for the drafters of the legislation to carve out an exception for violations of laws applicable to the marketing of firearms if no such laws existed. Ibid. at 121-22.

Thus, the Court finds that the UCL qualifies as a "predicate statute." (Whether or not the First Amended Complaint meets the necessary elements for a UCL claim is discussed in depth below.)

<u>Scope of the "Predicate Exception"</u>

The question becomes what is the scope of the "predicate exception." Does the action as a whole, that is,"all" causes of action, survive if the "predicate exception" applies or should the court look at each cause of action on a claims-by-claim basis?

Plaintiffs argue that since this action fits into the "predicate exception" of the PLCAA for alleged violation of a statute relating to the sale of guns, their entire action survives. They make the following statement in Opposition: "Courts across the country have held that PLCAA's "predicate exception" permits the entire "action in which" a predicate statutory violation is alleged to proceed, meaning that all claims survive-including simple negligence or nuisance claims which do not otherwise fall within an enumerated exception. Hence, Smith & Wesson is incorrect that Plaintiffs' negligence and public nuisance claims are automatically barred because there is no express exception for them under PLCAA, and that Plaintiffs' product liability claim is barred if it does not satisfy PLCAA's exception for products liability claims in § 7903(5)(A)(v)." (p.17)

There is a split of authority on this issue as summarized in the case of Ramos v. Wall-Mart Stores Unlimited 202 F.Supp.3d 457, 465-466 (Penn. 2016). (That decision is cited in the Reply Brief of San Diego Guns, LLC to its Demurrer. The issue was left unresolved in the decision, but the cases supporting the split are acknowledged.)

This Court interprets the PLCAA to apply on a claim-by-claim basis, requiring every claim within a case to find its own exception to avoid being blocked by the Act. The express purpose of the Act was to "prohibit *causes of action* against manufacturers, distributors, dealers, and importers of firearms or ammunition products...for the harm solely caused by the criminal or unlawful misuse of firearm products," see 15 U.S.C. § 7901(b)(1) (emphasis added). Further, the Act's exceptions appear to pertain to individual claims, including negligent entrustment or negligence per se as well as products liability.

<u>Constitutionality</u>

Plaintiffs raise a variety of challenges to the constitutionality of the PLCAA, including that the PLCAA exceeds Congress' commerce clause authority, violates the Tenth Amendment, and deprives them of the due process clause and equal protection rights.

At this juncture, the Court does not need to reach these constitutionality issues in ruling on the demurrer given the analysis above that the statute is not a bar to all allegations in the case. In other words, the constitutionality would only be an issue if the Court were to determine that there was no liability under the statute. These issues are preserved for any future dispositive rulings.

<u>First Cause of Action for Products Liability</u>

SUSTAINED WITHOUT LEAVE TO AMEND

The basis for this cause of action is the following alleged design defect: "The Rifle was designed to be

easily modified to fire automatically, prohibited under federal law unless sold in compliance with the federal National Firearms Act ("NFA")."

In the demurrer, defendants contend that this cause of action is squarely covered by the PLCAA. Products liability for defects in design or manufacture are exempt under subdivision 7903(5)(A)(v), "*except* that when the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage."

According to defendant, plaintiffs have pleaded that the shooter deliberately discharged the firearm. (FAC ¶¶ 160-165). The shooter's volitional act was undeniably criminal, and was as a matter of law, the sole proximate cause of the shooting and plaintiff's damages under § 7903(5)(A)(v).

As discussed above, Plaintiffs argue that since this matter fits into the "predicate exception" of the PLCAA for alleged violation of a statute relating to the sale of guns, their entire action survives, including products liability. However, the statute specifically addresses products liability claims. Thus, even if there is a predicate statutory basis for other causes of action, products liability is allowed *except when the discharge of the product was caused by a volitional act that constituted a criminal offense*. As indicated above, the pleading indicates the discharge of the product was caused by a volitional act that constituted a criminal offense. Thus, the products liability claim is barred under the PLCAA.

Second Cause of Action for UCL Violation
SUSTAINED WITH 20 DAYS LEAVE TO AMEND
As stated above, this Court finds that California's UCL qualifies as a statute applicable to the sale or marketing of firearms under the predicate exception to PLCAA immunity. 15 U.S.C. § 7903(5)(A)(iii). Defendant S&W make additional arguments as to the viability of this claim.

(1) No deceptive marketing claim under the UCL fraudulent prong.
The FAC alleges that SMITH & WESSON engaged in a marketing campaign targeting youth with advertisements over social media and through videogame-like commercials despite the known risks that young people in that demographic are highly susceptible to that type of advertising and have disproportionately perpetrated mass shootings using similar firearms. SMITH & WESSON's marketing violated California's prohibition on "deceptive, untrue or misleading advertising" (see Cal. Bus. & Prof. Code § 17200)

S&W argues that, as a matter of fact, the Court will not be able to make findings that support deceptive, untrue or misleading advertising. However, the Court cannot make this determination on demurrer.

(2) Standing
Under cases such as Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011) ("[A] party must ... (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice ... that is the gravamen of the claim." The Court in Kwikset summarized the types of injuries in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Ibid. citing Hall v. Time Inc., supra, 158 Cal.App.4th at pp. 854-855.

The pleading does not allege any injury in fact under any of the categories defined above. Leave to amend is granted in order for plaintiffs to allege an "injury in fact."

Third Cause of Action for Ordinary Negligence and Sixth Cause of Action for Public Nuisance
OVERRULED
Plaintiffs allege that S&W was negligent in designing the firearm, advertising the firearm, and failing to monitor and supervise the downstream retail sale of the firearm by San Diego Guns. (FAC ¶ 197). Plaintiffs also allege that S&W's design of the firearm, its advertisements for the firearm, and its failure to

monitor and supervise the downstream retail sale of the firearm by San Diego Guns was a public nuisance under California Civil Code § 3480. (FAC ¶¶ 228-242).

S&W argues General Negligence and Public Nuisance are not enumerated as exceptions under the PLCAA. The PLCAA preempts common law claims like general negligence and public nuisance. Congress did not provide an enumerated exception for general negligence or public nuisance. "Congress consciously considered how to treat tort claims" and it "chose generally to preempt all common law claims" except negligent entrustment and negligence per se. (Illeto v. Glock 565 F.3d 1126, 1135 n.6 (9th Cir. 2009)).

Plaintiffs argue this claim would survive under the "predicate exception." Paragraph 197 generally alleges that S&W "design[ed] a firearm that could be easily modified, including to become an assault weapon prohibited under California law, and to fire automatically, effectively prohibited to sell to the general public under federal law (unless the NFA's requirements were followed).

As pled, these causes of action are based upon an alleged violation of a federal statute and would thus fall within the predicate exception. It is an "action" where a manufacturer or seller [allegedly] knowingly violated a State or Federal Statute applicable to the sale or marketing of the product."

First Amendment Argument
The Second Cause of Action for Negligence, the Third Cause of Action for UCL and the Sixth Cause of Action for Public Nuisance are based, in part, on S&W's advertisements. S&W argue alternatively that Plaintiffs' claims that S&W advertisements caused the shooter to commit his crimes should be dismissed because the claims violate the First Amendment of the United States Constitution.

Commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the First Amendment. See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 496, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 388–89, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); see also Thompson v. Western States Medical Center, 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); Lamar Outdoor Advertising, Inc. v. Mississippi State Tax Commission, 701 F.2d 314, 321–22 (5th Cir. 1983). Plaintiffs' First Amended Complaint alleges that the marketing in question promoted unlawful activity.

Duty to monitor, supervise or control conduct of San Diego Guns
S&W also argue that the Complaint also alleges that S&W is responsible for San Diego Guns' alleged conduct based on a claimed common law duty on the part of S&W to "monitor sales by downstream ... sellers." (FAC ¶¶ 154-157). Plaintiffs assert that S&W's alleged failure to supervise San Diego Guns' sale of the firearm was negligent (Third Cause of Action) and a public nuisance (Sixth Cause of Action).

According to S&W, there is no principal-agent relationship between S&W and San Diego Guns that would lead to vicarious liability.

This argument does not dispose of the negligence cause of action and is thus inappropriate for demurrer.

**Motion to Strike by S&W**
The Motion to Strike is DENIED.

Punitive damages are properly pled by identifying a cause of action for which punitive damages are recoverable and describing the acts or omissions that constitute fraud, oppression or malice as those terms are defined in California Civil Code section 3294(c). "Malice" is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff, or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or

legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

A claim for punitive damages is a serious accusation of wrongful conduct, which requires proof by "clear and convincing evidence" that a defendant has been guilty of oppression, fraud, or malice to justify a claim for punitive damages. (Mock v. Michigan Millers Mut. Ins. Co. (1992) 4 Cal.App.4th 306, 327-28; Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1287.) "Clear and convincing" means evidence "so clear as to leave no substantial doubt . . . [i]t must be sufficiently strong to command the unhesitating assent of every reasonable mind." (In re David C.

To support a punitive damages claim, "ultimate facts" of the defendant's oppression, fraud, or malice must be pled. (Cyrus v. Haveson (1976) 65 Cal.App.3d 306, 316-317.) Sparse claims of malice, oppression or fraud, absent specific factual allegations, are nothing more than insufficient, "patently conclusory language." (Brouseau v. Jarret (1977) 73 Cal.App.3d 864, 872.) Simply inserting buzzwords like "oppression," "fraud," or "malice," without factual support, does not create a legitimate punitive damages claim. (See id.; Grieves v. Sup. Ct. (1984) 157 Cal.App.3d 159, 166); Spinks v. Equity Res. Briarwood Apts. (2009) 171 Cal.App.4th 1004, 1055.)

As to S&W, plaintiffs specifically allege that in 2000, Smith & Wesson entered into a settlement with the federal government and several cities, and vowed to reform its business practices to prevent criminal misuse of its guns, including agreeing to not "sell . . . a weapon designed in a manner so that with a few additional parts and/or minimal modifications an owner can convert the firearms into an illegal fully automatic weapon. Complaint ¶62. Twenty years later, Smith & Wesson has continued selling firearms that it knew could be easily modified to turn into fully automatic assault weapons – even when its modified guns have been used in other mass shootings. It also fraudulently and deceptively marketed its Rifle with known intent to put them in the hands of persons in a demographic particularly likely to cause extreme harm--and indeed, harm that is the epitome of "cruel and unjust hardship in conscious disregard" of the rights and safety of others.

S&W relies on Civil Code section 3294(b) for the proposition that when suing a corporation, plaintiffs are required to plead authorization by an S&W officer, director or managing agent in order to state a claim for punitive damages against a corporation like S&W. However, this argument misapplies Section 3294(b). That section applies when a plaintiff is suing a corporate employer for the actions of a corporate employee. The section provides in full:

An employer shall not be liable for (exemplary damages) based upon the acts of the employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct...or was personally guilty of oppression, fraud or malice.

With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

In this case, the alleged allegations are the policies of the corporation itself and not a specific employee of the corporation. Civil Code 3294(b) simply does not apply.

**Demurrer by San Diego Guns**

The following causes of action are alleged against SD Guns: (1) Products Liability – Defective Design; (2) Common Law Negligence; (3) Negligence Per Se; (4) Negligent Entrustment (NOT challenged by demurrer); (5) Public Nuisance

Whether this is a "qualified civil action"

See discussion above with respect to S&W's Demurrer. A "qualified civil liability action" is defined, in relevant part, as seeking redress for harm "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." As stated with respect to the analysis of S&W's demurrer, the action does not need to be "solely caused" by the criminal actions.

"Predicate Exception"

See discussion above with respect to S&W's Demurrer.

**First Cause of Action for Product Liability**
SUSTAINED WITHOUT LEAVE TO AMEND
See discussion above with respect to S&W's Demurrer.

**Fourth Cause of Action for Negligence Per Se**
OVERRULED.
As Defendant concedes in its moving papers, "negligence per se" is already enumerated as an exception to immunity from causes of action against sellers of firearms under PLCAA. Demurrer 9: 12-13. Defendant however argues negligence per se is not a separate cause of action in California, so Plaintiffs cannot use this doctrine to prove San Diego Guns' negligence in this case.

However, the cause of action for negligence per se presumes negligence upon a violation of statute. Negligence per se creates an evidentiary presumption that affects the standard of care in a cause of action for negligence. Millard v. Biosources, Inc., 156 Cal. App. 4th 1338, 1353 (2007).

As alleged in the complaint, San Diego Guns violated laws applicable to the sale or marketing of firearms including but not limited to Cal. Pen. Code § 27510 by selling the Rifle to the Shooter with actual and/or constructive knowledge that the Shooter was under the age of 21 and lacked a valid hunting license. FAC ¶¶212-213. The complaint further alleges that Cal. Pen. Code § 27510 and other potentially applicable state and/or federal firearms laws are designed to protect all members of the general public from the foreseeable harm that results when dangerous possessors like the Shooter gain access to lethal weapons, and as such Plaintiffs were within the class of people Cal. Pen. Code § 27510 and/or other potentially applicable state and/or federal firearms laws are designed to protect. FAC ¶¶ 214-215. And finally, as a direct and foreseeable result of San Diego Guns' actions, Plaintiffs Goldstein and N.D. were seriously injured, and all Plaintiffs have suffered, and continue to suffer, great pain of mind and body, shock, and further severe and persistent emotional distress, physical manifestations of emotional distress, loss of enjoyment of life, loss of earnings and earning capacity, and incurred substantial expenses for medical and psychological treatment, therapy and counseling and other economic and/or noneconomic damages. FAC ¶¶ 217-218.

**Third Cause of Action for Negligence; Sixth Cause of Action for Public Nuisance**
OVERRULED.
See analysis with respect to S&W's Demurrer.

**San Diego Guns' Motion to Strike**
DENIED
In their Prayer for Relief, Plaintiffs generally claim entitlement to punitive damages against all defendants. (FAC, p. 51:1.)

Punitive damages are properly pled by identifying a cause of action for which punitive damages are recoverable and describing the acts or omissions that constitute fraud, oppression or malice as those terms are defined in California Civil Code section 3294(c). "Malice" is defined as either: (1) conduct which is intended by the defendant to cause injury to the plaintiff, or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Civ. Code, § 3294, subd. (c)(3).)

A claim for punitive damages is a serious accusation of wrongful conduct, which requires proof by "clear and convincing evidence" that a defendant has been guilty of oppression, fraud, or malice to justify a claim for punitive damages. (Mock v. Michigan Millers Mut. Ins. Co. (1992) 4 Cal.App.4th 306, 327-28; Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1287.) "Clear and convincing" means evidence "so clear as to leave no substantial doubt . . . [i]t must be sufficiently strong to command the unhesitating assent of every reasonable mind." (In re David C.

To support a punitive damages claim, "ultimate facts" of the defendant's oppression, fraud, or malice must be pled. (Cyrus v. Haveson (1976) 65 Cal.App.3d 306, 316-317.) Sparse claims of malice, oppression or fraud, absent specific factual allegations, are nothing more than insufficient, "patently conclusory language." (Brouseau v. Jarret (1977) 73 Cal.App.3d 864, 872.) Simply inserting buzzwords like "oppression," "fraud," or "malice," without factual support, does not create a legitimate punitive damages claim. (See id.; Grieves v. Sup. Ct. (1984) 157 Cal.App.3d 159, 166); Spinks v. Equity Res. Briarwood Apts. (2009) 171 Cal.App.4th 1004, 1055.)

As to San Diego Guns, plaintiffs allege it chose to violate Cal. Pen. Code § 27510 by selling the Rifle, a weapon that could have been easily modified to become an assault weapon, and multiple rounds of ammunition to the Shooter. They made the sale despite knowing that the Shooter was under the age of 21 and with the knowledge that the hunting license the Shooter presented was not valid for the purchase of any firearms in April 2019, months before the license going into effect in July 2020. (Id. at ¶ 124-137).

<u>Attorney Fees (SD Guns)</u>
DENIED.
SD Guns seeks to strike the request for attorney fees.
There is at least a potential for attorney fees under the "private attorney general doctrine" under CCP 1021.5, which provides, in part: "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:
(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons.

<u>Injunctive Relief</u>
DENIED.
Injunctive relief is a remedy for the nuisance cause of action.

IT IS SO ORDERED.

*Kenneth J. Medel*

——————————————
Judge Kenneth J Medel

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>Central<br>330 West Broadway<br>San Diego, CA 92101 | |
| **SHORT TITLE:** Goldstein vs Earnest [EFILE] | |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | **CASE NUMBER:**<br>37-2020-00016638-CU-PO-CTL |

I certify that I am not a party to this cause. I certify that a true copy of the attached minute order was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 07/02/2021.

Clerk of the Court, by: _B. Orihuela_____, Deputy

SEAN R FERRON
LAW OFFICES OF ADRIENNE D COHEN
1551 NORTH TUSTIN AVENUE # 750
SANTA ANA, CA 92705

BETSEY BOUTELLE
880 FRONT STREET # 6293
SAN DIEGO, CA 92101

MARC P MILES
SHOOK HARDY & BACON LLP
5 PARK PLAZA # 1600
IRVINE, CA 92614

P J LUCCA
DEPUTY ATTORNEY GENERAL
600 W BROADWAY # SUITE 1800
SAN DIEGO, CA 92101

NEIL G GILMOR
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

COREY C GARRARD
WINGERT GREBING BRUBAKER & JUSKIE LLP
600 WEST BROADWAY, SUITE 1200
SAN DIEGO, CA 92101

DANIEL R SHINOFF
ARTIANO SHINOFF
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

MAURICE A BUMBU
3636 FOURTH AVENUE # 200
SAN DIEGO, CA 92103

ANNE E WADDELL
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CA 94105

☐ Additional names and address attached.

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**                                                       Page: 1