# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ESTADOS UNIDOS MEXICANOS,
            *Plaintiff,*

*vs.*

SMITH & WESSON BRANDS, INC., et al.,
            *Defendants.*

Civil Action No. 1:21-CV-11269-FDS

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ............................................................1

ARGUMENT ..........................................................................................5

I.   THE SUBSTANTIVE LAW OF MEXICO APPLIES TO THE
     GOVERNMENT'S CLAIMS. ...............................................................5

II.  PLCAA DOES NOT PRECLUDE THE GOVERNMENT'S CLAIMS
     BECAUSE IT IS INJURED IN MEXICO BY GUN MISUSE IN
     MEXICO.....................................................................................7

     A.   PLCAA Does Not Preclude Claims When the Gun Misuse Is
          "Criminal or Unlawful" Under Foreign Law...........................................9

     B.   PLCAA Does Not Preclude Claims of Foreign Governments.............................13

     C.   PLCAA Does Not Preclude Claims When the Injury Occurs
          Abroad...................................................................................14

     D.   Defendants' "Focus" Analysis Is Wrong and Irrelevant.....................................17

          1.   Defendants Are Wrong About the Relevant "Focus." ...............................17

          2.   Regardless of "Focus," § 7903(5)(A) Refers to U.S.
               Domestic Injury and Law............................................................19

III. THE GOVERNMENT'S CLAIMS ARE WITHIN PLCAA'S
     STATUTORY EXCEPTIONS. ..............................................................20

     A.   The Government's Action Is Within the Predicate-Violation
          Exception. ...............................................................................20

          1.   The Complaint Plausibly Alleges that Defendants
               Knowingly Violated Firearms-Specific Statutes. ...................................22

          2.   The Complaint Plausibly Alleges that Defendants Violated
               Unfair Trade Practice Statutes. ...................................................25

     B.   The Government's Claims Are Within the Negligence Per Se
          Exception. ...............................................................................28

IV.  THE COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANTS'
     WRONGFUL CONDUCT CAUSED THE GOVERNMENT'S
     INJURIES. .................................................................................29

A.   The Complaint Plausibly Alleges Causation Sufficient to Confer
Article III Standing. ........................................................................30

B.   Defendants' Proximate-Cause Arguments Are Meritless. ....................................33

1.   The Number of Steps in the Causal Chain Does Not
Preclude Proximate Cause. ........................................................35

2.   Foreseeable Criminal Acts Are Not a Superseding Cause.......................36

3.   The Government's Injuries Are Not Solely "Derivative."......................38

C.   The Question of How to Apportion Damages Is Not Grounds for
Dismissal. ...............................................................................39

V.   THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS
VIOLATED A LEGAL DUTY TO MEXICO. ..................................................40

VI.   THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS
CREATED A PUBLIC NUISANCE. ...........................................................42

VII.   DEFENDANTS' PROFFERED PRINCIPLES OF INTERNATIONAL
AND CONSTITUTIONAL LAW DO NOT BAR THE
GOVERNMENT'S CLAIMS. ...................................................................43

CONCLUSION................................................................................45

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States,* 573 U.S. 169 (2014) ........................................................ 23

*Adamian v. Three Sons, Inc.,* 233 N.E.2d 18 (Mass. 1968)........................................ 28

*Adams v. Watson*, 10 F.3d 915 (1st Cir. 1993) .......................................................... 32

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................... 30

*Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986) ................................................. 31, 32

*Bond v. United States*, 134 S. Ct. 2077 (2014) .......................................................... 21

*Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth (BAGLY)*
    *v. U.S. Dept. of Health and Human Services*, No. 20-11297-PBS,
    2021 WL 3667760 (D. Mass. Aug. 18, 2021) ...................................................... 32

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
    123 F. Supp. 2d 245 (D. N.J. 2000) .............................................................. 32, 36

*Carney v. Bereault*, 204 N.E. 2d 448 (Mass. 1965)................................................... 41

*Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) .................. 22

*Cipollone v. Liggett Group*, 505 U.S. 504 (1992) ...................................................... 21

*City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020)
    ...................................................................................................................... 33, 37

*City of Boston v. Purdue Pharm, L.P.*, No. 1884CV02860, 2020 WL 977056 (Mass. Super. Jan.
    29, 2020) ....................................................................................................... 38, 43

*City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568 (Mass. Sup. Ct.
    July 13, 2000)............................................................................................... passim

*City of Chicago v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971 (N.D. Ill. Mar. 31,
    2021) .............................................................................................................. 34, 36

*City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002).......................... passim

*City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813 (Ind. App. 2019).......................... 25, 36

*City of Gary v. Smith & Wesson*, 801 N.E.2d 1222 (Ind. 2003)............................... passim

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008).............................. 19, 27

*Clean Water Action v. Searles Auto Recycling Corp.*, 268 F. Supp 3d 276 (D. Mass. 2017) ...... 32

*Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581 (Mass. 1983) ........................... 6

*Com. v. Carlson*, 447 Mass. 79 (2006) ..................................................................... 35

*Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) ............... 22

*Curran v. City of Boston*, 777 F. Supp. 116 (D. Mass. 1991)................................... 34

*Dantzler, Inc. v. Empresas Berrios Inventory and Operations, Inc.*, 958 F. 3d 38
  (1st Cir. 2020) .................................................................................................... 31

*Davis v. Protection One Alarm Monitoring, Inc.*, 456 F. Supp. 2d 243 (D. Mass. 2006) ...... 34, 37

*Davis v. United States,* 670 F. 3d 48 (1st Cir. 2012) .................................................... 37

*Dept. of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ................................... 31

*Direct Sales Co. Inc. v. United States*, 319 U.S. 703 (1943) ........................................ 24

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................... 44

*Doull v. Foster*, 163 N.E. 3d 976 (Mass. 2011) ..................................................... 34, 40

*EEOC v. Arabian American Oil Co.,* 499 U.S. 244 (1991) ................................... 8, 13, 16

*Englund v. World Pawn Exch.*, 2017 Ore. Cir. LEXIS 3 (Jun. 30, 2017) ....................... 22

*Evans v. Lorillard Tobacco Co.*, No. CIV. A. 04-2840A 2007 WL 796175 (Mass. Sup. Ct. Feb.
  7, 2007) ........................................................................................................... 43

*F. Hoffman LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ................................. 9

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ...................... 4, 16, 20

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020) ................................. 6

*Forrestal v. Magendantz*, 848 F.2d 303 (1st Cir. 1988) .............................................. 33

*Fox v. L&J Supply, LLC*, No. 2014-24619, 1 n.1 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) ................ 22

*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001) ............................... passim

*Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL (Ca. Super. Ct. Jul. 2, 2021) ... 22, 23,
  26, 38

*Gregory v. Ashcroft,* 501 U.S. 452 (1991) ................................................................. 21

*Ileto v. Glock, Inc.*, 565 F.3d 1126, 1138 (9th Cir. 2009) .................................... passim

*In re Picard, Trustee for Liquidation of Bernard L. Madoff Investment Securities LLC*, 917 F.3d
  85 (2d Cir. 2019) ............................................................................................... 18

*In re: Juul Labs, Inc., Marketing Sales Practices, and Products Liability Litig.*, 497 F. Supp. 3d.
  552 (N.D. Cal. 2020) .......................................................................................... 43

*James v. Arms Technology, Inc.*, 820 A. 2d 27 (N.J. Super. 2003) ................................ 34

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) ............................ 34

*Jupin v. Kask*, 849 N.E. 2d 829 (Mass. 2006) .................................................... 37, 43

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013) ........................... 8, 14, 16, 17

*Kolbe v. Hogan*, 849 F.3d 114  (4th Cir. 2017) ........................................................ 44

*Leavitt v. Brockton Hosp., Inc.*, 907 N.E. 2d 213 (Mass. 2009) .................................. 34

*Loucks v. Standard Oil Co. of New York*, 120 N.E. 198 (N.Y. 1918) ............................. 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 30

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ............................................................ 32

*Massachusetts v. U.S. Dep't of Health and Human Services*, 923 F. 3d 209 (1st Cir. 2019)....... 30

*Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437 (2007)................................................. 8

*Midland Asphalt Corp. v. United States,* 489 U.S. 794 (1989)......................................... 7

*Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26 (D. Mass. 2021)................................. 3, 6

*Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247  (2010) ...................................... 8, 9, 13, 15

*NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003)................................... 3

*National Prescription Opiate Litig.*, MDL No. 2804, 2018 WL 6628898  (N.D. Ohio Dec. 19, 2018) ................................................................................................. 42

*Norberg v. Badger Guns, Inc.*, Case No. 10-cv-20655 (Wis. Cir. Ct. Jun. 9, 2011) ................... 22

*Parsons v. Colt's Manufacturing Company, LLC*, No. 2:19-cv-01189-APG-April 10, 2020)..... 23

*People v. Sturm, Ruger & Co.*, 309 A.D.2d 91 (N.Y. App. Div. 2003) ...................................... 36

*Practico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir. 1985)................................. 28

*Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019) ......................... 22, 26

*Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019)................................. 18

*Republic of Venezuela v. Philip Morris Cos.*, 827 So. 2d 339 (Fla. Dist. Ct. App. 2002)........... 41

*Rhode Island v. Atlantic Richfield Co.*, 357 F. Supp. 3d 129 (D.R.I. 2013)............................... 39

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016)...................................... passim

*Save Our Heritage, Inc. v. F.A.A.*, 269 F.3d 49 (1st Cir. 2001) ................................... 31

*Simon v. E. Ky Welfare Rights Org.*, 426 U.S. 26 (1976)................................................. 31, 32

*Small v. United States,* 544 U.S. 385 (2005) ........................................................... passim

*Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. App. 2007)................................... 22

*Smith v. United States*, 507 U.S. 197 (1993) ........................................................... 10

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)......................................................... 6, 16

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019)....................... 4, 21, 22, 26

*Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999)....................................... 7

*Staples v. United States*, 511 U.S. 600 (1994).......................................................... 23

*State of Sao Paulo of Federative Republic of Brazil v. American Tobacco Co.*, 919 A.2d 1116 (Del. 2007)............................................................................................. 41

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31 (1st Cir. 2021) ............... 39

*Szulik v. State Street Bank and Trust Co.*, 935 F. Supp. 2d 240 (D. Mass. 2013) ....................... 34

*Tobin v. Norwood Country Club, Inc.,* 661 N.E.2d 627 (Mass. 1996) ......................................... 37

*Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 187 A.3d 1174 (Conn. App. Ct. 2018) ............................................................................................................ 28

*United States v. Bewig*, 354 F.3d 731 (8th Cir. 2003) ................................................ 24

*United States v. Carney,* 387 F.3d 436 (6th Cir. 2004) .............................................. 23

*United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012) .............................................. 44

*United States v. Palmer*, 3 Wheat. 610 (1818) ......................................................... 14

*United States v. Standard Oil of Cal.*, 332 U.S. 301 (1947) ..................................... 39

*United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973) ............................................................................................ 30, 31

*United States v. Wyche*, 2003 U.S. App. LEXIS 28632 (5th Cir. 2003) .................... 24

*Watkins v. Omni Life Sci., Inc.,* 692 F. Supp. 2d 170 (D. Mass. 2010) ....................... 6

*WesternGeco LLC v. ION Geophysical Corp.,* 138 S. Ct. 2129 (2018) ............ 17, 18, 19

*White v. Smith & Wesson*, 97 F. Supp. 2d 816 (N.D. Ohio 2000) .............................. 33

*Williams v. Beemiller, Inc.*, 100 A.D.3d 143 (N.Y. App. Div. 2012) .......................... 22

**Statutes**

15 U.S.C. § 7901 .................................................................................... passim

15 U.S.C. § 7902 ............................................................................. 7, 17, 18

15 U.S.C. § 7903 .................................................................................... passim

18 U.S.C. § 922 ..................................................................................... 9, 22, 23

28 U.S.C. § 2778 ........................................................................................... 12

Conn. Gen. Stat. §§ 42-110 *et seq.* .......................................................... 26

**Other Authorities**

151 Cong. Rec. S9,061 (daily ed. July 27, 2005) ...................................... 19

151 Cong. Rec. S9061 (Jul. 27, 2005) ......................................................... 7

ATF Rul. 82-8 .............................................................................................. 23

Executive Order 13637 ................................................................................ 12

Fed. R. Civ. P. 44.1 ....................................................................................... 5

Franklin A. Gevurtz, *Building a Wall Against Private Actions for Overseas Injuries: The Impact of RJR Nabisco v. European Community,* 23 U.C. Davis J. Int'l L. & Pol'y 1  (2016) .......... 17

International Traffic in Arms Regulations, 22 C.F.R. §§ 121 et seq. .......................................... 12

N. Korea Enacts Rules on Regulating Firearms**,** Korea Times/Yonhap**,** 6 August 2012 ............. 11

*National Report of Eritrea on its Implementation of the United Nations Programme of Action to Prevent, Combat and Eradicate the Illicit Trade in Small Arms and Light Weapons in All Its Aspects* (Jan. 1, 2010) ........................................................ 11

Restatement (Second) of Conflict of Laws § 90 (1971) ................................... 6

Restatement (Second) of Torts § 433B ............................................................ 39

Restatement (Second) of Torts § 448 ............................................................... 37

Symeon C. Symeonides, *Choice of Law in Cross-Border Torts: Why Plaintiffs Win and Should*, 61 Hastings L.J. 337 (2009) .................................................................. 7

Symeon C. Symeonides, Codifying Choice of Law Around the World: An International Comparative Analysis (Oxford U. Press 2014) ..................................... 7

Tim Weiner and Ginger Thompson, *U.S. Guns Smuggled Into Mexico Feed Drug War*, N.Y. Times (May 19, 2001), https://www.nytimes.com/2001/05/19/world/us-guns-smuggled-into-mexico-feed-drug-war.html ................................................ 13

U.S. Department of Justice, Gun Violence Reduction: National Integrated Firearms Violence Reduction Strategy (Jan. 18, 2001) ......................................... 25

## INTRODUCTION AND BACKGROUND

Defendants design and manufacture weapons of war,[1] then market and sell them in ways they know routinely arm the drug cartels in Mexico.[2] They make and sell .50 caliber sniper rifles that can shoot down helicopters and penetrate lightly armored vehicles and bullet-proof glass.[3] They design semi-automatic rifles to be easily convertible into fully automatic machineguns.[4] They know that their distributors and dealers sell these military weapons in bulk, with no restrictions—clearly intended for traffickers.[5] They know that the cartels use these weapons to cause devastating injuries to the Government of Mexico (the "Government") and its citizens.[6] They defy calls from the United States to monitor and discipline their distribution systems,[7] and challenge law enforcement efforts to stop trafficking to Mexico.[8] They violate the tort law and import statutes of Mexico, U.S. federal statutes, U.S. state business practices laws, and common law standards of care.

Defendants' motion to dismiss the Complaint seeks impunity for this conduct. They deny that they help move their guns into Mexico, and they contend that, even if they do, the Protection of Lawful Commerce in Arms Act ("PLCAA") precludes this lawsuit.[9] They are wrong on the

---

[1] Complaint, ECF No. 1 ("Compl.") ¶¶ 278-332.

[2] Id. ¶ 3.

[3] Id. ¶¶ 292-99.

[4] Id. ¶¶ 300-13.

[5] Id. ¶¶ 115-277, 230.

[6] Id. ¶ 336, 434-505.

[7] Id. ¶¶ 89-96, 372.

[8] Id. ¶¶ 140-42.

[9] Joint Memorandum of Law in Support of Defendants' Motions to Dismiss, ECF No. 67 ("Jnt. Mem.").

facts—the Complaint plausibly alleges that Defendants "actively facilitate[] the unlawful trafficking of their guns to drug cartels and other criminals in Mexico."[10] And they are wrong on the law—PLCAA precludes only specifically identified lawsuits asserting injuries that occur in the United States resulting from the misuse of guns that is criminal under U.S. law, and in any event does not shield gun companies where, as here, they knowingly violate domestic statutes applicable to gun sales.

Defendants' blithe (and, on this motion, improper) denial of the Complaint's allegations echoes the very head-in-the-sand approach that characterizes their gun sales. The Complaint explains the sales practices that put guns into the cartels' hands, including straw purchases, bulk sales, and repeat sales.[11] More than 80 paragraphs of the Complaint detail Defendants' notice and facilitation of these practices—they are instrumental in trafficking their guns into Mexico.[12] Defendants magnify their distribution policies' menace by designing and marketing their guns as military weapons that can be used by unauthorized persons and without being traceable.[13] They do so "heedless of the shattering consequences to the Government and its citizens."[14]

The U.S. Department of Justice told Defendants to take readily available measures to reduce trafficking within the United States.[15] Judge Weinstein urged Defendants to take similar

---

[10] Compl. ¶ 1.

[11] *Id.* ¶¶ 247, 250, 254-55, 262-63, 266-67, 272-80, 331, 335.

[12] *Id.* ¶¶ 122-204.

[13] *Id.* ¶¶ 363-66.

[14] *Id.* ¶ 16.

[15] *Id.* ¶¶ 89-92, 372.

measures, concluding that many of these Defendants "have failed to take minimum circumspect steps to limit leakage of their guns into criminal hands."[16] They have refused all entreaties.[17]

Far from presenting "a clash of national values,"[18] this lawsuit reflects the *coordination of*, and *mutual respect for*, each sovereign's rights, values, and responsibilities within its own jurisdiction. First, the choice-of-law rules of Massachusetts provide that the substantive law of Mexico applies to the Government's claims. "[T]ort claims are governed by the law of the state where the injury occurred unless another state has a more significant relationship to the underlying cause of action."[19] The gun misuse and resulting injuries occurred in Mexico, so the United States does not have a "more significant" relationship to these claims.

Second, by its terms PLCAA does not bar these claims. It precludes certain lawsuits for the "[damages] resulting from"—the "harm caused by"—the "criminal or unlawful misuse" of guns.[20] The Supreme Court has held that, in similar statutes, the terms "injury"[21] and "criminal conviction"[22] must be construed to mean injury *in the United States* and conviction *under U.S. law* unless Congress expressly provides otherwise. Those constructions are required because Congress is presumed to legislate with only domestic concerns in mind, and because interpretations that would reach injuries abroad or gun misuse that is criminal under foreign law would risk "upsetting a balance of competing considerations that [foreign sovereigns'] own

---

[16] *Id.* ¶ 374 (quoting *NAACP v. AcuSport, Inc*., 271 F. Supp. 2d 435, 453 (E.D.N.Y. 2003)).

[17] Compl. ¶¶ 89-96, 372.

[18] Jnt. Mem. 3.

[19] *Monroe v. Medtronic, Inc*., 511 F. Supp. 3d 26, 33 (D. Mass. 2021).

[20] 15 U.S.C. § 7903(5)(A); *id.* § 7901(a)(3), (5), (6).

[21] *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 346 (2016).

[22] *Small v. United States,* 544 U.S. 385, 389 (2005).

domestic … laws embody"[23] and "offend[ing] the sovereign interests of foreign nations."[24] PLCAA does not preclude a claim that the substantive law of Mexico provides to the Government of Mexico, for injuries incurred in Mexico, resulting from gun misuse in Mexico.

Third, even if PLCAA reached these claims, it would not support dismissing them. PLCAA provides no protections where, as here, Defendants knowingly violate U.S. federal and state statutes applicable to the sale or marketing of guns.[25] The Complaint alleges in detail that Defendants knowingly violate, either directly or as abettors and conspirators, federal statutes on gun exports,[26] straw purchases,[27] and the bans on selling machineguns[28] and selling without a license,[29] as well as state statutes prohibiting the marketing and promotion of military-style weapons to consumers.[30]

Fourth, Defendants' arguments on proximate cause, including those challenging Article III standing, again disregard rather than overcome the Complaint's plausible allegations. It alleges that Defendants foresee—indeed, they know and intend—that hundreds of thousands of their guns annually are trafficked into Mexico;[31] they *could* stem the unlawful tide of crime guns into Mexico but instead choose to facilitate it;[32] and the result is systematic, repeated, and

---

[23] *RJR Nabisco*, 579 U.S. at 347 (quoting *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 167 (2004)).

[24] *Id*. at 2107 (citation omitted).

[25] 15 U.S.C. § 7903(5)(A)(iii).

[26] Compl. ¶¶ 63-65.

[27] *Id.* ¶ 69, 248-50.

[28] *Id.* ¶ 68, 70-72, 301-13.

[29] *Id.* ¶ 67.

[30] *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019), *cert denied sub nom. Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019); *see, e.g.*, Compl. ¶¶ 73-76, 342-52.

[31] *See, e.g.*, Compl. ¶¶ 377-395.

[32] *See, e.g.*, Compl. ¶¶ 116, 115-226, 227, 247, 447-74.

massive injuries to the Government, including the murder of its citizens, employees, judges, police, and soldiers.[33]

Defendants' grab-bag motion asserts there is a "diplomatic dispute" between the United States and the Government of Mexico over gun trafficking.[34] But even the press release they cite reflects mutual concern about, and joint efforts to stop, the trafficking. The missing element in efforts to stop the trafficking is reasonable and responsible conduct by the private commercial entities that are the Defendants in this lawsuit.

The tort law of Mexico holds Defendants accountable and requires them to stop flooding crime guns into Mexico. Massachusetts's choice-of-law rule selects Mexico's tort law, and PLCAA does not bar the claims because the injury and gun misuse occur in Mexico. The result would not be any different under Massachusetts' substantive law, and PLCAA again would not bar the claims because Defendants violate U.S. federal and state statutes applicable to gun sales. The Court should deny Defendants' motion.

## ARGUMENT

## I.    THE SUBSTANTIVE LAW OF MEXICO APPLIES TO THE GOVERNMENT'S CLAIMS.

The Complaint alleges that the Government's claims are governed by "the substantive law of Mexico, including its tort law."[35] Defendants have not provided any choice-of-law analysis to the contrary. For good reason: the principles and result are clear.

---

[33] Compl. ¶ 15.

[34] Jnt. Mem. 4.

[35] Compl. ¶ 21; *see also id*. ¶¶ 22, 29, 60-62; Fed. R. Civ. P. 44.1.

In diversity cases such as this, courts "employ the choice-of-law principles of the forum state (here, Massachusetts)."[36] Those principles provide that "tort claims are governed by the law of the state where the injury occurred unless another state has a more significant relationship to the underlying cause of action."[37] The United States does not have any interest here superior to Mexico's. Defendants arm the cartels in Mexico;[38] the gun misuse and injuries occur in Mexico; regulating the flow of firearms into a jurisdiction is a traditional governmental function; Mexico regulates gun sales within Mexico; and the plaintiff is the Government of Mexico.[39]

The Supreme Court has twice concluded that "a court will ordinarily 'apply *foreign* law to determine the tortfeasor's liability' to 'a plaintiff injured in a foreign country.'"[40] As examples of this "default rule," the Court points to cases in which artillery manufactured in the United States exploded in Cambodia, and a Howitzer negligently designed in the United States caused death in Germany.[41] The rationale is straightforward: the law of the place of injury can be

---

[36] *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41 (1st Cir. 2020).

[37] *Monroe v. Medtronic, Inc*., 511 F. Supp. 3d 26, 33 (D. Mass. 2021) (citing *Watkins v. Omni Life Sci., Inc.,* 692 F. Supp. 2d 170, 174 (D. Mass. 2010)); *see also Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 585 (Mass. 1983).

[38] For ease of reference, this brief refers to the drug cartels, but the Complaint alleges broadly that Defendants facilitate the trafficking of their guns to criminals in Mexico.

[39] Defendants have not attempted to satisfy the requirements for the "public policy exception" that can apply where foreign law "'would violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth.'" Restatement (Second) of Conflict of Laws § 90 (1971) cmt. c (quoting *Loucks v. Standard Oil Co. of New York*, 120 N.E. 198, 202 (N.Y. 1918) (Cardozo, J.)).

[40] *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 351 (2016) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 706 (2004)) (emphasis in *RJR Nabisco*).

[41] *Sosa*, 542 U.S. at 706.

expected "to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it."[42] This is the preponderant rule throughout the world.[43]

## II.   PLCAA DOES NOT PRECLUDE THE GOVERNMENT'S CLAIMS BECAUSE IT IS INJURED IN MEXICO BY GUN MISUSE IN MEXICO.

PLCAA's terms do not reach the Government's claims. Supreme Court decisions analyzing similar statutory language are determinative.

PLCAA precludes only a defined, circumscribed set of lawsuits.[44] The statute commands the dismissal of a "qualified civil liability action,"[45] which, as relevant here, is defined as a lawsuit brought by any person for "[harm] resulting from" the "criminal or unlawful misuse of a [firearm] by the [plaintiff] or a third party."[46] PLCAA does not preclude claims where, as here: (1) the gun misuse is "criminal or unlawful" under foreign law, not U.S. law; (2)

---

[42] *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999).

[43] Symeon C. Symeonides, *Choice of Law in Cross-Border Torts: Why Plaintiffs Win and Should*, 61 Hastings L.J. 337, 368 (2009) (89% of jurisdictions faced with a conflict between the place of conduct and place of injury apply the law of the place of injury); Symeon C. Symeonides, Codifying Choice of Law Around the World: An International Comparative Analysis 54 (Oxford U. Press 2014) (in jurisdictions abroad "virtually all codifications enacted in the last 50 years continue to follow the lex loci delicti rule as the basic rule for tort conflicts").

[44] PLCAA does not create "immunity" (Jnt. Mem. at 1) because it does not contain "an explicit statutory or constitutional guarantee that trial [or suit] will not occur." *See Midland Asphalt Corp. v. United States,* 489 U.S. 794, 801 (1989) (internal quotation omitted). Its chief sponsor, Senator Craig, acknowledged that PLCAA "is not a gun industry immunity bill." 151 Cong. Rec. S9061 (Jul. 27, 2005).

[45] 15 U.S.C. § 7902(a).

[46] *Id*. § 7903(5)(A); *see also id*. § 7901(a)(3), (5), (6) (making clear that the long list of "damages," etc. "resulting from" gun misuse means "harm resulting from"); *id*. § 7903(5)(A)(v). (providing exception to allow certain design-defect claims unless the discharge of the gun was caused by a volitional act constituting a "criminal offense"). The statute does not define "criminal," but defines "unlawful misuse" as "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." *Id*. §7903(9).

the action is brought by a foreign government; or (3) the injury occurred abroad. All three disqualifying elements are present here.

In determining whether a federal statute applies to claims that have substantial foreign elements, courts employ a strong "presumption against extraterritoriality," *i.e.*, "[w]hen a [federal] statute gives no clear indication of an extraterritorial application, it has none."[47] A federal statute applies extraterritorially only when "Congress has affirmatively and unmistakably instructed that the statute will do so."[48] Without an "unmistakable" directive to apply a federal statute extraterritorially, the U.S. judiciary could create "unintended clashes between our laws and those of other nations" and thereby violate separation-of-powers principles that make foreign relations the responsibility of the political branches in the first instance, not the judiciary.[49]

Moreover, even when the presumption against extraterritoriality does not apply or has been overcome, a court must still *construe the statute's substantive terms* using "a similar assumption" about the relevant terms' strictly domestic reach.[50] This rule for construing federal statutes is based on: (a) the "ordinary assumption about the reach of domestically oriented statutes,"[51] namely that "Congress generally legislates with domestic concerns in mind;"[52] and

---

[47] *Kiobel v. Royal Dutch Petroleum Co*., 569 U.S. 108, 115 (2013) (quoting *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 255 (2010)). "United States law governs domestically but does not rule the world." *Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437, 454 (2007).

[48] *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 335 (2016).

[49] *Kiobel*, 569 U.S. at 115 (quoting *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 255 (1991) ("*Aramco*")).

[50] *Small*, 544 U.S. at 389.

[51] *Id*. at 390.

[52] *Id*. at 388-89.

(b) the desire to avoid "a risk of conflict between the American statute and a foreign law."[53] The Supreme Court has applied these rules of construction to terms similar to those in PLCAA, holding that they have solely domestic reach.

*First*, the Court has held that references to statutory elements similar to "criminal or unlawful misuse" must be read to refer only to violations of *U.S. domestic* law, unless the statute indicates otherwise. The gun misuse here occurred in Mexico and was subject to Mexican, not U.S., law. *Second*, although PLCAA refers to precluding certain claims of "any governmental entity," it specifically refers to only U.S. domestic federal, state, and local governments. The Supreme Court has construed seemingly broad references to "any court," "any person," and the like to refer to only courts or persons *in the United States*. *Third*, the Supreme Court construed the "injury" element in an analogous provision (granting rather than precluding a cause of action) and held that, absent a clear indication to the contrary, "injury" means only an injury incurred in the United States.

### A. PLCAA Does Not Preclude Claims When the Gun Misuse Is "Criminal or Unlawful" Under Foreign Law.

In *Small v. United States*[54] the Supreme Court construed a federal statute that criminalized possession of a firearm in the United States by "any person ... who has been convicted in any court" of certain crimes.[55] The Court held that, despite its broad reference, "convicted in any court" did not include convictions in foreign courts. Applying the Court's

---

[53] *RJR Nabisco*, 579 U.S. at 336 (quoting *Morrison*, 561 U.S. at 255). In *RJR Nabisco*, the Court noted the "related rule that we construe statutes to avoid unreasonable interference with other nations' sovereign authority where possible." *Id.* at 2107 n.9 (citing *F. Hoffman LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004)).

[54] 544 U.S. 385, 387 (2005).

[55] 18 U.S.C. § 922(g)(1).

reasoning, "criminal or unlawful misuse" in PLCAA means gun misuse that is criminal or unlawful *under U.S. law*.

The gun possession in *Small* occurred in the United States, so the case involved a domestic application of the statute to which "the presumption against extraterritorial application does not apply."[56] Nevertheless, the Supreme Court used "the 'commonsense notion that Congress generally legislates with domestic concerns in mind,'"[57] and concluded that "a similar assumption [to the presumption against extraterritoriality] is appropriate when we consider the scope of the phrase 'convicted in any court' here."[58]

The assumption was bolstered because the phrase "convicted in any court" was one element of domestic conduct (unlawful gun possession) that the statute prohibited.[59] Here "criminal or unlawful misuse" is a defining element of the domestic protection that PLCAA provides. In both instances, the natural inference is that the elements that define the prohibition or protection are references to *domestic* law.

*Small* also concluded that Congress likely did not intend to invoke foreign criminal law because some of those laws are inconsistent with U.S. criminal law.[60] The same is true here, where foreign laws vary dramatically as to what constitutes criminal misuse of a gun, including

---

[56] 544 U.S. at 389; *see also id*. at 399 (Thomas, J., dissenting) (the majority's assumption is "entirely different" from the "canon against extraterritorial application of federal statutes," and "[i]n prosecuting Small, the Government is enforcing a domestic criminal statute to punish domestic criminal conduct").

[57] *Id*. at 388 (quoting *Smith v. United States*, 507 U.S. 197, 204, n.5 (1993)).

[58] 544 U.S. at 389.

[59] *Id*.

[60] *Id*.

some laws, such as those in North Korea and Eritrea, that bar private ownership of guns altogether.[61]

In *Small*, including foreign convictions would create internal inconsistencies in the statute. It provided exceptions if the prior conviction was for certain "Federal or State" crimes, but omitted exceptions for similar convictions under foreign law, thus creating "apparently senseless distinction[s]."[62] Similar anomalies would result from reading "criminal or unlawful" to include unlawfulness under Mexican law: PLCAA provides exceptions where the seller violated certain "State or Federal statute[s]"[63] but not similar foreign statutes, and preserves certain claims "under Federal or State law"[64] but not under similar foreign law. These exceptions—without corresponding exceptions based on foreign laws—confirm that Congress "had only domestic [law] in mind."[65]

The textual support here is even more compelling than in *Small*. PLCAA extends its protections to gun importers, *but not to exporters.*[66] Defendants ignore these substantive

---

[61] *See, e.g.*, N. Korea Enacts Rules on Regulating Firearms**,** Korea Times/Yonhap**,** 6 August 2012; *National Report of Eritrea on its Implementation of the United Nations Programme of Action to Prevent, Combat and Eradicate the Illicit Trade in Small Arms and Light Weapons in All Its Aspects* (Jan. 1, 2010), at p. 1; https://www.gunpolicy.org/firearms/region.

[62] *Small*, 544 U.S. at 392.

[63] 15 U.S.C. § 7903(5)(A)(iii); *see also* 15 U.S.C. § 7903(5)(A)(i).

[64] *Id*. § 7903(5)(D).

[65] *Small*, 544 U.S. at 388-389. Defendants brush aside the task of statutory construction by asserting that it is obvious in this case that the cartels' misuse of guns is unlawful under Mexican Law. Jnt. Mem. 30. But the meaning of a statute does not depend on the facts of a particular case; the question is whether the statutory term "criminal or unlawful" reaches misuse that is criminal or unlawful under foreign law, not whether a particular misuse would readily be found to violate that foreign law *if* the statute reached it.

[66] 15 U.S.C. § 7903(6)(A); see also *id*. § 7901(b)(1) (among statute's goals is to protect importers; not mentioning exporters). Section 7903(5)(A) defines a prohibited qualified civil liability action as certain actions brought against "manufacturers" and "sellers." Section

provisions of PLCAA and instead point to a "Finding" that includes a reference to the Arms Export Control Act ("AECA").[67] But that Finding also notably omits any reference to exporting, stating that "[t]he *manufacture, importation*, possession, sale, and use of firearms and ammunition *in the United States* are heavily regulated by Federal, State, and local laws [citing the AECA among other statutes]."[68] True, the AECA has the word "Export" in its title, but it regulates arms manufacture and import as well as export,[69] so the mere reference to the AECA proves nothing. Instead, the extensive federal framework for arms exports[70] emphasizes the conspicuous absence of references to exporters or exporting in *both* PLCAA's substantive protections *and* its Finding.

---

7903(6)(A) defines "sellers" to include licensed importers, but omits exporters. Section 7903(2) defines a "manufacturer" as someone who is licensed as a manufacturer under 18 U.S.C. § 923. A license to import or manufacture does not include the right to export firearms, which requires additional licenses. *See infra* n. 70. And PLCAA refers not just to the status of being an importer (omitting exporters), but also refers to the business of importing but not of exporting. *See* 15 U.S.C. § 7901(a)(5) (referring to "manufacture, marketing, distribution, importation, or sale to the public"); *id*. §7901(a)(4) (same).

[67] Jnt. Mem. 28.

[68] 15 U.S.C. § 7901(a)(4) (emphasis added).

[69] *See, e.g.*, 28 U.S.C. § 2778(a)(1) (providing Executive authority to "promulgate regulations for the import and export of [defense] articles and services"); *id*. § 2778(b)(1)(A)(i) (imposing registration requirement for "manufacturing, exporting, or importing any defense articles … designated by the President"); *id*. § 2778(b)(2) (imposing license requirement on "exports or imports made by or for an agency of the United States Government").

[70] *Id*.; *see also, e.g.,* International Traffic in Arms Regulations, 22 C.F.R. §§ 121 et seq.; Executive Order 13637 and statutes and regulations cited therein.

Defendants also point to PLCAA's references to "interstate and foreign" commerce.[71] But the Supreme Court "ha[s] emphatically rejected reliance on such language, holding that 'even statutes ... that expressly refer to 'foreign commerce' do not apply abroad.'"[72]

Lastly, the legislative history in *Small* revealed no intention to encompass foreign convictions within "convictions in any court."[73] So too here: PLCAA's legislative history has zero discussion of gun misuse that occurs abroad or that is criminal under foreign law—not even a single reference to Mexico, Canada, or their nationals. That absence is all the more compelling because Congress enacted PLCAA when gun-trafficking from the United States to Mexico had long been a well-known problem.[74]

### B.       PLCAA Does Not Preclude Claims of Foreign Governments.

PLCAA defines a "qualified civil liability action" as, *inter alia*, one brought by "any person," which includes "any governmental entity."[75] For all the reasons that *Small* construed the term "any court" to mean only U.S. domestic courts, so should the Court construe "any governmental entity" to mean only U.S. *domestic* governmental entities.

Moreover, the Supreme Court has repeatedly held that "any," including specifically "any person" "ordinarily connotes breadth, but it is insufficient to displace the presumption against

---

[71] Jnt. Mem. 28.

[72] *RJR Nabisco*, 579 U.S. at 353 (quoting *Morrison,* 561 U.S. at 262-63); *see also Aramco,* 499 U.S. at 251 (citing additional cases).

[73] 544 U.S. at 389-94.

[74] *See, e.g.*, Tim Weiner and Ginger Thompson, *U.S. Guns Smuggled Into Mexico Feed Drug War*, N.Y. Times (May 19, 2001), https://www.nytimes.com/2001/05/19/world/us-guns-smuggled-into-mexico-feed-drug-war.html (in 2001 U.S. Attorney General planned to meet with Mexican officials to address this issue).

[75] 15 U.S.C. § 7903(3), (5)(A).

extraterritoriality."[76] That conclusion is particularly apt here because PLCAA pointedly refers to precluding actions "by the Federal Government, States, municipalities [and some non-governmental entities]"[77] but omits any references to *foreign* governments.

### C.    PLCAA Does Not Preclude Claims When the Injury Occurs Abroad.

PLCAA precludes claims for injury, i.e., the "[damages] resulting from"—the "harm solely caused by"—gun misuse.[78] Applying the assumption that Congress legislates with domestic concerns in mind, and intends to avoid impinging on the prerogatives of foreign nations, PLCAA's injury element must be construed to mean injury in the United States.

The Supreme Court in *RJR Nabisco*[79] construed RICO's reference to "injury" to mean an *injury incurred in the United States*. Even though some of the statute's substantive proscriptions apply to foreign conduct, the Court separately analyzed whether the provision that creates a cause of action extends to injuries suffered abroad.[80] Providing a claim under a U.S. statute for injuries suffered abroad creates "a potential for international friction"[81] because the foreign sovereign has an interest in deciding for itself whether and how to address those injuries. When

---

[76] *RJR Nabisco, Inc.*, 579 U.S. at 349-50; *see also Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013) ("[I]t is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality"); *see also United States v. Palmer*, 3 Wheat. 610, 631 (1818) (Marshall, C.J.) ("The words 'any person or persons,' are broad enough to comprehend every human being" but are "limited to cases within the jurisdiction of the state").

[77] *See* 15 U.S.C. § 7901(a)(7), (8).

[78] *See* 15 U.S.C. § 7903(5)(A); § 7901(a)(6), (b)(1).

[79] 579 U.S. 325 (2016).

[80] *Id.* at 346-354. Unlike RICO, none of PLCAA's substantive provisions expressly applies to foreign conduct.

[81] *Id.* at 347.

such potential for friction exists "the need to enforce the presumption [against extraterritorial reach] is at its apex."[82]

RICO's text broadly provides a claim to "any person injured in his business or property," but the Court found that such breadth "is insufficient to displace the presumption against extraterritoriality."[83] Even though some RICO prohibitions apply to foreign conduct, "[s]omething more is needed" to overcome the presumption that "injury" in the claim-granting provision means *domestic* injury.[84] The Court "emphatically rejected" the notion that "injury" includes those incurred abroad merely because the statute "expressly refer[s] to '*foreign* commerce.'"[85] Absent express direction from Congress, RICO's unadorned reference to "injur[y]" required that a plaintiff "allege and prove a *domestic* injury to its business or property."[86]

*RJR Nabisco* is compelling authority because PLCAA is the mirror image of RICO's claim-granting provision. Instead of *providing* a cause of action that would not otherwise exist, as RICO does, PLCAA (under Defendants' reading) would *preclude* causes of action that applicable foreign substantive law would otherwise provide. The "friction" here would be even greater than in *RJR Nabisco* because Defendants would read PLCAA to preclude a claim that the

---

[82] *Id*.

[83] *Id*. at 349-50.

[84] *Id*. at 350.

[85] *Id*. at 353 (quoting *Morrison,* 561 U.S., at 262–263). *See supra* Section IIA.

[86] *Id*. at 354 (emphasis in original).

substantive law of Mexico provides to the Government of Mexico, for injuries incurred in Mexico, resulting from gun misuse in Mexico.[87]

*RJR Nabisco* held that providing a U.S. claim for injuries incurred abroad risks "upsetting a balance of competing considerations that [foreign sovereigns'] own domestic … laws embody"[88] and thereby "offend[ing] the sovereign interests of foreign nations."[89] Those same considerations apply here because "there is a potential for international controversy that militates against [precluding] foreign-injury claims without clear direction from Congress."[90] Absent such clear direction, the Court should not interpret PLCAA to override applicable Mexican tort law and create a safe haven from which Defendants can flood Mexico with crime guns without accountability.

Speaking to claims like these, *RJR Nabisco* emphasized that "a court will ordinarily 'apply *foreign* law to determine the tortfeasor's liability' to 'a plaintiff injured in a foreign country.'"[91] And Congress provided jurisdiction for foreign sovereigns "to sue [a U.S. domestic corporation] for violations of *their own laws* and to invoke federal diversity jurisdiction as a basis for proceeding in U.S. courts."[92] Accordingly, the Court would not "'recognize a cause of

---

[87] The Court in *RJR Nabisco* held that the presumption against extraterritoriality applies "regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction." 579 U.S. at 326; *see also Kiobel*, 569 U.S. at 124 (applying presumption to statute that provided jurisdiction to hear international-law claims).

[88] 579 U.S. at 347 (quoting *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 167 (2004)).

[89] *Id*. at 348 (citation omitted).

[90] *Id*.; *see also Aramco*, 499 U.S. at 248 (purpose of presumption against extraterritoriality is "to protect against unintended clashes between our laws and those of other nations which could result in international discord").

[91] *Id*. at 2109 (quoting *Sosa v. Alvarez–Machain,* 542 U.S. at 706).

[92] *Id*. (emphasis in original).

action *under U.S. law*' for injury suffered overseas."[93] The Court's reasoning leads inexorably to the conclusion that, absent the clearest of statutory text, U.S. law does not preclude a cause of action that applicable foreign law provides for injury suffered abroad.[94]

### D.    Defendants' "Focus" Analysis Is Wrong and Irrelevant.

Defendants argue that "PLCAA applies to [the Government's] claims"[95] because the "focus" of the statute is "barring suits from being 'brought in any Federal or State court.'"[96] Defendants are wrong about PLCAA's focus; it bars only *certain defined* suits—those for injury resulting solely from criminal or unlawful gun misuse.[97] And even if Defendants were right about PLCAA's general focus, *RJR Nabisco* and *Small*'s principles of statutory construction would still apply and would require reading injury and "criminal or unlawful misuse" to mean injury *in the United States* and "criminal or unlawful" *under U.S. law*.

### 1.    Defendants Are Wrong About the Relevant "Focus."

At the first step of an extraterritoriality analysis, Defendants must overcome the presumption against extraterritoriality.[98] As demonstrated above, Defendants come nowhere near

---

[93] *Id*. (emphasis in original) (quoting *Kiobel*, 569 U.S. at 119).

[94] Franklin A. Gevurtz, *Building a Wall Against Private Actions for Overseas Injuries: The Impact of RJR Nabisco v. European Community,* 23 U.C. Davis J. Int'l L. & Pol'y 1, 35 (2016) ("[A]s the Court pointed out in *RJR Nabisco*, 'what is sauce for the goose normally is sauce for the gander.' If U.S. courts are going to say [when the injury occurs abroad] that foreign laws must apply when they are more favorable to U.S. defendants, then U.S. courts must be prepared to accept the consequences of applying such laws when they are more favorable to plaintiffs suing U.S. defendants.") (quoting *RJR Nabisco*, 579 U.S.  at 349).

[95] Jnt. Mem. 27-30.

[96] *Id*. at 27, quoting § 7902(a).

[97] *See* 15 U.S.C. § 7903(5)(A); 7901(a)(6), (b)(1).

[98] *WesternGeco LLC v. ION Geophysical Corp.,* 138 S. Ct. 2129, 2136 (2018).

clearing that hurdle: PLCAA has no indications of extraterritorial application, and the Supreme Court has "emphatically rejected"—repeatedly—Defendants' reliance on statutory references to "foreign commerce."[99]

The second step considers the statute's "focus." Relying on only § 7902(a) of PLCAA, Defendants argue that PLCAA's focus is lawsuits in U.S. federal and state courts.[100] But the Supreme Court's decision in *WesternGeco* forecloses Defendants' siloed reference to only § 7902(a). "When determining the focus of a statute, we do not analyze the provision at issue in a vacuum. … If the statutory provision at issue works in tandem with other provisions, it must be assessed in concert with those other provisions."[101]

Here, § 7902(a) provides that no "qualified civil liability action" may be brought in any Federal or State Court. That provision cannot be understood without reference to the *definition* of a "qualified civil liability action" in § 7903(5)(A). These provisions "work in tandem," so they must be "assessed in concert."

Moreover, *WesternGeco* determined the "focus" of *each of the statute's relevant sections*.[102] Regardless of the focus of § 7902(a), the focus of § 7903(5)(A)'s definition of the

---

[99] *RJR Nabisco*, 579 U.S. at 353.

[100] Jnt. Mem. 27-30.

[101] *WesternGeco*, 138 S. Ct. at 2137; *see also In re Picard, Trustee for Liquidation of Bernard L. Madoff Investment Securities LLC*, 917 F.3d 85, 97 (2d Cir. 2019) ("Just as the focus of [the damages provision] of the Patent Act depends on the infringement provision that enables a plaintiff to seek damages, the focus of [the recovery provision] of the Bankruptcy Code depends on the avoidance provision that enables a trustee to recover property.").

[102] *WesternGeco*, 138 S. Ct. at 2137-2138 (determining that "the infringement" is the focus of § 284 of the Patent Act, and that "the domestic act of 'suppl[ying] in or from the United States'" is the focus of § 271(f)(2)); *see also RJR Nabisco*, 579 U.S. at 346 ("separately appl[ying] the presumption against extraterritoriality to RICO's cause of action"); *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 104 (2d Cir. 2019) (the court must "discern the 'focus' of each [statutory] provision individually").

precluded actions is plainly the defined substantive elements—namely, injury and "criminal or unlawful" gun misuse.[103] In short, PLCAA does not broadly "bar[] lawsuits" as Defendants assert, but "insulat[es] the firearms industry from *a specified set of lawsuits*"—those defined in § 7903(5)(A).[104] As its chief sponsor emphasized, PLCAA "prohibits one narrow category of lawsuits: suits against the firearms industry for damages resulting from the criminal or unlawful misuse of a firearm or ammunition by a third party."[105]

### 2. Regardless of "Focus," § 7903(5)(A) Refers to U.S. Domestic Injury and Law.

Defendants' extraterritoriality and "focus" analyses are not only wrong, but irrelevant. *Small* expressly concluded that applying the statute there was a permissible domestic application, but nevertheless used an "assumption"—one closely akin to the presumption against extraterritoriality—to construe the statute's relevant terms.[106] Although some RICO proscriptions apply abroad, *RJR Nabisco* "interpreted a substantive element of a cause of action"—injury—by "applying the presumption against extraterritoriality to interpret the scope of [the] injury requirement."[107]

---

[103] *See, e.g.*, *WesternGeco,* 138 S. Ct. at 2138 (focus of section awarding damages for infringement is the substantive element of infringement).

[104] *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1138, 1141 (9th Cir. 2009); *see also City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir. 2008) (PLCAA provides protection to "a specific type of defendant from a specific type of suit.").

[105] 151 Cong. Rec. S9,061 (daily ed. July 27, 2005) (Sen. Craig). PLCAA's findings and Congressional purpose are to the same effect. *See, e.g.*, 15 U.S.C. § 7901(a)(3); *id*. §7901(a)(5); *id*. § 7901(a)(6); *id*. § 7901(b)(1).

[106] 544 U.S. at 389-94.

[107] *WesternGeco,* 138 S. Ct. at 2138 (analyzing *RJR Nabisco*).

PLCAA mandates dismissal of certain civil actions. Which ones? *Small* and *RJR Nabisco* require that § 7903(5)(A) be construed to encompass only those actions for injury *in the United States* resulting from gun misuse that is criminal or unlawful *under U.S. law*.

This is hardly surprising. That PLCAA precludes certain lawsuits in U.S. federal and state courts says *nothing at all* about whether the defined lawsuits include those where the injury occurs abroad and the gun misuse is unlawful under foreign law, not U.S. law. In construing that definition's terms, the governing assumption is that Congress "generally legislates with domestic concerns in mind,"[108] and that precluding a foreign-law claim for injuries and events occurring abroad risks undermining the foreign sovereign's law addressing the injuries and events within its jurisdiction.[109] Defendants cannot overcome that assumption.

## III.   THE GOVERNMENT'S CLAIMS ARE WITHIN PLCAA'S STATUTORY EXCEPTIONS.

Even if PLCAA otherwise reached these claims by a foreign government for injuries incurred abroad resulting from gun use abroad, it would not bar this case. Defendants' conduct violates numerous U.S. federal and state statutes applicable to the marketing and sale of guns, so the Government's claims fall within several statutory exceptions to PLCAA.

### A.   The Government's Action Is Within the Predicate-Violation Exception.

Even if the Government's case were a "qualified civil liability action,"[110] PLCAA does not mandate dismissal of any of its claims. While other PLCAA exceptions exempt specific

---

[108] *Small*, 544 U.S. at 388 (citation omitted).

[109] *RJR Nabisco*, 579 U.S. at 347 (quoting *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 167 (2004)).

[110] The Government's claims do not even fall within the general definition of a "qualified civil liability action" in §7903(5)(A). The Supreme Court has instructed courts to narrowly construe

claims, the "predicate exception" exempts "*an action in which* a manufacturer or seller of

a qualified product knowingly violated a State or Federal statute applicable to the sale or

marketing of the product, and the violation was a proximate cause of the harm for which relief is

sought."[111] because its "predicate exception" exempts "*an action* in which a manufacturer or

seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or

marketing of the product, and the violation was a proximate cause of the harm for which relief is

sought."[112] Courts routinely hold that where, as here, the exception applies, *all claims* are

---

the reach of federal laws like PLCAA which purport to intrude into areas of traditional state authority (such as making and applying tort liability) unless Congress has unmistakably stated an intent to infringe on state law. *See Gregory v. Ashcroft,* 501 U.S. 452 (1991); *Bond v. United States*, 134 S. Ct. 2077 (2014); *Cipollone v. Liggett Group*, 505 U.S. 504 (1992). This Court should "not read [PLCAA] to [bar claims like the Government's] unless Congress has made it clear that [they] are *included.*" *Gregory*, 501 U.S. at 467 (emphasis in original). PLCAA does not include such a plain statement. "[I]n the absence of a clear statement in the statutory text or legislative history [of PLCAA] that Congress intended to supersede the states' traditional authority . . . we are compelled to resolve any textual ambiguities in favor of the plaintiffs." *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 312-313, 313 n. 58 (Conn. 2019), *cert denied sub nom. Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019) (citing *Bond* and *Cipollone*). "[R]esult[ing] from" third-party criminal or unlawful use of a firearm is undefined and should be read consistent with PLCAA's first Purpose and one Finding—which indicate Congress's intent to shield only liability for harm "solely caused" by third-party misuse. *See* 15 U.S.C. § 7901(b)(1), (a)(6).

[111] 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). *Compare, e.g.,* § 7903(5)(A)(ii) (exempting action "*for* negligent entrustment) (emphasis added).

[112] 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). Defendants seem to imply that the predicate violation must be a necessary element of one of the claims. Jnt. Mem. 17. Courts across the country have rejected this view (see the next footnote) as does the statutory text. PLCAA defines the elements of the negligent entrustment exception, and exempts other specific actions "for," e.g., negligence per se, but the predicate violation exempts an entire "action" "in which" a defendant knowingly violates an applicable law. The Protection of **Lawful** Commerce in Arms Act does shield actors who engage in unlawful conduct.

excepted from PLCAA's preclusion, regardless of whether they would independently fall within an exception.[113]

### 1. The Complaint Plausibly Alleges that Defendants Knowingly Violated Firearms-Specific Statutes.

The Complaint plausibly alleges that Defendants knowingly violated statutes "applicable to" the sale of guns, even under Defendants' (incorrect) narrow reading of the exception as requiring violation of a "firearms-specific" statute.[114]

For one, Defendants violated 18 U.S.C.§ 922(b)(4)'s prohibition on the sale to the general public of "machinegun[s]" (as defined in 26 U.S.C. § 5845(b)). Defendants argue that firearms are "machineguns" only if "originally designed" to fire automatically.[115] But ATF expressly rejected that narrow interpretation:

> The National Firearms Act, 26 U.S.C. § 5845(b), defines a machinegun to include any weapon which shoots, is designed to shoot, *or can be readily restored to shoot*, automatically more than one shot, without manual reloading, by a single function of the trigger . . . The "designed" definition includes those weapons

---

[113] *See, e.g.*, *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019); *Englund v. World Pawn Exch.*, 2017 Ore. Cir. LEXIS 3, *11-12 (Jun. 30, 2017); *Fox v. L&J Supply, LLC*, No. 2014-24619, 1 n.1 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) (attached to the Declaration of Nicholas W. Shadowen ("Shadowen Dec."), Ex. 55); *Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) (attached to Shadowen Dec., Ex. 56); *Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014); *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. App. 2007), *transfer denied* 915 N.E.3d 978 (Ind. 2009); *Norberg v. Badger Guns, Inc.*, Case No. 10-cv-20655 (Wis. Cir. Ct. Jun. 9, 2011) (attached to Shadowen Dec., Ex. 57); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143 (N.Y. App. Div. 2012), *amended by* 103 A.D.3d 1191 (N.Y. App. Div. 2013); *but see Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, at 5 (Ca. Super. Ct. Jul. 2, 2021), *pet. for writ denied* (Ca. Ct. App. Sep. 4, 2021) (attached to Shadowen Dec., Ex. 58). Defendants cite mostly cases where, unlike here, the complaint did not allege the predicate exception. Jnt. Mem. 18 n. 6. While *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019), found that violation of Connecticut's Unfair Trade Practices Act could satisfy the predicate exception, plaintiffs there did not argue, so the court did not address, whether other claims were also permitted.

[114] *See* Jnt. Mem. 14-17, 21-22.

[115] *See id*. at 18 (emphasis omitted).

which have not previously functioned as machineguns but *possess design features which facilitate full automatic fire by a simple modification* or elimination of existing component parts.[116]

The Complaint plausibly alleges that Defendants' AR-15 and AK-47 style firearms have "design features" that allow "simple modification or elimination of existing component parts" to transform them into guns that are capable of "full automatic fire," rendering them prohibited "machinegun[s]."[117] Courts have denied motions to dismiss on similar allegations.[118]

The Complaint also plausibly alleges that Defendants are accomplices in straw purchases and other gun-sales practices that violate a number of U.S. federal and state statutes.[119] Contrary

---

[116] ATF Rul. 82-8, at p. 1 (emphasis added) (attached to Shadowen Dec., Ex. 59). *See* Compl. ¶ 72.

[117] *See* Compl. ¶¶ 308-13.

[118] *See, e.g.*, *Parsons v. Colt's Manufacturing Company, LLC*, No. 2:19-cv-01189-APG-EJY 2020 WL 1821306, at *6 (D. Nev. Apr. 10, 2020) ("The [plaintiffs] allege that these defendants knowingly manufactured and sold weapons 'designed to shoot' automatically because they were aware their AR-15s could be easily modified with bump stocks to do so. The [plaintiffs] have alleged a wrongful death claim that is not precluded by the PLCAA."); *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL at 3-4 (Ca. Super. Ct. Jul. 2, 2021), pet. for writ denied (Ca. Ct. App. Sep. 4, 2021) (attached to Shadowen Dec., Ex. 58) (similar). *Parsons* also explains why *Staples v. United States*, 511 U.S. 600 (1994) (cited in Jnt. Mem. 18-19) is not controlling as to the question of whether the firearms in question are "machinegun[s]." 2020 WL 1821306, at *5.

[119] A straw purchaser "buys a gun on someone else's behalf while falsely claiming that it is for himself." *Abramski v. United States,* 573 U.S. 169, 171-72 (2014) (upholding straw purchaser's conviction for violation of 18 USC §§ 922(a)(6), 924(a)(1)(a)). A dealer that completes a gun sale despite actual or constructive knowledge that the buyer is a straw purchaser is an accomplice to the straw purchaser's purchase-related crimes. *See United States v. Carney,* 387 F.3d 436, 448-50, 448 n.4 (6th Cir. 2004). The Complaint identifies numerous federal provisions that can be violated by a party who knowingly facilitates a straw purchase (Compl. ¶ 249), and also alleges violations of federal restrictions on gun exports (*id*. ¶¶ 63-65) and selling without a license (*id*. ¶¶ 67).

to Defendants' contention,[120] they can be found to be accomplices or coconspirators under the Supreme Court's decision in *Direct Sales v. United States*[121] and its progeny.[122]

The Complaint alleges that Defendants continually supply numerous downstream distributors and dealers despite actual or constructive knowledge that they illicitly resell guns to traffickers to Mexico.[123] *Direct Sales* upheld the criminal conspiracy conviction of the upstream seller on facts less compelling than here. The *Direct Sales* Court observed that certain items, like firearms and drugs, because of their high "susceptibility to harmful and illegal misuse," can, by their "very nature," help "giv[e] the seller notice the buyer will use them unlawfully."[124] Defendants sell assault rifles, "machinegun[s]," and .50 caliber sniper rifles that are uniquely dangerous, and criminals will foreseeably acquire them if Defendants fail to responsibly market and sell them. As *Direct Sales* noted, "Gangsters, not hunters or small boys, comprise the normal private market for machine guns."[125]

In *Direct Sales*, law enforcement warned the defendant that its bulk sales supplied corrupt doctors who unlawfully distributed its opiates, and the defendant followed the government's recommendation to curtail certain bulk drug sales.[126] Here, Defendants received repeated notice that their distributor and dealer networks illicitly and disproportionately supply traffickers. The

---

[120] Jnt. Mem. 19-20.

[121] 319 U.S. 703 (1943).

[122] *See United States v. Bewig*, 354 F.3d 731, 736-37 (8th Cir. 2003); *United States v. Wyche*, 2003 U.S. App. LEXIS 28632, *6-8 (5th Cir. 2003).

[123] *See, e.g.,* Compl. ¶¶ 115-277.

[124] 319 U.S. at 710-12.

[125] *Id.* at 710.

[126] *See id*. at 707, 707 n. 4.

U.S. government warned Defendants of specific practices that divert their products into criminal markets and called on them to self-police and reform.[127] But Defendants refused.[128]

Defendants say *Direct Sales* does not apply because the Complaint purportedly does not allege that they sold "to any particular buyer[s]" in such large quantities that they "could only be reselling them in illegal transactions."[129] But the Complaint plausibly alleges precisely that.[130] Regardless, *Direct Sales* applied broad principles of accomplice/coconspirator liability that are not limited to its facts. Accordingly, the court in *City of Gary v. Smith & Wesson Corp.*[131] denied the dismissal motions of many of these Defendants,[132] holding that it is "well settled that evidence of willful blindness to critical facts may suffice to establish a knowing violation of a criminal statute."[133]

> **2.   The Complaint Plausibly Alleges that Defendants Violated Unfair Trade Practice Statutes.**

Even if the predicate exception required violations of only "firearms-specific" statutes,[134] Defendants violated them, as explained above. But the exception is broader; it exempts actions in which defendant knowingly violates any "applicable to the sale or marketing of" firearms.[135]

---

[127] Compl. ¶¶ 89-94; *see* U.S. Department of Justice, Gun Violence Reduction: National Integrated Firearms Violence Reduction Strategy (Jan. 18, 2001).

[128] *Id.*

[129] Jnt. Mem. 20 (emphasis omitted).

[130] *See, e.g.*, Compl. ¶¶ 115-277.

[131] 126 N.E.3d 813 (Ind. App. 2019), transfer denied, 2019 Ind. LEXIS 901 (Nov. 26, 2019).

[132] *See also City of Gary v. Smith & Wesson*, 801 N.E.2d 1222, 1234-35 (Ind. 2003).

[133] 126 N.E.3d at 829 n. 18 (addressing accomplice liability); *see also City of Gary v. Smith & Wesson*, 801 N.E.2d 1222, 1234-35 (Ind. 2003).

[134] Jnt. Mem. 14-17, 21-22.

[135] 15 U.S.C. § 7903(5)(A)(iii).

These laws include Massachusetts's Chapter 93A and Connecticut's Unfair Trade Practices Act ("CUTPA").[136]

The Supreme Court of Connecticut in *Soto* rejected Defendants' narrow construction, holding that "[i]f Congress had intended to limit the scope of the predicate exception to violations of statutes that are *directly, expressly*, or *exclusively* applicable to firearms . . . it easily could have used such language, as it has on other occasions."[137] PLCAA contains no such limitation. The Court of Appeals of Indiana similarly held—twice—that violating a state public nuisance law is a predicate violation, even though the law is not firearms-specific.[138] Courts have held that state unfair trade practice laws like CUTPA and Chapter 93A satisfy the predicate exception.[139] Defendants have not cited—and the Government is not aware of—any case that has found that a similar statute that addresses sales and marketing is outside PLCAA's predicate exception.

---

[136] Conn. Gen. Stat. §§ 42-110 *et seq.* All Defendants are alleged to engage in conduct that constitutes unfair business practices, so the Government reserves the right to seek leave to amend to allege violations under other applicable state laws.

[137] 202 A.3d. at 302 (emphasis in original).

[138] *See Smith & Wesson Corp. v. City of Gary*, 875 N.E. 2d 422, 431-35 (Ind. Ct. App. 2007); *City of Gary v. Smith & Wesson Corp.*, 126 N.E. 3d 813, 833-34 (Ind. Ct. App. 2019).

[139] *See Soto*, 202 A. 3d. at 308 n.53 ("CUTPA specifically regulates commercial sales activities and is, therefore, narrower in scope and more directly applicable than the general tort and nuisance statutes at issue in *Ileto*."); *Prescott*, 410 F. Supp. 3d at 1138 (Nevada deceptive trade practices law "specifically regulates the sale and marketing of goods"); *cf. Goldstein*, No. 37-2020-00016638-CU-PO-CTL, 4-5 (violating California unfair trade practices law is a predicate violation). Defendants assert that *Soto* had "no logical basis for limiting the predicate exception to only some generally applicable statutes, but not others." Jnt. Mem. 21-22. In fact, *Soto* identifies such a basis—that state statutes governing "sales and marketing" are within § 7903(5)(A)(iii)'s exception for statutes "applicable to the sale or marketing of" firearms.

Even Defendants' primary authorities refute their position. The Second Circuit in *City of New York v. Beretta U.S.A. Corp.*[140] "agree[d] with the [lower court's] rejection of the . . . argument that the predicate exception is necessarily limited to statutes that expressly regulate the firearms industry."[141] *Ileto v. Glock, Inc.*[142] concurred, noting that the exception encompasses "statutory violations concerning firearm regulations *or sales and marketing regulations.*"[143] Unlike the statutes that *City of New York* and *Ileto* found insufficient to invoke the exception, CUTPA and Chapter 93A are specifically directed to "sales and marketing" activities, thereby falling within the predicate exception under Defendants' own authorities.

That Congress included examples of statutes as possible foundations for a predicate violation[144] does not constrict the broad exception for statutes "applicable to the sale and marketing of" firearms.[145] The non-limiting word "including" that precedes the examples makes clear that they are illustrative rather than exhaustive or restrictive. Nor does giving effect to the plain text render PLCAA's negligence per se exception surplusage.[146] The two exceptions have different elements; for example, the predicate exception requires a "knowing" *mens rea,* whereas the negligence per se exception does not.

---

[140] 524 F.3d 384 (2d Cir. 2008), cited in Jnt. Mem. 14-17.

[141] *Id.* at 400.

[142] 565 F.3d 1126 (9th Cir. 2009), cited in Jnt. Mem. 14-17.

[143] *Id.* at 1137 (emphasis added).

[144] 15 U.S.C. § 7903(5)(A)(iii)(I-II).

[145] *See* Jnt. Mem. 21.

[146] *Id.* at 17.

**B.      The Government's Claims Are Within the Negligence Per Se Exception.**

PLCAA also exempts the Government's negligence per se claims.[147] Defendants

erroneously contend that because they are "manufacturers" they cannot be "sellers" to which the

exception applies.[148] But those statuses are not mutually exclusive, and there is no basis to find

they are not also sellers.

Defendants assert that governmental entities are not within the "class" of victims

intended to be protected by the statutes that Defendants violated.[149] Not so. Even if

Massachusetts's Chapter 93A imposed this limitation, the other U.S. laws that Defendants

violated do not.[150] Criminal statutes that broadly protect the public, like the Gun Control Act,[151]

support negligence per se actions.[152] Defendants have cited no case to the contrary.[153] Their

argument that *foreign* sovereigns are categorically outside the exception[154] is a non-starter; if

PLCAA reaches outside U.S. borders to encompass claims by foreign sovereigns arising from

injuries from gun misuse abroad, it cannot categorically deny them its exceptions.[155]

---

[147] 15 U.S.C. § 7903(5)(A)(ii); *see Practico v. Portland Terminal Co.*, 783 F.2d 255, 262 (1st Cir. 1985) ("Under the traditional negligence approach, negligence per se will be found where violation of a statutory duty cause[s] precisely the kind of harm which the statute was designed to prevent.") (citing Restatement (Second) of Torts § 286).

[148] Jnt. Mem. 12-13, 25-26.

[149] Jnt. Mem. 26.

[150] Compl. ¶¶ 63-65.

[151] *Id*. ¶¶ 66-72.

[152] *See Adamian v. Three Sons, Inc.,* 233 N.E.2d 18, 19-20 (Mass. 1968).

[153] The only case Defendants cite, *Town of Plainville v. Almost Home Animal Rescue & Shelter, Inc*., 187 A.3d 1174 (Conn. App. Ct. 2018) (cited in Jnt. Mem. 26), did not mention any supposed rule that governments can never be within the class of persons that safety statutes are designed to protect. It simply ruled that an anti-animal-abuse statute protected only animals.

[154] *Id.*

[155] Defendants' argument highlights again that PLCAA does not reach these claims in the first instance. *See supra* Section IIA.

IV.    **THE COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANTS'
WRONGFUL CONDUCT CAUSED THE GOVERNMENT'S INJURIES.**

Defendants' arguments that the case must be dismissed for lack of standing and

proximate cause[156] ignore and mischaracterize the Complaint's plausible allegations, misstate

applicable legal standards, and rehash arguments that numerous courts have properly rejected.

The Complaint plausibly alleges that hundreds of thousands of Defendants' guns, valued

at more than $170 million, are trafficked into Mexico every year.[157] "Defendants' guns are the

overwhelming source of the cartels' arsenals."[158] Their guns "account for 47.9% of all crime

guns recovered in Mexico" and "68.4% of the recovered crime guns that originated in the

U.S."[159] The Complaint details that Defendants know that some of their dealers "engage in straw

sales, multiple sales, repeat sales, and other business practices that supply traffickers who arm

the drug cartels,"[160] and  "[d]espite this voluminous notice, Defendants have not instituted a

single public-safety protocol in their distribution systems to detect and deter gun trafficking to

Mexico."[161]

The Complaint plausibly alleges that Defendants' unlawful facilitation of the trafficking

has caused and continues to cause massive damage to the Government, from the murder of its

---

[156] Jnt. Mem. 6-10, 31-38.

[157] Compl. ¶¶ 389, 438.

[158] Compl. ¶116.

[159] Compl. ¶ 435.

[160] Compl. ¶ 118; *see id*. ¶¶ 115–226.

[161] Compl. ¶ 227; *see also* ¶ 247 ("Defendants supply dealers with all the guns they can pay for .
. . even if a gun dealer has been repeatedly found to have violated gun laws, has been indicted or
its employees have had federal gun licenses revoked, or has repeatedly supplied cartels in
suspicious and obvious sales to traffickers, including repeated bulk sales of assault rifles and
sniper rifles.").

police and soldiers, to property damage to its planes and vehicles,[162] to the enormous costs of responding to the "epidemic of [gun] violence that Defendants have created."[163] "If Defendants used reasonable care," the "trafficking of [their] guns into Mexico would be significantly reduced or largely eliminated."[164] "And without the Defendants' supply of crime guns, the less-armed cartels could be controlled and stopped far more easily and effectively."[165]

Contrary to Defendants' contentions, the chain of causation between their wrongful conduct and the Government's injuries is not too attenuated: Defendants supply their guns to dealers that supply them to the cartels, inflicting massive injury on the Government.

### A. The Complaint Plausibly Alleges Causation Sufficient to Confer Article III Standing.

"In this circuit, it is a bedrock proposition that a relatively small economic loss—even an identifiable trifle—is enough to confer standing."[166] "'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'"[167] A plaintiff's burden is "relatively modest at this stage of the litigation."[168] The court "takes all well-pleaded facts in the complaint as true and 'indulges all reasonable

---

[162] Compl. ¶¶ 458-64.

[163] Compl. ¶ 447; *see* ¶¶ 448-74. The Government's losses are alleged in detail in Compl. ¶ 448.

[164] Compl. ¶ 207.

[165] Compl. ¶ 478.

[166] *Massachusetts v. U.S. Dep't of Health and Human Services*, 923 F. 3d 209, 222 (1st Cir. 2019) (cleaned up) (citing, *inter alia*, *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973) (*"SCRAP"*)).

[167] *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (other internal quote marks omitted; cleaned up).

[168] *Id.* at 171.

inferences' in [plaintiffs'] favor to determine whether it plausibly pleaded facts necessary to demonstrate standing to bring the action."[169] Except for "cases where the claim of impact is so specious or patently implausible that a threshold standing objection might be appropriate, . . . the likelihood and extent of impact are properly addressed in connection with the merits."[170]

Defendants challenge the Government's standing solely on the ground that its injuries are purportedly not "fairly traceable" to Defendants' challenged conduct.[171] But their "traceability" argument is based on the erroneous premise that a plaintiff lacks standing when the defendant's conduct harms the plaintiff through a third party's reaction. There is no such rule of law, and their argument "is impossible to maintain."[172]

Holding that "indirectness of injury [is] not necessarily fatal to standing,"[173] the Supreme Court expressly rejected the argument that harm is not fairly traceable where "such harm depends on the independent action of third parties."[174] And traceability may exist when the harm depends on third parties "choosing to violate their legal duty."[175] All that is necessary is that

---

[169] *Dantzler, Inc. v. Empresas Berrios Inventory and Operations, Inc.*, 958 F. 3d 38, 46-47 (1st Cir. 2020).

[170] *Save Our Heritage, Inc. v. F.A.A.*, 269 F.3d 49, 56 (1st Cir. 2001).

[171] Jnt. Mem. 6-10.

[172] *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.) (explaining that "[i]f that principle were true, it is difficult to see how libel actions or suits for inducing breach of contract could be brought in federal court").

[173] *Simon v. E. Ky Welfare Rights Org.*, 426 U.S. 26, 44 (1976); *see also id.* at 45 n. 25 ("[i]n *SCRAP*, although the injury was indirect and 'the Court was asked to follow (an) attenuated line of causation,' the complaint nevertheless 'alleged a specific and perceptible harm' flowing from the agency action" (quoting *SCRAP*, 412 U.S. at 688, 689)).

[174] *Dept. of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019).

[175] *Id.*

"third parties will likely react in predictable ways . . . even if they do so unlawfully."[176] It is certainly predictable that the cartels will use Defendants' guns to inflict the harm alleged.

Defendants make much of the allegation that their guns constitute "only" 49.7% of crime guns recovered in Mexico, and point to the millions of firearms in the hands of criminals that they did not sell. But Defendants' conduct need not be the *sole* cause of plaintiff's injuries; their conduct need only "contribute[] to [the Government's] injuries."[177]

Defendants cite two pre-PLCAA cases in which courts found that local governments had no "standing" to bring certain state-law claims,[178] but those cases applied inapt standards.[179]

---

[176] *Id.* at 2566 (explaining that "'Article III requires no more than *de facto* causality'" (quoting *Block*, 793 F.2d at 1309)). In *Massachusetts*, the First Circuit held that a risk of fiscal injury based on "'rational economic assumptions'" and a confluence of multiple events is not speculative. 923 F.3d at 223 (quoting *Adams v. Watson*, 10 F.3d 915, 923 (1st Cir. 1993)); *see also id.* at 919-920; 922-923 (rejecting defendant's assertion "that the sequence of economic events … [wa]s too conclusory, speculative or attenuated," even though the chain of causation depended on numerous steps); *Boston Alliance of Gay, Lesbian and Transgender Youth (BAGLY) v. U.S. Dept. of Health and Human Services*, No. 20-11297-PBS, 2021 WL 3667760 (D. Mass. Aug. 18, 2021) (health care provider had standing to challenge change in Affordable Care Act rule based on third parties' subjective fear of discrimination that would contribute to increased demand for provider's services).

[177] *Massachusetts v. E.P.A.*, 549 U.S. 497, 523-25 (2007) (Massachusetts had standing to challenge EPA's refusal to regulate greenhouse gas emissions from new motor vehicles because such emissions make a "meaningful contribution to greenhouse gas concentrations and hence . . . to global warming" that injures Massachusetts, particularly as a coastal landowner). That the Court elsewhere found standing where the conduct of a third party was "made possible only by the challenged action of the defendant federal official," *Simon*, 426 U.S. at 45 n. 25 (describing *Barlow v. Collins*, 397 U.S. 159 (1970)), hardly casts doubt on the "contributes to" standard; the Court found the link between that defendant's action and the third party's conduct to be a sufficient contribution to causation, not a necessary one. *See, e.g., Clean Water Action v. Searles Auto Recycling Corp.*, 268 F. Supp 3d 276, 281 (D. Mass. 2017) ("fairly traceable" standard met by showing conduct "causes or contributes to the kind of injuries alleged").

[178] Jnt. Mem. 8, citing *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001) and *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245 (D. N.J. 2000).

[179] *See Ganim*, 780 A.2d at 98, 118-131 (Conn. 2001) (not applying Article III, but Connecticut law based on RICO proximate-cause standard); *Camden Cnty. Bd. of Chosen Freeholders*, 123 F. Supp. 2d at 256-264 (D. N.J. 2000) (applying "proximate cause approach" of six-factor antitrust framework to causal-connection requirement).

Numerous other courts have rejected those courts' reasoning and found that harms alleged to governments from gun manufacturers' supply of the criminal market are not too remote to preclude standing.[180]

### B.  Defendants' Proximate-Cause Arguments Are Meritless.

Defendants' causation arguments fare no better under the rubric of proximate cause.[181] Their proximate cause arguments fail at the outset because the contours of the requirement depend on the substantive law being applied.[182] Here, the law that applies is Mexican law, about which Defendants have nothing to say.[183]

The applicable tort principle of Mexico is "adequate cause," similar to "foreseeability" under common law in U.S. states.[184] It is a case-specific factual inquiry dependent on the particular circumstances.[185] Once the plaintiff makes an initial showing that the injury is causally

---

[180] *See White v. Smith & Wesson*, 97 F. Supp. 2d 816, 826 (N.D. Ohio 2000) (municipality had Article III standing to bring negligence and nuisance claims); *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *3, *4 & n.20 (Mass. Sup. Ct. July 13, 2000) (standing under state law); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147-1149 (Ohio 2002) (agreeing with *City of Boston* and *White* over *Ganim*; harm to the city caused by industry actors creating an illicit secondary firearms market was not too remote to preclude recovery); *City of Gary v. Smith & Wesson*, 801 N.E.2d 1222, 1248 (Ind. 2003) (municipal plaintiff met standing requirement akin to Article III "by alleging it was financially injured through the sale and use of negligently distributed firearms and by alleging a nuisance within its borders caused by the defendants"); *cf. City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 632 (N.D. Cal. 2020) (City satisfied traceability requirement with allegations that "Walgreens' oversupply of opioids and failure to report suspicious orders caused third parties to act in a way that injured the City").

[181] Jnt. Mem. 31-38.

[182] *See, e.g.*, *Forrestal v. Magendantz*, 848 F.2d 303, 307 (1st Cir. 1988) (district court erred in failing to apply proximate-cause standard of state law under which cause of action was brought).

[183] *See supra* Section I.

[184] Shadowen Dec., Ex. 2, Plaintiff's First Expert Report on Tort Law of Mexico ("First Tort Law Report") ¶¶ 67-69.

[185] *Id.* ¶¶ 67-74.

related to the defendant's negligence, the defendant has the burden to show that some unforeseeable event broke the causal chain.[186]

Ignoring the governing law of Mexico, Defendants rely principally on cases involving the proximate cause rule under RICO,[187] which is not even the standard under Massachusetts law,[188] nor under the common law in the United States more generally.[189] Moreover, the issue of reasonable foreseeability—the central question of proximate cause under Mexican law, Massachusetts law, and the common law—involves a "factual determination [that] should be made by a [factfinder],"[190] and is generally not appropriate for a motion to dismiss.[191]

---

[186] *Id.* ¶ 69.

[187] *See* Jnt. Mem. 31-32, 35

[188] *See Doull v. Foster*, 163 N.E. 3d 976, 983 (Mass. 2011) (standard for proximate cause under Massachusetts means "that the harm must have been 'within the scope of the foreseeable risk arising from the negligent conduct.'" (citing *Leavitt v. Brockton Hosp., Inc.*, 907 N.E. 2d 213, 219 (Mass. 2009)).

[189] *See James v. Arms Technology, Inc.*, 820 A. 2d 27, 38 (N.J. Super. 2003) (federal antitrust/RICO causation standard applied in *Steamfitters, City of Philadelphia, and Ganim* "does not fit squarely in a case . . . involving application of traditional tort concepts under New Jersey law"); *City of Chicago v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971, at *13 (N.D. Ill. Mar. 31, 2021) ("Whatever federal courts have said about proximate cause in the context of federal statutes such as [RICO]. . . plaintiff's claims in this case are governed by Illinois law" under which "foreseeability is the touchstone of the legal-cause analysis.") (cleaned up).

[190] *Davis v. Protection One Alarm Monitoring, Inc.*, 456 F. Supp. 2d 243, 253 (D. Mass. 2006) (Saylor, J.) (citing *Solimene v. Gravel*, 507 N.E. 2d 662 (Mass. 1987) quoting Restatement (Second) of Torts §453 cmt b).

[191] *See Szulik v. State Street Bank and Trust Co.*, 935 F. Supp. 2d 240, 268 (D. Mass. 2013) ("'The question of proximate cause is a question of fact, and this court will not base a motion to dismiss upon such an issue.'" (quoting *Curran v. City of Boston*, 777 F. Supp. 116, 123 (D. Mass. 1991)). Defendants cite *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016), but that case is easily distinguishable because the complaint utterly lacked plausible allegations of foreseeable harm; rather the "causal chain is shot through with conjecture: it pyramids speculative inference upon speculative inference" and "is forged entirely out of surmise" and "conclusory statements." *Id.* at 25.

### 1.   The Number of Steps in the Causal Chain Does Not Preclude Proximate Cause.

Defendants argue that there are too many steps in the causal chain to satisfy proximate cause.[192] But under the law of Mexico and Massachusetts, what counts is not the *number* of steps in the abstract, but whether the Government's injuries were a foreseeable result of Defendants' misconduct.[193] Moreover, the chain of causation does not involve eight steps, as Defendants assert, but closer to three: (1) Defendants sell guns through their distribution systems to retail dealers; (2) their dealers sell the weapons to gun traffickers and cartels; and (3) cartels use the weapons to cause the Government harm.

Defendants are wrong in asserting that no case has ever found proximate cause on facts like these.[194] Many have. *Ileto*, for one, allowed liability claims against gun manufacturers and distributors for facilitating interstate trafficking of a gun, which was repeatedly transferred among several lawful possessors and multiple criminals and then intentionally misused in a hate crime.[195] The court held that these links "[we]re not too attenuated;" the circulation of a gun among bad actors and its unlawful use are foreseeable consequences of unreasonable business

---

[192] Jnt. Mem. 32-33.

[193] S*ee, e.g.,* First Tort Law Report ¶ 74; *Com. v. Carlson*, 447 Mass. 79, 84 (2006) ("The general rule is that intervening conduct of a third party will relieve a defendant of culpability for antecedent negligence only if such an intervening response was not reasonably foreseeable."); *see also id*. ("The foreseeability of the harm is the 'most crucial factor' justifying liability.") (internal quotations and citations omitted).

[194] Jnt. Mem. 34.

[195] *See* 349 F.3d at 1196-98, 1197 n. 7.

practices that create and fuel an illegal gun market.[196] *City of Boston*, *City of Cincinnati*, and *City of Gary* illustrate that this rule applies where a governmental entity is harmed.[197]

### 2.    Foreseeable Criminal Acts Are Not a Superseding Cause.

Defendants wrongly assert that the intervening criminal act of a third party is a "textbook superseding cause."[198] But the law of Mexico provides that criminal conduct is *not* a superseding cause if it is a foreseeable result of the defendant's wrongful conduct.[199] Indeed, failing to guard against foreseeable criminal conduct can add to the negligence rather than excuse it.[200] The same

---

[196] *See id*. at 1196-98, 1204-09.

[197] *See supra* n. 180; *see also James*, 820 A.2d at 39 (declining to dismiss complaint on proximate cause grounds notwithstanding "multiple links between defendants' conduct and the ultimate harm suffered by the City"); *cf. City of Chicago v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971, at *11-13 (N.D. Ill. Mar. 31, 2021) (discussing and following opioid cases finding proximate cause where manufacturers' negligent distribution of opioids allegedly caused "significant knock-on effects" that increased the cost of city services). Several of Defendants' contrary authorities (Jnt. Mem. 34) are also inapposite because they did not involve (or the court failed to sufficiently credit) allegations of a pattern of unlawful conduct involving manufacturers aiding and abetting or conspiring with corrupt downstream dealers to violate firearms laws in order to supply criminal third parties. *See People v. Sturm, Ruger & Co*., 309 A.D.2d 91, 103 (N.Y. App. Div. 2003) (citing to "defendants' *lawful commercial activity*") (emphasis added); *Camden County Bd. of Chosen Freeholders*, 123 F. Supp. 2d at 258 n. 8 ("plaintiff has not alleged that defendants engaged in a conspiracy"). Here the complaint alleges that Defendants aided or conspired with downstream parties to engage in *unlawful* commercial activity directed at supplying the criminal market. *See, e.g.,* Compl. ¶¶ 106-114.

[198] J. Mem. 33. Defendants inaccurately contend that PLCAA imposes a proximate cause requirement above and beyond that recognized at common law, requiring the Government to link "specific statutory violation[s] to . . . specific injuries." *Id.* at 23. Not so. *City of Gary* noted that the gun manufacturers had created an illicit firearms market that led to an increase in violent crime, and expressly rejected defendants' argument that "the City was required to allege a specific statutory violation" to satisfy PLCAA. *See* 126 N.E.3d 813, 834 (internal quotation omitted).

[199] First Tort Law Report ¶ 73.

[200] *Id*.

rule is recognized by the Restatement (Second) of Torts[201] and the First Circuit case that

Defendants cite.[202] Under Massachusetts law, "liability will be imposed where the actor realized,

or should have realized, the likelihood that . . . a situation [which afforded an opportunity to the

third person to commit such a tort or crime] might be created, and that a third person might avail

himself of the opportunity to commit a crime."[203] Hence, *City of Boston* held that Defendants'

superseding cause argument "fails in Massachusetts if the third person's acts could have been

foreseen, which is what Plaintiffs allege."[204] Similarly, foreseeable criminal misconduct was no

bar to proximate cause in *Ileto*, *City of Cincinnati*, and *City of Gary*.[205]

---

[201] Restatement (Second) of Torts § 448 (criminal act of a third party is not a superseding cause where "the [initial] actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created . . . that a third person might avail himself of the opportunity to commit . . . a tort or crime").

[202] *See Davis v. United States,* 670 F. 3d 48, 56 (1st Cir. 2012) (upholding negligence liability of FBI agents for harm resulting from murders committed by informant where defendants' reckless conduct made the outcome "eminently predictable"); *see also* Dobbs, *supra*, § 190, at 472 ("Today's courts usually recognize that foreseeability, in the nature of things, is fact-specific, so they now often permit juries to find that a criminal act was foreseeable and not a superseding cause."). That "beer companies know that minors drink, but none of this knowledge makes those companies liable for resulting harms," Jnt. Mem. 31, does not mean that a beer company that distributes alcohol to dealers that it knows illegally sell to minors can escape liability for the foreseeable harm. *Cf. Tobin v. Norwood Country Club, Inc.,* 661 N.E.2d 627, 632 (Mass. 1996) ("Where a commercial establishment [sells] alcohol to a minor . . . we [do] not hesitate to impose a duty of care flowing to the public").

[203] *Davis v. Protection One*, 456 F. Supp. 2d at 254; *accord* Restatement (Second) of Torts § 448; *see also Jupin v. Kask*, 849 N.E. 2d 829, 836 (Mass. 2006) ("'an act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm,' . . . 'even though such conduct is criminal'" (quoting Restatement (Second) of Torts § 302B)).

[204] *City of Boston*, 2000 WL 1473568, at *15 n.65. Defendants are simply wrong that the only exception "is when a defendant itself *directly* exposes a plaintiff to the risk of immediate criminal danger," Jnt. Mem. 33, as the cases discussed above demonstrate.

[205] *See also San Francisco*, 491 F. Supp. 3d at 681 ("the intervening acts—including decisions by prescribers, patients, distributors, pharmacies, and third-party criminals—are reasonably foreseeable, and thus not superseding acts"). Nor does the criminal misuse of a gun bar a product liability action for defective design. Jnt. Mem. at 24-25. The court in *City of Boston* and the

###### 3.      The Government's Injuries Are Not Solely "Derivative."

Nor are the Government's injuries too remote because they are "derivative" of the harm

to its citizens.[206] Mexican tort law does not recognize any such restriction on the Government's

right to recover.[207] And *City of Boston* considered and rejected essentially the same argument

under U.S. law:

> This alleged harm is in large part not "wholly derivative of" or "purely
> contingent on" harm to third parties. . . [H]arm to Plaintiffs may exist even if
> no third party is harmed. . . . Even if no individual is harmed, Plaintiffs sustain
> many of the damages they allege due to the alleged conduct of Defendants
> fueling an illicit market (e.g., costs for law enforcement, increased security,
> prison expenses and youth intervention services). Similarly, diminished tax
> revenues and lower property values may harm Plaintiffs separately from any
> harm inflicted on individuals. Plaintiffs' harm is in essence the type of harm
> typically suffered by [governments] due to public nuisances. Indeed, much of
> the harm alleged is of a type that can only be suffered by these plaintiffs.[208]

The same logic applies here.[209] The Government incurs many increased costs to fight gun

violence—for example, increased expenses for law enforcement and security—to protect its

---

Supreme Courts of Ohio and Indiana rejected this position, either explicitly or implicitly. *See*
2000 WL 1473568  (allowing breach of warranty action for defective design); *City of Cincinnati,*
768 N.E.2d at 1145-47 (allowing product liability claim despite intervening criminal misuse);
*City of Gary*, 801 N.E.2d at 1247-48 (similar); *see also Goldstein,* No. 37-2020-00016638-CU-
PO-CTL (Ca. Super. Ct. Jul. 2, 2021) (allowing product liability claim for firearm used in hate
crime).

[206] Jnt. Mem. 35-37.

[207] First Tort Law Report ¶¶ 69-74.

[208] 2000 WL 1473568, at *6. Other courts have reached the same conclusion as *City of Boston.
See City of Cincinnati*, 768 N.E. 2d at 1147-49; *James*, 820 A.2d at 41 (cost of governmental
services in responding to increased gun crime not derivative); *see also City of Boston v. Purdue
Pharm, L.P.*, No. 1884CV02860, 2020 WL 977056, at *4 (Mass. Super. Jan. 29, 2020) (rejecting
defendant's causation argument that "harms the Cities allegedly suffered [responding to the
opioid epidemic] are wholly derivative of the personal injuries of the individual opioid users")
(internal quote marks omitted).

[209] The Government does not concede the absence of *parens patriae* standing; the paragraph that
Defendants cite expressly preserves the Government's right "to bring these and similar claims as
*parens patriae* on behalf of its citizens." Compl. ¶ 30, cited by Jnt. Mem. 36.

citizens from *additional future* harms. And the death of and injury to Government police and military and the destruction of government property is not "derivative" of citizens' harm.[210]

### C.   The Question of How to Apportion Damages Is Not Grounds for Dismissal.

Defendants wrongly assert that the potential difficulty of apportioning damages merits dismissal.[211] The law of Mexico does not recognize such alleged potential difficulty as the basis for dismissal.[212]

And applying U.S. law, *City of Boston* denied a motion to dismiss on similar grounds, holding that "[t]he difficulty in ascertaining damages in this case is best assessed when the case has gone beyond the pleading stage."[213] The burden is not on the Government to explain, at the pleading stage, how to apportion liability between the Defendants and others who potentially share their culpability.[214] It will be Defendants' burden to prove that some share of the blame should be allocated to others.[215] The issue will be fought out later, after discovery.[216]

---

[210] Defendants' argument against the Government's damages associated with the death and injury of its police and military is based on *Ganim* and *City of Philadelphia*, neither of which discusses the issue and both of which apply a RICO proximate-cause standard. Another of Defendants' cases merely declined, on separation-of-powers grounds, to create a federal common law claim for the government to recover the medical costs of its employees. *See United States v. Standard Oil of Cal.*, 332 U.S. 301 (1947).

[211] Jnt. Mem. at 37-38 (citing RICO standard).

[212] First Tort Law Report ¶¶ 75-79.

[213] *City of Boston*, 2000 WL 1473568, at *7 n. 33.

[214] *See generally* Restatement (Second) of Torts § 433B (burden of proof on apportionment of joint harm is on defendants).

[215] *See, e.g.*, *Rhode Island v. Atlantic Richfield Co.*, 357 F. Supp. 3d 129, 137-41 (D.R.I. 2013) (denying motion to dismiss for failure to plead causation among tortfeasors; applying Restatement rule under Rhode Island law).

[216] Defendants' citation to *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 36 (1st Cir. 2021), is inapposite because it involves proximate cause under RICO and was not even referring to apportionment of liability among wrongdoers.

Whether damages will need to be apportioned between the Government and other victims is not a relevant proximate-cause consideration under Massachusetts or common law.[217] Nor is it appropriate to consider on a motion to dismiss.[218] There is no real issue here; the Government is seeking to recover for independent harms for which *only* it can recover.[219] And the requested injunctive relief is not subject to apportionment.[220]

## V.     THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS VIOLATED A LEGAL DUTY TO MEXICO.

Defendants assert that they have no duty to protect the Government from criminal misuse of guns in Mexico.[221] But their argument misstates the Government's Complaint, which does not allege any such duty. Instead, the Complaint alleges that Defendants failed to use reasonable care, and adhere to statutes, by unlawfully and recklessly selling and distributing their guns. Under the tort law of Mexico, as well as under general common law principles, all persons owe a duty to avoid affirmative conduct that foreseeably increases the risk of harm to others.[222]

*City of Boston* recognized this distinction in refusing to dismiss similar claims against gun manufacturers for fueling an illegal secondary market. The court concluded that "Plaintiffs do not allege that Defendants were negligent for failure to protect from harm but that Defendants engaged in conduct the foreseeable result of which was to cause harm to Plaintiffs;" and

---

[217] *See Doull*, 163 N.E. 3d at 983; *see also Lexmark,* 572 U.S. at 135 ("potential difficulty in ascertaining and apportioning damages is not  . . . an independent basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects") (emphasis omitted).

[218] *City of Boston*, 2000 WL 1473568, at *7 n. 33.

[219] *See id.* at *6 and cases cited *supra* n. 208.

[220] See Compl. Demand for Judgment.

[221] Jnt. Mem. 39-40.

[222] First Tort Law Report ¶¶ 25, 34-36, 67-69.

defendants' "fail[ure] to exercise adequate control over the distribution of their firearms" breached their duty to avoid "affirmative acts that unreasonably expose others to a risk of harm."[223]

Defendants do not even attempt to distinguish this Massachusetts authority.[224] They inaccurately label *City of Boston* an erroneous "outlier."[225] Not so. The Supreme Court of Ohio echoed *City of Boston* in reversing dismissal of claims against gun manufacturers and found that "the negligence issue before us is not whether appellees owe appellant a duty to control the conduct of third parties. Instead, the issue is whether appellees are themselves negligent by manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market that results in foreseeable injury."[226] Similarly, the Supreme Court of Indiana, allowing claims similar to the Government's, observed that each firearms industry defendant "is a custodian and owner of the weapon at the times that defendant possesses it in the chain of

---

[223] *City of Boston*, 2000 WL 1473568, at *15.

[224] Defendants' reliance on tobacco cases brought by foreign governments is misplaced because they were decided on the basis that the governments' efforts to recover the medical costs of treating smokers by direct action rather by subrogation would "strip the defendants of defenses which would otherwise be available to them." *State of Sao Paulo of Federative Republic of Brazil v. American Tobacco Co.*, 919 A.2d 1116, 1123 (Del. 2007); *see Republic of Venezuela v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002) (same basis); *SEIU Health & Welfare Fund*, 249 F.3d at 1070, 1073, 1074, 1076 (referring repeatedly to this point). And *Carney v. Bereault*, 204 N.E. 2d 448, 452 (Mass. 1965), is inapt (Jnt. Mem. 39); the referenced quote involved a failure of proof of causation at trial due the length of time between manufacture and injury "where the thing in question is subject to change by wear or crystallization or deterioration or neglect or unskillful repair or improper handling."

[225] Jnt. Mem. 42.

[226] *City of Cincinnati*, 768 N.E.2d at 1144.

distribution" and has a duty "to act reasonably to avoid injury to anyone, including [a municipal entity], who is reasonably foreseeably harmed."[227]

Defendants cite contrary cases, but they are at odds with the judicial consensus.[228] *City of Boston* follows the better-reasoned approach of the Supreme Courts of Indiana and Ohio.

## VI.   THE COMPLAINT ADEQUATELY ALLEGES THAT DEFENDANTS CREATED A PUBLIC NUISANCE.

Defendants assert that the public-nuisance doctrine does not apply to marketing and distributing products that are themselves lawful.[229] The law of Mexico allows such claims.[230]

Courts applying Massachusetts and other U.S. law agree that recklessly supplying a dangerous product may constitute a public nuisance, even if that product itself is not outlawed. *City of Boston* found that "alleg[ations that] Defendants intentionally and negligently created and maintained an illegal, secondary firearms market" (along with supporting allegations) were "sufficient . . . to state a claim for public nuisance."[231] These allegations mirror those in the

---

[227] *City of Gary*, 801 N.E.2d at 1242. *Cf. In re National Prescription Opiate Litig.*, MDL No. 2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018) (finding common law duty where plaintiffs alleged that defendants, "by failing to administer responsible distribution practices (many required by law)" "not only failed to prevent diversion, but affirmatively [and foreseeably] created an illegal, secondary opioid market" and that it was "foreseeable that local governments will be responsible for combatting the creation of that market and mitigating its effects").

[228] *See* Jnt. Mem. 2 & n. 1 (citing, *e.g., Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001)).

[229] *Id.* at 3, 40.

[230] The tort law of Mexico treats the fact pattern of what is known in the U.S. as "public nuisance" under the general principles of negligence. First Tort Law Report ¶¶ 85-90. Those principles do not exclude the misuse of lawful products to cause injury. *Id.*

[231] 2000 WL 1473568, at *14.

Complaint.[232] As with the issue of duty, other courts,  including, again, the Supreme Courts of Ohio and Indiana, have followed *City of Boston* as to nuisance.[233]

Defendants erroneously contend that *Jupin v. Kask*[234] conflicts with *City of Boston*.[235] It does not. *Jupin* merely concluded that the unsafe storage of a single firearm later stolen and used in a murder was not a public nuisance.[236] Actively supplying criminals with firearms is "far more egregious" and is akin to the public nuisance claims that courts have upheld. Indeed, in the Massachusetts opioid case, the court recognized that *Jupin* was quite a different case, holding that the cities' allegation that the distributor defendants "knowingly supplied an illicit opioid market over the course of years" was more like *City of Boston* than *Jupin* and therefore sufficient to state a nuisance claim.[237]

## VII.    DEFENDANTS' PROFFERED PRINCIPLES OF INTERNATIONAL AND CONSTITUTIONAL LAW DO NOT BAR THE GOVERNMENT'S CLAIMS.

Defendants offer a hodge-podge of purported principles of international law and constitutional law to support their motion. The principles do not exist, do not apply, or both.

---

[232] *See, e.g.,* Compl. ¶¶ 109-14, 118-24, 208-09, 227-77, 377-84, 434-505, 551-54.

[233] *See City of Cincinnati*, 768 N.E.2d at 1141-1144; *City of Gary*, 801 N.E.2d at 1234-35; *see also In re: Juul Labs, Inc., Marketing Sales Practices, and Products Liability Litig.*, 497 F. Supp. 3d. 552 (N.D. Cal. 2020) (holding that public entities stated claims for RICO, public nuisance, and negligence under various states' laws to recover costs incurred in responding to the youth e-cigarette crisis allegedly caused by defendants' marketing of e-cigarettes towards youth).

[234] 849 N.E.2d 829 (Mass. 2006).

[235] *See* Jnt. Mem. 42.

[236] 849 N.E.2d. at 843-44.

[237] *City of Boston v. Purdue*, 2020 WL 977056, at *5; *see also Evans v. Lorillard Tobacco Co.*, No. CIV. A. 04-2840A 2007 WL 796175, at *18-19 (Mass. Sup. Ct. Feb. 7, 2007) (public nuisance claim against tobacco manufacturers allowed).

Defendants boldly assert that "international law" bars the Government's claims. But they never identify any such law—none exists. Instead, international law upholds "a state's jurisdiction to prescribe law with respect to conduct that has a substantial effect within its territory."[238]

Defendants invoke "international comity,"[239] but that is a doctrine by which a sovereign, pursuant to its own domestic law, gives to another sovereign deference that international law does not require.[240] No such principle requires the Government to forgo claims under its own law for injuries that Defendants foreseeably and systematically impose on it in Mexico.

Lastly, the Second Amendment does not confer a right on Defendants to recklessly sell, market, or design guns, especially assault weapons, and to facilitate trafficking them outside the United States.[241] And it does not confer on any person, inside or outside the United States, a right to participate with Defendants in that conduct.

---

[238] Restatement (Fourth) of the Foreign Relations Law of the United States § 409 (2018); *see also Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993) (Sherman Act properly applies to conduct abroad "that was meant to produce and did in fact produce some substantial effect in the United States").

[239] Jnt. Mem. 42.

[240] *See, e.g.*, William S. Dodge, *International Comity in American Law*, 115 Colum. L. Rev. 2071, 2121 (2015).

[241] *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), made clear that the "Second Amendment . . . [i]s not unlimited." *See also id*. at 626-27, 627 n.6 (noting, among other limitations, the permissible "conditions and qualifications on the commercial sale of arms"); *United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012) ("Consistent with the historical understanding of the right to keep and bear arms, several courts, including the Supreme Court in *Heller,* have recognized that the right to keep and bear arms is for *lawful purposes.*") (emphasis in original); *Kolbe v. Hogan*, 849 F.3d 114, 135 (4th Cir. 2017) (*en banc*) (assault weapons not protected).

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' joint motion to dismiss in its entirety.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff hereby requests oral argument.

Dated:  January 31, 2022                    Respectfully submitted,

/s/ *Steve D. Shadowen*
Steve D. Shadowen (pro hac vice)
Richard M. Brunell (BBO# 544236)
Nicholas W. Shadowen (pro hac vice)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ *Jonathan E. Lowy*
Jonathan E. Lowy (pro hac vice)
BRADY
840 First Street, N.E. Suite 400
Washington, DC 20002
Phone: 202-370-8104
jlowy@bradyunited.org

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

Dated: January 31, 2022                          Respectfully Submitted,

                                                 /s/ *Steve D. Shadowen*
                                                 Steve D. Shadowen

                                                 .