# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

---

ESTADOS UNIDOS MEXICANOS,

                      Plaintiff,

         v.

SMITH & WESSON BRANDS, INC.; BARRETT
FIREARMS MANUFACTURING, INC.;
BERETTA U.S.A. CORP.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY, LLC; GLOCK,
INC.; STURM, RUGER & CO., INC.; WITMER
PUBLIC SAFETY GROUP, INC. D/B/A
INTERSTATE ARMS,

                      Defendants.

CIVIL ACTION
NO. 1:21-cv-11269-FDS

LEAVE TO FILE GRANTED
ON FEBRUARY 3, 2022

---

# BRIEF OF AMICI STATES MASSACHUSETTS, CALIFORNIA, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAIʻI, ILLINOIS, MARYLAND, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, AND OREGON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND INTERESTS OF AMICI CURIAE ................................1

ARGUMENT ..............................................................................2

      I.      PLCAA Must Be Construed in Light of the Settled Presumption That, Absent an Unmistakably Clear Statement from Congress, Federal Statutes May Not Be Read to Displace Traditional Areas of State Authority ....................................................2

      II.     The Plain Text and Legislative History of PLCAA Evince Congress's Intent to Permit Actions Against Gun Manufacturers and Dealers That Allege Knowing Violations of State Consumer Protection Laws................................................5

              A.     Actions Asserting Claims Under State Consumer Protection Laws Like Chapter 93A and CUTPA Fall Within PLCAA's Predicate Exception. ...............................6

              B.     PLCAA's Findings and Purpose, as Well as Its Legislative History, Confirm That Actions Asserting Violations of State Consumer Protection Laws Are Not Barred by PLCAA................................10

              C.     When a Plaintiff Plausibly Pleads a Claim That Falls Within the Predicate Exception, the Entire Action May Proceed. ....................................................13

      III.    The Defendants' Construction of PLCAA Raises Serious Tenth Amendment Concerns. ........................................14

CONCLUSION...........................................................................18

## TABLE OF AUTHORITIES

### Cases

*Alden v. Maine*,
    527 U.S. 706 (1999) .................................................................................. 15

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008) ..................................................................................... 5

*American Shooting Sports Council, Inc. v. Attorney General*,
    711 N.E.2d 899 (Mass. 1999) ...................................................................... 9

*Atascadero State Hosp. v. Scanlon*,
    473 U.S. 234 (1985) .................................................................................... 2

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005) .................................................................................... 5

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996) .................................................................................... 4

*Bond v. United States*,
    572 U.S. 844 (2014) .................................................................................... 2

*Brownback v. King*,
    141 S. Ct. 740 (2021) ................................................................................. 14

*Chamber of Commerce v. Whiting*,
    563 U.S. 582 (2011) .................................................................................. 10

*Chiapperini v. Gander Mountain Co.*,
    13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) ...................................................... 13

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008) .................................................... 7, 9, 10, 12, 17

*Corporan v. Wal-Mart Stores E., LP*,
    No. 16-2305-JWL, 2016 WL 3881341 (D. Kan. July 18, 2016) ............... 13

*Crowell v. Benson*,
    285 U.S. 22 (1932) .................................................................................... 15

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014) ....................................................................................... 3

*Delana v. CED Sales, Inc.*,
  486 S.W.3d 316 (Mo. 2016) ....................................................................17

*Draper v. Healey*,
  827 F.3d 1 (1st Cir. 2016) .........................................................................9

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
  485 U.S. 568 (1988) .................................................................................14

*EEOC v. Arabian American Oil Co.*,
  499 U.S. 244 (1991) ...................................................................................2

*Esso Standard Oil Co. v. Cotto*,
  389 F.3d 212 (1st Cir. 2004) ......................................................................8

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) .................................................................2, 5, 10, 15

*Gustafson v. Springfield Inc.*,
  2020 P.A. Super. 239 (Pa. Sup. Ct. 2020) ...............................................16

*Highland Farms Dairy v. Agnew*,
  300 U.S. 608 (1937) ...................................................................................4

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) .........................................................7, 9, 10

*In re Vargas*,
  131 A.D.3d 4 (2015) ................................................................................16

*INS v. St. Cyr*,
  533 U.S. 289 (2001) ............................................................................14-15

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ...................................................................................1

*Melton v. Century Arms, Inc.*,
  243 F. Supp. 3d 1290 (S.D. Fla. 2017) ......................................................8

*Murphy v. National Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018) ....................................................................15, 16-17

*New York v. United States*,
  505 U.S. 144 (1992) ...........................................................................15, 16

*New York State Conference of Blue Cross & Blue Shield Plans v.*
    *Travelers Ins. Co.*,
    514 U.S. 645 (1995)......................................................................................5

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017)................................................................8

*Prescott v. Slide Fire Sols., LP*,
    410 F. Supp. 3d 1123 (D. Nev. 2019).............................................. 6, 9-10

*Printz v. United States*,
    521 U.S. 898 (1997)....................................................................................15

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947)......................................................................................5

*Salemme v. Ristaino*,
    587 F.2d 81 (1st Cir. 1978).........................................................................8

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984)......................................................................................3

*Smith & Wesson Corp. v. City of Gary*,
    875 N.E.2d 422 (Ind. Ct. App. 2007)..............................................6, 10, 13

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) ......................................................6, 7, 8, 10, 11

*Tafflin v. Levitt*,
    493 U.S. 455 (1990)....................................................................................15

*United States v. Ven-Fuel, Inc.*,
    758 F.2d 741 (1st Cir. 1985)......................................................................14

*West v. American Tel. & Tel. Co.*,
    311 U.S. 223 (1940)....................................................................................16

*Williams v. Beemiller, Inc.*,
    952 N.Y.S.2d 333 (N.Y. App. Div. 2012) .................................................13

*Wos v. E.M.A. ex rel. Johnson*,
    568 U.S. 627 (2013)......................................................................................3

## Statutes

Federal Trade Commission Act,
    15 U.S.C. §§ 41 *et seq.*......................................................................................7

Protection of Lawful Commerce in Arms Act,

    15 U.S.C. § 7901 .....................................................................................1

    15 U.S.C. § 7901(a)(6).................................................................... 2-3, 11

    15 U.S.C. § 7901(a)(7)......................................................................... 2-3

    15 U.S.C. § 7901(b)(1) ......................................................................3, 11

    15 U.S.C. § 7902(a) ............................................................................3, 4

    15 U.S.C. § 7903....................................................................................1

    15 U.S.C. § 7903(5)(A)...........................................................................3

    15 U.S.C. § 7903(5)(A)(i)–(vi) ............................................................3, 4

    15 U.S.C. § 7903(5)(A)(iii).............................................................. *passim*

    15 U.S.C. § 7903(5)(A)(iii)(I)............................................................. 6-7

    15 U.S.C. § 7903(5)(A)(iii)(II) ........................................................... 6-7

Conn. Gen. Stat. §§ 42-110a........................................................... *passim*

Mass. Gen. Laws c. 93A ................................................................. *passim*

## Rules and Regulations

Fed. R. Civ. P. 2...................................................................................14

940 Code Mass. Regs. §§ 16.01–16.09....................................................9

## Miscellaneous

151 Cong. Rec. S8908-01 (July 26, 2005)........................................11, 12

151 Cong. Rec. S9087 (July 27, 2005) ....................................................12

151 Cong. Rec. S9374-01 (July 29, 2005)...............................................12

American Heritage Dictionary of the English Language (1981) ............................6

Black's Law Dictionary (11th ed. 2019)................................................................14

*In re Browning Arms Co.*,
    80 F.T.C. 749 (1972)...................................................................................7

*In re Colt Industries Operating Corp.*,
    84 F.T.C. 58 (1974 (9th Cir. 2009)............................................................7

*In re Ithaca Gun Co.*,
    78 F.T.C. 1104 (1971).................................................................................7

*In re National Housewares, Inc.*,
    90 F.T.C. 512 (1977)...................................................................................7

Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ...................................6

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

Because the States are co-equal sovereigns in our constitutional system, courts have "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Yet in seeking dismissal of the Government of Mexico's claims, the defendants here, several gun manufacturers and one gun distributor, insist that Congress has erected an insurmountable barrier to traditional state law forms of accountability. They contend that, through the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901–7903, Congress has extinguished longstanding tort remedies as well as remedies afforded by state consumer protection statutes to redress misconduct by gun manufacturers and gun dealers.

The Amici States—Massachusetts, California, Connecticut, Delaware, the District of Columbia, Hawai'i, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, and Oregon—have a strong interest in preserving the remedies afforded by state common law and by state statutes. We also have a paramount interest in preserving all lawful tools—including statutory and common law remedies for unlawful conduct—to deter gun violence within our borders. We therefore submit this brief to explain why the defendants' construction of PLCAA strays far from the plain text of the statute, from the intent of Congress in enacting the statute, and from norms of statutory construction fundamental to our federal system of government.

Even if this Court were to conclude, contrary to Mexico's argument, that PLCAA applies extraterritorially, the statute would not bar the claims asserted here, because, at a minimum, PLCAA preserves the right of plaintiffs to bring actions alleging knowing violations of state statutes applicable to the sale or marketing of firearms. Mexico has plausibly asserted violations of two such statutes: the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A

(Chapter 93A). PLCAA therefore does not bar Mexico's lawsuit. And a contrary ruling, premised on the notion that PLCAA permissibly dictates to States how we may provide remedies for harms to our residents in the absence of any replacement federal law remedy, would give rise to serious Tenth Amendment concerns.

## ARGUMENT

I.      **PLCAA Must Be Construed in Light of the Settled Presumption That, Absent an Unmistakably Clear Statement from Congress, Federal Statutes May Not Be Read to Displace Traditional Areas of State Authority.**

Whenever Congress enacts a federal statute like PLCAA, it "'legislates against the backdrop' of certain unexpressed presumptions." *Bond v. United States*, 572 U.S. 844, 857 (2014) (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)). Among those background presumptions is the "well-established principle that 'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides' the 'usual constitutional balance of federal and state powers.'" *Id.* at 858 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)). Grounded in the "basic principles of federalism" central to our constitutional order, this presumption instructs courts to "insist on a clear indication" from Congress before construing a federal statute to intrude on an area of traditional state authority. *Id.* at 859-60. Thus, should Congress wish to "alter the 'usual constitutional balance between the State and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Gregory*, 501 U.S. at 460-61 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)).

This federalism-preserving presumption bears directly on the proper construction of PLCAA. Congress enacted PLCAA in response to what it perceived as an unjustified "expansion of the common law" that threatened to impose civil liability on firearms manufacturers and sellers

for "harm that is solely caused by others." 15 U.S.C. § 7901(a)(6)–(a)(7). The statute's stated purpose is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1). To that end, PLCAA instructs that "[a] qualified civil liability action may not be brought in any Federal or State court," *id.* § 7902(a), and it defines a "qualified civil liability action" to include, subject to six exceptions, *see id.* § 7903(5)(A)(i)–(vi), any civil action "brought by any person against a manufacturer or seller" of firearms or ammunition "resulting from the criminal or unlawful misuse of a qualified product by the person or a third party," *id.* § 7903(5)(A). The statute specifies that a "qualified civil liability action" encompasses actions seeking all forms of relief, including "damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief." *Id.*

In design and effect, the statute thus intrudes directly on an area of traditional state authority—the longstanding prerogative of the States to provide judicial remedies for injuries to their residents. "In our federal system, there is no question that States possess the 'traditional authority to provide tort remedies to their citizens' as they see fit." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 639-40 (2013) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). That authority, which predates the Founding, is fundamental to the States' exercise of their police powers. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014) (States' "traditional authority to provide tort remedies to their citizens" is "an area traditionally governed by the States' police powers" (internal quotation marks omitted)). But PLCAA substantially limits the ability of States to provide traditional remedies for harms to residents inflicted by firearms and ammunition. Unless an action falls within PLCAA's exceptions, the statute bars injured plaintiffs from obtaining relief

3

in state courts from gun dealers and manufacturers for the harms caused by their products. *See* 15 U.S.C. §§ 7902(a), 7903(5)(A)(i)–(vi).

Moreover, in extinguishing certain types of judicial remedies but allowing others, PLCAA also intrudes on States' authority to determine for themselves the means by which they provide remedies for harms to their residents. One important exception to PLCAA's bar on civil actions, known as the "predicate exception," permits plaintiffs to bring "an action" alleging that a gun manufacturer or seller knowingly "violated a State or Federal statute applicable to the sale or marketing of" guns, where the violation is the "proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). In thus preserving statutory remedies for harms caused by gun sellers and manufacturers while at the same time limiting common law remedies, PLCAA purports to control the governmental organ through which States can provide redress for injury. It effectively tells States that remedies enacted through the Legislature are permissible, while some judicially fashioned common law remedies are not. But the question of "[h]ow power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself." *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 612 (1937). And pronouncements by state courts are just as much "law" as are legislative enactments. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568-69 (1996) (explaining that "States need not, and in fact do not, provide [their residents] protection in a uniform manner"; "[s]ome States rely on the judicial process to formulate and enforce" law "by applying principles of contract and tort law," while "[o]ther States have enacted various forms of legislation"). PLCAA thus intrudes directly on States' sovereign prerogative to fashion remedies for harms to their residents through whichever governmental organ best suits local needs.

In view of PLCAA's incursions into longstanding areas of state authority, this Court should avoid construing the statute to "supplan[t] state law unless Congress has made such an intention 'clear and manifest.'" *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *accord Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (recognizing the "'assumption that the historic police power of the States [are] not to be superseded by . . . Federal Act unless that [i]s the clear and manifest purpose of Congress'") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

## II. The Plain Text and Legislative History of PLCAA Evince Congress's Intent to Permit Actions Against Gun Manufacturers and Dealers That Allege Knowing Violations of State Consumer Protection Laws.

Given the presumption against construing federal statutes to intrude on traditional areas of state authority, PLCAA may not be read to bar claims like those asserted by Mexico here unless the statute evinces an "unmistakably clear" intent to foreclose such claims. *Gregory*, 501 U.S. at 460-61. And the defendants do not come close to demonstrating that unmistakably clear intent. To the contrary, the plain text of PLCAA—including its operative clauses and its legislative findings and purpose—expresses the exact opposite. While Congress intended PLCAA to bar lawsuits seeking to hold gun manufacturers and sellers liable for harms committed by third parties, it also preserved remedies for harms committed by manufacturers and sellers themselves, as when they violate consumer protection laws applicable to the sale and marketing of guns. Mexico's lawsuit alleges that the defendants themselves knowingly violated common law duties and statutes applicable to the sale or marketing of firearms. PLCAA is not, accordingly, a valid defense to Mexico's lawsuit.

### A. Actions Asserting Claims Under State Consumer Protection Laws Like Chapter 93A and CUTPA Fall Within PLCAA's Predicate Exception.

PLCAA's bar on qualified civil liability actions, as described, does not apply to "an action in which a manufacturer or seller of [firearms and ammunition] knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). Courts have uniformly construed this predicate exception to allow actions against gun manufacturers and sellers that plausibly allege knowing violations of state consumer protection statutes. *See Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138-39 (D. Nev. 2019) (Nevada's Deceptive Trade Practices Act serves as a predicate statute under PLCAA because it "specifically regulates the sale and marketing of goods"); *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 321 (Conn. 2019), *cert. denied sub. nom.*, *Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019) ("Because CUTPA specifically regulates commercial sales and marketing activities such as those at issue in the present case . . . it falls squarely within the predicate exception.").

The courts' consensus that state consumer protection statutes fall within the predicate exception is rooted in a straightforward interpretation of the statutory text. The key statutory phrase in the predicate exception—"applicable to"—means "capable of or suitable for being applied: appropriate." Merriam-Webster's Collegiate Dictionary 60 (11th ed. 2003); *see also* American Heritage Dictionary of the English Language 63 (1981) (defining "applicable" as "capable of being applied"); *see Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 431 (Ind. Ct. App. 2007) (the phrase "applicable to" unambiguously means "capable of being applied"). Following that key phrase, the predicate exception also lists several non-exclusive but illustrative examples of the types of statutes that are "applicable to" the sale or marketing of firearms.[1] 15 U.S.C.

---

[1] The examples identified in the predicate exception include:

§ 7903(5)(A)(iii)(I)–(II). Not all of those examples, which "pertain specifically to sales and manufacturing activities," exclusively reference statutes that regulate firearms in particular. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1134 (9th Cir. 2009) (noting that "some of the examples [listed in the predicate exception] do not pertain exclusively to the firearms industry"). Given the plain meaning of "applicable to" and the content of the example statutes, the predicate exception must, at a minimum, encompass statutes of general applicability, like state consumer protection laws, that "courts have applied to the sale and marketing of firearms" or that "do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008).

Not surprisingly, there exists a long history of applying consumer protection statutes to false or deceptive practices in the sale or marketing of firearms. The federal government has repeatedly applied the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.*, to enjoin false or misleading marketing of guns. *See Soto*, 202 A.2d at 306 & n.48 (citing *In re National Housewares, Inc.*, 90 F.T.C. 512, 516, 587-88, 601-03 (1977); *In re Colt Industries Operating Corp.*, 84 F.T.C. 58, 61-62 (1974); *In re Browning Arms Co.*, 80 F.T.C. 749, 752 (1972); *In re Ithaca Gun Co.*, 78 F.T.C. 1104, 1107-08 (1971)). And courts across the country have likewise applied state consumer protection laws to misconduct in sales or marketing of firearms by dealers

---

(I)     any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II)     any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18[.]

15 U.S.C. § 7903(5)(A)(iii)(I)–(II).

and manufacturers. In *Melton v. Century Arms, Inc.*, for example, a court denied a motion to dismiss a claim against a rifle manufacturer under the Florida Deceptive and Unfair Trade Practices Act. 243 F. Supp. 3d 1290, 1304-06 (S.D. Fla. 2017). The court held that the plaintiffs' allegations that the manufacturer had made false representations about its rifles' safety and effectiveness sufficiently alleged deceptive or unfair conduct under the act. *Id.* at 1306. In *Pollard v. Remington Arms Co., LLC*, to provide another example, the court certified a class action lawsuit against a manufacturer whose rifles had a history of firing unexpectedly without a trigger pull. 320 F.R.D. 198, 224 (W.D. Mo. 2017). The court had previously denied a motion to dismiss the plaintiffs' claim under the Missouri Merchandising Practices Act, Missouri's consumer protection law, because the plaintiffs had adequately alleged that the manufacturer had fraudulently concealed the trigger defect in its public-facing statements. *Id.* at 203 (citing ECF Doc. #40 at 7-8).

Importantly, the high courts of Connecticut and Massachusetts have made clear that, as a matter of state law, the two predicate consumer protection statutes that the defendants allegedly violated here—CUTPA and Chapter 93A—*do* apply to the sale or marketing of firearms. *See* Compl. ¶¶ 542-556; *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 224 (1st Cir. 2004) ("[T]he interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts.") (quoting *Salemme v. Ristaino*, 587 F.2d 81, 87 (1st Cir. 1978)). The Connecticut Supreme Court squarely held as much in *Soto*, concluding that a CUTPA claim asserted by families of the victims of the Sandy Hook massacre fell within PLCAA's predicate exception. *See Soto*, 202 A.2d at 304-08. "[C]onsumer protection statutes such as CUTPA," the court explained, "long have been an established mechanism for regulating the marketing and advertising schemes of firearms vendors." *Id.* at 307. And in Massachusetts, the Supreme Judicial Court has upheld the application of the Attorney General's Chapter 93A

8

rulemaking authority to regulate the sale and marketing of firearms in Massachusetts. *See American Shooting Sports Council, Inc. v. Attorney General*, 711 N.E.2d 899, 902-08 (Mass. 1999). Those Chapter 93A regulations address topics ranging from the sale of handguns made without childproofing devices to the safety warnings that must be given whenever a handgun is sold. *See* 940 Code Mass. Regs. §§ 16.01–16.09. The regulations, the SJC reasoned, fall comfortably within the Attorney General's authority under Chapter 93A to "regulat[e] the sale of a product as unfair or deceptive" and to complement the "safety and performance requirements imposed by the Legislature on handguns in order to protect the public's health, safety, or welfare." *American Shooting Sports Council*, 711 N.E.2d at 902, 906-07; *see also Draper v. Healey*, 827 F.3d 1, 3-5 (1st Cir. 2016) (affirming the constitutionality of the Chapter 93A handgun sales regulations as applied to particular models of Glocks).

The defendants nevertheless contend that "a State or Federal statute applicable to the sale or marketing of [firearms]" does not include state consumer protection laws because, in their view, the predicate exception addresses statutes that apply only to the sale or marketing of firearms in particular. Joint Mem. in Supp. of Defs. Mot. to Dismiss (ECF #67) at 14-17. That atextual proposition finds no support in PLCAA or in the case law construing PLCAA. Indeed, both cases on which the defendants rely—the Second Circuit's decision in *Beretta* and the Ninth Circuit's decision in *Ileto*—rejected the argument that the predicate exception recognizes only firearms-specific statutes. *See Ileto*, 565 F.3d at 1134 (rejecting the argument that the predicate exception is met "only if a plaintiff alleged a knowing violation of a statute that pertained *exclusively* to the sale or marketing of firearms" because, among other reasons, some of the predicate exception's illustrative examples "do not pertain exclusively to the firearms industry"); *Beretta*, 524 F.3d at 396 ("We agree with the District Court in its rejection of the Firearms Suppliers' argument that a

statute must expressly mention firearms in order to qualify as a predicate statute."). And while courts have expressed a range of views on whether the predicate exception is ambiguous, no court has concluded that a state consumer protection statute of general applicability falls outside the scope of the exception. *Compare City of Gary*, 875 N.E.2d at 431 ("applicable to" unambiguously means "capable of being applied"), *with Ileto*, 565 F.3d at 1134-35 (looking to "additional indicators of congressional intent" because "the text of [PLCAA] alone is inconclusive"), *and Beretta*, 524 F.3d at 401 ("look[ing] to the canons of statutory interpretation to help resolve the ambiguity" that the court perceived in the predicate exception (internal quotation marks omitted)). Moreover, because few statutes exist that apply to the sale and marketing of firearms specifically, the defendants' construction of the predicate exception would effectively read it out of PLCAA altogether. *See Soto*, 202 A.2d at 304 ("It would have made little sense for the drafters of [PLCAA] to carve out an exception for violations of laws applicable to the marketing of firearms if no such laws existed."). That result is incompatible with the Supreme Court's admonition that, absent an unmistakably clear statement to the contrary, federal statutes must be construed to preserve traditional domains of state authority. *See Gregory*, 501 U.S. at 460-61; *cf. Chamber of Commerce v. Whiting*, 563 U.S. 582, 600 (2011) (when "Congress specifically preserve[s] . . . authority for the States," courts must not construe federal statutes to "prevent the States from using appropriate tools to exercise that authority").

**B. PLCAA's Findings and Purpose, as Well as Its Legislative History, Confirm That Actions Asserting Violations of State Consumer Protection Laws Are Not Barred by PLCAA.**

Congress's express findings and statement of purpose in enacting PLCAA, along with the statements of PLCAA's sponsors, reinforce the conclusion that actions asserting knowing

violations of state consumer protection laws by gun manufacturers or sellers fall squarely within the predicate exception.

Above all, in enacting PLCAA, Congress was concerned that manufacturers and sellers might be held liable for harms caused only by unrelated third parties. Thus, Congress found that "[t]he possibility of imposing liability on an entire industry for harm that is *solely* caused by others is an abuse of the legal system" that "erodes public confidence in our Nation's laws." 15 U.S.C. § 7901(a)(6) (emphasis added). And Congress specified that the principal purpose of PLCAA was "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm *solely* caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1) (emphasis added). The repeated use of the word "solely" was deliberate: while Congress wished to protect lawful manufacturing and sales practices from novel forms of civil liability, it did not wish to foreclose remedies against manufacturers and sellers when their own conduct violates laws that regulate the sale and marketing of firearms. *See Soto*, 202 A.2d at 309 ("At no time and in no way does the congressional statement [of facts and purposes] indicate that firearm sellers should evade liability for the injuries that result if they promote the illegal use of their products."); *id.* at 320 ("[L]egislators' primary concern was that liability should not be imposed in situations in which the producer or distributor of a consumer product bears absolutely no responsibility for the misuse of that product in the commission of a crime.").

Two of PLCAA's sponsors—Senator Jeff Sessions of Alabama and Senator Larry Craig of Idaho—made this same point repeatedly in explaining the scope of PLCAA. Senator Sessions characterized PLCAA as "incredibly narrow." 151 Cong. Rec. S8908-01, S8911 (July 26, 2005).

The statute, he explained, "allows lawsuits for violation of contract, for negligence, in not following the rules and regulations and for violating any law or regulation that is part of the complex rules that control sellers and manufacturers of firearms." 151 Cong. Rec. S9374-01, S9378 (July 29, 2005); *see Beretta*, 524 F.3d at 403 (relying on this statement). He emphasized that "[p]laintiffs can go to court if the gun dealers do not follow the law, if they negligently sell the gun, if they produce a product that is improper or they sell to someone they know should not be sold to or did not follow steps to determine whether the individual was [eligible] to bu[y] a gun." 151 Cong. Rec. S8908-01, S8911 (July 26, 2005); *see also id.* ("Manufacturers and sellers are still responsible for their own negligent or criminal conduct."); *accord* 151 Cong. Rec. S9374-01, S9378 (July 29, 2005) (statement of Sen. Thune) ("The bill allows suits against manufacturers who breach a contract or a warranty, for negligent entrustment of a firearm, for violating a law in the production or sale of a firearm, or for harm caused by a defect in design or manufacture.").

Senator Craig struck a similar note. He explained that PLCAA "does not prevent [gun manufacturers and sellers] from being sued for their own misconduct. [The] bill only stops one extremely narrow category of lawsuits[:] lawsuits that attempt to force the gun industry to pay for the crimes of third parties over whom they have no control." 151 Cong. Rec. S9087, S9088 (July 27, 2005). "We have tried," Senator Craig emphasized, "to make that limitation as clear as we possibly can." *Id.*; *see also id.* at S9089 ("This is not a gun industry immunity bill."). "If a gun dealer or manufacturer violates the law," Senator Craig confirmed, "this bill is not going to protect them from a lawsuit brought against them for harms resulting from that misconduct." *Id.* at S9089.

Actions alleging knowing violations of state consumer protection laws that apply to the sale or marketing of firearms do not seek to hold gun manufacturers and sellers liable for third-party misconduct; rather, they seek to hold manufacturers and sellers like the defendants liable for

*their own* misconduct. They are precisely the sorts of actions that PLCAA's sponsors sought to preserve. The defendants' construction of PLCAA—one that would bar these lawsuits—is thus not only inconsistent with the statutory text, but also with PLCAA's findings and purposes and with congressional intent.

### C. When a Plaintiff Plausibly Pleads a Claim That Falls Within the Predicate Exception, the Entire Action May Proceed.

By its plain terms, PLCAA provides that when the predicate exception is plausibly invoked, a plaintiff's entire action may proceed against the defendant manufacturer or seller. Congress specified that PLCAA's bar on qualified civil liability actions "shall not include . . . an *action*" in which a seller or manufacturer is alleged to have violated a statute "applicable to the sale or marketing of" firearms. 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). By using the term "action" rather than the term "claim," Congress indicated that an action as a whole—not just an individual claim—survives a motion to dismiss when the predicate exception applies. *See, e.g.*, *Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 787 (N.Y. Sup. Ct. 2014) ("as long as one PLCAA exception applies to one claim, the entire action continues"); *Williams v. Beemiller, Inc.*, 952 N.Y.S.2d 333, 338-40, 342 (N.Y. App. Div. 2012) (permitting entire case to proceed after finding one applicable PLCAA exception); *City of Gary*, 875 N.E.2d at 434 (because the City "alleged that the Manufacturers 'violated a State or Federal statute applicable to the sale or marketing of the product,' we conclude that the City's *action* falls under the predicate exception and is not barred by the PLCAA" (emphasis added)); *Corporan v. Wal-Mart Stores E., LP*, No. 16-2305-JWL, 2016 WL 3881341, at *4 n.4 (D. Kan. July 18, 2016) ("[B]ecause the court finds the predicate exception applicable to this action, it declines to engage in the claim-by-claim analysis advanced by defendants.").

That conclusion follows directly from settled principles of statutory interpretation. An "action" is defined as a "civil or criminal judicial proceeding," while a "claim" is "the part of a complaint in a civil action specifying what relief the plaintiff asks for." Black's Law Dictionary 37, 311 (11th ed. 2019). Construing the predicate exception to allow only a "claim," rather than an "action," to move forward would deprive the term "action" of independent meaning. But "[a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751-52 (1st Cir. 1985). And Congress surely understood that the term "action" refers to a lawsuit as a whole, not just an individual claim. *See, e.g.*, Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); *Brownback v. King*, 141 S. Ct. 740, 751 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit," while "[i]ndividual demands for relief within a lawsuit, by contrast, are 'claims.'"). Thus, should this Court determine that the complaint here plausibly alleges that the defendants knowingly violated CUTPA and Chapter 93A—two statutes that are applicable to the sale or marketing of firearms—it should conclude that PLCAA is no bar to Mexico's action against the defendants.

## III. The Defendants' Construction of PLCAA Raises Serious Tenth Amendment Concerns.

The constitutional avoidance canon provides yet further support for the conclusion compelled by PLCAA's plain text and legislative history. Under that principle, courts must construe "statute[s] to avoid [serious constitutional questions] unless such [a] construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *see also INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (if a proffered "construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to

construe the statute to avoid such problems") (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Here, not only is the defendants' construction of PLCAA incompatible with the presumption that Congress preserves traditional domains of state authority absent a clear statement otherwise, but, for similar reasons, it also gives rise to serious Tenth Amendment concerns.[2]

Under the Tenth Amendment, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The amendment enshrines the principle that, "under our federal system, the States possess sovereignty concurrent with that of the Federal Government." *New York v. United States*, 505 U.S. 144, 163 (1992) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)); *see also Gregory*, 501 U.S. at 461 ("[T]he States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere."). It also codifies an "anticommandeering" principle, which holds that Congress lacks "the power to issue orders directly to the States." *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). The "Constitution has never been understood," the Supreme Court has explained, "to confer upon Congress the ability to require the States to govern according to Congress's instructions." *New York*, 505 U.S. at 162. Thus, "state legislatures are *not* subject to federal direction." *Printz v. United States*, 521 U.S. 898, 912 (1997) (emphasis in original); *see also Alden v. Maine*, 527 U.S. 706, 751 (1999) ("When the Federal Government asserts authority over a State's most fundamental political processes, it strikes at the heart of the political accountability so essential to our liberty and republican form of government.").

These Tenth Amendment precepts call into question the defendants' unduly expansive construction of PLCAA. The defendants would read PLCAA as dictating to the States how they

---

[2] If this Court agrees that PLCAA's plain text compels the conclusion that PLCAA is no bar to Mexico's action, it need not address the Tenth Amendment concerns raised here.

must act to provide remedies for harm caused by gun manufacturers and dealers. In particular, under the defendants' reading, Congress has directed that state legislatures alone can provide narrow remedies for such harms; common law remedies developed through the judiciary are extinguished. By ignoring that "rules of decision established by judicial decisions of state courts are 'laws' as well as those prescribed by statute," *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940), and by dictating that common law no longer ranks as the same form of "law" as legislative enactments, the defendants construe PLCAA to impermissibly "require the States to govern according to Congress's instructions." *New York*, 505 U.S. at 162; *see Gustafson v. Springfield Inc.*, 2020 P.A. Super. 239 (Pa. Sup. Ct. 2020) (PLCAA violates the Tenth Amendment), *r'hrg en banc granted and decision withdrawn*, Order of Dec. 3, 2020[3]; *In re Vargas*, 131 A.D.3d 4, 24 (2015) ("The ability, indeed the right, of the states to structure their governmental decision-making processes as they see fit is essential to the sovereignty protected by the Tenth Amendment. . . . [A] legislative-enactment requirement . . . would be unconstitutional because principles of state sovereignty recognized by the Tenth Amendment protect the integrity and independence of state governments against undue interference from the federal government."). Moreover, under the defendants' reading, Congress has left a vacuum: PLCAA effects a sweeping erasure of state law without creating any substantive federal law in its place. That, too, collides with Tenth Amendment precedent. As the Supreme Court recently explained in *Murphy*, when a federal statute that displaces state law neither "confer[s] any federal rights on private actors" nor

---

[3] The Superior Court of Pennsylvania's decision in *Gustafson*, which has been withdrawn following the decision to grant the petition for rehearing en banc, is available at https://law.justia.com/cases/pennsylvania/superior-court/2020/207-wda-2019.html. The en banc court has yet to issue a decision.

"impose[s] any restrictions on private actors," the statute cannot be upheld as a valid preemption provision and instead transgresses Tenth Amendment protections. 138 S. Ct. at 1481.

The few decisions that have rejected Tenth Amendment challenges to PLCAA have done so based on an outdated understanding of the anti-commandeering doctrine. *See Beretta*, 524 F.3d at 396-97; *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 323-24 (Mo. 2016). In *Beretta*, for example, the Second Circuit held, without further analysis, that PLCAA comports with the Tenth Amendment because "it imposes no affirmative duty of any kind on any" branch of state government. 524 F.3d at 397. But in *Murphy*, which was decided after *Beretta*, the Supreme Court made clear that the Tenth Amendment does not merely restrict Congress from imposing affirmative duties on state government; rather, the Tenth Amendment prevents Congress from telling state governmental branches what they "may and may not do." 138 S. Ct. at 1478. The federal statute at issue in *Murphy* did not impose an affirmative duty on the New Jersey legislature, but it nevertheless violated the Tenth Amendment because it effectively "issue[d] direct orders to state legislatures" by telling them what laws they could not enact, in the absence of any validly preemptive federal law. *Id.* The federal statute thus amounted to an impermissible "intru[sion] . . . on state sovereignty." *Id.*

In the same way, as described, the defendants read PLCAA to impermissibly direct that if state governments wish to provide a remedy for harms caused by gun manufacturers and sellers, they may do so only through particular legislative enactments, not judicially developed common law. *See supra*, at 9. That directive, instructing States as to how they must enact their own laws, infringes the sovereignty of the States safeguarded by the Tenth Amendment. To avoid that constitutional infirmity, and to best honor the plain text of PLCAA and congressional intent, this Court should not construe PLCAA as a bar to Mexico's action.

## CONCLUSION

This Court should deny the defendants' motions to dismiss.

Respectfully submitted,

MAURA HEALEY
Attorney General for the Commonwealth of
Massachusetts,

/s/ Elizabeth N. Dewar
Elizabeth N. Dewar, BBO # 680722
State Solicitor
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2204
bessie.dewar@mass.gov

Date: February 3, 2022

**ROB BONTA**
Attorney General of California
1300 I Street
Sacramento, CA 95814

**WILLIAM TONG**
Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106

**KATHLEEN JENNINGS**
Attorney General of Delaware
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

**KARL A. RACINE**
Attorney General for the District of
Columbia
400 6th Street NW, Suite 8100
Washington, DC 20001

**HOLLY T. SHIKADA**
Attorney General of Hawai'i
425 Queen Street
Honolulu, HI 96813

**KWAME RAOUL**
Attorney General of Illinois
100 West Randolph Street
Chicago, IL 60601

**BRIAN E. FROSH**
Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202

**DANA NESSEL**
Attorney General of Michigan
P.O. Box 30212
Lansing, Michigan 48909

**KEITH ELLISON**
Attorney General of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

**ANDREW J. BRUCK**
Acting Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

18

**HECTOR BALDERAS**
Attorney General of New Mexico
408 Galisteo Street
Santa Fe, NM 87501

**LETITIA A. JAMES**
Attorney General of New York
28 Liberty Street
New York, NY 10005

**ELLEN F. ROSENBLUM**
Attorney General of Oregon
1162 Court Street NE
Salem, OR 97301

## CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 3, 2022.

/s/ Elizabeth N. Dewar
Elizabeth N. Dewar
State Solicitor

19