# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ESTADOS UNIDOS MEXICANOS,

    *Plaintiff,*

v.

SMITH & WESSON BRANDS, INC.;
BARRETT FIREARMS MANUFACTURING,
INC.; BERETTA U.S.A. CORP.; BERETTA
HOLDING S.P.A.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC;
GLOCK, INC.; GLOCK GES.M.B.H.;
STURN, RUGER & CO., INC.; WITMER
PUBLIC SAFETY GROUP, INC. D/B/A
INTERSTATE ARMS

    *Defendants.*

Civil Action No. 1:21-cv-11269-FDS

**LEAVE TO FILE GRANTED ON
FEBRUARY 3, 2022 (ECF NO. 120)**

## AMICI CURIAE BRIEF OF SCHOLARS OF INTERNATIONAL LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ...........................................................1

I.     INTRODUCTION .......................................................................1

II.    ARGUMENT ............................................................................2

      A.    Public international law and the rules on conflict of laws do not prohibit foreign law from governing the tort liability of U.S. companies for damage caused abroad. ..........................................2

      B.    The application of the law of the place of damage in cross-border tort claims is commonplace in international litigation practice. .................4

            1.    Policy Considerations for the Application of the Law of the Place of Damage ........................................................5

            2.    Canada (Excluding Quebec) ...........................................6

            3.    United Kingdom.........................................................7

            4.    Australia ................................................................9

             5.    European Union: The Rome II Regulation ...................................10

                  a.    The General Rule for Torts and Complex Torts: Article 4 of the Rome II Regulation .................................12

                  b.    A Specific Rule for Products Liability: Article 5 of the Rome II Regulation.....................................13

            6.    The 1973 Hague Convention on the Law Applicable to Products Liability.......................................................18

            7.    Codified Conflict of Laws Rules in Other Jurisdictions................20

                  a.    General Rules in Torts .....................................20

                    b.    Specific Rules for Products Liability Cases......................20

            8.    Specific Conflict of Laws Rules on Products Liability: Comparative Conclusions ...........................................23

III.   CONCLUSION.........................................................................24

APPENDIX..................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaca Pty Ltd. v Frost*,
  [2006] NSWCA 173 (Austrl.)...................................................................................10

*British Columbia v. Imperial Tobacco Canada Ltd.*,
  (2004) 239 DLR (4th) 412, 2004 BCCA 269 (Can.) .............................................7

*Distillers Co. (Bio-Chemicals) Ltd v. Thompson*,
  [1971] 1 AC 464 (Privy Council) (UK)................................................................9, 10

ECJ C-127/ 04 *Declan O´Byrne v Sanofi Pasteur MSD Ltd.*,
  [2006] ECR I-1313 (UK) .........................................................................................16

*Edmunds v. Simmonds*,
  [2001] 1 WLR 1003 (UK)..........................................................................................9

*Hanlan v. Sernesky*,
  (1998) 38 OR 3d 479 (Can.) ......................................................................................7

*Hilton v. Guyot*,
  159 U.S. 113 (1895)....................................................................................................3

*Moran v. Pyle National (Canada) Ltd.*,
  [1975] 1 S.C.R. 393 (Can.) .......................................................................................7

*Ostroski v. Global Upholstery Co.*
  [1996] ACWS (3d) 990 (Can.)....................................................................................7

*Pfeiffer v. Rogerson*,
  [2000] HCA 36, (2000) 203 CLR 503 (Austl.)...................................................9, 10

*Regie National des Usines Renault SA v. Zhang*,
  [2002] HCA 10, (2002) 210 CLR 491 (Austl.)........................................................9

*Sophocleous v. Secretary of State for Foreign and Commonwealth Affairs*,
  [2018] EWCA Civ 2167 (Eng.) ..................................................................................9

*Tolofson v. Jensen*,
  [1994] 3 SCR 1022 (Can.) ......................................................................................6, 7

*Trafigura Beheer BV v. Kookmin Bank Co.*,
  [2006] EWHC 1450 (Comm) (UK) .............................................................................9

*Wong v. Lee*,
(2002) 58 OR (3d) 398 (Can.) ................................................................................... 7

**Foreign Statutes**

Chinese Statute of Application of Law to Foreign Civil Relations (adopted at the
17th session of the Standing Committee of the 11th National People's
Congress on 28 October 2010, effective 1 April 2011) .......................................... 21

Civil Code of the Russian Federation (as amended by Federal Law No 260-FZ on
30 September 2013) ............................................................................................... 21

Civil Codes of Québec (L.Q. 1991) ............................................................................ 21

Code of Private International Law (Law No 98-97 of 27 November 1998),
Official Journal of the Republic of Tunisia, 1 December .......................................... 21

Japanese Act on General Rules for Application of Laws (Hōno Tekiyō ni Kansuru
Tsūsokuhō, Law No 10 of 1898, as newly titled and amended by Act No 78 of
21 June 2006) ....................................................................................................... 21

Law No 218-Z of 7 December 1998 (Belarus) ............................................................ 21

Private International Law (Choice of Law in Tort) Act 2017 (New Zealand)
(2017) ..................................................................................................................... 7

Private International Law (Miscellaneous Provisions) Act 1995 (UK) .................... 7, 8

Swiss Private International Law Act (*Bundesgesetz über das Internationale
Privatrecht* of 18 December 1987, 1988 BBl I 5, as amended) ............................... 21

**European Union**

European Commission, *Proposal for a Regulation of the European Parliament
and the Council on the Law Applicable to Non- Contractual Obligations
("Rome II")*, COM(2003) 427 final ....................................................................... 16

Regulation (EC) No. 864/2007 of the European Parliament and of the Council of
11 July 2007 on the Law Applicable to Non-Contractual Obligations (Rome
II) ................................................................................................................... *passim*

Treaty on the Functioning of the European Union (Oct. 26, 2012) ............................ 11

**International Treaties**

Hague Convention, Convention on the Law Applicable to Products Liability (2
October 1973) ................................................................................................. 18, 19

## Other Authorities

Alex Mills, *Private Interests and Private Law Regulation in Public International Law Jurisdiction*, *in* Stephen Allen et al., *Oxford Handbook of Jurisdiction in International Law* (2019) ........................................................................................3

Alex Mills, *Rethinking Jurisdiction in International Law*, 84 Br. Yearbook Int'l L. 187 (2014) ..........................................................................................................2

Emmanuel Guinchard, *Rome I and Rome II in Practice* (1st ed. 2020) ........................................11

James Crawford, *Brownlie's Principles of Public International Law* (9th ed. 2019)......................2

Restatement (Fourth) of Foreign Relations Law (2018)................................................................2

Restatement (Second) of Conflict of Laws (1971) .......................................................................4

Symeon C. Symeonides, *Codifying Choice of Law Around the World* (2014)..............................4

Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht - Harmonisierung des IPR durch Wissenschaft und Lehre (am Beispiel der ausservertraglichen Haftung für Schäden)* (2002) .....................................................13, 16, 17

Thomas Kadner Graziano, *Products Liability*, *in* Jürgen Basedow et al., *Encyclopedia of Private International Law* (2017) .........................................................16, 17

Thomas Kadner Graziano, *Torts*, *in* Jürgen Basedow et al., *Encyclopedia of Private International Law* (2017) ......................................................................................20

**INTEREST OF AMICUS CURIAE**

Amici (listed in the Appendix) are professors of international law who research, publish, and teach in the fields of public international law and/or the conflict of laws (private international law). Amici believe their expertise will be useful to the Court in ruling on the Defendant's Motion to Dismiss. In this brief, Amici conduct an analysis of comparative material to address only one issue in the Defendants' Motion to Dismiss: whether the law of Mexico, as the place of the alleged damage, can apply to a tort law claim against U.S. firearms companies (Motion to Dismiss, Part VI).[1]

## I.    INTRODUCTION

The application of Mexican law in the circumstances of this case would not be contrary to accepted principles of public international law or the conflict of laws and would be consistent with the practice of other states. The claim in Defendants' Motion to Dismiss (p. 42) that "[u]nder basic principles of international comity, a foreign sovereign cannot use foreign law to regulate the operations of U.S. companies within the United States" is inaccurate or at best misleading. It is commonplace for courts to apply the law of the place of damage in cross-border tort claims, even if that involves applying foreign law to local defendants. Product liability cases present distinct policy challenges, and are sometimes regulated by specific rules, but these rules also often select the law of the place of damage or of the place where the victim had its habitual residence when it suffered the damage, particularly where it was foreseeable that the product would be used in that territory, as alleged in the complaint in this case. The application of Mexican law on the facts as alleged would not be inconsistent with international law or practice.

---

[1] No person or entity other than the amici authored this brief in whole or in part. No person or entity provided payment or any other benefit to the amici for preparing or submitting this brief.

# II.    ARGUMENT

**A.    Public international law and the rules on conflict of laws do not prohibit foreign law from governing the tort liability of U.S. companies for damage caused abroad.**

The application of a state's law to persons or events outside its territory is regulated by two fields of law.

The first are public international law rules governing prescriptive jurisdiction, which provide a general framework for limiting state exercises of regulatory authority.[2] The primary basis for the exercise of lawful regulatory authority by a state is a territorial connection—a state has jurisdiction to regulate within its territory, including events, persons, or things in its territory. Where an event crosses borders, such as where a wrongful act in one state causes damage in another state, this ground of jurisdiction is further understood to authorise both 'subjective territorial jurisdiction' and 'objective territorial jurisdiction'—both the state where the act occurred and the state where the damage occurred have lawful jurisdiction. The 'effects doctrine', under which a state may regulate extraterritorially where the relevant conduct causes harmful effects within its territory, has increasingly been accepted as an application or expansion of objective territorial jurisdiction. The application of Mexican law to a claim arising from harm allegedly caused in Mexico by foreign companies would be entirely consistent with these well-established rules of international law.

The second are rules of the conflict of laws, also known as private international law. This area of law includes more detailed 'choice of law' rules which determine the application of each state's rules of private law, particularly in cases in which more than one state's laws may purport to apply consistently with rules of public international law. In the context of private law,

---

[2] *See generally* Restatement (Fourth) of Foreign Relations Law pt. IV (2018); James Crawford, *Brownlie's Principles of Public International Law* ch. 21 (9th ed. 2019) (attached as Ex. 1); Alex Mills, *Rethinking Jurisdiction in International Law*, 84 Br. Yearbook Int'l L. 187 (2014) (attached as Ex. 2).

questions of adjudicative jurisdiction and the applicable law are disaggregated, so it is common for state courts to assert jurisdiction but apply foreign law.[3] This is unexceptional, for example, where claims are brought in the home state of the defendant but relate to the defendant's extraterritorial activities.

Defendants' Motion to Dismiss argues (at p. 42) that "[u]nder basic principles of international comity, a foreign sovereign cannot use foreign law to regulate the operations of U.S. companies within the United States". As is well known, 'comity' has been defined by the U.S. Supreme Court as:

> neither a matter of absolute obligation, on the one hand, nor of mere courtesy and goodwill, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons was are under the protection of its laws.[4]

Comity does not *prohibit* foreign law from applying to U.S. companies, but rather provides a *justification* for U.S. courts to apply foreign law (including to U.S. companies) in cases which are connected to foreign states. Choice of law rules give concrete effect to comity, consistent with broader principles of public international law. In this case, Mexico as Plaintiff is not 'using foreign law to regulate the operations of U.S. companies', it is merely arguing that a U.S. court should find that Mexican law applies to its claims in tort, based on the harm suffered in and to Mexico.

The principal focus of this brief is on this choice of law question, and its primary argument is that, in the circumstances of this case, the application of Mexican law by a

---

[3] *See also* Alex Mills, *Private Interests and Private Law Regulation in Public International Law Jurisdiction*, in Stephen Allen et al., *Oxford Handbook of Jurisdiction in International Law* (2019) (attached as Ex. 3).

[4] *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895).

Massachusetts court would be consistent with the practice of other states. Where claims are brought in tort, states commonly apply the law of the place of the tort, and in cross-border torts this is often understood to mean the place of the damage. In the European Union, particularised choice of law rules has been adopted for product liability cases, which exclude in some cases the law of the place of the damage, but here these rules would still be likely to lead to the application of Mexican law.

**B.    The application of the law of the place of damage in cross-border tort claims is commonplace in international litigation practice.**

The predominant choice of law rules applicable to tort claims is the law of the place of the tort, also known as the *lex loci delicti* rule. Professor Symeon Symeonides, a leading international comparativist in the field, observed in 2014 that "[o]utside the United States, virtually all codifications enacted in the last 50 years continue to follow the *lex loci delicti* rule as the basic rule for tort conflicts".[5] This brief cannot purport to be comprehensive, but the sample of practice it examines below should be sufficient to demonstrate that the application of the law of the place of the tort, including the place of the damage in cross-border torts, is commonplace in international litigation practice. Courts invariably retain a safeguard to refuse application of foreign law where it is contrary to domestic public policy, but these safeguards are applied only in exceptional cases involving a fundamental principle of justice or morality.[6]

The analysis below considers the applicable choice of law rules in Canada, the United Kingdom, Australia, the European Union (with the Rome II Regulation providing uniform choice of law rules for the EU), the ten Member States of the 1973 Hague Convention on the Law Applicable to Products Liability, and in other states which have modern national codifications on

---

[5] Symeon C. Symeonides, *Codifying Choice of Law Around the World*, at 52 (2014) (attached as Ex. 4).

[6] See Restatement (Second) of Conflict of Laws § 90 (1971).

choice of law. Before this practice is examined, this section begins with a brief note on the policy considerations which are behind the rules adopted.

### 1.    Policy Considerations for the Application of the Law of the Place of Damage

Numerous arguments are put forward for the application of the law of the place of injury in general and to complex torts in particular (rather than the law of the place where the tortfeasor had acted), which has the consequence that a person causing damage in a foreign country must conform to the liability rules of the country in which his actions produce their effects. Every actor must take into consideration the potential victims' legitimate expectations to be protected according to the level of protection provided by the law of the state where his goods and interests are located and the injury occurs. Moreover, from a prevention and deterrence perspective, the law of the place where the damage occurred is the most appropriate, in that national tort laws are in principle directed at behavior that has its effects within the territory of the state in question. This means that actions with consequences in another country ought to be governed by the tort law rules in force in the place where the damage occurs. The preventive function of the substantive tort law of this country would be lost if persons acting from abroad had to comply only with the rules of the country in which they are acting. Accordingly, both the compensatory and the preventive functions of tort law favor application of the law of the place where the damage occurs. For these reasons, the place of injury rule has gained acceptance in many jurisdictions worldwide over the last centuries and recent decades.

In product liability cases, the person claimed to be liable has often acted in a place other than where the person claiming compensation has suffered injury: a product is designed and manufactured in one place and marketed and purchased in others. Once acquired, the product is carried to yet other places, with or without the consent of the manufacturer. It may ultimately cause damage there to the person who acquired it, to persons close to the purchaser, or to

innocent bystanders. Given the high mobility of many products, and for the purpose of avoiding inadequate and fortuitous results, some jurisdictions have enacted specific conflict of laws rules governing the law applicable to products liability. These rules seek to balance the interests of manufacturers in managing liability risk through control over distribution of their products with the interests of injured parties who rely on the protection of their local law against defective or dangerous products. As discussed further below, this balancing of interests may be struck in different ways, but one common balance is to apply the law of the place of injury subject to a requirement that it was foreseeable to the manufacturer that the product would be used in that place.

## 2. Canada (Excluding Quebec)

The modern common law rule for choice of law in tort in Canada was adopted by the Supreme Court in *Tolofson v. Jensen*.[7] Although the case concerned an inter-provincial tort, the court addressed the choice of law rules to be applied in both internal and international disputes. It held that "it is to the underlying reality of the international legal order . . . that we must turn if we are to structure a rational and workable system of private international law",[8] and that "on the international plane, the relevant underlying reality is the territorial limits of law under the international legal order".[9] The *lex loci delicti* rule was held to be applicable in both inter-provincial and international tort disputes. The court acknowledged the possibility of a flexible exception in international cases, where, for example, both parties were from a common home

---

[7] [1994] 3 SCR 1022 (Can.), *available at* https://scc-csc.lexum.com/scc-csc/scc-csc/en/item/1209/index.do.

[8] *Id.* at 1047–48.

[9] *Id.* at 1047.

state but the tort occurred in a foreign state,[10] but this is only applied exceptionally in practice.[11] On the question of localising a cross-border tort, the court observed that:

> There are situations, of course, notably where an act occurs in one place but the consequences are directly felt elsewhere, when the issue of where the tort takes place itself raises thorny issues. In such a case, it may well be that the consequences would be held to constitute the wrong.[12]

The *lex loci delicti* rule is applied in product liability cases, generally in favour of the law of the place of the damage, as it is damage which establishes the tort.[13] In complex cases where manufacture, distribution and injury may occur in different locations, there is authority that localises the tort at the place of the injury if "it is reasonably foreseeable that the product would be used or consumed where the plaintiff used or consumed it".[14] We note that Plaintiff alleges foreseeability of injury in Mexico in this case, evidenced by the design of products to appeal to Mexican residents.

### 3. United Kingdom

Since 2009, choice of law in tort in the United Kingdom has been regulated by a European Union instrument, the Rome II Regulation, which has also been retained as law despite the withdrawal of the United Kingdom from the European Union. The Rome II Regulation is discussed below. Prior to this regulation, choice of law in tort in the United Kingdom was regulated by the Private International Law (Miscellaneous Provisions) Act 1995.[15] The Act also

---

[10] *Id.* at 1057; *see also Hanlan v. Sernesky*, (1998) 38 OR 3d 479 (Can.).

[11] *See, e.g.*, *Wong v. Lee*, (2002) 58 OR (3d) 398 (Can.).

[12] *Tolofson*, 3 SCR 1022 at 1050.

[13] *See, e.g.*, *British Columbia v. Imperial Tobacco Canada Ltd.*, (2004) 239 DLR (4th) 412, 2004 BCCA 269 (Can.).

[14] *Moran v. Pyle National (Canada) Ltd.*, [1975] 1 S.C.R. 393 (Can.); *see also Ostroski v. Global Upholstery Co.*, [1996] ACWS (3d) 990 (Can.) (applying *Moran*).

[15] *See also* Private International Law (Choice of Law in Tort) Act 2017 (New Zealand) (2017).

continues to apply in cases falling outside the temporal or subject matter scope of the Regulation.

The key provision is as follows:

> Section 11 – Choice of applicable law: the general rule.
>
> (1) The general rule is that the applicable law is the law of the country in which the events constituting the tort or delict in question occur.
>
> (2) Where elements of those events occur in different countries, the applicable law under the general rule is to be taken as being—
>
> > (a) for a cause of action in respect of personal injury caused to an individual or death resulting from personal injury, the law of the country where the individual was when he sustained the injury;
> >
> > (b) for a cause of action in respect of damage to property, the law of the country where the property was when it was damaged; and
> >
> > (c) in any other case, the law of the country in which the most significant element or elements of those events occurred.
>
> (3) In this section "personal injury" includes disease or any impairment of physical or mental condition.

This rule thus clearly provides for the application of the law of the place of the tort and specifies that, for personal injury claims involving a wrongful act in one place and damage in another place, this is the law of the place of injury. This rule is also applied in product liability cases and would ordinarily point to application of the law of the place of injury.

The rule is subject to a flexible exception under Section 12 of the 1995 Act, which allows the court to apply another law if it would be "substantially more appropriate". The threshold to apply this exception is, however, not easily met, and in practice it has been used in cases where

the claimant and respondent have a common residence,[16] or in cases where there is an underlying contractual relationship between the parties connecting the tort to a different system of law.[17]

### 4.  Australia

The modern choice of law rule for tort in Australia was established by the High Court of Australia in *Pfeiffer v. Rogerson*.[18] In a case connected to more than one Australian law area (analogous to an inter-state case within the United States), the court held that the structure of Australian federalism implied a *lex loci delicti* rule for choice of law in tort. In *Regie National des Usines Renault SA v. Zhang*,[19] the *lex loci delicti* rule was extended to international torts, based on a general preference for the predictability and territoriality of the *lex loci delicti* rule, and the pragmatic basis that it is better to have a consistent single approach for both internal and international choice of law disputes.[20] The rule does not have a flexible exception, in either domestic or international cases, and extends to product liability disputes.

In cross-border torts, where the wrongful act and place of the damage occur in different places, the courts identify the place of the tort by asking "where in substance did this cause of action arise?"[21] The English courts, commenting on this test (which remains part of English law for certain purpose), have observed, "In personal injury cases this is, in general, the place where the injury is suffered".[22] The test derives from an earlier decision, *Distillers v. Thompson*, a product liability case arising from a drug which caused harmful side effects. The court located

---

[16] *Edmunds v. Simmonds*, [2001] 1 WLR 1003 (UK).

[17] *Trafigura Beheer BV v. Kookmin Bank Co.*, [2006] EWHC 1450 (Comm) (UK).

[18] *Pfeiffer v. Rogerson*, [2000] HCA 36, (2000) 203 CLR 503 (Austl.).

[19] *Regie National des Usines Renault SA v. Zhang*, [2002] HCA 10, (2002) 210 CLR 491 (Austl.).

[20] *Id.* ¶¶ 125–32 (Kirby, J.).

[21] *Distillers Co. (Bio-Chemicals) Ltd v. Thompson*, [1971] 1 AC 464 (Privy Council) (UK).

[22] *Sophocleous v. Secretary of State for Foreign and Commonwealth Affairs*, [2018] EWCA Civ 2167 (Eng.).

the tort at the place of injury, which was also identified as the place where the defendants failed to warn about the potential side effects.[23] The place of injury has also been applied in product liability cases.[24] In *Pfeiffer*, the High Court acknowledged, however, that in complex cases "the place of the tort may be ambiguous or diverse".[25] The court further observed, "Difficulty will arise in locating the tort when an action is brought, for example, for product liability and the product is made in State A, sold in State B and consumed or used by the plaintiff in State C".[26] It is not clear under Australian law whether the court would apply Mexican law in equivalent facts to the present case, but it is certainly not unusual for the choice of law rule in tort to lead to the application of the law of the place of the damage.

###   5.      European Union: The Rome II Regulation

The present case raises the question of the law applicable to a complex tort, i.e., a tort where the act that allegedly caused the damage (manufacturing of guns, marketing and distribution of these guns) has taken place in one country or jurisdiction (the USA and possibly other countries) and the injury to the legally protected interest (the killing or injuring of citizen) occurred in another jurisdiction (here, Mexico). The case thus raises the question of the law applicable to so-called complex torts, *délits à distance, Distanzdelikte*, *ilícitos a distancia*, etc.).

In the European Union, the Private International Law rules for tort claims are to be found in the Rome II Regulation.[27] The Rome II Regulation applies in 26 of the current 27 EU Member States (with the exception of Denmark).

---

[23] *Distillers*, 1 AC 464.

[24] *Amaca Pty Ltd. v Frost*, [2006] NSWCA 173 (Austrl.).

[25] *Pfeiffer*, 203 CLR 503.

[26] *Id*.

[27] Regulation (EC) No. 864/2007 of the European Parliament and of the Council of 11 July 2007 on the Law Applicable to Non-Contractual Obligations (Rome II), *available at* https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32007R0864&from=EN.

The Rome II Regulation establishes uniform conflict of laws rules for the entire European Union (except Denmark). They leave no space for any national legislation in this field and are to be applied uniformly throughout the entire EU. Should a court in a Member State have doubts regarding the interpretation of a provision of the regulation, it may submit the question to the Court of Justice of the European Union (CJEU) for a preliminary ruling. Courts of last instance are obliged to submit questions of doubt to the CJEU for interpretation.[28]

For the analysis in the present case, the relevant provisions can be found in the general rule in Art. 4 of the Rome II Regulation, and in the rule on products liability in Art. 5 of Rome II.

It is generally perceived in Europe that the text of both provisions is rather clear.[29] As a consequence, there is no published case-law yet of the CJEU on Art. 5 of the Rome II Regulation (the rule on products liability), nor any decision on Art. 4 Rome II (the general rule for torts) of relevance in the present context.[30] (As far as products liability is concerned, the CJEU has rather dealt with issues of jurisdiction under the Brussels I Regulation, rather than with applicable law.)

Regarding the national courts in the EU Member States, more than 250 decisions on the application of the Rome II Regulation have been published in the Netherlands, 200 in Germany, 50 in Austria, 48 in the UK, 30 in Italy, 7 in Portugal, etc. Very few of them concerned products liability cases; none of them is directly applicable to the present case and provide clarification beyond the *text* and the *rationale* of Articles 4 and 5.[31]

---

[28] *See* Treaty on the Functioning of the European Union at Art. 267 lit. b (Oct. 26, 2012), *available at* https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:12012E/TXT&from=EN.

[29] This is generally confirmed in many of the country reports published in the study by Emmanuel Guinchard, *Rome I and Rome II in Practice* (1st ed. 2020).

[30] *See also* Thomas Kadner Graziano & Michel Reymond, *The Application of the Rome I and Rome II Regulations Before the Court of Justice of the European Union*, *in* Guinchard, *supra*, at 327–48 (attached as Ex. 5).

[31] See the country reports in Guinchard, *supra*.

### a. The General Rule for Torts and Complex Torts: Article 4 of the Rome II Regulation

According to Art. 4(1) 1st sent. of the Rome II Regulation, cross-border torts are, in general, governed by the law of the country where the damage occurred (*lex loci delicti*-rule). With respect to personal injury or death caused to an individual, this leads to the application of the law at the place where the victim was when he or she suffered the injury. Recital 17 of the Rome II regulation states that "in cases of personal injury or damage to property, the country in which the damage occurs should be the country where the injury was sustained or the property was damaged respectively".

When the event giving rise to the damage occurred in one jurisdiction and the victim suffered the injury in another, the law of the latter jurisdiction applies (see Art. 4(1) 1st sent. *in fine* according to which the law at the place of damage applies "irrespective of the country in which the event giving rise to the damage occurred").

Even before the Rome II Regulation was adopted, the *lex loci delicti rule* was firmly recognized in the legislation of 20 European jurisdictions; in eight others it was recognized by case law. Regarding *complex torts*, before the Rome II Regulation was enacted, some jurisdictions in Europe applied the law of the place of injury (the Netherlands, Romania; beyond the EU: Switzerland, Turkey, except where this law was unforeseeable), in others the law more favorable to the victim was applied (Portugal, Hungary), in yet others the victim could opt for the law which was more favorable to him or her (Germany, Estonia). In the second half of the 20th century, very few jurisdictions in Europe continued applying the law of the place of acting to complex torts (Lichtenstein and Austria, however the courts applied in practice the law at the

place of injury whenever that place was foreseeable). These national Private International Law rules have now all been replaced by the provisions of the Rome II Regulation.[32]

The Rome II Regulation provides for two limited and clearly defined exceptions to the *lex loci delicti* rule. According to Art. 4(2), "Where the person claimed to be liable and the person sustaining damage both have their habitual residence in the same country at the time when the damage occurs, the law of that country shall apply". Art. 4(3) contains a very limited general exception clause that applies first and foremost where the parties are in a contractual relationship "that is closely connected with the tort/delict in question". In that case the law applicable to the contract also governs a claim in tort (*rattachement accessoire*). Finally, the parties may also determine the applicable law by their common consent (Art. 14 of the Rome II Regulation).

### b. A Specific Rule for Products Liability: Article 5 of the Rome II Regulation

In the present case, the injury was allegedly caused by a product manufactured and marketed by the defendant company. Given the high mobility of many products, and for the purpose of avoiding inadequate and fortuitous results, some jurisdictions have enacted specific Conflict of Laws rules governing the law applicable to products liability. This is also the case for the European Union with Art. 5 of the Rome II Regulation. Where Art. 5 applies, it is *lex specialis* and prevails over the general rule in Art. 4 of the Rome II Regulation.

Art. 5 offers a cascade of connecting factors. At every stage of the analysis, two connecting factors that must be present for determining the applicable tort law. Art. 5 of the Rome II Regulation provides:

---

[32] *See* Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht – Harmonisierung des IPR durch Wissenschaft und Lehre (am Beispiel der ausservertraglichen Haftung für Schäden)* 131–149 (2002) (attached as Ex. 6) (addressing torts in general); *id.* at 194–235 (addressing complex torts).

Article 5 (Product liability) (1) Without prejudice to Article 4(2), the law applicable to a non-contractual obligation arising out of damage caused by a product shall be:

> (a) the law of the country in which the person sustaining the damage had his or her habitual residence when the damage occurred, if the product was marketed in that country; or, failing that,

> (b) the law of the country in which the product was acquired, if the product was marketed in that country; or, failing that,

> (c) the law of the country in which the damage occurred, if the product was marketed in that country.

> However, the law applicable shall be the law of the country in which the person claimed to be liable is habitually resident if he or she could not reasonably foresee the marketing of the product, or a product of the same type, in the country the law of which is applicable under (a), (b) or (c). 2.

> (2) Where it is clear from all the circumstances of the case that the tort/delict is manifestly more closely connected with a country other than that indicated in paragraph 1, the law of that other country shall apply. A manifestly closer connection with another country might be based in particular on a pre-existing relationship between the parties, such as a contract, that is closely connected with the tort/delict in question.

According to the Rome II Regulation, the relevant criteria for determining the law applicable to a

products liability claim thus include:

> a) *party autonomy*: under Art. 14 of the Rome II Regulation, the parties may determine the applicable law by their common consent. This may however not be relevant in the present case.

> b) applying the law governing a *pre-existing relationship* between the parties (so-called *rattachement accessoire*), Art. 5(2) of the Rome II Regulation; this is not relevant in the present case either;

> c) applying the law of the *parties' common habitual residence*, Art. 5(1) wit Art. 4(2) of the Rome II Regulation, again not relevant in the present case;

> d) applying the law of the *injured party's habitual residence* provided that the *precise product was, or the manufacturer's products of the same kind were, marketed there*, Art. 5(1)(a) of the

Rome II Regulation. This rule applies both to members of the chain of sales and purchases and to mere third-parties having suffered damage (so-called *innocent bystanders*);

e) applying the law of the *place of marketing and purchase* of the product that caused the damage, Art. 5(1)(b) of the Rome II Regulation.

f) applying the law of the *country of injury* if the product was *marketed there*, Art. 5(1)(c) of the Rome II Regulation.

It can be observed that, according to Art. 5(1)(a)–(c), the *place of marketing of the product* plays a key role for determining the applicable law under the Rome II Regulation, as under many other modern PIL statutes, often in combination with, cumulatively, another connecting factor, such as

- the injured party's habitual residence, Art. 5(1)(a),

- the *place of purchase* of the product that caused the damage, Art. 5(1)(b), or

- the *country of injury*, Art. 5(1)(c) of the Rome II Regulation.

In the present case, the *injured party's (or parties') habitual residence* (lit. a) was Mexico, and the *injuries caused by the weapons* (lit. c) occurred in Mexico. The question then is whether the availability of the weapons in Mexico was *attributable to the defendant manufacturer* at the Conflict of Laws level. According to the Rome II Regulation, this is the case if the product was *marketed* in Mexico.

When interpreting EU law, courts in Europe including the European Court of Justice start with the *wording* of the statute, examine the *purpose* (or telos) of the rule, its *history*, and the *systematic* positioning of the rule in the regulation (grammatical, teleological, historic, and systematic interpretations). The starting point is the wording, often followed by what is, by far, the most important method of interpretation: the teleological interpretation, searching for the purpose of the rule.

The Rome II Regulation contains no definition of the notion of *marketing*. However, according to ECJ case law, a product is marketed when it is offered to the public for use or consumption.[33] The ECJ held in relation to the interpretation of the Products Liability Directive that 'a product is put into circulation when it is taken out of the manufacturing process operated by the producer and enters a marketing process in the form in which it is offered to the public in order to be used or consumed'.

There are several purposes, or rationales, for the rules in Art. 5(1)-(c) Rome II Regulation. On the one hand, Article 5(1) aims at *protecting the person sustaining damage*. Application of the law of the victim's habitual residence (lit. a) or of the law of the place where the victim suffered the damage (lit. c), which is often also the place of purchase, is the simplest and, in principle, the least costly solution for the person having suffered damage. On the other hand, it is also *fair for the persons claimed to be liable*, in that these persons are making a profit from the distribution of their products in this country and ought reasonably to expect the law of a country in which their products are distributed to apply when these products cause damage there.[34]

The application of that law is also *foreseeable for the manufacturer*: Manufacturers who have their products marketed in a foreign country must take into account the potential for their products to cause damage there, and that an injured person would expect the law of this country to apply. Using the law of the place of marketing and of acquisition promotes legal certainty, and

---

[33] *See* ECJ C-127/ 04 *Declan O'Byrne v Sanofi Pasteur MSD Ltd.*, [2006] ECR I-1313 (UK).

[34] *See* European Commission, *Proposal for a Regulation of the European Parliament and the Council on the Law Applicable to Non- Contractual Obligations ("Rome II")* at 16, COM(2003) 427 final, *available at* https://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=COM:2003:0427:FIN:EN:PDF; *see also* Graziano, *Gemeineuropäisches Internationales Privatrecht*, *supra*, at 266–70, 282–86; Thomas Kadner Graziano, *Products Liability*, *in* Jürgen Basedow et al., 2 *Encyclopedia of Private International Law* at 1415 (2017) (attached as Ex. 7).

finally, applying this law is equally acceptable for both the manufacturer and the purchaser and it is in conformity with their expectations.[35]

Finally, according to Art. 5(1) *in fine* Rome II Regulation, the application of a law designated under the previous rules shall not be applicable and 'the law applicable shall be the law of the country in which the person claimed to be liable is habitually resident if he or she could not reasonably foresee the marketing of the product, or a product of the same kind, in the country the law of which is applicable under (a), (b) or (c)'.

Article 5(1) *in fine* reiterates the requirement that the applicable law be foreseeable for the manufacturer, which already underlies the marketing requirement. In the European case-law on international torts dating from the period before and after the entry into force of the Rome II Regulation, there is no single published case in which a court concluded that the injury in the country in which it occurred was not reasonably foreseeable for the person claimed to be liable.[36] In fact, most products are today distributed on an international or even global scale, and can freely circulate across borders, as is well known to manufacturers and distributors.

In the present case, according to the facts as alleged, Mexican law prohibited importing the weapons manufactured by the defendant. Marketing them in Mexico was, by legal means, technically impossible. However, according to the statement of claim, Defendants designed their weapons to attract customers specially in Mexico, and it hereby *targeted the Mexican market*. One gun carried the brand name "El Jefe" ("The Boss"), another the name "El Grito" ("The Cry"), and yet another the name of "Emiliano Zapata 1911", engraved with an image of the Mexican revolutionary Emiliano Zapata on one side of the barrel and a phrase attributed to him

---

[35] Graziano, *Products Liability*, *supra*, at 1415.

[36] *Compare* Graziano, *Gemeineuropäisches Internationales Privatrecht*, *supra*, at 224.

on the other (in Spanish): "It is better to die standing than to live on your knees". The weapons were marketed near the Mexican border or via the Internet but targeted for the Mexican market. According to the claim, they reached the Mexican market in large numbers—i.e., the market for which they were designed and which Defendants targeted for their distribution and use.

Consequently, applying Mexican law would be perfectly in line with the rationale of Art. 5 of the Rome II Regulation which is to apply, wherever possible, the law of the country where the injured party had its habitual residence (Art. 5(1) lit. a) and/or where it suffered the injury (Art. 5(1) lit. c) provided that this law was *foreseeable* to the manufacturer, which is generally the case if the product was marketed there, or—as arguably in the present case—could not be marketed there but was targeted at and indeed reached that market.

### 6. The 1973 Hague Convention on the Law Applicable to Products Liability

The Hague Convention on the Law Applicable to Products Liability[37] was adopted in 1973 and entered into force in 1977. The Contracting States are Croatia, Finland, France, Luxemburg, Montenegro, The Netherlands, North Macedonia, Serbia, Slovenia, and Spain. In its Contracting States, it prevails over the Rome II Regulation, see Art. 28(1) of Rome II. In states that are not EU Member States, it prevails over the national Conflict of Laws rules.

The Hague Products Liability Convention combines four criteria, of which two generally need to be met in order to find the applicable law (the injured party's habitual residence, the place of establishment of the person claimed to be liable, the place of injury, and the place where the product was acquired). The different combinations of criteria apply in a hierarchical order.

---

[37] Hague Convention, Convention on the Law Applicable to Products Liability (2 October 1973), *available at* https://www.hcch.net/en/instruments/conventions/full-text/?cid=84.

*First*, according to Art. 5 of the 1973 Hague Convention "the applicable law shall be the internal law of the State of the habitual residence of the person directly suffering damage, if that State is also a) the principal place of business of the person claimed to be liable, or b) the place where the product was acquired by the person directly suffering damage".

In the case under examination, the victims and the defendant did not have their habitual residence and principal place of business in the same country (lit. a), nor had the victims themselves purchased the defendant's weapons there (lit. b). It is thus necessary to climb to the next, second step of the ladder of connecting factors.

*Second*, pursuant to Art. 4 of the 1973 Hague Convention "The applicable law shall be the internal law of the State of the place of injury, if that State is also – a) the place of the habitual residence of the person directly suffering damage, or b) the principal place of business of the person claimed to be liable, or c) the place where the product was acquired by the person directly suffering damage".

In the Hague Convention, the place of injury thus appears at an earlier stage than in the Rome II Regulation. In the case under examination, the injuries happened in Mexico where the injured parties also had their habitual residences. Art. 4 lit. a) of the Hague Products Liability Convention would thus straightforwardly lead to the application of Mexican law in the present case.

In a French products liability case which was decided by the Appellate Court of Chambéry (*Cour d'appel de Chambéry*) on 13 March 2014, France was the place of injury and the place of the victim's habitual residence. The court applied French law, pursuant to Art. 4 lit.

a) of the Hague Products Liability Convention, and rightly so, despite the fact that the product that caused the damage had apparently not been marketed there at all.[38]

### 7. Codified Conflict of Laws Rules in Other Jurisdictions

#### a. General Rules in Torts

For the reasons mentioned above, the *lex loci delicti* rule has become a general principle of almost worldwide importance in codified private international law/conflict of laws systems.[39] Most jurisdictions that have codified their private international law in recent years have also followed the example of the EU in submitting claims resulting from *complex torts* to the law of the place of injury, rather than the law of the place where the tortfeasor has acted, see in particular Art. 17 of the Japanese PILA, Art. 133(2) 2nd sent. of the Swiss PILA (the unforeseeability clause has never been applied), Art. 1219 section 1 2nd sentence of the Russian Civil Code.

Applying the foreign law that is in force at the place where the victim suffered injury (rather than the law of the place where the tortfeasor has acted), i.e., Mexican law rather than the tort law of a state in the US, would thus far from being surprising from a European perspective or the perspective of any other codified system of PIL.

#### b. Specific Rules for Products Liability Cases

A certain number of jurisdictions have enacted modern, *specific codified rules on the law applicable to products liability* over the recent decades. This is the case for *Switzerland*, which has the most comprehensive Private International Law Act worldwide, with more than 200 articles (1987, in force since 1989); *Quebec*, which has codified its Conflicts of Laws rules in its

---

[38] Cour d'appel de Chambéry, 13 March 2014, No. 13/01863, reported (in English) by Marie-Elodie Ancel, in Guinchard, *supra*, at 217, *available at* https://www.doctrine.fr/d/CA/Chambery/2014/R7A41A9936949A0967787.

[39] For numerous references, see Thomas Kadner Graziano, *Torts*, *in* Basedow et al., *supra*, at 1710–11 (attached as Ex. 8).

Civil Code, largely taking inspiration from the Swiss model (1991); *Tunisia*, which is the most

advanced African country with a codified system of Private International Law (1998); Russia

(which integrated modern Conflict of Laws rules into Part 3 of its Civil Code in 2013); Belarus

(with a codification of 1998); Japan (with a recodification of its Conflict of Laws rules in 2006),

and China (with a new act of 2010).[40]

Once the injury has occurred, most of these instruments (with the exception of the Civil

Codes of Québec and Belarus) leave it to the parties to determine the applicable law if they wish

to do so (Art. 132 Swiss PILA; Art. 1223.1 section 1 Russian CC; Art. 21 Japanese PILA; Art.

44 3rd sentence Chinese PILA, Art. 71 Tunisian PILA). They all permit a choice *ex post*, which is

limited to the *lex fori* in Switzerland, Russia and Tunisia.

In the absence of a choice by the parties, the law of the parties' domicile or residence is

applicable provided both parties are domiciled in the same country (Art. 133 section 1 Swiss

PILA; Art. 3126 section 2 Civil Code of Quebec; Art. 1219 section 2 Russian CC; Art. 20

Japanese PILA; Art. 44 2nd sentence Chinese PILA; Art. 70 section 3 Tunisian PILA). Some

codes or statutes provide for the application of the law governing a pre-existing relationship

---

[40] For precise references, see Switzerland: Swiss Private International Law Act (*Bundesgesetz über das Internationale Privatrecht* of 18 December 1987, 1988 BBI I 5, as amended, henceforth Swiss PILA), available in the original version: https://www.fedlex.admin.ch/eli/cc/1988/1776_1776_1776/de; in English: https://www.fedlex.admin.ch/eli/cc/1988/1776_1776_1776/en; Tunisia: Code of Private International Law (Law No 98-97 of 27 November 1998), Official Journal of the Republic of Tunisia, 1 December, p 2332, henceforth Tunisian PILA), available in French in: http://www.droit-afrique.com/upload/doc/tunisie/Tunisie-Code-2010-droit-international-prive.pdf; the Civil Codes of Québec (L.Q. 1991, ch 64), in French: http://www.legisquebec.gouv.qc.ca/fr/document/lc/ccq-1991, in English: http://www.legisquebec.gouv.qc.ca/en/document/cs/ccq-1991; Russia: Civil Code of the Russian Federation (as amended by Federal Law No 260-FZ on 30 September 2013, henceforth Russian CC), in English: https://new.fips.ru/en/documents/documents.php (book 3); Belarus: Law No 218-Z of 7 December 1998, available in English in: https://wipolex.wipo.int/en/legislation/details/16850; the Japanese Act on General Rules for Application of Laws (Hōno Tekiyō ni Kansuru Tsūsokuhō, Law No 10 of 1898, as newly titled and amended by Act No 78 of 21 June 2006, henceforth Japanese PILA, original version available in: http://www.pilaj.jp/text/tsusokuho.html, in English translation: http://www.pilaj.jp/text/tsusokuho_e.html; the Chinese Statute of Application of Law to Foreign Civil Relations (adopted at the 17th session of the Standing Committee of the 11th National People's Congress on 28 October 2010, effective 1 April 2011, henceforth Chinese PILA), original version: https://bit.ly/33YxoCd, in English: https://www.wipo.int/edocs/lexdocs/laws/en/cn/cn173en.pdf.

between the parties, in particular where they are in a contractual relationship (Art. 133 section 3 Swiss PILA; Art. 3127 Civil Code of Québec; Art. 20 Japanese PILA).

All of the above-mentioned codes and acts further contain specific rules with *objective connecting factors for products liability claims*. Absent an agreement on the applicable law, the person having suffered damage can choose between the law of the state where the manufacturer has its establishment or residence and the law of the state where the good was acquired, Art. 135 section 1 Swiss PILA, Art. 3128 Civil Codes of Québec, Art. 1221 section 1 nos. 1 and 3 Russian CC, Art. 1130 Civil Code of Belarus, Art. 72 of the Tunisian PILA. Under the Swiss PILA and the Russian CC, applying the law of the place of acquisition is excluded if the persons held liable prove that the product was marketed there without their consent. The Civil Codes of Russia, Belarus, and Tunisia further allow the choice of the law of the country where the injured party is domiciled or has its principal activity (Art. 1221 section 1 no. 2 Russian Civil Code, Art. 1130 section 1 Civil Code of Belarus, Art. 72 no. 4 Tunisian PILA).

Under Art. 45 1st sentence Chinese PILA, the law of the country of the habitual residence of the person having suffered the damage applies to product liability, without further requirements. The victim may instead choose the law applicable at the principal place of business of the person claimed to be liable or at the place where the injury occurred. According to Art. 45 2nd sentence Chinese PILA, if the victim chooses the law of the place where the damage occurs, or if the tortfeasor does not engage in any business activity in the victim's habitual residence, the law of "the place where the damage occurs shall be applied". (If the victim chooses the law of the place of tortfeasor's principal place of business instead, that law shall apply.)

The law of the place of injury or of the place of the victim's habitual residence can also be chosen by the victim under Art. 72 no 3 and 4 of the Tunisian PILA.

In the present case, under the Chinese PILA, the case would be governed by Mexican law, given that the defendant's products were designed for, and targeted, the Mexican market (Art. 45 1st sent. Chinese PILA) or, otherwise, under Art. 45 2nd sentence Chinese PILA, given that the damage occurred in Mexico; under the Civil Codes of Russia, Belarus, and Tunisia the victims could opt for the application of Mexican law, i.e. the law of the country where the injured party is domiciled, has its habitual residence, or its principal activity; under the Swiss PIL Act and the Civil Code of Québec, much would depend on the interpretation of the place of acquisition for goods illegally imported into the country.

### 8. Specific Conflict of Laws Rules on Products Liability: Comparative Conclusions

The comparative analysis of the EU Rome II Regulation, the 1973 Hague Products Liability Convention, and specific rules on products liability in national Private International Law statutes from around the world shows that the application of Mexican law in the present case would be far from surprising under most PIL systems:

- In some jurisdictions (Switzerland, Quebec) the outcome would depend on the interpretation of the notion "place of acquisition" in cases of the illegal import of goods into a market;

- In other jurisdictions, the PIL provisions would lead straightforward to the application of Mexican law (the Hague Convention, the Chinese PILA);

- In others applying Mexican law would be perfectly in line with the rationale of the specific PIL rule on Products liability (the Rome II Regulation);

- In a last group of jurisdictions, the victim would have the opportunity to opt for the application of Mexican law (Russia, Belarus, and Tunisia).

### III.    CONCLUSION

For the reasons outlined above, the application of Mexican law in the circumstances of this case would not be contrary to accepted principles of public international law or the conflict of laws and would be consistent with the practice of other states.

Dated: January 31, 2022                                    Respectfully submitted,

                                                           _____
                                                           Thomas Kadner Graziano
                                                           Professor of Law, University of Geneva

                                                           _____
                                                           Alex Mills
                                                           Professor of Public and Private International
                                                           Law, University College London

# APPENDIX

Thomas Kadner Graziano is Professor of Law at the University of Geneva, where he acts as Director of the Programme on Transnational Law and Director of the Department of Private International Law. He has served as a member of the Swiss delegation to the Hague Conference on Private International Law and as a member of the Working Group and Drafting Committee on International Contracts at the Hague Conference. He is the author of books and articles on European and comparative Private International Law and comparative contract and tort law. He is co-founder and Council-member of the European Association of Private International Law (EAPIL), and has served as expert on Private International Law and comparative contract and tort law for the European Parliament, foreign governments, and in foreign courts and international arbitration proceedings.

Alex Mills is Professor of Public and Private International Law at University College London. He is a member of the International Law Association Committee on the Protection of Privacy in Private International and Procedural Law and sits on the Editorial Board of the *International and Comparative Law Quarterly*. He has served as an expert on matters of English and European private international law and has published books and articles on public and private international law. He is the author of *Party Autonomy in Private International Law* (Cambridge: Cambridge University Press, 2018) and co-author of *Cheshire North and Fawcett's Private International Law* (15th edition, Oxford: Oxford University Press, 2017).

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF filing system, which will send notice of filing to all counsel of record, and the parties may access the filing through the Court's CM/ECF system.

Dated: February 3, 2022                                    **/s/ Thomas M. Sobol**
                                                           Thomas M. Sobol