# EXHIBIT 4

# Codifying Choice of Law Around the World

AN INTERNATIONAL COMPARATIVE ANALYSIS

Symeon C. Symeonides

Foreword by Lord Collins of Mapesbury



OXFORD
UNIVERSITY PRESS

EBSCOhost - printed on 1/31/2022 4:14 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

# OXFORD
## UNIVERSITY PRESS

*Oxford University Press is a department of the University of Oxford. It furthers the University's objective of excellence in research, scholarship, and education by publishing worldwide.*

Oxford    New York
Auckland    Cape Town    Dar es Salaam    Hong Kong    Karachi    Kuala Lumpur    Madrid    Melbourne
Mexico City    Nairobi    New Delhi    Shanghai    Taipei    Toronto

With offices in
Argentina    Austria    Brazil    Chile    Czech Republic    France    Greece    Guatemala    Hungary
Italy    Japan    Poland    Portugal    Singapore    South Korea    Switzerland    Thailand
Turkey    Ukraine    Vietnam

Oxford is a registered trademark of Oxford University Press in the UK and certain other countries.

Published in the United States of America by
Oxford University Press
198 Madison Avenue, New York, NY 10016

© Oxford University Press 2014

All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, without the prior permission in writing of Oxford University Press, or as expressly permitted by law, by license, or under terms agreed with the appropriate reproduction rights organization. Inquiries concerning reproduction outside the scope of the above should be sent to the Rights Department, Oxford University Press, at the address above.

You must not circulate this work in any other form
and you must impose this same condition on any acquirer.

Library of Congress Cataloging-in-Publication Data
Symeonides, Symeon, 1949- author.
  Codifying choice of law around the world : an international comparative analysis / Symeon C. Symeonides ; Foreword by Lord Collins of Mapesbury.
     pages cm
  Includes bibliographical references and index.
  ISBN 978-0-19-936084-0 ((hardback) : alk. paper)
1. Comparative law. 2. Conflict of laws. I. Title.
  K583.S96 2014
  340.9—dc23
                                                                                              2013040833

9 8 7 6 5 4 3 2 1

Printed in the United States of America on acid-free paper

**Note to Readers**

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is based upon sources believed to be accurate and reliable and is intended to be current as of the time it was written. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional services. If legal advice or other expert assistance is required, the services of a competent professional person should be sought. Also, to confirm that the information has not been affected or changed by recent developments, traditional legal research techniques should be used, including checking primary sources where appropriate.

*(Based on the Declaration of Principles jointly adopted by a Committee of the
American Bar Association and a Committee of Publishers and Associations.)*

> You may order this or any other Oxford University Press publication
> by visiting the Oxford University Press website at www.oup.com.

Copyright 2014. Oxford University Press.
All rights reserved. May not be reproduced in any form without permission from the publisher, except fair uses permitted under U.S. or applicable copyright law.

common-domicile cases (cases 1–2 in Table 2.1). In these conflicts, the distinction between conduct regulation and loss distribution makes a difference:

(a) In loss-distribution conflicts, all the American courts that joined the revolution have almost unanimously applied the law of the common domicile, thus switching from territoriality to personality.

(b) In contrast, in conduct-regulation conflicts, American courts continue to apply the law of the state of conduct and injury (*See* the cells with the horizontal lines in Table 2.1).

In *Babcock v. Jackson*,[53] the seminal case that launched the revolution, the New York Court of Appeals thought that the basic question was whether "the place of the tort [should] *invariably* govern the availability of relief for the tort."[54] More than four decades later, 42 state supreme courts, including the *Babcock* court, have answered the question in the negative. However, although none of the 42 courts profess categorical adherence to the *lex loci* rule *as such*, the only categorical exception from it is the application of the law of the common domicile in loss-distribution conflicts.[55] One wonders whether a revolution was necessary for such a relatively minor change.

### III. The *Lex Loci Delicti* Rule in the Codifications of the Last 50 Years

#### A. GENERAL INVENTORY

Outside the United States, virtually all codifications enacted in the last 50 years, continue to follow the *lex loci delicti* rule as the basic rule for tort conflicts. The difference from the previous generation of codifications is that now the *lex loci* rule is subject to express exceptions. Table 2.2 below presents a panoramic picture of the status of the *lex loci* rule and its exceptions, in the codifications of the last 50 years. In perusing this table (as well as subsequent tables in this chapter), the reader should keep in mind that:

- The table does not include 16 codifications that, because of their limited scope, do not contain rules for tort conflicts.[56] The table does include four draft codifications: Argentina, Puerto Rico, Serbia, and Uruguay.
- The table includes the 19 European Union countries that have enacted a choice-of-law codification in the last 50 years,[57] although the Rome II Regulation (which is

---

[53] 191 N.E.2d 279 (N.Y. 1963).
[54] *Id.* at 280–281 (emphasis in original).
[55] Less categorical exceptions are the application of the law of the state of conduct in certain cross-border torts (*see supra*) and the availability of general escapes for atypical cases.
[56] The omitted codifications are those of: Burkina Faso, Chad, Congo-Brazzaville, Costa Rica, Ecuador, El Salvador, Finland, Guatemala, Mexico, Panama, Paraguay, Panama, Paraguay, Rwanda, Senegal, and Togo.
[57] Sixteen of those codifications were adopted before Rome II, whereas the Czech, Dutch, and Polish codifications were enacted after Rome II and incorporate its provisions by reference.

EBSCO Publishing : eBook Collection (EBSCOhost) - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM
AN: 749014 ; Dean Symeon C. Symeonides.; Codifying Choice of Law Around the World : An International Comparative Analysis
Account: uamster.main.ehost

also included in the table) preempts these codifications with regard to most tort conflicts.[58] The table does not include the remaining nine EU countries, which (except for Denmark) are bound by Rome II, but which have not enacted a codification in the last 50 years.[59]

- The table depicts only the rules that apply to torts in general, rather than to specific torts, such as defamation, products liability, etc. Many codifications contain separate rules (or exceptions) for these and other specific torts.[60]

### B. THE *LEX LOCI* STILL RULES

As Table 2.2 graphically shows, the *lex loci* rule is very much alive and well; indeed it continues to be the dominant rule in the codifications of the last 50 years.

The only codifications in which the *lex loci* is not the *basic* rule—although it is one of the rules—are those of Louisiana and Oregon, which were described earlier, and those of Belgium, Puerto Rico, Serbia, and Switzerland, which are discussed later.

- The only codification in which the *lex loci* is neither the basic rule nor one of the rules is the Yemeni codification, which has unequivocally adopted the *lex fori* without any exceptions.[61]
- The only codifications in which the *lex loci* rule is *not* subject to any express exceptions, other than the *ordre public* exception, are those of Burundi, the Central African Republic, Cuba, Gabon, Latvia, Madagascar, Mauritania, and Spain.[62]
- Thirty codifications have an intentionally flexible definition of the *locus delicti*, which affects the outcome in cross-border torts because it authorizes the application of the law of either the state of conduct or the state of injury, whichever favors the victim (*favor laesi*).[63]

---

[58] The second-to-last row ("Total I") counts Rome II as simply one codification, and also includes the 19 EU countries that have enacted choice-of-law codifications in the last 50 years. The last row ("Total II") shows how the totals would change if one were to exclude the 19 codifications and give 28 "votes" to Rome II (i.e., one for each country in which it is in force).

[59] Besides Denmark (which is not bound by Rome II and many other EU Regulations), these countries are: Cyprus, Finland, France, Greece, Ireland, Luxembourg, Malta, and Sweden. The book covers Finland only with regard to subjects, such as family law, matrimonial property, and successions, for which it enacted detailed statutes.

[60] *See infra* VII–VIII.

[61] *See* Yemeni codif. art. 32 (providing that torts occurring outside Yemen are governed by Yemeni law). The former Arab Republic of Yemen (North Yemen) had adopted the same rule (*see* North Yemen codif. art. 31), whereas the People's Republic of Yemen (South Yemen) allowed the tort victim to choose between the law of the place of conduct and the law the forum state.

[62] *See* Burundi codif. art. 9; Central African Republic codif. art. 42.2; Cuban codif. art. 16; Gabon codif. art. 41; Latvian codif. art. 20; Madagascar codif. art. 30.2; Mauritania codif. art. 11; and Spanish codif. art. 10.9. The Spanish codification is superseded by Rome II, which contains several exceptions to the *lex loci* rule.

[63] For documentation and discussion, *see infra* at III.C.

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

TABLE 2.2.  THE *LEX LOCI DELICTI* RULE AND ITS EXCEPTIONS

|  | *Lex Loci* rule | *Favor laesi* | Bilateral Exceptions ||||  *Lex fori* Exceptions |||
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Common domicile | Preexisting relationship | Closer connection | "Conduct & safety" | Double actionability | Damages | Forum domic. |
| Afghanistan | x |  |  |  |  |  | x |  |  |
| Albania | x |  | x | x | x | x |  |  |  |
| Algeria | x |  |  |  |  |  | x |  |  |
| Angola | x | x | x |  |  | x |  |  |  |
| Argentina | x |  | x |  | x |  |  |  |  |
| Armenia | x |  |  |  |  |  |  |  |  |
| Azerbaijan | x |  | x* |  |  |  |  |  |  |
| Belarus | x |  | x* |  |  |  | x |  |  |
| Burundi | x |  |  |  |  |  |  |  |  |
| Centr. Afric. Rep. | x |  |  |  |  |  |  |  |  |
| Cape Verde | x | x | x |  |  | x |  |  |  |
| China | x | x | x |  |  |  |  |  |  |
| Cuba | x |  |  |  |  |  |  |  |  |
| East Timor | x | x | x |  |  | x |  |  |  |
| FYROM | x | x |  |  | x |  |  |  |  |
| Gabon | x |  |  |  |  |  |  |  |  |
| Georgia | x | x | x |  |  |  |  |  |  |
| Guinea-Bissau | x | x | x |  |  | x |  |  |  |

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

|  | *Lex Loci* rule | *Favor laesi* | Bilateral Exceptions | | | | *Lex fori* Exceptions | | |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Common domicile | Preexisting relationship | Closer connection | "Conduct & safety" | Double actionability | Damages | Forum domic. |
| Japan | x | x | x | x | x |  | x | x |  |
| Jordan | x |  |  |  |  |  | x |  |  |
| Kazakhstan | x |  | x* |  |  |  | x |  |  |
| Korea, North | x |  |  |  |  |  | x | x |  |
| Korea, South | x | x | x | x |  |  |  | x |  |
| Kyrgyzstan | x |  | x* |  |  |  | x |  |  |
| Liechtenstein | x |  |  |  | x |  |  |  |  |
| Louisiana | x |  | x |  | x | x |  |  |  |
| Macau | x | x | x |  |  | x |  |  |  |
| Madagascar | x |  |  |  |  |  |  |  |  |
| Mauritania | x |  |  |  |  |  |  |  |  |
| Moldova | x |  |  |  |  |  |  |  |  |
| Mongolia | x |  |  |  |  |  |  |  | x |
| Mozambique | x | x | x |  |  | x |  |  |  |
| Oregon | x | x | x |  | x | x |  |  |  |
| Peru | x | x |  |  |  |  |  |  |  |
| Puerto Rico | x |  | x |  | x | x |  |  |  |
| Qatar | x |  |  |  |  |  | x |  |  |
| Quebec | x | x | x |  | x |  |  |  |  |
| Russia | x | x | x* |  |  |  |  |  |  |

|  | *Lex Loci* rule | *Favor laesi* | Bilateral Exceptions | | | | *Lex fori* Exceptions | | |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Common domicile | Preexisting relationship | Closer connection | "Conduct & safety" | Double actionability | Damages | Forum domic. |
| Serbia | x |  | x | x | x | x |  |  |  |
| Somalia | x |  |  |  |  |  | x |  |  |
| Sudan | x |  |  |  |  |  | x |  |  |
| Switzerland | x | x | x | x | x | x |  |  |  |
| Taiwan | x |  |  |  | x |  |  |  |  |
| Tajikistan | x |  | x* |  |  |  | x |  |  |
| Tunisia | x | x | x |  |  | x |  |  |  |
| Turkey | x |  |  |  | x |  |  |  |  |
| Ukraine | x |  | x* |  |  |  | x |  |  |
| U. Arab Emirates | x |  |  |  |  |  | x |  |  |
| Uruguay | x | x | x |  |  |  |  |  |  |
| Uzbekistan | x |  | x* |  |  |  | x |  |  |
| Venezuela | x | x |  |  |  |  |  |  |  |
| Vietnam | x | x | x* |  |  |  |  |  | x |
| Yemen |  |  |  |  |  |  |  |  |  |
| *Subtotal non-EU* 53 | 52 | 20 | 30 | 5 | 13 | 13 | 15 | 3 | 2 |
| **EUROPEAN UNION** | | | | | | | | | |
| **Rome II** | x |  | x | x | x | x |  |  |  |
| Austria | x |  | x | x | x | x |  |  |  |
| Belgium | x |  | x | x | x | x |  |  |  |

|  | *Lex Loci* rule | *Favor laesi* | Bilateral Exceptions | | | | *Lex fori* Exceptions | | |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Common domicile | Preexisting relationship | Closer connection | "Conduct & safety" | Double actionability | Damages | Forum domic. |
| Bulgaria | x |  | x |  | x | x |  |  |  |
| Croatia | x | x |  |  |  |  |  |  |  |
| Czech Rep. | x | x |  |  |  |  |  |  |  |
| Estonia | x | x | x | x | x |  |  | x |  |
| Germany | x | x | x | x | x |  |  | x |  |
| Hungary | x | x | x |  |  | x |  | x |  |
| Italy | x | x | x |  |  |  |  |  |  |
| Latvia | x |  |  |  |  |  |  |  |  |
| Lithuania | x | x | x |  | x |  |  |  |  |
| Netherlands | x |  | x | x | x | x |  |  |  |
| Poland | x |  | x | x | x | x |  |  |  |
| Portugal | x | x | x |  |  | x |  |  |  |
| Romania | x |  |  |  |  | x |  |  |  |
| Slovakia | x | x |  |  |  |  |  |  |  |
| Slovenia | x | x |  |  | x |  |  |  |  |
| Spain | x |  |  |  |  |  |  |  |  |
| United Kingdom | x |  |  |  | x |  |  |  |  |
| **Total I 73** | **72** | **30** | **41** | **12** | **24** | **22** | **15** | **6** | **2** |
| Total II 80 | 79 | 20 | 57 | 29 | 40 | 40 | 15 | 3 | 2 |

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

- The most common of the *lex loci* exceptions is the common-domicile exception, which is present in 41 codifications. It provides that, if the tortfeasor and the victim affiliate with the same state (through nationality, domicile, or residence), the law of that state displaces the *lex loci delicti*.[64] In nine of those codifications, marked with an asterisk, the common domicile exception applies only to foreign torts.[65]

- Twenty-four codifications provide for a "closer connection" exception. This means that if the case has a closer connection with a state other than that of the presumptively applicable law, the law of the state with the closer connection applies. This exception operates primarily against the *lex loci delicti*, but in some codifications, it also operates against the laws of other states, such as the state of the common domicile or the state of the preexisting relationship.[66]

- Twelve codifications contain a preexisting relationship exception, usually phrased as an example of the closer-relation concept. This exception means that, if the tortfeasor and the victim are parties to a preexisting factual or legal relationship, such as a contract, the law that governs that relationship will also govern a related tort.[67]

- Twenty-two codifications provide that, if a state other than the state of conduct (e.g., the state of injury or the state of the common domicile) governs the tort, the court should nevertheless "take into account," or apply, the rules of "conduct and safety" of the state of conduct.[68]

- Fifteen codifications subject foreign torts to the "double actionability" requirement, according to which a tort governed by a foreign law does not entitle the victim to recovery unless the tortfeasor's conduct is actionable under both the foreign law and the law of the forum qua forum.[69]

- Six codifications impose a unilateral *lex fori* exception affecting the level or type of recoverable damages. These codifications provide that, for torts governed by foreign law, the plaintiff may not recover higher or different damages than those available under the *lex fori*.[70]

- Finally, in addition to Yemen, which applies the *lex fori* to all torts, foreign and domestic, the codifications of Mongolia and Vietnam apply the *lex fori* to foreign torts involving domestic defendants.[71]

---

[64] This exception is discussed at IV.C, *infra*.

[65] The codifications comprising this group are those of: Azerbaijan, Belarus, Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine, Uzbekistan, and Vietnam. For citations and discussion, *see infra* at IV.C.2.c.

[66] In the Lithuanian codification, this exception applies only if it is impossible to determine the place of conduct or the place of injury. *See* Lithuanian codif. art. 1.43(2).

[67] For documentation and discussion, *see infra* at IV.E.

[68] For documentation and discussion, *see infra* at V.

[69] For documentation and discussion, *see infra* at IV.F. One of those codifications, the Mongolian, imposes this requirement only in favor of Mongolian defendants. *See id.*

[70] For documentation and discussion, *see infra* at IV.G.

[71] *See id.*

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

### C. Defining the *Locus Delicti* in Cross-Border Torts: The *Favor Laesi* Principle

Before discussing the exceptions to the *lex loci delicti* rule, it would be helpful to examine how recent codifications define the *locus delicti*. This definition affects the outcome in cases in which (1) the two constituent elements of a tort, the injurious conduct and the resulting injury, are located in different states—namely, in *cross-border* (as opposed to intra-state) torts; and (2) the way those states' laws differ in result. Obviously, cross-border torts have become far more frequent in the last 50 years than before.[72]

Unlike the first American Restatement, which categorically defined the *locus delicti* as the place of injury (*lex loci damni*),[73] many recent codifications either refrain from defining it[74] or opt for constructive ambiguity, which in turn provides flexibility. For example, at least a dozen codifications use phrases such as "the fact that gives rise" to the obligation,[75] which arguably can be *either* the injurious conduct or the resulting injury. About a dozen codifications define the *locus delicti* as the place of conduct,[76] and an equal number as the place of injury,[77] although in many of those codifications the definitions leave room for contrary arguments.

However, a plurality of codifications avoids potentially interminable localization arguments by providing a direct *substantive* solution to this dilemma. Following a principle known as *favor laesi*,[78] they directly authorize the application of the law of *either* the place of conduct or the place of injury, whichever favors the victim.[79] They do so by either choosing the more favorable of the two laws or allowing the tort victim to choose between them. Table 2.3 below lists these codifications, and the following text provides the necessary explanations.

---

[72] *See* Symeonides, *Cross-Border Torts*, 339–341.

[73] *See supra* note 8.

[74] *See, e.g.,* Burundi codif. art. 6; Central African Republic codif. art. 42.2; Madagascar codif. art. 30; Puerto Rico codif. art. 40.

[75] *See* Afghanistan codif. art. 29.1; Algerian codif. art. 20(1); Cuban codif. art 16; Jordanian codif. art. 22; Latvia codif. art. 20; Somalian codif. art. 21.1; Spanish codif. art. 10.9; Sudanese codif. art. 11.14a; U.A.E. codif. art. 20(1); Ukrainian codif. art. 49.1; Uzbekistan codif. art. 1194.

[76] *See, e.g.,* Austrian codif. art. 48(2); Armenian codif. art. 1289; Azerbaijan codif. art. 26.1; Belarus codif. art. 1129(1); Chinese codif. art. 44; Kazakhstan codif. art. 117.1; North Korean codif. art. 31; South Korean codif. art. 31; Kyrgyzstan codif. art. 1203(1); Qatar codif. art. 30.

[77] *See, e.g.,* Rome II art. 4(1); Albanian codif. art. 56.1; Argentinean draft codif. art. 2657; Belgium art. 99.2.1; Bulgarian codif. art. 105(1); Gabon codif. art. 41; Italian codif. art. 62; Liechtenstein codif. art. 52(1); Mongolian codif. art.551.1; Netherlands art. 157; Polish codif. art. 33; United Kingdom Codif. § 11. The codifications of Moldova (art. 1615.3), Romania (arts. 107–108), and Turkey (art. 34.2) provide that the law of the state of injury governs cross-border torts.

[78] For a discussion of this principle in comparative conflicts law, *see* Symeonides, *Progress or Regress?* 57–59. *See also* Nygh, *Reasonable Expectations* 292–293 (1995); F. Vischer, General Course on Private International Law, 232 *Recueil des cours* 9, 119 (1992).

[79] *See* Angolan codif. art. 45.2; Cape Verde codif. art. 45.2; Croatian codif. art. 28.1; Estonian codif. art. 50; FYROM codif. art. 33; German codif. art. 40; Hungarian codif. art. 32; Italian codif. art. 62; Japanese codif. art. 17; Lithuanian codif. art. 1.43.1; Macau codif. art. 44.1; Mozambique codif. art. 45.2; Peruvian codif. art. 2097; Portuguese codif. art. 45.2; Quebec codif. art. 3126; Russian codif. art. 1219; Slovenian codif. art. 30.1; Swiss codif. art. 133.2; Taiwanese codif. art. 25; Tunisian codif. art. 70; Uruguay codif. art. 52.1; Venezuelan codif. art. 32; Vietnam codif. art. 773.1.

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

Case 1:21-cv-11269-FDS   Document 124-4   Filed 02/03/22   Page 12 of 18

TABLE 2.3. THE *FAVOR LAESI* PRINCIPLE IN CROSS-BORDER TORTS

| | | |
|---|---|---|
| For all cross-border torts (29) | Express (21) | (a) **Victim's choice:** Estonia, FYROM, Germany, Italy, Lithuania, Oregon, Tunisia, Uruguay, Venezuela (9). |
| | | (b) **Court's choice:** Angola, Cape Verde, Croatia, East Timor, Georgia, Guinea-Bissau, Hungary, Macau, Mozambique, Peru, Portugal, Slovenia (12). |
| | Implied (6) | China, Japan, South Korea, Quebec, Russia, Switzerland (6). |
| | Discretionary (2) | Slovakia, Vietnam. |
| Express for some cross-border torts (23) | | Albania, Austria, Azerbaijan, Belarus, Belgium, Bulgaria, Czech Republic, Kazakhstan, Kyrgyzstan, Louisiana, Moldova, Poland, Puerto Rico, Romania, Rome II, Russia, Serbia, Switzerland, Taiwan, Tajikistan, Turkey, Ukraine, Uzbekistan. |

1. Express *Favor Laesi* Rule

Twenty-one codifications contain an express rule applicable to all cross-border torts; it allows the court or the victim to choose between the laws of the state of conduct and the state of injury.[80] Specifically:

(a) Nine codifications directly authorize the victim to choose the applicable law. For example, the German codification provides that, although torts are generally governed by the law of the state of conduct, "[t]he injured party can demand that instead of this law, the law of the country in which the injury occurred is to be applied."[81] The codifications of Estonia,[82] Italy,[83] Lithuania,[84] Tunisia,[85] Uruguay,[86]

---

[80] In addition, the idea of allowing the tort victim to choose between the laws of the place of conduct and the place of injury has also been adopted in draft legislation pending in Mexico (2006 Draft). *See* C. Fresnedo de Aguirre & D. Fernández Arroyo, A Quick Latin American Look at the Rome II Regulation, 9 *Ybk. Priv. Int'l L.* 193, 197–198 (2007).

[81] German codif. art. 40.1. This principle, known as *Gunstigkeitsprinzip*, is traceable to an 1888 decision of the German Reichsgericht. *See* the decision of 20 November 1888, 23 Entscheidungen des Reichsgerichts in Zivilsachen [RGZ] 305 (1888).

[82] *See* Estonian codif. art. 50 (providing for the application of the law of the state of conduct, unless the victim requests the application of the law of the state of injury).

[83] *See* Italian codif. art. 62 (providing that torts are governed by the law of the state of injury, but "the person suffering damage may request the application of the law of the State in which the event causing the injury took place.")

[84] Lithuanian codif. art. 1.43(1). *See also id.* art. 1.45 (defamation by mass media: victim's choice from among the laws of the victim's domicile, the tortfeasor's domicile or place of business, or the state of injury).

[85] *See* Tunisian codif. art. 70 (providing for the application of the law of the state of conduct, unless the victim requests the application of the law of the state of injury).

[86] *See* Uruguayan draft codif. art. 52(1) (providing that torts are governed by the law of the state of conduct or the state of injury "at the option of the injured.").

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

and Venezuela[87] give the tort victim the same choice. The Oregon codification gives the same choice but only if the activities of the tortfeasor were "such as to make foreseeable the occurrence of injury in that state."[88] The FYROM codification also subjects the victim's choice to a similar foreseeability proviso.[89]

(b) Twelve codifications authorize the court to choose the law that is more favorable to the victim. For example, the Croatian codification provides that the law of the place of conduct or the law of place of injury governs torts, "depending on which is most favorable for the injured party."[90] Again, there is no foreseeability proviso for the defendant. The same is true of the corresponding provisions of the codifications of Georgia,[91] Hungary,[92] and Slovenia.[93] In contrast, the Peruvian codification provides that if the tortfeasor is not liable under the law of the state of conduct but is liable under the law of the state of injury, the law of the latter state governs, provided that the tortfeasor should have foreseen the occurrence of the injury in that state as a result of his conduct.[94] The Portuguese codification, as well as the codifications of Angola, Cape Verde, East Timor, Guinea-Bissau, Macau, and Mozambique that are based on it, contain a substantially identical provision.[95]

---

[87] *See* Venezuelan codif. art. 32 (providing for the application of the law of the state of injury, unless the victim requests the application of the law of the state of conduct).

[88] Or. Rev. Stat. 15.440(3)(c). In order to avoid an inappropriate dépeçage, this provision states that the victim's request for the application of the law of the state of "shall be deemed to encompass all claims and issues" against the particular defendant. *Id.* This provision is subject to an exception if a party demonstrates that the application of the law of another state to a disputed issue is "substantially more appropriate under the principles of [Or. Rev. Stat. 15.445]" (which articulates the codification's residual choice-of-law approach), in which case the law of the other state applies to that issue. For a discussion of this provision by its drafter and its differences from the corresponding provisions of other codifications, *see* S. Symeonides, *Oregon Torts Exegesis*, 1022–1032.

[89] *See* FYROM codif. art. 33 (providing for the application of the law of the state of conduct, but also providing that the injured party may request the application of the law of the state of injury if the tortfeasor could and should have foreseen the occurrence of the injury in that state).

[90] Croatian codif. art. 28.1. Serbia has the same rule (*see* art. 28.1 of the (Yugoslav) Law of 15 July 1982 Concerning Conflicts with Foreign Laws, which is still in force in Serbia), but the 2012 Serbian draft adopted the *favor laesi* principle only with regard to environmental torts, restrictions to competition, and defamation.

[91] *See* Georgian codif. art. 42.1.

[92] *See* Hungarian codif. art. 33(2) (choice between the laws of the place of conduct and the place of injury). *See also id.* art. 32(4) (choice between the laws of the place of conduct and the tortfeasor's personal law for issues of culpability); *id.* art. 10(3) (choice between the *lex loci* and the *lex fori* for damages in cases of violation of personal rights). Article 32 was deleted by Act IX of 2009 as inconsistent with Rome II but it remains applicable for torts occurring before that year/

[93] *See* Slovenian codif. art. 30(1).

[94] Peruvian codif. art 2097(2).

[95] *See* Portuguese codif. art. 45.2 (providing for the application of the law of the place of conduct, but "[i]f the law of the state of injury holds the actor liable but the law of the state of conduct does not, the law of the former state shall apply, provided the actor could foresee the occurrence of damage in that country as a consequence of his act or omission."); Angola codif. art. 45.2; Cape Verde codif. art. 45.2; East Timor codif. art. 44.2, Guinea-Bissau codif. art. 45.2; Macau codif. art. 44.2; Mozambique codif. art. 45.2.

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

2. Implied *Favor Laesi*

In China[96] and South Korea,[97] the courts have interpreted the applicable statutory provisions as authorizing the application of the law most favorable to the victim.

The codifications of Japan, Quebec, Russia, and Switzerland contain a rule, also applicable to all cross-border torts, which provides that the law of the state of injury displaces the law of the state conduct, if the occurrence of the injury in the former state was objectively foreseeable.[98] Obviously, the foreseeability proviso is meaningful only if the law of the state of injury is more favorable to the victim than the law of the state of conduct.

3. Discretionary *Favor Laesi*

The Slovakian and Vietnamese codifications allow the court to choose between the laws of the state of conduct and the state of injury without specifying whether the choice must favor the victim.[99] It would not be surprising if this factor proves determinative in most cases.

4. Partial *Favor Laesi*

Twenty-three codifications, including Rome II, which is applicable to 27 EU countries, contain an express *favor laesi* rule applicable only to the cross-border torts shown in parentheses:

- Albania (environmental torts, infringement of rights of personality, and certain cases involving anticompetitive restrictions);[100]
- Austria (nuclear damage);[101]

---

[96] Article 187 of the Opinions of the Supreme People's Court on Several Questions Regarding the Implementation of the General Principles of Civil Law (1988) provides that the *lex loci delicti* includes the law of the place of conduct and the law of the place of injury, and that in cross-border torts, a court may choose either law. For discussion, *see* W. Chen, *Chinese Report*; Q. He, Recent Developments with Regard to Choice of Law in China, 11 *Ybk. Priv. Int'l L.* 211 (2009); Xu Donggen, Chronique de jurisprudence chinoise, *J. dr. int'l* 191 (1994). Article 44 of the Chinese codification of 2010 provides that the applicable law is the law of the state in which the "tortious act" occurred. It remains to be seen whether the quoted phrase will be interpreted to mean either the place of conduct or the place of injury.

[97] *See* K. Hyun Suk, The New Conflict of Laws Act of the Republic of Korea, 5 *Ybk. Priv. Int'l L.* 99, 127 n.45 (2003) (describing supreme court cases allowing choice of law most favorable to victim).

[98] *See* Japanese codif. art. 17; Quebec codif. art. 3126; Russian codif. art. 1219.1; Swiss codif. art. 133.2.

[99] *See* Slovak codif. art. 15; Vietnam codif. art. 773(1).

[100] *See* Albanian codif. art. 66.2 (environmental torts; applying the law of the state of injury, unless the plaintiff opts for the law of the place of conduct), art. 67 (infringement of rights of personality; the victim may choose from among the laws of the place of injury, or the victim's or the defendant's domicile), art. 64.5–6 (allowing the plaintiff to choose between the otherwise applicable law and the law of the forum in certain cases involving anticompetitive restrictions).

[101] *See* Liability for Nuclear Damage Act § 231(1), discussed in C. Wendehorst, *Austrian Report* at III. *See also id.* describing judicial decisions allowing such a choice in other cases under the stronger connection escape of codif. art. 48(2).

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

- Azerbaijan (products liability);[102]
- Belarus (products liability);[103]
- Belgium (defamation and direct actions against insurers);[104]
- Bulgaria (defamation, environmental torts, and direct action against insurer);[105]
- Czech Republic (violation of privacy and defamation);[106]
- Kazakhstan (products liability);[107]
- Kyrgyzstan (products liability);[108]
- Louisiana (conduct-regulation issues other than punitive damages);[109]
- Moldova (injury to rights of personality and products liability);[110]
- Poland (injury to rights of personality);[111]
- Puerto Rico (conduct regulation issues);[112]
- Romania (defamation, unfair competition, and products liability);[113]

---

[102] *See* Azerbaijan codif. art. 27 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).
[103] *See* Belarus codif. art. 1130 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).
[104] *See* Belgian codif. art. 99(2) (1) (applicable to defamation; allowing plaintiff to choose between the laws of the state of conduct and, subject to a foreseeability proviso, the state of injury); art. 106 (applicable to direct actions against the tortfeasor's insurer, providing that the action will be allowed if it is allowed by either the law governing the tort or the law governing the insurance contract).
[105] *See* Bulgarian codif. art. 108 (defamation: victim's choice among laws of victim's or tortfeasor's habitual residence or place of injury); art. 109 (environmental torts: victim's choice between laws of place of conduct or place of injury); and 116 (direct action against insurer: victim's choice between the law that governs the tort and the law that governs the insurance contract).
[106] See Czech codif. art. 101 (victim may choose the law of her or the defendant's habitual residence or registered office or of the place of foreseeable injury).
[107] *See* Kazakhstan codif. art. 1118 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).
[108] *See* Kyrgyzstan codif. art. 1204 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).
[109] *See* Louisiana codif. art. 3543 (law of state of conduct applies unless injury occurred in another state imposing a higher standard of conduct and the occurrence of the injury in that state was objectively foreseeable).
[110] *See* Moldova codif. art. 1617 (injury to rights of personality; victim may choose from among the laws of the victim's or the defendant's domicile, or the place of injury), art. 1618 (products liability; victim may choose between the law of the victim's domicile, or, subject to a foreseeability proviso, the law of the place of the product's acquisition).
[111] *See* Polish codif. art. 16 (victim may choose between the law of the place of conduct and the law of the place of injury).
[112] *See* Puerto Rico draft codif. art. 40 (law of state of conduct applies unless injury occurred in another state imposing a higher standard of conduct and the occurrence of the injury in that state was objectively foreseeable).
[113] *See* Romanian codif. art. 112 (applicable to defamation; allowing victim to choose between the laws of the defendant's domicile or residence and, subject to a foreseeability proviso, the plaintiff's domicile or residence, or the state of injury); arts. 117–118 (applicable to unfair competition; applying the law of the state of injury but also allowing the victim to choose another law in certain cases); art. 114 (products liability).

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

- Rome II (environmental torts, direct actions against insurers, and certain cases involving anticompetitive restrictions);[114]
- Russia (products liability);[115]
- Serbia (environmental torts and defamation);[116]
- Switzerland (injuries from emissions, injury to rights of personality, and products liability);[117]
- Taiwan (products liability, unfair competition, and direct actions against tortfeasor's insurer);[118]
- Tajikistan (products liability);[119]
- Turkey (defamation, direct actions against insurer, and products liability);[120]
- Ukraine (products liability);[121] and
- Uzbekistan (products liability).[122]

---

[114] *See* Rome II art. 7 (environmental torts; applying the law of the state of injury, unless the plaintiff opts for the law of the place of conduct); art. 6(3)(b) (allowing the plaintiff to choose between the otherwise applicable law and the law of the forum in certain cases involving anticompetitive restrictions); art.18 (authorizing a direct action against the insurer if such action is allowed by either the law applicable to the tort or the law applicable to the insurance contract).

[115] *See* Russian codif. art. 1221 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).

[116] *See* Serbian draft codif. art. 165 (applicable to environmental torts: allowing victim to choose between the laws of the state of conduct and the state of injury), and art. 170 (applicable to defamation: allowing plaintiff to choose between the laws of the defendant's habitual residence and, subject to a foreseeability proviso, the states of the victim's domicile or injury). *See also id.* art. 164 (applicable to cases involving anticompetitive restrictions: allowing choice of forum law if the forum's market is one of the affected markets).

[117] *See* Swiss codif. art. 138 (applicable to emissions: allowing victim to choose between the laws of the state of conduct and the state of injury); art. 139 (injury to rights of personality: giving victims a choice from among the laws of the tortfeasor's habitual residence or place of business, and, subject to a foreseeability defense, the victim's habitual residence or the place of the injury); art. 135 (products liability).

[118] *See* Taiwanese codif. art. 26 (products liability: choice from among the laws of the manufacturer's or the victim's nationality, the place of injury, or the place of the product's acquisition), art. 27 (unfair competition: choice between the law governing the tort or the contract, if any), art. 29 (choice between the law governing the tort and the law governing the insurance contract).

[119] *See* Tajikistan codif. art. 1227 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).

[120] *See* Turkish codif. art. 35 (applicable to defamation: allowing plaintiff to choose between the laws of the defendant's habitual residence or place of business and, subject to a foreseeability proviso, the states of the victim's domicile or injury); art. 34(4) (applicable to direct actions against the tortfeasor's insurer, providing that the action will be allowed if it is allowed by either the law governing the tort or the law governing the insurance contract); art. 36 (products liability).

[121] *See* Ukrainian codif. art. 50 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).

[122] *See* Uzbekistan codif. art. 1195 (victim may choose from among the laws of the victim's or the defendant's domicile, or the place of the product's acquisition).

EBSCOhost - printed on 1/31/2022 4:17 PM via UNIVERSITEIT VAN AMSTERDAM. All use subject to https://www.ebsco.com/terms-of-use

5. Summary and Comparison

To summarize, of the 73 choice-of-law codifications surveyed in this chapter:

- 29 codifications follow the *favor laesi* principle for all cross-border torts; and
- 23 codifications, including Rome II, which is in force in 27 EU countries, follow the same principle in some categories of cross-border torts.
- In sum, 52 out of 73 codifications (or 71 percent) follow the *favor laesi* principle and apply whichever of the two laws favors the tort victim (Chart 2.2).

As noted earlier in this chapter, in 86 percent of the cases involving cross-border torts other than products liability, American courts have applied the law of either the state of conduct or the state of injury, whichever favored the tort victim.[123] Although a handful of these cases were decided under the "better-law" approach, which can be analogized to the *favor laesi* principle,[124] most other cases were decided under approaches that considered the policies and interests of the involved states in deterring wrongful conduct and preventing injuries from occurring, as well as other factors. In other words, the courts applied a pro-plaintiff law not necessarily because they subscribed to the pursuit of "material justice," but rather in order to achieve what they considered to be "conflicts justice." Although plaintiffs as a class have been the beneficiaries of these choice-of-law decisions, the individual plaintiffs were not the *stated* reason for these choices.[125] Nevertheless, the results were quite similar to the results reached in 71 percent of codifications of the last 50 years.

Admittedly, the comparison between codifications on the one hand and individual judicial decisions on the other hand is, in many respects, a comparison of apples and oranges. It is also an incomplete comparison in that: (1) the American side of the comparison does not include product liability conflicts in which American courts applied a pro-plaintiff law in only 52 percent of the cases;[126] and (2) the codification side of the comparison does not take account of escape clauses and other available exceptions.

Nevertheless, there is something intriguing and perhaps instructive in seeing that comparable percentages of legislative decision-makers in diverse countries and judicial decision-makers in a plurilegal country have arrived at the same results. Although it is true that there is a significant degree of mutual influence among the decision-makers of the first group, there is no evidence of any influence between the two groups, namely between American judges on the one hand and foreign codifiers on the other.

---

[123] *See supra* II.C.3.
[124] *See* J. von Hein, Something Old and Something Borrowed, but Nothing New? Rome II and the European Choice-of-Law Evolution, 82 *Tul. L. Rev.* 1663, 1682 (2008) (characterizing the *favor laesi* principle as a "cousin of the better law approach.").
[125] *See* Symeonides, *Cross-Border Torts*, 391.
[126] *See supra* II.C.4.



CHART 2.2. Applicable Law in Cross-Border Tort Conflicts

All of this suggests the intrinsic soundness of applying pro-victim law in cross-border torts. By definition, these torts involve conflicting value judgments of at least two societies as to who should bear the social and economic losses caused by injurious conduct that at least one state considers tortious. In another publication, this author has explained why the application of pro-victim law is appropriate from the perspective of policy analysis.[127] This result is equally defensible from the perspective of fairness to the parties involved. In the final analysis, of the two parties involved in the conflict, the tortfeasor is the one who is in a better position to avert the injury. All other factors being equal, it is not unfair to place the resulting loss on the tortfeasor.

If the application of the pro-victim law by the court is appropriate, does the same hold true for giving that choice directly to the plaintiff, as many codifications do? Substantively, the answer is no. From the defendant's perspective, it makes no difference because the outcome would be the same. The same is true from the plaintiff's perspective. The only difference, then, is from the court's perspective. When the choice is given to the court, the court has to determine and explain why one state's law is more favorable than the other state's law. Surprisingly, perhaps, this is not always easy, and an erroneous determination would be a ground for appeal.

---

[127] *See* Symeonides, *Cross-Border Torts*, 391, 405–411.