# EXHIBIT 7

# Products liability

## I. Introduction

Products liability is the field of law that deals with the extra-contractual liability of manufacturers, distributors, suppliers, retailers, and other persons for damage caused by products they have made available to the public. The answer to the question of which person in a chain of distribution is ultimately responsible for the damage caused by a defective product depends on the applicable law.

In products liability cases the person claimed to be liable has often acted in a place that is different from the place where the person claiming compensation has suffered injury: a product is designed and manufactured in one place and marketed and purchased in others. Once acquired, the product is carried to yet other places where it ultimately causes damage to the person who acquired it, to persons close to the purchaser, or to third parties (so-called 'innocent bystanders'). Given the high mobility of many products, the place of manufacturing, purchase and injury may be located in two or more countries. Hence the great potential for complex transnational torts scenarios in the field of products liability (for other complex torts see → Torts).

In the EU, the substantive law on products liability is to some extent harmonised by the Products Liability Directive (Council Directive 85/374/EEC of 25 July 1985 on the approximation of the laws, regulations and administrative provisions of the Member States concerning liability for defective products [1985] OJ L210/29). The harmonising effect of this Directive is however limited, in that according to art 9 Products Liability Directive, damage to property is covered only if the product was intended for private use, and pure economic loss is not covered at all. Cases that are beyond the scope of application of the Directive continue to be governed by national liability laws that differ from each other in many respects. Consequently, the outcome in a given case often depends on the applicable law.

In Europe, the law applicable to products liability cases that present a foreign element is determined either by the → Rome II Regulation (Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 on the law applicable to non-contractual obligations (Rome II), [2007] OJ L 199/40) or by the Hague Products Liability Convention (Hague Convention of 2 October 1973 on the law applicable to products liability, 1056 UNTS 191). In countries that are neither EU Member States nor contracting states to the Hague Products Liability Convention (such as → Switzerland), the law applicable to products liability is determined by their domestic private international law.

Given the limited number of contracting states to the Hague Products Liability Convention (see below III.1.), the Rome II Regulation is by far the most important instrument in Europe when it comes to determining the law applicable to products liability.

Wolfgang Hau / Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

Before entry into force of the Rome II Regulation, there was a broad variety of solutions in Europe regarding the law applicable to products liability (see the overview in Thomas Kadner Graziano, 'The Law Applicable to Product Liability: The Present State of the Law in Europe and Current Proposals for Reform' (2005) ICLQ 475, 478–9). Given the mobility of many products, there has however been a widespread consensus that applying the law of the place where the injury occurred, ie the *lex loci delicti* (→ Torts), would often be inadequate and lead to fortuitous results in products liability scenarios. Thus persons living in country A might buy a product in country B and take it to country C (on vacation or on a business trip) which might be any (distant) country in the world. While using it there, they might suffer damage due to a defect of the product. To apply the law of country C where the injury occurred would often not constitute a sensible solution for the manufacturer of the product, who would not know in advance to which country in the world the user might carry the product before the damage occurs, or for the victim who will, in general, expect the application of the law of a country with which they have a closer connection.

**II. The applicable law according to the Rome II Regulation**

Faced with the difficulty of finding a satisfactory solution for the applicable law in products liability cases, art 5 Rome II Regulation combines various criteria which achieve a finely tuned determination of the applicable law. The criteria are arranged in a hierarchy or cascading system of connecting factors, so that if the criteria for applying the first rule are not met, then the second applies (and so on). These steps will now be analysed in sequence.

*1. Party autonomy (art 14)*

Under the Rome II Regulation, it first needs to be determined whether the parties have agreed on the applicable law: art 14(1) allows for a choice of the applicable law in torts *ex post* and, under certain conditions, also *ex ante* (→ Torts).

In the case-law on products liability dating from before the Rome II Regulation, when the parties pleaded in court proceedings according to the law of the forum, the courts occasionally deduced that they thereby impliedly chose the law of the forum as the applicable law (see eg the German case: German Federal Court of Justice (BGH), 17 March 1981 *Apfelschorf (apple scrap)* [1982] IPRax 13).

According to art 14(1) 2nd sentence Rome II Regulation '[t]he choice [of law] shall be expressed or demonstrated with reasonable certainty by the circumstances of the case'. Contrary to the above case-law, mere silence is thus insufficient, and the Rome II Regulation requires that the parties either make an express choice of applicable law or make an implied choice which is however 'demonstrated with reasonable certainty by the circumstances'.

*2. Pre-existing relationship – rattachement accessoire (art 5(2))*

If the parties have not chosen the applicable law but are in a pre-existing relationship with each other, such as a contractual relationship that is closely connected with the tort or delict in question, then the law applicable to this relationship will also apply to the tort claim (so-called *rattachement accessoire*). Article 5(2) Rome II Regulation thus restates a principle that is already expressed more generally in art 4(3) Rome II Regulation (for the rationale of *rattachement accessoire* see → Torts).

*3. Application of the law of the parties' common habitual residence (art 5(1) in conjunction with art 4(2) Rome II Regulation)*

The next step on the cascade of connecting factors is art 5(1), 1st part, in conjunction with art 4(2) Rome II Regulation: if 'the person claimed to be liable and the person sustaining damage both have their habitual residence in the same country at the time when the damage occurs', then the law of this country applies (for the reasons behind applying the law of the parties' common habitual residence see → Torts).

*4. Application of the law of the injured party's habitual residence (art 5(1)(a))*

The next step, often relevant in practice, is found in art 5(1)(a) Rome II Regulation: 'the law of the country in which the person sustaining the damage had his or her habitual residence when the damage occurred' applies, providing that 'the product was marketed in that country'.

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

The Rome II Regulation contains no definition of the notion of marketing. However, according to ECJ case-law a product is marketed when it is offered to the public for use or consumption (ECJ C-127/04 *Declan O´Byrne v Sanofi Pasteur and others* [2006] ECR I-1313). The ECJ held in relation to the interpretation of the Products Liability Directive that 'a product is put into circulation when it is taken out of the manufacturing process operated by the producer and enters a marketing process in the form in which it is offered to the public in order to be used or consumed'.

For art 5(1)(a) Rome II Regulation to be applicable, it is not necessary that the precise product that caused the damage was actually bought in the country of the injured person's habitual residence, but rather it is sufficient that this line of products was marketed in that country (see art 5(1), 2nd sentence Rome II Regulation: 'the marketing of the product, or a product of the same type'). This is particularly relevant for bystanders injured by a product that they did not purchase.

Article 5(1)(a) applies both in situations where the persons whose liability is claimed have marketed the product in this country themselves, and where it was marketed there by an independent retailer or distributor. This follows among others from the fact that the Rome II Regulation requires that the marketing of the product in the country in question must have been foreseeable, as opposed to requiring that the persons alleged to be liable must themselves have marketed it there, or that they had been in control of the marketing process there (see the 2nd sentence of art 5(1) Rome II Regulation).

Given that the Rome II Regulation applies both to victims domiciled in the EU and those domiciled in third countries, the law of the country of the injured party's habitual residence applies irrespective of whether this is an EU Member State or a third country.

Article 5(1)(a) Rome II Regulation aims at protecting the person sustaining damage. Application of the law of the victim's habitual residence is the simplest and, in principle, the least costly solution for the person having suffered damage. It is also fair for the persons claimed to be liable, in that these persons are making a profit from the distribution of their products in this country and ought reasonably to expect the law of a country in which their products are distributed to apply when these products cause damage there (see European Commission, 'Proposal for a Regulation of the European Parliament and the Council on the Law Applicable to Non-Contractual Obligations ("Rome II")' COM(2003) 427 final, p 16, and Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht – Harmonisierung des IPR durch Wissenschaft und Lehre (am Beispiel der ausservertraglichen Haftung für Schäden)* (Mohr Siebeck 2002), 278 *et seq*).

A particular strength of art 5(1)(a) Rome II Regulation is that it is effective for both new and second-hand products. In addition, the rule applies and achieves reasonable results, both in proceedings brought by the purchaser of a product and those brought by third parties that are not in relationship with the buyer but suffered damage from the product (so-called 'innocent bystanders').

*5. Application of the law of the place of marketing and purchase (art 5(1)(b))*

If products such as the one that caused the damage were not marketed in the country in which the injured person had her habitual residence, then pursuant to art 5(1)(b) Rome II Regulation, 'the law of the country in which the product was [actually] acquired' will apply 'if the product was marketed in that country'.

There are numerous arguments for applying the law of the country of marketing and acquisition. Manufacturers who have their products sold in a foreign country must take into account the potential for their products to cause damage there, and that an injured person would expect the law of this country to apply. Additionally, applying the law of the place of acquisition makes the same rules applicable to all suppliers that have their products sold there, thereby favouring equality between competitors in this market. Using the law of the place of marketing and of acquisition also promotes legal certainty, and finally, applying this law is equally acceptable for both the manufacturer and the purchaser and it is in conformity with their expectations. Consequently, academic opinion in Europe has long argued for the application of the law of the place of acquisition of the product, see eg Harry Duintjer Tebbens, *International Product Liability* (Kluwer 1981) 381 *et seq*; Alberto Saravalle, *Responsabilità del produttore* (CEDAM 1991) 217 *et seq*; Manfred Wandt, *Internationale Produkthaftung* (Fachmedien Recht und Wirtschaft in Deutscher Fachverlag GmbH 1995) no 1086 *et seq*, 1100, 1231; Thomas Kadner Graziano (2005) ICLQ

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

475; id, *Gemeineuropäisches Internationales Privatrecht* (Mohr Siebeck 2002) 278 ff.

However, using the place of acquisition may not be appropriate where the damage was suffered by an innocent bystander who has not acquired the product. Instead, the next rule on the cascade of connecting factors, ie the place of injury rule set out in art 5(1)(c) Rome II Regulation should apply to damage suffered by bystanders (if the case does not fall under art 5(1)(a) already).

*6. Application of the law of the place of injury (art 5(1)(c))*

As provided by art 5(1)(c) Rome II Regulation, if the product was neither marketed in the injured person's country of habitual residence nor in the country in which it was actually bought, products liability will be governed by 'the law of the country in which the damage occurred, if the product was marketed in that country'.

Under the Rome II Regulation, the place of damage thus occupies a merely subsidiary position in the list of connecting factors for determining the applicable products liability law, and rightly so. In fact, given the high mobility of many products, the risk of reaching fortuitous and arbitrary results is considerable when the law of the place of injury is used with respect to persons who have purchased the product in another country. The application of the law of the place of injury, if not accompanied by other factors, may often be neither in the interest of the person whose liability is claimed nor in the interest of the injured person (see the example above I. *in fine*). On the other hand, the place of injury rule often works well where the damage was suffered by an innocent bystander.

*7. Foreseeability clause*

According to art 5(1) *in fine* Rome II Regulation, 'the law applicable shall be the law of the country in which the person claimed to be liable is habitually resident if he or she could not reasonably foresee the marketing of the product, or a product of the same kind, in the country the law of which is applicable under (a), (b) or (c)'.

Article 5(1) *in fine* provides the only 'foreseeability clause' in the Rome II Regulation. In the European case-law on international torts dating from the period before entry into force of the Rome II Regulation, there is no single published case in which a court concluded that the injury in the country in which it occurred was not reasonably foreseeable for the person claimed to be liable (compare Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht – Harmonisierung des IPR durch Wissenschaft und Lehre (am Beispiel der ausservertraglichen Haftung für Schäden)* (Mohr Siebeck 2002) 224). In fact, most products are today distributed on an international or even global scale, and can freely circulate across borders, as is well known to manufacturers and distributors. The foreseeability clause in art 5(1) Rome II Regulation *in fine* will thus rarely if ever be relevant in practice.

**III. The 1973 Hague Convention on the law applicable to products liability**

*1. Relationship between the Rome II Regulation and the Hague Products Liability Convention*

Products liability is the subject matter of a second Hague Convention in the field of torts, namely the Hague Products Liability Convention (text and status table available at <www.hcch.net>). The Convention is currently in force in 11 countries, including seven EU Member States (→ France, the → Netherlands, → Luxembourg, → Finland, → Spain, → Slovenia and → Croatia; it is also in force in → Norway, → Macedonia, FYR, → Serbia and → Montenegro).

As with the Hague Traffic Accident Convention (Hague Convention of 4 May 1971 on the law applicable to traffic accidents, 965 UNTS 415), the Rome II Regulation does not affect application of the Hague Products Liability Convention, pursuant to its art 28(1). In the EU Member States in which the Convention is in force, the applicable law in products liability cases will thus be determined by the Hague Products Liability Convention, as opposed to the Rome II Regulation. As with traffic accidents, this may be seen as an unsatisfactory situation which could very well be remedied (→ Traffic accidents).

*2. The applicable law according to the Hague Products Liability Convention*

Just like the Hague Traffic Accident Convention, the Hague Products Liability Convention provides no rules on → choice of law by the parties (→ party autonomy) nor on pre-existing

THOMAS KADNER GRAZIANO

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

relationship (*rattachement accessoire*). Neither were on the agenda in the early 1970s.

The Hague Products Liability Convention combines four criteria, of which two generally need to be met in order to find the applicable law. The different combinations of criteria apply in a hierarchical order.

First, the law of the country of habitual residence of the party having suffered the damage applies, provided that the person claimed to be liable is also established there or the claimant has purchased the product in this country (art 5 Hague Products Liability Convention). The first of these two alternatives corresponds to a widespread rule in the private international law of torts, ie to apply the law of the country where both parties have their habitual residence or establishment. Incidentally the Rome II Regulation uses the same criterion, provided there is no choice of law by the parties and no case for an accessory connection, see art 5(1) with art 4(2) Rome II Regulation, and II.3. above. The second alternative corresponds largely to art 5(1)(a) Rome II Regulation. However, under Rome II it is sufficient that the product was marketed in the country of the injured person's habitual residence, whereas the Hague Products Liability Convention requires a purchase by that person in this country.

Second, the law of the country where the injury occurred, ie where the legally protected interest was initially harmed, applies, provided that this is also 'a) the place of the habitual residence of the person directly suffering damage, or b) the principal place of business of the person claimed to be liable, or c) the place where the product was acquired by the person directly suffering damage' (art 4 Hague Products Liability Convention). The place of injury thus appears at an earlier stage than in the Rome II Regulation. However, the law of the place of injury applies only when this place coincides with the place of the injured party's habitual residence, which might frequently be the case, or with the principal place of business of the person claimed to be liable, or with the place where the victim has purchased the product (the Rome II Regulation focuses instead on the place of marketing and purchase, and has recourse to the place of injury only as a last resort in products liability cases, see II.6. above).

Finally, where the conditions of none of the above rules are met, the law of the country of the principal place of business of the person claimed to be liable applies, but the victim may opt instead for the law of the country where the injury occurred (art 6 Hague Products Liability Convention).

### IV. Private international law rules on products liability in other jurisdictions

Further specific rules on the law applicable to products liability are found in the private international law acts of → Switzerland (Swiss Private international law Act (*Bundesgesetz über das Internationale Privatrecht* of 18 December 1987, 1988 BBl I 5, as amended, henceforth Swiss PILA)) and → Tunisia (Code of Private international law (Law No 98-97 of 27 November 1998), Official Journal of the Republic of Tunisia, 1 December, p 2332, henceforth Tunisian PILA))), in the Civil Codes of Québec (L.Q. 1991, ch 64), Russia (Civil Code of the → Russian Federation (as amended by Federal Law No 260-FZ on 30 September 2013, henceforth Russian CC)) and → Belarus (Law No 218-Z of 7 December 1998), in the Japanese Act on General Rules for Application of Laws (Hōno Tekiyō ni Kansuru Tsūsokuhō, Law No 10 of 1898, as newly titled and amended by Act No 78 of 21 June 2006, henceforth Japanese PILA) and the Chinese Statute of Application of Law to Foreign Civil Relations (adopted at the 17th session of the Standing Committee of the 11th National People's Congress on 28 October 2010, effective 1 April 2011, henceforth Chinese PILA).

Once the injury has occurred, most of these instruments (with the exception of the Civil Codes of Québec and Belarus) leave it to the parties to determine the applicable law if they wish to do so (art 133 section 1 Swiss PILA; art 1219 section 3 Russian CC; art 21 Japanese PILA; art 44 2nd sentence Chinese PILA, art 71 Tunisian PILA). They all permit a choice *ex post*, which is limited to the *lex fori* in Switzerland, Russia and Tunisia.

In the absence of a choice by the parties, the law of the parties' domicile or residence (→ Domicile, habitual residence and establishment) is applicable provided both parties are domiciled in the same country (art 133 section 1 Swiss PILA; art 3126 section 2 Civil Code of Quebec; art 1219 section 2 *in fine* Russian CC; art 20 Japanese PILA; art 44 2nd alternative Chinese PILA; art 70 section 3 Tunisian PILA). Some codes or statutes provide for the application of the law governing a pre-existing relationship between the parties, in particular

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

1418   ENCYCLOPEDIA OF PRIVATE INTERNATIONAL LAW

where they are in a contractual relationship (art 133 section 3 Swiss PILA; art 3127 Civil Code of Québec; art 20 Japanese PILA).

All of the above-mentioned codes and acts further contain specific rules with objective connecting factors for products liability claims. Absent an agreement on the applicable law, the person having suffered damage can choose between the law of the state where the manufacturer has its establishment or residence and the law of the state where the good was acquired, art 135 Swiss PILA, art 3128 Civil Codes of Québec, art 1221 section 1 Russian CC, art 1130 Civil Code of Belarus, art 72 of the Tunisian PILA. Under the Swiss PILA and the Russian CC, applying the law of the place of acquisition is excluded if the persons held liable prove that the product was marketed there without their consent. The Civil Codes of Russia, Belarus, and Tunisia further allow the choice of the law of the country where the injured party is domiciled or has its principal activity.

Under art 45 Chinese PILA, the law of the country of the habitual residence of the person having suffered the damage applies to product liability, without further requirements. The victim may instead choose the law applicable at the principal place of business of the person claimed to be liable or at the place where the injury occurred. The law of the place of injury can also be chosen by the victim under art 72 no 2 of the Tunisian PILA.

In contrast, according to art 18 Japanese PILA, a claim against the producer following an injury to life, body, or property 'caused by the defect of a delivered product … shall be governed by the law of the place where the injured person has been delivered the product. However, where the delivery of the product to that place could not usually be foreseen, the law of the principal place of business of the producer applies'.

In products liability, in order to facilitate compensation, the courts in the → USA tend to focus on the law most favourable to the victim. Some courts applied the law in force at the consumer's domicile even in cases in which neither the injury was suffered nor the product sold there, see eg *Phillips v General Motors Corp.,* 995 P.2d 1002 (Montana 2000); *Kasel v Remington Arms Co*, 24 Cal.App. 3d 711 (California 1972); *Stephen v Sears, Roebuck & Co*, 266 A. 2d 855 (New Hampshire 1970). These courts emphasized the interest in protecting the consumer or any other user, and they assumed that the state of the consumer's domicile had the most significant contact and interest in having its law applied, at least when this facilitated recovery.

Other courts in the USA applied the law of the manufacturer's federal state, which was often particularly favourable to foreign victims. In these decisions the courts emphasized the interest in deterring a manufacturer's improper conduct and/or the interest in providing incentives for producing the safest products possible, *Reyno v Piper Aircraft Corp,* 639 F.2d 149, 168 (3d Cir 1980), reviewed on another issue, 454 U.S. 235, 102 S.Ct. 252; *Gantes v Kason Corp*, 145 N.J. 478. 679 A.2d 106 (1996); *Baird v Bell Helicopter Textron*, 491 F.Supp. 1129, 1141 (ND Texas 1980); *Johnson v Spider Staging Corp*, Wash. 2d 577, 555 P.2d 997, 1002 (1976).

In other cases the courts applied the law of the victim's country of domicile even though it was less favourable to the plaintiff, *Harrison v Wyeth Laboratories*, 510 F.Supp. 1 (E D Pennsylvania 1980), affirmed 676 F.2d 685 (3d Circ 1982). In this case, a woman was injured in the United Kingdom by oral contraceptives manufactured there under the licence of a Pennsylvania-based company. The court reasoned that the UK had a greater interest than Pennsylvania in the control of drugs distributed and consumed in the UK. This led to the application of English law, less favourable to the claimant than that of Pennsylvania.

**V. Case scenarios**

In the following chapter, the rules presented above will be illustrated using selected case scenarios:

*Scenario 1*

A product (eg a bicycle) is designed and manufactured by X in country A and dispatched from its factory. The product is then distributed through an independent chain of distribution in countries A, B, C. Y purchases the product in country B, where he has his habitual residence. Due to a defect in the product (eg a defective bicycle fork) it causes physical injury and damage to property

(i) to Y in country B where he has his habitual residence;
(ii) to Y in country C where he spent his vacation taking the product with him;
(iii) to Z1, a family member of Y, in country B;
(iv) to Z2, an innocent bystander in country C

THOMAS KADNER GRAZIANO

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

where he has his habitual residence.
(v) Variation: Y with domicile/habitual residence in country B purchases the product in country C but suffers damage in B.

In Scenario 1(i) the parties have not chosen the applicable law, they are not in a contractual relationship with each other, and they have their habitual residence in different countries. According to all of the above-mentioned instruments, as well as some US American case-law, the law of country B, where Y has his habitual residence and where he has purchased the product would ultimately be applicable (references above, II.–IV.). Under the rules applicable in → Switzerland, Russia (→ Russian Federation), → Belarus, Québec, → China and → Tunisia the victim could instead choose the law of country A where the manufacturer is established.

In Scenario 1(ii) the injury occurred in a country which is different from the one where the injured person is habitually resident and where the product was purchased. In none of the above-mentioned private international law systems does the place of injury play a central role in product liability. This scenario would thus be solved in the same way as the first scenario, and the law of country B, where Y has his habitual residence and where he has purchased the products would be applicable. Under the rules applicable in Switzerland, Québec, Russia, Belarus and China the victim could choose the law of country A instead of where the manufacturer is established. It is only under the Chinese Act and under the Tunisian Act that the victim would have a further option in favour of the law of the country of injury, ie country C (see II.–IV. above).

The same solution as in Scenario (i) should arguably apply in Scenario 1(iii) where the victim is a person who is close to the purchaser of the defective product.

In Scenario 1(iv) the damage is suffered by an innocent bystander. He has his habitual residence in country C where products such as the one that caused the damage were marketed. According to art 5(1)(a) Rome II Regulation, the law of country C thus applies. The same is true under the Hague Products Liability Convention, since C is the country where the injury occurred and where Z2 has his habitual residence (art 4 Hague Products Liability Convention). According to the Chinese PILA, the law of country C would also apply given that the victim has his habitual residence there; under Chinese law the person having suffered the injury could however opt for the law of country A where the manufacturer is established.

Under the other systems, the law applicable to claims brought by bystanders is less clear: applying the law of the country of purchase is not appropriate for claims by bystanders, and applying the law of the principal place of business of the manufacturer arguably does not suit either for victims who are not involved in the purchasing process (and are not closely related to the purchaser). According to the rules applicable in → Russia, → Belarus and → Tunisia, C could however opt for the law of country C where he is domiciled.

In Scenario 1(v) Y purchases the product in country C but suffers damage in B, the country of his habitual residence where the product was also marketed: according to art 5(1)(a) Rome II Regulation, the law of country B would apply, given that Y has his habitual residence there and products such as the one that caused the damage are marketed there. Under art 4 Hague Products Liability Convention, the law of country B would also apply since Y has his habitual residence and suffered the damage there. Under the Chinese PILA, Y would have the choice between the laws of country A (principal place of business of the manufacturer) and B (Y's habitual residence; place where the injury occurred).

Under the rules applicable in Switzerland, Québec, Russia, Belarus and Tunisia, the victim would have the choice between the laws of countries A (the country of establishment of the manufacturer) and C (the country of purchase). Under the Civil Codes of Russia, Belarus and Tunisia, he would additionally have the option to choose the law of country B (where he, the injured party, was domiciled). Finally, under the Japanese PILA, the law of country C where the product was delivered would arguably apply.

Scenario 1(v) illustrates that in cases where the places of purchase on the one hand and of the victim's habitual residence and of injury on the other are located in different countries, the solutions vary considerably. However, Scenarios 1(i)–(iv) show that in many standard cases, the rules presented above often eventually lead in principle to similar results, but in some jurisdictions with different options for the person who suffered injury.

*Scenario 2*

X, a company established in country A, designs and manufactures prosthetic hips or breast

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

152

implants there. They are distributed to doctors and hospitals through independent chains of distribution in countries A, B and many others. Y has an implant in country B. Due to defects of the implant, Y suffers damage and brings a claim against the manufacturer X.

Given that Y has her habitual residence in country B and that the defective implants were marketed to hospitals and doctors there, art 5(1)(a) Rome II Regulation leads directly to the application of the law of country B. Under this rule, it is immaterial that it was not Y, but her doctors or the hospital, who purchased the defective product in country B. On the other hand, under the Hague Products Liability Convention, in order to apply the law of the country of the victim's habitual residence, it is in principle required that the claimant herself purchased the product in this country (art 5 and above, III.2.). However, art 4 of the Hague Products Liability Convention would eventually also lead to the application of the law of country B since Y suffered the injury in country B and had her habitual residence there. In systems that focus exclusively on the country where the victims themselves purchased the defective product, such as the Japanese PILA, the solution to Scenario 2 is less clear.

*Scenario 3*

A product is manufactured by a US American company and marketed eg in → France, but not eg in → Belgium. One item is sold in France to X, who is not a retailer. He takes it to Belgium and there sells it to Y. Y is injured in Belgium and brings a claim there against the US American manufacturer.

Belgium is not a contracting state to the 1973 Hague Convention. Belgian courts will thus determine the applicable law according to the Rome II Regulation. The parties have not chosen the applicable law and they are not in a contractual relationship, so there is no case for accessory connection. Neither art 5(1)(a) nor (b) Rome II Regulation lead to the applicable law, in that Y is habitually resident in Belgium but the product was not marketed there, and it was not marketed in Belgium where Y acquired it from X. Finally, art 5(1)(c) Rome II Regulation does not determine the applicable law either: Y suffered injury in Belgium but the product was not marketed there.

The Rome II Regulation thus does not provide a rule for cases where the product was not marketed in the country of the victim's habitual residence, of purchase, or of injury. In legal doctrine it is suggested that the law of the place of injury be applied in such scenarios (in Scenario 3: Belgian law) under the general rule in art 4(1) Rome II Regulation (Trevor Hartley, 'Choice of Law for Non-contractual Liability: Selected Problems under the Rome II Regulation' (2008) ICLQ 899, 906; Adam Rushworth and Andrew Scott, 'Rome II Regulation: Choice of Law for Non-contractual Obligations' (2008) LMCLQ, 274 at 284). However, in order to apply the law of the country where the injury occurred, Rome II expressly requires in art 5(1)(c) Rome II Regulation that the product was marketed there. It is therefore suggested to fill the gap by applying the law of the place of marketing that has the closest connection to the facts of the case. This would be in line with the fact that the European legislator used the place of marketing in art 5(1)(a), (b) and (c) Rome II Regulation as a central and indispensable connecting factor. In Scenario 3 this should arguably lead to the application of French law. The same outcome could be reached under art 5(1)(b) Rome II Regulation if the original acquisition by X (instead of Y) were regarded as the relevant purchase in Scenario 3.

If this case were brought before the courts of a contracting state to the Hague Products Liability Convention, art 5 Hague Products Liability Convention might lead to the application of Belgian law: Belgium was the country of the habitual residence of the victim, who had purchased the product there. If, however, a purchase in a professional chain of distribution were required, art 5 Hague Products Liability Convention would not apply. Then art 4 Hague Products Liability Convention would also lead to Belgian law, since this was the country where the injury occurred and where the person directly suffering damage had his or her habitual residence.

**VI. Jurisdiction**

In EU Member States, jurisdiction in product liability cases is governed by the Brussels I Regulation (recast) (Regulation (EU) No 1215/2012 of the European Parliament and of the Council of 12 December 2012 on jurisdiction and the recognition and enforcement

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

of judgments in civil and commercial matters (recast), [2012] OJ L 351/1; → Brussels I (Convention and Regulation)) or, where applicable, by the → Lugano Convention (Lugano Convention of 30 October 2007 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters, [2007] OJ L 339/3). According to art 4(1) Brussels I Regulation (recast)/2(1) Lugano Convention, persons domiciled in a Member/contracting State will be sued in the courts of that Member/contracting State. A claim for products liability can also be brought, if the claimant so chooses, 'in the courts for the place where the harmful event occurred or may occur' (art 7(2) Brussels I Regulation (recast)/art 5(3) Lugano Convention). According to well-established ECJ case-law, this special jurisdiction is available both at the place where the person claimed to be liable acted and the place where the damage occurred (ie where the protected interest was initially harmed), ECJ C-21/76 *SCJEC Handelskwekerij GJ Bier BV v Mines de Potasse d'Alsace SA* [1976] ECR 1735 (→ Torts).

*1. Place of acting of the person claimed to be liable*

With respect to the 'place of acting' in products liability claims, the ECJ decided that 'in the case where a manufacturer faces a claim of liability for a defective product, the place of the event giving rise to the damage is the place where the product in question was manufactured', ECJ C-45/13 *Andreas Kainz v Pantherwerke AG* [2014] OJ C 85/10. The ECJ reasoned with regard to the rationale of this special jurisdiction that a forum at the place where the product was manufactured 'facilitates, on the grounds of, *inter alia*, the possibility of gathering evidence in order to establish the defect in question, the efficacious conduct of proceedings and, therefore, the sound administration of justice'.

It should be noted that the ECJ did not locate the place of acting at the place where the product was marketed, although this would have been in line with the central role that the place of marketing plays (as 'place of acting') under the Rome II Regulation. The *Kainz* decision thus confirms the restrictive interpretation and the exceptional character of the rules on special jurisdiction in art 7 Brussels I Regulation (recast)/art 5 Lugano Convention. It also emphasizes the independent interpretation of the same legal terms (in the present case: the 'place of acting') for purposes of jurisdiction on the one hand and for purposes of determining the applicable law on the other.

*2. Place where the damage occurred*

The leading products liability case concerning the location of the place of damage under the Brussels I Regulation/Lugano Convention is ECJ C-189/08 *Zuid-Chemie v Philippo's Mineralenfabriek NV/SA* [2009] ECR I-6917: a Dutch company *Zuid-Chemie* used ingredients in its factory in the Netherlands to produce fertilizer, which it then sold and delivered to its customers. *Zuid-Chemie* had purchased the ingredients from another company which in turn had acquired them from a third company, *Philippo's*. *Philippo's* had ordered some raw materials for producing the ingredients from a fourth company. All companies were established in the Netherlands.

*Philippo's* manufactured the ingredients in its factory in Belgium where the final purchaser, *Zuid-Chemie*, came to take delivery of them. It transpired that the raw materials *Philippo's* had purchased from the fourth company were defective, rendering the ingredients produced by *Philippo's* in Belgium, and ultimately the fertilizer produced by *Zuid-Chemie* in the Netherlands, unusable. *Zuid-Chemie* accordingly claimed → damages for the resulting loss from *Philippo's* on an extra-contractual basis.

The parties did not dispute that the place of acting of *Philippos's* was to be located in Belgium, where this company had manufactured the defective ingredient and where it had been delivered to the claimant. The question was rather where to locate the place where the claimant's damage had occurred.

The ECJ held that 'the place where the damage occurred cannot be any other than Zuid-Chemie's factory in the Netherlands where the [ingredient], which is the defective product, was processed into fertiliser, causing substantial damage to that fertiliser which was suffered by Zuid-Chemie and which went beyond the damage to the [ingredient] itself'.

**VII. Conclusions**

Designating the applicable law in product liability cases has always been regarded as particularly difficult, and the range of solutions that were applied in the different jurisdictions

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

before the entry into force of the Rome II Regulation was particularly broad. Article 5 of the Rome II Regulation combines several criteria that must be fulfilled in order to arrive at the applicable law and thereby reaches finely tuned and well-balanced results. In the field of products liability, as in many others, the Rome II Regulation has thus brought much needed clarifications thereby contributing to legal certainty and predictability of the applicable law.

THOMAS KADNER GRAZIANO

### Literature

(see also → Torts; → Rome II Regulation (non-contractual obligations))

James J Fawcett, 'Products Liability in Private international law: A European Perspective' (1993-I) 238 Rec. des Cours 9; Trevor Hartley, 'Choice of Law for Non-contractual Liability: Selected Problems under the Rome II Regulation' (2008) ICLQ 899; Martin Illmer, 'The New European Private international law of Product Liability – Steering Through Troubled Waters' (2009) 73 RabelsZ 269; Thomas Kadner Graziano and Matthias Erhardt, 'Cross-Border Damage Caused by Genetically Modified Organisms: Jurisdiction and Applicable Law' in Bernhard Koch (ed), *Damage Caused by Genetically Modified Organisms* (De Gruyter 2010) 784; Thomas Kadner Graziano, 'The Law Applicable to Product Liability: The Present State of the Law in Europe and Current Proposals for Reform' (2005) ICLQ 475; Thomas Kadner Graziano, 'Le nouveau droit international privé communautaire en matière de responsabilité extracontractuelle' (2008) Rev. crit.DIP 445; Thomas Kadner Graziano, *La responsabilité délictuelle en droit international privé européen* (Helbing Lichtenhahn – Bruylant – L.G.D.J. 2004) 61; Thomas Kadner Graziano, *Europäisches Internationales Deliktsrecht* (Mohr Siebeck 2003) 63; Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht – Harmonisierung des IPR durch Wissenschaft und Lehre (am Beispiel der ausservertraglichen Haftung für Schäden)* (Mohr Siebeck 2002) 258; P John Kozyris, 'Values and Methods in Choice of Law for Products Liability: A Comparative Comment on Statutory Solutions' (1990) 38 Am.J.Comp.L. 475; Jan Kropholler and others, *Aussereuropäische IPR-Gesetze*, (Deutsches Notarinstitut/Max-Planck-Institut für ausländisches und internationales Privatrecht 1999); Willis LM Reese, 'The Hague Convention on the Law Applicable to Products Liability' (1974) 8 Int'l Law. 606; Willis LM Reese, 'Further Comments on The Hague Convention on the Law Applicable to Products Liability' (1978) 8 Ga.J.Int'l.& Comp.L. 311; Symeon C Symeonides, 'Choice of Law for Products Liability: The 1990s and Beyond' (2004) Tul.L.Rev. 1247; Symeon Symeonides, 'Party Choice in Product-Liability Conflicts' (2004) Willamette J. Int'l L. & Disp. Resol. 263; Russel Weintraub, *Commentary on the Conflict of Laws* (6th edn, Foundation Press/ThomsonReuters 2010) § 6.31 *et seq*; see also the references in <www.hcch.net/index_de.php?act=conventions.publications&dtid=1&cid=84>.

THOMAS KADNER GRAZIANO / ALEXANDER LAYTON AND ALBERT DINELLI

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:45:53AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING