# EXHIBIT 8

# Torts

## I. Introduction

On the substantive law level, rules on extra-contractual liability, tort or delict vary considerably between countries (for detailed information on the substantive tort law regimes, see the publications of the European Group on Tort Law, available at <www.egtl.org> and of the European Centre of Tort and Insurance Law (ECTIL), and in particular the Digests and Yearbooks on European Tort Law, available at <www.ectil.org>; see also Christian von Bar, Eric Clive and Hans Schulte-Nölke (eds), *Principles, Definitions and Model Rules of European Private Law: Draft Common Frame of Reference*, vol 4 (Sellier 2009); Walter van Gerven, Pierre Larouche and Jeremy Lever, *Cases, Materials and Text on National, Supranational and International Tort Law* (Hart Publishing 2000); Cees van Dam, *European Tort Law* (2nd edn, OUP 2013)). Thus it is often crucial in cross-border tort cases to know which national liability system applies. In private international law, the law of torts was for a long time overshadowed by criminal liability and for centuries remained a neglected topic. However, this changed drastically in the second half of the 20th century as the number of cross-border situations involving non-contractual liability multiplied. Road traffic accidents abroad (→ Traffic accidents), sports accidents in foreign countries, damage caused by defective products (→ Products liability), cross-border environmental damage (→ Environmental liability),  acts restricting free competition in an international context, cross-border infringements of intellectual property rights (→ Intellectual property, applicable law), as well as infringements of privacy rights by media (printed or online) have multiplied and have come into the focus of private international law. Following the multiplication of situations raising issues of applicable law, the private international law rules on torts became more differentiated and more specific rules were introduced in numerous countries, either by means of legislation or through case-law. These rules differed from one jurisdiction to another in many respects (see Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht (am Beispiel der ausservertraglichen Haftung für Schäden)* (Mohr Siebeck 2002); Thomas Kadner Graziano, *Europäisches Internationales Deliktsrecht* (Mohr Siebeck 2003); Thomas Kadner Graziano, *La responsabilité délictuelle en droit international privé européen* (Helbing Lichtenhahn 2004)). On a European scale, the existence of rules designating different applicable laws meant that the outcome of a particular case could vary according to the forum in which the case was brought. This in turn led to considerable uncertainty and a lack of predictability of the applicable law. In such circumstances, claimants and their lawyers had the opportunity to assess their options and choose the most favourable forum, engaging in what is termed 'forum shopping' (→ Forum (and law) shopping).

This state of the law was considered unsatisfactory and initiatives were taken to unify private international law rules in the field of torts, initially by the → Hague Conference on Private international law, then by the EC and later the EU.

Two Hague Conventions were adopted, one on the law applicable to traffic accidents (Hague Convention of 4 May 1971 on the law applicable to traffic accidents, 965 UNTS 415, Hague Traffic Accident Convention), the other designating the law applicable to products liability (Hague Convention of 2 October 1973 on the law applicable to products liability, 1056 UNTS 191, Hague Products Liability Convention; text and status charts available at <www.hcch.net>). While the Hague Traffic Accident Convention has been highly successful with 21 contracting states (→ Traffic accidents), the Hague Products Liability Convention has been less so, with 11 contracting states (→ Products liability).

TOSHIYUKI KONO / THOMAS KADNER GRAZIANO

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

In 2009, the → Rome II Regulation (Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 on the law applicable to non-contractual obligations (Rome II), [2007] OJ L 199/40) entered into force in the EU Member States. It has universal application and so applies even when the designated law is not that of an EU Member State. The Rome II Regulation introduced, for the first time in modern history, common rules setting out the applicable law in non-contractual matters in all EU Member States except Denmark. It designates the same national law, irrespective of the country where the case is brought. For the issues covered, Rome II establishes foreseeability of the outcome, creates legal certainty as to the applicable law, and eliminates forum shopping within Europe.

However, according to art 28(1) of the Rome II Regulation, the two Hague Conventions on traffic accidents (→ Traffic accidents) and product liability (→ Products liability) prevail over the Regulation in their respective contracting states. With respect to traffic accidents and to products liability, two different sets of private international law rules thus coexist within Europe. For these two areas of considerable practical importance, the unification of private international law rules by the Rome II Regulation so far remains only partial.

**II. General principles of private international law of torts**

Specific chapters in this Encyclopedia are dedicated to the Rome II Regulation, to traffic accidents and to product liability. This chapter will instead focus on general principles of private international law of torts, as they have evolved over the centuries (see II.1. below) or during the second half of the 20th century (see II.2. to II.4. below).

*1. The* lex loci delicti commissi *rule*

The first principle of almost global importance to be identified in the private international law of tort is the application of the law of the place where the tort was committed, the so-called *lex loci delicti commissi* rule. From the beginning of private international law in the 12th and 13th centuries until well into the 20th century, the *lex loci delicti rule* was seen on the European continent as the (only) reasonable rule to follow in torts. It thus ranks among the oldest rules of private international law. However, until the mid-19th century, the legal analysis often focused on the question of which law to apply to criminal sanctions, while compensation was regarded as a secondary issue, governed by the law applicable in criminal law. In the 19th and the 20th centuries, when accident and compensation law was emancipated from criminal law, new statutes and case-law endorsed the *lex loci delicti* rule for compensatory tort claims in continental Europe and eg South America. Before the entry into force of the → Rome II Regulation, and despite modern tendencies towards more specific or more flexible rules, the *lex loci* rule was in force in almost all European countries from → Poland to → Portugal, from the → Netherlands to → Greece, and from England (→ United Kingdom) to the Baltic States (→ Estonia, → Latvia, → Lithuania) and Russia (→ Russian Federation). The same is true for the private international law of torts in many jurisdictions around the world. The Hague Traffic Accident Convention (→ Traffic accidents) and the → Rome II Regulation also retain the place of the accident as a central criterion for determining the law applicable in torts.

The place where the tort was committed is currently used as the general rule, for example, in art 4(1) Rome II Regulation, art 3 Hague Traffic Accident Convention, art 1219(1) Russian Civil Code (The Civil Code of the Russian Federation of 26 November 2001, No 146-FZ – Part 3, as amended by Federal Law No 260-FZ of 30 September 2013, henceforth Russian CC), art 1129(1) Civil Code of Belarus (Law No 218-Z of 7 December 1998, henceforth Belarus CC), art 17(1) Japanese Act on General Rules for Application of Laws (Hōno Tekiyō ni Kansuru Tsūsokuhō, Law No 10 of 1898, as newly titled and amended by Act No 78 of 21 June 2006, henceforth Japanese PILA), art 44 Law of the People's Republic of China on the Laws Applicable to Foreign-Related Civil Relations (Statute of Application of Law to Foreign Civil Relations adopted at the 17th session of the Standing Committee of the 11th National People's Congress on 28 October 2010, effective 1 April 2011, henceforth Chinese PILA). Other examples are art 3126(1) Civil Code of Québec (L.Q. 1991, ch 64, henceforth Québec CC); art 21 first sentence Civil Code of Egypt (Law No 131/1948 of 16 July 1948, al qānūn al

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

madanī); arts 70 and 73(1) Tunisian Code of Private international law (Law No 98-97 of 27 November 1998, Official Journal of the Republic of Tunisia, 1 December, p 2332, henceforth Tunisian PILA); art 20(1) Civil Code of Algeria (Ordonnance No 75-58 du 20 Ramadhan correspondant au 26 septembre 1975 portant code civil, modifiée et complétée) and § 13 Civil Foreign Relations Act of South Korea (Law No 966 of 15 January 1962 and Law No 6465 of 7 April 2001, Amending the Conflict of Laws Act of the Republic of Korea). In other jurisdictions, the *lex loci delicti* is applied as a default rule, used where no other, more specific → connecting factors apply. This is the case in art 133(2) Swiss Private international law Act (Bundesgesetz über das Internationale Privatrecht of 18 December 1987, 1988 BBl I 5, as amended, henceforth Swiss PILA). In the USA, the *lex loci* rule was followed unanimously until the mid-1960s.

There is a strong rationale for the *lex loci delicti* rule. First, in situations where the parties had no contact with each other before the damaging event occurred, which is the case eg in many road traffic accidents or sports accidents, the place of the accident is the only link between them. Second, the law of the place of the tort or accident is simple to apply, efficient and favours legal certainty. Parties know even before a tort is committed which law will apply to potential liability, and they might adapt their insurance cover accordingly. Third, application of the *lex loci delicti* is a neutral solution favouring neither party. Fourth, it is in conformity with the interests of the state in which the damage occurred to have certain victims of accidents compensated, particularly those resident there. Lastly, this solution generally corresponds to the parties' expectations and interests, and is usually fair and recognized as such by the parties.

### 2. *Exceptions to the* lex loci delicti *rule*

A second general principle common to almost all modern systems on private international law of torts is that, under certain circumstances, exceptions are made to the *lex loci delicti* rule. In a series of influential publications from the 1950s onwards, proposals were made to deviate from the *lex loci delicti* in cases where the victim on the one hand and the person claimed to be liable on the other originated from the same jurisdiction or lived in the same legal environment, distinct from the one in force at the place of the tort (see JHC Morris, 'The Proper Law of Tort' [1951] Harv.L.Rev. 881–95; Heinz Binder, 'Zur Auflockerung des Deliktsstatuts (1955) 20 RabelsZ 401–99; Pierre Bourel, *Les conflits de lois en matière d'obligations extracontractuelles* (Bruylant 1961), 45 *et seq*; Jan Kropholler, 'Ein Anknüpfungssystem für das Deliktsstatut' (1969) 33 RabelsZ 601–53).

The single most famous case illustrating this development is certainly the New York Court of Appeals case *Babcock v Jackson*, 191 N.E.2d 279 (NY 1963). The *Jacksons*, a couple from New York, went with a friend, *Babcock*, on a trip by car from New York to Ontario, Canada, where they had a traffic accident. *Babcock* sued *Jackson*, the driver of the car, before the courts in New York, claiming that *Jackson* had negligently caused the accident. The law of Ontario, ie the law of the place of the accident, prohibited a passenger from suing the driver, so that under the *lex loci delicti* rule, then applicable in New York, the claim would have failed. The law of New York, on the contrary, provided no such → immunity. The court found that the parties lacked a substantial connection with Ontario and that application of the *lex loci delicti* under the circumstances would be fortuitous and unfair. Accordingly the court held that the jurisdiction most closely connected to the case was New York and applied New York law.

In later years, exceptions were made in the large majority of European jurisdictions, either through legislation or case-law. Only a few countries (such as → France, → Spain, → Greece, → Sweden and → Denmark) continued to apply the *lex loci delicti* rule without exception. In other countries, deviations from the *lex loci* rule were made particularly in cases where the parties had their habitual residence in the same jurisdiction when the damage occurred, or where the parties were linked in a close relationship, such as by contract, which the tort violated; in this case, the law governing this relationship was also applied to tortious liability (the so-called *rattachement accessoire* or accessory connection mechanism).

The → Rome II Regulation follows these examples and provides for exceptions to the *lex loci delicti* rule pursuant to art 4(2) where the parties have their habitual residence in the same country, or pursuant to art 4(3) where there is a manifestly closer connection with another country, in particular a pre-existing

THOMAS KANDER GRAZIANO

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

relationship between the parties, such as a contractual relationship.

An exception where the parties have their habitual residence in the same state was already made in art 133(1) Swiss PILA, and is today also to be found for example in art 1219(2) Russian CC, art 20 Japanese PILA, art 44 2 Chinese PILA, art 3126(2) Québec CC and in art 70(3) Tunisian PILA. Thus, the common habitual residence exception is today a standard feature of modern codifications, whereas the *rattachement accessoire* is less widespread, and exists for example in art 133(3) of the Swiss PILA, art 20 Japanese PILA, and in art 3127 Québec CC.

There are good reasons for making exceptions to the *lex loci delicti* principle. A rule designating the law of the parties' common habitual residence has the advantage that the applicable tort rules are familiar to parties by virtue of their both living in this jurisdiction. Additionally, this is the jurisdiction in which the parties will bear the consequences of the tort. Under the exception rule, the accident is thus treated as though it had occurred in the state in which the parties are habitually resident. The more superficial the link between the parties and the place of accident, the more justified this exception to the *lex loci delicti* rule appears.

There is also a strong rationale for applying the law governing contractual relations to a potential claim in torts, ie to practise *rattachement accessoire*. Many national tort law regimes, such as English, German, Swiss or Italian law, allow concurrent actions in contract and tort. In domestic law, the systems of contractual and extra-contractual liability are usually well-coordinated. Given that the private international law rules for tortious and contractual matters differ (for example, the habitual residence of the seller or service provider in contractual matters, and the *lex loci delicti* in tort), the application of different private international law rules in contract and tort may lead to contract and tort claims between the parties being governed by different laws, even though they are based on the same facts and events. This risks undermining the balance that exists in each national system between claims in contracts and torts. On the other hand, the accessory connection mechanism leads to the application of one single law for all claims between the parties and avoids friction between the two liability systems. Lastly, this exception is generally in line with the parties' expectation that their relationships will be governed by the law of a single jurisdiction.

In Europe, the conditions for making exceptions to the *lex loci* rule are thus clearly defined. The development took another direction in the USA. Following scenarios such as that in *Babcock v Jackson*, the *lex loci* rule was replaced in many states by a flexible, policy-oriented case-by-case analysis taking into consideration a wide range of interests and policies. Accordingly, § 6(2) Restatement (Second) of Conflict of Laws (American Law Institute, Restatement of the Law, Second: Conflict of Laws 2d, St. Paul 1971; → Restatement (First and Second) of Conflict of Laws) provides that

> [t]he factors relevant to the choice of the applicable law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

The price of such an open-ended approach in US private international law is a considerable lack of foreseeability regarding the law applicable in torts.

### 3. Party autonomy

Since the late 1970s, → party autonomy has occupied an ever-increasing place in statutory provisions in the European private international law of tort. Practically all modern European statutes that expressly addressed this issue from the 1980s onwards allowed to a certain extent the parties to choose the applicable law in tort. Some national systems provided the choice only after the tort had occurred (→ Germany, → Belgium, → Lithuania, Russia, and outside Europe the Tunisian PILA). The Swiss PILA and the Japanese PILA allow an *ex post* choice of the *lex fori*.

In other countries, the parties were free to choose the applicable law both *ex ante* and *ex post*, ie before or after the injury occurred, provided they were already in contact at that time (→ Austria, → Liechtenstein and the → Netherlands). Article 14 Rome II Regulation follows this development. Under the Rome II Regulation, the parties are free to choose *ex*

THOMAS KADNER GRAZIANO

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

*post* and under certain circumstances also *ex ante*. They may choose the law of the forum or any law they consider appropriate to govern their relationships (→ Rome II Regulation). Consequently, when applying Rome II, the first question to be asked is whether the parties have agreed on the applicable law.

Some scholars have predicted that rules on party autonomy will turn out to remain dead letter in the field of torts given that the chosen law would necessarily favour one party so that the other would never agree to the choice. However, European case-law proves the contrary. In what is probably the most famous case in the European private international law of torts (Rechtbank Rotterdam, 23 September 1988, *Bier v Mines de Potasse d'Alsace* [1989] NJ 743, [1989] RabelsZ 699; Case C-21/76 *SCJEC Handelskwekerij GJ Bier BV v Mines de Potasse d'Alsace SA* [1976] ECR 1735), the *Mines de potasse d'Alsace*, situated in France, had released saline residue into the Rhine. A Dutch horticultural company which used water from the river for irrigation purposes was consequently forced to install a water purification system. The Dutch claimants brought a claim for → damages and an injunction against the *Mines de Potasse d'Alsace* before the Dutch courts. At the first stage of proceedings, each party wanted the law of its own country to apply. However, the parties eventually agreed on the application of Dutch law. This was because application of a foreign law could not be appealed against before the Dutch courts, so that by choosing Dutch law the parties left open the possibility of a review of the application of the substantive law by the higher courts.

This case illustrates that choosing the applicable law, particularly the law of the forum, may constitute an attractive option for parties, largely for reasons of procedure and practical convenience. Even parties for whom the chosen substantive law initially appears somewhat unfavourable may have good reason to agree upon the choice. This is the case, for example, if the chosen law can be more quickly, easily and reliably established than the law which would apply in the absence of choice, thus reducing the costs of litigation, or it may provide specific presumptions that ease a party's → burden of proof. Choosing the law of the forum is also an attractive option when, as in *Bier*, application of a foreign law cannot be appealed against. Consequently, for practical purposes, reaching agreement on the applicable law may be an attractive option in almost all cases where the private international law of the forum would lead to application of a foreign law.

There are good reasons to extend the party freedom of choice to a choice *ex ante*, as provided under certain circumstances in art 14(1)(b) Rome II Regulation. Where there is a pre-tortious relationship between the parties, in particular where they are bound by a contract (such as a complex construction contract or where they are in an ongoing business relationship), they may have an interest in determining in advance the law applicable to all their relationships, including future extra-contractual liability. An *ex ante* choice of the applicable law means that the parties are clear on the applicable liability law from the outset. The parties will consequently have the possibility to submit all their legal relations, contractual and non-contractual, to a single law.

It is true that the *rattachement accessoire*, or accessory connection mechanism (see II.2. above), often also indirectly leads to the result that the law governing the contractual relationship between the parties will eventually apply to their liability in tort. It therefore has been questioned whether there is a need to also permit *ex ante* choice of law in tort and delict.

However, a rule that extends → party autonomy in tort to the choice of the applicable law *ex ante* and that clearly defines the limits of this freedom is preferable to introducing party autonomy only 'through the backdoor'. Such a rule provides the parties with precise information necessary for them to organize their relationships efficiently and also reinforces legal certainty. Finally, rules on the *ex ante* choice of law in tort are needed where the parties' contractual relations are governed by international uniform contract law, in particular by the United Nations Convention on Contracts for the International Sale of Goods (United Nations Convention of 11 April 1980 on Contracts for the International Sale of Goods, 1489 UNTS 3; → CISG), or where the parties have agreed to submit their contractual relations to non-state rules such as the European Principles of Contract Law or the UNIDROIT Principles of International Commercial Contracts (International Institute for the Unification of Private Law/Institut international pour l'unification du droit privé (ed), UNIDROIT Principles of International Commercial Contracts 2010 (3rd edn, UNIDROIT 2010)). In the future, the same need could arise where parties choose to apply a future EU instrument

Thomas Kander Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

on contract law. Given that neither the → CISG nor these non-state rules contain provisions on tort or delict, an accessory connection is ruled out when these contractual regimes apply. Finally, given that the injured party always has the possibility to decide whether to bring a claim at all and that parties can compromise and settle out of court, the injured party should also be able to determine the applicable law in agreement with the person claimed to be liable. Ultimately, the parties are best placed to know which applicable law would most effectively protect their interests and lead to the desired outcome. Hence, there are indeed good reasons for party autonomy in the private international law of torts.

Before entry into force of the Rome II Regulation, when parties argued in the course of the proceedings on the basis of the *lex fori*, courts in some jurisdictions inferred from this an implied tacit choice in favour of the law of the forum. Article 14(1) second sentence Rome II Regulation requires that the choice of law 'shall be expressed or demonstrated with reasonable certainty by the circumstances of the case', ruling out such a practice, and rightly so. In reality, courts and lawyers still often overlook the impact of private international law and, in particular, the potential application of a foreign law. Inferring a choice of law from mere silence would therefore constitute a sheer fiction with no relation to actual party intentions in many cases.

Finally, modern statutes accepting party autonomy in torts expressly state that the choice of the applicable law may not prejudice third-party rights. These provisions relate in particular to the insurer of the tortfeasor, see for example art 14(1) *in fine* Rome II Regulation or art 21 second sentence Japanese PILA.

### 4. Complex torts

A fourth significant development in the private international law of torts took place in the last decades of the 20th century regarding so-called 'complex torts'.

In the absence of a choice of the applicable law by the parties (see II.3. above), tortious liability is generally governed by the law of the place where the tort was committed, the *lex loci delicti* (see II.1. above). In the most common cases of extra-contractual liability, the place where the person committing a tort or delict either acts, or refrains from acting, is also the place where the damage occurs. This is true of road traffic accidents (→ Traffic accidents) and of sports accidents. In other situations, there is a distance in time and space between one person's behaviour and the resulting damage to another. When the event giving rise to damage takes place entirely or partly in one jurisdiction but the damage occurs in one or several other jurisdictions, we speak of a 'double or multiple locality case', 'multilocal tort' or 'complex tort' (*Distanzdelikt*, *délit à distance*, *illeciti complessi* or *a distanza*, *afstandsdelicten*, *ilícitos a distancia*). Determining the law that is to govern complex torts has proven to be one of the most difficult issues in the private international law of torts in the 20th century.

#### a) Complex torts in general

When the event giving rise to damage takes place in one jurisdiction and the damage occurs in another, the question is whether (i) the law of the place where the person claimed to be liable acted should apply, or rather (ii) the law of the place where the injury to the protected interest occurred, or alternatively (iii) whether both criteria should be combined and the tort localized at both places (so-called rule of ubiquity), and the law most favourable to the victim be applied. The second fundamental question is whether the criteria for torts in general should apply to all categories of complex torts, or whether, for different categories of complex torts, separate and more specific rules are needed (below, II.4.b)).

In the late 19th and early 20th centuries, applying the law of the place of acting was so widespread on the European continent that it was considered 'the civil law rule' for complex torts (Ernst Rabel, *The Conflict of Laws: A Comparative Study*, vol 2 (2nd edn, University of Michigan Press 1960) 303–304). On the other hand, from the 1880s onwards, German courts applied a rule of ubiquity, leading to the application of the law most favourable to the victim. In the 20th century, jurisdictions in central and eastern European countries applied similar ubiquity rules. In 1976, the ubiquity rule was adopted by the ECJ in the seminal *Bier* case (Case C-21/76, [1976] ECR 1735) for the purpose of jurisdiction under what is now art 7(2) of the Brussels I Regulation (recast) (Regulation (EU) No 1215/2012 of the European Parliament and of the Council of 12 December 2012 on jurisdiction and the recognition and enforcement of judgments in civil and

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

commercial matters (recast), [2012] OJ L 351/1; → Brussels I (Convention and Regulation)). With respect to the applicable law, however, in the second half of the 20th century, applying the law of the place of injury became increasingly widespread in Europe, and this solution was eventually adopted in the Rome II Regulation: according to art 4(1) Rome II Regulation, complex torts are ordinarily to be governed by the law 'of the country in which the damage occurs irrespective of the country in which the event giving rise to the damage occurred and irrespective of the country or countries in which the indirect consequences of the event occur'. If the damage occurs in several countries, the laws of these countries will be applied to the damage that occurred in each country respectively (the so-called *application distributive* or mosaic principle).

There are numerous reasons for applying the law of the place of injury as opposed to that of the place of acting or a rule of ubiquity: a person causing damage in a foreign country must conform to the rules of the country in which his actions produce their effects. In fact, every actor must take into consideration the potential victims' legitimate expectations to be protected according to the level of protection provided by the law of the state where his goods and interests are located and the injury occurs. Moreover, from a prevention and deterrence perspective, the law of the place where the damage occurred is the most appropriate, in that national tort laws are in principle directed at behaviour that has its effects within the territory of the state in question. This means that actions with consequences in another country ought to be governed by the tort law rules in force in the place where the damage occurs. The preventive function of the substantive tort law of this country would be lost if persons acting from abroad had to comply only with the rules of the country in which they are acting. Accordingly, both the compensatory and the preventive functions of tort law favour application of the law of the place where the damage occurs.

For these reasons, the place of injury rule (as opposed to the place of acting rule or ubiquity rules) is also gaining wider acceptance in other jurisdictions worldwide, for example it was recently adopted in art 17 Japanese PILA and in art 44 of the Chinese PILA.

For cross-border torts caused by omission, this signifies that the determining factor is to be not the place where the alleged tortfeasor ought to have acted, but rather the place where the damage he ought to have prevented occurs.

In Europe, there has always been a widespread consensus that neither the place where purely preparatory acts took place nor the place where consequential damage occurred are to be taken into consideration when determining jurisdiction and the applicable law in tort. If, for example, an Italian citizen undergoes surgery in Hungary, and complications occur after his return to Italy entailing further medical treatment, then the place of injury relevant for determining jurisdiction and the law applicable for a claim in tort is Hungary, and not Italy where the consequential damage occurred (see for the purpose of jurisdiction also: Case C-364/93 *Antonio Marinari v Lloyd's Bank plc and Zubaidi Trading Co* [1995] ECR I-2719; Case C-220/88 *Dumez France SA and Tracoba SARL v Hessische Landesbank* [1990] ECR I-49; art 4(1) *in fine* of the Rome II Regulation). If, in Spain, a motor boat driven by a Belgian collides with a Frenchman who is harpoon fishing, leading to amputation of the victim's arm or leg, and if the victim is subsequently hospitalized in Nice where he later dies as a result of the accident, then Spanish courts (as opposed to French) would have jurisdiction under art 7 no 2 of the Brussels I Regulation (recast), and a claim brought by the widow in tort for damages to herself and any children would be governed by Spanish (as opposed to French) law, ie by the law of the place of the accident and of the initial injury (compare the scenario of the French case – Cour de Cassation, 21 October 1981, Bull. civ., I., no 303).

*b) Specific rules for specific torts*
Complex torts occur frequently in cases of products liability, environmental damage, violations of privacy and other → personality rights (in particular by mass media and/or via the Internet), unfair competition and infringements of intellectual property rights. In these categories of cases, the criteria of the 'place where the damage occurred' is, as a → connecting factor, frequently vague. It is, for example, far from clear where the damage is to be localized for violations of personality rights through mass media, infringements of intellectual property rights or in situations of cross-border unfair competition. For several specific categories of complex torts, the place of the tort (the *locus delicti*) either needs

THOMAS KANDER GRAZIANO

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

further specification or is simply inadequate, as in the case of products liability (→ Products liability).

In the second half of the 20th century, the conviction that certain categories of complex torts need to be governed by specific rules has gained ground in many jurisdictions. Introducing such specific rules became one of the most important developments in the private international law of torts. The development started with the Swiss PILA, which provides specific rules for products liability, unfair competition, restrictions of trade, damage to the environment, violations of personality rights and infringements of intellectual property rights. Before the entry into force of the Rome II Regulation, specific rules for complex torts were also introduced in varying numbers in → Austria, → Belgium, → Italy, → Liechtenstein, the → Netherlands, → Spain, and in many central and eastern European countries, such as → Lithuania, → Estonia, → Romania, Russia (→ Russian Federation) and → Belarus (for references, see Marc Fallon, 'The Law Applicable to Specific Torts' in Jürgen Basedow, Harald Baum and Yuko Nishitani (eds), *Japanese and European Private international law in Comparative Perspective* (Mohr Siebeck 2008) 261–77; Thomas Kadner Graziano, *Europäisches Internationales Deliktsrecht* (Mohr Siebeck 2003) 55–109; Thomas Kadner Graziano, *La responsabilité délictuelle en droit international privé européen* (Helbing Lichtenhahn 2004) 54–103; Thomas Kadner Graziano, 'General Principles of Private international law of Tort in Europe' in Jürgen Basedow, Harald Baum and Yuko Nishitani (eds), *Japanese and European Private international law in Comparative Perspective* (Mohr Siebeck 2008) 254–6).

In countries that did not adopt specific rules for the various categories of complex torts, eg → France, considerable uncertainty persisted before entry into force of the Rome II Regulation with respect to the law applicable to complex torts.

With a view to improving predictability and legal certainty regarding the applicable law, and in accordance with the above-mentioned trend towards specific rules for different categories of complex torts, arts 5 to 9 Rome II Regulation provide rules for products liability (→ Products liability), unfair competition and acts restricting free competition, environmental damage, infringement of intellectual property rights and industrial action (→ Rome II Regulation). The Regulation thereby contributes significantly to predictability of the applicable law and to legal certainty.

On the other hand, no agreement could be reached on the intricate question of which law to apply to infringements of personality rights, including infringements via the Internet. The Rome II Regulation currently expressly excludes this issue from its scope of application, pursuant to art 1(1)(g). Consequently, the traditional private international law rules on torts continue to apply in each country (for these rules, varying considerably between countries, see with references, Thomas Kadner Graziano, *Europäisches Internationales Deliktsrecht* (Mohr Siebeck 2003) 79–90; Thomas Kadner Graziano, *La responsabilité délictuelle en droit international privé européen* (Helbing Lichtenhahn 2004) 75–86).

In other parts of the world, legislatures also took the position that at least some specific torts need to be governed by specific rules. Both the new Japanese PILA and the new Chinese PILA provide specific rules for the two most difficult issues of complex torts, ie product liability (art 19 Japanese PILA; art 45 Chinese PILA) and defamation (art 20 Japanese PILA; art 46 Chinese PILA). The Chinese Act further contains specific rules on infringements of intellectual property rights (arts 48–50). Special rules on products liability are further found in art 1221 Russian CC, art 1130 Belarus CC, art 3128 Québec CC and in art 72 of the Tunisian PILA. Article 1222 of the Russian CC further contains a rule on unfair competition.

### III. Conclusions

For many centuries, the *lex loci delicti* rule was considered the only reasonable rule to follow in the private international law of torts. From the 1950s onwards, in certain situations the *lex loci* rule was considered too rigid. In many countries, deviations from the *lex loci* rule were made, particularly in cases where the parties both had their habitual residence in the same country when the damage occurred, or where the parties were in a close relationship, such as a contractual relationship, which the tort violated. In these situations, the law governing this relationship was also applied to tortious liability.

From the 1980s onwards, → party autonomy gained ground in the European private international law of torts. Initially an *ex post*

Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING

choice of the applicable law was recognized. Later, in situations where the parties were in contact before the damaging event occurred, the option to choose the applicable law in tort *ex ante* was, under certain circumstances, accepted.

Other important developments took place with regard to complex torts. In the early 20th century, many courts in Europe applied the law of the place of acting to potential liability in tort. In other countries the tort was located both at the place where the alleged tortfeasor had acted and the place where the protected interest suffered injury. This so-called ubiquity rule continues to apply with respect to jurisdiction under the Brussels I Regulation (recast) (→ Brussels I (Convention and Regulation)) and the → Lugano Convention (Lugano Convention of 30 October 2007 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters, [2007] OJ L 339/3). With regard to the applicable law, in a growing number of jurisdictions and under the Rome II Regulation, complex torts are for many good reasons governed by the law of the place where the injury occurred (as opposed to the place where the alleged tortfeasor has acted). In the second half of the 20th century, introducing special rules for separate categories of complex torts became a further and possibly the most important development in the private international law of torts.

All these developments have led to numerous clarifications and principled refinement of the rules in torts, thereby contributing to legal certainty. The Rome II Regulation adopted all of these modern developments. Since its entry into force, the discussions and deliberations in this field take place on a higher, more sophisticated level, allowing the achievement of more justice and fairness in transnational tort cases.

Thomas Kadner Graziano

### Literature

Jürgen Basedow, Harald Baum and Yuko Nishitani (eds), *Japanese and European Private international law in Comparative Perspective* (Mohr Siebeck 2008); William Binchy and John Ahern (eds), *The Rome II Regulation on the Law Applicable to Non-Contractual Obligations: A New Tort Litigation Regime* (Martinus Nijhoff 2009); Andrew Dickinson, *The Rome II Regulation on the Law Applicable to Non-Contractual Obligations* (OUP 2008); Marc Fallon, 'The Law Applicable to Specific Torts' in Jürgen Basedow, Harald Baum and Yuko Nishitani (eds), *Japanese and European Private international law in Comparative Perspective* (Mohr Siebeck 2008) 261; Jan von Hein, 'Protecting Victims of Cross-Border Torts under Article 7 No. 2 Brussels I *bis*: Towards a More Differentiated and Balanced Approach' [2014/2015] YbPIL 241; Jin Huang and others, 'The Chinese Private international law Act: Some Selected Issues' [2012/2013] YbPIL 269; Thomas Kadner Graziano, *Gemeineuropäisches Internationales Privatrecht (am Beispiel der ausservertraglichen Haftung für Schäden)* (Mohr Siebeck 2002); Thomas Kadner Graziano, *Europäisches Internationales Deliktsrecht* (Mohr Siebeck 2003); Thomas Kadner Graziano, *La responsabilité délictuelle en droit international privé européen* (Helbing Lichtenhahn 2004); Thomas Kadner Graziano, 'General Principles of Private international law of Tort in Europe' in Jürgen Basedow, Harald Baum and Yuko Nishitani (eds), *Japanese and European Private international law in Comparative Perspective* (Mohr Siebeck 2008) 243; Thomas Kadner Graziano, 'Freedom to Choose the Applicable Law in Tort: Articles 14 and 4(3) of the Rome II Regulation' in William Binchy and John Ahern (eds), *The Rome II Regulation on the Law Applicable to Non-Contractual Obligations* (Martinus Nijhoff 2009) 113; Jan Kropholler and others, *Aussereuropäische IPR-Gesetze, Textausgabe* (Deutsches Notarinstitut und Max-Planck-Institut für ausländisches und Internationales Privatrecht 1999); JHC Morris, 'The Proper Law of Tort' [1951] Harv.L.Rev. 881; Yasuhiro Okuda, 'New Provisions on International Jurisdiction of Japanese Courts' [2011] YbPIL 367; Michel Reymond, *La Compétence internationale en cas d'atteinte à la personalité par Internet* (Schwethness 2015); Symeon Symeonides, 'Rome II and Tort Conflicts: A Missed Opportunity' [2008] Am.J.Comp.L. 173; Symeon Symeonides, 'Party Autonomy in Rome I and II from a Comparative Perspective' in Katharina Boele-Woelki and others (eds), *Convergence and Divergence in Private international law: Liber Amicorum Kurt Siehr* (Schulthess 2010) 513; also published in [2010] *Nederlands Internationaal Privaatrecht* 191; Russell J Weintraub, *Commentary on the Conflict of Laws* (6th edn, Foundation Press/Thomson Reuters 2010) ch 6.

Thomas Kadner Graziano / Thomas Kadner Graziano

Jürgen Basedow, Giesela Rühl, Franco Ferrari and Pedro de Miguel Asensio - 9781782547228
Downloaded from Elgar Online at 10/20/2017 09:46:43AM by info@e-elgar.co.uk
via Material in Copyright strictly NOT FOR DISTRIBUTION, SHARING or POSTING