**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Civil Action No. 1:21-CV-11269-FDS |
| | ) |
| SMITH & WESSON BRANDS, INC., ET AL., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**DEFENDANT STURM, RUGER'S  REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(2)**

**INTRODUCTION**

In response to Ruger's motion to dismiss, the Mexican Government was required to present material of an evidentiary quality demonstrating that the harm it has allegedly sustained as the result of criminal violence in Mexico arises out of or relates to Ruger's lawful sales of firearms to federally licensed wholesale firearm distributors doing business in Massachusetts.  It has failed to do so. Instead, the Mexican Government stands on factually unadorned allegations in its Complaint and an expert's report that does not address the primary jurisdictional issue before the Court: whether Ruger's contacts with Massachusetts are sufficiently related to the causes of action the Mexican Government has pled to subject Ruger to specific personal jurisdiction in this case. As demonstrated below, the Mexican Government has failed to meet its prima facie burden and, accordingly, Ruger's motion should be granted.

**ARGUMENT**

**I.      The Mexican Government's assertion that Ruger "imposes unlawful distribution policies" on federally licensed distributors in Massachusetts has no factual basis and does not support a finding that Ruger is subject to specific personal jurisdiction.**

The Mexican Government cannot satisfy the relatedness requirement merely by showing that Ruger merely transacted business in Massachusetts. *Marino v. Hyatt Corp.*, 793 F. 2d 427, 428 (1st Cir. 1986).  Rather, the Mexican Government must show that its claims *arise out of or relate to* those in-forum activities. *Ticketmaster-New York, Inc. v. Alioto*, 26 F. 3d 201, 206 (1st Cir. 1994). The Mexican Government, however, has presented no evidence that Ruger transferred firearms to Witmer Public Safety Group, Inc. ("Witmer"),[1] a federally licensed firearms distributor, or to any other federally licensed firearm distributor in the Commonwealth, in violation of any federal or state statute or regulation governing the transfer of firearms from one federal firearms licensee to another.

Instead, the Mexican Government asserts, without factual support, that Ruger "imposes … unlawful distribution policies" on wholesale distributors in Massachusetts to whom Ruger sells firearms and argues that those policies "control" further downstream sales by others to "straw purchasers and other traffickers." (Doc. 103, pp. 2, 3, 10, 11, 12, 16.)  However, the Mexican Government does not allege what those "unlawful distribution policies" are, and it does not allege how Ruger's alleged policies direct or require others to act illegally. Instead, in each instance where the Mexican Government refers to Ruger's alleged "unlawful distribution policies" in its Opposition brief, it cites paragraph 42 of its Complaint, which is as factually barren as the argument it purportedly supports:

> 42.    Smith & Wesson, Beretta, Century Arms, Colt, Glock, and Ruger each has purposefully availed itself of the privilege of conducting activities within

---

[1] Formerly known as Interstate Arms Corp. (Doc. 1, ¶ 40.)

2

> Massachusetts, including by systematically serving the gun market here; regularly marketing and advertising its products here; regularly making substantial sales to Defendant Interstate Arms in Middlesex County; and imposing the policies and practices by which it sells its guns to Interstate Arms in Middlesex County and by which Interstate Arms must sell those guns to dealers throughout the U.S. Each of these Defendants' unlawful conduct as alleged throughout this Complaint—including the sales, marketing, advertising, and distribution policies and practices that occurred in Middlesex County— resulted in guns that each of them sold to Defendant Interstate Arms in Middlesex County being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains.

(Doc. 1, ¶ 42.)

The Mexican Government goes so far as to argue that Ruger imposes "policies" on Witmer in Massachusetts that "flout" Massachusetts firearm laws and "are at the heart of the Government's allegations regarding Ruger's illegal conduct." (Doc. 103, p. 16.) But the Mexican Government does not identify the Massachusetts firearm laws that are being flouted under unidentified Ruger "policies." *See Platten v. HG Bermuda Exempted Ltd*., 437 F. 3d 118, 134 (1st Cir. 2006) (unsupported allegations do not support a prima facie showing of personal jurisdiction); *Barrett v. Lombardi*, 239 F. 3d 23, 27 (1st Cir. 2001) ("[A]llegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed *prima facie* standard, to establish jurisdictional facts."); *Rogakin ex rel. Rogatkin v. Raleigh America/Diamonfback BMX,* No. 13-11574-RGS, 2013 WL 5202639 (D. Mass. Sept. 12, 2003) (rejecting conclusory "unfair dealing" claim as jurisdictional evidence). The Mexican Government's bare assertion that Ruger imposes distribution policies on others that illegally "flout" firearms laws should be disregarded.

The Mexican Government takes issue with Ruger's observation that the Complaint fails to allege that Ruger's contacts with Massachusetts—sales to Witmer—are unlawful. (Doc. 103, p. 3.) It argues that "[t]he Complaint alleges otherwise" but offers no evidence to support that reading of the Complaint. Instead, it retreats to the conclusory and wholly insufficient allegation that

"Ruger's distribution policies … foreseeably and knowingly facilitate the unlawful trafficking of its guns to Mexico." (*Id.*)  However, as noted above, an allegation is not evidence, particularly an allegation devoid of factual content, and does not move the needle toward a finding of specific personal jurisdiction. *See Cosart v. United Excel Corp.*, 804 F. 3d 13, 18 (1st Cir. 2020) (a plaintiff must do more than surmise a favorable factual scenario to meet its *prima facie* burden). The Mexican Government's hyperbolic and circular efforts to connect their causes of actions and alleged damages to Ruger contacts with Massachusetts miss the mark by a wide margin.[2]

II.     **The Expert Report of Lucy P. Allen fails to address whether the Mexican Government causes of action are too attenuated from Ruger's lawful transfer of firearms to federal firearms licensees in Massachusetts to confer specific personal jurisdiction.**

Lucy Allen was asked by the Mexican Government "to estimate the number of firearms trafficked into Mexico over the last ten years with a sale linked to Massachusetts that were manufactured by each of the Defendants …." (Doc. 108-1, p. 2.) She performed her "analysis" by "extrapolating from limited available data," and her "estimates" leave many unanswered questions. (*Id.*) However, the fundamental problem with Ms. Allen's report is that it does not address the principal question before the Court: whether the Mexican Government has met its burden to demonstrate that Ruger's contacts with Massachusetts—lawful firearm sales to federal firearms licensees in the Commonwealth—are too attenuated from the Mexican Government's causes of

---

[2]     The Mexican Government alleges that Ruger violated 18 U.S.C. §922(b)(4) by selling fully automatic machine guns to Witmer. (Doc. 1, ¶¶ 307-313; Doc. 103, p. 10; Doc. 111, pp. 22-23.) Although Section 922(b)(4) prohibits federal firearms licensees from selling or delivering a fully automatic "machinegun" to any person, except as authorized by the Attorney General, Section 922(b)(4) expressly does not apply to "transactions between" federally-licensed businesses, such as alleged transfers by Ruger to Witmer, and other federal firearms licensees in Massachusetts. 18 U.S.C. §922(b) (The prohibitions found in "[p]aragraphs (1), (2), (3), and (4) of this subsection shall not apply to transactions between licensed importers, licensed manufacturers, licensed dealers and licensed collectors.") The Mexican Government's allegation is untenable for other reasons, as described more fully in Defendants' Joint Reply in Support of Defendants' Motion to Dismiss. First and foremost, the semi-automatic rifles that the Mexican Government wrongly characterizes as fully-automatic firearms (commonly referred to as AR-type rifles) are not "machineguns," as defined in 26 C.F.R. §5845(b), because they are semi-automatic rifles that were not "designed to shoot … automatically," and therefore they cannot be "readily restored to shoot … automatically."  26 C.F.R. §5845(b).

action for harm resulting from remote criminal cartel violence in Mexico. The Mexican Government's characterization of Ms. Allen's analyses as "compelling proof" on the "relatedness" requirement is completely unexplained.  (Doc. 106, p. 12.)

At most, Ms. Allen's "estimates" suggests that some Ruger firearms sold by licensed independent wholesale distributors or retail dealers in Massachusetts were later recovered in Mexico. That is hardly surprising. According to the Mexican Government, there are "two national gun wholesalers" located in Massachusetts. (Doc. 103. p. 10.)  It is logical that a number of firearms have lawfully passed through these two wholesale distributors on their way to federally licensed retail dealers all across the country, and that thereafter some may have been trafficked illegally across the border by third parties.  It is also logical to assume that some firearms lawfully sold by one of the many federally licensed retail dealers doing business in the Commonwealth thereafter entered an illegal secondary market for used firearms, in which criminal traffickers may operate, and may have been illegally smuggled across the border by third parties. (Doc. 103, p. 2.)

However, the bare number of Ruger firearms recovered in Mexico with some indirect connection to Massachusetts does not demonstrate the required connection between Ruger's lawful activities in Massachusetts and the Mexican Government's claims for damages arising from remote cartel violence in Mexico. Under the Mexican Government's own allegations, a firearm's path from (a) Ruger, to (b) the inventory of a licensed wholesale distributor in Massachusetts, to (c) the inventory of a licensed retail dealer located somewhere in the United States, to (d) a retail purchaser, who has been approved to purchase the firearm following a law enforcement background check, to (e) criminal firearm traffickers, to (f) criminal firearms use in Mexico, is too attenuated from Ruger's remote act of placing the firearm in commerce in Massachusetts to find that Ruger is subject to specific personal jurisdiction in  Massachusetts. The detour on this path,

5

which removes any nexus between Ruger's legal in-forum activities and defeats the Mexican Government's jurisdictional argument, is the remote action of third party criminal firearm traffickers with whom Ruger has no relationship and over whom Ruger has no control.

>    **III.    The *Ford Motor Company* decision did not eliminate the Mexican Government's burden to demonstrate through material of evidentiary quality that its claims arise out of or relate to Ruger's contacts with Massachusetts.**

Ruger has not just given "lip service" to the United States Supreme Court's decision in *Ford Motor Company*, as the Mexican Government argues. (Doc. 103, p. 10.) The Court in *Ford Motor Company* held that a strict causal relationship between a defendant's in-state activity and a plaintiff's cause of action is not required in every case to exercise specific personal jurisdiction over a defendant, which Ruger acknowledged in its Memorandum of Law. (Doc. 57, p. 6.) But while the Court held that "some relationships will support jurisdiction without a causal showing," it also emphasized that "the phrase 'relate to' incorporates real limits" and "does not mean anything goes." *Id*. Those limits require that the connection between a defendant's in-forum activities and a plaintiff's claim cannot be attenuated, which aptly describes the alleged connection between Ruger's lawful sales to other federal firearms licensees in Massachusetts and remote cartel violence in Mexico. *See Adams v. Gissell*, No. CV 20-11366-PBS, 2021 WL 2786277, at *9 (D. Mass. May 24, 2021) (noting that *Ford Motor Company* is consistent with First Circuit precedent, and that while causation is not a per se requirement of specific jurisdiction, its "presence or absence is important" and a "meaningful nexus" between defendant's in-forum activities and plaintiff's harm must be shown.).[3]

---

[3]     A key to the Supreme Court's decision in *Ford Motor Company* was that the plaintiffs were residents of the forum states and their harm occurred in those forums. *Ford Motor Company*, 141 S. Ct. at 1022 ("When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit."); *see also Chouinard v. Marigot Beach Club & Dive Resort*, No. CV 20-10863-MPK, 2021 WL 2256318, at *11 (D. Mass. June 3, 2021) (declining to exercise personal jurisdiction where injury occurred outside the forum state, finding that "a key component of the *Ford* constitutional relatedness inquiry [was] absent in this case. There, plaintiffs were in car accidents in Montana and Minnesota and brought suits in

Importantly, the Court in *Ford Motor Company* did not relieve plaintiffs of their burden to demonstrate that specific personal jurisdiction exists by presenting evidence. The First Circuit continues to demand that a plaintiff proffer facts sufficient to show personal jurisdiction.  *See Motus, LLC v. Car Data Consultants, Inc*., 23 F. 4th 115, 123 (1st Cir. 2022) ("Even though a plaintiff need not plead facts that suffice to ground the exercise of *in personam* jurisdiction, it must—if challenged—ensure that the record contains such facts."). Neither the Mexican Government's unsupported assertion that Ruger "imposes unlawful distribution policies" on its Massachusetts customers nor Lucy Allen's estimate of the bare number of Ruger firearms recovered in Mexico, with remote connections to Massachusetts, satisfies its burden.

## IV. The Mexican Government has not demonstrated Massachusetts's interest in adjudicating this case in Massachusetts or why Massachusetts is a convenient forum to litigate the Mexican Government's grievances.

The Court need not consider whether the exercise of jurisdiction over Ruger is reasonable under the Gestalt factors because the Mexican Government has failed to meet its burden on the "relatedness" prong. *United Electrical Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1091 n.11 (1st Cir.1992) ("The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled."). Regardless, the Mexican Government has failed to show, under the second Gestalt factor, that Massachusetts has an interest in the prosecution of this case. The Mexican Government argues that the Commonwealth has a "strong interest" in precluding Ruger from "implementing policies … that flout" Massachusetts firearm laws, but—again—it does not identify what those policies are or how they allegedly "flout" Massachusetts

---

Montana and Minnesota."). Here, the Mexican Government is not a Massachusetts resident and its alleged harm did not occur in the Commonwealth. Significantly, the Court in *Ford Motor Company* rejected Ford's argument that jurisdiction was proper in each of the states where the cars were first sold (the argument the Mexican Government makes here) because suits in those states would "involve[] out-of-state parties, an out-of-state accident, and out-of-state injuries; the only connection with the State is that a former owner once (many years earlier) bought the car there."). *Ford Motor Company*, 141 S. Ct. at 1031.

firearms laws. (Doc. 103, p. 16.) The Mexican Government's failure to identify the "unlawful distribution policies Ruger allegedly "imposed" on Witmer weighs against exercising jurisdiction over Ruger.

The same failure by the Mexican Government weighs against finding that the third Gestalt factor—the plaintiff's interest in obtaining relief in Massachusetts—tips the scale in favor of jurisdiction. Indeed, its argument that "substantial connections exist among Ruger, other Defendants, the Government's claims and the Government's injuries," and this forum is wholly unsubstantiated. (Doc. 103, p. 18.) Maintaining suit against Ruger in Massachusetts would involve out-of-state parties, out-of-state criminal firearms trafficking activities, and injuries occurring in a foreign country. The Mexican Government advances no interest related to the Massachusetts forum beyond its own desire to sue the principal American firearm manufacturers in one court, an interest that could be advanced in every multi-defendant case.[4]

## V.     The Mexican Government is not entitled to jurisdictional discovery.

The Mexican Government's request to conduct jurisdictional discovery should be denied for multiple reasons. First, as shown above, the Mexican Government has not demonstrated a colorable claim that Ruger is subject to specific personal jurisdiction in this case. *See U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 625-26 (1st Cir. 2001) (affirming denial of jurisdictional discovery based on the government's "unconvincing" relatedness showing and failure to present colorable claim for personal jurisdiction). Second, in addition to not presenting a colorable claim for personal jurisdiction, the Mexican Government has not shown diligence in preserving its

---

[4]     The Mexican Government misreads Ruger's Memorandum of Law to suggest that the court in *Katz v. Spiniello Companies*, 244 F. Supp. 3d 237 (D. Mass. 2017), held that avoiding piecemeal litigation was not a factor to be considered in determining whether the exercise of jurisdiction is reasonable. (Doc. 103, p. 18.) Rather, Ruger maintains that the determination of whether it is subject to specific personal jurisdiction should not be influenced by the fact that there are in-forum defendants in the case who are subject to personal jurisdiction in Massachusetts. Ruger did not rely on *Katz* to support this proposition but relied on *Newman v. European Aeronautic Defence and Space Co, EADS N.*V., 2011 WL 2413792 (D. Mass. June 16, 2011). (Doc. 57, p. 9 n.4.)

claimed right to jurisdictional discovery. *Id*. at 626. Diligence "includes presenting facts to the court which show why jurisdiction would be found if discovery were permitted." *Id*. (citing *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001)). A plaintiff seeking jurisdictional discovery must present to the court "pertinent avenues of inquiry" it intends to pursue, including why jurisdiction would be found if discovery were permitted. *Id*. (citing *Whittaker Corp. v. United Aircraft Corp.*, 482 F. 2d 1079, 1086 (1st Cir. 2001)); *see also Stars for Art Productions FZ, LLC v. Dandana*, LLC, 806 F.Supp.2d 437, 451 (D. Mass 2011) (plaintiff's failure to explain how broad proposed lines of discovery inquiry would yield evidence supporting personal jurisdiction is fatal to request for jurisdictional discovery).

Here, the Mexican Government devotes just two sentences in its Opposition to its request for jurisdictional discovery. (Doc. 103, p. 20.) It states broadly and inadequately that discovery from Ruger "would provide additional and updated evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico." (*Id*.) But it makes no effort to explain *how* any evidence in Ruger's possession will overcome the substantial obstacle it faces to demonstrate that Ruger's lawful sales of firearms to Massachusetts-based distributors are related to remote criminal firearms violence in Mexico. The Mexican Government's allegations make clear that Ruger sells its firearms to those independent distributors, who in turn sell to independent retail dealers throughout the country. And it is from those independent retail dealers that persons acquire firearms, which then find their way into Mexico illegally through the criminal actions of third parties wholly outside the chain of lawful, licensed firearms distribution and sales. The Mexican Government does not explain why Ruger would have, in its records, evidence of these illegal trafficking activities by third parties with whom it does not conduct business and who are multiple steps removed from Ruger's lawful transfers of firearms to wholesale distributors in

Massachusetts. *See Motus*, 23 F. 4th at 128 (finding that jurisdictional discovery was unwarranted because plaintiff did not act diligently in preserving its rights by indicating what facts would be developed in discovery).

The Mexican Government's claim that information in Ruger's possession regarding "ATF traces" of firearms will document the extent to which Ruger firearms were sold to Massachusetts distributors and then trafficked into Mexico is not only unexplained, it is demonstrably wrong.  A firearm trace is the process by which ATF "reconstructs the distribution history of a gun used in crime or recovered by the police" from manufacturer, to wholesale distributor, to retail dealer, to its first retail purchaser. *Hamilton v. Beretta Corp*., 750 N.E. 2d 1055, 1065 (N.Y. Ct. App. 2001). When ATF contacts a firearm manufacturer and requests identification of the distributor to whom it sold a firearm, ATF does not tell the manufacturer where law enforcement recovered the firearm or why the firearm is being traced.  *Id*. ATF likewise does not tell the manufacturer the purpose of the trace or the result of the trace, and it "does not disclose any subsequently acquired retailer or purchaser information to the manufacturer." *Id*.  But even if ATF did disclose trace results to firearm manufacturers, the results would not reveal wrongdoing by either the retail seller of the firearm or its retail purchaser. Indeed, ATF has repeatedly emphasized:

> "[T]he appearance of [an FFL] or a first unlicensed purchaser of record in association with a crime gun or in association with multiple crime guns in no way suggests that either the FFL or the first purchaser has committed criminal acts. Rather, such information may provide a starting point for further and more detailed investigation." (Youth Crime Gun Interdiction Initiative, *supra,* at 17 < http://www.atf.treas.gov/firearms/ ycgii/update1.pdf>).

*Id*. at 1065 n.8; *see also People ex rel Spitzer v. Sturm, Ruger & Co. Inc*., 761 N.Y.S. 2d 192, 199 (N.Y.App.Div. 2003) (rejecting argument that ATF trace requests put firearm manufacturers on notice of how criminals acquire firearms).  Any ATF trace records in Ruger's possession would reveal nothing about how a firearm ended up in Mexico or explain the circumstances under which

10

the firearm was recovered by Mexican law enforcement authorities.[5]

The Mexican Government has provided no cognizable legal or factual basis upon which the Court could order jurisdictional discovery.  It has not made a colorable personal jurisdiction claim, nor has it acted diligently to present relevant "pertinent avenues of inquiry" that will lead to a finding that Ruger is subject to specific personal jurisdiction in this case. *See Crocker v. Hilton Intern. Barbados Ltd.*, 976 F. 2d 797, 801 (1st Cir. 1992) (affirming denial of jurisdictional discovery on the ground that information sought was irrelevant to the jurisdictional issue before the court). This Court has broad discretion to decide whether jurisdictional discovery should be permitted, and its ruling will be "overturned only upon a clear showing of manifest injustice" and a finding that the ruling is "plainly wrong and resulted in substantial prejudice to the aggrieved party." *Swiss American Bank*, 274 F. 3d at 626. Therefore, the Court should deny the Mexican Government's request for jurisdictional discovery.

---

[5]    Federal law prohibits ATF from disclosing firearms trace data except to law enforcement agencies in the United States, foreign law enforcement agencies "solely in connection with or for use in a criminal investigation or prosecution," and to federal agencies for national security or intelligence purposes. Pub. L. No. 112-55, 125 Stat. 552 (2012).  And under federal law, firearms trace data "shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal Court or in any administrative proceeding .…" *Id.*

11

## CONCLUSION

Assessing the adequacy of the Mexican Government's Opposition to Ruger's motion is a question of law. *Barrett v. Lombardi*, 239 F. 3d 23, 27 (1st Cir. 2001). The inadequacy of the Mexican Government's jurisdictional showing is clear.  Ruger's motion should be granted.

Respectfully submitted,

STURM, RUGER & CO., INC.,

By its attorneys,

/s/Jonathan I. Handler
Jonathan I. Handler (BBO #561475)
Keith H. Bensten (BBO#568780)
jihandler@daypitney.com
kbensten@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
T: (617) 345-4600
F: (617) 345-4745

James Vogts
(admitted *Pro Hac Vice*)
jvogts@smbtrials.com
SWANSON MARTIN & BELL LLP
330 North Wabash, Suite 330
Chicago, IL 60611
T: (312) 222-8517
F: (312) 321-0990

Dated:  March 14, 2022

111213944

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan I. Handler, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2022.

*/s/Jonathan I. Handler*
Jonathan I. Handler

111213944