UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ESTADOS UNIDOS MEXICANOS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SMITH & WESSON BRANDS, INC.; | ) | |
| BARRETT FIREARMS MANUFACTURING, | ) | |
| INC.; BERETTA U.S.A. CORP.; BERETTA | ) | C.A. NO: 1:21-CV-11269-FDS |
| HOLDING S.P.A.; CENTURY | ) | |
| INTERNATIONAL ARMS, INC.; COLT'S | ) | |
| MANUFACTURING COMPANY LLC; | ) | |
| GLOCK, INC.; GLOCK GES.M.B.H.; | ) | |
| STURM, RUGER & CO., INC.; | ) | |
| WITMER PUBLIC SAFETY GROUP, INC. | ) | |
| D/B/A INTERSTATE ARMS, | ) | |
| | ) | |
| Defendants. | ) | |

**COLT'S MANUFACTURING COMPANY LLC'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

                                                                                                                           Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

      I.     DISMISSAL OF COLT FOR LACK OF PERSONAL JURISDICTION IS REQUIRED BECAUSE MEXICO DOES NOT ESTABLISH A PRIMA FACIE BASIS FOR THE EXERCISE OF SPECIFIC JURISDICTION. .................... 2

            A.    *Ford Motor* Does Not Relieve Mexico of Its Burden to Make a Prima Facie Showing that Its Claims Arise Out Of or Are Related to Colt's Contacts with Massachusetts. ............................................................................... 2

            B.    Mexico Fails to Make the Required Showing of a Causal Connection to Colt's Contacts with Massachusetts. ................................................................. 4

            C.    The Exercise of Personal Jurisdiction over Colt based on Mexico's Claims Would Be Unreasonable. ......................................................................... 6

            D.    Mexico Is Not Entitled to Jurisdictional Discovery ........................................... 8

     II.    MEXICO'S CUTPA CLAIM MUST BE DISMISSED. ............................................. 9

            A.    Mexico Lacks Standing to Assert Its CUTPA Claim. ........................................ 9

            B.    Proximate Cause Is Precluded as a Matter of Law by Connecticut Supreme Court Authority. ................................................................................ 10

            C.    Mexico's CUTPA Claim Is Precluded by the PLCAA. .................................... 12

CONCLUSION ..................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Adams v. Gissell*, No. CV 20-11366-PBS, 2021 WL 2786277 (D. Mass. May 24, 2021) ............. 2

*Barrett v. Lombardi*, 239 F.3d 23 (1st Cir. 2001) ................................................................................ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 10, 11

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773 (2017) ...................................... 5

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1 (1st Cir. 2016) ........................................ 2

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020), *cert. denied sub nom. Dantzler, Inc. v.
    S2 Servs. Puerto Rico, LLC*, 141 S. Ct. 2624 (2021) ................................................................ 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) .............................. 2, 3

*Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 780 A.2d 98 (2001) ................................. 10, 11

*Hamilton v. Beretta Corp.*, 96 N.Y.2d 222, 750 N.E.2d 1055 (2001) ............................................ 9

*Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005) ................................................................ 2

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ......................................................................... 12

*Killion v. Commonwealth Yachts*, 421 F. Supp. 2d 246 (D. Mass. 2006) ....................................... 2

*Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115 (1st Cir. 2022) ................................... 8, 9

*Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996) ................................................. 7

*Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856 (2d Cir. 1981) ............................... 12

*Phillips v. Prairie Eye Ctr.*, 530 F.3d 22 (1st Cir. 2008) .................................................................. 6

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118 (1st Cir. 2006) .......................................... 4

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) ............................................................................. 6

*Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 202 A.3d 262 (2019) ..................... 11, 12

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) ........................................ 6, 8

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992) ........................................................................................................ 6

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001) ............................................ 8

*Vacco v. Microsoft Corp.*, 260 Conn. 59, 793 A.2d 1048 (2002) ................................................. 10

**Statutes**

15 U.S.C. § 7901, *et seq.* ................................................................................................................ 1, 12

15 U.S.C. § 7903(5)(A)(iii) .................................................................................................................. 12

18 U.S.C. § 922(b) ................................................................................................................................. 4

Conn. Gen. Stat. §§ 42-110a, *et seq.* ........................................................................................ passim

Pub. L. No. 112-55, 125 Stat. 552 (Nov. 18, 2011) .......................................................................... 9

**Regulations**

26 C.F.R. § 5845(b) ........................................................................................................................ 4

**INTRODUCTION**

Defendant Colt's Manufacturing Company LLC ("Colt") demonstrated in its opening memorandum (Doc. 65) that the claims asserted by Plaintiff Estados Unidos Mexicanos ("Mexico") are not sufficiently related to Colt's alleged contacts with Massachusetts to support specific jurisdiction and that exercising personal jurisdiction over Colt would not be reasonable under the circumstances. Mexico's Memorandum of Law in Opposition to Defendant Colt's Manufacturing Company LLC's Motion to Dismiss ("Opp. to Colt Mtn.") (Doc. 101) does not present evidentiary material sufficient to show relatedness between Colt's contacts with Massachusetts and the harm alleged by Mexico from drug cartel violence in Mexico. Nor does Mexico establish that the applicable "gestalt factors" favor the exercise of personal jurisdiction in this case. Thus, dismissal under Rule 12(b)(2) is proper as to Colt.

In addition to the grounds for dismissal set forth in Defendants' Joint Memorandum of Law in Support of Defendants' Motions to Dismiss ("Joint Memorandum") (Doc. 67), Colt also demonstrated that Mexico's claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* ("CUTPA"), must be dismissed. As further demonstrated below, Mexico's Opposition to Colt's Motion fails to overcome its lack of standing to assert its CUTPA claim or the clear holding of the Connecticut Supreme Court finding that the types of derivative and indirect claims asserted by Mexico are barred as a matter of law for lack of proximate cause. Finally, as discussed below and in Defendants' Joint Reply Memorandum (at 11-33), a proper application of the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901, *et seq.* ("PLCAA") also bars Mexico's CUTPA claim.

**ARGUMENT**

I. **DISMISSAL OF COLT FOR LACK OF PERSONAL JURISDICTION IS REQUIRED BECAUSE MEXICO DOES NOT ESTABLISH A PRIMA FACIE BASIS FOR THE EXERCISE OF SPECIFIC JURISDICTION.**

To meet its burden of establishing personal jurisdiction, Mexico was required to "do more than simply surmise the existence of a favorable factual scenario; [it] must verify the facts alleged through materials of evidentiary quality." *Killion v. Commonwealth Yachts,* 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001)). While Colt did not challenge the element of purposeful availment, Mexico has failed to meet its burden to show that its claims "arise out of or relate to" Colt's contacts with Massachusetts or that the exercise of jurisdiction would be reasonable. *See Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (setting out three part test).

A. *Ford Motor* **Does Not Relieve Mexico of Its Burden to Make a Prima Facie Showing that Its Claims Arise Out Of or Are Related to Colt's Contacts with Massachusetts.**

In the face of Colt's discussion of the First Circuit's requirement in most cases to demonstrate proximate cause in order to establish relatedness (Colt Mem. at 5-7), Mexico relies on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021), to argue that this Court has personal jurisdiction over Colt even if there is not a direct causal connection between Colt's activities in Massachusetts and Mexico's injuries from cartel violence in Mexico. (Opp. to Colt Mtn. at 4-6.) But as one of the cases cited by Mexico (Opp. to Colt Mtn. at 6 n.23) acknowledged, "*Ford Motor Co.* is consistent with First Circuit precedent, which recognizes that while its presence or absence is important, causation is not a per se requirement of specific jurisdiction." *Adams v. Gissell*, No. CV 20-11366-PBS, 2021 WL 2786277, at *9 n.13 (D. Mass. May 24, 2021) (citing *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005)). Colt did not contend otherwise.

2

At the same time, *Ford Motor* certainly does not create a standard that would make personal jurisdiction proper in this case. While the Supreme Court held that "*some relationships* will support jurisdiction without a causal showing," it noted that "[t]hat does not mean anything goes" and "'relate to' incorporates real limits." *Ford Motor*, 141 S. Ct. at 1026 (emphasis added). Indeed, the basis for the exercise of personal jurisdiction in *Ford Motor* rested on a familiar pattern that has long been recognized as grounds for specific jurisdiction:

> The accident happened in the State where suit was brought. The victim was one of the State's residents. And Ford did substantial business in the State—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective. … When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.

*Id*. at 1022. That situation is strikingly different from the one now before this Court. The cartel violence about which Mexico complains occurred in Mexico, not Massachusetts, and Mexico is not a resident of this State.

Because the factual circumstances supporting jurisdiction in *Ford Motor* are not present here, that decision reinforces the absence of specific jurisdiction over Colt in this case. Addressing other potential states that could be the forum for the action against Ford, including states where the vehicles were sold, the Supreme Court found that specific personal jurisdiction would have been improper in those states:

> For each of those States, the suit involves all out-of-state parties, an out-of-state accident, and out-of-state injuries; the suit's only connection with the State is that a former owner once (many years earlier) bought the car there. In other words, there is a less significant relationship among the defendant, the forum, and the litigation.

*Id* at 1030 (quotation omitted). Such a "less significant relationship" aptly describes the relationship here between Colt, Massachusetts, and Mexico's alleged injuries from cartel violence in Mexico. And because Mexico's claims are not one of the relationships where a

3

causal connection is not required, *Ford Motor* does not alter the fundamental analysis that requires dismissal of Colt for lack of personal jurisdiction.

> **B.     Mexico Fails to Make the Required Showing of a Causal Connection to Colt's Contacts with Massachusetts.**

In an effort to demonstrate a connection between Colt's activities in Massachusetts and cartel violence in Mexico, Mexico claims that "Colt imposes its unlawful distribution policies on its 35 gun dealers, and its large national distributor Interstate Arms, in Massachusetts." (Opp. to Colt Mtn. at 6.) Yet nowhere in its Opposition or in its Complaint does Mexico identify any such "unlawful distribution policies" or how Colt supposedly imposes those policies on distributors or other federally-licensed sellers, or how Colt's unspecified policies direct the multiple, independent criminal actors between Colt and the drug cartels' criminal use of firearms in Mexico. In its Opposition, Mexico merely cites to paragraph 42 of the Complaint as the support for this characterization, but that paragraph similarly lacks any factual substance and relies only on conclusory assertions of some unspecified "unlawful conduct" supposedly alleged elsewhere in the Complaint. (Compl. ¶ 42.) These allegations are not evidence and do not meet Mexico's burden to establish personal jurisdiction. *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006) (allegations alone not enough for a prima facie showing of personal jurisdiction).[1]

Mexico's conclusory assertions regarding Colt's national distribution and marketing policies being imposed on wholesalers and dealers in Massachusetts and its effort to then link

---

[1] Mexico's contention (Compl. ¶¶ 307-313) that Colt illegally sells fully automatic machine guns to Witmer in violation of 18 U.S.C. § 922(b)(4) is fatally undercut by the very statute referenced, which makes it clear that, even if Colt was selling machine guns, the statutory prohibition does not apply to "transactions between" federally-licensed businesses, such as transfers between Colt and Witmer and/or firearm retailers. 18 U.S.C. § 922(b). Moreover, as described in Defendants' Joint Reply in Support of Defendants' Motion to Dismiss (at 21-22), the rifles identified in the Complaint are not "machineguns" as defined in 26 C.F.R. § 5845(b) because they are not "designed to shoot . . . automatically," which means that they cannot be "readily restored to shoot . . . automatically." 26 C.F.R. § 5845(b).

those policies to the harms it alleges from cartel violence in Mexico rests on a chain of causation that is far too attenuated for specific jurisdiction. In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), the Supreme Court rejected a similar attempt to exercise personal jurisdiction over a pharmaceutical manufacturer for injuries related to Plavix medication. The state court had determined that the manufacturer's national advertising, distribution scheme, and other business conducted in California created sufficient contacts with the forum for the state courts to exercise specific personal jurisdiction over all Plavix claims even though the plaintiffs had no connection to the forum. *Id*. at 1778-79. But because those plaintiffs "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California," the Supreme Court held that the exercise of specific jurisdiction was improper. *Id*. at 1781.

To attempt to fill the gap between Colt's activities in Massachusetts and criminal activity in Mexico, Mexico offers the report of Lucy Allen, who was asked "to estimate the number of firearms trafficked into Mexico over the last ten years with a sale linked to Massachusetts that were manufactured by each of the Defendants …." (Declaration of Nicholas W. Shadowen in Support of Plaintiff's Responses in Opposition to Defendants' Motions to Dismiss, Doc. 108, Ex. 1, p. 2.) She generated her estimates by "extrapolating from limited available data" because she had no actual information for the last decade. (*Id*.)

Whatever weight Ms. Allen's estimates deserve, those estimates do nothing to address the fundamental lack of a causal link between Colt's lawful sales of firearms to federally licensed entities in Massachusetts and Mexico's alleged injuries in Mexico as the result of violence inflicted by the drug cartels. Ms. Allen's report does nothing to eliminate any of the multiple steps that are required for a firearm sold by Colt to a licensed wholesaler in Massachusetts to

make its way to a dealer that sells it to a customer, and for that customer or others to whom the initial customer transfers the firearm to illegally smuggle the firearm into Mexico, and then for that firearm to be transferred once or multiple times before it is in the hands of a cartel member, and then for that cartel member to use the firearm in violence that causes injury to Mexico. (*See* Colt Mem. at 6-7.)  Mexico makes no effort to address that fundamental flaw in its allegations.[2] *See Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) ("There must be more than just an attenuated connection between the contacts and the claim . . . .").

### C. The Exercise of Personal Jurisdiction over Colt based on Mexico's Claims Would Be Unreasonable.

The Court only reaches the Gestalt factors and the reasonableness inquiry if it first concludes that Mexico has shown that its claims are related to Colt's contacts with Mexico, which Mexico has failed to do, as discussed above. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995) ("we note that a failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness"); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 n.11 (1st Cir. 1992).  Moreover, Mexico does not dispute the principle that where the plaintiff's showing on the relatedness prong is weak, which is the most that can be said for Mexico's showing here, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

---

[2] Mexico attempts to characterize the Complaint's failure to tie the specific allegations regarding Colt firearms used in Mexico to Colt's activities in Massachusetts as the "foundation of Colt's motion to dismiss," (Opp. to Colt Mtn. at 6), and then pretend as if it had fully addressed Colt's motion with Ms. Allen's report.  But as noted, Allen's report does not address the fundamental issue addressed above regarding the attenuated connection between Colt's actions in Massachusetts and drug cartels' misuse of firearms in crimes in Mexico.  And while Ms. Allen estimates the number of firearms trafficked into Mexico over the last ten years, she still does not tie any specific firearms used by cartels – including those specifically mentioned in the Complaint – to Colt's activities in Massachusetts.

In its motion, Colt relied primarily on two factors to demonstrate the unreasonableness of the exercise of jurisdiction over it in this case. First, Colt explained the lack of any significant interest for Massachusetts to adjudicate the claims of Mexico that it is injured by the use of trafficked firearms by drug cartels in Mexico. (Colt Mem. at 8-9.) Mexico responds with the same mantra that the Complaint alleged "Colt's unlawful distribution policies." (Opp. to Colt Mtn. at 10.) Once again, however, Mexico neither pleads nor presents evidentiary support of any illegal sales practices by Colt. Its conclusory assertion is not enough.

Mexico next concedes that the caselaw recognizes Massachusetts' interest in providing a forum for its citizens to litigate their injuries. (*Id.*) But Mexico then makes the curious argument that because it is not a citizen of any U.S. forum, conditioning a state's interest on residency "would make no sense and would contravene law permitting a foreign state" to litigate in U.S. courts like any domestic corporation. (*Id.* at 11.) But the issue is the reasonableness of the forum's exercise of personal jurisdiction over the defendant, and recognizing that the forum has little interest in adjudicating the claims of a foreign sovereign against a nonresident defendant does not treat the foreign sovereign unfairly, but treats it just like a domestic corporate plaintiff. Simply put, Mexico's status as a foreign sovereign does not allow it to trump Colt's due process protections as reflected in the Gestalt factors.[3]

The final factor relied upon by Colt was the absence of a showing of convenience to Mexico in bringing its claims in Massachusetts. Mexico's assertion that Massachusetts lies at the "center of the gun-manufacturing industry" (Opp. to Colt Mtn. at 12) is entirely unsupported,

---

[3] Mexico's reliance on *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996), is also badly misplaced. (Opp. to Colt Mtn. at 11.) While it is true that the court concluded that the exercise of jurisdiction over the nonresident defendant was reasonable even though the injury had occurred outside the forum, the injury was to a resident of the forum who was targeted for solicitations by the nonresident defendant to induce the resident to engage in the very conduct that led to the resident's injuries. *Id.* at 715-16. That is far different than Mexico's allegations here.

as is its conclusory statement that "substantial connections exist among Colt, other Defendants, the Government's claims, the Government's injuries, and this forum" (Opp. to Colt Mtn. at 13-14). At the end of the day, Mexico's "convenience" comes down to its preference for suing all defendants in one forum, which would be a factor in every situation where a party desires to bring claims against multiple defendants. Because a suit in Massachusetts for injuries allegedly incurred by Mexico at the hands of drug cartels in Mexico appears to be a "makeweight," Mexico's choice of forum is entitled to no deference. *Ticketmaster-New York*, 26 F.3d at 211.

For the foregoing reasons, Mexico cannot meet its burden to justify the exercise of specific personal jurisdiction over Colt, and the Complaint should be dismissed with prejudice as to Colt.

### D. Mexico Is Not Entitled to Jurisdictional Discovery.

"[A] plaintiff who seeks jurisdictional discovery must make 'a colorable claim of jurisdiction' and must show that it 'has been diligent in preserving [its] rights to be entitled to jurisdictional discovery.'" *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-27 (1st Cir. 2001)). Diligence "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." *Swiss Am. Bank*, 274 F.3d at 626.

In this instance, Mexico has failed to make the initial showing of a colorable claim of specific jurisdiction over Colt. Even if it had, its request for jurisdictional discovery does not show diligence. Its Opposition contains just two conclusory sentences regarding the discovery it seeks:

> Discovery from Colt, the other Defendants, and major distributors would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to

8

>    distributors, those distributors' sales to dealers throughout the nation, and similar information.

(Opp. to Colt Mtn. at 16.) Mexico's request effectively amounts to no more than a general request for discovery related to its claims. There is no showing as to what specific discovery from Colt it contends would show how Colt's legal sales to other federally-licensed businesses in Massachusetts caused the smuggling of firearms into Mexico and their use by drug cartels there. There is nothing to suggest that any records in Colt's possession would do anything to shorten the indirect and remote chain of causation that bars Mexico's claims in this case.

As in *Motus*, where the "request for jurisdictional discovery comprised a single conclusory sentence, accompanied by a footnote, and contained no indication of what facts might be developed through discovery," 24 F.4th at 128, Mexico has not acted diligently.[4] The Court should exercise its broad discretion to deny Mexico's request for jurisdictional discovery. *Id*.

## II.     MEXICO'S CUTPA CLAIM MUST BE DISMISSED.

### A.     Mexico Lacks Standing to Assert Its CUTPA Claim.

As demonstrated in Defendants' Joint Reply Memorandum, Mexico wholly fails to come to terms with the fact that its alleged standing to bring it claims, including its CUTPA claim, is precluded because its alleged harms stem from the independent acts of third-party Mexican drug cartels. *See* Joint Reply Mem. at 3-5. Nothing in Mexico's Opposition to Colt's Motion overcomes this barrier to its CUTPA claim.

---

[4] Mexico's conclusory assertion that information regarding ATF traces would evidence "the extent to which guns sold in Massachusetts are trafficked into Mexico" is betrayed by the nature of such trace requests. ATF uses a firearm trace to "reconstruct[] the distribution history of a gun used in crime or recovered by the police" from manufacturer, to wholesale distributor, to retail dealer, to its first retail purchaser, but it does not reveal to the manufacturer further information, including where the firearm was recovered or under what circumstances. *Hamilton v. Beretta Corp*., 96 N.Y.2d 222, 238-39, 750 N.E.2d 1055, 1065 (2001). Moreover, federal law provides that firearms trace data "shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal Court or in any administrative proceeding …." Pub. L. No. 112-55, 125 Stat. 552 (Nov. 18, 2011).

9

As Colt also demonstrated in its opening Memorandum (at 11), as to the CUTPA claim, Mexico faces a particularly difficult barrier in showing that Colt's advertising somehow caused Mexico's alleged harms.  Mexico's response is, in essence, that Colt advertises firearms and the drug cartels use firearms, and that is enough to presume a causal link.  (Opp. to Colt Mtn. at 17-18.)  While Mexico claims that it need not show that Colt's advertising was "the last step in the chain of causation" or "the sole cause of the injury" (*id*.), the fundamental problem is that Mexico does not allege any facts making it plausible that Colt's admittedly truthful advertising was anywhere in the causal chain leading to drug cartel violence.  *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) ("The traceability or causation element requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm.") (internal quotation omitted), *cert. denied sub nom. Dantzler, Inc. v. S2 Servs. Puerto Rico, LLC*, 141 S. Ct. 2624 (2021); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff must plead "more than labels and conclusions").

**B.     Proximate Cause Is Precluded as a Matter of Law by Connecticut Supreme Court Authority.**

As Colt demonstrated in its opening Memorandum, Connecticut courts apply "common-law principles of remoteness and proximate causation to determine whether a party has standing to bring an action under CUTPA."  *Vacco v. Microsoft Corp.*, 260 Conn. 59, 88, 793 A.2d 1048, 1065 (2002).  And in a virtually indistinguishable claim, the Connecticut Supreme Court previously rejected a CUTPA claim brought by a city alleging increased costs and injuries related to its response to gun violence, just like Mexico has alleged here.  *See Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 372, 780 A.2d 98, 133-34 (2001).  The *Ganim* court held that the City and Mayor lacked standing "because the harms they claim are too remote from the

defendants' misconduct, and are too derivative of the injuries of others …." *Id*., 258 Conn. at 365, 780 A.2d at 130.

In its Opposition, Mexico concedes that "*Ganim* did find that municipal harms were too indirectly linked to advertising to allow a CUTPA claim" and that the claim in that case included "allegations that relevant advertising irresponsibly 'targeted' and 'encouraged' a class of dangerous criminals." (Opp. to Colt Mtn. at 18.) That concession tells the Court everything it needs to know to apply *Ganim* and dismiss Mexico's CUTPA claim. While Mexico also contends that it was a direct victim of violence in Mexico (Opp. to Colt Mtn. at 19), its Complaint makes clear that for the most part the direct victims of the cartel violence were the individual soldiers killed by the cartel. (Compl. ¶¶ 458-463.) The sole paragraph alleging property damage from gun violence is not even tied to Colt or its firearms, much less to Colt's advertising, and cannot support its CUTPA claim. (Compl. ¶ 464.) Thus, those allegations are, at most, consistent with liability, "but without some further factual enhancement it stops short of the line between possibility and plausibility of entitle[ment] to relief." *Twombly*, 550 U.S. at 557 (quotation omitted). Moreover, the Court in *Ganim* specifically noted that the City's suggestion that it could have amended the complaint in that action "to allege nonderivative 'injuries to [Bridgeport's] tangible property such as bullet holes and broken windows'" was "difficult to take seriously" and "would have engendered the same immense difficulty of attribution of damages: how to identify only those bullet holes and broken windows attributable to the defendants' tortious conduct, as opposed to all of the other causes of crime." 258 Conn. at 365 n.16, 780 A.2d at 129 n.16.[5]

---

[5] Colt also noted in its opening Memorandum that it would be impossible to probe the motivation of cartel members who committed violence for any link to Colt's advertising. (Colt Mem. at 13-14.) In response, Mexico asserts that doing so in this case could be easier than in *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 202 A.3d 262 (2019) because the single shooter in that case was dead and Mexico could

11

### C. Mexico's CUTPA Claim Is Precluded by the PLCAA.

As demonstrated more fully in Defendants' Joint Reply Memorandum, a proper reading of the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901, *et seq*. is to limit the predicate exception, 15 U.S.C. § 7903(5)(A)(iii), to statutes specifically addressing firearm regulation. (Joint Reply Mem. at 17-21.) Mexico's response is to fall back on the 4-3 decision of the Connecticut Supreme Court in *Soto*. (Opp. to Colt Mtn. at 19-20.) The dissent in *Soto* did not simply disagree with the majority's conclusion, but persuasively demonstrated the flaws in the majority's reasoning. *See Soto*, 331 Conn. at 162, 202 A.3d at 327-28; *see also id.*, 331 Conn. at 196, 202 A.3d at 346-47. And, of course, the *Soto* court's application of the PLCAA is not binding on this Court.[6] *See*, *e.g.*, *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 866 n.6 (2d Cir. 1981) ("state court decision cannot preclude a federal court's more authoritative decision on matters of federal law").

### CONCLUSION

For the foregoing reasons, Colt should be dismissed from this action for lack of personal jurisdiction and Mexico's CUTPA claim should be dismissed. Moreover, for the reasons stated in Defendants' Joint Memorandum and Joint Reply Memorandum, the remaining claims against Colt should also be dismissed with prejudice.

---

employ "economic techniques." (Opp. to Colt Mtn. at 19 n.90.) Mexico's suggestion that it could use economic modeling as a substitute for proof simply confirms that its CUTPA claims are simply too speculative and attenuated.

[6] Mexico provides a snippet from *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) to suggest that the Ninth Circuit endorsed the idea that general unfair trade practices statutes would come within the predicate exception. (Opp. to Colt Mtn. at 20.) To the contrary, the court's reference to "sales and marketing regulations" was in the context of "all of the congressional speakers' statements concerning the scope of the PLCAA," which as then quoted by the court, all specifically tied such regulations to those specifically directed at firearms. *Ileto*, 565 F.3d at 1136-37.

Dated: March 14, 2022                                  Respectfully submitted,


                                                       Defendant,
                                                       Colt's Manufacturing Company LLC,
                                                       By its attorneys,

                                                       */s/ Michael Rice*
                                                       Michael Rice (admitted PHV)
                                                       mikerice@hlawllc.com
                                                       Harrison Law LLC
                                                       141 West Jackson Boulevard
                                                       Suite 2055
                                                       Chicago, IL 60604
                                                       T: (312) 638-8776

                                                       and

                                                       */s/ John G. O'Neill*
                                                       John G. O'Neill (BBO # 630272)
                                                       oneill@sugarmanrogers.com
                                                       Sugarman, Rogers, Barshak & Cohen, P.C.
                                                       101 Merrimac Street, 9th Floor
                                                       Boston, MA 02114
                                                       Tel: (617) 227-3030

## **CERTIFICATE OF SERVICE**

I, John G. O'Neill, attorney for the defendant, Colt's Manufacturing Company LLC, hereby certify that on the 14th day of March, 2022, a true copy of the foregoing was filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be served by first-class mail, postage prepaid, upon anyone indicated as a non-registered participant.

*/s/John G. O'Neill*
John G. O'Neill