UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


ESTADOS UNIDOS MEXICANOS
     Plaintiff,

v.

SMITH & WESSON BRANDS, INC.;
BARRETT FIREARMS MANUFACTURING,          C.A. NO: 1:21-CV-11269-FDS
INC.; BERETTA U.S.A. CORP.; BERETTA
HOLDING S.P.A.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC;
GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.;
WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,
     Defendants.


**REPLY IN SUPPORT OF**
**SMITH & WESSON'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.   Smith & Wesson's Ads Do Not Violate Chapter 93A Because They are Truthful and Do Not Encourage Unlawful Activity........................................................... 2

    A.   No Authority Supports Mexico's Sweeping Reading of Chapter 93A...................... 2

    B.   Mexico's Claim Fails to State a Claim Even Under the *Soto* Test ............................ 5

II.   Mexico's Theory Would Convert Chapter 93A into a Censorship Tool, Violating the First Amendment.......................................................................................... 7

III.   Mexico Cannot Establish a Causal Link to Support Standing or Proximate Cause ............. 9

    A.   Mexico Lacks Article III Standing on its Chapter 93A Claim ................................... 9

    B.   Proximate Cause Fails as a Matter of Law ............................................................. 10

IV.   Chapter 93A Does Not Apply to Harms Caused by Cartel Violence in Mexico............... 12

V.   Mexico Failed to Plead a Section 11 Claim, and It Cannot Add a Section 9 Claim.......... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Bos.*,
620 N.E.2d 778 (Mass. 1993) ................................................................15

*Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*,
933 F. Supp. 64 (D. Mass. 1996) ...........................................................13

*Am. Shooting Sports Council, Inc. v. Att'y Gen.*,
711 N.E.2d 899 (Mass. 1999) ..................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................1, 6, 7

*Begelfer v. Najarian*,
409 N.E.2d 167 (1980) ...........................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................6

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) .............................................................................7, 8

*Bruno Int'l Ltd. v. Vicor Corp.*,
No. 14-cv-10037, 2015 WL 5447652 (D. Mass. Sept. 16, 2015) ...........14

*Bubalo v. Navegar, Inc*,
No. 96 C 3664, 1997 WL 337218 (N.D. Ill. June 13, 1997) ..................12

*Carey v. Population Servs., Int'l*,
431 U.S. 678 (1977) .................................................................................8

*Casillas v. Auto-Ordnance Corp.*,
No. C 95-3601, 1996 WL 276830 (N.D. Cal. May 17, 1996) ................12

*Clinton Hosp. Ass'n v. Corson Grp., Inc.*,
907 F.2d 1260 (1st Cir. 1990) ...............................................................13

*Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*,
958 F.3d 38 (1st Cir. 2020) .....................................................................9

*Datacomm Interface, Inc. v. Computerworld, Inc.*,
489 N.E.2d 185 (Mass. 1986) ..................................................................3

*Davis v. United States*,
670 F.3d 48 (1st Cir. 2012) ....................................................................11

*Entrialgo v. Twin City Dodge, Inc.*,
333 N.E.2d 202 (Mass. 1975) ................................................................15

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
No. 11-cv-10807, 2014 WL 304070 (D. Mass. Jan. 28, 2014) ..............14

*FTC v. Sperry & Hutchinson Co.*,
405 U.S. 233 (1972) .................................................................................3

**Page(s)**

*Ganim v. Smith & Wesson Corp.*,
780 A.2d 98 (Conn. 2001) ........................................................................11, 12

*Geis v. Nestlé Waters N. Am., Inc.*,
321 F. Supp. 3d 230 (D. Mass. 2018) ..................................................................13

*Gill v. Gulfstream Park Racing Ass'n*,
399 F.3d 391 (1st Cir. 2005) ..........................................................................2, 13

*In re Amf Inc.*,
95 F.T.C. 310 (1980) ..........................................................................................5

*In re Beck's N. Am., Inc.*,
127 F.T.C. 379 (1999) ........................................................................................5

*In re Benton & Bowles, Inc.*,
96 F.T.C. 619 (1980) ..........................................................................................5

*In re Gen. Foods Corp.*,
86 F.T.C. 831 (1975) ..........................................................................................5

*In re Hudson Pharm. Corp.*,
89 F.T.C. 82 (1977) ............................................................................................5

*In re MACE Sec. Int'l, Inc.*,
117 F.T.C. 168 (1994) ........................................................................................5

*In re Mego Int'l, Inc.*,
92 F.T.C. 186 (1978) ..........................................................................................5

*In re R. M. J.*,
455 U.S. 191 (1982) ............................................................................................7

*In re Uncle Ben's, Inc.*,
89 F.T.C. 131 (1977) ..........................................................................................5

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) ..............................................................................11

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009) .............................................................................6

*Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*,
781 N.E. 2d 787 (Mass. 2003) ..........................................................................14

*Lamar Outdoor Advert., Inc. v. Miss. State Tax Comm'n*,
701 F.2d 314 (5th Cir. 1983) ..........................................................................8, 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..........................................................................................10

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) ............................................................................................8

*Lyon v. Caterpillar, Inc.*,
    194 F.R.D. 206 (E.D. Pa. 2000)...........................................................................13

*McCarthy v. Olin Corp.*,
    119 F.3d 148 (2d Cir. 1997)................................................................................12

*McCarthy v. Sturm, Ruger & Co.*,
    916 F. Supp. 366 (S.D.N.Y. 1996).....................................................................12

*Merrill v. Navegar, Inc.*,
    28 P.3d 116 (Cal. 2001) .....................................................................................12

*Mkt. Masters-Legal v. Parker Waichman Alonso, LLP*,
    No. 10-cv-40119, 2011 WL 196929 (D. Mass. Jan. 20, 2011)..........................14

*Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*,
    496 U.S. 91 (1990) ...............................................................................................7

*Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*,
    No. 13-cv-11302, 2014 WL 1203106 (D. Mass. Mar. 19, 2014) .......................14

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*,
    413 U.S. 376 (1973)..............................................................................................8

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976)................................................................................................9

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) ..................................................................4, 5, 11, 12

*State v. Guinn*,
    537 N.E.2d 656 (Ohio 1989) ................................................................................8

*Szalla v. Locke*,
    657 N.E.2d 1267 (Mass. 1995)...........................................................................14

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002)..............................................................................................8

*United States v. Standard Oil Co. of Cal.*,
    332 U.S. 301 (1947)............................................................................................12

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982)..............................................................................................8

*Walsh v. TelTech Sys., Inc.*,
    821 F.3d 155 (1st Cir. 2016)..........................................................................2, 10

*Weber v. Sanborn*,
    502 F. Supp. 2d 197 (D. Mass. 2007) ................................................................14

Page(s)

**STATUTES**

15 U.S.C. § 45................................................................................................................3

Mass. Code Regs. 3.16...................................................................................................3

Mass. Code Regs. 16.03.................................................................................................4

Mass. Code Regs. 16.04.................................................................................................4

Mass. Code Regs. 16.05.................................................................................................4

Mass. Gen. Laws ch. 93A, § 2 ......................................................................................4

Mass. Gen. Laws ch. 93A, § 9 ....................................................................................15

Mass. Gen. Laws ch. 93A, § 11 ......................................................................12, 13, 14

Pub. L. No. 103-312, 108 Stat. 1691 (1994)................................................................3

**OTHER AUTHORITIES**

29 Fed. Reg. 8324 (July 2, 1964)..................................................................................3

FTC, *Policy Statement on Unfairness* (Dec. 17, 1980)................................................3

52 Michael C. Gilleran, *Law of Chapter 93A* § 8.5 (1989) .......................................14

# <u>INTRODUCTION</u>

Mexico's opposition to Smith & Wesson's individual motion to dismiss confirms that it does not have even a remotely plausible claim of "unlawful advertising" under the Massachusetts Consumer Protection Act ("Chapter 93A"). Notably, Mexico now abandons its claim that Smith & Wesson's advertising is somehow false or misleading. *See* ECF 97 ("Opp.") at 6. Instead, it relies entirely on the vague assertion—unsupported by any fact alleged in the complaint—that the company's ads somehow "encourage[]" or "promote" unlawful conduct. *Id.* at 5-6. But that is nothing more than a conclusory assertion. Mexico does not identify a single word in any Smith & Wesson ad that says anything about unlawful conduct, much less *advocates or promotes* such conduct. The complaint thus fails to allege any actual *facts* to support Mexico's legal theory.

As the Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the complaint does not identify a single Smith & Wesson advertisement that depicts or even mentions illegal activity, Mexico's Chapter 93A claim fails for that reason alone—even under Mexico's own preferred legal theory.

The claim also fails for the other reasons stated in Smith & Wesson's initial motion. *First*, Mexico cannot identify any case applying Chapter 93A to ban truthful and non-misleading ads for lawful products that do not depict or say anything about unlawful or unsafe conduct. *Second*, the First Amendment would not allow such flagrant censorship even if state law tried to impose it. *Third*, there is no causal link—much less a *proximate* link—between Smith & Wesson's ads and any harms inflicted by drug cartels in Mexico. *Fourth*, Chapter 93A does not apply here because it protects Massachusetts consumers, not foreign sovereigns harmed by criminals in their own streets. And *fifth*, Mexico pled a claim under the wrong section of Chapter 93A, and it could not state a valid claim even if it had pled under the proper section.

## ARGUMENT

I.      **Smith & Wesson's Ads Do Not Violate Chapter 93A Because They are Truthful and Do Not Encourage Unlawful Activity.**

Mexico now abandons any pretense that Smith & Wesson's advertising is false or misleading, and instead relies on its argument that Smith & Wesson's ads somehow "encourage[] unlawful use of dangerous products." Opp. 6. This argument has two glaring deficiencies. First, despite a direct challenge, *see* ECF 72 at 14, Mexico cannot identify even a *single* Massachusetts case imposing Chapter 93A liability on this theory. It tries to analogize to FTC cases involving the "cigarette rule," but those cases are so obviously inapposite that Mexico barely even tries to describe them, and instead only gestures vaguely in their direction. Second, even if its legal theory were valid, Mexico cannot identify a single Smith & Wesson ad that says anything about unlawful activity, much less advocates or encourages it. Thus, Mexico's theory not only lacks legal support, it also lacks supporting factual allegations. The claim should be dismissed— indeed, the First Amendment would not allow this type of claim based on truthful ads for lawful products in the absence of any advocacy of unlawful conduct. *Infra* pp. 7-9.

      A.      **No Authority Supports Mexico's Sweeping Reading of Chapter 93A.**

Mexico tacitly concedes Defendants' point that no court, state or federal, has *ever* applied Chapter 93A to impose liability on truthful and non-misleading ads for lawful products like the ones in this case—in the absence of any advocacy of unlawful activity, and without any depiction of unsafe or unlawful conduct. *See* ECF 72 at 14. Nor does Mexico dispute that federal courts should not recognize "novel" theories under Massachusetts law that no state court has ever authorized. *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 164 (1st Cir. 2016). As the First Circuit has explained, "[a] federal court sitting in diversity cannot be expected to create new doctrines expanding state law." *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005). But that is exactly what Mexico is seeking to do in this case.

Mexico says that its claim here is not "novel" because Chapter 93A incorporates FTC precedent, including the "cigarette rule." Opp. 5. According to Mexico, the FTC follows a "cigarette rule" that prohibits any "unfair" advertising that violates the vague standard of being "immoral, unethical, oppressive, or unscrupulous." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (citing 29 Fed. Reg. 8324, 8355 (July 2, 1964)). But that is a glaring misstatement of the law, as any such vague ban on speech would violate the First Amendment. *See infra* pp. 7-9. In fact, the FTC itself has disavowed Mexico's position, explaining that it has "never relied" on the "immoral, unethical, [or] oppressive" test as a "basis for a finding of unfairness," and it will not do so "in the future." FTC, *Policy Statement on Unfairness* (Dec. 17, 1980), https://tinyurl.com/2c4st75a. In 1994, Congress ratified the FTC's Policy Statement on Unfairness, making clear that the vague "immoral, unethical, oppressive, or unscrupulous" standard is no longer good law. *See* Pub. L. No. 103-312, § 9, 108 Stat. 1691, 1695 (1994) (codified as amended at 15 U.S.C. § 45(n)). Thus, contrary to Mexico's argument, FTC precedent flatly rejects, rather than endorses, its legal theory.

Mexico also cites *Datacomm Interface, Inc. v. Computerworld, Inc.*, 489 N.E.2d 185, 196 (Mass. 1986), but that case did not come close to endorsing a ban on any truthful, non-misleading advertising. *Datacomm* was not an unlawful-advertising case at all, but instead involved a businessman who "knowingly made a false representation" to a competitor to "induce" it to drop a lawsuit. *Id*. at 197. That is obviously nothing like this case. To be sure, *Datacomm* recited the FTC's boilerplate standard for "unfair" business practices. *Id*. at 196. *Datacomm* also recited the Massachusetts Attorney General's regulation stating that a business practice violates Chapter 93A if it "is oppressive or otherwise unconscionable in any respect." *Id*. (quoting 940 Mass. Code Regs. 3.16). But it did not even hint that Chapter 93A bans the truthful and non-misleading advertising of lawful products. Again, no case or legal authority has *ever* endorsed Mexico's claim that the type of advertising in this case violates Chapter 93A.

Similarly, Mexico cites *American Shooting Sports Council, Inc. v. Attorney General*, 711 N.E.2d 899, 903 (Mass. 1999), but again that case had nothing to do with unlawful advertising. Instead, it involved the Massachusetts Attorney General's power to "make rules and regulations" deeming business practices unfair under Chapter 93A. *Id.* at 903 (quoting Mass. Gen. Laws ch. 93A, § 2(c)). In particular, the court held that the Attorney General had authority to promulgate regulations forbidding the *sale* of certain handguns in the State, including those with easily-defaceable serial numbers, 940 Mass. Code Regs. 16.03, those made with inferior parts, *id.* 16.04, and those lacking child-proof safeties, *id.* 16.05. Mexico does not allege that Smith & Wesson violated any of those sales regulations—all of which "exempt[] manufacturers from coverage, instead placing liability on local firearms dealers." *Am. Shooting Sports*, 711 N.E.2d at 908 n.21

To the extent *American Shooting* said anything about marketing rules, it undercuts Mexico's position. Specifically, the court emphasized that,

> The Attorney General may not use his [Chapter 93A] authority to pursue general policy goals or public issues that limit or ban the sale of lawful products under the general rubric that purchasers of the products, or third parties who may come into contact with them, would be better off if the products were not marketed at all.

*Id.* at 903. That exactly describes the claim here: Mexico seeks to use Chapter 93A to impose its own policy preferences on U.S. businesses, in the apparent belief that *any* marketing of semi-automatic firearms attracts and encourages criminals to use them for improper purposes, such that they should not be "marketed at all." *Id.*

In the absence of a case interpreting Massachusetts law its way, Mexico relies on the Connecticut Supreme Court's decision in *Soto v. Bushmaster Firearms International, LLC* to claim that "[t]he FTC Act and its various state analogues also have been applied in numerous instances to the wrongful marketing of other potentially dangerous consumer products." 202 A.3d 262, 307 & n.51 (Conn. 2019). But the cases *Soto* cites are far afield from this case. Indeed,

*all* of the advertising cases cited by *Soto* either involved false statements of fact, or else depicted products being used in an unsafe or unlawful manner (mostly by children)—thus falsely suggesting that such usage was lawful or appropriate.[1] By contrast, Mexico doesn't allege that Smith & Wesson's advertising depicts the unlawful or unsafe use of any product. Moreover, as *Soto* itself notes, the FTC has *refused* to "act on [a] request by various advocacy groups to adopt rules regulating firearm advertising." *Id.* Thus, again, it is clear that the FTC itself does not agree with Mexico's position that consumer-protection law somehow prohibits truthful and non-misleading ads about the lawful features of firearms. With due respect to the 4-3 majority of the Connecticut Supreme Court in *Soto*, its decision was simply erroneous on this point.

### B. Mexico's Claim Fails to State a Claim Even Under the *Soto* Test.

Even if *Soto* supplied the proper standard for unlawful advertising under Chapter 93A, Mexico's complaint still fails to allege facts supporting a claim. As Mexico acknowledges, the test under *Soto* is whether an advertisement "proposes an illegal transaction" or "promotes or encourages an unlawful activity." Opp. 6 n.12 (quoting *Soto*, 202 A.3d at 311 n.56). As Smith & Wesson explained in its opening brief (14-15), the advertisements identified in the complaint do not mention or depict any unlawful activity—much less advocate, promote, or encourage it. Instead, the advertisements refer, for example, to recreational shooting (and highlight the benefit of cheap ammunition). That is a perfectly lawful activity pursued across the country (at least this one) every day. *Id.* Smith & Wesson's ads do not encourage "combat" situations, but do advertise to law enforcement, and also advertise firearms for the lawful and constitutionally-protected purpose of home defense. *Id.* Mexico does not contest any of this.

---

[1] *See In re Beck's N. Am., Inc.*, 127 F.T.C. 379 (1999) (boating drunk); *In re MACE Sec. Int'l, Inc.*, 117 F.T.C. 168, 169-72 (1994) (falsely suggesting pepper spray immediately stops attackers); *In re Benton & Bowles, Inc.*, 96 F.T.C. 619 (1980) (riding bicycles unsafely); *In re Amf Inc.*, 95 F.T.C. 310 (1980) (same); *In re Mego Int'l, Inc.*, 92 F.T.C. 186 (1978) (playing with electrical toys near water); *In re Uncle Ben's, Inc.*, 89 F.T.C. 131 (1977) (cooking food without adult supervision); *In re Hudson Pharm. Corp.*, 89 F.T.C. 82 (1977) (encouraging taking too many vitamins); *In re Gen. Foods Corp.*, 86 F.T.C. 831 (1975) (eating raw plants found in nature).

In an attempt to support its theory, Mexico cites to a broad range of 35 paragraphs in its complaint and vaguely asserts that Smith & Wesson's ads "encourage[e]" the "unlawful" use of firearms "to battle the police and military." Opp. 6 (citing Compl. ¶¶ 319-52, 552-53). But again, the cited paragraphs do not identify a *single* ad that depicts or says anything about "battling the police and military," or any other unlawful activity. Instead, the closest those paragraphs come is the purely conclusory assertion that Smith & Wesson's ads somehow "encourage[] and promote[] the misuse" of firearms. Compl. ¶ 344. But that type of conclusory assertion does not state a claim under the federal pleading standards of *Iqbal* and *Twombly*.

To state a claim, a complaint must contain more than "naked assertion[s]" that are "devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. In *Twombly*, for example, it did not suffice for the complaint to nakedly assert that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another." *Id*. at 679 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007)). Instead, the complaint had to include some "well-pleaded, nonconclusory factual allegation" that, if proved true, would substantiate the claimed violation. *Id*. at 680. The same is true here. It is not enough for Mexico to *say* that Smith & Wesson's ads encouraged or promoted unlawful activity; it must allege *facts* that, if proven true, would support that conclusion. *Id*. at 678-79. This claim is about *public advertising*; if Mexico had a valid claim, surely it could allege a particular Smith & Wesson ad, and quote or depict words or images advocating unlawful violence. But Mexico doesn't—because it can't. The lack of any such allegation is especially important here because Mexico is suing over ads that are "prima facie protected by the First Amendment," thus creating the "danger that the mere pendency of the action will chill the exercise of First Amendment rights." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009). Accordingly, Mexico must assert even "more specific allegations than would otherwise be required." *Id*. Instead, it cannot even satisfy the ordinary *Iqbal/Twombly* standard.

Mexico says that it hopes to find "evidence in discovery to support" its assertion that Smith & Wesson's ads promote and encourage violence. Opp. 6. But the Supreme Court has made clear that a plaintiff cannot "unlock the doors of discovery" based on mere conclusory assertions. *Iqbal*, 556 U.S. at 678-79. And that is especially true here, where all of the company's advertising is publicly available. If any of that advertising actually promoted or encouraged violence, Mexico could easily obtain it and allege it in the complaint without any need for discovery. It speaks volumes that Mexico chose to include two actual Smith & Wesson ads in its complaint—surely the best it could find to support its theory—which, on their face, simply do not promote or encourage unlawful activity of any kind. *See* Compl. ¶ 324.

## II. Mexico's Theory Would Convert Chapter 93A into a Censorship Tool, Violating the First Amendment.

If Massachusetts law did seek to ban the ads at issue here, it would violate the First Amendment. The ads at issue are truthful and not misleading (much less "inherently" misleading, *cf. In re R. M. J.*, 455 U.S. 191, 207 (1982)); they refer exclusively to lawful products; and they do not depict, mention or even imply unlawful activity. Accordingly, the ads do not fit any recognized category of unprotected speech, such as for ads that "propose[] unlawful transactions" or constitute the "incitement" of imminent lawless action. *See* ECF 72 at 18-20. And this requires dismissal, since the question of whether the "inherent character of a statement places it beyond the protection of the First Amendment is a question of law" properly resolved on the pleadings. *Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 108 (1990). In response, Mexico spends only three sentences and a pair of footnotes addressing the First Amendment issue. Opp. 6 & nn.11-12. But its perfunctory arguments fail.

*First*, Mexico claims that *Brandenburg*'s incitement test "is not the test for imposing civil liability on *commercial* speech." Opp. 6. But that is both wrong and irrelevant. It is irrelevant because Smith & Wesson's ads do not advocate unlawful violence *at all*, so it makes no

difference whether such advocacy could be punished under something less than the *Brandenburg* standard. But in any event, the Supreme Court itself has applied the *Brandenburg* test to commercial advertising, and this Court should do the same. *See Carey v. Population Servs., Int'l*, 431 U.S. 678, 701 (1977) ("[N]one of the advertisements in this record can even remotely be characterized as 'directed to inciting or producing imminent lawless action and . . . likely to incite or produce such action.'" (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). Indeed, "there is no reason to apply anything other than [the] usual rule for evaluating solicitation and incitement simply because the speech in question happens to be commercial." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 579 (2001) (Thomas, J., concurring in part).[2]

*Second*, Mexico cites an unpublished order of a California state trial court "collecting cases" that it considers helpful. Opp. 6 n.12. But none of the cited cases remotely supports its position. One involved a ban on sales of drug paraphernalia in proximity to promotional materials expressly "encouraging illegal use of cannabis or illegal drugs." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 496 (1982). Another upheld a ban on discriminatory "help-wanted" ads because the placement of such ads *itself* constituted the prohibited conduct of employment discrimination. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 388 (1973). Another actually *struck down* a restriction on pharmaceutical advertising, declining to credit the "fear that people would make bad decisions if given truthful information." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002).

Most notably, the last case cited by Mexico struck down a restriction on liquor ads. The court explained that "even if we assume that some consumers are bound to engage in illegal acts based upon information received from [the] advertising, we cannot conclude that such speech is therefore outside the scope of the First Amendment." *Lamar Outdoor Advert., Inc. v. Miss. State*

---

[2] Mexico cites a single, barely-reasoned state court decision—*State v. Guinn*, 537 N.E.2d 656, 659 (Ohio 1989). But that perfunctory analysis is not only unpersuasive, it is also dicta because the court found it "clear that the advocacy" in that case qualified as incitement "even if the *Brandenburg* principle" applied. *Id*. at 660.

*Tax Comm'n*, 701 F.2d 314, 332 (5th Cir. 1983). Rather, the First Amendment "require[s] that the 'unlawful activity' exception be limited to those categories of commercial speech already identified by the Supreme Court—those that *propose a transaction illegal in itself, or actively promote illegal activity*." *Id*. (emphasis added) (citing cases). Mexico fails that test.

In short, Mexico's brief confirms that there is no case finding First Amendment protection lacking for the type of speech at issue here—ads that are truthful and non-misleading, advertise lawful products, and do not mention or depict any unlawful or unsafe activity. And that conclusion requires dismissal.

### III.    Mexico Cannot Establish a Causal Link to Support Standing or Proximate Cause.

As Smith & Wesson has explained, there is no causal link between its advertising and any injury suffered by Mexico that could even plausibly support Article III standing, much less proximate cause. *See* ECF 72 at at 5-6, 7-9. Mexico has no effective response on either point.

#### A.    Mexico Lacks Article III Standing on its Chapter 93A Claim.

As to standing, the question is whether Smith & Wesson's advertising actually *caused* the third-party drug cartels to inflict any more harm on the Mexican government than they otherwise would have. If not, then Mexico lacks standing because its injuries are not "fairly traceable" to the advertising, but instead to the "independent" acts of third parties that would have happened anyway. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976); *Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*, 958 F.3d 38 (1st Cir. 2020). Instead of addressing this point, Mexico responds with a non-sequitur. It insists that it "'need not show that '[Smith & Wesson's] actions are the very last step in the chain of causation[] for the injury,' or that the defendant's conduct is the sole cause of the injury." Opp. 8. But Mexico *does* need to show that Smith & Wesson's advertising had some actual causal influence on the harms inflicted by Mexican drug cartels.  On this point, Mexico says nothing. Indeed, its brief tacitly concedes that

the complaint lacks any allegation that the cartels have ever even *seen* the ads in question, much less acted *because* of them. Mexico also admits that the cartels are sophisticated actors that have spent "decades" acquiring weapons to carry out their crimes. *Id.* This refutes the notion that Smith & Wesson's ads in any way caused the cartels to commit their heinous crimes.

**B.     Proximate Cause Fails as a Matter of Law**

As to proximate cause, in addition to the remoteness issues detailed elsewhere (ECF 67 at 31-38), Mexico has no answer to the First Circuit's specific holding that there is no proximate cause under Chapter 93A in this type of case: When the "misuse of [the] defendant's product [is] 'the sole cause' of plaintiff's injuries," advertising that highlights both "illegitimate and legitimate uses" of that product does not qualify as a proximate cause of those injuries. *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160, 163-64 (1st Cir. 2016). After all, when *any* manufacturer advertises its products, it can almost always "foresee" that someone at some point might (mis)use those products to commit a crime. But that does not make the manufacturer the proximate cause of the crime—especially when there are so many steps between the manufacturer's conduct and the ultimate harm alleged. Mexico's responses are unconvincing.

*First*, Mexico tries to distinguish *Walsh* by claiming that it involved ads "*discourag[ing]* improper use of [a] product." Opp. 10. But that is patently false. The ads there made express "references to both illegitimate and legitimate uses," and only the product's terms of service (*not* featured in the ads) disclaimed the illegitimate uses. 821 F.3d at 163-64. If anything, the present case is even farther from the line because Smith & Wesson's ads contain no reference to any illegitimate use of its products at all. Nor does it matter that the First Circuit decided *Walsh* "at summary judgment." Opp. 10. The law is clear that "[i]f a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).

*Second*, Mexico is wrong to say (at 9 & nn.22, 24) that the First Circuit has endorsed its notion that "foreseeability" is all that matters, regardless of remoteness of harm or the number of intervening criminal acts. Even when harm is foreseeable, proximate cause turns on how "direct" the "causal chain [is] between the [defendant's] act and the harm to the plaintiff." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 25 (1st Cir. 2016) (faulting plaintiff for an "attenuated causal analysis"). Thus, "[a]lthough foreseeability is a prime element in proximate cause, the concept is freighted with policy concerns about open-ended liability for remote effects, which courts may cut off under a variety of labels (lack of duty, unforseeability, intervening cause, scope of the risk)." *Davis v. United States*, 670 F.3d 48, 56 (1st Cir. 2012). In *Davis*, there was proximate cause because the harm was both foreseeable and not remote, as the *defendants* had "*deliberately intervened* to prevent their own dangerous informants from being caught and prosecuted." *Id* (emphasis added). Here, by contrast, the causal chain is far more attenuated.

*Third*, Mexico has no answer to the point that *Soto* itself would have found proximate cause lacking had the plaintiff been a governmental entity instead of direct victims of violence. Mexico argues that *Ganim*—which *Soto* embraced, and which rejected proximate cause for a governmental plaintiff—did not "seriously engage" with "the theory that advertising promoting unlawful misuse of firearms could be foreseeably linked to municipal harms." Opp. 10. Not so. In fact, the plaintiffs in *Ganim* advanced—and the court considered—the exact argument Mexico advances here, namely, that firearm manufacturers "exploit the criminal market by targeting their advertising to persons who they know or should know will use the guns illegally." *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 113 (Conn. 2001). That was not enough to establish that the advertising was the proximate cause of any harm the governmental plaintiffs. *Id.* at 134.

Similarly unavailing is Mexico's claim that—unlike the governmental plaintiffs in *Ganim*—it is a "direct victim" of gun violence because it alleges "physical damage to its property and its personnel." Opp. 11 & n.33. To start, such allegations do not establish direct

injury. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 313 (1947). But either way, the plaintiffs in *Ganim* did argue direct injury by claiming that some harm would "occur even without" effects on their citizens. 780 A.2d at 127. The Court dismissed all the same, finding it "difficult," after "considering the breadth and gravity of the allegations," to "take seriously a contention that all [the government] really claim[s] standing for are those occasional instances" of direct injury. *Id.* And it held that, even if the government did suffer some direct injury, the sheer "length of the causation chain" and the "difficulties of potential proof" still required dismissal on remoteness grounds. *Id.* The same is equally true here.

*Fourth*, Mexico attempts to distinguish *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 369 (S.D.N.Y. 1996), *aff'd sub nom. McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997), on the ground that it "involved the sale of ammunition rather than a firearm." Opp. 12 n.37. But that is a distinction without a difference. While Mexico notes that *McCarthy* conflicts with *Soto*, it offers no explanation as to why *Soto* is "better reasoned." *Id.* Nor, again, can Mexico truly embrace *Soto*, which reaffirmed *Ganim*'s holding that proximate cause is *lacking* when the plaintiff is a governmental entity rather than a direct victim. *See Soto*, 202 A.3d at 291-92.

*Finally*, Mexico tries to distinguish three cases on the ground that those plaintiffs ultimately failed to offer evidence that the individuals who committed gun violence actually came in contact with firearm manufacturers' advertising. Opp. 11-12 & n.38.[3] But that only further dooms Mexico's complaint. As noted above, the complaint here fails to allege *any* facts showing that *any* criminal in Mexico ever saw, much less acted upon, a Smith & Wesson ad.

## IV.   Chapter 93A Does Not Apply to Harms Caused by Cartel Violence in Mexico.

Mexico's Chapter 93A claim also fails because it does not allege any consumer-protection issue that arises "primarily and substantially within" Massachusetts. Mass. Gen. Laws

---

[3] *See Merrill v. Navegar, Inc.*, 28 P.3d 116, 132 (Cal. 2001); *Bubalo v. Navegar, Inc,* No. 96 C 3664, 1997 WL 337218, at *9 (N.D. Ill. June 13, 1997); *Casillas v. Auto-Ordnance Corp.*, No. C 95-3601, 1996 WL 276830, at *3 (N.D. Cal. May 17, 1996).

ch. 93A, § 11. As Smith & Wesson noted in its opening brief, Chapter 93A was designed to protect *Massachusetts consumers*, not foreign sovereigns. Massachusetts applies a three-factor test to determine whether a claim has a sufficient nexus to Massachusetts to merit application of Chapter 93A. *See* ECF 72 at 10-11; *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1265-66 (1st Cir. 1990). Mexico does not even try to satisfy that three-part test. Instead, it relies on two misguided objections to Smith & Wesson's argument.

*First*, Mexico quibbles that Chapter 93A does not "protect[] only Massachusetts residents." Opp. 15. Even that is up for considerable debate. Mexico's only citation concedes that no Massachusetts court has ever engaged in a "discussion of this particular [statutory] issue." *Geis v. Nestlé Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018). And Mexico does not dispute that extending consumer-protection claims to consumers harmed outside of the state would flatly contradict the traditional approach. *See* ECF 72 at 10-11; *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 216 (E.D. Pa. 2000). But even if *some* out-of-state individuals could bring Chapter 93A claims, it does not follow that Mexico could do so, especially on the facts of this case. Mexico is not merely an out-of-state consumer, it is an *out-of-nation sovereign*. And its alleged injuries here necessarily involve the independent actions of *Mexican criminals* after they (purportedly) encounter Smith & Wesson's advertising *in Mexico*. These considerations place this case far beyond the pale of what any Massachusetts court has ever allowed. A federal court sitting should not be the first to expand state law in this way. *Gill*, 399 F.3d at 402.

*Second*, Mexico argues that this issue should not be resolved on a motion to dismiss because Smith & Wesson carries the "burden of proof" to show that the claim does not arise "primarily and substantially" in Massachusetts. Opp. 15 (quoting Mass. Gen. Laws ch. 93A, § 11). But this Court has *repeatedly* granted motions to dismiss in Chapter 93A cases where the allegations in the complaint, even if true, would not "constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts." *Am. Mgmt. Servs., Inc. v. George S. May*

*Int'l Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996).[4] Mexico's *own* cited authority (Opp. 15 n.53 (citing *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 781 N.E. 2d 787, 799 (Mass. 2003)), clearly "permit[s] the dismissal of a claim in the circumstance where a plaintiff has not pled that it suffered a loss within the Commonwealth." *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-cv-10037, 2015 WL 5447652, at *19 (D. Mass. Sept. 16, 2015). That is exactly the case here. Even assuming every fact alleged in the Complaint is true—and drawing every inference in Mexico's favor—"the center of gravity of the circumstances that g[ive] rise to [Mexico's] claim[s]" would still clearly fall outside of Massachusetts. *Id.* at *18.

## V.     Mexico Failed to Plead a Section 11 Claim, and It Cannot Add a Section 9 Claim.

Mexico does not dispute that its complaint expressly asserts a claim under Section 11 but does not mention Section 9 at all. That is a fatal problem because Section 11 applies only when there is some commercial interaction between the parties, which Mexico admits is not the case here. To get around this problem, Mexico tries to argue that the complaint should be "broadly" read to assert a claim under Section 9, or that it should be allowed to add a new claim. But no such reading is fairly possible, and it is too late to add a Section 9 claim.

First, Mexico does not have a claim under Section 11, which by its terms applies only to those who are injured by "an unfair or deceptive act" while "engage[d] in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 11. Thus, as the text suggests, a claim under Section 11 must *itself* relate to some "commercial transaction." *Szalla v. Locke*, 657 N.E.2d 1267, 1269 (Mass. 1995). Mexico itself concedes as much, describing the Section 11 test as "whether the defendant's conduct giving rise to the 93A violation occurred in connection with a plaintiff business acting in a business context." Opp. 14 n.44 (quoting 52 Michael C. Gilleran,

---

[4] *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-cv-10037, 2015 WL 5447652, at *18-19 (D. Mass. Sept. 16, 2015); *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, No. 11-cv-10807, 2014 WL 304070, at *4 (D. Mass. Jan. 28, 2014); *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, No. 13-cv-11302, 2014 WL 1203106, at *9 (D. Mass. Mar. 19, 2014); *Mkt. Masters-Legal v. Parker Waichman Alonso, LLP*, No. 10-cv-40119, 2011 WL 196929, at *3 (D. Mass. Jan. 20, 2011); *Weber v. Sanborn*, 502 F. Supp. 2d 197, 199 (D. Mass. 2007).

*Law of Chapter 93A* § 8.5 (1989)). Mexico tries to satisfy that test by pointing out that, in general, it does sometimes act like a business by "engag[ing] in trade or commerce," Compl. ¶ 555, and that firearm violence disrupts its commercial operations, *see id.* ¶ 448(*l*). Opp. 12. But the Massachusetts Supreme Court has rejected this type of argument: That a plaintiff sometimes engages in business does not mean that all injuries it sustains arise in a business context. *See All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Bos.*, 620 N.E.2d 778, 780 (Mass. 1993). Although Section 11 may not require strict privity, *cf.* Opp. 13 & n.43, it does require that the claim arise out of some commercial interplay between the plaintiff and the defendant. *See All Seasons*, 620 N.E.2d at 780; *Begelfer v. Najarian*, 409 N.E.2d 167, 176 (1980). But Mexico has nowhere alleged any such interplay with Smith & Wesson, foreclosing relief under Section 11.

Moving away from its Section 11 claim, Mexico now tries to bring a new claim under Section 9, which permits suit by "[a]ny person, other than a person entitled to bring action under section eleven." *See* Mass. Gen. Laws ch. 93A, § 9. For obvious reasons, however, this new claim fails. To start, Mexico's Complaint does not "broadly allege[] a violation of the entire" Chapter 93A. Opp. 13. It specifically—and exclusively—references Section 11. *See* Compl. ¶ 555. Reading the Complaint charitably is one thing; allowing a plaintiff to rewrite a complaint in order to transmute its cause of action in response to a motion to dismiss is another.

Nor could Mexico simply substitute a Section 9 claim at this late hour. "At least thirty days *prior*" to filing a Section 9 action, a plaintiff must send the defendant "a written demand for relief." Mass. Gen. Laws ch. 93A, § 9(3) (emphasis added). Here, however, Mexico admits that it sent a demand letter only "*after* the Complaint was filed." Opp. 13 (emphasis added). The point of the demand-letter requirement is to save judicial resources by "facilitat[ing] the settlement and damage assessment aspects" of Chapter 93A. *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975). Those purposes would be undermined if a plaintiff could merely send a demand letter *after* suing. Thus, failure to file a timely demand letter is a "bar to suit." *Id.*

Respectfully submitted,

Dated: March 14, 2022

Defendant,
Smith & Wesson Brands, Inc.,
By its attorneys,

_____/s/ Andrew E. Lelling_____
Andrew E. Lelling (BBO No. 631859)
alelling@jonesday.com
100 High Street
JONES DAY
Boston, MA 02110-1781
Phone: (617) 449-6856
Fax: (617) 449-6999

Noel J. Francisco (admitted PHV)
njfrancisco@jonesday.com
Anthony J. Dick (admitted PHV)
ajdick@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 14, 2022, the foregoing document was served upon all counsel of record through this Court's electronic filing system as identified in the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

_____/s/ Andrew E. Lelling_____
Andrew E. Lelling (BBO No. 631859)
alelling@jonesday.com
100 High Street
JONES DAY
Boston, MA  02110-1781
Phone: (617) 449-6856
Fax: (617) 449-6999