UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


ESTADOS UNIDOS MEXICANOS
     Plaintiff,

v.

SMITH & WESSON BRANDS, INC.;
BARRETT FIREARMS MANUFACTURING,          C.A. NO: 1:21-CV-11269-FDS
INC.; BERETTA U.S.A. CORP.; BERETTA
HOLDING S.P.A.; CENTURY
INTERNATIONAL ARMS, INC.; COLT'S
MANUFACTURING COMPANY LLC;
GLOCK, INC.; GLOCK GES.M.B.H.;
STURM, RUGER & CO., INC.;
WITMER PUBLIC SAFETY GROUP, INC.
D/B/A INTERSTATE ARMS,
     Defendants.


**JOINT REPLY IN SUPPORT OF
DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     Mexico Lacks Article III Standing ................................................................. 3

II.    Mexican Law Does Not Govern This Case .................................................... 5

     A.    The PLCAA Bars Suits in U.S. Courts Regardless of the Source of Tort Law ........... 5

     B.    Massachusetts Choice-of-Law Rules Require the Application of U.S. Law .............. 6

     C.    International Comity Prohibits Applying Mexican Law Here .................................... 9

III.   The PLCAA Bars all of Mexico's Claims ..................................................... 11

     A.    This Is Not an "Extraterritorial" Application of the PLCAA .................................. 11

     B.    The Predicate Exception Does Not Apply ............................................................ 17

          1.    The predicate exception is limited to firearms-specific statutes ...................... 17

          2.    Defendants have not violated any firearms-specific statute ............................ 21

          3.    No predicate violation proximately caused any harm to Mexico .................... 25

          4.    Predicate violations do not authorize independent claims .............................. 30

     C.    The "Negligence Per Se" Exception Does Not Apply ............................................ 31

     D.    Federalism Concerns Do Not Justify a Narrow Construction of the PLCAA ........... 32

IV.   Defendants Have No Cognizable Legal Duty to Foreign Governments Like Mexico ....... 34

V.    Manufacturing and Selling Lawful Firearms Is Not a "Public Nuisance" ......................... 34

**Page(s)**

CASES

Adamian v. Three Sons, Inc.,
233 N.E.2d 18 (Mass. 1968) ...................................................................................32

Akins v. District of Columbia,
526 A.2d 933 (D.C. 1987) .......................................................................................27

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
459 U.S. 519 (1983)..................................................................................................26

Bank of Am. Corp. v. City of Miami,
137 S. Ct. 1296 (2017)..............................................................................................26

Barber Lines A/S v. M/V Donau Maru,
764 F.2d 50 (1st Cir. 1985) ......................................................................................26

Breeden v. Novartis Pharms. Corp.,
646 F.3d 43 (D.C. Cir. 2011) ...................................................................................27

Bushkin Assocs., Inc. v. Raytheon Co.,
473 N.E.2d 662 (Mass. 1985) ...............................................................................6, 9

Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.,
295 F.3d 59 (1st Cir. 2002).......................................................................................11

City of Boston v. Smith & Wesson Corp.,
No. 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000) .........................29

City of Chicago v. Beretta U.S.A. Corp.,
821 N.E.2d 1099 (Ill. 2004)......................................................................................29

City of Cincinnati v. Beretta U.S.A. Corp.,
768 N.E.2d 1136 (Ohio 2002) ............................................................................29, 35

City of Gary ex rel. King v. Smith & Wesson Corp.,
801 N.E.2d 1222 (Ind. 2003) ...................................................................................29

City of Gary v. Smith & Wesson Corp.,
126 N.E.3d 813 (Ind. Ct. App. 2019)..................................................................18, 25

City of New York v. Beretta U.S.A. Corp.,
524 F.3d 384 (2d Cir. 2008)............................................................................17, 18, 20

City of Philadelphia v. Beretta U.S.A. Corp.,
277 F.3d 415 (3d Cir. 2002)......................................................................................27

City of Philadelphia v. Beretta U.S.A. Corp.,
126 F. Supp. 2d 882 (E.D. Pa. 2000) .......................................................................29

Comm'r v. Clark,
489 U.S. 726 (1989)..................................................................................................18

Cosme v. Whitin Mach. Works, Inc.,
632 N.E.2d 832 (Mass. 1994) ....................................................................................7

*Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020) ........................................................................3

*Dep't of Com. v. New York*,
    139 S. Ct. 2551 (2019) .............................................................................3, 4

*Direct Sales Co. v. United States*,
    319 U.S. 703 (1943) ...............................................................................23, 24

*Droscha v. Shepherd*,
    931 N.E.2d 882 (Ind. Ct. App. 2010) ......................................................25

*E.E.O.C. v. Arabian Am. Oil Co.*,
    499 U.S. 244 (1991) ...................................................................................16

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) .......................................................................7

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) .....................................................................26

*Ganim v. Smith & Wesson Corp.*,
    780 A.2d 98 (2001) .................................................................................29, 30

*Gobeille v. Liberty Mut. Ins. Co.*,
    577 U.S. 312 (2016) ...................................................................................33

*Harris News Agency, Inc. v. Bowers*,
    809 F.3d 411 (8th Cir. 2015) .....................................................................23

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ...................................................................................26, 27

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ...................................................................................30

*Ileto v. Glock, Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ...................................................................28

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) .......................................................17, 18, 20

*In re Acad., Ltd.*,
    625 S.W.3d 19 (Tex. 2021) ..........................................................................6

*In re Air Crash Disaster at Mannheim Germany on Sept. 11, 1982*,
    769 F.2d 115 (3d Cir. 1985) .........................................................................7

*Jefferies v. District of Columbia*,
    916 F. Supp. 2d 42 (D.D.C. 2013) ..............................................................5

*Jupin v. Kask*,
    849 N.E.2d 829 (Mass. 2006) ....................................................................35

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012).................................................................3, 34

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018) .....................................................................27

*Kent v. Commonwealth*,
  771 N.E.2d 770 (Mass. 2002) ....................................................................28

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)......................................................................................9

*Kozoway v. Massey-Ferguson, Inc.*,
  722 F. Supp. 641 (D. Colo. 1989)............................................................7, 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)....................................................................................28

*McGhee v. Hybrid Logistics, Inc.*,
  No. 12-10771, 2014 WL 11281402 (E.D. Mich. Apr. 4, 2014) .................27

*Mitchell v. Lone Star Ammunition, Inc.*,
  913 F.2d 242 (5th Cir. 1990) .......................................................................7

*Monroe v. Medtronic, Inc.*,
  511 F. Supp. 3d 26 (D. Mass. 2021) ............................................................6

*Morales v. Desmarais*,
  No. 12-cv-12096, 2013 WL 3208610 (D. Mass. June 21, 2013).............21

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)......................................................................12, 14, 16

*Parsons v. Colt's Mfg. Co. LLC*,
  No. 19-cv-01189, 2020 WL 1821306 (D. Nev. Apr. 10, 2020)................22

*Patchak v. Zinke*,
  138 S. Ct. 897 (2018)....................................................................................5

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Ct. 2003).........................................................29

*Petitions of Kinsman Transit Co.*,
  388 F.2d 821 (2d Cir. 1968)........................................................................26

*Pevoski v. Pevoski*,
  358 N.E.2d 416 (Mass. 1976) .......................................................................7

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
  579 U.S. 115 (2016)....................................................................................33

*Ramos v. Wal-Mart Stores, Inc.*,
  202 F. Supp. 3d 457 (E.D. Pa. 2016) .........................................................31

*Rapanos v. United States*,
547 U.S. 715 (2006)............................................................................22

*Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*,
827 So. 2d 339 (Fla. Dist. Ct. App. 2002) ............................................30

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016)...............................................................9, 11, 13, 14

*Rosemond v. United States*,
572 U.S. 65 (2014)............................................................................23

*Saharceski v. Marcure*,
366 N.E.2d 1245 (Mass. 1977) ..........................................................7, 8

*SEIU Health & Welfare Fund v. Philip Morris Inc.*,
249 F.3d 1068 (D.C. Cir. 2001) ...........................................................30

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983)............................................................................33

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976)...........................................................................3, 4

*Small v. United States*,
544 U.S. 385 (2005)..........................................................................14

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*,
No. 21-2492, 2022 WL 711244 (3d Cir. Mar. 10, 2022)......................21

*Smith & Wesson Corp. v. City of Gary*,
875 N.E.2d 422 (Ind. Ct. App. 2007)...................................................18

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)............................................................................9

*Soto v. Bushmaster Firearms Int'l, LLC*,
202 A.3d 262 (Conn. 2019) ......................................................18, 19, 20

*Stamas v. Fanning*,
185 N.E.2d 751 (Mass. 1962) .............................................................28

*Staples v. United States*,
511 U.S. 600 (1994)..........................................................................22

*State of São Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*,
919 A.2d 1116 (Del. 2007) .................................................................30

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
990 F.3d 31 (1st Cir. 2021)................................................................30

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) ...............................................................7

*Town of Westport v. Monsanto Co.*,
No. 14-cv-12041, 2015 WL 1321466 (D. Mass. Mar. 24, 2015) ...........................................29

*United States v. Aponte-Suarez*,
905 F.2d 483 (1st Cir. 1990) ..............................................................................................23

*United States v. Bewig*,
354 F.3d 731 (8th Cir. 2003) ..............................................................................................24

*United States v. Falcone*,
109 F.2d 579 (2d Cir. 1940) ...............................................................................................23

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ................................................................................................7

*United States v. Nieves-Castaño*,
480 F.3d 597 (1st Cir. 2007) ..............................................................................................22

*United States v. Thompson/Ctr. Arms Co.*,
504 U.S. 505 (1992) ...........................................................................................................23

*United States v. Wyche*,
No. 02-30145, 2003 WL 1922966 (5th Cir. Mar. 28, 2003) ..............................................25

*Watkins v. Omni Life Sci., Inc.*,
692 F. Supp. 2d 170 (D. Mass. 2010) .................................................................................7

*Watson v. Air Methods Corp.*,
870 F.3d 812 (8th Cir. 2017) (en banc) .............................................................................33

*WesternGeco LLC v. ION Geophysical Corp.*,
138 S. Ct. 2129 (2018) .......................................................................................................13

*Xue Juan Chen v. Holder*,
737 F.3d 1084 (7th Cir. 2013) ...........................................................................................8

**STATUTES**

15 U.S.C. § 7901 ........................................................................................................ *passim*

15 U.S.C. § 7902 ........................................................................................................ *passim*

15 U.S.C. § 7903 ........................................................................................................ *passim*

18 U.S.C. § 921 ...................................................................................................................32

18 U.S.C. § 922 .............................................................................................................21, 23

18 U.S.C. § 923 ...................................................................................................................15

26 U.S.C. § 5845 ..........................................................................................................22, 23

Cal. Bus. & Prof. Code § 5272.1 .......................................................................................19

Mass. Gen. Laws. ch. 140, § 123 (1998) ...........................................................................19

2006 Ohio Laws 2278 ...........................................................................................35

    Ohio Rev. Code Ann. § 2307.71 ....................................................................35

R.I. Gen. Laws § 11-47-40 (2002) .......................................................................19

**OTHER AUTHORITIES**

ATF Rul. 82-8 .......................................................................................................23

BLACK'S LAW DICTIONARY (11th ed. 2019) ..........................................................18

26 C.F.R. § 5801 *et seq.* .......................................................................................21

27 C.F.R. § 479.1 *et seq.* ......................................................................................21

N.J. Admin. Code § 13:54-5.6 (2007) ..................................................................19

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 90 (1971) ..............................10

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 8 (2020) .................35

Reuters, *Cincinnati's Council Decides to Drop Suit Against Gun Makers*,
    N.Y. TIMES (May 1, 2003) ...........................................................................35

World Justice Project, *World Justice Project Rule of Law Index, Mexico* (2021)..........8

# **INTRODUCTION**

Mexico has filed suit in federal court in Boston to vindicate what is, in its words, "a claim [governed by] the substantive law of Mexico . . . for injuries incurred in Mexico, resulting from gun misuse in Mexico." Dkt. 111 ("Opp.") 4. This makes no sense. The complaint does not name a single defendant who committed any harmful act in Mexico. All Defendants are American companies that the Mexican government is trying to hold liable for their legal conduct that occurred wholly within the United States, on the theory that some of their products were smuggled into Mexico by criminals and used by other criminals to commit crimes there. Having chosen to sue American companies in an American court, based on their conduct in America, Mexico cannot evade the basic principles of American law that inexorably require dismissal of all claims against all Defendants.

At the outset, Mexico's response brief confirms that it cannot clear the basic hurdle of Article III standing. Instead of trying to satisfy the "traceability" inquiry, Mexico launches a frontal assault on it. According to Mexico, the Supreme Court has discarded the rule that standing cannot be based on injuries resulting from the independent acts of third parties. But in fact, the very cases that Mexico cites make clear that this longstanding doctrine of Article III standing remains as sturdy as ever. Accordingly, because the drug cartels who caused Mexico's injuries are independent actors who could and would engage in the same violent activity regardless of Defendants' allegedly unlawful conduct, Mexico's standing fails at the threshold.

Mexico fares no better on its claim that this case is governed by Mexican law instead of American law. For one thing, the PLCAA clearly says that no lawsuit like this one "may be brought" in any U.S. court, *regardless* of which jurisdiction's tort law may apply. And even if choice-of-law were relevant, U.S. law clearly governs this dispute because the interests of the United States (and the states where Defendants do business) far outweigh those of Mexico.

On the merits, Mexico has no plausible argument for why the PLCAA does not bar this suit. It is simply wrong that applying the statute here would be "extraterritorial." To the contrary, this case falls squarely within the law's domestic focus of protecting U.S. firearms companies from suit in U.S. courts based on business activities in the U.S. Applying the PLCAA in this case is thus clearly domestic, not extraterritorial, regardless of the source of the plaintiff's claims.

Mexico also fails to fit its claims within the PLCAA's "predicate" exception, as it cannot show that any of the Defendants violated any state or federal firearms law. Indeed, Mexico's lead argument on this point rests on the implausible notion that Defendants have been openly selling illegal "machineguns" for the past several decades, but that federal prosecutors and regulators have just never noticed. That is absurd. Nor can Mexico prevail on its argument that the PLCAA allows suits based on *generally applicable* laws that have nothing to do with firearms, as that would eviscerate the statute and nullify its protections.

But even if Mexico could somehow show a qualifying statutory violation, this case is a posterchild for the failure of proximate cause. Mexico insists that proximate cause requires only "foreseeability"—no matter how remote the causal connection, and no matter how many steps of independent criminal conduct may intervene between the defendant and the plaintiff's injury. That position is flatly wrong as a matter of law and would create limitless liability for every company manufacturing products that could be misused to hurt others. The Supreme Court has squarely rejected the notion that foreseeability alone establishes proximate cause for remote harms. And if the harms in this case are not too remote, then none ever will be.

Finally, if the above were not enough, Mexico's claims also fail under other common-law principles. Mexico cannot cite any case *ever* recognizing a tort duty to foreign sovereigns in a case like this one. Nor can Mexico prevail on its claim of "public nuisance" based on Defendants' sale of lawful products, as that would transform the doctrine into a roving license for courts to ban any product that can be (mis)used by third parties to cause harm.

At the end of the day, the question is not really whether this case should be dismissed, but how; the Court has a long list of options from which to choose.

<div align="center">**ARGUMENT**</div>

## I.    <u>Mexico Lacks Article III Standing.</u>

As Defendants explained (at 6-10), Mexico cannot seriously dispute the principle that a plaintiff lacks Article III standing when the alleged injury "results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). Mexico's brief completely ignores the First Circuit's binding embrace of that principle in both *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc*., 958 F.3d 38, 44 (1st Cir. 2020), and *Katz v. Pershing, LLC*, 672 F.3d 64, 76 (1st Cir. 2012).  Thus, because Mexican cartel violence is completely "independent"—since the cartels would still engage in the same violent activity using any of the millions of other firearms available to them regardless of Defendants' alleged conduct—Mexico has no standing to sue Defendants here.

In response, Mexico claims that the Supreme Court's decision in *Department of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019), "expressly rejected" the longstanding Article III principle that standing cannot rest on the "independent action of third parties." Opp. 31. But Mexico badly misreads that decision. *Department of Commerce* did not overturn any precedent, but rather reaffirmed the "steady refusal to 'endorse standing theories that rest on speculation about the decisions of independent actors.'" 139 S. Ct. at 2566. The Court found standing in that case because an expert federal agency had credibly determined that the harm from non-citizens refusing to complete the census was "likely attributable" to the federal government's action of including a citizenship question in the census. *Id.*  Thus, the third-party conduct in that case was not truly "independent," but resulted from the fact that non-citizens would "react in predictable ways" by deciding not to complete the census if asked about citizenship, engaging in harmful conduct that they otherwise would not have. *Id*. The causal link

<div align="center">3</div>

was not "mere speculation," because an expert federal agency had credibly determined that the harmful third-party conduct (i.e., the failure of non-citizens to respond to the census) was "likely attributable" to the federal government's unlawful action (including the citizenship question). *Id*.

Here, by contrast, it is entirely speculative to say that Defendants' allegedly unlawful sales and marketing activities *actually cause* the cartels to inflict any harm on the Mexican government. Mexico's own complaint admits that even if all of Defendants' firearms were to magically vanish tomorrow, the cartels would still have millions of other firearms at their disposal from multiple sources. Indeed, they would still have several hundreds of illegal firearms *for each homicide committed*. *See* ECF 67 ("Joint MTD") 10. Further, the mere existence of a firearm does not cause anyone to use it illegally. It is only the independent decision to misuse the firearm that causes harm. For these reasons, it is entirely speculative to say that cartels would commit any less violence—or inflict any less harm on Mexico—without Defendants' alleged conduct. In other words, all the harms Mexico has suffered at the hands of the third-party criminals "might have occurred even in the absence of" Defendants' conduct. *Simon*, 426 U.S. at 45 n.25. The harms Mexico alleges thus are not fairly traceable to Defendants. *Id*. at 45.

Mexico tries to avoid the third-party-harm doctrine by drawing an analogy to pollution cases, where courts have found standing as long as the defendant's conduct "contributes" to the plaintiff's harm. Opp. 32 & n.177 (citing environmental cases). But those cases are inapposite because they do not involve independent third-party conduct intervening between defendant and plaintiff. A defendant's pollution harms the plaintiff directly, making the harm fairly traceable to the defendant even if other polluters also contribute to the problem in parallel. Unlike pollution, however, firearms by themselves do not harm anyone. Instead, harm results from the intervening misconduct of third-party criminals who *misuse* firearms, thus implicating the rule that Article III standing is lacking when the alleged injury "results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41-42. That is the case here: The third-party cartel

violence that Mexico complains of is inherently "independent" of Defendants, in the sense that the cartels would commit the same violence (and inflict the same harms) regardless of Defendants' sales and marketing practices. It is pure speculation to suggest otherwise.

## II.   <u>Mexican Law Does Not Govern This Case.</u>

Perhaps sensing that it cannot prevail under American law, Mexico claims that Mexican law should apply. This gambit fails for three reasons. First, the PLCAA prohibits this type of suit from being "brought" in American court regardless of the source of the tort claims. There is thus no need for any choice-of-law analysis. Second, in any event this case is clearly governed by the law of the United States—including federal law and the law of the states where Defendants' conduct occurred. Third, comity principles would reject Mexican law here regardless.

### A.   The PLCAA Bars Suits in U.S. Courts Regardless of the Source of Tort Law.

The PLCAA imposes a threshold barrier to suit in American courts regardless of which particular body of tort law applies. By its terms, the PLCAA provides that "[a] qualified civil liability action *may not be brought in* any Federal or State court," and that any such action pending on the date of enactment was to "be immediately dismissed by the court." 15 U.S.C. § 7902 (emphasis added). This clear directive shows that "Congress was not only concerned about the effect of civil liability on gun manufacturers, but also the improper use of the judiciary to circumvent legislative judgments" regarding American firearms policy. *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013) (dismissing claim against Romanian company). The PLCAA is jurisdictional in nature, so that when a claim is covered, "the Court lacks authority to adjudicate it." *Hardy v. Chester Arms, LLC*, No. 218-2018-CV-828 (N.H. Super. Ct. Feb. 11, 2022) (applying New Hampshire's equivalent state-immunity statute); *cf. Patchak v. Zinke*, 138 S. Ct. 897 (2018) (plurality) (recognizing as jurisdictional a statute that provided that any action "relating to [certain tribal] land . . . shall not be filed or maintained in a Federal court and shall be promptly dismissed.").

The same concern applies regardless of the source of the tort law at issue. As the Texas Supreme Court has recognized, "[t]he PLCAA's focus on the court as an available forum" makes "the statute qualitatively different from those that inform the court what law to apply." *In re Acad., Ltd.*, 625 S.W.3d 19, 35 n.19 (Tex. 2021). Because "the PLCAA tells the court when it is (and is not) available as a forum to decide certain disputes *under any law*," it makes no difference what the source of the tort law is. *Id.* (emphasis added). No matter where the claim may come from, a plaintiff cannot evade the PLCAA's express barrier to suit in U.S. courts.

**B.     Massachusetts Choice-of-Law Rules Require the Application of U.S. Law.**

Even setting aside the PLCAA, Mexican tort law clearly does not govern this case. As Mexico recognizes, the choice-of-law analysis is governed by Massachusetts law, which does not turn on the place of injury but instead on which jurisdiction has the most "significant relationship to the underlying cause of action." Opp. 6 (quoting *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 33 (D. Mass. 2021)). Here, that obviously calls for applying the law of the United States, including federal law and the law of the individual states where Defendants' business operations took place. After all, the domestic sovereign interests of the United States in regulating how firearms should be manufactured and sold in America far outweigh the remote interests of Mexico in regulating the American firearms industry as a way of mitigating the harms caused by Mexican criminals in Mexico.

Like many states in recent decades, Massachusetts has "reject[ed] the traditional lex loci approach" and instead uses a "functional" choice-of-law analysis that takes into account "the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985). Thus, Massachusetts law frequently calls for applying the tort law of a jurisdiction other than that of where the plaintiff's

injury occurred.[1] In addition to the "governmental interests," Massachusetts also favors applying the substantive law that will best further the "[m]aintenance of interstate . . . order"; "[p]redictability of results"; "[s]implification of the judicial task"; and "[a]pplication of the better rule of law." *Saharceski v. Marcure*, 366 N.E.2d 1245, 1249 n.7 (Mass. 1977). These factors strongly favor applying American law here.

Most importantly, the "interest" of the United States "in regulating the conduct of businesses operating under its laws" naturally "trumps any interest" that a foreign jurisdiction may have in regulating the downstream effects of the companies' goods. *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 175 (D. Mass. 2010); *see also In re Air Crash Disaster at Mannheim Germany on Sept. 11, 1982*, 769 F.2d 115, 120 n.7 (3d Cir. 1985) ("The law of Pennsylvania, as the place of the manufacture . . . is the appropriate law to apply . . . despite the fact that the accident occurred elsewhere, since Pennsylvania has the greatest interest in governing the liability of manufacturers within its state."). Indeed, a state's interest is "particularly strong" when the "product in question [is] manufactured and placed in the stream of commerce" within its borders. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 250 (5th Cir. 1990). And the interest is even stronger when the product enjoys constitutional protection where it is made and sold.[2]

Courts have thus recognized that "[t]he United States has a legitimate interest in assuring that domestic law is applied when a foreign plaintiff claiming to have been injured by an American corporation chooses a court in this country in seeking redress." *Kozoway v. Massey-Ferguson, Inc.*, 722 F. Supp. 641, 644 (D. Colo. 1989). Indeed, if courts were "required to apply

---

[1] *See, e.g.*, *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 835 (Mass. 1994) (applying Massachusetts law to a product-liability claim brought against a Massachusetts corporation by an individual in Connecticut who suffered injury in Connecticut); *Saharceski*, 366 N.E.2d at 1249 (applying Massachusetts law to an out-of-state car crash); *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976) (same).

[2] *Cf. United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (Second Amendment protects "the commercial sale of firearms"); *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) ("[c]ommerce in firearms" protected as a "necessary prerequisite" to keeping and bearing arms); *Ezell v. City of Chicago*, 651 F.3d 684, 710 (7th Cir. 2011) (shooting ranges protected on same basis).

the law of other nations," then the United States and "its fifty individual states" would be severely hampered in their ability to "control and protect their domestic corporations." *Id*. In addition, "[a] substantial degree of uniformity and predictability is created when . . . a domestic corporation knows that the law of the state where it is headquartered, and where its products are manufactured, applies to products liability actions brought by foreign plaintiffs." *Id*. That is particularly true when it comes to applying the foreign law of a nation like Mexico, which has a civil-law system instead of a "common law heritage." *Id*. As a result, trying to apply Mexican law here would create serious "problems of discerning and correctly interpreting and enforcing foreign law," which would "cause substantial difficulties in administering justice." *Id*.

There is also no question that the United States rather than Mexico supplies the "better rule of law" here. *Saharceski*, 366 N.E.2d at 1249 n.7. This case is about liability for the manufacturing and sale of firearms in the civilian market in the United States, but Mexican law generally does not even *allow* such sales. Compl. ¶ 4. As a result, Mexican law has no salient legal framework to determine liability. It is questionable whether Mexico even has "the 'rule of law' as understood in our legal system," particularly when it comes to drug cartels. *Cf. Xue Juan Chen v. Holder*, 737 F.3d 1084, 1086 (7th Cir. 2013) (Posner, J.).[3] By contrast, the American legal system has a highly developed set of rules for determining when the manufacturing and sale of firearms can give rise to civil liability based on third-party criminal conduct. The United States Congress enacted a statute (the PLCAA) specifically directed to addressing this issue.

Against all of this, Mexico has no serious argument that it has a more significant interest in applying its own law here. It claims that "Defendants arm the cartels in Mexico." Opp. 6. Actually, no. A string of criminal actors arm the cartels in Mexico with Defendants' lawfully manufactured and lawfully distributed products. The complaint itself says this, and does not

---

[3] *See* World Justice Project, *World Justice Project Rule of Law Index, Mexico* (2021), https://tinyurl.com/5dr5c54a (noting that Mexico ranks 113th out of 139 countries on "rule of law," 131st in "civil justice," and 91st in "fundamental rights").

allege that any Defendant committed any act in Mexico. Mexico also argues that it has an interest in "regulat[ing] gun sales within Mexico" and "regulating the flow of firearms into [its] jurisdiction." *Id*. But nations serve that interest by regulating conduct within their own borders and securing their borders to keep unwanted products out—not by projecting their law outward to regulate how products are made and sold within the territorial jurisdiction of *other* sovereigns.

Unable to demonstrate a superior interest, Mexico falls back on the historical point that, for "a plaintiff injured in a foreign country," the "traditional rule" would have been to "apply foreign law to determine the tortfeasor's liability." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 351 (2016) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 706 (2004)). But the "traditional" rule did not contemplate this type of attenuated suit, and it does not apply here in any event because, as noted, Massachusetts has "reject[ed] the traditional *lex loci* approach." *Bushkin*, 473 N.E.2d at 668-69. It is irrelevant that some other places may still follow the *lex loci* rule. Opp. 7 n.43. Mexico chose to sue in a Massachusetts forum, which triggers Massachusetts choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Mexico cannot now escape the consequences of filing suit here.

### C.  International Comity Prohibits Applying Mexican Law Here.

Finally, Mexico has no serious response to Defendants' argument that it would violate principles of international comity to apply Mexican law here because doing so would be contrary to the strong policy of the United States. Instead, Mexico bizarrely claims that Defendants "have not attempted to satisfy" this doctrine. Opp. 6 n.39. But Defendants expressly made this argument, and Mexico fails to rebut it. *See* Joint MTD 42-44. Mexico breezily asserts that international comity does not "require[] [it] to forgo claims under its own law." Opp. 44. But that misses the point. Mexico is free to try to pursue claims under Mexican law *in its own courts*. But it cannot force *U.S. courts* to impose tort liability contrary to U.S. public policy.

In their amicus brief, the "Professors of Transnational Litigation" quibble about whether "international law" or "international comity" is the proper term, but they ultimately admit that "[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." *See* ECF 109-1 at 8-9, 12 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 90 (1971)). And here, there can be no question that applying Mexican law would violate the strong public policy of the U.S. in at least two ways.

*First*, to the extent that applying Mexican law here would bypass the PLCAA, it would clearly circumvent the strong public policy of the United States. When it enacted the PLCAA, Congress made clear that covered lawsuits "may not be brought in any Federal or State court." 15 U.S.C. § 7902. That clear national policy could hardly be more strongly stated. Congress also made clear that plaintiffs cannot file this type of suit in any U.S. court because that would allow them to "use the judicial branch to circumvent the Legislative branch of government to regulate" the firearms industry, burdening the "Second Amendment" rights of Americans to obtain firearms for lawful use. *Id*. § 7901(a)(1), (8). That concern is even more acute when it comes to regulation-by-lawsuit under *foreign* law, which has no democratic legitimacy for dictating how firearms should be made and sold in the United States. And the problem is especially severe when the plaintiff is the foreign sovereign itself, which *created* the foreign law at issue, and has the power to alter or amend that law during the course of litigation to serve its own interests.

*Second*, Mexico argues that its claims should be governed not by the American law of "proximate cause," but instead by the Mexican doctrine of "adequate cause," which it claims does not impose any limit on how *remote* an injury may be as long as it is not "unforeseeable." Opp. 33-34. As an initial matter, that characterization of Mexican law appears to be inaccurate. But for present purposes, jettisoning the American concept of proximate cause to allow liability for remote harms would be clearly contrary to the strong policy of U.S. law. *See infra* pp. 25-30. Indeed, to the extent Mexican law lacks a remoteness doctrine, applying it in an American court

would threaten fundamental American constitutional values, since allowing unbounded civil liability for "very remote" events violates due process. *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 65 (1st Cir. 2002).

## III.   The PLCAA Bars all of Mexico's Claims.

### A.   This Is Not an "Extraterritorial" Application of the PLCAA.

Mexico is wrong that applying the PLCAA here would somehow be "extraterritorial." Opp. 8. To the contrary, this case is about whether U.S. companies can be held liable in a U.S. court for their conduct *in the United States*. *See* Joint MTD 27-30. The clear focus of the PLCAA is on protecting U.S. companies from liability in U.S. courts based on their sales and manufacturing of firearms in the United States. Thus, because all of "the conduct relevant to the statute's focus occurred in the United States," this case "involves a permissible domestic application [of the PLCAA] even if other conduct occurred abroad." *RJR Nabisco*, 136 S. Ct. at 2101. By contrast, Mexico's reading would deprive American companies of protection based solely on criminals smuggling their lawful products across the border and using them to commit foreign crimes. That is a nonsensical conclusion, and this Court should reject it.

Mexico's argument about extraterritoriality relies on the principle that "Congress generally legislates with domestic concerns in mind." Opp. 8. But that only confirms that the PLCAA applies here, because it is a core "domestic concern" whether American companies can be held liable in America courts for lawfully manufacturing and selling firearms in the United States. Indeed, the plain language of the PLCAA compels this result, since it bars any suit like this one from being "brought in any Federal or State court." 15 U.S.C. § 7902(a). Likewise, Mexico relies on the premise that the law should be construed to "avoid 'a risk of conflict between the American statute and a foreign law.'" Opp. 9. But, again, that counsels in favor of reading the PLCAA to apply here: U.S. law governs liability for the manufacture and sale of firearms in the United States, while Mexican law is free to regulate conduct within its own

borders. *See supra* pp. 6-9. By contrast, displacing U.S. law in favor of Mexican law to regulate the domestic sale and manufacture of firearms by U.S. companies would turn the presumption against extraterritoriality on its head. That upside-down approach should be rejected.

*First*, Mexico argues that the relevant "focus" of the PLCAA is not on protecting U.S. firearms companies from liability in U.S. courts, but rather on third-party "gun misuse" and the resulting "injury" suffered by plaintiffs. Opp. 18-19. Thus, according to Mexico, the PLCAA does not protect U.S. companies from liability when their firearms are misused abroad or plaintiffs are injured abroad. *Id*. This argument fails because it disregards the clear design and purpose of the PLCAA. As the Supreme Court has made clear, the "focus" of a statute is the primary "object" of "congressional concern." *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 266-67 (2010). Thus, courts determine the statutory "focus" by looking to what "the statute seeks to 'regulate,'" and what it "seeks to 'protec[t].'" *Id*.

Here, it is clear that Congress enacted the PLCAA to protect the American firearms industry, and specifically to protect American companies from being subject to unwarranted liability in American courts—not to regulate third-party criminal gun violence or to protect plaintiffs from injury. In the statutory findings, Congress emphasized that "[b]usinesses in the United States" that are engaged in the lawful manufacturing and sale of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products." 15 U.S.C. § 7901(a)(5). Likewise, the first stated "purpose[]" of the statute is "[t]o prohibit causes of action against" firearms companies. *Id*. § 7901(b)(1). And to effectuate that purpose, the statute provides that no "qualified civil liability action" may be "brought in any Federal or State court." *Id*. § 7902(a).

Based on these provisions, the focus of the PLCAA is clear: The statute is focused on preventing U.S. courts from being used to impose liability on U.S. businesses that are engaged in the sale and manufacture of firearms in the United States. Thus, as long as a case involves U.S.

courts, U.S. companies, and sales or manufacturing activity that "occur[s] in the United States," it "involves a permissible domestic application [of the PLCAA] even if other conduct occurred abroad." *RJR Nabisco*, 136 S. Ct. at 2101. That is the case here.

*Second*, Mexico argues that the statutory focus cannot be determined "in a vacuum," but instead must be assessed by looking at all of the statutory provisions that work together "in tandem." Opp. 18 (citing *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018)). But looking at the statute as a whole only confirms that it applies here. In *WesternGeco*, for example, the statute prohibited patent infringement and the question was whether the plaintiff could recover for "lost foreign profits." 138 S. Ct. at 2134. Because the statute focused on "infringement," it applied to the defendant's "domestic act" of infringement in the United States, and it authorized recovery of resulting lost profits even if the losses occurred abroad. *Id*. at 2138. The foreign location of the injury was irrelevant because that was not the statutory focus. *Id*. The same is true here: The PLCAA is focused on protecting U.S. companies against liability in U.S. courts based on their manufacture and sale of firearms in the U.S. Thus, the fact that this case involves U.S. companies being sued in a U.S. court for their conduct in the U.S. makes this a straightforward domestic application of the statute, regardless of any foreign injury.

*Third*, Mexico relies on *RJR Nabisco* to claim that the PLCAA does not apply when the plaintiff's "injury" occurs abroad. But the statute there created a "private right of action" for persons "injured in [their] business or property." 579 U.S. at 346. Because that provision focused on addressing such injury, it applied only to "*domestic* injury to . . . business or property." *Id*. Here, by contrast, the PLCAA is decidedly *not* focused on redressing plaintiffs' injuries, and it expressly does not create private rights of action or remedies. 15 U.S.C. § 7903(5)(C). Instead, the PLCAA is focused on protecting U.S. companies from liability in U.S. courts. As a result, as in *WesternGeco*, the location of any injury that a plaintiff may allege is irrelevant.

In addition, unlike in *RJR Nabisco*, applying the PLCAA here does not create any "danger of international friction" from "[a]llowing recovery for foreign injuries" under U.S. law. *Id*. at 348. Mexico argues that the same danger is present here because the PLCAA would "*preclude* causes of action" under foreign law. Opp. 15. That is false, because the PLCAA precludes claims only in courts *in the United States*. Foreign courts remain free to entertain claims authorized by their own law. Nor does the PLCAA create any risk that plaintiffs will assert affirmative claims under American law to "bypass" the more limited claims provided by foreign law, which was the other concern in *RJR Nabisco*, 579 U.S. at 347. Indeed, applying the PLCAA here actually *lessens* the risk of international friction because it prevents foreign plaintiffs such as Mexico from circumventing diplomatic channels by reaching across the border and using litigation to regulate the domestic industry of another sovereign without its consent.

*Fourth*, Mexico claims that the PLCAA's focus is "irrelevant" under *Small v. United States*, 544 U.S. 385, 387 (2005). But *Small* preceded the "focus" test of *Morrison* and *RJR Nabisco*. And *Small* involved a *criminal* statute that barred firearms possession by those who had been "convicted in any court," and thus a prior conviction was a "necessary" element of the prohibited conduct. *Id*. at 389. Since U.S. criminal laws typically apply only to conduct within the U.S., and Congress likely did not intend foreign law to divest Americans of their right to keep and bear arms in the U.S., the statute was naturally limited to convictions in U.S. courts. *Id*. In the present case, by contrast, the presumption runs the other way: the PLCAA is not a criminal prohibition, but is focused on *protecting* U.S. companies engaged in domestic sales and manufacturing. Accordingly, given that statutory focus, it would be senseless to conclude that the PLCAA's protection of U.S. companies should be *eliminated* if a criminal takes a company's firearm across the border and uses it to commit a crime in a foreign country. Contrary to Mexico's suggestion (at 10), there is no difficulty in determining what constitutes a foreign crime in this type of case; there is no serious question that cartel violence is illegal in Mexico.

*Fifth*, Mexico is wrong that applying the PLCAA in this type of case would create any "anomalies." Opp. 11. According to Mexico, it would be anomalous for the PLCAA to allow claims against firearms companies only when they have violated "State or Federal" law, but not when they have violated "foreign law." *Id*. But there is nothing anomalous about that. The entire purpose of the PLCAA is to protect domestic firearms companies that operate lawfully "in the United States." 15 U.S.C. § 7901(a)(5). It is thus entirely natural for the companies' liability to turn on whether they have violated "State or Federal" law—not foreign law, which does not govern conduct entirely in the U.S. It is also natural for American firearms companies to retain protection against foreign claimants suing in U.S. courts, as it would make no sense for the PLCAA's protections to disappear just because some third party smuggles an American-made firearm abroad where some fourth party (or fifth party) uses it to injure someone.

*Sixth*, Mexico argues that the "PLCAA extends its protections to gun importers, but not to exporters" because the PLCAA's definition of protected "seller[s]" expressly mentions "importers" by name, but does not mention exporters. Opp. 11. Mexico is again wrong. The PLCAA's protections clearly apply to licensed American companies that export firearms. Although there are specific types of federal firearms licenses for manufacturers, importers, and dealers under 18 U.S.C. § 923(a), but not for exporters, a protected "seller" under the PLCAA includes any licensed "dealer," which clearly encompasses exporters because a "dealer" includes anyone who is licensed to sell firearms "in interstate or foreign commerce." 15 U.S.C. § 7903(6)(B). Those protected under the PLCAA also include licensed "manufacturer[s]" engaged in "interstate or foreign commerce." *Id.* § 7903(2). That there are other federal statutory requirements governing firearm exports does not eliminate PLCAA protection for federal firearm licensees engaged in the business of exporting firearms.

*Seventh*, Mexico cannot deny that Congress expressly contemplated protecting American companies against liability for the third-party misuse of firearms that have been shipped abroad.

The statute specifically discusses protection for "[b]usinesses in the United States" that "manufacture" firearms that are "shipped or transported in interstate *or foreign* commerce." *Id*. § 7901(a)(5) (emphasis added). Mexico argues that a mere boilerplate reference to "foreign commerce" by itself is not the type of clear statement that can give a statute extraterritorial reach. Opp. 13 (citing cases). But as noted, there is nothing "extraterritorial" here at all, because this case falls squarely within the domestic statutory "focus" of protecting American companies against liability in American courts for their manufacturing and sales activity in the United States.[4] As a result, there is no clear-statement rule to overcome.[5]

*Finally*, Mexico is also wrong to say that the PLCAA's express reference to governmental plaintiffs should include only domestic governments, not foreign ones. Opp. 13-14. This argument fails for all of the reasons discussed above: Given the statutory focus on protecting American firearms companies for their operations in the United States, the law's protection cannot sensibly turn on whether the *plaintiff* is foreign or domestic. Indeed, Mexico's argument on this point is especially unconvincing because it would preclude the PLCAA from applying even in cases where foreign plaintiffs assert injuries suffered *in the United States* based on the criminal misuse of firearms *in the United States*. No sensible understanding of the extraterritoriality doctrine could require such an absurd result.

---

[4] Mexico does not allege that it was harmed by firearms that the Defendants lawfully exported to Mexico (with Mexico's approval), and/or firearms that were purchased by the Mexican government.

[5] In any event, the PLCAA's references to firearms shipped abroad are far clearer than in the other cases cited by Mexico. For one thing, the PLCAA's explicit reference to the Arms Export Control Act (AECA) clearly contemplates protection for manufacturers that *export* firearms. 15 U.S.C. § 7901(a)(4). Mexico points out that the AECA includes a few stray provisions regarding imports, Opp. 12, but as the law's title suggests, the overwhelming majority of its provisions concern exports, which confirms Congress's intent for the PLCAA to guard against liability based on firearms sent abroad. In addition, in the cases Mexico cites, the references to "foreign commerce" were nothing more than boilerplate "jurisdictional language" that Congress used as a hook to explain how it had power to regulate under the Commerce Clause. *E.E.O.C. v. Arabian Am. Oil Co*., 499 U.S. 244, 251 (1991); *see also Morrison*, 561 U.S. at 263 (discussing a "general reference to foreign commerce in the definition of 'interstate commerce'"). Here, by contrast, the PLCAA's references to foreign commerce are not mere "jurisdictional language," nor are they simply part of a boilerplate definition of "interstate commerce." Instead, they go to the core of the PLCAA's protection for American firearm manufacturers.

## B. The Predicate Exception Does Not Apply.

Aside from its extraterritoriality argument, Mexico does not dispute that this case is a "qualified civil liability action" that presumptively cannot be brought in "any Federal or State court." 15 U.S.C. § 7902(a). Thus, the only question is whether Mexico can satisfy any PLCAA exception. But as Defendants explained in their opening brief, Mexico cannot satisfy the predicate exception because it fails to allege any facts showing that Defendants knowingly violated any "State or Federal statute applicable to the sale or marketing of [firearms]," much less that any "violation was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii). The predicate exception does not encompass *generally* applicable laws, but only statutes that are *specifically* applicable to the sale or marketing of firearms. *See* Joint MTD 14-17, 21-22. And here, the complaint fails to allege any facts showing that Defendants knowingly violated any firearms-specific statute. *Id*. at 17-21. Much less does it allege facts showing that any asserted violation was the "proximate cause" of any harm to the Mexican government. *Id*. at 22-23. Mexico asserts a variety of arguments in response, but they all fail.

### 1. The predicate exception is limited to firearms-specific statutes.

In their opening brief, Defendants explained that there are only two textually plausible ways to read the phrase "applicable to the sale or marketing of [firearms]." First, it could be read broadly to include any general statute that *could be applied*. But as both the Second and Ninth Circuits have recognized, that interpretation is obviously incorrect because it would eviscerate the PLCAA by allowing the very types of general tort claims that Congress designed the statute to foreclose. *See* Joint MTD 15; *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1137 (9th Cir. 2009); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008). As a result, the predicate exception cannot sensibly be read to include generally applicable laws.

That leaves only one possibility: As Black's Law Dictionary makes clear, an "applicable" statute is one "affecting or relating to a *particular* person, group, or situation; having direct

relevance." *Applicable*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Thus, when read in context, the predicate exception clearly refers to statutes that apply to the "sale or marketing of [firearms]" *in particular*. 15 U.S.C. § 7903(5)(A)(iii); Joint MTD 14-15.

Mexico has no viable answer to this argument. It spends less than two pages of its brief trying to dispute the point, and it offers virtually no textual analysis. First, Mexico cites two intermediate appellate court opinions from Indiana to argue that even a generally applicable law such as a "state public nuisance law" would qualify for the predicate exception. Opp. 26 (citing *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 431-35 (Ind. Ct. App. 2007), and *City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813, 833-34 (Ind. Ct. App. 2019)). But the Indiana opinions did not engage with the Second or Ninth Circuit's persuasive explanations as to why that broad reading is incorrect. *Ileto*, 565 F.3d at 1137; *City of New York*, 524 F.3d at 403. Nor did the Indiana opinions explain how their sweeping interpretation could possibly be consistent with the structure and design of the PLCAA, since it would allow the very types of claims that the statute was designed to foreclose. As the Second Circuit explained, this would "allow the predicate exception to swallow the statute." *City of New York*, 524 F.3d at 403. And it would violate the canon that when Congress enacts "a general statement of policy [that] is qualified by an exception," courts should "read the exception narrowly in order to preserve the primary operation of" the general rule. *Comm'r v. Clark*, 489 U.S. 726, 739 (1989).

Second, as a fallback position, Mexico argues that this Court should follow the textually unsupported middle-ground position adopted by a bare majority of the sharply divided Connecticut Supreme Court in *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262, 308 n.53 (Conn. 2019). But Mexico fails to explain how the majority's reading is plausible in light of the statutory text. According to the *Soto* majority, even if *most* generally applicable laws do not qualify for the predicate exception, unfair-trade-practice statutes do because they generally regulate the "sales and marketing" of products. Opp. 26 n.139. But that reading clearly

fails because the predicate exception does not encompass statutes that apply to the "sale or marketing" of products *in general*. Instead, it allows the "manufacturer or seller of a *qualified product*" to be sued if it violated a statute "applicable to the sale or marketing *of the product*." 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). A "qualified product" is "a firearm" or "ammunition." *Id*. § 7903(4). Thus, the predicate exception includes only those statutes that are applicable specifically to the sale or marketing of *firearms or ammunition* specifically, not to sales or marketing *generally*, as the three dissenting justices in *Soto* persuasively explained.[6]

*Soto* also has a glaring error in its reasoning. According to the majority, the predicate exception cannot be limited to laws that specifically regulate the sale or marketing of firearms, because when Congress enacted the PLCAA there were "no laws" that "expressly and directly" regulated the "marketing" of firearms. 202 A.3d at 304. Based on this premise, the *Soto* majority reasoned that "the only logical reading of [the predicate exception] is that Congress had some other type of law in mind," which must include general unfair-trade-practice laws. *Id*. But in fact, as the *Soto* majority itself admitted in a footnote, there were *multiple* statutes at the state level that specifically regulated firearms marketing.[7] Thus, the existence of many state laws that specifically regulated firearms marketing strongly confirms what the statutory text and structure indicate: the predicate exception is limited to laws that specifically regulate the sale and marketing of firearms in particular, not all products in general. Indeed, since unfair-trade-practice laws are primarily concerned with preventing marketplace harm to consumers and business competitors, it is highly unlikely that Congress would have considered such laws to fit

---

[6] *See Soto*, 202 A.2d at 326-50 (Robinson, J., dissenting in part) (concluding that the "predicate exception encompasses only those statutes that govern the sales and marketing of firearms and ammunition specifically, as opposed to generalized unfair trade practices statutes.").

[7] *Soto*, 202 A.2d at 304 n.43 (citing Cal. Bus. & Prof. Code § 5272.1(c)(2) (prohibiting firearms advertising in certain locations), N.J. Admin. Code § 13:54-5.6 (2007) (regulating newspaper advertising of certain firearms); R.I. Gen. Laws § 11-47-40(b) (2002) (regulating advertising of concealable firearms)). Another example comes from Massachusetts, which in 2005 prohibited firearm dealers from displaying firearms in store windows or "offer[ing] for sale" certain firearms classified as "assault weapon[s]." Mass. Gen. Laws. ch. 140, § 123 (1998).

within the PLCAA's predicate exception, which contemplates claims by *victims of third-party violence*—not claims by firearms *consumers or industry competitors.*

Mexico is also wrong to say that the Ninth and Second Circuits' decisions in *Ileto* and *City of New York* "refute" Defendants' argument. Opp. 27. In fact, both decisions directly rejected Mexico's primary argument that the predicate exception applies broadly to include all generally applicable statutes. Beyond that, *Ileto* declined to offer "any view on the scope of the predicate exception with respect to any other statute." 565 F.3d at 1138 n.9. In *City of New York*, the Second Circuit did opine in dicta that the predicate exception might encompass statutes that "*clearly* can be said to implicate the purchase and sale of firearms," even if the regulation is not "express[]." 524 F.3d at 404 (emphasis added). But the meaning of that surmise is itself far from clear. And to the extent it would sweep in general statutes, it contradicts the statutory text for the reasons above. In any event, even if the *City of New York* dicta were the rule here, Mexico's consumer-protection claims would still fail because they rest on strained readings of state consumer-protection law that are far from "clear."

But there is no need for this Court to reach the question of whether the PLCAA's predicate exception includes generally applicable consumer-protection laws, because Mexico's complaint utterly fails to state a viable claim under any consumer-protection law. In its briefing, Mexico now abandons any claim of "false" advertising, instead relying exclusively on the theory that Defendants' truthful advertisements of their lawful firearm products violate consumer-protection laws because they somehow "promote[] or encourage[] an unlawful activity." ECF 97 at 6 n.12 (quoting *Soto*, 202 A.3d at 311 n.56). But this theory too fails on the face of the complaint, because Mexico cannot identify a single word in any Defendant's advertising that actually calls for, advocates, promotes, or encourages any unlawful conduct. Although the advertisements truthfully show that semi-automatic firearms are fun to shoot or have police and military applications, those uses are perfectly consistent with the lawful and commonplace

activities of target shooting and self-defense. Accordingly, Defendants' advertisements cannot be prohibited under state consumer-protection laws on the theory that they might *implicitly* put bad ideas in the minds of criminals. Indeed, as explained in the individual motions to dismiss filed by Smith & Wesson and Colt, no state consumer-protection law has ever been understood in that way, and any such vague speech prohibition would flagrantly violate the First Amendment. *See* ECF 72 at 14-15, 18-20; ECF 65 at 16-19; *see also Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, No. 21-2492, 2022 WL 711244 (3d Cir. Mar. 10, 2022) (Matey, J., concurring) (explaining that applying state consumer-protection law to prohibit truthful and non-misleading firearm advertising would raise serious concerns under the First *and* Second Amendments).

### 2. Defendants have not violated any firearms-specific statute.

For all of these reasons, Mexico cannot bring a claim under the predicate exception unless it can show that Defendants knowingly violated a "State or Federal statute" that specifically regulates firearms. As Defendants have explained, however, Mexico's complaint fails to allege any facts to support such a violation. *See* Joint MTD 17-21. In response, Mexico argues that Defendants have violated two types of firearms-specific laws. It is wrong on both.[8]

*First*, Mexico's primary argument (at 22-23) is that Defendants are openly violating federal criminal law by selling "machinegun[s]" banned under 18 U.S.C. § 922(b)(4). To accept this claim, the court would have to conclude that the nation's largest firearms companies have been flagrantly violating federal criminal law for decades by making and selling firearms that are owned by millions of Americans, but which are actually illegal "machineguns," and that federal regulators and prosecutors have done nothing about it. This argument is implausible on its face.[9]

---

[8] The Complaint also asserted violations of 18 U.S.C. § 922(r). *See* Compl. ¶¶ 68, 305. In response, Defendants explained why Mexico had not plausibly pleaded any violation of that provision. *See* Joint MTD 19. Plaintiff has now abandoned this point, thereby conceding it. *See Morales v. Desmarais*, No. 12-cv-12096, 2013 WL 3208610, at *4 (D. Mass. June 21, 2013) (granting motion to dismiss a claim when not addressed in opposition).
[9] The ATF has had authority to oversee the manufacture, transfer, and registration of fully automatic firearms, including approval of their transfer, since 1986. *See generally* 26 C.F.R. § 5801 *et seq.*; 27 C.F.R. § 479.1 *et seq.*

Moreover, Mexico's argument is squarely foreclosed by the statutory text and binding precedent. According to Mexico (at 23), certain Defendants' semiautomatic civilian versions of the AK-type and AR-type rifles are illegal "machineguns" because they *can be converted* into fully automatic weapons. But under the clear text of the statute, "machinegun[s]" are firearms that "shoot[], [are] designed to shoot, or can be readily restored to shoot" as fully automatic weapons. 26 U.S.C. § 5845(b). A firearm cannot be "restored" into a machinegun unless it previously functioned as one, which is not alleged here. As the Supreme Court has made clear, moreover, "the statute certainly does not suggest that any significance should attach to readily convertible semiautomatics, for that class bears no relation to the definitions in the Act." *Staples v. United States*, 511 U.S. 600, 612 n.6 (1994). Thus, a semi-automatic AR-15 is not a "machinegun," given that "virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun." *Id.* at 612- 13 & n.6. Similarly, the First Circuit has recognized that a "commercial semi-automatic AK-47" is not a machinegun because it "cannot be made into an automatic weapon without some modification or alteration." *United States v. Nieves-Castaño*, 480 F.3d 597, 600 (1st Cir. 2007).[10]

In arguing to the contrary, Mexico relies on a 1982 administrative ruling from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). But the interpretive approach in that ruling was squarely rejected by the Supreme Court in *Staples* and the First Circuit in *Nieves-Castano*. Moreover, a mere "agency interpretation" cannot "replace the plain text" of the statute. *Rapanos v. United States*, 547 U.S. 715, 750 (2006). And that is especially true when it comes to criminal statutes like the one here, as the rule of lenity requires any ambiguity to be construed

---

[10] Mexico invokes *Parsons v. Colt's Manufacturing Co. LLC*, No. 19-cv-01189, 2020 WL 1821306 (D. Nev. Apr. 10, 2020), which rejected the Supreme Court's definition of machineguns in *Staples* as mere "dicta." *Id*. at *5. But *Staples*' analysis was not dicta, because it was necessary to the Court's *mens rea* holding—i.e., that the knowing possession of a "readily convertible semiautomatic[]" does not establish the knowing possession of a "machinegun." *Staples*, 511 U.S. at 612 n.6.

against liability. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 (1992) (courts should "apply[] lenity in interpreting a criminal statute invoked in a civil action").[11]

*Second*, Mexico doubles down on its theory that Defendants are somehow indirect criminal "accomplices" to downstream criminals who violate firearms rules. Opp. 23-25. But as Defendants explained (at 19-20), companies that sell lawful products are not criminal accomplices just because they supposedly "know" that some small percentage of their products will be put to unlawful use at some point down the distribution chain. Otherwise, the law would make federal felons out of the manufacturers of all types of products—from kitchen knives to baseball bats to sports cars. All such manufacturers know that some of their products can be misused to commit crimes. But that does not make them criminal accomplices. At most they "incidentally facilitate" those remote crimes, but they do not "actively participate" in them. *Rosemond v. United States*, 572 U.S. 65, 77 n.8 (2014).[12]

Mexico continues to rely on *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), but Defendants already addressed that case: It involved a defendant who sold someone such a large quantity of narcotics that they *could not possibly have been used* for any purpose other than

---

[11] Even if the 1982 ATF interpretative ruling were held to change Congress's definition of a "machinegun" under Section 5845(b), it would not help Mexico here for several reasons. For one thing, the federal restriction on selling "machinegun[s]" found in Section 922(b)(4), which Mexico alleges Defendants violated, expressly does not apply to transfers among federal firearm licensees. 18 U.S.C. § 922(b) (Paragraph (4) "of this subsection shall not apply to transactions between licensed importers, licensed manufacturers, licensed dealers, and licensed collectors."). Moreover, the 1982 ATF ruling narrowly addressed three specific firearms that Defendants are not alleged to sell, and that the ATF deemed to be unlawful "machineguns" based on a unique "combination of design features" that are "not found in typical sporting firearms." ATF Rul. 82-8. Specifically, the three firearms at issue there were "blowback operating," and fired from the "open bolt position" with a "fixed firing pin." *Id.* The combination of these features, which is not alleged to be present on Defendants' firearms, allowed full automatic fire through modification of the firearms' "disconnector." Here, by contrast, Mexico does not allege that any of Defendants' firearms have the same "combination of design features" that made the three firearms their unlawful—which explains why the ATF has never classified Defendants' AR-type and AK-type semiautomatic firearms as "machineguns." Indeed, Mexico does not allege that Defendants sell anything other than "typical sporting firearms," which the ATF determined are *not* unlawful machineguns. *Id.*

[12] *See also United States v. Aponte-Suarez*, 905 F.2d 483, 491 (1st Cir. 1990) (accomplice liability only for those who "took an active role" in the criminal venture, but not for those who were "indifferent" to it); *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir. 1940), *aff'd*, 311 U.S. 205 (seller not an accomplice just because "he knows that others will make an unlawful use" of product; "he must in some sense promote their venture himself, make it his own, have a stake in its outcome"); *Harris News Agency, Inc. v. Bowers*, 809 F.3d 411, 413 n.1 (8th Cir. 2015) (discussing the "affirmative participation required for aiding-and-abetting liability" of a firearms dealer).

illegal drug-dealing. *Id*. at 705. The objective lack of any legitimate purpose was material evidence that the seller was an active participant in the crime. Here, by contrast, the overwhelming majority of firearms lawfully sold by Defendants are lawfully resold and used for entirely lawful purposes. Thus, unlike in *Direct Sales*, Defendants do not "actively participate" in any crime. The complaint also fails to identify any dealer to whom any Defendant directly sells any firearm knowing that the dealer will commit a crime. Mexico tries to sidestep this problem by asserting in vague and conclusory terms that Defendants indirectly "supply" "numerous downstream distributors and dealers" who sell some guns illegally. Opp. 24.[13] But that type of attenuated and indirect "supply" to "downstream" sellers is very different from making *direct* sales that have no objective purpose other than furthering the buyer's criminal activity. Because the connection here is so remote and indirect, that is yet another reason Defendants do not actively participate in crime as required for criminal accomplice liability.

The other cases Mexico cites underscore how different this case is from others allowing criminal accomplice liability against sellers of lawful products. In *United States v. Bewig*, 354 F.3d 731 (8th Cir. 2003), the defendant directly sold "bulk" quantities of pseudoephedrine to a meth ring. *Id*. at 736. The court observed that "*unlike [the sale of] goods susceptible to multiple legal uses*, [the defendant's] disproportionately high sales of pseudoephedrine suggest agreement in the illegal endeavor" of producing illegal drugs. *Id*. (emphasis added). Even if the pseudoephedrine itself was not unlawful, it was obvious that the bulk buyers could not use it for any lawful purpose. Thus, the defendant "not only sold pseudoephedrine with the *knowledge* that it would be made into methamphetamine but agreed to *become part of* that illegal end." *Id*.

---

[13] *See, e.g.*, Compl. ¶ 133 (vaguely faulting Defendants for indirectly "supplying any licensed dealer" with firearms); *id*. ¶¶ 121, 123 (faulting defendants for failing to take "steps to determine which dealers and distributors are supplying the cartels in Mexico" and failing to "cut off supplies").

(emphasis added). Here, by contrast, Defendants do not sell directly to criminals and sell firearms with "multiple legal uses." They are not active participants in any crime.[14]

Accordingly, because the complaint fails to allege facts showing that Defendants violated any restriction on "machinegun" sales or actively participated in any crime, Mexico cannot establish the violation of any firearms-specific statute as required under the predicate exception.

### 3. No predicate violation proximately caused any harm to Mexico.

Even if Mexico could establish that Defendants violated some predicate statute, it could not show that "the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). As Defendants have explained, this provision makes clear that the predicate exception cannot be satisfied unless there is a proximate link between "the harm" alleged by the plaintiff and "the violation" of a predicate statute by a defendant. *Id*.; Joint MTD 22-23. In its brief, Mexico has virtually nothing to say about this express requirement.[15]

Mexico makes a variety of arguments in an attempt to show that Defendants' alleged overall conduct (that is, making and selling firearms) was the proximate cause of its alleged injuries. But as noted, this line of argument fails to satisfy the PLCAA's requirement that a specific "violation" of a predicate statute must be a proximate cause of "the harm" alleged. 15 U.S.C. § 7903(5)(A)(iii). In light of that requirement, Mexico must allege how some particular knowing act, which violated a predicate statute, was the proximate cause of its harm. It does not.

---

[14] The other case cited by Mexico is even farther afield. In *United States v. Wyche*, No. 02-30145, 2003 WL 1922966 (5th Cir. Mar. 28, 2003), the defendant directly "sold a substantial amount of [illegal] drugs in standardized quantities on repeated occasions over an extended period of time to the same individuals who in-turn resold those drugs." *Id*. at *3. Here, Defendants make and sell *lawful* products that are used overwhelmingly for lawful purposes.

[15] Instead of trying to satisfy this requirement, Mexico denies that it exists. In a footnote (Opp. 36 n.198), Mexico quotes an inapposite passage from an Indiana court holding that the predicate exception does not even require a plaintiff to "allege a specific statutory violation." *City of Gary*, 126 N.E.3d at 828. But that case did not address the "proximate cause" requirement of the PLCAA at all. In any event, *City of Gary* is clearly incorrect on this point, as a plaintiff obviously cannot state a valid claim based on a supposed statutory violation without even identifying the statute that has been violated. Moreover, *City of Gary* is also inapposite because it applied nothing more than the "notice pleading" required by the Indiana rules, which is less demanding than the federal pleading standards under *Iqbal* and *Twombly* that apply here. *See, e.g.*, *Droscha v. Shepherd*, 931 N.E.2d 882, 887 (Ind. Ct. App. 2010) (distinguishing the state and federal pleading standards).

Even putting aside that problem, Mexico's proximate-cause arguments fail on their own terms. *First*, Mexico is wrong to say that the proximate-cause requirement depends on which "substantive [tort] law [is] applied." Opp. 33. The PLCAA imposes a freestanding proximate-cause requirement as a matter of federal law, which means that federal proximate-cause standards apply. When Congress incorporates "proximate cause" into a federal statute, it has a "well established" meaning that allows liability only if "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017). Thus, since Congress incorporated a proximate-cause requirement into the predicate exception, it does not allow any claim unless the plaintiff can show a "close connection" between the alleged harm and the violation of the predicate statute. *Id*.

*Second*, Mexico contends that proximate cause does not take account of remoteness but instead turns solely on the "foreseeability" of the injury, no matter how many "steps in the causal chain" there might be. Opp. 35. But the Supreme Court has squarely rejected that argument. "[P]roximate cause 'generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct.'" *Bank of Am. Corp.*, 137 S. Ct. at 1306 ("[T]he Eleventh Circuit erred in holding that foreseeability is sufficient to establish proximate cause under the FHA."). Contrary to what Mexico argues, the remoteness doctrine is not limited to the RICO statute, but applies under all types of federal laws.[16] And it has firm grounding in the common law. *See, e.g.*, *Petitions of Kinsman Transit Co*., 388 F.2d 821, 825 & n.8 (2d Cir. 1968) (even where harm "foreseeable," causal link "too tenuous and remote to permit recovery").

Of special note here, the Supreme Court has recognized that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). "A link that is 'too remote,' 'purely contingent,'

[16] *Bank of Am. Corp*., 137 S. Ct. at 1305 (Fair Housing Act); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 532 (1983) (Sherman Act); *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 52 (1st Cir. 1985) (admiralty); *Fields v. Twitter, Inc*., 881 F.3d 739, 746 (9th Cir. 2018) (Anti-Terrorism Act).

or 'indirec[t]' is insufficient." *Id*. And "[t]he general tendency of the law, in regard to damages at least, is *not to go beyond the first step*" in the causal chain. *Id*. at 10.

Mexico insists that this case "does not involve eight steps" of causation, but really "closer to three." Opp. 35. That sleight-of-hand works only by lumping the independent actions of *numerous* third parties together under a single header. *See, e.g.*, *id*. (asserting that "Defendants sell guns *through their distribution systems* to retail dealers," and dealers "sell the weapons *to gun traffickers and cartels*" (emphasis added)). This formulation hides the fact that there are many different intervening actors in the "distribution systems" and the "gun traffickers and cartels" described. Regardless, the multi-step nature of Mexico's theory of causation is simply undeniable: Defendants place lawful products into the highly-regulated stream of U.S. domestic commerce, where they then pass hand-to-hand through countless intermediaries, some of which find their way into criminal hands through the illegal acts of persons far removed from Defendants and over whom Defendants have no control. By any measure, Mexico's "theory of causation requires us to move well beyond the first step" of causation, which means that it "cannot meet" the "requirement" of proximate cause. *Hemi Grp*, 559 U.S. at 10. Indeed, the attenuation here far exceeds that in other cases that have been dismissed for lack of proximate cause. *See, e.g.*, *City of Philadelphia v. Beretta U.S.A. Corp*., 277 F.3d 415, 423 (3d Cir. 2002).

*Third*, Mexico argues that foreseeable criminal misconduct does not necessarily break the chain of causation. Opp. 36-37. But that misses the straightforward point that courts will not extend liability over *multiple independent* criminal acts, no matter how foreseeable.[17] To take Mexico's own example (*id*. at 37 n.202), bars that serve alcohol to minors could be the proximate cause of the harm caused by those minors' drunk driving. But that does not mean the doctrine of proximate cause would allow liability for alcohol *manufacturers* who sell to

---

[17] *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018); *Breeden v. Novartis Pharms. Corp.*, 646 F.3d 43, 49 (D.C. Cir. 2011); *Akins v. District of Columbia*, 526 A.2d 933, 935 (D.C. 1987); *McGhee v. Hybrid Logistics, Inc.*, No. 12-10771, 2014 WL 11281402, at *7 (E.D. Mich. Apr. 4, 2014), *aff'd*, 599 F. App'x 259 (6th Cir. 2015).

*distributors*, who sell to *retailers*, who sell to *parents* who host underage drinking parties, leading some *minors* to drive drunk, causing injury to *third parties*, in turn causing derivative injury to the *local government*. That would be far too many links in the causal chain.

*Fourth*, Mexico argues that the lack of proximate cause is not an appropriate ground for dismissal because it turns on issues of fact. But again, the Supreme Court has squarely rejected this argument. "[L]ike any other element of a cause of action, [proximate cause] must be adequately alleged at the pleading stage in order for the case to proceed." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Thus, "[i]f a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed." *Id*. After all, if the facts alleged in the complaint cannot establish proximate cause *as a matter of law*, then the plaintiff is not "entitled to an opportunity to prove them." *Id*. Massachusetts courts recognize the same point: Where "there can be no reasonable difference as to the effect" of "the facts" on the proximate-cause analysis, then it is appropriate to rule, "as [a] matter of law, that a cause is remote rather than proximate." *Stamas v. Fanning*, 185 N.E.2d 751, 753 (Mass. 1962); *Kent v. Commonwealth*, 771 N.E.2d 770, 778 (Mass. 2002). That is precisely the case here, because the complaint itself makes clear that even if all of Mexico's allegations were proven true, the causal connection between Defendants' alleged violations and any harm to Mexico is far too indirect, remote, and attenuated to support liability as a matter of law.

*Fifth*, Mexico cites a number of cases (at 35-36) that did not involve the federal proximate-cause standard articulated by the Supreme Court above. Those cases are also factually distinct from the present case. *Ileto v. Glock, Inc.* did not involve interstate—much less international—criminal smuggling, and thus did not confront the extreme attenuation present in this case where a foreign sovereign is claiming diffuse harms resulting from the operations of an international criminal syndicate. 349 F.3d 1191, 1194-96 (9th Cir. 2003). The other cases likewise did not involve this international context, and they barely found enough proximate

cause to survive a motion to dismiss. *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1245 (Ind. 2003) (conceding "substantial issues of proximate cause"); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1149 (Ohio 2002) (finding proximate cause, in a cursory analysis, by a 4-3 vote). Had those courts faced the added attenuation of international smuggling, they almost certainly would have reached different results. And in any event, Mexico offers no reason to favor these decisions over Defendants' more numerous and better-reasoned ones.

Nor does *City of Boston v. Smith & Wesson Corp.*, No. 199902590, 2000 WL 1473568, at *1 (Mass. Super. July 13, 2000), change matters. Opp. at 36. There, the trial court acknowledged the case "present[ed] an extreme theory of liability," but stated—without explanation—that a motion to dismiss was "not the proper vehicle to challenge the theory." 2000 WL 1473568, at *7; *see City of Philadelphia v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 910 (E.D. Pa. 2000) (criticizing the decision). The case was voluntarily dismissed, and the decision went "unexamined by Massachusetts higher courts," eliminating whatever "persuasive weight" this 20-year-old state trial-court decision might have had. *Town of Westport v. Monsanto Co.*, No. 14-cv-12041, 2015 WL 1321466, at *3 (D. Mass. Mar. 24, 2015). Moreover, the "appellate courts that have considered the question of the remoteness doctrine in similar cases" have since expressly rejected *City of Boston*.[18]

*Sixth*, Mexico claims that its injuries are not derivative, but it does not cite any case for the proposition that a foreign government *itself* suffers direct harm from injury to its citizens or employees. Nor can Mexico meaningfully rebut the litany of decisions barring suits by foreign sovereigns against U.S. manufacturers for injuries their citizens sustained. Contrary to Mexico's assertions (at 41 n.224), *none* of those cases turned on subrogation issues. Rather, they each held

---

[18] *See Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 128 n.15 (Conn. 2001); *see, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1136-37 (Ill. 2004); *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 94 (N.Y. App. Ct. 2003).

that foreign sovereigns stand too far removed from the injury sustained to allege claims of their own.[19] Likewise, Mexico cites a handful of cases saying that the extra "costs" of dealing with societal problems such as gun violence count as "direct" injury to government entities, but those outlier cases are inconsistent with the rationale of the derivative-harm component of the proximate-cause analysis: Governments are not the proper plaintiffs in this type of suit because it is virtually impossible to determine what portion of the diffuse societal costs is "attributable to the wrongdoing" of manufacturers "as opposed to other, independent factors." *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 123 (Conn. 2001). Allowing this type of claim would require "complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries" by many plaintiffs. *Id.*

*Finally*, Mexico argues that "[t]he burden is not on the Government to explain, at the pleading stage, how to apportion liability." Opp. 39. But that misses the point: That it would be *impossible* to apportion liability and damages in any reliable or principled way based on Mexico's remote, far-flung allegations underscores why its complaint is not viable. *See Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 36 (1st Cir. 2021). Courts should avoid "shouldering these difficulties" where there are more "directly injured" plaintiffs who "could be counted on to bring suit." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 259 (1992). Mexico has not explained why a suit by private victims would not present a comparatively less-attenuated option. That failure alone requires dismissal.

### 4. Predicate violations do not authorize independent claims.

Mexico argues that if the predicate exception applies based on any statutory violation, then "*all claims* are excepted from PLCAA's preclusion, regardless of whether they would independently fall within an exception." Opp. 21-22. As an initial matter, there is no need for the

---

[19] *See SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001); *State of São Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1126 (Del. 2007); *Republic of Venez. ex rel. Garrido v. Philip Morris Cos.*, 827 So. 2d 339, 341 (Fla. Dist. Ct. App. 2002).

Court to reach this issue because, as shown above, Mexico cannot satisfy the predicate exception at all—it cannot show any statutory violation, much less a violation that is the proximate cause of its injury. But in any event, Mexico's reading of the statute is clearly incorrect.

The predicate exception is narrowly crafted to allow only "an action in which [the defendant] knowingly violated a [predicate statute], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). The only sensible reading is to allow only *causes of action* that seek "relief" for harm proximately caused by a predicate violation. Indeed, "while the term 'action' may be most commonly understood to refer to a case, rather than an individual claim, the term is sometimes used instead as shorthand for a single 'cause of action.'" *See, e.g.*, *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 466 (E.D. Pa. 2016) (providing examples). This is the only way to harmonize the predicate exception with the PLCAA's purpose, which is "[t]o prohibit *causes of action*" in cases involving the "criminal or unlawful misuse of firearm[s]" by third parties. 15 U.S.C. § 7901(b)(1) (emphasis added).

Mexico's contrary reading is nonsensical because it would open the door for *all claims* to proceed even if they are unrelated to any predicate violation. Claims would thus turn solely on the coincidence of whether they happen to be asserted in the same case as a defendant who violated a predicate statute. Mexico argues that this makes sense because Congress did not want the PLCAA's protections to apply *at all* for any defendant who has violated a predicate statute. Opp. 21 n.112. But if that were true, Congress would not have required "the" predicate violation to be a proximate cause of "the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). Moreover, Mexico's reading would strip *all defendants in the case* of the PLCAA's protections based on a violation by a *different* defendant. That would be an absurd result.

## C. The "Negligence Per Se" Exception Does Not Apply.

Mexico briefly attempts to fit its claims within the "negligence per se" exception, but its argument fails in three respects. *First*, Mexico does not dispute that this exception applies only to

actions against statutorily defined "seller[s]," which are "licensed to engage in business as" a firearms "dealer" under federal law. 15 U.S.C. § 7903(5)(A)(ii), (6); 18 U.S.C. § 921(a)(11). Nor does Mexico dispute that no defendant other than Witmer is a licensed "dealer." *See* Joint MTD 25. Instead, Mexico makes the entirely non-responsive and irrelevant point that the categories of "seller[]" and "manufacturer[]" are not necessarily "mutually exclusive." Opp. 28. No defendant other than Witmer is alleged to be a licensed "seller"/"dealer." That is enough to defeat the exception for the non-seller Defendants (i.e., all except for Witmer).

*Second*, with respect to Witmer, Mexico cannot satisfy the "negligence per se" exception because the complaint fails to allege facts showing that Witmer violated any safety statute. Defendants made this point in their opening brief (at 26) and Mexico does not respond with any argument attempting to show that Witmer actually violated any statute. To the extent Mexico relies on its argument about the firearms-specific statutes discussed above, that argument fails for the reasons already explained. *See supra* pp. 21-25.

*Third*, Mexico cannot cite any case holding that *foreign sovereigns* fall within the "class of persons" intended to be protected by any statute here. The only case Mexico cites on this point (Opp. 28 n.152) holds that laws against serving intoxicated bar patrons are "intended" to protect "not only the intoxicated person himself, but members of the general public as well." *Adamian v. Three Sons, Inc.*, 233 N.E.2d 18, 19 (Mass. 1968). But a foreign sovereign is a far cry from the "general public," and there is no indication it falls within the protected class of persons here.

### D.    Federalism Concerns Do Not Justify a Narrow Construction of the PLCAA.

Mexico and its amici invoke the so-called presumption against preemption to argue that the PLCAA must be narrowly construed because its bar on tort claims intrudes on an "area[] of traditional state authority." Opp. 20-21 n.110; Br. of Amici States, ECF 110-1 at 2-5. But even putting aside the tension with Mexico's other argument that *Mexican* law should displace state law in this case, its federalism argument is mistaken.

As the Supreme Court has explained, courts "do not invoke any presumption against pre-emption" when interpreting a statute that "contains an express pre-emption clause." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). After all, it would be nonsensical to presume that Congress did not intend to displace state law when that is the avowed purpose of the statute in question. In this situation, the court should simply "focus on the plain wording of the [statute], which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.*; *see also Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 325 (2016) (holding that a state law "cannot be saved by invoking the State's traditional power to regulate," because federal law "certainly contemplated the pre-emption of substantial areas of traditional state regulation"); *Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017) (en banc) (explaining that after the Supreme Court's decision in *Franklin*, there is no presumption against preemption for express preemption clauses even when they are "highly elastic and so of limited help").

Here, there can be no question that the PLCAA specifically contemplates barring state tort claims based on third-party criminal or unlawful misuse of firearms. Congress expressly stated that it was enacting the law to put a stop to "[l]awsuits" and "causes of action" that had "been commenced" against firearms companies seeking "relief for the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3), (b)(1). As Defendants have explained (at 15), the "lawsuits" and "causes of action" referred to were ones asserting claims under state law. Congress further stated that firearms companies "are not, and should not, be liable" on such claims, *id.* § 7901(a)(5), and in the operative provision stated that "qualified civil liability actions" may not be brought in any court, *id.* § 7902(a). It would thus be a clear inversion of the statutory purpose to apply any presumption that Congress did *not* want to displace state-law claims. The relevant canon is that when Congress enacts a broad preemption clause with "narrow, specific exceptions," the exceptions should not be "appl[ied] . . . too expansively." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104 (1983).

**IV. Defendants Have No Cognizable Legal Duty to Foreign Governments Like Mexico.**

Mexico's "duty" argument misses the point. *See* Opp. 40-41. As Defendants explained, companies that manufacture and sell products in the United States have no cognizable legal duty to foreign governments for products that are illegally smuggled outside of the country and used by criminals to inflict harm abroad. *See* Joint MTD 39-40. In response, Mexico cannot cite *any* case that has *ever* recognized such a legal duty to a foreign sovereign. This Court should not be the first to create such a duty under state law, because federal courts sitting in diversity are "charged with ascertaining state law, not with reshaping it." *Katz*, 672 F.3d at 73-74.

Mexico offers two basic arguments on the "duty" issue: First, Mexico argues (Opp. at 40) that it is not seeking to impose an affirmative duty to "protect" foreign governments, but only to "avoid" conduct that increases the risk of harm to them. But on its face, the complaint seeks to require Defendants to take many affirmative measures to protect Mexico from harm—such as by policing the conduct of downstream dealers, adopting "smart gun" technology, and adding hidden serial numbers to help fight smuggling. Compl. ¶¶ 353-76. No matter how a duty is framed, the fact remains that no court has ever recognized any duty on the part of a company in the United States to change its business practices to mitigate harms inflicted by criminals misusing its products in other countries. *See* Joint MTD 39-40 & n.11.

Second, unable to cite any cases of its own involving duty to foreign sovereigns, Mexico tries to distinguish the foreign-sovereign cases cited by Defendants by arguing that they turned solely on "subrogation" issues. Opp. 41 n.224. That is simply false. As even a cursory reading of those decisions reveals, the lack of duty did not turn on any subrogation issue, but on far broader concerns about allowing this type of suit by foreign sovereigns. *See supra* 29-30 & n.19.

**V. Manufacturing and Selling Lawful Firearms Is Not a "Public Nuisance."**

Mexico does not dispute that "most courts" have "rejected" public-nuisance claims "against the makers of products that have caused harm, such as tobacco, firearms, and lead

paint." *See* Joint MTD 40-41 (quoting RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 8 cmt. g (2020)). Instead, Mexico argues that this Court should follow the minority position and allow the public-nuisance claims here, which it says would be authorized under Mexican and Massachusetts law. But Mexican law does not apply here as explained above, *supra* pp. 6-9, and there is no reason to think Massachusetts law applies to any Defendant other than Smith & Wesson and Witmer. The other defendants are based in other states. Compl. ¶¶ 32-40. Mexico does not suggest that any of those states follow the minority rule that it advocates. Instead, Mexico relies heavily on an Ohio decision, where the dissent warned that the majority had taken "the ill-advised first step toward transforming nuisance into 'a monster that would devour in one gulp the entire law of tort.'" *Beretta U.S.A. Corp.*, 768 N.E.2d at 1157-58 (Cook, J., dissenting). But the Ohio legislature quickly acted to eliminate that minority rule. *See* 2006 Ohio Laws 2278-79 (codified at Ohio Rev. Code Ann. § 2307.71(A)(13)).[20]

Mexico does venture an argument under Massachusetts law, but it too fails. For one thing, Mexico does not dispute the absence of Massachusetts appellate-court authority allowing the type of public-nuisance claim at issue here. Mexico cites two state trial-court decisions (Opp. 42-43), but they do not constitute binding precedent and they conflict with the decision of the Massachusetts Supreme Judicial Court in *Jupin v. Kask*, which held that possessing or storing firearms is not a public nuisance because it does not inflict harm by itself, but only if there is some improper "use of the gun[s] by a third party." 849 N.E.2d 829, 843-44 (Mass. 2006). That is the controlling rule of law here. It makes no difference that this case involves manufacturing and sale of firearms rather than possession or storage, because the key point remains that none of the alleged harm would result but for the intentional criminal misconduct of third parties— whereas a public nuisance is something that is *per se* harmful by its mere presence. *Id.*

---

[20] The City of Cincinnati voluntarily dismissed its case against the firearms industry. *See, e.g.*, Reuters, *Cincinnati's Council Decides to Drop Suit Against Gun Makers*, N.Y. TIMES (May 1, 2003), https://tinyurl.com/2rysedhe.

Dated: March 14, 2022

Respectfully submitted,

Defendant,                                     Defendant,
Smith & Wesson Brands, Inc.,                   Glock, Inc.,
By its attorneys,                              By its attorneys,


_____/s/ Andrew E. Lelling_____            _____/s/ Peter M. Durney_____
Andrew E. Lelling (BBO No. 631859)             Peter M. Durney (BBO No. 139260)
alelling@jonesday.com                          pdurney@cornellgollub.com
100 High Street                                Patricia A. Hartnett (BBO No. 568206)
JONES DAY                                      phartnett@cornellgollub.com
Boston, MA  02110-1781                         CORNELL & GOLLUB
Phone: (617) 449-6856                          88 Broad Street, Sixth Floor
Fax: (617) 449-6999                            Boston, MA 02110
                                               Phone: (617) 482-8100
and                                            Fax: (617) 482-3917


Noel J. Francisco (admitted PHV)               and
njfrancisco@jonesday.com
Anthony J. Dick (admitted PHV)                 John F. Renzulli (admitted PHV)
ajdick@jonesday.com                            Christopher Renzulli (admitted PHV)
JONES DAY                                      Jeffrey Malsch (admitted PHV)
51 Louisiana Avenue, N.W.                      RENZULLI LAW FIRM LLP
Washington, D.C. 20001                         One North Broadway, Suite 1005
Phone: (202) 879-3939                          White Plains, NY 10601
Fax: (202) 626-1700                            Phone: (914) 285-0700
                                               Fax: (914) 285-1213

Defendant,
Barrett Firearms Manufacturing, Inc.,
By its attorneys,

_____/s/ James W. Porter_____
James W. Porter  (admitted PHV)
jwporterii@pphlaw.net
Warren Kinney (admitted PHV)
wkinney@pphlaw.net
PORTER PORTER & HASSINGER, P.C.
880 Montclair Road
Suite 175
Birmingham, Alabama 35213
Phone: (205) 322-1744

and

James M. Campbell (BBO No. 541882)
jmcampbell@Campbell-trial-lawyers.com
Trevor J. Keenan (BBO No. 652508)
keenan@Campbell-trial-lawyers.com
CAMPBELL CONROY & O'NEIL, P.C.
1 Constitution Wharf, Suite 310
Boston, MA 02129

Defendant,
Beretta U.S.A. Corp.,
By its attorneys,

_____/s/ John McDonald_____
John K. McDonald (PHV motion forthcoming)
JMcDonald@cozen.com
Michael de Leeuw (PHV motion forthcoming)
MdeLeeuw@cozen.com
Michael Savino (BBO No. 568826)
MSavino@cozen.com
COZEN O'CONNOR
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Phone: (215) 864-8046

Defendant,
Sturm, Ruger & Co., Inc.,
By its attorneys,

_____/s/ Jonathan Handler_____
Jonathan I. Handler (BBO No. 561475)
jihandler@daypitney.com
Keith H. Bensten (BBO No. 568780)
kbensten@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Phone: (617) 345-4600
Fax: (617) 345-4745

and

James Vogts (admitted PHV)
jvogts@smbtrials.com
SWANSON, MARTIN & BELL LLP
330 N. Wabash Suite 3300
Chicago, IL 60611
Phone: (312) 222-8517
Cell: (630) 258-3987

Defendant,
Colt's Manufacturing Company LLC,
By its attorneys,

_____/s/ Mike Rice_____
Mike Rice (admitted PHV)
mikerice@hlawllc.com
Harrison Law LLC
141 West Jackson Boulevard
Suite 2055
Chicago, IL 60604
Phone: (312) 638-8776

and

John G. O'Neill (BBO No. 630272)
oneill@sugarmanrogers.com
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
Phone: (617) 227-3030

Defendant,
Witmer Public Safety Group, Inc.,
By its attorneys,

_____/s/ S. Jan Hueber_____
S. Jan Hueber (admitted PHV)
hueber@litchfieldcavo.com
LITCHFIELD CAVO LLP
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Phone: (817) 945-8025

and

Nora R. Adukonis (BBO No. 675932)
adukonis@litchfieldcavo.com
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA  01940-2682
Phone: (781) 309-1500

Defendant,
Century International Arms, Inc.,
By its attorneys,

_____/s/ Joseph Yannetti_____
Joseph G. Yannetti (BBO No. 669008)
jyannetti@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street, Boston, MA 02210
Phone: (617) 439-7585

and

Anthony Pisciotti (admitted PHV))
apisciotti@pisciotti.com
Danny Lallis (admitted PHV)
dlallis@pisciotti.com
Ryan Erdreich (admitted PHV)
rerdreich@pisciotti.com
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
Phone: (973) 245-8100

## CERTIFICATE OF SERVICE

I hereby certify that, on March 14, 2022, the foregoing document was served upon all counsel of record through this Court's electronic filing system as identified in the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

<div style="margin-left:40%">

_____/s/ Andrew E. Lelling_____
Andrew E. Lelling (BBO No. 631859)
alelling@jonesday.com
100 High Street
JONES DAY
Boston, MA 02110-1781
Phone: (617) 449-6856
Fax: (617) 449-6999

</div>