# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS,<br><br>Plaintiff,<br><br>v.<br><br>SMITH & WESSON BRANDS, INC.; BARRETT FIREARMS MANUFACTURING, INC.; BERETTA U.S.A. CORP.; BERETTA HOLDING S.P.A.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S MANUFACTURING COMPANY, LLC; GLOCK, INC.; GLOCK GES M.B.H.; STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC. d/b/a INTERSTATE ARMS;<br><br>Defendants. | Case No.: 1:21-CV-11269-FDS |

**DEFENDANT CENTURY INTERNATIONAL ARMS, INC.'S REPLY IN SUPPORT OF ITS SEPARATE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. ii

**PRELIMINARY STATEMENT** ...........................................................................................1

**ARGUMENT** .........................................................................................................................1

    I.    **Mexico Cannot Satisfy the Relatedness Requirement for Establishing Specific Personal Jurisdiction Over Century** ...........................................................................................................1

        A.    **The *Ford* Case Supports the Conclusion That There is No Basis for Specific Jurisdiction Over Century** ...........................................1

        B.    **Lawful Sales to Federally-Licensed Firearms Distributors in Massachusetts Do Not Establish Specific Jurisdiction Over Century** .....................................................3

        C.    **The Speculative "Expert" Reprot Submitted in Opposition Does Not Establish Any Basis for Specific Jurisdiction Over Century** ................................................5

    II.    **Exercising Personal Jurisdition Over Century Would be Unreasonable** ...................................................................................................6

    III.    **Mexico's Perfunctory Request for Jurisdictional Discovery Should Be Denied** .................................................................................8

    **CONCLUSION** ...........................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Gissell*,
 2021 WL 2786277 (D. Mass. May 24, 2021) ................................................................. 2

*Boit v. Gar-Tec Prods., Inc.*
 967 F.2d 671 (1st Cir. 1992) ............................................................................................ 4, 5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
 137 S. Ct. 1773 (2017) ..................................................................................................... 2, 3

*Chen v. U.S. Sports Acad., Inc.*,
 956 F.3d 45 (1st Cir. 2020) .............................................................................................. 3

*CRA Int'l, Inc. v. Rowdec, LLC*,
 2015 WL 13376524 (D. Mass. Apr. 3, 2015) ................................................................. 9, 10

*Ford Motor Co. v. Montana 8th Jud. Dist. Ct.*,
 141 S. Ct. 1017 (2021) ..................................................................................................... 1

*Hallal v. Vicis Capital Mater Fund Ltd.*,
 2013 WL 1192384 (D. Mass. Feb. 25, 2013) ................................................................. 9

*Hamilton v. Beretta Corp.*,
 750 N.E.2d 1055 (N.Y. Ct. App. 2001) ........................................................................... 5, 10

*Mora v. Angiodynamics, Inc.*,
 2021 WL 5040333 (D. Mass. Oct. 28, 2021) ................................................................. 3, 8

*Morales v. Desmarais*,
 2013 WL 3208610 (D. Mass. June 21, 2013) ................................................................. 4

*O'Neil v. Somatics, LLC*,
 2021 WL 4395115 (D.N.H. Sept. 24, 2021) ................................................................... 2

*Phillips v. Prairie Eye Center*,
 530 F.3d 22 (1st Cir. 2008) .............................................................................................. 6

*Rain ex rel. Crandall v. Conn. Gen. Corp.*,
 2019 WL 7604856 (D. Mass. Aug. 6, 2019) ................................................................... 8

*Rodriguez v. Samsung Elecs. Co., Ltd.*,
 827 F. Supp. 2d 47 (D. Mass. 2011) ................................................................................ 9

*Sky Billiards, Inc. v. Loong Star, Inc.*,
 2014 WL 12601022 (C.D. Cal. Sept. 4, 2014) ...............................................................4

*Stars for Art Production FZ, LLC v. Dandana, LLC*,
 806 F. Supp. 2d 437 (D. Mass. Aug. 22, 2011) ..................................................9, 10

*Sunview Condo Ass'n v. Flexel Int'l, Ltd.*,
 116 F.3d 962 (1st Cir. 1997) ..............................................................................8

*United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
 960 F.2d 1080 (1st Cir. 1992) ............................................................................6

*United States v. Swiss Am. Bank, Ltd.*,
 274 F.3d 610 (1st Cir. 2001) ..........................................................................8, 9

*Whitaker Corp. v. Un. Aircraft Corp.*,
 482 F.2d 1079 (1st Cir. 2001) ............................................................................9

### REGULATIONS

28 C.F.R. § 5845 ...............................................................................................4

### STATUTES

18 U.S.C. § 922 ................................................................................................4

PRELIMINARY STATEMENT

In order to establish personal jurisdiction over Defendant Century International Arms, Inc. ("Century"), Plaintiff Estados Unidos Mexicanos ("Mexico") was obligated to present specific evidence satisfying the applicable standards. This meant Plaintiff would have to demonstrate that Century's lawful sales to licensed distributors in Massachusetts are related to the illegal activities of drug cartels in Mexico. Rather than attempting to meet this standard, Mexico largely resorts to repeating the same boilerplate allegations from its Complaint and offering a partisan report containing nothing but unsupported extrapolations. At the end of the day, Mexico has failed to put forth any legitimate basis for a Court to assert specific jurisdiction over Century.

ARGUMENT

I. **MEXICO CANNOT SATISFY THE RELATEDNESS REQUIREMENT FOR ESTABLISHING SPECIFIC PERSONAL JURISDICTION OVER CENTURY.**

In opposition, Mexico confines its specific personal jurisdiction argument to contending that its claims sufficiently "relate to" Century's contacts with Massachusetts. In this regard, Mexico accuses Century of "ignoring the Supreme Court's *Ford* decision in favor of circuit precedent pre-dating *Ford*" and then summarily contends that Century's contacts with Massachusetts (lawful sales to a federally-licensed ("FFL") distributor) are sufficiently "related to" this lawsuit to establish jurisdiction. This argument is a misreading of not only *Ford* but also other binding precedent, and Mexico has otherwise not met the standards for personal jurisdiction.

**A. The *Ford* Case Supports the Conclusion That There is No Basis for Specific Personal Jurisdiction Over Century.**

In *Ford*, the Supreme Court reiterated the standard for establishing specific jurisdiction and discussed the relatedness prong of the analysis, which requires that a lawsuit "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). It is significant that in *Ford*, the incidents occurred in the forum states

with injuries to forum residents – a situation that does not exist in this case. Also, while rejecting a "causation-only" approach advanced by Ford Motor Company, the Supreme Court did not alter the well-established standards for specific jurisdiction. *See O'Neil v. Somatics, LLC*, 2021 WL 4395115, at *4 (D.N.H. Sept. 24, 2021) (noting that the *Ford* decision is consistent with First Circuit precedent); *Adams v. Gissell*, 2021 WL 2786277, at *9 n. 13 (D. Mass. May 24, 2021) (same). The phrase "arise out of" involves a causation question, *i.e.,* that the "plaintiff's claim came about because of the defendant's in-state contact." *Ford*, 141 S. Ct. at 1026.[1] The phrase "relate to" contemplates "that some relationships will support jurisdiction without a causal showing." *Id.* However, the Supreme Court clearly warned "[t]hat does not mean anything goes" as the phrase "'relate to' contemplates real limits" to sufficiently protect non-resident defendants. *Id.* at 1031. Thus, there must be a legitimate "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that 't[ook] place' in the forum." *Id.* at 1031 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779-81 (2017)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1780.

In *Ford*, the Supreme Court found that Ford's conduct "related to" the product liability claims at issue because Ford had "systematically served a market in Montana and Minnesota for the very vehicles [Explorer and Crown Victoria] that the plaintiffs alleged had malfunctioned and injured them in those States." *Id.* at 1028. Under such circumstances, there was a "strong relationship among the defendant, the forum, and the litigation – the essential foundation of specific jurisdiction." *Id.* "When a company like Ford serves a market for a product in a State and that product **causes injury in the State to one of its residents**, the State's courts may entertain

---

[1] Mexico acknowledges in opposition that it cannot meet the "arise out of" standard.

the resulting suit." *Id.* at 1022 (emphasis added).

The facts from the *Ford* case are readily distinguished from the claims and allegations here. Mexico and Century are not located in Massachusetts; the alleged injuries occurred outside of Massachusetts; and the alleged damages occurred outside of Massachusetts. Moreover, all of the alleged wrongful conduct (namely, the purported illegal straw sales and trafficking of firearms into Mexico) occurred outside the Commonwealth of Massachusetts. The only purported connection between Massachusetts and this litigation is Mexico's speculative assertion that some number of unidentified Century firearms might have passed through Massachusetts and then – through countless unlawful acts by unknown and unidentified third parties who are far removed from the lawful chain of distribution – yet to be identified firearms were allegedly recovered in Mexico. This attenuated factual scenario is nothing like the situation in *Ford*, where "a company like Ford" heavily marketed a product, operated dealerships, and made repairs in the forum state and the accident, injuries, and damages occurred in the same state. *See Mora v. Angiodynamics, Inc.*, 2021 WL 5040333, at *7 (D. Mass. Oct. 28, 2021) (holding that there was no basis for specific personal jurisdiction over a product manufacturer when the injury occurred out-of-state to a non-resident and the manufacturer's contacts with the state were insufficient to establish the relatedness prong).

B. **Lawful Sales to Federally-Licensed Firearms Distributors in Massachusetts Do Not Establish Specific Jurisdiction Over Century.**

As noted, the fact that Century may have transacted business in Massachusetts does not satisfy the relatedness requirement. *Bristol-Myers*, 137 S. Ct. at 1780. Instead, Mexico must establish that the specific claims in this case "relate to" Century's in-forum activities. 141 S. Ct. 1031; *see also Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020) (explaining that the plaintiff has the burden of submitting specific evidence that is sufficient to show all facts necessary for establishing personal jurisdiction). Rather than presenting evidence in an attempt to meet this

standard, Mexico merely reiterates the boilerplate claim that Century imposes "unlawful distribution policies on gun dealers and . . . distributors," including ones in Massachusetts, which then lead to subsequent downstream sales and then ultimately sales to "straw purchasers" and traffickers. (Dkt. No. 100, p. 11.) In this regard, Mexico has not (1) identified what the "unlawful distribution policies" actually are; (2) how those policies are directed to distributors or other downstream sellers; or (3) how Century directs individual third-parties to act illegally by making straw purchases or trafficking firearms. Moreover, Mexico has not identified any Massachusetts firearms law or regulation that Century violated or instructed distributors to violate. Simply repeating the same hollow allegation of "unlawful conduct" without factual support is insufficient to establish personal jurisdiction. *See, e.g.*, *Sky Billiards, Inc. v. Loong Star, Inc.*, 2014 WL 12601022, at *5 (C.D. Cal. Sept. 4, 2014) (explaining that vague and conclusory allegations of a defendant's illegal activity unsupported by facts are insufficient to warrant the Court's exercise of specific jurisdiction); *see also Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992) (explaining that unsupported allegations are not a basis for personal jurisdiction).

Importantly, neither in the pleadings nor in opposition to Defendant's motion to dismiss has Mexico presented ***any evidence*** that Century's sales to a federally licensed firearm distributor in Massachusetts violated any federal or state statute pertaining to the sale of firearms.[2] Instead,

---

[2] In the Complaint, Plaintiff alleges that Century violated 18 U.S.C. § 922(b)(4) and 922(r). (*See* Dkt. No. 1, Compl. ¶¶ 68, 301-306, 307-313.) In the Joint Motion to Dismiss, Defendants explained that, despite the Complaint's reference to 922(r), there is no allegation that any defendant violated this rule. (Dkt. No. 67, Joint Mot. Dismiss at p. 19.) In opposition to the Joint Motion to Dismiss, Mexico has not addressed or attempted to refute this point, which is tantamount to conceding this issue. *Morales v. Desmarais*, 2013 WL 3208610, at *4 (D. Mass. June 21, 2013) (granting a motion to dismiss a claim when not addressed in opposition). In terms of Section 922(b)(4), it does not apply to "transactions between" federally-licensed businesses (i.e., firearms manufacturers and firearms distributors). 18 U.S.C. § 922(b) (explaining that the paragraphs 1 through 4 "shall not apply to transactions between licensed importers, licensed manufacturers, licensed dealers, and licensed collectors"). Moreover, as more fully articulated in Defendants' Joint Reply in Support of the Motion to Dismiss, the rifles identified in the Complaint are not "machineguns" as defined in C.F.R. § 5845(b) because they are semi-automatic rifles that are not "designed to shoot . . . automatically," which means that they cannot be "readily restored to shoot . . . automatically." 26 C.F.R. § 5845(b).

4

Mexico merely reiterates its boilerplate claim that Century's unspecified "illegal conduct" causes Massachusetts distributors to "flout gun laws" and "facilitates the illegal trafficking of firearms into Mexico" by unidentified third-party individuals. (Dkt. No. 100 at p. 17.) Mexico simply repeating the same nonspecific and conclusory allegations, without any factual support, is more than telling; it is dispositive. A plaintiff cannot meet its burden of establishing specific personal jurisdiction in such a manner. *Boit*, 967 F.2d at 675.

### C. The Speculative "Expert" Report Submitted in Opposition Does Not Establish Any Basis for Specific Jurisdiction Over Century.

Apart from conclusory and boilerplate allegations of counsel, the only "evidence" offered by Mexico in opposition is a purported expert report from Lucy Allen, in which she "extrapolat[ed] from limited data" to "estimate the number of firearms trafficked into Mexico over the last ten years with a sale linked to Massachusetts that were manufactured by each of the Defendants." (Dkt. No. 108-1, Allen Rpt. at p. 2.) Even ignoring the questionable bases relied on, and methodology employed, by Ms. Allen, the expert report is wholly insufficient to meet Plaintiff's burden in this instance. Importantly, the report contains no actual facts related to any Century firearm and the broad estimates from two data sources do not provide any specifics regarding where the firearms were sold, how they reached Mexico, or which firearms were from which U.S. manufacturer.[3] Additionally, neither Mexico nor Ms. Allen has identified a specific Century firearm that has been sold into Massachusetts and then trafficked into Mexico.

---

[3] Despite this lack of information, Ms. Allen summarily concludes that 4.1 percent of the firearms recovered in Mexico during this ten-year period were from Century Arms. (*See* Dkt. No. 108-1 at p. 6-7.) This conclusion does not appear to be based on anything tangible. Similarly, the reference to "trace data" from an even earlier ten-year period (1992-2001) provides even less specifics, as – apart from Smith & Wesson – Ms. Allen lumps all the defendants together. Aside from the questionable analysis and improper lumping of defendants, it is also worth noting that the mere fact that a firearm was traced does not somehow demonstrate that the retail seller or purchaser actually did anything wrong: "[T]he appearance of [an FFL] or a first unlicensed purchaser of record in association with a crime gun or in association with multiple crime guns in no way suggests that either the FFL or the first purchaser has committed criminal acts. Rather, such information may provide a starting point for further and more detailed investigation. *Hamilton v. Beretta Corp.*, 750 N.E.2d 1055, 1065 (N.Y. Ct. App. 2001) (quoting Youth Crime Gun Interdiction Initiative, at 17).

Aside from the glaring lack of specific evidence, Ms. Allen's report fails to even discuss – let alone account for – the fact the firearms recovered in Mexico are illegally procured and trafficked into Mexico vis-à-vis a countless number of intermediary steps that are wholly unconnected to Century's lawful sale of firearms. After Century's lawful sale to a federal-licensed distributor, every subsequently alleged event involved conduct unrelated to, and independent of Century: (1) lawful sales to unidentified federally-licensed distributors; (2) lawful sales to unidentified federally-licensed retailers; (3) lawful sales to unidentified individuals who pass background checks and comply with state and federal laws; (4) unlawful straw sales or thefts involving unidentified third-parties; (5) unlawful transfer or sale to other unidentified third parties; (6) unlawful smuggling of firearms into Mexico; (7) unlawful transfer of possession of firearms in Mexico; and (8) unlawful conduct by drug cartels in Mexico resulting in injury to Mexico citizens. This sequence of innumerable and unidentified steps demonstrates that there is too big of a gap between Century's lawful sale to a licensed distributor in Massachusetts and the ultimate alleged injury in Mexico. Mexico's causes of action in this case are far too attenuated from Century's lawful sale of firearms to a licensed distributor in Massachusetts to permit specific personal jurisdiction. *Phillips v. Prairie Eye Center*, 530 F.3d 22, 27 (1st Cir. 2008) ("There must be more than just an attenuated connection between the contacts and the claim . . . .").

## II. EXERCISING PERSONAL JURISDICTION OVER CENTURY WOULD BE UNREASONABLE.

Although the failure to establish the relatedness prong is fatal to Mexico's attempt to establish specific personal jurisdiction over Century,[4] it is worth highlighting that Mexico also fails to satisfy the third prong of the analysis: reasonableness. Despite Mexico's contentions in opposition, even a cursory assessment of the "Gestalt" factors demonstrates that the exercise of

---

[4] *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) (explaining that the plaintiff has the burden to meet all three prongs for establishing specific personal jurisdiction).

6

personal jurisdiction over Century would not be reasonable.

*First*, the second factor (the state's adjudicatory interest in the purported dispute with Century) weighs heavily in favor of Century. Indeed, Massachusetts has virtually no adjudicatory interest in this purported dispute with Century. As evidenced by the allegations in this case, all significant events, including the location of the injury and damages, occurred outside of the Commonwealth of Massachusetts. Moreover, neither plaintiff nor Century are citizens of the Commonwealth. Confronted with these facts, Mexico simply ignores them in opposition, opting instead to reassert the same boilerplate contentions about Century's distribution policies and procedures. (Dkt. No. 100, Plt. Opp. at p. 17.) Again, Mexico fails to identify the purported policies or how they run contrary to any Massachusetts law. Perhaps more importantly, there is no allegation that any alleged policy was directed at or made for Massachusetts distributors; rather, it is alleged that Century has nationwide policies. Thus, the second Gestalt factor (adjudicatory interest in this dispute *with Century*) weighs significantly against finding jurisdiction over Century.

*Second*, the third and fourth factors (interest in obtaining convenient relief and administration of justice) also strongly support Century's position. Mexico is not a citizen of Massachusetts and, other than the statement of counsel, there is no factual support for arguing that Massachusetts is "the center of the gun manufacturing industry." (Dkt. No. 100 at p. 18.) With regard to Century, it is not located in Massachusetts and has never had a presence in Massachusetts. It would be unjust to permit jurisdiction because unrelated gun manufacturers or distributors are located or do have a presence there. The fact that in-state defendants are named in a lawsuit does not somehow confer jurisdiction over the out-of-state defendants in the same lawsuit.

As such, it would not be reasonable to subject Century to jurisdiction in this forum, and Mexico has not carried its burden of satisfying the third prong for asserting personal jurisdiction.

### III. MEXICO'S PERFUNCTORY REQUEST FOR JURISDICTIONAL DISCOVERY SHOULD BE DENIED.

On the final page of the opposition, Mexico argues that in the alternative to dismissing the case for lack of personal jurisdiction, jurisdictional discovery should be permitted. (Dkt. No. 100 at p. 25.) Mexico generally contends that discovery from "Century, the other Defendants, and major distributors" would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked to Mexico. (*Id.*) While the First Circuit has held that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery," such an "entitlement is not absolute." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citing *Sunview Condo Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997)). Further, "[i]n addition to a colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted." *Rain ex rel. Crandall v. Conn. Gen. Corp.*, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27, (1st Cir. 2007)). In other words, to be entitled to jurisdictional discovery, Plaintiff has the burden of (1) demonstrating diligence; (2) making a colorable claim of personal jurisdiction; and (3) presenting facts demonstrating why jurisdiction would be found if discovery were permitted. *See, e.g.*, *Mora v. Angiodynamics, Inc.*, 2021 WL 5040333, at *7 (D. Mass. Oct. 28, 2021). Here, Mexico falls woefully short of meeting this threshold showing.

*First*, Plaintiff has not established a colorable claim of personal jurisdiction in this matter. Absent such a showing, any request for jurisdictional discovery is rightfully denied. *Swiss Am. Bank*, 274 F.3d at 618 (affirming the denial of jurisdictional discovery when a colorable claim for personal jurisdiction was not made).

*Second*, Mexico has not demonstrated that it has been diligent in either attempting to establish personal jurisdiction or requesting jurisdictional discovery. As the First Circuit has explained, "diligence" requires more than just a generalized request for jurisdictional discovery as an alternative to dismissal. *See, e.g.*, *CRA Int'l, Inc. v. Rowdec, LLC*, 2015 WL 13376524, at *5 n. 7 (D. Mass. Apr. 3, 2015) (explaining that a general request for jurisdictional discovery in the alternative to dismissal for lack of personal jurisdiction "would be nothing more than a fishing expedition" which provides "no grounds for allowing discovery regarding jurisdiction"). Indeed, simply claiming that additional discovery "may uncover other facts" supporting jurisdiction is an insufficient basis for jurisdictional discovery. *Hallal v. Vicis Capital Mater Fund Ltd.*, 2013 WL 1192384, at *9 n. 10 (D. Mass. Feb. 25, 2013). As evidenced by the cursory request for jurisdictional discovery, Mexico has not established its diligence.

*Third*, Mexico has not explained why jurisdiction would be found if the requested discovery were permitted. In this regard, a plaintiff is required to specify the "pertinent avenues of inquiry" it intends to pursue and then explain how such discovery would result in establishing personal jurisdiction. *See Swiss Am. Bank*, 274 F.3d at 626; *Whitaker Corp. v. Un. Aircraft Corp.*, 482 F.2d 1079, 1086 (1st Cir. 2001); *Rodriguez v. Samsung Elecs. Co., Ltd.*, 827 F. Supp. 2d 47, 52-53 (D. Mass. 2011) ("Jurisdictional discovery is unwarranted because plaintiffs have not made a colorable claim for personal jurisdiction and have not identified additional pertinent areas of inquiry that might allow them to do so."). Moreover, the topics identified must be sufficiently detailed and appropriately specific. *See Stars for Art Production FZ, LLC v. Dandana, LLC*, 806 F. Supp. 2d 437, 451 (D. Mass. Aug. 22, 2011) (denying a broad request for jurisdictional discovery because the "pertinent areas of inquiry are insufficiently detailed" and merely saying that discovery would yield "additional evidence" was plainly insufficient).

9

Here, Mexico presents a broad and conclusory request for jurisdictional discovery without providing any of the specificity required by the aforementioned standards. Additionally, Mexico offers no explanation as to how any additional discovery from Century (or the other defendants) would establish personal jurisdiction over Century. In this regard, Plaintiff has alleged that Century sells firearms to federally-licensed firearms distributors and that the distributors sell to federally-licensed firearms dealers throughout the country, which then sell to individuals. Mexico has alleged that independent of this chain of distribution to licensed distributors and retailers, firearms are eventually acquired by unknown third parties who, through multiple criminal acts, illegally bring firearms into Mexico. There is no allegation that Century (or any other named defendant) conducts business with these unidentified third parties who are far removed from Century's lawful sale of firearms to distributors in Massachusetts. And, in requesting jurisdictional discovery, Mexico has not explained why or how Century would have records of illegal trafficking by unknown third-parties far removed from the chain of distribution.[5] Therefore, Mexico has not demonstrated – even in the slightest – that any discovery from Century would impact the jurisdictional analysis, and a jurisdictional "fishing expedition" would be improper. *See Dandana*, 806 F. Supp. 2d at 451 (denying jurisdictional discovery when there is a lack of detail); *Rowdec*, 2015 WL 13376524 at *5 n. 7 (D. Mass. Apr. 3, 2015) (explaining that a general request for jurisdictional discovery "would be nothing more than a fishing expedition").

**CONCLUSION**

For all of the foregoing reasons, Mexico has failed to meet its burden of establishing personal jurisdiction over Century, and dismissal is warranted pursuant to Rule 12(b)(2).

---

[5] Plaintiff's fleeting reference to "trace data" is also not well taken. When the ATF contacts a firearm manufacturer and requests the identification of the distributor to whom a firearm was sold, the manufacturer is not informed where the firearm is recovered, why it is being traced, or the result of the trace. *Hamilton*, 750 N.E.2d at 1065.

Dated:  March 14, 2022

        Respectfully submitted,

        The defendant,
        CENTURY INTERNATIONAL ARMS, INC.,

        By its attorneys,

        **MORRISON MAHONEY LLP**

        */s/ Joseph G. Yannetti*
        Joseph G. Yannetti, BBO# 669008
        250 Summer Street
        Boston, MA  02210
        (617) 439-7500
        jyannetti@morrisonmahoney.com

        and

        **PISCIOTTI LALLIS ERDREICH**

        */s/ Danny C. Lallis*
        Anthony M. Pisciotti (Pro Hac Vice)
        Danny C. Lallis (Pro Hac Vice)
        Ryan L. Erdreich (Pro Hac Vice)
        30 Columbia Turnpike, Suite 205
        Florham Park, NJ 07932
        (973) 245-8100
        apisciotti@pisciotti.com
        dlallis@pisciotti.com
        rerderich@pisciotti.com

**CERTIFICATE OF SERVICE**

 I hereby certify that, on March 14, 2022, the foregoing document was served upon all counsel of record through this Court's electronic filing system as identified in the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

             */s/ Joseph G. Yannetti*
             Joseph G. Yannetti, BBO# 669008
             MORRISON MAHONEY LLP
             250 Summer Street
             Boston, MA  02210
             (617) 439-7500
             jyannetti@morrisonmahoney.com