| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS,<br>    Plaintiff,<br><br>v.<br><br>SMITH & WESSON BRANDS, INC.;<br>BARRETT FIREARMS MANUFACTURING,<br>INC.; BERETTA U.S.A. CORP.; BERETTA<br>HOLDING S.P.A.; CENTURY INTERNATIONAL<br>ARMS, INC.; COLT'S MANUFACTURING<br>COMPANY LLC; GLOCK, INC.; GLOCK<br>GES.M.B.H.; STURM, RUGER & CO., INC.;<br>WITMER PUBLIC SAFETY GROUP, INC.<br>D/B/A INTERSTATE ARMS,<br>    Defendants. | C.A. NO.: 1:21-CV-11269-FDS |

**DEFENDANT WITMER PUBLIC SAFETY GROUP, INC.'S
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I. INTRODUCTION  1
II. ARGUMENT  1
A. Choice of Law Principles Require Application of United States Law  2
B. Mexico Has Failed to Plead or Prove that the Mexican Civil Code Applies  5
    1. The complaint must be dismissed for failure to meet the standard of causation prescribed by the Mexican Civil Code.  6
    2. The common-law causes of action must be dismissed if Mexican law applies  7
C. The PLCAA's Application is not Limited to Injuries within the United States  8
    1. Congress' purpose and intent in enacting the PLCAA was to prevent lawsuits from undermining the rights of United States citizens and businesses  8
    2. An interpretation of the PLCAA as containing an exception for criminal activity in foreign countries flies in the face of the statute's purpose  9
    3. An interpretation of the PLCAA as permitting lawsuits seeking industry-wide liability for criminal acts so long as the effects are felt in foreign countries is contrary to the statute's explicit findings  10
D. Mexico's alleged "Design Defect" claim is barred by the PLCAA  11
E. Congress or the executive branch must determine whether Mexico may pursue its claims against United States manufacturers and distributors  12
III. CONCLUSION  14

# TABLE OF AUTHORITIES

**Cases**

*Alpert v. Starwood Hotels*, 799 F. App'x 89 (2d Cir. 2020) ........................................... 6, 7
*Alpert v. Starwood Hotels*, No. 3:14-CV-1872 2018 WL 5456493 ................................ 6, 7
*Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018) ................. 5
*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1999) .............................. 13
*City of New York v. Berretta U.S.A. Corp.*, 524 F.3d 384 (2nd Cir. 2008) ...................... 12
*Curley v. AMR Corp.,* 153 F.3d 5 (2d Cir. 1998) ............................................................. 7
*Gigi Kai Zi Chan v. Wellington Mgmt. Co. LLP*, 424 F. Supp. 3d 148 (D. Mass. 2019) ..... 6
*Gundy v. United States,* 139 S. Ct. 2116 (2019) ................................................................ 9
*Heng Ren Invs. LP v. Sinovac Biotech Ltd.,* 542 F. Supp. 3d 59 (D. Mass. 2021) ............... 5
*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) .................................................................. 13, 14
*Jesner v. Arab Bank*, 138 S. Ct. 1386 (2018) .................................................................. 14
*Koshani v. Barton,* 374 F. Supp. 3d 695 (E.D. Tenn. 2019) ............................................... 6
*Ileto v. Glock*, 565 F.3d 1126 (9th Cir. 2009) .................................................................. 12
*Rodriguez v. Casa Chapa S.A., de C.V.,* No. DR:04-CV-00034-AML, 2006 WL 8433818 (W.D. Tex. Aug. 22, 2006). ............................................................................................ 5
*Rodriguez v. General Electric*, No. 173351H, 2021 WL 5626318 (Mass. Super. Ct. Nov. 23, 2021) ............................................................................................................................ 3
*Ryan v. Hughes-Ortiz*, 81 Mass. App. Ct. 90 (2012) ......................................................... 3
*Summers v. Hotels*, 2013 WL 12113444 (C.D. Cal. Sept. 20, 2013)). .............................. 6
*UBS Financial Servs., Inc. v. Aliberti*, 483 Mass. 396 (2019)). ......................................... 3
*Valle v. Powertech Indus. Co.*, 381 F. Supp. 3d 151 (D. Mass. 2019) ............................... 6

**Statutes**

15 U.S.C. § 7903 ........................................................................................................ 9, 12
15 U.S.C.A. § 7901 .......................................................................................... 9, 10, 11, 13

**Law Reviews and Treatises**

Jorge A. Vargas, Mexican Law and Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners and Judges 8 San. Diego Int'l L.J. 475 (2007) ................. 7

Defendant Witmer Public Safety Group, Inc., D/B/A Interstate Arms ("Witmer") submits this reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.

## I. INTRODUCTION

Plaintiff Estados Unidos Mexicanos ("Mexico") seeks to change the laws of the United States of America through this litigation. Mexico fails to support its allegations that any action by Witmer created or resulted in the damages Mexico complains of in its Complaint.[1] Plaintiff summarily asserts that its claims are based on improper and illegal actions by Witmer and the United States gun industry. But no facts are plead to that effect, making Plaintiff's allegations legally insufficient and conclusory. In essence, their case is based on the mere presence of guns in the world, in general, and Mexico, in particular, and that guns caused damages that resulted in financial loss to Mexico. Witmer moved to dismiss the Complaint because Plaintiff cannot possibly prove its claims. The facts and the law are clear. Plaintiff does not, and cannot, meet its burden to show that actions by Witmer caused the damages upon which Mexico filed this suit. For the reasons established here and in Witmer's Motion to Dismiss,[2] Plaintiff's Complaint[3] should be dismissed.

## II. ARGUMENT

Witmer is an American, law-abiding, family-owned, small business. Mexico makes false and misleading statements about it, such as "it [Witmer] markets, distributes, and sell (sic) guns in ways it knows routinely arm the drug cartels in Mexico."[4] Mexico alleges no facts showing that

---

[1] Doc. No. 1.
[2] Doc. No. 61.
[3] Doc. No. 1.
[4] Doc. No. 104 at p. 1.

Witmer ever violated the law in any way, let alone armed drug cartels. For Mexico to claim that Witmer is conducting improper business dealings by complying with Federal law is a stretch of even the most imaginative construction of pleading requirements and is not supported in law or fact.

Further, Witmer does nothing wrong by legally selling guns to duly-licensed purchasers. Mexico states its own public policy opinions regarding the sale of firearms in the United States, but that does not mean that anything illegal has transpired. Witmer has not violated the law and it is insulting that such fraudulent, albeit conclusory, allegations are being made. Furthermore, Mexico has not plausibly alleged any act committed by Witmer – rather than attributed, broadly, to 'defendants' – in violation of any law of the United States or Commonwealth of Massachusetts. As such, it is ludicrous to characterize Witmer as seeking "impunity" rather than the proper application of a statutory defense to liability created by the democratically-elected members of the United States Congress, and signed into law by a President.[5] That Witmer is seeking "impunity" is a mischaracterization of its Motion to Dismiss and of Mexico's blatant attempt to rewrite United States firearms laws. Witmer has never "knowingly" violated statutes applicable to gun sales and takes offense that Mexico alleges such in a United States Federal Court filing.[6]

### A. CHOICE OF LAW PRINCIPLES REQUIRE APPLICATION OF UNITED STATES LAW TO THIS MATTER.

United States law should be applied here. Mexico brought suit against a United States Company, in a United States Federal Court, for alleged improper gun sales that ALL occurred in the United States; yet somehow Mexico's position is that Mexican law should govern. This position subverts all accepted tenets of choice of law principles. All of the matters complained of

---

[5] Doc. No. 104 at p. 2.
[6] Doc. No. 1 at p. 1.

by Mexico occurred in the United States of America, except for the actions of a criminal element in Mexico. The choice of law is that of the United States under any analysis. In *Rodriguez v. General Electric*,[7] the Massachusetts Superior Court applied choice of law principles in a conflict between Mexican law and Massachusetts law. *Rodriguez* involved a plane crash that occurred in Mexico. Mexican citizens sued Massachusetts corporations that manufactured some of the plane's components. The Court applied Massachusetts law, not Mexican law.

The first step in any choice of law analysis is to determine if there is a conflict. Mexico does not have an equivalent of the Protection of Lawful Commerce of Arms Act("PLCAA"). As Mexico stated in its Complaint, firearms sales, and ownership, are severely restricted in Mexico, and Mexico has only one store that legally sells guns in the entire country.[8] In contrast, United States citizens have a constitutional right to keep and bear arms, and firearms sales and ownership are widespread. Massachusetts follows and applies the PLCAA.[9] Accordingly, there is a conflict between Mexican laws governing firearms and U.S. laws governing firearms.

Massachusetts follows a "functional choice of law that responds to the interests of the parties, the States involved, and the interstate system as a whole." [10] This approach is guided by the Restatement (Second) of Conflict of Laws (1971).[11] While the Restatement initially defers to the place where the injury occurred, the choice of law analysis does not end there. Rather, the Court can consider the place that has a more significant relationship to the occurrence and the

---

[7] *Rodriguez v. General Electric*, No. 173351H, (Mass. Super. Ct. November 23, 2021) (Memorandum and Order on Motions to Apply Mexican Law of Damages) 2021 WL 5626318 (2021).
[8] Doc. No. 1 at pp 98-99.
[9] *Ryan v. Hughes-Ortiz*, 81 Mass. App. Ct. 90 (2012) (Plaintiff's wrongful death claims against gun manufacturer, Glock, were barred by the PLCAA).
[10] *Rodriguez*, 2021 WL 2626318 at *1 (quoting *UBS Financial Servs., Inc. v. Aliberti*, 483 Mass. 396, 405 n. 12 (2019)).
[11] *Id.*

parties, which may depend upon the nature of the tort and upon the particular issues.[12] The principles to be considered in conducting a choice of law analysis include:

    (a)    The needs of the interstate and international systems;
    (b)    The relevant policies of the forum;
    (c)    The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
    (d)    The protection of justified expectations;
    (e)    The basis policies underlying the particular fields of law; and
    (f)    Ease in the determination and application of the law to be applied.[13]

These factors are not exhaustive, and are not stated in order of importance. "Varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law."[14] The following additional factors should also be considered:

    (a)    The place where the injury occurred;
    (b)    The place where the conduct causing the injury occurred;
    (c)    The domicile, residence, nationality, place of incorporation and place of business of the parties; and
    (d)    The place where the relationship, if any, between the parties, is centered.

In *Rodriguez*, a key factor in the Court's decision to apply Massachusetts law, instead of Mexican law, was the fact that the wrong that allegedly caused the harm occurred entirely within Massachusetts, by a Massachusetts company. Applying these principles here, Massachusetts/U.S. law should apply, not Mexican law. Witmer is located in Massachusetts and sold firearms from its Massachusetts location to customers within the United States. Mexico has not alleged that Witmer made any direct sales to Mexico; rather, it has alleged that some firearms that Witmer legally sold to U.S. customers ended up in Mexico, where they were allegedly utilized by Mexican criminals to commit crimes in Mexico.[15]

---

[12] *Rodriguez,* 2021 WL 2626318 at *2
[13] *Id.*
[14] *Id.*
[15] Doc. 1 at p. 1.

The PLCAA is a federal statute that applies to U.S. firearms manufacturers and distributors engaged in interstate and international sales of firearms. Every U.S. State, including Massachusetts, applies the PLCAA. As a U.S. company, Witmer has a strong expectation that the PLCAA will be applied. The language of the PLCAA itself is to be applied to foreign litigants, including Mexico. If the PLCAA is not applied in this context, the entire U.S. firearms industry could be bankrupt, and the ability of U.S. citizens to obtain firearms would be substantially undermined. Such a result would directly contradict the stated purpose of the PLCAA.

B. **MEXICO HAS FAILED TO ADEQUATELY PLEAD OR PROVE THAT THE MEXICAN CIVIL CODE APPLIES TO THIS ACTION, AND HAS NOT ESTABLISHED THE RELEVANT LEGAL PRINCIPLES.**

Fed. R. Civ. P. 44.1 provides, in pertinent part:

A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

"Determining applicable law, even under our familiar common law system, can sometimes be an extremely challenging exercise. This exercise is infinitely more difficult for strangers in a strange land.[16]" Accordingly "whichever party is seeking the application of foreign law has the burden of proving the relevant legal principles thereof.[17]" A federal court is not bound to adopt a foreign government's characterization of its law where the foreign government is an interested party.[18] Where the proponent fails to prove the content to the court's satisfaction – or fails to

---

[16] *Rodriguez v. Casa Chapa S.A., de C.V.,* No. DR:04-CV-00034-AML, 2006 WL 8433818, at *2 (W.D. Tex. Aug. 22, 2006).

[17] *Heng Ren Invs. LP v. Sinovac Biotech Ltd*., 542 F. Supp. 3d 59, 67 (D. Mass. 2021) (denying without prejudice motion to dismiss based on Antiguan law, because defendant, advocate for use of Antiguan law, failed to establish law with sufficient specificity to permit court to rule on that basis).

[18] *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.,* 138 S. Ct. 1865, 1873 (2018).

establish that a conflict exists -- the court will apply forum law.[19] Mexico's Complaint, to the extent it discusses the Mexican Civil Code, neither pleads nor establishes: (a) the existence of causes of action against defendants, generally or Witmer, specifically; (b) the elements of those causes of action; or (c) the plaintiff's standing to assert them. The "Expert Declaration" submitted in support of Plaintiff's Opposition to the Joint Motion to Dismiss explicitly declines to address anything but the existence of a cause of action for "subjective liability." The Expert Declaration declines to expound on standing, causation, or damages. Mexico, as the proponent of foreign law, cannot withhold relevant legal principles and rules of decision in order to evade dismissal.

1. ***Mexico's Complaint must be dismissed in its entirety as the Plaintiff's Complaint describes entirely indirect damages, caused by intervening and superseding criminal acts.***

Pursuant to Fed. R. Civ. P. 44.1, the Court may consider decisions from United States District Courts applying and interpreting relevant principles of foreign law.[20] United States Courts applying the Mexican Civil Code have held that the sole recognized cause of action for negligent acts – described by the plaintiff's expert as 'subjective liability – requires that a plaintiff prove that his or her injury was the immediate and direct result of the defendant's unlawful act.[21] This "**immediate and direct**" requirement permits liability to be imposed only in the absence of "additional or intervening conduct by another party to which the legal injury or injuries can be attributed.[22]" (Emphasis added.)

---

[19] *Gigi Kai Zi Chan v. Wellington Mgmt. Co. LLP*, 424 F. Supp. 3d 148, 152 (D. Mass. 2019); *see also Valle v. Powertech Indus. Co*., 381 F. Supp. 3d 151, 160 (D. Mass. 2019); *Koshani v. Barton*, 374 F. Supp. 3d 695, 710 (E.D. Tenn. 2019) (collecting cases addressing burden of proof to establish relevant foreign-law legal principles).
[20] *Alpert v. Starwood Hotels & Resorts Worldwide, Inc.,* 799 F. App'x 89, 91 (2d Cir. 2020) (holding that district court properly considered law review articles and case law discussing causation standard in determining and applying Mexican law).
[21] *Alpert v. Starwood Hotels*, No. 3:14-CV-1872 (SRU), 2018 WL 5456493, at *4 (citing *Summers v. Hotels*, 2013 WL 12113444, at *4 (C.D. Cal. Sept. 20, 2013)).
[22] *Alpert v. Starwood Hotels, No*. 3:14-CV-1872 (SRU), 2018 WL 5456493, at *7.

Mexico's Complaint – and its entire theory of liability – depend on "additional or intervening conduct," specifically, the illegal and criminal cross-border trafficking of firearms, and the use of those firearms unlawfully within Mexico. Mexico's Complaint cannot state a cause of action for "subjective liability" because it cannot meet the required standard of causation. Mexico has declined to offer any evidence of the applicable standard of causation under Mexican law, as its sole expert report, by its own terms and admission, declined to address the standard of causation. Accordingly, Mexico's Complaint, to the extent based on the Mexican Civil Code, must be dismissed for failing to state a claim upon which relief may be granted.

### 2. *Plaintiff's Common-Law Causes of Action must be dismissed if Mexican law applies.*

Under the Mexican Civil Code, specific common law torts are not recognized,"[23] nor are judicially developed common-law tort concepts, including proximate cause, due care, compensatory damages, liability for design or warning defects, or loss of consortium.[24] A plaintiff may recover only as permitted by establishing liability under provisions of the Civil Code.[25] Plaintiff has not pled – and its expert report has not attempted to establish – that any of the various common-law causes of action included in its sprawling, florid complaint, such as "punitive

---

[23] *Curley v. AMR Corp.*, 153 F.3d 5, 14 (2d Cir. 1998) (and cases and sources cited) see also Plaintiff's Expert Report (Document 108-2, p. 5-35) at ¶¶ 12-15.

[24] *Curley*, 153 F. 3d at 14; *see also* Pl. Expert Report at ¶¶ 24-25; Jorge A. Vargas, Mexican Law and Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners and Judges 8 San. Diego Int'l L.J. 475, 497-498, n. 71-72 (2007) ("In Mexico…there is no notion of due care; no strict liability for manufacturing defects; no negligence liability for design and warning defects; no pharmaceutical liability law; no defective product legislation; no modern strict liability product of industrialization; no contributory or comparative negligence; no enterprise liability; no proximate cause; no compensatory damages; no pain and suffering; no punitive damages."); *Alpert*, No. 3:14-CV-1872 (SRU), 2018 WL 5456493, at *4; Plaintiff's Expert Report ¶¶ 24-25 ("There are no different categories of torts in the Mexican legal system").

[25] *Alpert v. Starwood Hotels,* No. 3:14-CV-1872 (SRU), 2018 WL 5456493, at *4; *Curley,* 153 F. 3d at 14.

damages" and "gross negligence," exist under the Mexican Civil Code. Accordingly, to the extent that Mexico contends that Mexican law applies to usurp United States laws, these causes of action must be dismissed as being disallowed and unsupportable in this case.

    **C.    THE PLCAA'S APPLICATION IS NOT LIMITED TO INJURIES THAT OCCURRED WITHIN THE UNITED STATES.**

Mexico claims, without citation to any statute or case law, that the PLCAA "…precludes only specifically identified lawsuits asserting injuries that occur in the United States resulting from the misuse of guns that is criminal under U.S. law …"[26] There is no such preclusive language in the PLCAA. Mexico cites judicial interpretations of terms used in other statutes that allegedly limit their application to acts, omissions, or injuries within the United States. Mexico urges that the PLCAA must be interpreted similarly. Mexico's interpretation ignores both the express language of the PLCAA, and the Findings and Purpose of the PLCAA, which recognize and explicitly include the potential chilling impact of limitless litigation on both "domestic" and "foreign commerce."

    *1.    Congress' purpose and intent in enacting the PLCAA was to prevent the use of lawsuits against firearms manufacturers to undermine the rights of United States citizens and United States-based businesses.*

The PLCAA contains a statement of Purpose that specifically recognizes the potential for unrestricted lawsuits against firearms manufacturers to undermine constitutional and legislative rights afforded to U.S. citizens:

> The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of common law and jurisprudence of the United States do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of several States. Such an expansion of liability would constitute a deprivation of the

---
[26] Doc. No. 111 at p. 2; and Doc. No 104 at p. 2.

rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution. [27]

The broad language utilized by Congress, including its use of the term "others", does not exclude foreign government plaintiffs from the purview of PLCAA. In addition, the term "person" as used in the PLCAA to describe those who may commence a "qualified civil liability action", is defined as "… any individual, corporation, company, association, firm, partnership, society, joint stock company, *or any other entity,* **including any governmental entity**."[28] Mexico is a governmental entity that is subject to the terms and restrictions of the PLCAA.

A U.S. citizen, who was injured by the criminal misuse of a firearm, that functioned as intended, and was legally manufactured and sold in the United States, would be barred by the PLCAA from suing the U.S. firearms manufacturer and seller. However, under Mexico's interpretation of the PLCAA, a Mexican citizen, who was injured by a criminal's misuse of the same firearm, in Mexico, would be permitted to sue a U.S. firearms manufacturer or seller, in a U.S. Court. Thus, under Mexico's interpretation of PLCAA, a Mexican citizen would have greater rights against U.S. firearms manufacturers and sellers than a U.S. citizen would. This is incongruent and an improper attempt by Mexico to avoid the laws of the United States.

2.  *Plaintiff's Interpretation of the PLCAA as containing a phantom exception for actions arising from criminal activity in foreign countries flies in the face of Congress' stated purpose.*

"[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[29] Beyond context and structure, courts also look at "history and

---

[27] 15 U.S.C.A. § 7901 (a)(7).
[28] 15 U.S.C. § 7903(3). Emphasis added.
[29] *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (internal citations omitted).

purpose" to divine the meaning of terms in a statute.³⁰ The Purpose of the PLCAA includes the following:

> To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended. ³¹
>
> …
>
> To prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce. ³²

Thus, the explicit purpose of the PLCAA is to "prevent" unreasonable burdens on both "domestic" and "foreign commerce" arising from lawsuits alleging the "criminal or unlawful misuse" of firearms or ammunition. An interpretation of the PLCAA which contains an implicit exemption for "criminal misuse" of firearms or ammunition in a foreign country would fly in the face of that purpose.

> 3. *An interpretation of the PLCAA as permitting lawsuits that seek to impose industry-wide liability for criminal acts and their effects, so long as the effects are principally felt in foreign countries, is contrary to Congress' explicit, enacted findings.*

The Congressional Findings codified in the PLCAA describe the reasons for enactment, including the following:

> Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.³³
>
> […]
>
> Businesses in the United States that are engaged in interstate <u>and foreign commerce</u> through the lawful design, manufacture, marketing, distribution, importation, or sale to the

---

³⁰ *Id.*
³¹ 15 U.S.C.A. § 7901 (b)(1).
³² 15 U.S.C.A. § 7901(b)(5).
³³ 15 U.S.C.A. § 7901(a)(3).

public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

[…]

The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes and unreasonable burden on interstate and foreign commerce of the United States. [34]

These Congressional Findings indicate that Congress recognized that American firearms' manufacturers, distributors and sellers engage in domestic and foreign sales of guns. Congress's intent – made explicit in both the "Findings" and "Purpose" enacted with the PLCAA -- was that U.S. gun manufacturers and distributors should not be liable for harm caused by those who criminally or unlawfully misuse firearms that function as designed and intended. There is no language in the PLCAA that would permit such lawsuits to proceed against U.S. firearms manufacturers simply because the injury occurred outside of the United States.

### D. MEXICO'S ALLEGED "DESIGN DEFECT" CLAIM IS BARRED BY THE PLCAA.

Mexico, in its Opposition Brief as to Witmer, claims that its Complaint alleges a design defect. Mexico argues that gun products distributed by Witmer "were not fit for ordinary purposes" because they are guns which are subject to criminal misuse and modifications.[35] Nonetheless, such a "design defect" would fall within the definition of a "Qualified Civil Liability Action" under the PLCAA, which includes the following language:

> ….an action for death, physical injuries or property damage resulting directly from a defect in design or manufacturing of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was

---

[34] 15 U.S.C.A. § 7901(a)(6).
[35] Doc. 104 at pp. 5-6.

11

caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage….[36]

Mexico has alleged its citizens have been killed as a result of the criminal acts of drug cartels who were allegedly utilizing firearms, ***which functioned as intended***, and were manufactured and/or distributed by U.S. firearms companies. Thus, Mexico has alleged a harm that was caused by the criminal misuse of firearms. Per the PLCAA, those criminal acts "shall be considered the sole proximate cause" of any loss, damage, or harm to Mexico.

Mexico's design and manufacturing defect claims fall squarely within and are barred by the PLCAA. Mexico cannot avoid dismissal under the PLCAA by citing to State tort laws. As Witmer established in its Motion to Dismiss, claims based upon general tort theories of liability are barred under the PLCAA.[37] There is no qualifying language in the Congressional Findings that limits this application to harm that only occurs within the United States. The essential purpose of PLCAA is to provide protection to U.S. firearms manufacturers and sellers for the criminal misuse of firearms, that functioned as intended, wherever the criminal misuse of the firearm took place.

  **E. BECAUSE THE SUBJECT LITIGATION IMPLICATES INTERNATIONAL RELATIONS, CONGRESS OR THE EXECUTIVE BRANCH, NOT THE JUDICIARY, SHOULD DETERMINE WHETHER MEXICO MAY PURSUE A CLAIM FOR DAMAGES AGAINST U.S. GUN MANUFACTURERS AND DISTRIBUTORS.**

The U.S. Supreme Court has recognized that where litigation has a potential effect upon foreign relations, "the political branches, not the Judiciary, have the responsibility and institutional

---

[36] 15 U.S.C.A. 7903(5)(A)(v).
[37] *See City of New York v. Berretta U.S.A. Corp.,* 524 F.3d 384 (2nd Cir. 2008), *cert denied,* 556 U.S. 1104 (2009) (claims based upon N.Y. penal law barred under PLCAA); *see also Ileto v. Glock,* 565 F.3d 1126 (9th Cir. 2009), *cert denied*, 560 U.S. 924 (2010) (The purpose of PLCAA leads to the conclusion that Congress intended to preempt general tort theories of liability).

capacity to weigh foreign policy concerns."[38] Congressional Finding (7) of the PLCAA addressed the concern that decisions by judges or juries could undermine the constitutional and legislative rights and protections that had been afforded to United States citizens.[39] In *Hernandez*, the Supreme Court addressed an incident in which a U.S. Border Patrol agent, located in the United States, shot across the border and killed a Mexican citizen. The incident prompted an international dispute between the United States and Mexico. The family of the Mexican citizen commenced an action against the U.S. border agent in United States District Court. The District Court dismissed the claims and the Fifth Circuit affirmed. The Supreme Court affirmed.[40]

The Supreme Court stated that Congress has repeatedly declined to authorize the award of damages against federal officials for injury inflicted outside U.S. borders, and noted that the Federal Tort Claims Act bars "any claim arising in a foreign country."[41] "When Congress has provided compensation for injuries suffered by aliens outside the United States, it has done so by empowering Executive Branch officials to make payments under circumstances found to be appropriate." [42]

Additionally, a cross-border shooting is an international incident that affects both countries' interests and which resulted in a disagreement between the countries.[43] The United States, through the Executive Branch, has the lead role in foreign policy.[44] In *Bivens*, the Supreme Court declined to expand rights, and concluded that any effort to determine whether a damages

---

[38] *Hernandez v. Mesa*, 140 S.Ct. 735, 744 (2020), *quoting Jesner v. Arab Bank,* 138 S. Ct. 1386, 1391-1403 (2018).
[39] 15 U.S.C.A. § 7901(a)(7)

[40] *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1999).
[41] *Hernandez*, *supra*, 140 S.Ct. at 738.
[42] *Id*. at 738.
[43] *Id*. at 744.
[44] *Id*.

13

remedy should exist for the subject international incident should be determined by Congress, not the Courts.[45]

### III. CONCLUSION

This case involves a claim by Mexico that its citizens are being injured by the allegedly unlawful sale and transfer of firearms manufactured and distributed by U.S. firearms companies. As in *Hernandez*, this implicates an "international incident." Allowing Mexico to sue U.S. firearms manufacturers and distributors would effectively put U.S. companies out of business, and would substantially restrict the ability of U.S. citizens to enjoy their constitutional rights to keep and bear firearms. If Mexico is to be allowed such a remedy, that determination should be made by the United States Congress and/or Executive Branch, and not by judicial decree. For the reasons stated in Witmer's Memorandum of Law in Support of its Motion to Dismiss Pursuant[46] to Federal Rule of Civil Procedure 12(b)(6), and this Reply, all of the claims asserted in Mexico's Complaint[47] against Witmer should be dismissed with prejudice.

---

[45] *Id*. at 750.
[46] Doc. 61.
[47] Doc. 1.

Defendant Witmer Public Safety Group, Inc.

By its attorneys,

Respectfully submitted,

*/s/ S. Jan Hueber*

**S. Jan Hueber**
Texas State Bar No. 20331150
**LITCHFIELD CAVO LLP**
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025
hueber@litchfieldcavo.com
*Admitted pro hac vice*


*/s/Nora R. Adukonis*
Nora R. Adukonis, BBO #675932
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940-2682
Telephone: (781) 309-1500
adukonis@litchfieldcavo.com

CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2022.

*/s/Nora R. Adukonis*
Nora R. Adukonis