# THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS,<br><br>        Plaintiff,<br><br>v.<br><br>SMITH & WESSON BRANDS, INC.;<br>BARRETT FIREARMS MANUFACTURING, INC.; BERETTA U.S.A. CORP.; BERETTA HOLDING S.P.A.; CENTURY INTERNATIONAL ARMS, INC.; COLT'S MANUFACTURING COMPANY LLC; GLOCK, INC.; GLOCK GES.M.B.H.; STURM, RUGER & CO., INC.; WITMER PUBLIC SAFETY GROUP, INC. D/B/A INTERSTATE ARMS,<br><br>        Defendants. | C.A. NO: 1:21-CV-11269-FDS |

## DEFENDANT BARRETT FIREARMS MANUFACTURING, INC.'S *REPLY* BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## INTRODUCTION

The Plaintiff, Estados Unidos Mexicanos, has filed this suit against Barrett Firearms Manufacturing, Inc. ("Barrett"), and numerous other firearm manufacturers. The Plaintiff "alleges that the unlawful policies that Barrett imposed on Massachusetts dealers resulted in guns that Barrett sold in Massachusetts 'being trafficked into Mexico and used in criminal activities there, causing the harm about which the Government complains.'" (Doc. 98, ECF p. 13 (quoting the Complaint – Doc. 1, ECF p. 13)). The Plaintiff makes its claims "for injuries incurred in Mexico, resulting from gun use in Mexico." (Doc. 111, ECF p. 12). The Complaint, though, does not identify the "policies that Barrett imposed on Massachusetts" and does not provide factual details

showing that in even one instance a gun made by Barrett and sold in Massachusetts was trafficked into Mexico, misused by cartel members there, and caused the Plaintiff harm.[1]

The Plaintiff's Complaint is due to be dismissed on several different, but dispositive grounds, including that the Protection of Lawful Commerce in Arms Act ("PLCAA") bars all of the claims found therein. (*See* Doc. 67, ECF p. 20-38). It is also due to be dismissed because the Plaintiff lacks standing to bring the claims asserted in the Complaint, depriving the Court of subject matter jurisdiction, and because there exists no connection between Barrett, the forum, and the claims being asserted, depriving the Court of personal jurisdiction. Irrespective of these jurisdictional and procedural bars, most of the Complaint's individual claims fail to state a claim upon which relief can be granted, warranting their dismissal as well.

## ARGUMENT

### I. The Plaintiff Lacks Standing, Depriving the Court of Subject Matter Jurisdiction

The Plaintiff's Complaint fails to allege *factual* allegations that plausibly demonstrate its standing to bring the claims being asserted. Plaintiffs "must 'allege . . . facts essential to show jurisdiction. If [they] fail to make the necessary allegations, [they have] no standing.'" FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)(quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Where a plaintiff has no standing, the court lacks subject matter jurisdiction. *See id.*; *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992). In addition to the Complaint's factual deficiencies necessary to show standing, Barrett noted in its principal brief that the Plaintiff lacks standing because the injuries it claims, which "stem [from] the flow of

---

[1] The Plaintiff admits as much, referring to the omission as "fact." (Doc. 98, ECF p. 12, n. 51). However, the Plaintiff seems to qualify its allegations by stating that the "the issue here is not whether Barrett's weapons were recovered from a crime scene but whether they were trafficked into Mexico." (*Id.*). In any event, the Complaint fails to provide any facts showing that a Barrett gun was sold in Massachusetts and trafficked into Mexico, regardless of whether that gun was criminally misused.

2

illegally trafficked weapons into Mexico" (Doc. 98, ECF p. 9), were clearly "the result [of] the independent action[s] of some third party not before the court," *i.e.*, the traffickers who illegally smuggle the weapons into Mexico. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Plaintiff asserts this standing challenge rests on an "erroneous premise" that its harm cannot arise "through the reaction of third parties." (Doc. 98, ECF p. 10). The Plaintiff further claims it has standing because "[a]ll that is necessary is that 'third parties will react in predictable ways … even if they do so unlawfully.'" (*Id.* (quoting *Dept. of Com. v. New York*, 139 S. Ct. 2551, 2565 (2019)). The Plaintiff wholly misses the point. Its claimed harm does not arise from the *re*action of third parties, even if "unlawful." Its claimed harm arises from the <u>action</u> – the illegal and "independent action" – of gun smugglers (and then the illegal and "independent action" of cartel members). Contrary to the Plaintiff's interpretation of the *Dept. of Com.* holding, the Court there reaffirmed its "steady refusal to endorse standing theories that rest on speculation about the decisions of independent actors." 139 S. Ct. at 2566. Likewise, this Court should find that the Plaintiff lacks standing because its claimed injuries stem from "independent actors," rather than Barrett, and DISMISS the Complaint for want of subject matter jurisdiction.

## II. <u>Constitutional Parameters Preclude Personal Jurisdiction over Barrett</u>

The Plaintiff makes no meaningful attempt to refute Barrett's demonstration that the Court lacks general personal jurisdiction over it, which the Court clearly lacks, and instead focusses its arguments on the claimed existence of specific personal jurisdiction. To exercise specific personal jurisdiction over Barrett such that doing so would comply with U.S. Supreme Court precedent applying the Fourteenth Amendment, the litigation must "arise out of or relate to" Barrett's conduct in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Specific jurisdiction examines the "relationship between the defendant, the forum, and the litigation."

3

*Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). The Complaint contains no factual allegations showing that a Barrett firearm was sold in Massachusetts and thereafter trafficked into Mexico, and the Plaintiff cannot therefore show any nexus or connection between Barrett and Massachusetts that relates to its claims in this case. The personal jurisdiction analysis "tend[s] to be fact-specific," and the First Circuit has stated that it "steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seem attenuated and indirect." *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). Moreover, courts should not "credit conclusory allegations or draw farfetched inferences" in determining whether they have personal jurisdiction over a defendant. *Ticketmaster N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

The Plaintiff's Complaint fails to provide <u>*factual allegations*</u> – as opposed to its numerous conclusory ones – that would even potentially confer specific personal jurisdiction over Barrett by this Court. The Plaintiff claims this assertion is "patently wrong" (Doc. 98, ECF p. 9), but offers little explanation as to why. Instead, it simply refers back to the Complaint's hollow allegations that are completely devoid of factual specificity. (*Id.*). In addition to ignoring its burden to plead factual allegations capable of demonstrating personal jurisdiction, the Plaintiff also misapplies the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), which does not lend support to its position. Finally, the Plaintiff's reliance on speculation and 20-year-old data cannot overcome the deficiencies in the Complaint showing the Court lacks specific personal jurisdiction over Barrett.

### A. The Plaintiff's Conclusory Allegations against Barrett Fail to Meet Plausibility Standards Capable of Showing Specific Personal Jurisdiction

"When personal jurisdiction is contested by a Rule 12(b)(2) motion to dismiss, the plaintiff bears 'the burden of persuading the court that jurisdiction exists.'" *Law Office of Joseph J.*

*Cariglia, P.C. v. Jelly,* 146 F. Supp. 3d 251, 256 (D. Mass. 2015)(internal citations omitted). "Plaintiffs may not rely on unsupported allegations in their pleadings but are obliged to adduce evidence of specific facts." *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)(internal citations omitted). They "cannot rely on self-serving, conclusory statements to establish jurisdiction." *Walters v. Angiodynamics, Inc.*, 2021 U.S. Dist. LEXIS 208158, *10 (D. Mass. Oct. 28, 2021)(citing *Chen v. U.S. Sports Acad., Inc*., 956 F.3d 45, 54 (1st Cir. 2020)); *see also Palnik v. Westlake Entertainment, Inc.*, 344 Fed. App'x 249, 251 (6th Cir. 2009)(noting that "the complaint must have established with reasonable particularity those specific facts that support jurisdiction"); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)(holding that courts should only assess "plausible, non-conclusory, and non-speculative [] facts alleged in plaintiffs' complaint"); *Pado, Inc. v. SG Trademark Holding Co*., 2020 U.S. Dist. LEXIS 51751, *13 (C.D. Cal. March 24, 2020) (recognizing that "[g]eneralized allegations about a group of defendants [are] insufficient to establish personal jurisdiction").

The Plaintiff repeatedly makes only generalized and conclusory allegations about Barrett's alleged contacts with Massachusetts. Its allegations (*see* Doc. 1, ¶ 45) epitomize those failing to meet the pleading standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For example, the Plaintiff claims that Barrett does "very substantial business in Massachusetts" (Doc. 98, ECF p. 7), but offers no facts supporting what constitutes "substantial business." The Plaintiff claims that "Barrett imposes its unlawful distribution policies … on gun dealers in Massachusetts" (*id.*), but never identifies what the supposedly unlawful policies are or how Barrett "imposes" them on dealers. Moreover, the Complaint offers no facts showing how its business, if any, in Massachusetts and/or unidentified policies relate to the Plaintiff's claim for injuries in this case. Again, the Complaint provides no

5

facts showing that that even one gun made by Barrett was sold somewhere in Massachusetts, and then trafficked into Mexico.[2] Given the Complaint's deficiencies, the Plaintiff cannot meet its burden of proof regarding personal jurisdiction over Defendant Barrett.

### B. The Plaintiff's Reliance on *Ford Motor Co.* is Misplaced, that Case Instead Demonstrates the Court's Lack of Personal Jurisdiction

The Plaintiff relies almost exclusively on the U.S. Supreme Court's decision in *Ford Motor Co., supra,* as support for its argument that Barrett meets the "relatedness" test necessary to establish personal jurisdiction. That reliance rests on an obvious misunderstanding of the Court's holding in that case. In *Ford Motor Co.,* the defendant car manufacturer argued that courts in Minnesota and Montana lack personal jurisdiction over it, despite the respective plaintiffs' injuries resulting from motor vehicle collisions in those states, because Ford is incorporated in Delaware, has its principal place of business in Michigan, and the cars were manufactured in Kentucky and Canada. 114 S. Ct. at 1022-23. Ford had argued against personal jurisdiction in Minnesota and Montana because the cars' "first sale, manufacture and design" occurred elsewhere. *Id.* at 1026. It did so despite having "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege … injured them in those States." *Id.* at 1028. The Supreme Court rejected Ford's position because its having "extensively promoted, sold, and serviced" cars in Montana and Minnesota was "enough to support specific jurisdiction" where "resident-plaintiffs allege that they suffered in-state injury." *Id.* at 1032.

Here, the Plaintiff has explicitly stated that the harm to it occurred – not in Massachusetts – but in Mexico. (Doc. 111, ECF p. 12). The Court in *Ford Motor Co.* was careful to note that its holding "does not mean anything goes," but rather that in "the sphere of specific jurisdiction, the

---

[2] Given the Complaint's allegations "of the massive trafficking of [] guns into Mexico" (Doc. 1, ¶ 6), surely the Plaintiff could provide factual details concerning at least one Barrett manufactured firearm that was trafficked into Mexico, identifying the same by serial number. Conspicuously it has not.

6

phrase 'relate to' incorporates real limits." *Id.* at 1026. It emphasized that a defendant's contacts with a forum state must still allow for a connection between a plaintiff's claims and the forum. *Id.* at 1031 (citing *Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1733, 1781 (2017)). Such a connection, "of course, [arose] from a car accident in one of those States." *Id.* at 1028. No such connection exists here. Furthermore, the Court held that maintaining suit (just like here) with "out-of-state parties, an out-of-state accident, and out-of-state injuries" but based upon transaction from "many years earlier" within the forum would actually "undermine, rather than promote," the Due Process Clause. *Id.* at 1030. Because the "harm about which the Government complains" occurred in Mexico and because neither Mexico nor Barrett are domiciled in Massachusetts, this Court lacks specific personal jurisdiction over Barrett, and the Complaint against it should be DISMISSED.

### C. Ms. Allen's Report Rests on Guesswork and 20-Year-Old Data; Her Report is Incapable of Establishing Personal Jurisdiction over Barrett

Having failed to provide facts capable of supporting personal jurisdiction in its Complaint, the Plaintiff has offered the report of a statistician, Lucy P. Allen. (Doc. 108-1). Ms. Allen relies on estimates of the number of firearms trafficked from the U.S. into Mexico and on estimates of the firearms recovered in Mexico that were traced to a sale in Massachusetts.[3] (Doc. 108-1, ¶ 9). Notably, the estimates concerning recovered firearms traced to a sale in Massachusetts are well over <u>twenty-years-old</u>.[4] (Doc. 108-1, ¶ 15). She has undertaken no determination as to the accuracy of the estimates provided by the sources on which she has relied to then calculate her own estimates. (Doc. 108-1, ¶ 11). Nevertheless, Ms. Allen uses these estimates from differing time

---

[3] No information is provided concerning the circumstances under which these firearms were recovered, from where they were recovered or from whom they were recovered.

[4] With the exception of Smith & Wesson, Ms. Allen provides no specifics concerning the 5.7% of firearms from 1992-2001 that were supposedly "linked to a sale in Massachusetts." (Doc. 108-1, ¶ 17). For all we know, 0.00% of the estimated number of *Barrett* firearms recovered in Mexico over 20 years ago were linked to a sale in Massachusetts.

7

periods "to estimate the number of firearms by Manufacturer Defendant with a sale to Massachusetts that were trafficked into Mexico over the last ten years." (Doc. 108-1, ¶ 19).

Ms. Allen's report should be wholly disregarded by this Court in assessing whether it has personal jurisdiction over Barrett because it contains rank speculation and was created from unverifiable and estimated data. It certainly does not show that the sale or transfer of a Barrett firearm occurred in Massachusetts and was thereafter trafficked into Mexico. *Not even one Barrett gun.* Ms. Allen's report therefore falls well short of meeting the Plaintiff's burden to prove the existence of personal jurisdiction over Barrett by providing "specific facts." *Platten*, 437 F.3d at 134. Because it amounts to nothing more than speculative, conclusory and estimated allegations, which were not even alleged in the Complaint to begin with, it is insufficient to establish personal jurisdiction over Barrett.

### III. The Complaint Fails to State Several Claims Pursuant to Massachusetts Law

Even were the Plaintiff to have demonstrated standing to assert its claims and personal jurisdiction over Barrett (*it has not*), and even were the PLCAA not a complete bar to all claims being asserted (*it is*), the Plaintiff has still failed to plausibly alleges several claims that would entitle it to relief under Massachusetts law. The Plaintiff primarily argues against dismissal of its State law claims against Barrett because, it asserts, those claims are governed by Mexican, rather than Massachusetts, law. (Doc. 98, ECF pp. 11, 13, 14, 15). For the reasons set forth in the Defendants' Joint Reply brief to be filed contemporaneously herewith (*see* Doc. 140, ECF pp. 13-19), Massachusetts law choice-of-law rules require the application of U.S. or Massachusetts law, not that of Mexico. Putting this potentially premature issue aside, the Plaintiff has not demonstrated in its Response Brief that the Complaint states a claim upon which relief can be

granted as to its claims for Public Nuisance (Count Two), Negligence Per Se (Count Four), Unjust Enrichment (Count Six) and Punitive Damages (Count Nine).[5]

The Plaintiff concedes that it has "no separate claim for negligence per se against Barrett" and "no separate claim for punitive damages against Barrett." (Doc. 98, ECF pp. 18, 21). Therefore, no further discussion is necessary regarding the Complaint's Counts Four and Nine. While the Plaintiff continues to assert that the Complaint states claims for public nuisance and unjust enrichment, its position should not be well taken.

Contrary to the Plaintiff's protests, the Complaint does not plausibly allege a claim for public nuisance (Count Two). Its allegations are significantly dissimilar from those in *City of Boston v. Smith & Wesson Corp.*, 2000 Mass. Super. LEXIS 352, *63 (July 13, 2000), wherein the plaintiff's public nuisance theory asserted the defendant "created and maintained an illegal, secondary firearms market." No such allegation exists here. Thus, and unlike in *City of Boston* (which Barrett suggests was wrongly decided anyway), Barrett had no control over the instrumentality of the nuisance, *i.e.,* a secondary market controlled by Barrett – a necessity for maintaining a public nuisance claim against it. *See Town of Westport v. Monsanto Co.*, 2015 U.S. Dist. LEXIS 36846, *5-8 (D. Mass. March 24, 2015). Count Two should be DISMISSED.

The Plaintiff asserts that its equitable claim for unjust enrichment should survive dismissal because it can be pled in the alternative to its other legal claims, *e.g.,* negligence (Count One) and because, essentially, Barrett did not have to pay for the alleged injuries it inflicted on the Plaintiff. (Doc. 98, ECF p. 19-21). Pursuant to Massachusetts' case law, though, "[u]njust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005)(internal

---

[5] Though not expressly identified in Barrett's Motion to Dismiss, the plaintiff also cannot sustain a cause of action for gross negligence (Count Five) under Massachusetts law.

citations omitted). The Plaintiff makes no allegations that Barrett has retained any money or property belonging to Mexico, and thus the claim fails as a matter of law.

Furthermore, Courts should "dismiss unjust enrichment claims where an adequate remedy at law is available." *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctrs.*, 540 F. Supp. 3d 103, 133 (D. Mass. 2021). "The availability of statutory and common law claims for damages constitute an adequate remedy at law." *Zotos v. Town of Hingham*, 2013 U.S. Dist. LEXIS 134123, *55 (D. Mass. Sept. 19, 2013). "Their mere availability **is a bar** to a claim of unjust enrichment." *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010)(emphasis added). Unjust enrichment claims should be dismissed even where a remedy at law is not viable. *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 69 (1st Cir. 2020). "It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). The foregoing case law clearly demonstrates that the Plaintiff's unjust enrichment claims should be DISMISSED.

## CONCLUSION

WHEREFORE, the foregoing premises considered, the Defendant Barrett Firearms Manufacturing, Inc. would respectfully ask this Court to DISMISS the Plaintiff's Complaint against it on any one or more of the grounds addressed herein. Barrett would further adopt any dispositive defenses, and attendant arguments in favor of them, offered by any of the other Defendants that would be equally applicable to Barrett and would ask for any further relief deemed appropriate under the circumstances.

*Attorneys for Barrett Firearms*:

s/ James W. Porter, II
James W. Porter, II (Admitted PHV)
jwporterii@pphlaw.net
Richard Warren Kinney (Admitted PHV)

wkinney@pphlaw.net
**Porter, Porter & Hassinger, P.C.**
880 Montclair Road, Ste. 175
Birmingham, AL 35213

s/ James M. Campbell
James M. Campbell (BBO No. 541882)
jmcampbell@Campbell-trial-lawyers.com
Trevor J. Keenan (BBO No. 652508)
keenan@Campbell-trial-lawyers.com
**CAMPBELL CONROY & O'NEIL, P.C.**
1 Constitution Wharf, Suite 310
Boston, MA 02129

CERTIFICATE OF SERVICE

On the 14th day of March, 2022, I, James W. Porter, II, filed electronically the foregoing document. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

s/ James W. Porter, II
James W. Porter, II (Admitted PHV)
