UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| ESTADOS UNIDOS MEXICANOS, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Civ. No. 1:21-cv-11269-FDS |
| SMITH & WESSON BRANDS, INC.; | ) |
| BARRETT FIREARMS MANUFACTURING, | ) |
| INC.; BERETTA U.S.A. CORP.; BERETTA | ) |
| HOLDING S.P.A.; CENTURY | ) |
| INTERNATIONAL ARMS, INC.; COLT'S | ) |
| MANUFACTURING COMPANY LLC; | ) |
| GLOCK, INC.; GLOCK GES.M.B.H.; | ) |
| STURM, RUGER & CO., INC.; | ) |
| WITMER PUBLIC SAFETY GROUP, INC. | ) |
| D/B/A INTERSTATE ARMS, | ) |
| Defendants | ) |

**REPLY OF DEFENDANT GLOCK, INC. IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE
COMPLAINT PURSUANT TO FRCP 12(b)(2)**

**TABLE OF CONTENTS**

ARGUMENT …………………………………………………………………………………..1

I. Plaintiff's Claims Do Not Arise Out of, Relate to, or Have Any Affiliation with Glock's Contacts in Massachusetts ................................................................................................ 1

   A. Plaintiff's "Relatedness" Approach Has Been Rejected by the U.S. Supreme Court ......... 2

   B. Plaintiff Has Failed to Present Evidence of Specific Facts.................................................... 5

II. It is Unreasonable for this Court to Exercise Personal Jurisdiction Over Glock ...................... 7

III. Jurisdictional Discovery is Unwarranted ................................................................................ 8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

*Case Name*                                                                                                         *Page(s)*

*Adams v. Gissell,*
    No. 20-cv-11366-PBS, 2021 WL 2786277 (D. Mass. May 24, 2021) ...…… …………...2

*Barrett v. Lombardi,*
    239 F.3d 23 (1st Cir. 2001) …....……………………………………………………………..9

*Bristol-Myers-Squibb Co. v. Super. Ct. of Calif.,*
    137 S. Ct. 1773 (2017) ……...…………………………………………………………….5

*Chouinard v. Marigot Beach Club & Dive Resort,*
    No. 20-cv-10863-MPK, 2021 WL 2256318 (D. Mass. June 3, 2021) ……… …………..5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    141 S. Ct. 1017 (2021) …...…………………………………….......................... *passim*

*Foster-Miller, Inc. v. Babcock & Wilcox Canada,*
    46 F.3d 138 (1st Cir. 1995) ……………………………...………………………………….6

*Grice v. VIM Holdings Grp., LLC,*
    280 F. Supp. 3d 258 (D. Mass. 2017) ………………...……………………………………..2,7
.
*Hamilton v. Beretta Corp.,*
    750 N.E. 2d 1055 (N.Y. Ct. App. 2001) ……...…………...……………………………...6,10

*Kingston v. AngioDynamics, Inc.,*
    No. 21-cv-10234-DJC, 2021 WL 3022320 (D. Mass. July 16, 2021)…....……………….4,7

*Kuan Chen v. United States Sports Acad., Inc.,*
    956 F.3d 45 (1st Cir. 2020) …..…………….....………………………………………....…6

*Lorenzen v. Toshiba Am. Info. Sys., Inc.,*
    No. 20-cv-186-JJM-PAS, 2021 WL 5051175 (D.R.I. Nov. 1, 2021)...…………………..…4

*Motus, LLC v. CarData Consultants, Inc.,*
    23 F.4th 115 (1st Cir. 2022) ………………...……………………………………………9

*Mukarker v. City of Philadelphia,*
    178 F. Supp. 3d 8 (D. Mass. 2016) …..…………...…………………………………...7

*Nowak v. Tak How Inv., Ltd.,*
    94 F.3d 708 (1st Cir. 1996) …………………...…………….......................................8

*Sawtelle v. Farrell,*
    70 F.3d 1381 (1st Cir. 1995) …….………....………………….......... .....................8

*Stars for Art Productions FZ, LLC v. Dandana, LLC,*
    806 F. Supp.2d 437 (D. Mass 2011)   ….…………….....……………………………9

*Ticketmaster-New York, Inc. v. Alioto,*
    26 F.3d 201 (1st Cir.1994) …………………....…………………………………….....2

*U.S. v. Swiss American Bank, Ltd.,*
    274 F.3d 610 (1st Cir. 2001) ……….………….....………………………………....9

*Whittaker Corp. v. United Aircraft Corp.,*
    482 F.2d 1079 (1st Cir. 2001) …..………....………………………………................9

# ARGUMENT

Plaintiff responds to Glock, Inc.'s ("Glock") motion to dismiss by misconstruing recent Supreme Court precedent and submitting presumptions and unsupported conclusions in lieu of properly documented evidence. Plaintiff's proffered "evidence" does not identify a single Glock firearm that was trafficked into Mexico, let alone a "flood" of trafficked Glock firearms that had flowed through Massachusetts. Instead, Plaintiff's economist weaves together different sets of estimates and extrapolations which she purports allows her to reach the conclusion that some discrete number of Glock firearms were trafficked into Mexico after having been legally sold into Massachusetts.

Similarly, Plaintiff has failed to show any connection between Glock's business relationships with its Massachusetts distributors and the drug cartel violence occurring in Mexico. Plaintiff's generalized and unsupported allegations that Glock's national distribution policies and directives are somehow the cause of firearms trafficking across the southern border do not have any nexus to or relationship with Massachusetts. In essence, if Plaintiff's arguments were valid, then Glock would be subject to personal jurisdiction in any state where its products are sold directly, or even indirectly, by distributors and retailers, irrespective of where the alleged harm occurs. That is not the law, and the argument supporting such a contention distorts the basic principles of specific personal jurisdiction, and must be rejected.

## I. Plaintiff's Claims Do Not Arise Out of, Relate to, or Have Any Affiliation with Glock's Contacts in Massachusetts

In opposition, Plaintiff fails to meet its prima facie burden of establishing that this Court has personal jurisdiction over Glock. Plaintiff simply doubles down on "conclusory allegations" and "farfetched inferences" – in the absence of properly documented evidence – to show its claims relate to or arise from Glock's Massachusetts contacts. *Grice v. VIM Holdings Grp., LLC*, 280 F.

Supp. 3d 258, 269 (D. Mass. 2017), quoting *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir.1994). Plaintiff also conveniently overlooks central facts from recent decisional law on personal jurisdiction to support its flawed argument that older precedent has been reversed and that specific jurisdiction can now be exercised in even the most attenuated, loosely connected claims, such as this one.

### A. Plaintiff's "Relatedness" Approach Has Been Rejected by the U.S. Supreme Court

In particular, Plaintiff relies heavily on selections from the *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*. decision where the Supreme Court declined to adopt a "causation-only" approach to the relatedness component. 141 S. Ct. 1017, 1024 (2021); *see also Adams v. Gissell*, No. CV 20-11366-PBS, 2021 WL 2786277, at *16, fn. 9 (D. Mass. May 24, 2021) (noting that *Ford* is consistent with First Circuit precedent, and that "while its presence or absence is important, causation is not a per se requirement of specific jurisdiction."). The Court held that the first half of the inquiry, "arise out of," necessarily involves causation while the second half, "relates to," "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 1026. In the same decision, the Court cautioned that this "does not mean anything goes" and the phrase "'relate to' incorporates real limits." *Id*. It is submitted that the purported relation between Glock's Massachusetts contacts and Plaintiff's alleged claims are far outside any reasonable limits the Supreme Court may have envisioned.

In fact, the Court's reasoning in the *Ford* case supports Glock's jurisdictional arguments. *Ford* involved two separate decisions from the Montana and Minnesota state courts which held that Ford Motor Company was subject to specific personal jurisdiction in each state where the plaintiff was killed or injured in an accident while driving an allegedly defective Ford vehicle.

Ford had originally sold the two subject vehicles in other states before they later entered Minnesota and Montana through re-sale or relocation. *Id.* at 1022-24.

In challenging specific personal jurisdiction, Ford acknowledged that it had "purposefully availed" itself of the privilege of doing business in both states, but argued that the plaintiffs' claims could only "arise out of or relate to" its conduct in Montana and Minnesota if Ford had designed, manufactured, or sold the particular vehicles involved in the accidents in the forum state. The Supreme Court affirmed the state courts' exercise of specific personal jurisdiction on the ground that the second half of the relatedness component had been satisfied. The Court noted that Ford engaged in marketing, advertising, and sales in those states, however the decisive factor was that the alleged harm in both cases occurred within the forum states. The Court specifically held that "when a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 1022.

Notably, the Supreme Court alternatively applied the "relates to" analysis to other forums proposed by Ford – specifically Washington and North Dakota, where the Ford vehicles were originally sold – and found that specific personal jurisdiction would have been improper there. "For each of those States, the suit involves all out-of-state parties, an out-of-state accident, and out-of-state injuries; the suit's only connection with the State is that a former owner once (many years earlier) bought the car there. In other words, there is a less significant relationship among the defendant, the forum, and the litigation." *Id.* at 1030.

Plaintiff's jurisdictional allegations in this matter are analogous to the Supreme Court's Washington/North Dakota hypothetical presented in *Ford*. Plaintiff and Glock are both out-of-state parties, the alleged injuries and damages occurred outside of Massachusetts, and the only alleged connection with the state is that Plaintiff speculates some number of unidentified Glock

firearms were originally sold there and then subsequently trafficked into its country by unknown third parties. The state where the injuries and damages occurred was a deciding factor in *Ford* as well as the post-*Ford* cases cited by Plaintiff, however Plaintiff glosses over the fact that its claimed injuries did not occur within the state and otherwise have nothing to do with Massachusetts. *See Chouinard v. Marigot Beach Club & Dive Resort*, No. CV 20-10863-MPK, 2021 WL 2256318, at *11 (D. Mass. June 3, 2021) (Massachusetts District Court declined to exercise personal jurisdiction where injury occurred in St. Lucia, holding that "a key component of the *Ford* constitutional relatedness inquiry [was] absent in this case."); *Lorenzen v. Toshiba Am. Info. Sys., Inc.*, No. CV 20-186-JJM-PAS, 2021 WL 5051175, at *2 (D.R.I. Nov. 1, 2021) (Rhode Island District Court exercised specific personal jurisdiction over Samsung where its laptop battery caught fire in Rhode Island and injured and killed Rhode Island residents in their home); *see also Kingston v. AngioDynamics, Inc.*, No. 21-CV-10234-DJC, 2021 WL 3022320, at *8 (D. Mass. July 16, 2021) (Massachusetts District Court declined to exercise personal jurisdiction over manufacturer regarding out-of-state injury to a non-resident and manufacturer's limited contacts with the forum were too attenuated to establish relatedness).

There is no verifiable relationship between Glock, Massachusetts, and this action by the Mexican Government, thus the action should be dismissed. Plaintiff's generalized claims that Glock's national distribution and marketing policies amount to negligent acts occurring in Massachusetts, that then relate to harm occurring in Mexico, are far too attenuated to support a finding of actual relatedness for jurisdictional purposes. A similar analysis was rejected by the Supreme Court in *Bristol-Myers-Squibb Co. v. Super. Ct. of Calif.*, 137 S. Ct. 1773, 1780 (2017). In that case, the California state court had exercised personal jurisdiction over a pharmaceutical manufacturer regarding claims by non-residents that they were injured by Plavix medication. Even

4

though the plaintiffs had no connection to California, the state court found that the manufacturer's national advertising, distribution scheme, and other business conducted in California created sufficient contacts for the state courts to exercise specific personal jurisdiction. The Supreme Court held that California courts did not have unlimited specific personal jurisdiction over the manufacturer since the non-resident plaintiffs "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781.

The Court reaffirmed the *Bristol-Myers* holding in *Ford*, but underscored the key differences between the cases, primarily that California, "and the defendant's activities there, lacked any connection to the plaintiffs' claims…" *Ford*, 141 S. Ct. at 1031. Moreover, the Court acknowledged that the plaintiffs in *Ford*,

> "are residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States. In sum, each of the plaintiffs brought suit in the most natural State— based on an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that t[ook] place there."

*Id*. Since Glock's allegedly negligent marketing and distribution practices are not targeted at or related to Massachusetts and the entirety of Plaintiff's injuries occurred outside the Commonwealth, Massachusetts is not a "natural state" in which to bring this action.

## B. Plaintiff Has Failed to Present Evidence of Specific Facts

Plaintiff cannot meet its burden of "proffer[ing] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020). In an effort to make such a showing, Plaintiff continues to rely solely on conclusory averments since it is unable to "adduce evidence of specific facts." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). In its

5

opposition, Plaintiff repeats the same vague and unsubstantiated proclamations from the Complaint while also presenting data estimates that have little to no bearing on the issues central to a personal jurisdiction determination.

Plaintiff exclusively relies on the purported Expert Report of economist Lucy Allen in which she attempts to estimate the total number of all defendants' firearms that were linked to a sale in Massachusetts and later trafficked into Mexico during the period from 2011 to 2020. Ms. Allen ultimately reached her conclusions by combining several different sets of data from varying sources, including ATF traces, over disparate time periods.[1] Assuming the raw source data is accurate, as required in a prima facie review, it still would not reflect "specific facts" that are essential to establishing personal jurisdiction. Ms. Allen's report does not consider the multiple steps and intervening actions by third parties outside of the Commonwealth that give rise to Plaintiff's allegations. Furthermore, at best, Ms. Allen's report and analysis provides only a rough estimate of the total number of trafficked firearms based upon outdated, questionable, and unrelated data.[2]

---

[1] A trace request is a communication from ATF to a federal firearms licensee ("FFL") tracking the commercial chain of distribution of a particular firearm down to the original purchaser. *See Hamilton v. Beretta Corp*., 750 N.E. 2d 1055, 1065 (N.Y. Ct. App. 2001). Even if ATF firearm traces revealed that some number of Glock pistols were recovered in Mexico, this does not suggest or implicate unlawful or criminal acts by a manufacturer, seller, or purchaser. The ATF has stated that "the appearance of [an FFL] or a first unlicensed purchaser of record in association with a crime gun or in association with multiple crime guns in no way suggests that either the FFL or the first purchaser has committed criminal acts. Rather, such information may provide a starting point for further and more detailed investigation." *Id.* (quoting Crime Gun Trace Analysis Reports: The Illegal Youth Firearms Market in 27 Communities, 1998 Youth Crime Gun Interdiction Initiative, BATF Document, at 17 [Feb. 1999]).

[2] Initially, Ms. Allen relies on estimates from two sources that the total number of firearms trafficked into Mexico is 200,000 per year, 730,000 per year, or somewhere in between that wide range. These estimates do not reference states where the firearms were sold nor are these numbers broken down by firearm manufacturer. Those deficiencies notwithstanding, Ms. Allen then somehow combines two other data sets from Mexican agencies to inexplicably reach an estimate that Glock was the manufacturer of 2% of the firearms recovered in Mexico from 2011 to 2020. Significantly, Ms. Allen does not identify the origin of these "recovered firearms," many of which likely came from sources such as legal sales in Mexico or trafficking from countries other than the United States. The last data source is ATF Mexico trace data from 1992 to 2001 that was limited to firearms with a sale linked to Massachusetts. While a specific percentage is offered for Smith & Wesson, Ms. Allen notes only that 5.7% of the traced firearms from all manufacturers were linked to a sale in Massachusetts. This data does not specify what percentage of the traced firearms were manufactured by Glock, if any. As such, each set of source data lacked specific facts and numbers as to Glock firearms - - but were nevertheless combined to reach a speculative and unsubstantiated final estimate. Ms. Allen also

Although Plaintiff characterizes its alleged injuries from firearms as "indivisible," its entire jurisdictional argument is based on trace data that can be easily parsed down to specific, individual firearms. Plaintiff's evidence fails to identify a single Glock firearm that was sold into Massachusetts and then trafficked into Mexico. Even if such information was available, it would not support jurisdiction since Glock's sales within the Commonwealth are too attenuated from Plaintiff's causes of action.

## II. It is Unreasonable for this Court to Exercise Personal Jurisdiction Over Glock

Plaintiff "must succeed on all three prongs" of the jurisdictional analysis in order to establish personal jurisdiction. *Mukarker v. City of Philadelphia*, 178 F. Supp. 3d 8, 10 (D. Mass. 2016). Since Plaintiff falls well short of its burden with respect to the "relatedness" prong, this Court need not proceed with conducting a reasonableness inquiry. S*ee Kingston*, 2021 WL 3022320, at *8 (District Court did not proceed with reasonableness inquiry where plaintiff failed on the relatedness prong); *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 270 (D. Mass. 2017). Nevertheless, the majority of the Gestalt factors weigh against the Court's exercise of specific personal jurisdiction over Glock. *See Nowak v. Tak How Inv., Ltd*., 94 F.3d 708, 717 (1st Cir. 1996). Plaintiff's arguments to the contrary are lacking.

The second factor of the reasonableness prong, the forum state's adjudicatory interest in the dispute, weighs in favor of Glock since the "significant events" and alleged injury all occurred outside of Massachusetts and the dispute is between non-citizens. *see Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). Plaintiff has no argument against this other than to inaccurately suggest that Glock's nationwide distribution policies, which apply to distributors throughout the country and are issued from Glock's home in Georgia, are somehow more significant in Massachusetts. It

---

fails to address the number of trafficked firearms that were linked to sales in other states, including those states where trafficking activity is most prevalent, and how those numbers compare with Massachusetts.

is a fundamental premise that Plaintiff is not entitled to bring suit in any jurisdiction it wishes to simply because it is not at home in any state. Once again, under Plaintiff's analysis, Glock would be subject to unlimited specific personal jurisdiction throughout the country.

The third and fourth factors, interest in obtaining convenient relief and the administration of justice, likewise weigh against Plaintiff, a non-citizen. While Plaintiff argues that it would otherwise have to litigate this matter in various courts if this motion were to be granted, it ignores the possibility that there are other more obvious states – such as those specifically mentioned in its Complaint – that would potentially have personal jurisdiction over all defendants. Plaintiff's references to Massachusetts as being the "center of the gun-manufacturing industry" is both hyperbole and irrelevant to Glock, which has never maintained any presence in Massachusetts.

The fifth factor, shared policy interests, does not come close to supporting a finding of reasonableness. Plaintiff makes no attempt to hide that this action arises from a difference in policies between the United States and Mexico. There are no allegations that Glock or its Massachusetts distributors have violated any U.S. law or regulation. Rather, Plaintiff claims that the firearm industry's lawful U.S. distribution system has caused injury in another country that operates under an entirely different set of laws and regulations regarding firearm sales. As such, this tips against Plaintiff due to the divergent or competing "social policies" at issue in this case.

### III. Jurisdictional Discovery is Unwarranted

Plaintiff's request to conduct jurisdictional discovery should be denied for multiple reasons. First, as is argued above, Plaintiff has not demonstrated a colorable claim that Glock is subject to specific personal jurisdiction in this case. *See Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) ("jurisdictional discovery is not available on demand"); *U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 625-26 (1st Cir. 2001) (affirming denial of jurisdictional discovery based on the government's "unconvincing" relatedness showing and failure to present

8

colorable claim for personal jurisdiction). Second, Plaintiff has not shown diligence in preserving its claimed right to jurisdictional discovery. *Id*. at 626. Diligence "includes presenting facts to the court which show why jurisdiction would be found if discovery were permitted." *Id*. citing *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir. 2001). A plaintiff seeking jurisdictional discovery must present to the court "pertinent avenues of inquiry" it intends to pursue, including argument why jurisdiction would be found if discovery were permitted. *Id.* citing *Whittaker Corp. v. United Aircraft Corp.*, 482 F. 2d 1079, 1086 (1st Cir. 2001); *see also Stars for Art Productions FZ, LLC v. Dandana*, LLC, 806 F.Supp.2d 437, 451 (D. Mass 2011) (plaintiff's failure to explain how broad proposed lines of discovery inquiry would yield evidence supporting personal jurisdiction was fatal to request for jurisdictional discovery).

Here, Plaintiff devotes just two sentences in its Opposition to its request for jurisdictional discovery. It states broadly and inadequately that discovery from Glock "would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico." ECF Doc. 102, p. 20. However, it makes no effort to explain how any evidence in Glock's possession would overcome the substantial obstacle it faces in demonstrating that Glock's lawful sales of firearms to Massachusetts-based distributors are related to criminal firearms violence in Mexico. Plaintiff's allegations make clear that Glock sells its firearms to independent distributors, who in turn sell to independent retail dealers throughout the country. It is from those retail dealers that persons acquire firearms, which Plaintiff alleges then find their way into Mexico illegally through the actions of third parties wholly outside the chain of lawful, licensed firearms distribution and sales. Plaintiff does not explain why Glock would have, in its records, evidence of illegal trafficking activities by these third parties with whom it does not conduct business. Moreover, Plaintiff fails to establish how or why Glock would be in possession of information

9

regarding traces conducted by the ATF that document the extent to which firearms sold to Massachusetts distributors are trafficked into Mexico.³ As such, Glock respectfully requests that Plaintiff's request for jurisdictional discovery be denied.

## CONCLUSION

For the foregoing reasons, Defendant Glock, Inc. respectfully requests that the Court grant its Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Dated: White Plains, New York
       March 14, 2022

                                  Respectfully submitted,

                                  */s/ Peter M. Durney*
                                  Peter M. Durney BBO No. 139260
                                  pdurney@cornellgollub.com
                                  Patricia A. Hartnett BBO No. 568206
                                  phartnett@cornellgollub.com
                                  CORNELL & GOLLUB
                                  88 Broad Street, Sixth Floor
                                  Boston, MA 02110
                                  T: (617) 482-8100

                                  */s/ Jeffrey Malsch*
                                  John F. Renzulli (phv)
                                  jrenzulli@renzullilaw.com
                                  Christopher Renzulli (phv)
                                  crenzulli@renzullilaw.com
                                  Jeffrey Malsch (phv)
                                  jmalsch@renzullilaw.com
                                  RENZULLI LAW FIRM LLP
                                  One North Broadway, Suite 1005
                                  White Plains, NY 10601
                                  T: (914) 285-0700

---

³ Whether by telephone, facsimile or email, the ATF never discloses to the FFL, including manufacturers, why a particular firearm is being traced or which law enforcement agency requested the trace. *See Hamilton*, 750 N.E. 2d at 1065. Thus, an ATF trace request would not provide Glock with any indication or information that particular firearms were recovered in Mexico.

# CERTIFICATE OF SERVICE

   I, Jeffrey Malsch, hereby certify that on this 14 day of March, 2022, I caused copies of the foregoing to be served via the Court's electronic filing system upon all counsel of record and paper copies will be sent to those indicated as non-registered participants.

                    /*s/ Jeffrey Malsch*
                    Jeffrey Malsch
                    jmalsch@renzullilaw.com