**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS, *Plaintiff*, <br><br> *vs*. <br><br> SMITH & WESSON BRANDS, INC., et al., *Defendants*. | Civil Action No. 1:21-CV-11269-FDS |

**[PROPOSED] PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

    I.     THE TORT LAW OF MEXICO APPLIES...........................................................2

          A.     Defendants Have Failed to Overcome the Presumption that the Place of Injury Governs ........................................................................3

          B.     The Same Conflict Rule Applies When Foreign Law Is at Issue .....................................................................................................5

          C.     The "Better Rule of Law" Does Not Undercut Applying Mexican Law .......................................................................................7

          D.     Applying Mexican Law Is Not Inconsistent with any Public Policy of Massachusetts *or* the United States ...............................9

CONCLUSION....................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Alves v. Siegel's Broadway Auto Parts, Inc.*,
   710 F. Supp. 864 (D. Mass. 1989) .............................................................................. 4, 7

*Asymmetrx Med., Inc. v. McKeon*,
   932 F. Supp. 2d 232 (D. Mass. 2013) ............................................................................ 4

*Becker v. Club Las Velas*,
   No. 94 CIV. 2412 (JFK), 1995 WL 267025 (S.D.N.Y. May 8, 1995) ........................... 6

*Bi–Rite Enter. v. Bruce Miner Co., Inc.*,
   757 F.2d 440 (1st Cir. 1985) .......................................................................................... 7

*Burleigh v. Alfa Laval, Inc.*,
   313 F. Supp. 3d 343 (D. Mass. 2018) ......................................................................... 4, 5

*Bushkin Assocs., Inc. v. Raytheon Co.*,
   473 N.E.2d 662 (Mass. 1985) ...................................................................................... 3, 7

*Butler v. Adoption Media, LLC*,
   486 F. Supp. 2d 1022 (N.D. Cal. 2007) .......................................................................... 4

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ............................................................................................ 2

*Cohen v. McDonnell Douglas Corp.*,
   450 N.E.2d 581 (Mass. 1983) ......................................................................................... 4

*Cosme v. Whitin Mach. Works, Inc.*,
   632 N.E.2d 832 (Mass. 1994) ......................................................................................... 5

*Cruz v. Chesapeake Shipping, Inc.*,
   932 F.2d 218 (3d Cir. 1991) ........................................................................................... 2

*Echavaria v. Uline, Inc.*,
   534 F. Supp. 3d 168 (D. Mass. 2021) ............................................................................. 4

*Fu v. Fu*,
   733 A.2d 1133 (N.J. 1999) ............................................................................................. 4

*Hardy v. New Hampshire Dept. of Safety*,
   No. 218-2018-CV-828 (N.H. Super. Ct. Feb. 14, 2022) ............................................... 2

*Hartford Fire Ins. Co. v. California*,
   509 U.S. 764 (1993) ........................................................................................................ 6

*Hartford Fire Ins. Co. of Illinois v. Maynard*,
   No. 01 C 4982, 2002 WL 256800 (N.D. Ill. Feb. 21, 2002) ........................................... 1

*Hodas v. Morin*,
   814 N.E.2d 320 (Mass. 2004) ......................................................................................... 3

*Imamura v. Gen. Elec. Co.*,
   371 F. Supp. 3d 1 (D. Mass. 2019) ................................................................................. 5

*In re Academy, Ltd.*,
  625 S.W. 3d 19 (Tex. 2021) .................................................................................................. 2

*In re Air Crash Disaster at Mannheim Germany on Sept. 11, 1982*,
  769 F.2d 115 (3d Cir. 1985) ................................................................................................. 5

*King v. Williams Indus., Inc.*,
  565 F. Supp. 321 (D. Mass. 1983) ........................................................................................ 3

*Kozoway v. Massey-Furguson, Inc.*,
  722 F. Supp. 641 (D. Colo. 1989) ..................................................................................... 6, 7

*L. Offs. of Jeffrey S. Glassman v. Palmisciano*,
  690 F. Supp. 2d 5 (D. Mass. 2009) ....................................................................................... 4

*Lenn v. Riche*,
  117 N.E. 2d 129 (Mass. 1954) .............................................................................................. 6

*Longtin v. Organon USA, Inc.*,
  363 F. Supp. 3d 186 (D. Mass. 2018) ................................................................................... 3

*Loucks v. Standard Oil Co. of New York*,
  120 N.E. 198, 202 (NY 1918) .............................................................................................. 9

*McKee v. Cosby*,
  236 F. Supp. 3d 427 (D. Mass. 2017) ................................................................................... 1

*Mitchell v. Lone Star Ammunition, Inc.*,
  913 F.2d 242 (5th Cir. 1990) ................................................................................................ 7

*Monroe v. Medtronic, Inc.*,
  511 F. Supp. 3d 26 (D. Mass. 2021) ..................................................................................... 3

*Ogburn-Sisneros v. Fresenius Med. Care Holdings, Inc.*,
  No. 2013-05050, 2015 WL 6437773 (Mass. Super. Oct. 19, 2015) ..................................... 7

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*,
  268 F.3d 1133 (9th Cir. 2001) .............................................................................................. 2

*Pevoski v. Pevoski*,
  358 N.E.2d 416 (Mass. 1976) ........................................................................................... 3, 5

*Rey v. Gen. Motors LLC,* 4:19-CV-00714-DGK,
  2021 WL 4786469 (W.D. Mo. Oct. 13, 2021) ..................................................................... 6

*Rick v. Profit Mgmt. Assocs., Inc.*,
  241 F. Supp. 3d 215 (D. Mass. 2017) ................................................................................... 4

*Rodriguez v. Gen. Electric Co.,*
  No. 173351H, 2021 WL 5626318 (Mass. Super. Ct. Nov. 23, 2021) .................................. 7

*Romani v. Cramer, Inc.,*
  992 F. Supp. 74 (D. Mass. 1998) .......................................................................................... 4

*Saharceski v. Marcure*,
  366 N.E.2d 1245 (Mass. 1977) ......................................................................................... 5, 7

*Sommers v. 13300 Brandon Corp*,
   712 F. Supp. 702 (N.D. Ill. 1989) ................................................................................... 4

*TargetSmart Holdings, LLC v. GHP Advisors, LLC*,
   366 F. Supp. 3d 195 (D. Mass. 2019) ............................................................................ 4

*Value Partners S.A. v. Bain & Co.*,
   245 F. Supp. 2d 269 (D. Mass. 2003) ......................................................................... 5, 6

*Waithaka v. Amazon.com, Inc.*,
   404 F. Supp. 3d 335 (D. Mass. 2019) ............................................................................ 3

**Statutes**

15 U.S.C. § 7903 ................................................................................................................ 10

**Other Authorities**

Restatement (Second) of Conflict of Laws § 3 (1971) ....................................................... 3

Restatement (Second) of Conflict of Laws § 10 (1971) ..................................................... 5

Restatement (Second) of Conflict of Laws § 90 (1971) ..................................................... 9

Restatement (Second) of Conflict of Laws § 145 (1971) ............................................... 4, 5

Restatement (Second) of Conflict of Laws § 146 (1971) ............................................... 3, 4

Restatement (Second) of Conflict of Laws § 147 (1971) .................................................. 4

Restatement (Third) of Foreign Relations Law § 402 (1987) ............................................ 6

Symeon C. Symeonides, *Choice of Law in Cross-Border Torts:*
   *Why Plaintiffs Win and Should*, 61 Hastings L.J. 337 (2009) ...................................... 7

## INTRODUCTION

Plaintiff, the Government of Mexico ("Government"), submits this sur-reply in response to the choice of law analysis set forth (for the first time) in Defendants' Joint Reply in Support of Defendants' Motions to Dismiss, ECF No. 140 ("Jnt. Reply") and Defendant Witmer Public Safety Group, Inc,'s Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, ECF No. 142 ("Witmer Reply"). Defendants expressly base their belated choice of law analysis on denying the Complaint's allegations, asserting that they engage in only "legal conduct" that occurs "wholly within the United States," and they do not foresee or aid the "string of criminal actors [that] arm the cartels in Mexico." Jnt. Reply 1, 8. This flatly denies the Complaint's detailed allegations that Defendants: (1) reasonably foresee and are on actual notice that their guns are systematically trafficked into Mexico, *see, e.g.*, Compl. ¶¶ 115-277, 230; (2) aid and abet—"actively facilitate"—the trafficking because they profit from it, *see, e.g, id*. ¶¶ 1, 3, 7, 16, 51, 367, 377-395; and (3) are conspirators and joint participants in the unlawful import of guns into, and unlawful use of guns within, Mexico, *see, e.g.*, *id*. ¶¶ 434-505.

In conducting the choice of law analysis, the Court cannot accept Defendants' factual denials. To accept them would be to conduct a choice of law analysis on claims that the plaintiff has not brought.[1] On this motion, the operative facts are that Defendants foresee, profit from, and aid and abet the systematic trafficking of their guns into Mexico. And, as not even Defendants deny, Mexico stringently regulates importing guns into and selling and using guns within

---

[1] *See McKee v. Cosby*, 236 F. Supp. 3d 427, 435 (D. Mass. 2017) ("in its choice of law analysis, the court considers only the factual allegations contained in the amended complaint"), *aff'd*, 874 F.3d 54 (1st Cir. 2017); *Hartford Fire Ins. Co. of Illinois v. Maynard*, No. 01 C 4982, 2002 WL 256800, at *5 (N.D. Ill. Feb. 21, 2002) ("as to the choice of law issue, Hartford's factual allegations must be taken as true").

Mexico, Compl. ¶¶ 55-59, 396-403, and the Government is injured in Mexico, *id*. ¶¶ 446-505. Defendants fail to rebut the Government's analysis that Mexican tort law applies.

I.      **THE TORT LAW OF MEXICO APPLIES**

Defendants' analysis is based on deeply flawed reasoning and a misreading of the relevant cases. Initially, Defendants have confused choice of law analysis with the applicability of PLCAA, asserting that choice of law principles determine whether PLCAA precludes the Government's claims.[2] Not so. Whether PLCAA precludes the claims is determined by the extraterritoriality and statutory construction analyses under cases such as *Small v. United States,* 544 U.S. 385 (2005), and *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016), not a choice of law analysis.[3] The choice of law analysis determines only which tort law (or unfair trade law) applies. And contrary to Defendants' citation-free assertion (Jnt. Reply 6), when the choice of law analysis weighs the sovereigns' interests as part of determining which tort law to

---

[2] Jnt. Reply 6 (calling for "applying the law of the United States, including federal law"); *id.* at 8 (arguing that United States supplies the "better rule of law" because "Congress enacted a statute (the PLCAA)" addressing civil liability); *see also* Witmer Reply 2-5. Defendants also contend, inconsistently, that PLCAA applies "*regardless* of which jurisdiction's tort law may apply" (Jnt. Reply 1, 5-6) because, they contend, PLCAA is jurisdictional. Jnt. Reply 5. It is not. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 127 (2d Cir. 2011). Defendants' cases are not to the contrary. *See Hardy v. New Hampshire Dept. of Safety*, No. 218-2018-CV-828, Order at 12 n. 1 (N.H. Super. Ct. Feb. 14, 2022) (applying *state* immunity shield and explicitly not reaching applicability of PLCAA); *In re Academy, Ltd.*, 625 S.W. 3d 19, 33 n.15 (Tex. 2021) ("We express no opinion on" whether PLCAA is jurisdictional). In any event, even jurisdictional statutes are subject to the extraterritoriality analysis. *See* Plaintiff's Mem. of Law in Opp. to Defendants' Jnt. Mtn. to Dismiss, ECF No. 111 ("Opp."), 16 n.87.

[3] *See, e.g., Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001) ("Where a federal statute is involved, . . . a choice of law analysis does not apply in the first instance. The initial question, rather, is whether Congress intended the statute in question to apply to conduct occurring outside the United States. This is a question of statutory interpretation, not a question of choice of law."); *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 224 (3d Cir. 1991) (same). To be sure, the fact that Mexican tort law supplies the cause of action reinforces the Government's point that *RJR Nabisco* and similar cases require construing PLCAA to not preclude these claims. *See* Opp. 15-16.

2

apply, the relevant domestic sovereign is Massachusetts, not the United States.[4] The choice of law question is whether *Massachusetts* or another state has a sufficient interest in applying its potentially conflicting tort law to outweigh both the presumption that the law of the place of injury governs and Mexico's interest in protecting the Government (and its inhabitants) from the foreseeable harm that Defendants systematically cause in Mexico. As explained below, it does not.

    **A.**    **Defendants Have Failed to Overcome the Presumption that the Place of Injury Governs**

Defendants' argument about Massachusetts choice of law rules misstates and misapprehends the significance of the place of injury and plaintiff's domicile. Massachusetts uses a "functional approach" to choice of law issues[5] mandating that the place of injury "'has provided, and will continue to provide, a rational and just procedure for selecting the law governing the vast majority of issues in multistate tort suits.'"[6] Courts consistently recognize that Massachusetts effectively prescribes a presumption in favor of the place of injury.[7]

---

[4] *See generally* Restatement (Second) of Conflict of Laws § 3 (1971) ("the United States is not a state within the meaning of the rule[s] . . . as to matters that are governed by the local law of the member States"). Unless otherwise specified, references to "Restatement" herein are to the Second Restatement of Conflict of Laws.

[5] *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985); *see Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 345 (D. Mass. 2019) ("In choice of law matters, Massachusetts courts 'look to [their] established 'functional' choice of law principles and to the Restatement (Second) of Conflict of Laws, with which those principles generally are in accord.'" (quoting *Hodas v. Morin*, 814 N.E.2d 320, 324 (Mass. 2004)), *aff'd*, 966 F.3d 10 (1st Cir. 2020).

[6] *King v. Williams Indus., Inc.*, 565 F. Supp. 321, 324 (D. Mass. 1983) (quoting *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976)), *aff'd*, 724 F.2d 240 (1st Cir. 1984).

[7] *See, e.g.*, *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 33 (D. Mass. 2021) ("[u]nder [Massachusetts functional] approach, tort claims are governed by the law of the state where the injury occurred unless another state has a more significant relationship to the underlying cause of action"); *Longtin v. Organon USA, Inc.*, 363 F. Supp. 3d 186, 191-92 (D. Mass. 2018) ("Under § 146 of the Restatement, the law of the state where the injury occurred applies unless

Defendants wrongly assert that Massachusetts' functional approach "frequently" points away from the place of injury. *See* Jnt. Reply 6-7. The opposite is true. Courts applying Massachusetts principles to tort claims routinely apply the law of the place of injury "[b]ecause the choice of law analysis focuses on the location of the injury."[8] Notably, even when the injury and conduct occur in different jurisdictions, "the law of the state where the injury occurred 'usually' applies."[9] And "the law where the injury occurred carries even greater weight" where, as here, the plaintiff "'is domiciled or resides there.'"[10]

Citing *Watkins v. Omni Life Sci., Inc.*, 692 F. Supp. 2d 170, 175 (D. Mass. 2010), Defendants maintain that "the 'interest' of the United States 'in regulating the conduct of businesses

---

Massachusetts has a more significant relationship to the parties and the occurrence under the considerations provided in § 6.") (internal citations and quotations omitted); *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 223 (D. Mass. 2017) (same); *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 212 n.2 (D. Mass. 2019) ("the law of the place where the injury occurred presumptively applies"); *Romani v. Cramer*, Inc., 992 F. Supp. 74, 78 (D. Mass. 1998) (same). The same presumption applies whether the claim involves personal injury or property damage. *See* Restatement § 147. Witmer recognizes the presumption. *See* Witmer Reply 3 ("the Restatement initially defers to the place where the injury occurred").

[8] *Echavaria v. Uline, Inc.*, 534 F. Supp. 3d 168, 171 (D. Mass. 2021); *Asymmetrx Med., Inc. v. McKeon*, 932 F. Supp. 2d 232, 239 (D. Mass. 2013).

[9] *Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 353 (D. Mass. 2018) (citing Restatement § 146 cmt. e); *see also Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 586 (Mass. 1983) (holding that, under the Restatement approach, "address[ing] situations where tortious conduct occurred in one State and injury occurred in another . . . Massachusetts law would apply in this case because [plaintiff], a resident of Massachusetts, was injured and died in Massachusetts") (citing Restatement § 146 cmt. e); *Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F. Supp. 864, 871 (D. Mass. 1989) (applying Connecticut law in a products liability case involving Connecticut plaintiffs, a Connecticut place of injury, a Massachusetts defendant, and a Massachusetts product). Cases in other jurisdictions with similar choice of law rules are in accord. *See, e.g.*, *Fu v. Fu*, 733 A.2d 1133, 1149-50 (N.J. 1999); *Sommers v. 13300 Brandon Corp*, 712 F. Supp. 702, 706 (N.D. Ill. 1989); *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1052-53 (N.D. Cal. 2007)).

[10] *Burleigh*, 313 F. Supp. 3d at 353-54 (quoting Restatement § 145 cmt. e); *see also L. Offs. of Jeffrey S. Glassman v. Palmisciano*, 690 F. Supp. 2d 5, 13 (D. Mass. 2009) (applying Massachusetts law where the injury occurred in Massachusetts and conduct in Rhode Island because Massachusetts is the place where the plaintiff was located and the contract in dispute created).

4

operating under its laws' naturally 'trumps any interest' that a foreign jurisdiction may have in regulating the downstream effects of the companies' goods." Jnt. Reply 7. But that is not what *Watkins* held. The court said nothing about the interest of the United States. And with respect to the jurisdiction with the most significant interest, the court in *Burleigh* held that *Watkins* was distinguishable there, as it is here, "because the case concerned a putative class action" in which class members were injured in 50 different states while the sole defendant was headquartered in only one.[11] Defendants' other Massachusetts cases (Jnt. Reply 7 n.1) are just as inapt.[12]

### B. The Same Conflict Rule Applies When Foreign Law Is at Issue

As the Supreme Court has consistently held, the law of the place of injury still presumptively governs when the injury occurs abroad.[13] This accords with international law under which

---

[11] *Burleigh*, 313 F. Supp. 3d at 354 n.14. *Air Crash Disaster* is similar to *Watkins* and also easily distinguishable. That was a multidistrict litigation products liability case involving over 40 causes of actions brought by plaintiffs from the United States and several other countries and against a Pennsylvania manufacturer for injuries arising from a helicopter crash that occurred in West Germany. *In re Air Crash Disaster at Mannheim Germany on Sept. 11, 1982*, 769 F.2d 115, 120 (3d Cir. 1985). Given the diversity of these contacts, the state where the conduct occurred was held to have the more substantial interest under Pennsylvania choice of law rules. *Id.* at 120 n.7. Here the reverse is true: the multiplicity of defendants' contacts in various states, with the injuries localized in a single jurisdiction where the plaintiff resides, confirms the choice of Mexican law.

[12] *Saharceski* and *Pevoski* are both cases involving car accidents where, unlike here, the place of injury was "fortuitous," *see* Restatement § 145 cmt. e, and lacked any substantial connection to either party. *See Saharceski v. Marcure*, 366 N.E.2d 1245, 1249 (Mass. 1977); *Pevoski*, 358 N.E.2d at 417. *Cosme* is distinguishable because, unlike here, "'the domicile and place of business of the plaintiff and the defendant are grouped in a single state.'" *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 836 (Mass. 1994) (quoting Restatement § 145 cmt. e); *see also id.* ("Massachusetts has a significant interest in seeing that its resident plaintiff be compensated, and that its resident defendant . . . be held accountable for its conduct").

[13] Opp. 6-7; *see also, e.g., Imamura v. Gen. Elec. Co.*, 371 F. Supp. 3d 1, 14 (D. Mass. 2019), *aff'd*, 957 F.3d 98 (1st Cir. 2020); *Value Partners S.A. v. Bain & Co.*, 245 F. Supp. 2d 269, 276–77 (D. Mass. 2003); *Xuncax v. Gramajo*, 886 F. Supp. 162, 195 (D. Mass. 1995); Restatement § 10, Rpt.'s Note (courts generally "have not distinguished between international and interstate conflicts for choice-of-law purposes").

"a state has jurisdiction to prescribe law with respect to . . . conduct outside its territory that has or is intended to have substantial effect within its territory."[14]

Contrary to Defendants' contention, no Massachusetts precedent (or choice of law doctrine more broadly) generally favors the law of a state over the law of a foreign country. Defendants selectively quote outlier *dicta* in a Colorado case implying otherwise,[15] but the court there was referring to situations when the domestic and foreign law were "equally appropriate,"[16] which is not true here.[17] Moreover, the *holding* of that case—applying the law of Iowa, where the defendant was headquartered and the product was manufactured, rather than the law of Alberta, Canada, where the injury occurred—was not based on a preference for U.S. domestic law. It instead was based on a preference for the *law that is most protective of the injured plaintiff*. The *plaintiff* sought to apply Iowa tort law because it was more generous (for example, recognizing strict liability), and so "Canada's interest in protecting its citizens in the position of this

---

[14] Restatement (Third) of Foreign Relations Law § 402(1)(c) (1987); *see generally Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 799 (1993) (holding that, because the defendants' London conduct was meant to produce (and did, in fact, produce) substantial effects in the United States, the Sherman Act was applicable—even though, as the defendants claimed, their conduct was perfectly consistent with British law and Britain had "a strong policy to permit or encourage such conduct").

[15] Jnt. Reply 7-8 (quoting *Kozoway v. Massey-Furguson, Inc.*, 722 F. Supp. 641, 644 (D. Colo. 1989)).

[16] 722 F. Supp. at 644 (stating that "a general rule allowing parties in diversity cases to invoke the law of any foreign nation in preference to *equally appropriate*, but more familiar, state law, could cause substantial difficulties in administering justice") (emphasis added).

[17] Nor did the court say that applying the law of a "civil law system" necessarily creates serious problems in administering justice. Indeed, courts routinely apply Mexican law and the law of other civil law systems. *See, e.g., Rey v. Gen. Motors LLC,* 4:19-CV-00714-DGK, 2021 WL 4786469, at *3 (W.D. Mo. Oct. 13, 2021) (Mexican law); *Becker v. Club Las Velas*, No. 94 CIV. 2412 (JFK), 1995 WL 267025, at *5 n. 1 (S.D.N.Y. May 8, 1995) (Mexican law), *aff'd*, 101 F.3d 684 (2d Cir. 1996); *Value Partners S.A.*, 245 F. Supp. 2d at 276–77 (Brazilian law); *Lenn v. Riche*, 117 N.E. 2d 129 (Mass. 1954) (French law).

6

plaintiff would be better served by applying Iowa law."[18] Here, the opposite is the case. *Defendants* seek to apply domestic law because they believe Mexican law is more protective of Plaintiff's interests.

### C. The "Better Rule of Law" Does Not Undercut Applying Mexican Law

Defendants' invocation of the "better rule of law" is misplaced. That principle is not part of the Restatement test, is "the most controversial" of the "Leflar factors" and is seldom considered.[19] Merely because "two laws simply reflect different weighing of values; one is not inherently better than the other." *Mitchell v. Zurich Payroll Sols.*, No. 99-11441-REK, 1999 WL 693730, at *5 (D. Mass. Aug. 16, 1999). At most, the factor might influence a close case. *See*

---

[18] *Kozoway*, 722 F. Supp. at 644 (also stating that "Canada can complain of no harm if its citizen's claim is tried under Iowa law"). The same pro-plaintiff approach explains *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 250 (5th Cir. 1990), cited by Defendants. Jnt. Reply 7. There, Texas, the home state of the manufacturer, had a "paternalistic interest in the protection of consumers," and sought to "encourage safer design and to induce corporations to control more carefully their manufacturing processes," whereas North Carolina, the state where the injury occurred, had *no* interest in the "application of its statute of repose to eliminate the claims of foreign plaintiffs against foreign defendants." *Id. Rodriguez v. Gen. Electric Co.,* No. 173351H, 2021 WL 5626318 (Mass. Super. Ct. Nov. 23, 2021), cited by Witmer, is similarly distinguishable as it was the foreign *plaintiff* who sought to apply Massachusetts law over Mexican law, which the court found would "significantly restrict the damages plaintiffs could recover." *Id.* at 3. Defendants have cited no case where a court has rejected a sole plaintiff's bid to apply the law of the place where it was injured and domiciled. *See* Symeon C. Symeonides, *Choice of Law in Cross-Border Torts: Why Plaintiffs Win and Should*, 61 Hastings L.J. 337, 367 (2009) (in cases of "true conflict," courts overwhelmingly and appropriately apply pro-plaintiff law of the state of injury).

[19] *Ogburn-Sisneros v. Fresenius Med. Care Holdings, Inc.*, No. 2013-05050, 2015 WL 6437773, at *1 n.5 (Mass. Super. Oct. 19, 2015) (citation omitted); *see Alves*, 710 F. Supp. at 872 n. 7 ("The Court declines specifically to analyze the case at bar under Professor Leflar's 'better law' approach . . . . Absent a clearer command of the Supreme Judicial Court, the Court is reluctant to resolve this case by second-guessing the Connecticut legislature as to the wisdom of enacting such a law, or by second-guessing the decision of the Massachusetts legislature not to enact such a law."); *see also Bi–Rite Enter. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 443 (1st Cir. 1985) (noting *Bushkin's* mention of the Leflar considerations, but opting instead to apply exclusively the criteria of § 6(2) of the Restatement). The only case cited by Defendants that even mentions the "better rule of law" factor, did not actually apply it to the choice of law analysis. *Saharceski v. Marcure*, 366 N.E. 2d 1245, 1249 (Mass. 1977).

*Travenol Laboratories, Inc. v. Zotal, Ltd.*, 474 N.E.2d 1070, 1074 (Mass. 1985). It has no place here where the primary Restatement factors (injury and plaintiff's domicile) clearly point to applying Mexican law.

Defendants assert, without citation or explanation, that "Mexican law has no salient legal framework to determine liability." Jnt. Reply 8. Defendants ignore entirely the Government's detailed and wholly unrebutted Expert Report on Mexican law, submitted by a former Justice of the Mexican Supreme Court and two other highly regarded experts. Plaintiff's First Expert Report on the Tort Law of Mexico, Jan. 31, 2022 ("Expert Rep.") ¶¶ 16-22. That framework, like the common law throughout the U.S. states, recognizes a tort duty to, among other things, use reasonable care to protect against the foreseeable misuse of one's dangerous products. Opp. 40-43; *see* Expert Rep. ¶¶ 25, 28, 67-69, 91-100.[20]

Citing the wildly inapplicable *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1086 (7th Cir. 2013), Defendants doubt "whether Mexico even has 'the 'rule of law' as understood in our legal system.'" Jnt. Reply 8. That case has nothing to do with Mexico, its rule of law, or choice of law principles. *Xue Juan Chen* involved the asylum request of a Chinese mother-of-two seeking to avoid the punishment of sterilization under China's one-child policy, with Judge Posner noting his uncertainty as to how the communist government would interpret and enforce its own law.[21]

---

[20] Inexplicably, Witmer contends that the Expert Report is deficient because it "declines to expound on standing, causation, or damages." Witmer Reply 6. Not so. *See* Expert Rep. ¶ 34 (governmental standing), ¶¶ 34-56 (damages), ¶¶ 57-74 (causation).

[21] "An unregistered child is (probably—little about Chinese law is certain, because China does not have the 'rule of law' as understood in our legal system) not counted against the number of children (one, with immaterial exceptions) allowed by Chinese law." *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1086 (7th Cir. 2013).

In contrast, Mexico has a well-developed system of tort law.[22]

### D. Applying Mexican Law Is Not Inconsistent with any Public Policy of Massachusetts *or* the United States

Defendants (Jnt. Reply 10) erroneously rely on an exception to ordinary choice of law principles where recognizing a foreign claim would be "contrary to the strong public policy of the forum." Restatement § 90. That exception "has narrow application" under which "[a]ctions should rarely dismissed."[23] Defendants cite no Massachusetts case applying it. Moreover, as with choice of law principles more generally, the relevant public policy is not that of the United States, but of "the forum," i.e., Massachusetts. *See supra* note 4. Here, the Attorney General of Massachusetts obviously does not see the Government's complaint as inconsistent with any Massachusetts policy,[24] and Defendants do not identify any such policy.

Defendants cite the policy against filing lawsuits that are covered by PLCAA (Jnt. Reply

---

[22] *See* Expert Rep. ¶¶ 11-23 *et. seq.* Defendants, again citing nothing, suggest that the Government could "alter or amend [the] law during the course of litigation to serve its own interests." Jnt. Reply 10. However, the Government is relying on *general* provisions of Mexican tort law, and unlike the communist government in *Xue* the Executive has no power unilaterally to change the law. Similarly, Defendants' cynical reference to Mexico's poor ranking in "rule of law" in a World Justice Project report (Jnt. Reply 8 n.3)—a ranking reflecting the cartel violence *that Defendants' conduct fuels*—is beside the point. Those rankings have nothing to do with the *content* of Mexico's law, which is the only thing that might be relevant to the choice of law. Notwithstanding Defendants' perceived "rule of law" issues in Mexico, they assert that "Mexico is free to try to pursue claims under Mexican law *in its own courts*." Jnt. Reply 9. But as *RJR Nabisco* invited (Opp. 16-17), Mexico is also free to pursue these claims here. The Government's pursuit of its claims in the Defendants' home court with an American factfinder ensures that Defendants' rights will be protected while also ensuring that a court can enforce the injunctive relief that the Government seeks and to which it is entitled.

[23] Restatement § 90, cmt. c ("A court should not refuse to entertain such a suit unless to do so, in the words of Judge Cardozo, 'would violate some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the commonwealth.'" (quoting *Loucks v. Standard Oil Co. of New York*, 120 N.E. 198, 202 (NY 1918))).

[24] *See* Brief of Amici States, ECF No. 110-1, at 1 (noting amici's "paramount interest in preserving all lawful tools—including statutory and common law remedies for unlawful conduct—to deter gun violence within our borders").

10), but the extraterritoriality and statutory-construction analyses determine whether PLCAA precludes these claims, and it doesn't. To the extent that Defendants seek dismissal for failure to state a claim on other grounds, such as purported principles related to duty and public nuisance (Jnt. Mtn. to Dismiss at 31-42), those are issues of state tort law, not any federal policy. Nor does this lawsuit "dictat[e] how firearms should be made and sold in the United States" (Jnt. Reply 10); it simply holds Defendants accountable for systematically causing foreseeable harm to third parties, pursuant to nearly universal tort law principles. And the Second Amendment does not confer a right on Defendants to recklessly sell, market, or design guns, especially assault weapons, and to facilitate trafficking them outside the United States. Opp. at 44 & n. 241 (*contra See* Jnt. Reply 7 n.2, 10).

Defendants also erroneously contend that Mexican law is inconsistent with the "American concept of proximate cause" because it would "allow liability for remote harms." Jnt. Reply 10. However, the Mexican principle of "adequate cause" is similar to the American tort principle of proximate cause under the Restatement (Second) of Torts and in jurisdictions like Massachusetts.[25] Mexican law recognizes that "whoever produces damage is not liable for the remote consequences of it." Expert Rep. ¶ 66. In determining what is remote (or direct) Mexican law follows a reasonable foreseeability test. *Id.* ¶¶ 67, 69. That familiar test can hardly "threaten fundamental American constitutional values." Jnt. Reply 11.

---

[25] *See* Opp. at 33-40. Defendants contend that the relevant proximate-cause standard is provided by federal statutes like RICO because "PLCAA imposes a freestanding proximate-cause requirement as a matter of federal law." Jnt. Reply 10, 26. But PLCAA's proximate-cause requirement applies only to its predicate exceptions. *See* 15 U.S.C. § 7903(5)(A)(iii) (predicate violation must be "a proximate cause of the harm"); *see also id.* § 7903(5)(A)(v) (third party criminal offense is "sole proximate cause" as to design-defect exception).

## CONCLUSION

For the foregoing reasons and those stated in the Government's opposition briefs, the Court should deny Defendants' motions to dismiss.

Dated: March 23, 2022

Respectfully submitted,

/s/ *Steve D. Shadowen*
Steve D. Shadowen (pro hac vice)
Richard M. Brunell (BBO# 544236)
Tina Miranda (pro hac vice pending)
Nicholas W. Shadowen (pro hac vice)
SHADOWEN PLLC
1135 W. 6th Street, Suite 125
Austin, TX 78703
Phone: 855-344-3298
sshadowen@shadowenpllc.com
rbrunell@shadowenpllc.com
nshadowen@shadowenpllc.com

/s/ *Jonathan E. Lowy*
Jonathan E. Lowy (pro hac vice)
BRADY
840 First Street, N.E. Suite 400
Washington, DC 20002
Phone: 202-370-8104
jlowy@bradyunited.org

## CERTIFICATE OF SERVICE

    I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF.  Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filings system.

/s/ *Steve D. Shadowen*
Steve D. Shadowen

Dated: March 23, 2022