**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ESTADOS UNIDOS MEXICANOS,<br><br>     Plaintiff,<br><br>     v.<br><br>SMITH & WESSON BRANDS, INC.;<br>BARRETT FIREARMS<br>MANUFACTURING, INC.; BERETTA<br>U.S.A. CORP.; CENTURY<br>INTERNATIONAL ARMS, INC.; COLT'S<br>MANUFACTURING COMPANY LLC;<br>GLOCK, INC.; STURM, RUGER & CO.,<br>INC.; WITMER PUBLIC SAFETY<br>GROUP, INC. D/B/A INTERSTATE<br>ARMS,<br><br>     Defendants. | Civil Action No. 1:21-cv-11269-FDS |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS**
**PENDING REVIEW OF PETITION FOR WRIT OF CERTIORARI**

**INTRODUCTION**

In 2021, Mexico sued several major firearm manufacturers and one wholesale dealer, claiming they were responsible for criminal violence in Mexico facilitated by U.S.-made firearms smuggled over the southwest border. In September 2022, the Court dismissed those claims, because they were barred by the Protection of Lawful Commerce in Arms Act ("PLCAA").[1] Last month, the First Circuit reversed, concluding that, while PLCAA applied to Mexico's claims, Mexico had plausibly alleged an enumerated exception to PLCAA and a causal connection between Defendants' alleged statutory violations and harms Mexico allegedly suffered. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2024 WL 227773 (1st Cir. Jan. 22, 2024).

---

[1] *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 633 F. Supp. 3d 425 (D. Mass. 2022); 15 U.S.C. §§ 7901-7903 *et seq.*

Given the flaws in the First Circuit's reasoning—and the implications for business sectors beyond the firearm industry—Defendants intend to file a petition for a writ of certiorari with the U.S. Supreme Court.  That petition will raise several issues related to PLCAA immunity, including the proper scope of aiding-and-abetting liability and of proximate causation.  For reasons discussed below, there is at least a fair chance the Supreme Court takes up the case.  If the Supreme Court does, and vindicates this Court's decision to dismiss, any parallel proceedings here will have been a waste of effort and, worse, will have precipitated the litigation costs and burdens Congress sought to prevent with PLCAA.

Unlike the average case in which a litigant warns of needless expenditures, this one involves congressionally-implemented, threshold immunity from suit, enacted for the specific purpose of avoiding those costs and burdens in the first place.  It is, in short, the animating principle of the law at issue on appeal: legislators feared the U.S. firearm industry "being overwhelmed by the cost of defending itself" in repeated litigation.  H.R. Rep. No. 109-124, at 12 (2005).  And the statute anticipated precisely the kind of action Mexico initiated here:

> The possibility of imposing liability *on an entire industry for harm that is solely caused by others is an abuse of the legal system*, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

15 U.S.C. § 7901(a)(6) (emphasis added).  Congress enacted PLCAA not simply to protect manufacturers from liability for third-party crimes; it sought to eliminate the effects of *litigation itself*—"liability actions commenced … by" governmental and private plaintiffs on theories it deemed unfounded and abusive.  *Id.* at § 7901(a)(7).  Congress wanted "[t]o prevent the use of *such lawsuits* to impose unreasonable burdens" on the lawful commerce in arms.  *Id.* at § 7901(b)(4) (emphasis added).  As one congressman put it, "these suits—even while

unsuccessful—drain significant resources from these companies …. We cannot allow this trend to continue."  151 Cong. Rec. S9246-02, S9247 (2005).  And Congress not only immunized the firearm industry from certain lawsuits, it even peremptorily required that any such actions pending on the date of passage "shall be immediately dismissed by the court in which the action was brought or is currently pending."  15 U.S.C. § 7902(b).

This crystal-clear congressional imperative justifies a full stay of proceedings pending review of the First Circuit's rulings on PLCAA.  First, Congress has in effect directed trial courts like this one to stand down where, as the Court concluded here, an action falls within PLCAA's parameters.  This is the "hard line" that Congress intended:  that courts "weed out, expeditiously, claims the PLCAA bars."  *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013) (granting *sua sponte* dismissal of all claims against gun manufacturer).  Second, the Defendants should be allowed to preserve their right to the protection Congress intended to give them, *i.e.*, avoiding additional litigation costs pending appeal.

Nor would a stay prejudice Mexico.  Nothing that might happen in this case in the next six months would make the slightest difference to conditions at the U.S. border or in Mexico itself.  Four to six months of additional litigation—instead of a stay—will have no impact on conditions in Mexico nor accelerate any improvement in those conditions.

Finally, should the Court decline to impose a full stay, Defendants respectfully suggest that the Court instead proceed with a partial stay, limiting activity in this venue to considering the pending motions to dismiss under Rule 12(b)(2), but staying all other activity, including discovery, pending the Supreme Court's review.

**BACKGROUND**

In August 2021, Mexico sued several U.S. firearms manufacturers and a wholesale firearms dealer for costs related to violence in Mexico committed with U.S.-made firearms.[2] Doc. 1, Compl. ¶¶ 31-40.  Mexico's theory is that the Defendants are legally accountable for these harms because they should have foreseen that their products, via a string of multiple, independent criminal actors, would end up in the hands of Mexican drug cartels.[3]

In September 2022, the Court granted Defendants' joint motion to dismiss the complaint, along with the individual motions of Smith & Wesson Brands, Inc., and Colt Manufacturing, Inc., to dismiss unfair-trade-practices and consumer-protection claims under state law.  *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 633 F. Supp. 3d 425 (D. Mass. 2022).  The Court first held that PLCAA applied to Mexico's claims because, despite the alleged harms occurring in Mexico, PLCAA's focus was civil actions filed in U.S. courts; that is, this case involved a domestic, not extraterritorial, application of the statute.  *Id.* at 440-45.  The Court also had "no doubt that the general prohibition of the PLCAA applies to this lawsuit," *id.* at 445, and ultimately concluded that none of Mexico's claims fell within a recognized exception to PLCAA coverage, *id.* at 445-50.

On appeal, the First Circuit reversed.  *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2024 WL 227773 (1st Cir. Jan. 22, 2024).  The court agreed that PLCAA applies to claims brought in U.S. courts by foreign governments, including those seeking redress for harms occurring abroad.  *Id.* at *3-10.  But it also found that Mexico's claims could potentially proceed

---

[2] Mexico did not sue Sig Sauer, Inc., a major firearm manufacturer based in New Hampshire, likely because Sig Sauer is under contract to supply arms to the Mexican military.

[3] Based on these alleged harms, Mexico brought an assortment of claims, including negligence (Count One), public nuisance (Count Two), defective design (Count Three), negligence per se (Count Four), gross negligence (Count Five), and unjust enrichment (Count Six).  Compl. ¶¶ 506-41.  Mexico also asserted statutory claims for "unlawful marketing" against Smith & Wesson and Colt based on the Connecticut Unfair Trade Practices Act (Count Seven) and the general provisions of the Massachusetts Consumer Protection Act (Count Eight).  *Id.* ¶¶ 343, 542-56.  Lastly, Mexico claimed punitive damages (Count Nine).  *Id.* ¶¶ 557-60. The Court dismissed Counts Seven and Eight; Mexico did not appeal that aspect of the Court's decision.

because they fell within PLCAA's "predicate" exception. *Id.* at \*10-20. Of particular concern, the panel held that Mexico plausibly alleged that Defendants' (entirely legal) business activities aided and abetted knowing violations of federal law, and that Defendants' conduct proximately caused harm in Mexico. *Id.*

The First Circuit's decision is legally incorrect, and Defendants will file a petition for writ of certiorari before the deadline of April 22, 2024. S. Ct. R. 13. By default, Mexico will have 30 days to respond. *See* S. Ct. R. 15. Depending on when briefing is complete, the Supreme Court could consider the petition just before or after its summer recess this year. If the petition is granted, it will be heard in the October 2024 term.

## ARGUMENT

### I.   FOLLOWING REMAND, THE COURT RETAINS BROAD DISCRETION TO MANAGE ITS DOCKET, INCLUDING PAUSING THESE PROCEEDINGS

A district court has broad discretion to stay proceedings "as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (same).

Courts in this circuit have not articulated a specific standard governing stays pending resolution of petitions for writ of certiorari, but often look to the more general standard for stays pending appeal to the circuit court. *See, e.g.*, *United States v. Kenney*, 2008 WL 3285891, at \*2 (D. Me. Aug. 5, 2008) (Woodcock, J.) (applying that standard to motion for stay pending certiorari petition).[4] That test focuses on likelihood of success on the appeal, whether the

---

[4] District courts in other circuits have followed this approach as well. *See, e.g.*, *Evans v. Buchanan*, 435 F. Supp. 832, 841 (D. Del. 1977) (same); *Moore v. Haviland*, 607 F. Supp. 2d 867, 868 (N.D. Ohio 2009) (same); *Philipp v. Fed. Republic of Germany*, 436 F. Supp. 3d 61, 70 (D.D.C. 2020) (same).

applicant would be irreparably harmed absent a stay, and whether the opposing party, or the public interest, would be prejudiced by a stay.[5]

In a recent case with facts and legal considerations nearly identical to this one, a district court issued a full stay of proceedings pending resolution of an entirely different case, much less an appeal of the matter before the court.  In 2022, the Cities of Buffalo and Rochester, New York, sued most of the major U.S. firearm manufacturers for the costs associated with gun violence.  *See City of Buffalo v. Smith & Wesson Brands, Inc.*, 2023 WL 3901741, at *1-3 (W.D.N.Y. June 8, 2023). The matters were removed to federal court and consolidated before Judge Geraci in Rochester.  *Id.*  Certain claims, however, were based on a New York statute being challenged in another case, *National Shooting Sports Foundation, Inc. v. James*, pending in the Second Circuit Court of Appeals on the question of whether the statute was valid in light of PLCAA.  Judge Geraci did not hesitate to grant the defendants' (opposed) motion for a full stay pending a decision from the Second Circuit.  *Id.*  That stay still holds, as the Second Circuit has not yet issued a decision.

Similarly, in the posture of this case—post-remand but pending Supreme Court review—district courts, in this circuit and elsewhere, often enter a full stay of proceedings.  *See, e.g.*, *Carlson v. Gen. Motors Corp.*, 1991 WL 90893, at *1 (D.S.C. Mar. 14, 1991) (granting stay pending resolution of certiorari petition where circuit court reversed dismissal and remanded).[6] The fact that the case has been remanded, as opposed to being on direct appeal, does not alter the

---

[5] *See e.g.*, *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 42 (1st Cir. 2021); *Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 527 F. Supp. 3d 40, 45-46 (D. Mass. 2021) (Wolf, J.).

[6] *See also, e.g.*, *Philipp*, 436 F. Supp. 3d at 70; *Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, 2014 WL 2815683, at *2 (N.D. Tex. June 23, 2014); *Smith v. Gallegos*, 2009 WL 5217360, at *2 (D. Kan. Dec. 30, 2009); *Moore*, 607 F. Supp. 2d at 869-70; *NGV Gaming, Ltd. v. Harrah's Operating Co.*, 2008 WL 4951587, at *1 (N.D. Cal. Nov. 18, 2008); *Peaceable Planet, Inc. v. Ty, Inc.*, 2004 WL 1574043, at *2 (N.D. Ill. July 13, 2004).

analysis; the Court is still free to take practical steps to manage its own docket. *See, e.g.*, *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 2018 WL 2020543, at \*2 (D. Kan. May 1, 2018).

## II.   THERE IS AT LEAST A FAIR CHANCE THE SUPREME COURT TAKES THIS CASE

This case involves a foreign government targeting a U.S. industry under a theory of liability that (a) has been specifically rejected by Congress; (b) relies on disturbingly broad formulations of aiding-and-abetting liability and proximate causation that, while upheld here, have been rejected in other circuits; and (c) because of that conceptual breadth, implicates any number of U.S. industries producing legal goods that can cause harm domestically and abroad. In short, the Defendants' petition for a writ of certiorari presents serious legal questions and has at least a fair chance of winning Supreme Court review.[7]  And, if the Supreme Court does take this case, it is at least reasonably likely to reverse or materially alter the First Circuit's holdings.

As this Court has noted, PLCAA generally bars any "qualified civil liability action" "against a manufacturer or seller of a [firearm]" based on harms "resulting from the criminal or unlawful misuse of a [firearm] by … a third party." 15 U.S.C. §§ 7902(a), 7903(5)(A).  The First Circuit, however, held that Mexico's claims were not barred by PLCAA because, first, its common law claims fell within the "predicate" exception, and, second, Mexico had plausibly alleged that these Defendants had aided and abetted violations of federal law and proximately caused harms suffered in Mexico. *Estados Unidos*, 2024 WL 227773, at \*10-20; *see* 15 U.S.C. § 7903(5)(A)(iii).

Defendants' petition will challenge the First Circuit's latter findings on proximate causation and aiding-and-abetting liability.  As to proximate causation, the First Circuit adopted a broad conception of proximate causation based almost entirely on bare foreseeability of

---

[7] *See, e.g.*, *Sec. & Exchg. Comm'n v. BioChemics, Inc.*, 435 F. Supp. 3d 281, 296 (D. Mass. 2020) (Wolf, J.) (considering stay, noting requirement of "a substantial case on the merits when a serious legal question is involved"); *see also* Sup. Ct. R. 10 (listing considerations for granting certiorari).

diversion and misuse. *See Estados Unidos*, 2024 WL 227773, at \*16-18. Further, the First Circuit conceded that federal courts are now divided on whether a causal chain like the one alleged by Mexico can satisfy PLCAA's proximate cause requirement. *See id.* at \*18. The First Circuit expressly rejected the majority position holding that such a causal chain cannot suffice, as articulated by the Third Circuit (in an opinion joined by then-Judge Alito) and the highest courts in Illinois and Connecticut.[8] These courts have held that *domestic* governments cannot even establish proximate causation in this type of suit; it follows that a *foreign* government surely could not do so. By contrast, a minority of courts have allowed such suits—primarily the Ohio Supreme Court, a Massachusetts Superior Court opinion from 23 years ago (Fabricant, J.) and, now, the First Circuit. *Estados Unidos*, 2024 WL 227773, at \*18.[9] This kind of split, especially on a substantial federal question with broad policy implications, is a strong factor favoring Supreme Court review. *See, e.g.*, *Braxton v. United States*, 500 U.S. 344, 347 (1991) ("A principal purpose for which we use our certiorari jurisdiction … is to resolve conflicts among the United States courts of appeals and state courts concerning the meaning of provisions of federal law.").

Other factors reinforce this conclusion. The Supreme Court has shown long-term interest in taking up proximate cause issues in a variety of contexts, a recognition that these issues have significant downstream consequences.[10] The First Circuit's holding is also in direct tension with the Supreme Court's own recent decisions on proximate cause. *See, e.g.*, *Bank of Am.*, 581 U.S.

---

[8] *City of Philadelphia v. Beretta U.S.A., Corp.*, 277 F.3d 415, 422-26 (3d Cir. 2002) (joined by, Alito, J.); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1128-38 (Ill. 2004); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 113-30 (Conn. 2001); *see also, e.g.*, *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 93-104 (N.Y. App. Div. 2003); *Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042, 1044-45 (Fla. Dist. Ct. App. 2001).

[9] *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148 (Ohio 2002); *see also City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568, at \*6 (Mass. Super. July 13, 2000).

[10] *See, e.g.*, *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 195-96 (2017) (Fair Housing Act); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 124-25 (2014) (Lanham Act); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 7-8 (2010) (RICO Act); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006) (same).

at 201 (holding that "foreseeability alone is not sufficient to establish proximate cause").  The serious consequences for U.S. industry of defining proximate causation as coterminous with foreseeability are apparent.  To start, the First Circuit's ruling will spur litigation by other foreign governments against the U.S. firearm industry, exponentially increasing the risk of the very litigation costs PLCAA was designed to prevent.[11]  The Mexican foreign ministry itself has encouraged other countries to sue, and gun control advocates are actively drumming up additional sovereign plaintiffs.[12]  Further, a finding that a U.S. company can plausibly be held liable because it should foresee the intentional misuse of properly-made products—by criminals in a foreign country—implicates any number of major business sectors, from car manufacturers to agricultural conglomerates.

As to aiding and abetting, the First Circuit's ruling does not jibe with the Supreme Court's recent decision in *Twitter v. Taamnah*, 598 U.S. 471 (2023).  In *Taamnah*, the Supreme Court unanimously held that this sort of action—against a company for a third-party's illicit use of its lawful product—failed to state a claim under longstanding aiding-and-abetting principles.  The Court emphasized that, to be a legally cognizable accomplice, the defendant must "*consciously and culpably participate* in a wrongful act so as to help make it succeed."  598 U.S. at 493 (emphasis added).  Mere awareness or indifference is not enough, nor is failure to stop an existing business practice the equivalent of actively enabling its downstream consequences.  *Id.* at 500.  The Court held that any lower threshold for aiding and abetting would invite a future

---

[11] *See, e.g.*, John Cassidy, *Can the Government of Mexico Bring the U.S. Gun Industry to Book?*, THE NEW YORKER (Jan. 31, 2024), https://www.newyorker.com/news/our-columnists/can-the-government-of-mexico-bring-the-us-gun-industry-to-book (noting that "officials from a number of Caribbean nations expressed great interest in" this case).  Several Caribbean countries joined amicus filings in this case, alleging an influx of U.S.-made firearms to their countries.  *See, e.g., Press Statement from the Prime Minister Hon. Philip Edward Davis KC, MP,* https://mofa.gov.bs/press-statement-from-the-prime-minister-hon-philip-edward-davis-kc-mp-on-the-bahamas-filing-a-brief-in-us-appeals-court-to-hold-us-gun-manufacturers-accountable (statement by prime minister of the Bahamas supporting Mexico's suit and announcing the filing of an amicus brief on behalf of the Bahamas and Antigua/Barbuda, St. Vincent/Grenadines, and Trinidad/Tobago).

[12] *See, e.g.*, Alana Semuels, *Foreign Governments Are Taking on the U.S. Gun Industry*, TIME (Oct. 25, 2022), https://time.com/6224806/mexico-us-gun-industry/.

where "ordinary merchants could become liable for any misuse of their goods and services, no matter how attenuated their relationship with the wrongdoer." *Id.* at 489.

The First Circuit distinguished *Taamnah* on the ground that Mexico alleges in its complaint that the Defendants were "more active participants" in a violation of federal law than was alleged in *Taamnah*, and have taken affirmative steps in ways the social media companies did not.  But Mexico's own complaint explains its aiding-and-abetting theory differently: A "manufacturer of a dangerous product is an accessory or co-conspirator to illicit conduct by downstream actors *where it continues to supply, support, or assist the downstream parties and has knowledge – actual or constructive – of the illicit conduct*."  Compl. ¶ 110 (emphasis added).  That is precisely the theory the Supreme Court rejected in *Taamneh*.   598 U.S. at 478 ("Defendants allegedly knew that ISIS was using their platforms but failed to stop it from doing so.").

In sum, there is a reasonable chance that a majority of the Supreme Court will disagree with the First Circuit's holdings here; at minimum, there is a real chance the Court will grant review to expand on its holding in *Taamneh*.  *Cf. United States v. Rahimi*, 143 S. Ct. 2688, 2688-89 (2023) (granting certiorari to resolve questions about how to implement prior Term's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*).  The differing opinions in this context— about how to interpret federal legislation passed to protect an entire domestic industry—make clear that Mexico's complaint raises "important question[s] of federal law that ha[ve] not been, but should be, settled by [the Supreme] Court."  Sup. Ct. R. 10(c) (listing considerations for granting certiorari).  Defendants' petition will offer an excellent vehicle for doing so.

III.   **A STAY IN FULL PENDING SUPREME COURT REVIEW IS THE RESULT MOST IN KEEPING WITH THE CONGRESSIONAL INTENT BEHIND PLCAA**

Given the reasonable chance of Supreme Court review, the nature of the legal issues underlying this case provides unusually strong support for a full stay.  Unlike nearly all other

cases addressing whether to issue a stay, this case involves a statute *specifically designed* to protect *these defendants* from litigation that falls within the statute's ambit.  Following a series of lawsuits by municipalities in the early 2000s that looked very much like this one, Congress was openly concerned about the firearm industry being "overwhelmed" by repeated litigation costs.  H.R. Rep. No. 109-124, at 12 (2005).  Congress concluded that these lawsuits "impose[d] unreasonable burdens" on American enterprise.  15 U.S.C. § 7901(4).  As the First Circuit acknowledged, the entire point of PLCAA was "to insulate U.S. gun industry actors from certain types of lawsuits," to avoid the concomitant costs.  *Estados Unidos*, 2024 WL 227773, at *6.

Consequently, to avoid imposing the litigation costs targeted by the PLCAA, courts generally construe that law as providing threshold immunity from suit, rather than merely a defense to ultimate liability.[13]  The distinction matters: the congressional mandate of *immunity* strongly reinforces the propriety of a *full* stay, *i.e.*, a cessation of proceedings akin to the immunity these Defendants would enjoy if PLCAA applied.  Just as with the doctrines of sovereign immunity or qualified immunity, the "basic objective" of a statutory immunity scheme like PLCAA is undermined if litigation continues when there is a good chance the defendants are immune from suit.[14]  Moreover, if partial proceedings here imposed any litigation costs on these Defendants, those costs would amount to an irreparable harm; "[t]he appellate process, after final judgment, could not redress that injury."  *Miller v. Gammie*, 335 F.3d 889, 894-895 (9th Cir.

---

[13] *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims"); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2nd Cir. 2008) (holding that PLCAA bars "the commencement or the prosecution of qualified civil liability actions."); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015) (similar); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013) (similar); *In re Acad., Ltd.*, 625 S.W.3d 19, 32-36 (Tex. 2021) (similar); *Est. of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 388-89 (Alaska 2013) (similar).

[14] *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (noting that FSIA immunity "free[s] a foreign sovereign from *suit*"); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009) (explaining why disputes on qualified immunity are immediately appealable).

2003).  Courts considering stays pending review of certiorari petitions—even when more routine

legal claims are at issue—routinely stay proceedings in full.[15]

## IV.    NEITHER   MEXICO,   NOR   THE   PUBLIC   INTEREST,   WOULD   BE PREJUDICED BY A TEMPORARY STAY OF PROCEEDINGS

Mexico will not be prejudiced by a stay, which would merely maintain the status quo and

allow litigation to temporarily proceed on one track—Supreme Court review.  *See, e.g.*,

*Providence Journal Co. v. Fed. Bureau of Investig.*, 595 F.2d 889, 890 (1st Cir. 1979) ("Where

... the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the

granting of a stay will cause relatively slight harm to appellee, appellants need not show an

absolute probability of success in order to be entitled to a stay.").  That orderly process would

significantly decrease the expenditure of resources here—whether by litigants or the Court—

because it would briefly suspend the need to address remaining motions, discovery, or legal

issues the First Circuit left open on remand.

The only arguable hardship caused by a stay would be a delay in conducting discovery

that would only be appropriate if the certiorari petition were denied.  But that consideration is not

enough to justify denying a stay, especially where it will be relatively brief.  *See, e.g.*, *SmithKline

Beecham Corp. v. Apotex Corp.*, 2004 WL 1615307, at *8–9 (E.D. Pa. July 16, 2004) (rejecting

argument that a delay in pursuing potentially unnecessary discovery weighed against a stay).

First, there is no articulable "harm" from that kind of delay in the first place—no party suffers a

specific financial or other injury.  Second, per Supreme Court rules and procedure, the parties

will likely know in four-to-six-months' time whether Supreme Court review is granted.  And,

---

[15] *See, e.g.*, *Promega Corp. v. Life Techs. Corp.*, Case No. 3:10-cv-00281-bbc (W.D. Wisc. July 15, 2015) ECF 811 (staying proceeding while writ of certiorari was pending before the Supreme Court because it "could negate any developments of the case in this court" and so "it makes sense to wait a short time to allow the Supreme Court to render its decision to avoid the possibility of wasted effort"); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2015 WL 2248437, at *1 (W.D. Wis. May 13, 2015) ("[S]tay is warranted pending appeal" because "the asserted claims would moot all of plaintiffs' [] claims and avoid wasting judicial resources needlessly."); *Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*, 2012 WL 11914943, at *1 (E.D. Wis. July 24, 2012) ("Thus, considering the potential waste that could result from proceeding now, I find that a stay pending appeal is the only sensible approach.")*.*

finally, any alleged harm from a stay is obviated if the Supreme Court grants the petition and moots the remaining issues in the case.

Nor will a full stay prejudice the public interest, a consideration within the Court's "equitable discretion." *Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 16 (1st Cir. 2020); *see Kenney*, 2008 WL 3285891 at *2 (granting stay pending certiorari petition on equitable grounds, citing lack of prejudice to the government). Quite the opposite: a stay is *very much* in the public interest. A foreign government actively negotiating with the United States on border security issues sandbagged that process by suing a domestic industry in U.S. court—an industry undergirding the constitutional right to keep and bear arms, which is why federal law protects that industry from this kind of litigation. A pause in proceedings—while the country's highest court decides whether to take up the question of a foreign power suing that industry for $10,000,000,000—is surely in the public interest.

Moreover, mitigating the complex problem of international firearm trafficking depends, not on what happens to the Defendants in this case, but on the efforts of U.S. and Mexican law enforcement, coordinated border security efforts, and diplomacy between the two countries. A pause of four to six months in this matter will affect this larger situation not at all. *See, e.g.*, *Philipp*, 436 F. Supp. 3d at 70 (granting stay pending certiorari, noting serious legal questions and lack of harm to plaintiff or public).

## V.   IN THE ALTERNATIVE, THE COURT SHOULD STAY ALL PROCEEDINGS EXCEPT CONSIDERATION OF PENDING RULE 12(B)(2) MOTIONS

If this Court chooses not to grant a full stay, it should at least grant a partial stay on all proceedings except the six pending motions to dismiss under Rule 12(b)(2). These motions are fully briefed and no jurisdictional discovery is needed to adjudicate them.[16] While the effort may

---

[16] *See, e.g.*, *Doan v. Benefytt Technologies, Inc.*, 2023 WL 2465628, at *14 (D. Mass. March 10, 2023) (Saylor, J.) (denying request for discovery related to personal jurisdiction); *Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc.*, 946 F.Supp.2d 182, 193 (D. Mass. 2012) (Saylor, J.) (same).

be wasted if the Supreme Court grants the writ of certiorari, it would be the next logical step

should proceedings continue at this level.   General discovery, however—with its attendant

costs—should not proceed, even if the Court were to resolve the Rule 12(b)(2) motions before

the Supreme Court resolves Defendants' petition.

**CONCLUSION**

For the foregoing reasons, the Court should stay these proceedings in full pending the

Supreme Court's resolution of Defendants' forthcoming petition for writ of certiorari.   If the

Court grants the stay, the parties will promptly inform the Court when the Supreme Court

disposes of the petition.   In the alternative, the Court should stay all proceedings except

consideration, on the papers, of motions to dismiss pending under Rule 12(b)(2).

Date: February 23, 2024

Respectfully submitted,

| | |
|---|---|
| Defendant,<br>Smith & Wesson Brands, Inc.,<br>By its attorneys, | Defendant,<br>Glock, Inc.,<br>By its attorneys, |
| _/s/ Andrew E. Lelling_<br>Andrew E. Lelling (BBO No. 631859)<br>alelling@jonesday.com<br>100 High Street<br>JONES DAY<br>Boston, MA  02110-1781<br>Phone: (617) 449-6856<br>Fax: (617) 449-6999 | _/s/ Peter M. Durney_<br>Peter M. Durney (BBO No. 139260)<br>pdurney@cornellgollub.com<br>Patricia A. Hartnett (BBO No. 568206)<br>phartnett@cornellgollub.com<br>CORNELL & GOLLUB<br>88 Broad Street, Sixth Floor<br>Boston, MA 02110<br>Phone: (617) 482-8100<br>Fax: (617) 482-3917 |
| and | and |
| Noel J. Francisco (admitted PHV)<br>njfrancisco@jonesday.com<br>Anthony J. Dick (admitted PHV)<br>ajdick@jonesday.com<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>Phone: (202) 879-3939<br>Fax: (202) 626-1700 | John F. Renzulli (admitted PHV)<br>Christopher Renzulli (admitted PHV)<br>Jeffrey Malsch (admitted PHV)<br>RENZULLI LAW FIRM LLP<br>One North Broadway, Suite 1005<br>White Plains, NY 10601<br>Phone: (914) 285-0700<br>Fax: (914) 285-1213 |

Defendant,
Barrett Firearms Manufacturing, Inc.,
By its attorneys,

_____/s/ James W. Porter_____
James W. Porter  (admitted PHV)
jwporterii@pphlaw.net
Warren Kinney (admitted PHV)
wkinney@pphlaw.net
PORTER PORTER & HASSINGER, P.C.
880 Montclair Road
Suite 175
Birmingham, Alabama 35213
Phone: (205) 322-1744

and

James M. Campbell (BBO No. 541882)
jmcampbell@Campbell-trial-lawyers.com
Trevor J. Keenan (BBO No. 652508)
keenan@Campbell-trial-lawyers.com
CAMPBELL CONROY & O'NEIL, P.C.
1 Constitution Wharf, Suite 310
Boston, MA 02129

Defendant,
Beretta U.S.A. Corp.,
By its attorneys,

_____/s/ Mark D. Sheridan_____
Mark D. Sheridan (admitted PHV)
mark.sheridan@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
382 Springfield Avenue
Suite 300
Summit, NJ 07901
Phone: (973) 848-5600
Fax: (973) 848-5601

and

Daniel C. Harkins (admitted PHV)
daniel.harkins@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Phone: (212) 872-9800
Fax: (212) 872-9815

and

Michael T. Mullaly (B.B.O. # 672908)
michael.mullaly@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Phone: (614) 365-2700
Fax: (614) 365-2499

Defendant,

Sturm, Ruger & Co., Inc.,
By its attorneys,


        */s/ Jonathan Handler*
Jonathan I. Handler (BBO No. 561475)
jihandler@daypitney.com
Keith H. Bensten (BBO No. 568780)
kbensten@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Phone: (617) 345-4600
Fax: (617) 345-4745


and


James Vogts (admitted PHV)
jvogts@smbtrials.com
SWANSON, MARTIN & BELL LLP
330 N. Wabash Suite 3300
Chicago, IL 60611
Phone: (312) 222-8517
Cell: (630) 258-3987


Defendant,
Witmer Public Safety Group, Inc.,
By its attorneys,


        */s/ S. Jan Hueber*
S. Jan Hueber (admitted PHV)
hueber@litchfieldcavo.com
LITCHFIELD CAVO LLP
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Phone: (817) 945-8025


and


Nora R. Adukonis (BBO No. 675932)
adukonis@litchfieldcavo.com
LITCHFIELD CAVO LLP
6 Kimball Lane, Suite 200
Lynnfield, MA  01940-2682
Phone: (781) 309-1500

Defendant,

Colt's Manufacturing Company LLC,
By its attorneys,


        */s/ Mike Rice*
Mike Rice (admitted PHV)
mikerice@hlawllc.com
Harrison Law LLC
141 West Jackson Boulevard
Suite 2055
Chicago, IL 60604
Phone: (312) 638-8776


and


John G. O'Neill (BBO No. 630272)
john.oneill@mgclaw.com
McAngus Goudelock & Courie
53 State Street, Suite 1305
Boston, MA 02109
(617) 830-7424


Defendant,
Century International Arms, Inc.,
By its attorneys,


        */s/ Joseph Yannetti*
Joseph G. Yannetti (BBO No. 669008)
jyannetti@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street, Boston, MA 02210
Phone: (617) 439-7585


and


Anthony Pisciotti (admitted PHV))
apisciotti@pisciotti.com
Danny Lallis (admitted PHV)
dlallis@pisciotti.com
Ryan Erdreich (admitted PHV)
rerdreich@pisciotti.com
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike, Suite 205
Florham Park, NJ 07932
Phone: (973) 245-8100

16

## CERTIFICATE OF SERVICE / COMPLIANCE WITH LOCAL RULES

I hereby certify that, on February 23, 2024, the foregoing document was served upon all counsel of record through this Court's electronic filing system as identified in the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

I further certify that, pursuant to Local Rule 7.1(a)(2), counsel have conferred in a good faith effort to resolve or narrow the issues raised in this motion.

          */s/ Jenna L. LaPointe*
Jenna L. LaPointe (BBO No. 699045)
jlapointe@jonesday.com
100 High Street
JONES DAY
Boston, MA  02110-1781
Phone: (617) 449-6910
Fax: (617) 449-6999