**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| ESTADOS UNIDOS MEXICANOS,<br>            *Plaintiff,*<br><br>*vs*.<br><br>SMITH & WESSON BRANDS, INC., et al.,<br>            *Defendants* |

Civil Action No. 1:21-cv-11269-FDS

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM REGARDING**
**PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.     THE COURT'S EXERCISE OF JURISDICTION SATISFIES DUE
PROCESS. ...............................................................................................................3

       A.     The Government's Claims Arise Out of or Relate to the
Defendants' Forum Contacts. ....................................................................3

              1.     Defendants Commit Negligence Here. ...........................................3

              2.     The Government's Jurisdictional Allegations Are Not
Conclusory. ...................................................................................6

       B.     The Court's Exercise of Jurisdiction Over Defendants is
Reasonable. ..............................................................................................11

II.    IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS
JURISDICTIONAL DISCOVERY. ......................................................................13

       A.     The Government Makes a Colorable Showing of Jurisdiction. ..............13

       B.     The Government's Request for Discovery Is Neither Conclusory
Nor Piscatory. .........................................................................................15

CONCLUSION..................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Hananel,*
  510 F.3d 43 (1st Cir. 2007) ................................................................................. 3, 6

*Alves v. Goodyear Tire & Rubber Co.,*
  No. CV 22-11820-WGY, 2023 WL 4706585 (D. Mass. July 24, 2023) ................................... 3

*Bartow v. Extec. Screens and Crushers, Ltd.,*
  53 F. Supp. 2d 518 (D. Mass. 1999) ........................................................................ 12

*Blair v. City of Worcester,*
  522 F.3d 105 (1st Cir. 2008) ............................................................................... 13

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*
  582 U.S. 255 (2017) ....................................................................................... 2, 4

*Cappello v. Rest. Depot, LLC,*
  89 F.4th 238 (1st Cir. 2023) ............................................................................... 3

*Chouinard v. Marigot Beach Club and Dive Resort,*
  No. CV 20-10863-MPK, 2021 WL 2256318 (D. Mass. June 3, 2021) ................................... 10

*Composite Co. Inc., v. American Intern. Group, Inc.,*
  988 F. Supp. 2d 61 (D. Mass. 2013) ....................................................................... 12

*CRA Int'l, Inc. v. Rowdec, LLC,*
  No. CV 14-12529-JCB, 2015 WL 13376524 (D. Mass. Apr. 3, 2015) .................................. 15

*Doull v. Foster,*
  163 N.E. 3d 976 (Mass. 2021) ............................................................................... 6

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.,*
  91 F.4th 511 (1st Cir. 2024) ....................................................................... 1, 5, 8, 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
  592 U.S. 351 (2021) ................................................................................... passim

*Foster-Miller, Inc. v. Babcock & Wilcox Canada,*
  46 F.3d 138 (1st Cir. 1995) ............................................................................... 12

*Hallal v. Vicis Cap. Master Fund Ltd.,*
  No. CIV.A. 12-10166-NMG, 2013 WL 1192384 (D. Mass. Feb. 25, 2013). .......................... 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
  466 U.S. 408 (1984) ....................................................................................... 2, 4

*Jagex Ltd. v. Impulse Software,*
  750 F. Supp. 2d 228 (D. Mass. 2010) ...................................................................... 12

*Katz v. Spiniello Companies,*
  244 F. Supp. 3d 237 (D. Mass. 2017) ...................................................................... 12

*Knox v. MetalForming, Inc.*,
   914 F.3d 685 (1st Cir. 2019) ................................................................................. 3

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
   142 F.3d 26 (1st Cir. 1998) ................................................................................... 9

*Motus, LLC v. CarData Consultants, Inc.*,
   23 F.4th 115 (1st Cir. 2022) ......................................................................... 13, 15

*Moura v. New Prime, Inc.*,
   337 F. Supp. 3d 87 (D. Mass. 2018) ............................................................ 11, 12

*Nowak v. Tak How Invs., Ltd.*,
   94 F.3d 708 (1st Cir. 1996) ................................................................................. 11

*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2006) ............................................................................. 6, 9

*Sawtelle v. Farrell*,
   70 F.3d 1381 (1st Cir. 1995) ............................................................................... 11

*Stars for Art Prod. FZ, LLC v. Dandana, LLC*,
   806 F. Supp. 2d 437 (D. Mass. 2011) ................................................................ 15

*Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc.*,
   946 F. Supp. 2d 182 (D. Mass. 2012) ................................................................ 13

*Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*,
   116 F.3d 962 (1st Cir.1997) ............................................................................... 13

*United States v. Swiss Am. Bank, Ltd.*,
   274 F.3d 610 (1st Cir. 2001) ......................................................................... 13, 16

## INTRODUCTION

Since Defendants briefed this issue, the Court of Appeals has rejected their assertion that the Complaint failed to plead sufficient facts to causally link their conduct to the Government's injury. *See, e.g., Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc*., 91 F.4th 511, 538 (1st Cir. 2024) ("We conclude that Mexico has adequately alleged proximate causation, thereby satisfying the final demand of the predicate exception."); *id*. at 534 ("[T]he fact that one can fashion a multi-step description of the causal chain does not mean that the injurious conduct and the injury alleged are insufficiently connected."); *id.* at 535 ("Defendants' superseding-criminal-act argument is especially unconvincing in the context of the PLCAA").

The Court similarly rejected Defendants' argument that actionable conduct cannot include aiding and abetting violations by gun dealers. *See, e.g., id.* at 529 ("Mexico's complaint adequately alleges that defendants have been aiding and abetting the sale of firearms by dealers in knowing violation of relevant state and federal laws."); *id.* at 530 ("We think it clear that by passing along guns knowing that the purchasers include unlawful buyers…the [defendant] is aiding and abetting illegal sales."); *id.* at 531 (Defendants "are not mere passive observers of the buyer's illegal activity, but more akin to a calculated and willing participant in the supply chain that ends with a profitable illegal firearm market in Mexico.").

These holdings gut major portions of Defendants' personal-jurisdiction arguments. Defendants argued, for example, that no actionable conduct occurs in Massachusetts because they can be liable only for "direct[ing] individual third-parties to act illegally by making straw purchases or trafficking firearms"[1] and that "all significant events" occurred outside the forum.[2]

---

[1] ECF 141, Century Reply 4; *see also* ECF 138, Colt Reply 4; ECF 137, Ruger Reply 5-6.
[2] Century Reply 7.

But Defendants applied their negligent distribution policies to distributors and dealers in Massachusetts—aiding and abetting their violations; resulting in those sellers' guns being trafficked into Mexico—proximately causing Mexico's injuries.

For these and other reasons set out in the Government's original briefs and further refined below, the Court has personal jurisdiction over each Defendant. The Court need not, and should not, splinter this single efficient action into an array of multiple actions in multiple jurisdictions spread across the nation.

## LEGAL STANDARD

The Government's original briefs set out the basic personal-jurisdiction standards.[3] Most pertinently, for specific jurisdiction the suit "must arise out of or relate to the defendant's contacts" with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 272 (2017) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021) (quoting *Bristol-Myers*, 582 U.S. at 262) (other quotations and citation omitted).

---

[3] ECF 98, Opp. MTD (Barrett) at 7-8; ECF 99, Opp. MTD (Beretta) at 4-7, ECF 100, Opp. MTD (Century) at 5-6; ECF 101, Opp. MTD (Colt) at 3-4; ECF 102, Opp. MTD (Glock) at 4-6; ECF 103, Opp. MTD (Ruger) at 5-7.

## ARGUMENT

## I.    THE COURT'S EXERCISE OF JURISDICTION SATISFIES DUE PROCESS.

"[T]he constitutional analysis … has three components: relatedness, purposeful availment, and reasonableness." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019). Defendants focus almost exclusively on the second and third requirements.[4] As set out below, the exercise of specific jurisdiction over the Defendants comports with both.

### A.    The Government's Claims Arise Out of or Relate to the Defendants' Forum Contacts.

"The relatedness standard is a flexible, relaxed standard … which focuses on the nexus between the defendant[s'] contacts and the plaintiff's cause of action." *Adelson*, 510 F.3d at 48 (internal quotations omitted). The "essential foundation of specific jurisdiction" exists here because "there is a strong relationship among the defendant[s], the forum, and the litigation."[5]

#### 1.    Defendants Commit Negligence Here.

Defendants deny that jurisdiction is proper under *Ford*.[6] They are wrong.

"In *Ford*, the Supreme Court held that a causal showing is not necessary to demonstrate that a dispute 'relates to' the forum state." *Alves v. Goodyear Tire & Rubber Co.*, 2023 WL 4706585, at *6 n. 3 (D. Mass. July 24, 2023) (citing *Ford*, 592 U.S. at 361).[7] The Government need only show that a relevant "'activity [or] occurrence' involving the defendant[s]" occurs

---

[4] Only Century appears to deny that it "purposefully availed itself" of the privilege of conducting business in Massachusetts. Century Reply 8-10.

[5] *See Ford*, 592 U.S. at 353.

[6] *See* ECF 143, Barrett Reply 6-7; ECF 145, Beretta Reply 6-7; ECF 141, Century Reply 1-3; Colt Reply 2-4; Ruger Reply 6.

[7] *See also Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245 (1st Cir. 2023) ("The Court rejected Ford's 'causation-only approach' to there being a connection between the plaintiffs' suits and the defendants' activities.") (citing *Ford*, 592 U.S. at 361).

here. *Ford*, 592 U.S. at 362 (quoting *Bristol-Myers,* 582 U.S. at 262).

That standard is easily met. Defendants engaged in negligence here, and that negligence results in their guns being trafficked from Massachusetts distributors and dealers into Mexico.

*Ford* "consider[ed] first the business that the [Defendants] regularly conduct[ ] in [the forum state]."[8] As in *Ford*, Defendants here "systematically served a market" in this forum.[9] They regularly and substantially market, distribute, and sell their weapons here to Interstate Arms and other in-state distributors and dealers.[10]

Defendants also commit the complained-of negligence here. They impose their distribution policies and practices on these in-state distributors and dealers—the very policies at issue.[11] "So there is a strong 'relationship among the defendant[s], the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford*, 592 U.S. at 365 (quoting *Helicopteros,* 466 U.S. at 414).

Defendants note that in *Ford* the plaintiff was injured in the forum. True, but the negligence occurred outside the forum. Here the converse is true—the negligence occurs inside the forum and the injury occurs outside. Defendants can point to no authority asserting that only the locus of the injury satisfies *Ford*'s standard of a "relationship among the defendants, the forum, and the litigation." For purposes of establishing jurisdiction over the defendant, the locus of the negligence is *at least* as compelling as that of the injury.

---

[8] *See Ford*, 592 U.S. at 364 ("To see why Ford is subject to jurisdiction in these cases … consider first the business that the company regularly conducts in [the forum states].").

[9] *See Ford*, 592 U.S. at 365 ("In other words, Ford had systematically served a market in [the forum states] for the very vehicles that plaintiffs allege malfunctioned and injured them in those States.").

[10] *See* ECF 108, Shadowen Decl. ¶¶ 3(a-b), 4(a), 4(c), 6(a-b), 6(d), 7, 9(a), 10, 12(a), 13, 15(a), 16 (identifying Defendants' authorized in-state dealers and distributors).

[11] Compl. ¶¶ 227-77; 367-76.

*Ford* also considered whether "allowing jurisdiction in these cases treats [defendant] fairly" and whether "principles of 'interstate federalism' support jurisdiction over these suits in [the forum states]." *Id*. at 367-68. As they did in *Ford*, both considerations here favor a finding of personal jurisdiction.

Concerning fairness, *Ford* held that a defendant's enjoyment of the benefit and protections of the forum state's law "creates reciprocal obligations." *Id*. at 368. Just as "[a]n automaker regularly marketing a vehicle in a State … has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there," so gunmakers regularly marketing, distributing, and selling their weapon in Massachusetts have "clear notice" that they can be sued here when those activities are negligent. *Id*.

As to "interstate federalism" and whether "the [forum] States have significant interests at stake,"[12] Massachusetts' interest in this litigation is no less significant than the forum states' interest in *Ford*. There, the out-of-state actors caused injury in the state; here the out-of-state actors commit negligence in the state. Massachusetts most assuredly has an interest in precluding out-of-state gun manufacturers from implementing negligent policies and practices within its border.[13] Indeed, Defendants themselves argue, with respect to choice of law, that Massachusetts' interest is so strong that it overcomes the usual international rule—and the Massachusetts rule—that the law of the place of injury governs.[14]

---

[12] *Id*.

[13] *See Estados Unidos Mexicanos,* 91 F.4th at 532 (concluding "that the complaint adequately alleges that defendants aided and abetted the knowingly unlawful downstream trafficking of their guns into Mexico").

[14] Defendants are wrong about choice of law—Massachusetts has an interest in policing the conduct within its borders, but that interest is not superior to that of Mexico in obtaining redress for injuries within its borders.

### 2.   The Government's Jurisdictional Allegations Are Not Conclusory.

Defendants argue that the Government makes only "hollow allegations" of "unlawful conduct" that are "completely devoid of factual specificity."[15] Not so. And the First Circuit has rejected that argument, holding that the Government adequately alleges aiding and abetting and other illegal conduct. *Estados Unidos Mexicanos*, 91 F.4th at 529-31.

The Government has "proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Adelson*, 510 F.3d at 48.

The Complaint clearly alleges that: 1) Defendants impose their negligent distribution policies on in-state dealers and distributors; and 2) that negligent conduct aids and abets trafficking of Defendants' weapons from Massachusetts into Mexico. *See, e.g.*, Compl. ¶ 42. To bolster those allegations, the Government submitted the Expert Report of Lucy P. Allen and the declaration of Nicholas W. Shadowen.[16] The Government does not—as Defendants assert—merely "rely on unsupported allegations in their pleadings."[17]

To start, it is undisputed that Defendants market, distribute, and sell their weapons in Massachusetts.[18] They argue instead that the Government has not identified the "unlawful

---

[15] Beretta offers similar arguments that the Government fails to satisfy the State's long-arm statute. Beretta Reply 3-5. Because the requirements are sufficiently congruent, the Government's response to Defendants' due process relatedness arguments apply equally to Beretta's statutory arguments. Beretta attempts to distinguish *Doull v. Foster*, 163 N.E. 3d 976, 986 (Mass. 2021)—which rejects its "but for" causation argument—on the basis that *Doull* was not deciding personal jurisdiction. Beretta Reply 3-4. But Beretta fails to explain how this distinction is material.

[16] ECF 108, Shadowen Decl. Ex. 1, Expert Report of Lucy P. Allen ("Allen Report"), ECF No. 108. The Government's original briefing inadvertently misidentified Ms. Allen as a "member" of the Council of Economic Advisers to Presidents George H.W. Bush and Clinton. As correctly noted in the CV attached to her report, she was a staff economist to the Council.

[17] Barrett Reply 5 (quoting *Platten v. HG Bermuda Exempted Ltd*., 437 F.3d 118 (1st Cir. 2006)

[18] *See* Shadowen Decl. ¶¶ 3(a-b), 4(a), 4(c), 6(a-b), 6(d),7, 9(a),10, 12(a), 13, 15(a),16 (identifying Defendants' authorized in-state dealers and distributors). *See also* Beretta Reply 7; Century Reply 3-4; Colt Reply 5; Ruger Reply 6 (conceding Ruger makes "lawful sales" in Massachusetts). Defendant Barrett admits that it sells it weapons in Massachusetts but quibbles over whether it conducts "substantial

distribution policies,"[19] shown how these policies "direct[ ] individual third-parties to act illegally by making straw purchases or trafficking firearms,"[20] or included "factual allegations showing that a [Defendant] firearm was sold in Massachusetts and thereafter trafficked into Mexico." [21] Defendants are wrong on all three counts.

### a. The Complaint properly pleads Defendants' unlawful distribution policies.

Regarding the alleged failure to identify the "unlawful distribution policies," almost half of the Government's 135-page Complaint is dedicated to doing exactly that. The Complaint explains in detail how Defendants recklessly and unlawfully distribute and sell their guns— including sales to wholesalers and dealers in Massachusetts—by, among other things, refusing to monitor their distribution chain or adopt safety protocols that would curb the trafficking of their weapons into Mexico, and continuing to sell to known traffickers. *See* Compl. ¶¶ 115-376.

Specifically, Defendants 1) permit straw sales, *see e.g.* Compl. ¶ 245; 2) permit multiple, large volume sales, Compl. ¶¶ 251-57; 3) permit "kitchen-table sales," Compl. ¶¶ 258-64; 4) permit gun thefts, Compl. ¶¶ 265-71; and 5) permit unreasonable sales of their weapons at gun shows, Compl. ¶¶ 272-77. The Complaint sets out numerous exemplars of the practices and procedures that Defendants should include in their distribution policies, and details how Defendants intentionally exclude those practices in order to maximize profits. *See* Compl. ¶¶

---

business" in the state. Barrett Reply 5. The Government has produced evidence showing that Barrett has at least one authorized firearm dealer, Natick Outdoor Store, in Massachusetts, and that the Gun Parlor's Worcester, Massachusetts store sells Barrett firearms. *See* Shadowen Decl. ¶¶ 3(a-b). If the Court would require additional facts demonstrating the extent of Barrett's business activities in Massachusetts, the Government requests jurisdictional discovery on the issue. See *infra*, Section II(A).

[19] Barrett Reply 5; Beretta Reply 5; Century Reply 4; Colt Reply 4-5; Ruger Reply 2-4.

[20] Century Reply 4; Colt Reply 4-5; Ruger Reply 2-4.

[21] Barrett Reply 4; *see also id.* 5-6; Beretta Reply 6; Century Reply 6; Colt Reply 4-5; 2-4.

367-76; 377-96. The First Circuit has held that this constitutes actionable aiding and abetting, *Estados Unidos Mexicanos*, 91 F.4th at 532, and that actionable conduct occurs in Massachusetts.

Defendants' assertion that these policies are not directed to distributors or other downstream sellers[22] is puzzling, to say the least. The Complaint alleges in detail that Defendants fail to monitor and discipline their distribution chains—their distributors and dealers. *See, e.g.,* Compl. ¶¶ 7, 15, 32, 42, 90-94, 227-29, 236, 245-46, 250, 253, 257, 264, 266, 367-376. The Complaint highlights that Defendants ignored repeated calls for reform—from, among others, the U.S. Department of Justice, Compl. ¶¶ 90-94; 369-72, and Judge Weinstein, Compl. ¶ 374. "Manufacturer Defendants enjoy exclusive discretion in their methods of distribution and choice of distributions and dealers to which they sell. They can limit product access to responsible dealers and consumers. They can implement appropriate and prudent distribution practices. They simply choose not to do so." Compl. ¶ 377.

> **b. The Government has alleged and produced evidence of trafficking from Massachusetts into Mexico.**

Defendants contend they can be held liable only for "directing individual third-parties to act illegally by making straw purchases or trafficking firearms" and therefore only such direct instruction suffices to establish personal jurisdiction in Massachusetts.[23] That argument is expressly precluded now by the First Circuit's conclusion that "the complaint adequately alleges that defendants aided and abetted the knowingly unlawful downstream trafficking of their guns into Mexico." *Estados Unidos Mexicanos*, 91 F.4th at 532.

---

[22] Beretta Reply 5; Century Reply 4; Colt Reply 4; Ruger Reply 7-8.

[23] Century Reply 4; *see also* Colt Reply 4; Ruger Reply 2.

Nor is it true that the Government has failed to show that any of Defendants' guns sold in Massachusetts were trafficked into Mexico.[24] This is precisely the factual support provided by Ms. Allen's expert report.[25] She used the most current set of publicly available data to show the percentage of Defendants' crime guns recovered in Mexico that were traced to Massachusetts.[26] Applying that percentage to estimates of the total number of guns trafficked into Mexico in the period 2011 – 2020 yields an estimate of the number of each Defendants' guns trafficked from Massachusetts to Mexico.[27]

Defendants offer nothing to refute Ms. Allen's conclusion, but instead try to dismiss it as unreliable guesswork because it is based, in part, on 20-year-old data.[28] Given that the percentage of U.S. retail gun sales made in Massachusetts has increased substantially in recent years, Ms. Allen's estimates are conservative. Allen Rpt. ¶ 18. Defendants provide no data, expert reports, or facts of any kind saying otherwise. Regardless, on this motion the Court "take[s] those 'specific facts affirmatively alleged by the plaintiff[s] as true ... and construe[s] them in the light most congenial to the plaintiff['s] jurisdictional claim." *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 134 (1st Cir. 2006) (quoting *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)).

Defendants complain that Ms. Allen's "data sources do not provide any specifics regarding where the firearms were sold, how they reached Mexico, or which firearms were from

---

[24] *See* Allen Rpt. ¶¶ 15-20.

[25] *Id.*

[26] Allen Rpt. ¶ 15.

[27] *Id.*

[28] Barrett Reply 7-8.

which U.S. manufacturer."[29] But this is not a personal injury case about a single transaction. This is a *gun-trafficking* case challenging Defendants' *practices and policies* and their cumulative effects. The Government alleges in detail that Defendants apply those practices and policies in Massachusetts, and Ms. Allen's report bolsters the detailed allegations that those policies result in Defendants' guns being trafficked into Mexico. "[D]efendants operate at a systemic level, allegedly designing, marketing, and distributing their guns so that demand by the cartels continues to boost sales. In these circumstances, defendants need not know about any particular unlawful sale that funnels their guns into Mexico." *Estados Unidos Mexicanos,* 91 F.4th at 532.

### c.   Courts Have Rejected Defendants' Causation Arguments.

Throughout their arguments, Defendants rely on the purported "attenuated causal chain" between their conduct and the Government's injury.[30] Those arguments have no place here. The Supreme Court expressly "rejected the notion that a 'strict causal relationship' is necessary" for specific jurisdiction. *Chouinard v. Marigot Beach Club and Dive Resort*, 2021 WL 2256318, at *8 (D. Mass. June 3, 2021) (citing *Ford*, 592 U.S. at 361). Moreover, the First Circuit has rebuffed Defendants' "attempt to complicate [the Government's] causal theory," recognizing that "the fact that one can fashion a multi-step description of the causal chain does not mean that the injurious conduct and the injury alleged are insufficiently connected." *Estados Unidos Mexicanos*, 91 F.4th at 534. The Court was unconvinced by Defendants' assertion that "multiple criminal acts by third parties" broke the casual chain."[31] To establish personal jurisdiction, the

---

[29] Century Reply 5.

[30] Beretta Reply 8; Century Reply 6, 10; Colt Reply 4-6; Ruger Reply 4-6.

[31] *See Id*. at 535 ("…[I]t is certainly foreseeable that Mexican drug carters—armed with defendants' weapons—would use those weapons to commit violent crimes. The acts of these third parties are therefore properly considered as part of the proximate causation chain.").

Government need only show—as it has done—that Defendants' forum contacts are related to the underlying controversy.

### B.     The Court's Exercise of Jurisdiction Over Defendants is Reasonable.

As previously shown, the Gestalt factors weigh heavily in the Government's favor, demonstrating the reasonableness of litigating these claims here.

Defendants primarily focus on the second Gestalt factor, suggesting that a forum state cannot have a sufficiently strong interest in a litigation where the injury occurs elsewhere. As noted, Defendants assert the opposite on the choice-of-law issue. They also ignore the First Circuit's decision in *Nowak*, which clearly holds that the forum may have a sufficient interest to support personal jurisdiction regardless of whether the injury occurred outside the forum. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996).[32] Defendant Century's assertion that "all significant events" occurred outside the forum[33] is just another instance of Defendants ignoring that their *negligence* occurs *here*. This factor favors adjudication of these claims in Massachusetts.

So does the third Gestalt Factor. The First Circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). Defendants nevertheless engage in the very type of "second-guessing" that the First Circuit holds improper.

---

[32] *See also Moura v. New Prime, Inc*., 337 F. Supp. 3d 87, 98 (D. Mass. 2018) ("[A]lthough the accident did not take place in the Commonwealth, significant events did take place in the forum that led to the accident and give the forum an interest in adjudicating the dispute."). Colt tries to distinguish *Nowak* on the ground that "the injury was to a resident of the forum who was targeted for solicitations by the nonresident defendant to induce the resident to engage in the very conduct that led to the resident's injuries." Colt Reply 7. That explains how the forum's interest here is different from the forum's interest in *Nowak*, but not why it is any less significant.

[33] Century Reply 7.

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995). Defendants denigrate the Government's desire to litigate its claims against the Defendants in a single forum as "irrelevant" and "makeweight," ignoring that this Court has held otherwise.[34] And Defendants continue to insist that the Government's choice is not entitled to deference because it is not a forum resident, despite contrary precedent.[35]

Century and Beretta offer argument on the Fourth Gestalt factor.[36] Courts have consistently found that this factor weighs in favor of exercising jurisdiction where, as here, doing so will avoid piecemeal litigation.[37] Century contends that it is always unjust to exercise jurisdiction over a particular defendant merely because another defendant is located in the forum.[38] That simply seeks the repeal of this factor.

Beretta reiterates its assumption that the Government's witnesses are all outside the forum.[39] That simply ignores that the same is equally true of every forum in the U.S. Beretta offers no reason to select some other U.S. forum rather than this one.[40] That other states may *also* have an interest in putting an end to Defendants' negligent practices does not negate

---

[34] *See Composite Co. Inc., v. American Intern. Group, Inc*., 988 F. Supp. 2d 61, 73 (D. Mass. 2013) (Saylor, J.) (recognizing that "plaintiff's best option for convenient and efficient resolution of this matter is to have all three defendants present in the same forum.").

[35] *See Katz v. Spiniello Companies*, 244 F. Supp. 3d 237, 251 (D. Mass. 2017) (affording deference to non-resident plaintiff's choice of forum). Beretta argues that the Government's reliance on Katz is misplaced because there the plaintiff's injury occurred in Massachusetts. *See* Beretta Reply 9. But the *Katz* court did not consider the location of the injury in assessing the third Gestalt factor; it considered the injury location only in assessing the second factor—the forum's interest. *Id.*

[36] Beretta Reply 10; Century Reply 7.

[37] *See Moura*, 337 F. Supp. 3d at 99; *Bartow v. Extec Screens and Crushers, Ltd*., 53 F. Supp. 2d 518, 528 (D. Mass. 1999) ("Generally this factor is a wash, unless the Court perceives the threat of piecemeal litigation").

[38] Century Reply 7.

[39] Beretta Reply 10.

[40] *See, e.g., Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 234 (D. Mass. 2010).

Massachusetts' interest or all states' collective interest in avoiding piecemeal litigation.

## II.   IN THE ALTERNATIVE, THE GOVERNMENT REQUESTS JURISDICTIONAL DISCOVERY.

The Government has satisfied its burden of establishing a prima facie case of personal jurisdiction over all Defendants. But should the Court find that more is necessary with respect to one or more of the Defendants, the Government respectfully requests the opportunity to conduct jurisdictional discovery.

The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) (quoting *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir.1997)). "The threshold is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." *Motus, LLC v. CarData Consultants, Inc*., 23 F.4th 115, 128 (1st Cir. 2022) (citing *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008)). And "[a] 'timely and properly supported request for jurisdictional discovery merits solicitous attention.'" *Id*. (quoting *Swiss Am. Bank, Ltd.*, 274 F.3d at 625).

### A.  The Government Makes a Colorable Showing of Jurisdiction.

The Government has "'present[ed] facts to the court which show why jurisdiction would be found if discovery were permitted.'" *Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc.*, 946 F. Supp. 2d 182, 192 (D. Mass. 2012) (Saylor, J.) (quoting *Swiss Am. Bank, Ltd.*, 274 F.3d at 625).

The Government alleges that Defendants regularly conduct substantial business in Massachusetts, selling their guns to in-state distributors and dealers. The Government provided

screenshots of Defendants' websites demonstrating such commerce.[41] The Government also provided examples of Defendants' marketing and advertising in Massachusetts.[42] Should the Court require additional facts showing the extent of Defendants' business in Massachusetts, limited jurisdictional discovery would reveal a fuller picture of Defendants' in-state dealings. For examples of potential discovery requests, see attached Exhibit A.

The Government alleges that Defendants impose on Massachusetts distributors and dealers policies that are defective for, among other things, permitting conduct that defies basic safety standards.[43] Should the Court determine that additional factual support is required, limited discovery would reveal the existence and extent of these policies. For examples, see attached Exhibit A.

The Government alleges that weapons sold by the Defendants in Massachusetts were trafficked into Mexico, relying on an expert report that calculates those numbers for each Defendant.[44] Defendants complain that some of the data is too old, even though the uncontested evidence is that the data's age makes the expert's estimate conservative rather than too aggressive. Should the Court determine that additional factual support is required, limited discovery into available trace data would support and potentially expand the expert's analysis. For examples, see attached Exhibit A.

---

[41] *See* Shadowen Decl. ¶¶ 3(a-b), 4(a), 4(c), 6(a-b), 6(d), 7, 9(a), 10, 12(a), 13, 15(a), 16.

[42] Shadowen Decl. ¶¶ 3, 4, 6, 9, 12, 15, 18, 19.

[43] Compl. ¶¶ 89-92.

[44] *See* Allen Rpt. ¶¶ 15-20.

**B.     The Government's Request for Discovery Is Neither Conclusory Nor Piscatory.**

Defendants liken the Government's request for jurisdictional discovery to conclusory or "fishing expedition" requests rejected by courts in other cases. But there is no resemblance.

In one case cited by Defendants, the plaintiff failed to even address the defendants' argument regarding jurisdiction, asserting instead "that there [wa]s a 'discoverable question' as to whether the Court ha[d] general jurisdiction over them." *Hallal v. Vicis Cap. Master Fund Ltd.*, No. CIV.A. 12-10166-NMG, 2013 WL 1192384, at *8 n.10 (D. Mass. Feb. 25, 2013). In another case, the plaintiff "ha[d] not set forth any facts which would indicate that discovery would be more than a fishing expedition." *CRA Int'l, Inc. v. Rowdec, LLC*, No. CV 14-12529-JCB, 2015 WL 13376524, at *4 n.7 (D. Mass. Apr. 3, 2015). In yet another, the plaintiff sought "information that is either seemingly broad or irrelevant to the personal jurisdiction inquiry" *Stars for Art Prod. FZ, LLC v. Dandana, LLC*, 806 F. Supp. 2d 437, 451 (D. Mass. 2011). And finally, in *Motus, LLC v. CarData Consultants, Inc.*, the plaintiff's request "comprised a single conclusory sentence" that "contained no indication of what facts might be developed through discovery." 23 F.4th at 128.

As demonstrated, the Government has done the opposite.[45] And we made this back-up discovery request in the original briefing, noting that discovery "would provide additional evidence documenting the extent to which guns sold in Massachusetts are trafficked into Mexico. This would include additional and updated information regarding ATF traces, the Defendants' sales to distributors, those distributors' sales to dealers throughout the nation, and similar

---

[45] *See* Allen Rpt. ¶¶ 15-20; Shadowen Decl. ¶¶ 1-20.

information."[46] In response to additional arguments raised by Defendants in their reply briefs, the

Government has now further specified the "pertinent avenues of inquiry."[47]

## CONCLUSION

The Government has made a prima facie case of specific jurisdiction over all Defendants.

If the Court concludes otherwise, the Government respectfully requests jurisdictional discovery.


Dated: April 19, 2024                                    Respectfully submitted,

                                                         */s/ Steve D. Shadowen*
                                                         Steve D. Shadowen *(pro hac vice)*
                                                         Richard M. Brunell (BBO# 544236)
                                                         Nicholas W. Shadowen *(pro hac vice)*
                                                         SHADOWEN PLLC
                                                         1135 W. 6th Street, Suite 125
                                                         Austin, TX 78703
                                                         Phone: 855-344-3298
                                                         sshadowen@shadowenpllc.com
                                                         rbrunell@shadowenpllc.com
                                                         nshadowen@shadowenpllc.com

                                                         */s/ Jonathan E. Lowy*
                                                         Jonathan E. Lowy *(pro hac vice)*
                                                         Global Action on Gun Violence
                                                         805 15 Street NW, #601
                                                         Washington, DC 20005
                                                         Phone: (202) 415-0691
                                                         jlowy@actiononguns.org

---

[46] *See* Opp. MTD (Beretta) at 23, ECF 99; Opp. MTD (Century) at 21, ECF 100; Opp. MTD (Colt) at 16, ECF 101; Opp. MTD (Glock) at 20, ECF 102; Opp. MTD (Ruger) at 20, ECF 103.

[47] *See Swiss Am.*, 274 F.3d at 626.

**CERTIFICATE OF SERVICE**

I, Steve D. Shadowen, hereby certify that this document was filed with the Clerk of the Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing systems may access this filing through the Court's CM/ECF system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: April 19, 2024                          Respectfully Submitted,

                                               */s/ Steve D. Shadowen*
                                               Steve D. Shadowen